Nos. 22-2003, 22-2004, 22-2005, 22-2006, 22-2007,
22-2008, 22-2009, 22-2010, 22-2011 (Consolidated)

# United States Court of Appeals for the Third Circuit

IN RE LTL MANAGEMENT, LLC,

*Debtor.*

OFFICIAL COMMITTEE OF TALC CLAIMANTS, *et al*.,

*Petitioners-Appellants,*

v.

LTL MANAGEMENT, LLC,

*Debtor-Appellee.*

Direct Appeal from the United States Bankruptcy Court for the District of New
Jersey in Ch. 11 No. 21-30589 and Adv. Pro. No. 21-03032

## BRIEF FOR APPELLANT
## OFFICIAL COMMITTEE OF TALC CLAIMANTS
## AND JOINT APPENDIX VOLUME 1 OF 20 (Pages A1 to A272)

MOLOLAMKEN LLP
Jeffrey A. Lamken
600 New Hampshire Ave., N.W.
Washington, DC 20037
(202) 556-2010

GENOVA BURNS LLC
Angelo J. Genova
Daniel M. Stolz
110 Allen Road, Suite 304
Basking Ridge, NJ 07920
(973) 533-0777

*Counsel for Appellant Official Committee of Talc Claimants*
(Additional Counsel Listed on Inside Cover)

BROWN RUDNICK LLP
David J. Molton
Michael S. Winograd
Robert J. Stark
7 Times Square
New York, NY 10036
(212) 209-4800

MASSEY & GAIL LLP
Jonathan S. Massey
1000 Maine Ave. S.W., Suite 450
Washington, DC 20024
(202) 652-4511

PARKINS LEE & RUBIO LLP
Lenard M. Parkins
700 Milam St., Suite 1300
Houston, TX 77002
(713) 715-1666

OTTERBOURG P.C.
Melanie L. Cyganowski
Adam C. Silverstein
230 Park Avenue
New York, NY 10169
(212) 661-9100

BAILEY & GLASSER LLP
Brian A. Glasser
1055 Thomas Jefferson St., N.W.
Washington, DC 20007
(202) 463-2101

*Counsel for Appellant Official Committee of Talc Claimants*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Rules 26.1 of the Federal Rules of Appellate Procedure and 26.1 of the Third Circuit Local Appellate Rules, counsel for Appellant hereby state that the Official Committee of Talc Claimants is not a corporate entity. The Committee consists of ten natural persons and Blue Cross and Blue Shield of Massachusetts ("BCBSMA"). BCBSMA is composed of Blue Cross and Blue Shield of Massachusetts, Inc. ("BCBS Inc.") and Blue Cross and Blue Shield of Massachusetts HMO Blue, Inc. ("HMO Inc."). BCBS Inc. and HMO Inc. are not-for-profit medical services corporations organized as charitable organizations. BCBS Inc. is organized under M.G.L. cc.176A and 176B, and HMO Inc. is organized under M.G.L. c.180. BCBS Inc. is the parent of HMO Inc.

Counsel for Appellant further state that Johnson & Johnson is the parent company of Debtor-Appellee, LTL Management LLC. Johnson & Johnson is a publicly owned corporation with a financial interest in this litigation. Among other things, Johnson & Johnson asserts that it has indemnification rights against the Debtor and has obligations to the Debtor under a Funding Agreement. This appeal also involves an order entered by the bankruptcy court halting talc-related litigation against Johnson & Johnson and other entities.

June 30, 2022

*/s/ Angelo J. Genova*
Angelo J. Genova

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................1

JURISDICTION...............................................................................4

STATEMENT OF ISSUES PRESENTED....................................................4

STATEMENT OF RELATED CASES.........................................................5

STATEMENT OF THE CASE.................................................................5

I.    Background of Talc Litigation .........................................................5

    A.    J&J's Tortious Conduct...........................................................5

    B.    J&J and Old JJCI Satisfy Talc Liabilities in the Ordinary Course.................................................................................7

II.    J&J Orchestrates LTL's Creation and Immediate Bankruptcy .......................8

    A.    J&J Assigns Operating Assets to New JJCI and Talc Liabilities to LTL....................................................................9

    B.    LTL Files for Bankruptcy ....................................................12

III.    Proceedings Below ...................................................................13

SUMMARY OF ARGUMENT ..............................................................16

ARGUMENT ................................................................................18

I.    The Bankruptcy Court's Decision Denying the Motion To Dismiss Was Legal Error...........................................................................20

    A.    The Bankruptcy Court Erred in Holding LTL's Petition Had a Valid Bankruptcy Purpose ................................................21

        1.    Bankruptcy's Supposed Litigation Advantages Cannot Justify a Good-Faith Filing ......................................22

i

2.      The Bankruptcy Court Exceeded Its Proper Role by Making Ad Hoc Policy Judgments About Bankruptcy's Supposed Advantages over the Ordinary Civil Justice System ...................................................................26

3.      The Bankruptcy Court's Assessment Rests on Flawed Assumptions ................................................................29

B.      The Scheme Defies the Code's Structure and Principles ....................31

1.      LTL's Structure Evades Traditional Bankruptcy Protections ................................................................31

2.      The Scheme Threatens the Public Interest and Raises Serious Constitutional Questions ...............................38

C.      The Bankruptcy Court's Finding of "Financial Distress" Was Reversible Error ...................................................................39

1.      Old JJCI's Financial Situation Was Irrelevant .........................39

2.      The Bankruptcy Court Applied the Wrong Legal Standard ...................................................................40

3.      No Finding of Financial Distress Is Sustainable as to LTL ......42

D.      The Court's "Unusual Circumstances" Holding Was Erroneous .......43

II.     The Bankruptcy Court Committed Legal Error in Freezing Tens of Thousands of Suits Against Hundreds of Non-Debtors ................................44

A.      The Bankruptcy Court Lacked "Core" Jurisdiction To Enjoin Tens of Thousands of Suits Against Non-Debtors ............................45

B.      The Bankruptcy Court Lacked "Related-To" Jurisdiction To Enjoin Cases Against Non-Debtors ...................................................49

1.      Manufactured Grounds for "Related-To" Jurisdiction Cannot Support Jurisdiction ..........................................50

2.      Putative Effects of Suits Against Non-Debtors Fall Short .......52

3.      Claims Against Non-Debtors Would Not Liquidate Claims Against LTL ...............................................................54

        4.     Allegations of Shared Insurance Cannot Establish "Related-To" Jurisdiction ........................................................56

  C.    The Bankruptcy Court Failed To Apply the Correct Legal Standard ..................................................................................57

CONCLUSION ...........................................................................................62

# TABLE OF AUTHORITIES

Page(s)

CASES

*A.H. Robins Co. v. Piccinin*,
   788 F.2d 994 (4th Cir. 1986) .................................................................58

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ...............................................................................27

*Armstrong v. Exceptional Child Ctr., Inc.*,
   575 U.S. 320 (2015) ...............................................................................37

*CAE Indus. LTD v. Aerospace Holdings Co.*,
   116 B.R. 31 (S.D.N.Y. 1990) ...............................................................58

*Carl v. Johnson & Johnson*,
   237 A.3d 308 (N.J. App. Div. 2020), *cert. denied*,
   244 A.3d 270 (N.J. 2021) ........................................................................7

*Carolin Corp. v. Miller*,
   886 F.2d 693 (4th Cir. 1989) .................................................................19

*Case v. L.A. Lumber Prods. Co.*,
   308 U.S. 106 (1939) ...............................................................................35

*Chesapeake Crossing Assocs. v. TJX Cos.*,
   Civ. A. 2:92CV631, 1992 WL 469801 (E.D. Va. 1992)......................58

*Czyzewski v. Jevic Holding Corp.*,
   137 S. Ct. 9739 (2017)............................................................. 32, 37, 38

*Dunphy v. Ryan*,
   116 U.S. 491 (1886) ...............................................................................62

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
   561 U.S. 477 (2010) ...............................................................................27

*Georgine v. Amchem Prods., Inc.*,
   83 F.3d 610 (3d Cir. 1996) ....................................................................27

*Georgine v. Amchem Prods., Inc.*,
   878 F. Supp. 716 (E.D. Pa. 1994)..........................................................27

*Gold v. Johns-Manville Sales Corp.*,
  723 F.2d 1068 (3d Cir. 1983) ........................................................ 56, 60

*In re 15375 Mem'l Corp. v. BEPCO, L.P.*,
  589 F.3d 605 (3d Cir. 2009) ...................................................... *passim*

*In re 15375 Mem'l Corp. v. BEPCO, L.P.*,
  382 B.R. 652 (Bankr. D. Del. 2008) .................................................. 23

*In re A.H. Robins Co.*,
  89 B.R. 555 (Bankr. E.D. Va. 1988) ................................................ 41

*In re Combustion Engineering, Inc.*,
  391 F.3d 190 (3d Cir. 2004) ...................................................... *passim*

*In re Cont'l Airlines*,
  203 F.3d 203 (3d Cir. 2000) ........................................................ 45

*In re Dow Corning Corp.*,
  244 B.R. 673 (Bankr. E.D. Mich. 1999) ........................................ 36

*In re Federal-Mogul Glob. Inc.*,
  300 F.3d 368 (3d Cir. 2002) .................................................... 49, 54

*In re Federal-Mogul Glob. Inc.*,
  684 F.3d 355 (3d Cir. 2012) ........................................................ 30

*In re Integrated Telecom Express, Inc.*,
  384 F.3d 108 (3d Cir. 2004) ...................................................... *passim*

*In re Ira Haupt & Co.*,
  361 F.2d 164 (2d Cir. 1966) ........................................................ 18

*In re Johns-Manville*,
  36 B.R. 727 (Bankr. S.D.N.Y. 1984) ........................................ 36, 41

*In re Johnson & Johnson Talcum Powder Prods. Mktg.*,
  *Sales Pracs. & Prods. Litig.,* 509 F. Supp. 3d 116 (D.N.J. 2020) .................... 7

*In re Maislin Indus., U.S., Inc.*,
  66 B.R. 614 (E.D. Mich. 1986) .................................................... 50

*In re Mallinckrodt PLC*,
  — B.R. —, No. 20-12522, 2022 WL 404323
  (Bankr. D. Del. Feb. 8, 2022) ...................................................... 36

v

*In re Primestone Inv. Partners L.P.*,
    272 B.R. 554 (D. Del. 2002) ...............................................37

*In re Resorts Int'l, Inc.*,
    372 F.3d 154 (3d Cir. 2004) ...............................................48

*In re SGL Carbon Corp.*,
    200 F.3d 154 (3d Cir. 1999) .................................... *passim*

*In re SGL Carbon Corp.*,
    233 B.R. 285 (D. Del. 1999) ........................................ 23, 41

*In re Venoco LLC*,
    998 F.3d 949 (3d Cir. 2021) ...............................................32

*In re W.R. Grace & Co.*,
    13 F.4th 279 (3d Cir. 2021) ...............................................61

*In re W.R. Grace & Co.*,
    591 F.3d 164 (3d Cir. 2009) ........................... 47, 48, 49, 54

*Ingham v. Johnson & Johnson*,
    608 S.W.3d 663 (Mo. Ct. App. 2020), *cert. denied*,
    141 S. Ct. 2716 (2021) ........................................... *passim*

*Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*,
    456 U.S. 694 (1982) ...............................................50

*Johnson & Johnson Talcum Powder Cases*,
    249 Cal. Rptr. 3d 642 (Cal. Ct. App. 2019) .........................7

*Kieffer v. Best Buy*,
    14 A.3d 737 (N.J. 2011) ...............................................54

*Kimbrough v. United States*,
    552 U.S. 85 (2007) ...............................................27

*Local Loan Co. v. Hunt*,
    292 U.S. 234 (1934) ...............................................1

*Maritime Elec. Co. v. United Jersey Bank*,
    959 F.2d 1194 (3d Cir. 1991) ....................................... 48, 57

*Mazurek v. Armstrong*,
    520 U.S. 968 (1997) ...............................................58

*McCartney v. Integra Nat'l Bank N.*,
106 F.3d 506 (3d Cir. 1997) .......................................................................... 48, 51

*Norwest Bank Worthington v. Ahlers*,
485 U.S. 197 (1988) ............................................................................................ 61

*Olson v. Brenntag N. Am., Inc.*,
No. 190328/2017, 2020 WL 6603580 (N.Y. Sup. Ct. Nov. 11, 2020) ............... 55

*Pacor, Inc. v. Higgins*,
743 F.2d 984 (3d Cir. 1984) ................................................................. 49, 54, 56

*Patton v. Bearden*,
8 F.3d 343 (6th Cir. 1993) ................................................................................. 49

*Pepper v. Litton*,
308 U.S. 295 (1939) .......................................................................................... 38

*Prudencio v. Johnson & Johnson*,
No. RG20061303 (Cal. Super. Ct. Aug. 27, 2021) ............................................. 55

*Stanford v. Foamex L.P.*,
Civ. A. 07-4225, 2009 WL 1033607 (E.D. Pa. Apr. 15, 2009) .......................... 48

*Stern v. Marshall*,
564 U.S. 462 (2011) ..................................................................................... 22, 39

*Stoe v. Flaherty*,
436 F.3d 209 (3d Cir. 2006) ......................................................................... 46, 48

*Temple Univ. Hosp., Inc. v. Sec'y U.S. Dep't of Health & Hum. Servs.*,
2 F.4th 121 (3d Cir. 2021) ........................................................................... 45, 46

*Wellness Int'l Network, Ltd. v. Sharif*,
575 U.S. 665 (2015) .......................................................................................... 39

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) .............................................................................................. 58

*Zadvydas v. Davis*,
533 U.S. 678 (2001) .......................................................................................... 39

## CONSTITUTIONAL PROVISIONS AND STATUTES

U.S. Const., amend. VII ................................................................................ *passim*

11 U.S.C. § 105 ................................................................ *passim*

11 U.S.C. § 105(a) ............................................ 31, 47, 48, 49

11 U.S.C. § 301(b) ......................................................... 30

11 U.S.C. § 362 ................................................................ *passim*

11 U.S.C. § 362(a) ..................................... 45, 48, 57

11 U.S.C. § 363 ..................................................... 32, 33

11 U.S.C. § 521 ............................................................ 32

11 U.S.C. § 524(g) ........................................ 29, 30, 31, 61

11 U.S.C. § 524(g)(2)(B)(i)(I) ........................................ 30

11 U.S.C. § 524(g)(2)(B)(ii)(IV)(bb) ............................... 30

11 U.S.C. § 726(a)(6) ...................................................... 32

11 U.S.C. § 1104(a) ........................................................ 32

11 U.S.C. § 1112(b) ...................................... 3, 14, 18

11 U.S.C. § 1112(b)(2) ................................................... 43

11 U.S.C. § 1112(b)(2)(A) ............................................. 43

11 U.S.C. § 1112(b)(2)(B)(i) .......................................... 44

11 U.S.C. § 1112(b)(2)(B)(ii) ......................................... 44

11 U.S.C. § 1129(a)(7) ................................................... 32

11 U.S.C. § 1129(b)(2) ................................................... 32

11 U.S.C. § 1129(b)(2)(A)(iii) ........................................ 35

28 U.S.C. § 157(a) ........................................................... 4

28 U.S.C. § 158(d)(2)(A)(i) .............................................. 4

28 U.S.C. § 158(d)(2)(A)(iii) ............................................ 4

28 U.S.C. § 1334(a) .......................................................... 4

28 U.S.C. § 1334(b) .................................................. 46, 49

28 U.S.C. § 1359 ...................................................................50

28 U.S.C. § 1452 ...................................................................46

T.B.O.C. §§ 10.0001 *et seq.* ..................................................9

## OTHER AUTHORITIES

2022 First Quarterly Dividend Announcement, Johnson & Johnson
(Jan. 4, 2022) ...................................................................34

Individual Characteristics of Mass Torts Case Congregations, A Report to
the Mass Torts Working Group, Fed. Jud. Ctr. (Jan. 1999) .................29

Ovarian Cancer: Stage 4, Minnesota Ovarian Cancer Alliance
(last visited June 28, 2022) ..................................................60

Thomas E. Plank, *The Constitutional Limits of Bankruptcy,*
63 Tenn. L. Rev. 487 (1996) ...............................................32

Hon. Eduardo C. Robreno, *The Federal Asbestos Product Liability Multidistrict
Litigation (MDL-875): Black Hole or New Paradigm?,*
23 Widener L.J. 97 (2013)....................................................29

Summary Statistics, United States District Court Judicial Panel on
Multidistrict Litigation (June 30, 2019) ..................................29

Survival Rates for Mesothelioma, American Cancer Society
(Mar. 2, 2022).................................................................60

Written Testimony of Hon. Judith Fitzgerald, Sheldon Whitehouse U.S. Senator
for Rhode Island (Feb. 8, 2022)...........................................37

# PRELIMINARY STATEMENT

The courts have "again and again emphasized" bankruptcy law's fundamental "purpose": To give a fresh start to "the honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244-45 (1934). Companies facing financial distress from mass-tort liabilities, like Johns-Manville, thus have placed themselves in bankruptcy while accepting bankruptcy law's concomitant requirements: They subjected their operations, assets, and transactions to court supervision, accepted the bankruptcy system's priority scheme for distributions, and complied with disclosure requirements. This appeal concerns an effort to do the opposite—to obtain the benefits of bankruptcy while evading the corresponding obligations, and to convert bankruptcy into a claims-resolution mechanism for the benefit of non-debtors.

Johnson & Johnson ("J&J") is one of the world's largest and most financially stable corporations, with a better credit rating than the United States. J&J—together with its subsidiary Johnson & Johnson Consumer Inc. ("Old JJCI")—confronted adverse court judgments for ovarian cancer and mesothelioma caused by their JOHNSON's Baby Powder and talc-related products. Rather than declare bankruptcy themselves, they engaged in a maneuver termed the "Texas Two-Step." First, at J&J's instruction, Old JJCI transferred its talc-related tort *liabilities* to a newly created shell entity, "LTL Management LLC," but its *operating assets* to another

new company, "New JJCI." Second, within 48 hours of its creation, LTL alone declared bankruptcy, leaving Old JJCI's productive operations and trade creditors outside bankruptcy.

That scheme contravenes the Bankruptcy Code's structure. Far from being an "honest but unfortunate" debtor with a pre-existing business, LTL is a contrived entity selectively assigned specific liabilities to help affiliates evade bankruptcy requirements. For example, under the Two-Step, the talc-claimant creditors J&J and Old JJCI targeted are relegated to bankruptcy, where their claims can be reduced. But Old JJCI's former shareholders and other creditors sit outside the bankruptcy, able to enjoy payments New JJCI generates from the operating assets it received from Old JJCI. That circumvents bankruptcy's priority system, including the requirement that creditors be paid ahead of shareholders. The Bankruptcy Code also requires that debtors "surrender" their assets, placing their management under the bankruptcy court's power. The Two-Step evades that requirement. Despite having received Old JJCI's operating businesses, New JJCI—along with J&J and its affiliates—stands outside bankruptcy. The bankruptcy court is thus left to process mass-tort claims, but without control over the assets and management of the business whose conduct precipitated those claims.

That effort to seek bankruptcy's benefits, while evading its obligations, cannot satisfy 11 U.S.C. § 1112(b)'s requirement that bankruptcy be filed in objective good faith. LTL's bankruptcy lacks any valid bankruptcy purpose. With no employees or pre-existing business, LTL has nothing to "reorganize." An abbreviation for "Legacy Talc Litigation," LTL was created solely to resolve talc claims in bankruptcy, away from juries. The resulting bankruptcy operates for the benefit of non-debtors, who sit outside the bankruptcy in control of the business—while suits by rapidly dying victims are halted.

Separately, the bankruptcy court granted further relief to complete the Two-Step scheme: It halted litigation against some 670 ***non-debtors,*** including J&J, New JJCI, insurers, and retailers, freezing (sometimes mid-trial) more than 38,000 talc-related tort actions by ill claimants, hundreds of whom have died during the bankruptcy already. Those actions seek to hold J&J directly liable for its independent wrongdoing, as confirmed by courts. The bankruptcy court had neither jurisdiction, nor legal or factual bases, for so broad an injunction. If J&J or Old JJCI needed bankruptcy protection—and were in financial distress—either was free to file. Mass tortfeasors, however, should not so easily make a sham of the Bankruptcy Code's calibrated architecture to circumvent the civil tort system and the claimants' right to jury trials otherwise guaranteed by the Seventh Amendment.

# JURISDICTION

On April 4, 2022, the bankruptcy court certified for direct appeal its orders denying motions to dismiss LTL's petition ("MTD Order"), App. 57-58, and freezing actions against non-debtors ("PI Order"), App. 194-201, under 28 U.S.C. § 158(d)(2)(A)(i), (iii).  On May 11, 2022, this Court accepted the case.  App. 268-72 (No. 22-8015, Dkt. 12).

The bankruptcy court had jurisdiction over the bankruptcy under 28 U.S.C. §§ 1334(a) and 157(a), but as explained below, lacked jurisdiction to issue the PI Order.

# STATEMENT OF ISSUES PRESENTED

1.    Whether LTL's bankruptcy petition must be dismissed because (a) the petition lacks a valid bankruptcy purpose; (b) the petition contravenes the Bankruptcy Code's structure and foundational principles; and/or (c) LTL did not face the requisite financial distress.   App. 15, 40 (Opinion Denying Motions To Dismiss ("MTD Op.")).

2.    Whether LTL's bankruptcy petition, even if not filed in good faith, can be sustained because of "unusual circumstances."  App. 13 n.8 (MTD Op.).

3.    Whether the bankruptcy court's PI Order, halting litigation against more than 670 non-debtors, was void for lack of subject-matter jurisdiction or

otherwise inconsistent with the Code.   App. 193 (Opinion Granting Preliminary Injunction ("PI Op.")).

## STATEMENT OF RELATED CASES

This case has not previously been before this Court.   Related appeals of the bankruptcy court's MTD Order and PI Order are stayed before the district court (D.N.J. Nos. 22-1280, 22-1289, 22-1292, 22-1296, 22-1303, 22-1339, 22-1350, 22-1387, 22-1620).   In February 2019, Old JJCI's talc supplier, Imerys Talc America, Inc. and affiliates Imerys Talc Vermont, Inc. and Imerys Talc Canada, Inc., filed Chapter 11 petitions.   *In re Imerys Talc Am., Inc.*, D. Del. Bankr. 19-10289-LSS.   In February 2021, talc miner Cyprus Mines Corporation also filed for Chapter 11.   *In re Cyprus Mines Corp.*, D. Del. Bankr. 21-10398-LSS.

## STATEMENT OF THE CASE

## I.   BACKGROUND OF TALC LITIGATION

### A.   J&J's Tortious Conduct

J&J manufactured talc-based JOHNSON'S Baby Powder until 1979.   Since then, various J&J subsidiaries and ultimately Old JJCI produced it.   App. 2-3 (MTD Op.).   J&J retained responsibility for health-and-safety policy decisions for Baby Powder:   It had the power to require product warnings or stop selling talc products, but failed to do so.   App. 6058-59 (52:22-53:10), 6061 (55:1-12), 6907-08 (7751:23-7752:15), 6912 (7833:12-18) (Hopkins Testimony).   Instead, in 2018 and 2019, J&J,

5

including its CEO Alex Gorsky, issued public statements assuring consumers that its talc products were safe.  App. 6913-23 (Trial Exhs.).

In December 2018, Health Canada identified a causal connection between genital exposure to talc and ovarian cancer.  App. 7061 (2018 Assessment); App. 7077 (2021 Assessment).  In October 2019, the FDA detected asbestos, the only known cause of mesothelioma, in J&J's Baby Powder.  App. 2643 (53:11-19) (Kim Testimony).  From November 2019 to October 13, 2021 (one day before LTL's bankruptcy), seven mesothelioma plaintiffs won trials against J&J and Old JJCI.  *Id.* at 2644-45 (54:14-55:9); *see* App. 364 (Debtor Info Brief 49).  Juries also found J&J and Old JJCI liable for ovarian cancer caused by their talc products.  App. 457-58 (Kim Decl. ¶¶ 36-39); *Ingham v. Johnson & Johnson*, 608 S.W.3d 663, 724-25 (Mo. Ct. App. 2020), *cert. denied*, 141 S. Ct. 2716 (2021).

Although J&J had long known talc could cause cancer, App. 6893-94 (45:20-46:13) (Hopkins Testimony), it did not stop selling talc-based Baby Powder in the U.S. and Canada until May 2020, App. 456-57 (Kim Decl. ¶ 33).  Today, J&J sells only baby powder made of cornstarch in the U.S. and Canada, a product it has sold for decades.  App. 6896 (37:1-22) (Hopkins Testimony).

By the time LTL (or "Debtor") filed its bankruptcy petition, J&J and Old JJCI faced more than 38,000 ovarian cancer claims—about 35,000 in a Multi-District

Litigation proceeding ("MDL") in the District of New Jersey, roughly 2,200 claims consolidated in California and New Jersey state courts, and another 1,100 claims in other state courts.  App. 439 (Debtor Info Brief 124).  J&J and Old JJCI also faced more than 400 mesothelioma cases, with more than 250 in one New Jersey state court.  *Id.* at 440.

J&J disputes the causal link between its talc-related products and cancer.  After hearing extensive evidence, however, the MDL court admitted (with limited exceptions) expert testimony establishing a causal relationship between talc products and ovarian cancer.  *See In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Prods. Litig.*, 509 F. Supp. 3d 116, 198 (D.N.J. 2020).  Trial and appellate courts have repeatedly rejected J&J's position on talc's safety.  *See, e.g.*, *Ingham*, 608 S.W.3d at 718; *Carl v. Johnson & Johnson*, 237 A.3d 308, 311 (N.J. App. Div. 2020), *cert. denied*, 244 A.3d 270 (N.J. 2021); *Johnson & Johnson Talcum Powder Cases*, 249 Cal. Rptr. 3d 642, 676 (Cal. Ct. App. 2019).

### B.    J&J and Old JJCI Satisfy Talc Liabilities in the Ordinary Course

Until this bankruptcy, J&J and Old JJCI satisfied talc and other liabilities in the ordinary course.  In May 2020, J&J told a bankruptcy court in a different talc-liability case that it was "absurd" to suggest that "J&J may lack the financial where-withal to meet its obligations."  App. 4700 (Diaz Report 7).  J&J boasted being "one

of the top 10 companies in the United States by market value," which "can provide the claimants far greater protection than . . . the bankruptcy claims trust ever could." *Id.*

J&J is one of the world's most liquid companies: As of October 2021, it had roughly $30 billion in annual earnings before interest, taxes, and amortization, App.3424(36:13-14) (Kaplan Dep.); over $41 billion in cash, marketable securities, and credit lines; and, despite talc liabilities, a credit rating better than the United States, App.4699(Diaz Report 6); App.4662-75(Burian Report 25-38).

## II.    J&J ORCHESTRATES LTL'S CREATION AND IMMEDIATE BANKRUPTCY

On July 19, 2021, J&J's corporate treasurer told Standard & Poor's that J&J "feel[s] failed by courts," and might "seek to cap [talc] liability"—through a scheme involving a "re-org," a "split," and a "Texas corp." App.7115(Kaplan Notes 1). She told Moody's: "We are looking at a number of ways of capping our talc liability, especially" in light of the denial of certiorari in *Ingham*, 141 S. Ct. 2716 (2021). App.4469(email). "One scenario being considered," she elaborated, "would be to capture the liability in one subsidiary, and fund that subsidiary for current and future losses, and then basically bankrupt that subsidiary." *Id.* She never suggested J&J or any existing affiliate confronted financial distress.

In October 2021, J&J executed on that plan through the "Texas Two-Step" at issue here. Step one was a corporate restructuring under the Texas divisive merger statute, T.B.O.C §§ 10.0001 *et seq.* *See* App. 448, 450-53 (Kim Decl. ¶¶ 16, 22-23). Through "labyrinthine" transactions the bankruptcy court found "somewhat over-whelming," App. 5 (MTD Op.), J&J effectively extinguished Old JJCI and divided it into two new companies—"New JJCI" to hold Old JJCI's productive assets, and "LTL" to receive talc-related liabilities. *See* App. 477 (Kim Decl.) (org chart); *see also* App. 4712-22 (Diaz Report 19-29) (diagrams). Step two, effectuated two days later, was to place LTL, but not New JJCI and thus no operating business, into bankruptcy. As LTL chief legal officer John Kim—who previously managed talc litigation for J&J—testified, "the whole purpose of the restructuring was to enable LTL, the company, ***to file for bankruptcy without subjecting the rest of the assets of JJCI to the bankruptcy procedure***." App. 2481 (201:12-15) (emphasis added); *see* App. 445 (Kim Decl. ¶ 2).

## A.    J&J Assigns Operating Assets to New JJCI and Talc Liabilities to LTL

In the restructuring, Old JJCI's business assets, including a range of well-known brands (such as Tylenol, Band-Aid, and Neutrogena), together with non-talc liabilities (*e.g.*, trade claims), were assigned to New JJCI. App. 448-49, 451-53 (Kim Decl. ¶¶ 16, 19, 23-24); App. 2321 (41:7-22) (Mongon Testimony). As LTL's chief

9

legal officer explained, "the entity that was formerly JJCI and the entity that is the new JJCI were . . . virtually identical except for it no longer had the talc liabilities." App. 2481 (201:16-19) (Kim Testimony).

The talc liabilities went to LTL ("Legacy Talc Litigation"). App. 3417 (13:18-23) (Kaplan Dep.). LTL was given no operating business. App. 4737-38 (Diaz Report 44-45). LTL has no employees of its own. Its board, management, and professionals are paid by J&J and work (or worked) for J&J. *Id.* at 4731-33, 4737-38. LTL's office is "hoteling" space in a J&J building. App. 2116 (125:8-23) (Wuesthoff Testimony). As of its bankruptcy petition, LTL's bank account was not in its own name. *See* Bankr. Dkt. 548 (Debtor's Chapter 11 Monthly Operating Report 14, ¶ 8). LTL has no bonds, trade creditors, or pension liabilities. App. 2117-18 (126:23-127:13) (Wuesthoff Testimony); App. 3479 (36:23-24, 37:5-13, 45:15-18, 45:21-23) (Kim Dep.). Its sole purpose is resolving talc liabilities.

LTL was funded with a $6 million bank account and the rights to royalty streams valued at $367.1 million as of the petition date. App. 7 (MTD Op.). J&J and New JJCI jointly and severally committed, under a Funding Agreement, to fund LTL's expenses (*i.e.*, to resolve talc liabilities assigned to LTL) outside of bankruptcy, up to the value of New JJCI. *Id.* at 44 n.27. The bankruptcy court accepted

LTL's assertions that the Funding Agreement provided $61 billion in potential liquidity. *Id.* at 35; App. 2641 (51:13-24) (Kim Testimony).

If LTL filed for bankruptcy, the Funding Agreement provided that J&J and New JJCI would fund a trust under a confirmed plan to resolve talc liabilities. App. 44 n.27 (MTD Op.). Thus, before bankruptcy, LTL faced no restrictions on paying talc liabilities on a current basis up to the Funding Agreement cap. App. 4725 (Diaz Report 32). After bankruptcy, LTL would receive nothing under the Funding Agreement to satisfy a single talc claim until entry of a final non-appealable order confirming a reorganization plan with a trust for victims. *Id.*; App. 4234 (Funding Agreement 6).

J&J drove and controlled those transactions. An October 11, 2021 memorandum outlining the restructuring sought approval only from J&J officials. App. 4444-55; *see* App. 2296-97 (16:19-22, 17:2-7) (Mongon Testimony). Old JJCI's president did not see it before approving the restructuring. App. 2273-75 (282:24-283:4, 284:1-19) (Goodridge Testimony). Advised by a J&J attorney, she signed the restructuring documents without changing a word. App. 3388-89 (34:14-36:4) (Goodridge Dep.); App. 2194 (203:7-17) (Goodridge Testimony). The record does not show negotiations regarding any material term of the transaction between LTL

and J&J, much less arms-length negotiations.    App. 4651 (Burian Report 14);

App. 2135 (144:6-16) (Wuesthoff Testimony); App. 4733-37 (Diaz Report 40-44).

### B.    LTL Files for Bankruptcy

On October 14, 2021, two days after LTL's creation, LTL's board met and

authorized LTL to file for bankruptcy.    App. 2 (MTD Op.); App. 4456 (Board

Minutes).    Only lawyers—no businesspeople—presented.    App. 4456-62.    When

LTL filed for bankruptcy that same day, it had paid no bills and had never en-

countered difficulty satisfying any obligations.    App. 3495 (195:10-196:4) (Kim

Dep.).

There is no evidence LTL's board understood that the bankruptcy petition

eliminated LTL's ongoing access to billions in liquidity under the Funding

Agreement.    App. 4725 (Diaz Report 32).    Nor is there evidence the board had suffi-

cient information to understand LTL's assets and liabilities.    *Id.*    LTL's president

(Robert Wuesthoff) and chief financial officer (Richard Dickinson)—both recruited

by J&J—had no experience with bankruptcy or talc litigation.    App. 2094-95 (103:9-

104:4),  2101-02 (110:24-111:1),  2118 (127:14-16)  (Wuesthoff Testimony);  App.

3357 (88:12-19), 3348 (25:19-26:4), 3372-73 (230:6-19) (Dickinson Dep.).    Before

the LTL board meeting, no written analysis was provided to the board regarding a

bankruptcy filing.    App. 2120 (129:13-16) (Wuesthoff Testimony).    The board had

no projection of future talc expenses, verdicts, or settlements.  App. 2139 (148:21-23) (Wuesthoff Testimony); App. 3358 (92:15-20) (Dickinson Dep.).  It did not discuss whether insurance coverage was available.  App. 2141-42 (150:24-151:10) (Wuesthoff Testimony).  It did not know the value of the Funding Agreement:  J&J never told the board; the board never asked.  *Id.* at 2133-35 (142:10-144:5); App. 3355 (75:10-76:18) (Dickinson Dep.); App. 2599-2606 (9:14-16:13) (Kim Testimony).

A critical goal of the bankruptcy was to freeze pending actions against J&J and other non-debtors, putting an end to jury trials.  J&J announced that "all pending cosmetic talc cases will be stayed," and that J&J and its affiliates "will continue to operate their business as usual," before such relief had even been sought in the bankruptcy case.  App. 6925 (J&J Oct. 19, 2021 8-K).  According to LTL, absent an injunction halting talc litigation against J&J and other non-debtors, "[t]he entire purpose of this" bankruptcy "would be thwarted."  App. 4219 (Omnibus Reply in Support of PI 51).

## III.    PROCEEDINGS BELOW

LTL filed its Chapter 11 petition in the Western District of North Carolina, a forum perceived as having a more lenient good-faith standard for bankruptcy filings.  The court transferred the case to New Jersey, where J&J is headquartered.  LTL's

assets, it found, "were all set up primarily for the purpose of filing bankruptcy in this district," and none were "involved in any further business in North Carolina." App. 1511 (Transfer Order 6).   LTL was "trying to manufacture venue and . . . outsmart the purpose of the statute." *Id.* at 1515.

The Motions To Dismiss.   On December 1, 2021, the Official Committee of Talc Claimants ("TCC" or "Committee")—Appellant here—and others moved to dismiss the bankruptcy proceeding under § 1112(b) of the Code for (among other reasons) lack of a valid bankruptcy purpose.  App. 1730-31 (TCC MTD); App. 1 n.2 (MTD Op.).  The U.S. Trustee supported dismissal, or appointment of a Chapter 11 trustee.  App. 3012 (96:1-4) (hearing transcript).

The U.S. Trustee emphasized that LTL's officers had performed no "independent functions" and merely "capitulated and signed off on the decisions and strategy of J&J."  App. 3013 (97:11-13).  The "desire to exploit bankruptcy powers for non-debtor affiliates" like J&J "is decidedly not a legitimate bankruptcy purpose." *Id.* at 3016 (100:20-22).  J&J, moreover, had shifted "adjudication of its tort litigation . . . away from the solvent business of J&J" to a shell company in bankruptcy, while keeping "extraordinary and extensive resources"—all productive business assets—outside bankruptcy, free from "the burdens of bankruptcy" and beyond "the Code's commands." *Id.* at 3016-17 (100:19-101:13).

14

The bankruptcy court denied the motions. The court did not find bankruptcy was necessary to preserve LTL as a "going concern." App. 15 (MTD Op.). And it nowhere found that J&J or Old JJCI had difficulty paying tort claims in the ordinary course before LTL's bankruptcy. But it ruled that LTL's petition would "maximize the property available to satisfy creditors," because "the court-administered claims assessment process" "will dramatically reduce costs" compared to the civil justice system. *Id.* It asserted that "[t]he tort system has struggled to meet the needs of present claimants in a timely and fair manner [and] is ill-equipped to provide for future claimants." *Id.* at 24. It emphasized its "strong conviction that the bankruptcy court is the optimal venue" for talc liability disputes. *Id.* at 19.

Recognizing that a good-faith filing requires "some" showing of "financial distress," *id.* at 37, the court found that requirement met because "J&J and Old JJCI were . . . facing a torrent of significant talc-related liabilities for years to come," *id.* at 40. The court rejected the argument that, if Old JJCI or J&J needed relief in bankruptcy, they—not an artificial construct like LTL—should petition for bankruptcy. Those entities, the court stated, had "too much value to be wasted," *id.* at 47, if subjected to the Code's requirement for "full transparency of all assets, liabilities and financial conduct," as well as "judicial oversight," *id.* at 48.

Stay/Preliminary Injunction.   The same day, the bankruptcy court granted LTL's motion for a sweeping order that halted litigation against some 670 non-debtors, including J&J, hundreds of its affiliates, around 145 retailers (groceries, drugstores, sporting-goods stores, etc.), and 105 insurance companies that deny liability.  App. 196 (PI Order 3); App. 3842-60 (PI Motion, App. B).  The court noted an "unsettled" issue of subject-matter jurisdiction, App. 150 (PI Op. 11), but ruled that it could extend stay relief to non-debtors because "a lawsuit asserting talc-related claims against" those non-debtors "is essentially a suit against Debtor," *id.* at 158, and because such suits would have an "undeniable impact on Debtor's estate," *id.* at 160.

## SUMMARY OF ARGUMENT

**I.**   The bankruptcy court's refusal to dismiss LTL's bankruptcy petition was error.

**A.**   LTL's bankruptcy petition lacks a valid bankruptcy purpose.  LTL is not a going concern and the bankruptcy will not maximize value for creditors.  The heart of the bankruptcy court's decision—a policy-driven argument for the superiority of bankruptcy over tort—contravenes this Court's precedents.  It invades Congress's role and ignores critical values like the Seventh Amendment and the role of state courts.  A desire to resolve claims in bankruptcy court cannot establish good

faith.  It seeks litigation advantage.  The court also ignored that the bankruptcy was designed to benefit non-debtors.  And it erroneously considered the desire for bankruptcy remedies as evidence of good faith.

**B.**    The scheme here defies the Bankruptcy Code's structure.  The Code imposes important obligations on debtors, empowering the bankruptcy court to oversee assets, operations, and non-ordinary-course sales.  It establishes priority among claimants.  Far from effectuating those purposes, the Two-Step scheme is designed to defeat them.  By placing talc liabilities in LTL and operating assets in another company just before LTL's bankruptcy, the scheme circumvents those critical protections:  It leaves only talc creditors encumbered in bankruptcy, but all productive operations outside it.  It affords non-debtors J&J and New JJCI the benefits of bankruptcy while evading its obligations.  By converting bankruptcy courts' limited jurisdiction into a mass-tort processing machinery for entities not in financial distress, the scheme raises significant constitutional questions.

**C.**    The bankruptcy court erroneously looked to the financial situation of an extinct non-debtor, Old JJCI, to justify LTL's bankruptcy.  The bankruptcy court's outlandish estimate of defense costs was unsupported and contradicted J&J's own statements.

**II.**     Separately, the bankruptcy court's unprecedented decision to stay or enjoin actions against some 670 non-debtors—freezing more than 38,000 talc-victim lawsuits asserting direct liability against J&J and hundreds of other non-debtors— cannot be sustained.   The court lacked subject-matter jurisdiction to halt cases against non-debtors; eve-of-bankruptcy transactions cannot manufacture jurisdiction.   J&J's own representations regarding the Funding Agreement preclude any finding that talc litigation against non-debtors would impede LTL's reorganization. Even if jurisdiction exists, the bankruptcy court applied an incorrect legal standard and exceeded its powers.  As Judge Friendly observed, "[t]he conduct of bankruptcy proceedings not only should be right but must seem right."  *In re Ira Haupt & Co.*, 361 F.2d 164, 168 (2d Cir. 1966).  Shutting down the claims of more than 38,000 ill and dying talc claimants for the benefit of non-debtors—based on 11th-hour asset shifting—contravenes that principle.

## ARGUMENT

Time and again, this Court has enforced the rule that "a Chapter 11 petition is subject to dismissal for 'cause' under 11 U.S.C. § 1112(b) unless it is filed in good faith."  *In re SGL Carbon Corp.*, 200 F.3d 154, 162 (3d Cir. 1999); *see In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 119-20 (3d Cir. 2004).  This Court does not require "subjective bad faith . . . to warrant dismissals for want of good

faith." *In re 15375 Mem'l Corp. v. BEPCO, L.P.*, 589 F.3d 605, 618 n.7 & n.8 (3d Cir. 2009) (quoting *Carolin Corp. v. Miller*, 886 F.2d 693, 700-01 (4th Cir. 1989)). The good-faith inquiry focuses "more on objective analysis"; good faith is absent where, in view of "totality of facts and circumstances," the petition does not serve "a valid bankruptcy purpose" or seeks "a tactical litigation advantage." *Id.* at 618 & n.8; *see SGL*, 200 F.3d at 162.

LTL failed to meet its burden of proving good faith. *See Integrated Telecom*, 384 F.3d at 118. As the U.S. Trustee explained, LTL is a shell staffed by officers "enmeshed in the J&J family" who perform no function except to "capitulate[] and sign[] off on" J&J's strategy. App.3013 (97:9-12) (hearing transcript). LTL functions to "exploit bankruptcy powers for non-debtor affiliates," which is "decidedly not a legitimate bankruptcy purpose." *Id.* at 3016 (100:21-22). The bankruptcy court found a valid bankruptcy purpose based on its policy judgment that bankruptcy processes are more efficient than traditional tort suits. But the desire to shift claims against the debtor and others from traditional fora—circumventing the jury trials the Seventh Amendment guarantees and the traditional role of non-bankruptcy courts—is not a valid bankruptcy purpose.

Rooted in equity, the good-faith requirement demands that debtors conform "with the Code's underlying principles." *SGL*, 200 F.3d at 161. Created just 48

hours before the bankruptcy filing, LTL evades those principles by design. By isolating talc liabilities in the made-for-bankruptcy LTL, but placing productive assets elsewhere, J&J and its affiliates seek the benefits of bankruptcy while circumventing its protections and requirements. As the U.S. Trustee put it, J&J and its affiliates demand that courts freeze and then absolve them of "tens of thousands of claims" while they "remain on the sidelines" "without placing [their] assets subject to the Code's commands." App. 3017 (101:10-14) (hearing transcript). The bankruptcy court's injunction against ***non-debtors***—enjoining suits filed by dying claimants—to implement that scheme exceeded its jurisdiction and defies Code principles.

## I.    THE BANKRUPTCY COURT'S DECISION DENYING THE MOTION TO DISMISS WAS LEGAL ERROR

This Court has vigorously, strictly, and repeatedly enforced the Bankruptcy Code's equitable command of objective good faith. In *SGL*, the Court reversed a good-faith determination and overturned lower-court findings. 200 F.3d at 159, 162-63. In *Integrated Telecom*, it overturned good-faith findings by the district and bankruptcy courts. 384 F.3d at 118, 129-30. And in *BEPCO*, the Court affirmed a district court's dismissal, even though the bankruptcy court had denied the motion. 589 F.3d at 616-18. The Court should enforce that command once again.

20

Standard of review.  This Court reviews denials of motions to dismiss Chapter 11 petitions for an abuse of discretion and fact-findings for clear error.  *SGL*, 200 F.3d at 159.  However, "whether the . . . facts of a case support the conclusion of good faith . . . , *i.e.*, whether the application of law to fact was proper . . . is subject to plenary review because it is, essentially, a conclusion of law."  *BEPCO*, 589 F.3d at 616.

### A.    The Bankruptcy Court Erred in Holding LTL's Petition Had a Valid Bankruptcy Purpose

A petition serves a "valid bankruptcy purpose" where bankruptcy will (i) "preserv[e] a going concern" or (ii) "maximiz[e] the value of [its] estate."  *BEP-CO*, 589 F.3d at 619.  Here, the court did not identify any interest in preserving LTL, the made-for-bankruptcy debtor, as a "going concern."  App. 15 (MTD Op.).  LTL is the opposite of a "going concern"—a shell formed only to resolve talc claims.  It has "no going concerns to preserve—no employees, offices, or business other than the handling of litigation."  *BEPCO*, 589 F.3d at 619.

The bankruptcy court found a valid bankruptcy purpose because bankruptcy supposedly "serve[d] to maximize the property available to satisfy creditors."  App. 15 (MTD Op.).  None of LTL's assets, however, were "maximized" by bankruptcy:  Its $6 million bank account and royalty rights remain the same.  And its rights under the Funding Agreement were ***diminished*** by bankruptcy:  LTL lost its

21

right to draw on that agreement to pay talc claims on a current basis; as a result of bankruptcy, the agreement's funding is largely unavailable until there is a confirmed plan after appeals are exhausted, perhaps years down the line.  *See* p. 11, *supra*.

The bankruptcy court's holding to the contrary was based on its "strong conviction that the bankruptcy court is the optimal venue" to fairly and efficiently resolve mass-tort litigation.  App. 19 (MTD Op.).  "In the [court's] eyes . . . the tort system produces an uneven, slow-paced race to the courthouse . . . .  Present and future talc claimants should not have to bear the sluggish pace and substantial risk . . . ."  *Id.* at 27.  The court opined that "which judicial system" is "best" for resolving the claims—tort or bankruptcy—was a "far more significant issue" than the "valid reorganizational purpose" inquiry this Court's precedents require.  *Id.* at 12-13.  This Court's cases foreclose that rationale.

### 1.   Bankruptcy's Supposed Litigation Advantages Cannot Justify a Good-Faith Filing

The Bankruptcy Code is properly invoked to effect reorganizations or dissolutions of distressed debtors.  It is not an alternative dispute resolution system for debtors who—otherwise lacking a valid bankruptcy purpose—deem litigation too expansive or expensive.  "[T]he fact that a given law or procedure is efficient, convenient, and useful" cannot justify the claims being adjudicated in bankruptcy.  *Stern v. Marshall*, 564 U.S. 462, 501 (2011).

22

This Court has repeatedly made that clear.  In *SGL*, the debtor confronted antitrust lawsuits, including a class action.  200 F.3d at 156-57.  The district court allowed the bankruptcy to proceed because "the Debtor ha[d] expressed its hope that its Chapter 11 filing will facilitate a speedy and efficient resolution to the pending litigation."  233 B.R. 285, 290-91 (D. Del. 1999).  This Court reversed, explaining that the "[b]ankruptcy provisions are . . . not intended to be used as a mechanism to orchestrate pending litigation."  200 F.3d at 165.

In *Integrated Telecom,* the debtor argued that its bankruptcy would avoid "the costs and delay inherent in litigation."  Appellee's Br., No. 04-2411, 2004 WL 5020971 (3d Cir. July 7, 2004).  This Court rejected that argument and explained that it could "identify no value . . . that was threatened outside of bankruptcy . . . but that could be preserved or maximized" under Chapter 11.  384 F.3d at 122.

In *BEPCO*, the debtor likewise argued that its "valid bankruptcy purpose[ ]" was "to efficiently and cost effectively resolve and liquidate . . . pending and future claims" and to distribute "assets on a fair and equitable basis."  Appellants' Br., Nos. 09-1391, 09-1432, 09-1608, 2009 WL 5635433 (3d Cir. May 6, 2009).  Agreeing, the bankruptcy court held that "[l]itigating these, and other claims, in Bankruptcy Court is the most efficient way to resolve them."  382 B.R. 652, 686 (Bankr. D. Del. 2008).  This Court again rejected that theory:  The "creation of a central forum to

23

adjudicate claims against the Debtors is not enough to satisfy the good faith inquiry."
589 F.3d at 622.

As in those cases, the bankruptcy court here invoked the putative superiority
of bankruptcy as a means of resolving litigation claims.  App. 23-27 (MTD Op.).  In
its view, "which judicial system—the state/federal court trial system, or . . . chapter
11 reorganization"—"best" serves "the interests of this bankruptcy estate" was a "far
more significant issue" than the considerations this Court has identified.  *Id.* at 12-
13.  Once again, this Court should reject that rationale.  Congress has not authorized
bankruptcy courts to extend their authority based on distaste for traditional judicial
mechanisms or preference for alternatives.  The bankruptcy court's contrary decision
elevated its policy preferences over the will of Congress.

While the absence of a bankruptcy purpose alone dooms the petition, the effort
to move cases to bankruptcy court to avoid ordinary tort procedures is at the extreme
end of the "spectrum," *SGL*, 200 F.3d at 162—an impermissible effort to achieve a
"litigation advantage," *Integrated Telecom*, 384 F.3d at 120.  In *SGL*, this Court held
that unequal treatment of litigation creditors (compared to other creditors) shows the
petition was "filed ***solely*** to gain tactical litigation advantages."  200 F.3d at 167.
Here, J&J's scheme leaves only talc creditors encumbered by the bankruptcy; all

other creditors are preferred and can pursue payment outside bankruptcy from New

JJCI. More blatant inequality is hard to imagine.

In *SGL*, the Court explained that a "petition may be dismissed" if "the timing

of the filing" leaves "no doubt that the primary, if not sole, purpose of the filing was

a litigation tactic." 200 F.3d at 165; *see BEPCO*, 589 F.3d at 625. Here, J&J's Two-

Step scheme was a direct response to litigation setbacks, "especially" the Supreme

Court's denial of certiorari in *Ingham*. App. 4469 (J&J Treasurer email); pp. 8-9,

*supra*. And LTL filed for bankruptcy 48 hours after its creation, without any con-

sideration for whether bankruptcy made sense. As the U.S. Trustee has explained,

LTL's officers simply did as J&J directed. App. 3013 (97:8-16) (hearing transcript);

pp. 12-13, *supra*.

This case is thus like *BEPCO*, where "the Debtors' representative was pri-

marily concerned with protecting the [non-debtor parents], ***not the Debtors***." 589

F.3d at 624. There, the debtors' decisionmakers were "employed by" the non-debtor

parent; "the Debtors' decision to file for bankruptcy was not their own"; and the non-

debtor parent "was ultimately in control of whether the Debtors filed." *Id.* at 624-

25. The same is true here.

J&J has made clear that the goal is to protect J&J, not creditors. Unless the

preliminary injunction against further litigation covers J&J and its affiliates, it urged,

"[t]he entire purpose of this case" "would be thwarted." App. 4219 (Debtors' Omnibus Reply in Support of PI 51). J&J's control dwarfs the non-debtor's role in *BEPCO*:

- J&J orchestrated the restructuring and bankruptcy, without meaningful participation by Old JJCI. *See* pp. 11-12, *supra*.

- The bankruptcy was to "cap[]" J&J's "talc liability" while avoiding "impact on [its] credit rating." App. 4469 (J&J Treasurer email).

- LTL's board and management were all former and current J&J employees who, in the U.S. Trustee's words, were "enmeshed" in J&J's operations. App. 3013 (97:9-11) (hearing transcript).

- LTL's board did not receive basic information about LTL's liquidity, such as the scope of talc liabilities or the value of the Funding Agreement. *See* p. 13, *supra*.

- The LTL board voted to file for bankruptcy, even though that denied it access to billions of dollars in liquidity until a bankruptcy plan is confirmed. *See* p. 11, *supra*.

*BEPCO* makes this an *a fortiori* case. The bankruptcy here operates to benefit non-debtors by design.

> **2.    The Bankruptcy Court Exceeded Its Proper Role by Making Ad Hoc Policy Judgments About Bankruptcy's Supposed Advantages over the Ordinary Civil Justice System**

By invoking the supposed superiority of bankruptcy processes over traditional litigation, the bankruptcy court exceeded its institutional role. Such policy decisions are for Congress. Courts lack "professional staff with appropriate expertise" in

gathering and analyzing "empirical data and national experience." *Kimbrough v. United States*, 552 U.S. 85, 109 (2007). There are critical institutional values beyond efficiency, including the centrality of the Seventh Amendment jury-trial right and the importance of state-court trials in our federal system. "[C]onvenience and efficiency are not the primary objectives—or the hallmarks—of democratic government." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 499 (2010). The bankruptcy court overlooked those other values entirely.

This Court has recognized that Congress must make the policy choices about how to resolve mass-tort claims. In *Georgine v. Amchem Prods., Inc.*, 878 F. Supp. 716 (E.D. Pa. 1994), the district court approved an asbestos class-action settlement because claims resolution under that court-approved compensation scheme would "lower costs, shorten delays, produce consistent results, and provide assurance that compensation will be available." *Id.* at 723-24. This Court reversed, holding such considerations irrelevant:

> The desirability of innovation in the management of mass tort litigation does not escape the collective judicial experience of the panel. But reform must come from the policy-makers, not the courts.

*Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 634 (3d Cir. 1996). The Supreme Court agreed. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 628-29 (1997). This case calls for the same conclusion.

The bankruptcy court admitted that the relative merits of bankruptcy and traditional tort systems have been "the subject of academic, judicial, and policy debates for years." App. 13 (MTD Op.). *J&J itself* has switched its views. In Imerys's talc-related bankruptcy in 2019, J&J touted "the process of efficient adjudication by the MDL court" in handling talc litigation. App. 7094 (J&J Brief 3). It rejected any suggestion that litigation would require "individual trials *ad infinitum*," dismissing that "parade of horribles" as "ill-conceived and disproven by the fact that thousands of state-law claims are currently centralized in the MDL court." App. 7114 (J&J Reply Brief 38). Only after J&J lost its motion to exclude talc claimants' scientific testimony in the MDL in April 2020, and the Supreme Court declined review of *Ingham* in June 2021, did J&J's opposition to the civil justice system materialize. *See* pp. 7-8, *supra*.

The Article I bankruptcy court's denigration of the congressionally established Article III MDL process, *see* App. 23-24, 55 (MTD Op.), illustrates the dangers of ad hoc judicial assessments. MDL proceedings have successfully resolved mass torts, centralizing nearly 1 million lawsuits without depriving claimants of traditional rights. *See* App. 1938 (Law Professors' Amicus Br. 7). Ninety percent involved product-liability mass-tort claims. *Id.* at 1939. MDLs resolved nearly 14,000 cases in 2019 alone. *Id.* at 1942. Bellwether cases can establish facts

28

regarding liability, causation, and damages, making settlement parameters clear. MDL-875 has resolved over 186,000 asbestos cases since 2006 **without** a global settlement.[1]  As the Federal Judicial Center noted, even though asbestos involves "latent claims," "[a]s symptoms of those injuries become manifest, the cases are routinely filed and, apparently, settled."[2]  *See* Hon. Eduardo C. Robreno, *The Federal Asbestos Product Liability Multidistrict Litigation (MDL-875): Black Hole or New Paradigm?*, 23 Widener L.J. 97, 100 (2013).  While the debate has two sides, the propriety of a bankruptcy petition cannot depend on a bankruptcy court's ad hoc policy views about the benefits of claims processing in bankruptcy.

### 3.    The Bankruptcy Court's Assessment Rests on Flawed Assumptions

The bankruptcy court's assessment of the virtues of the bankruptcy system suffered from other fatal flaws.  For example, the court invoked the availability of a settlement trust and channeling injunction for present and future asbestos claimants under 11 U.S.C. § 524(g).  App. 28-29 (MTD Op.).  But the "desire to take advantage

---

[1] Summary Statistics, United States District Court Judicial Panel on Multidistrict Litigation (June 30, 2019), https://www.paed.uscourts.gov/documents/MDL/MDL875/MDL-875.jun30.2019.pdf.

[2] Individual Characteristics of Mass Torts Case Congregations, A Report to the Mass Torts Working Group at 12, Fed. Jud. Ctr. (Jan. 1999), https://www.uscourts.gov/sites/default/files/masstapd_1.pdf.

of" any "particular provision in the Bankruptcy Code, standing alone," does not establish good faith. *Integrated Telecom*, 384 F.3d at 127. Section 524(g) is a ***remedy*** in connection with a confirmed plan. *See In re Federal-Mogul Glob. Inc.*, 684 F.3d 355, 359-62 (3d Cir. 2012). The "question of good faith is . . . antecedent to the operation" of any bankruptcy remedy. *Integrated Telecom*, 384 F.3d at 128.

Moreover, the bankruptcy court did not establish that § 524(g) would be available. A § 524(g) trust and injunction require a plan approved by 75% of the debtor's asbestos claimants. *See In re Combustion Engineering, Inc.*, 391 F.3d 190, 201 n.4 (3d Cir. 2004) (citing § 524(g)(2)(B)(ii)(IV)(bb)). The bankruptcy court cannot predict such support. And § 524(g) relief is limited to debtors who, "at the time of entry of the order for relief"—*i.e.*, as of the petition date[3]—were "named as . . . defendant[s]" in an asbestos lawsuit. *See* § 524(g)(2)(B)(i)(I); *Combustion Engineering*, 391 F.3d at 234 n.45. For the unusual debtor here—LTL—that was not the case. When it filed for bankruptcy, it had existed for 48 hours; it was named in no asbestos suits. App. 1020-21 (244:24-245:1) (Kim Testimony). Suits against Old JJCI, a distinct entity with different assets, do not qualify.

---

[3] 11 U.S.C. § 301(b) ("The commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter.").

The bankruptcy court opined that, if § 524(g) did not apply, it could enter a channeling injunction under § 105.  App. 9, 18, 29 (MTD Op.).  But this Court has already held that § 105(a) cannot sustain "a channeling injunction to non-debtors in an asbestos case where the requirements of § 524(g) are not otherwise met."  *Combustion Engineering*, 391 F.3d at 233-34.

### B.    The Scheme Defies the Code's Structure and Principles

To meet the good-faith requirement, "[a] debtor who attempts to garner shelter under the Bankruptcy Code . . . must act in conformity with the Code's underlying principles."  *SGL*, 200 F.3d at 161.  A petition that "objective[ly]" seeks "to step outside the 'equitable limitations' of Chapter 11," *BEPCO*, 589 F.3d at 618 n.8, is not a good-faith petition.

That describes LTL's petition precisely.  Far from effectuating the Code's requirements, it evades them by design.  As the U.S. Trustee pointed out, the Two-Step scheme—by which J&J put Old JJCI's talc *liabilities* but *not* Old JJCI's *operations* into bankruptcy—eviscerates the Code's protections.  It gives New JJCI and its owners the benefits of bankruptcy without the corresponding obligations.

### 1.    LTL's Structure Evades Traditional Bankruptcy Protections

The Bankruptcy Code reflects a "careful balancing of interests."  *Integrated Telecom,* 384 F.3d at 119.  "Chapter 11 vests petitioners with considerable powers—

31

the automatic stay, . . . the discharge of debts, etc.—that can impose significant hardship on particular creditors." *SGL*, 200 F.3d at 165.  Concomitantly, the Code imposes important obligations on debtors.  As the bankruptcy court explained, the Code "requires full transparency of all assets, liabilities and financial conduct through scheduling and reporting."  App. 48 (MTD Op.); *see* 11 U.S.C. § 521.  The Code provides "judicial oversight over all non-ordinary course of business conduct," such as asset sales and distributions.  App. 48 (MTD Op.); *see* § 363.  It imposes an "absolute priority rule" under which equity holders can "receive nothing until all previously listed creditors have been paid in full." *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 979 (2017) (citing §§ 726(a)(6), 1129(a)(7), 1129(b)(2)).  And it vests courts with power to control *all* the debtor's non-exempt property and ongoing operations. *See In re Venoco LLC*, 998 F.3d 94, 99 (3d Cir. 2021); § 1104(a) (power to appoint trustee); Thomas E. Plank, *The Constitutional Limits of Bankruptcy*, 63 Tenn. L. Rev. 487, 526 (1996).

The Two-Step scheme here end-runs those protections.  J&J and its affiliates faced mass-tort liability for their misconduct.  But they now seek "to cleanse" themselves of that "liability without enduring the rigors of bankruptcy." *Combustion Engineering*, 391 F.3d at 237.  They created LTL, assigned LTL talc liabilities, and promptly placed LTL alone in bankruptcy—while keeping Old JJCI's valuable

operating assets outside bankruptcy in New JJCI.  By doing so, they defeated any transparency into virtually all of Old JJCI's "assets, liabilities and financial conduct through scheduling and reporting."  App. 48 (MTD Op.).

The Two-Step scheme likewise frustrates bankruptcy-court supervision over assets, including non-ordinary-course sales under § 363.  That bankruptcy encumbrance now applies only to LTL, which received no operating assets.  By contrast, "[t]he funding agreement [was] structured in a way that [New] JJCI can 'spin out' the [consumer-health] assets up the chain or to a new [legal entity] and be unencumbered going forward."  App. 4634 (J&J email); *see* App. 4463 (J&J press release).  By allocating talc liability to LTL but operational assets to New JJCI, the Two-Step puts operating assets—the ones responsible for liability here—beyond bankruptcy court supervision.

The scheme also upends the "absolute priority" rule, which gives creditors priority over equity.  Under the Two-Step, New JJCI—holding Old JJCI's assets—remains outside bankruptcy-court control and can freely distribute its substantial earnings to parent companies and shareholders (principally J&J).  J&J, in turn, has paid on average $10-11 billion in shareholder dividends in the six years before LTL's bankruptcy, and continues to pay hefty dividends.  App. 3570 (11:9-16) (Ryan

Dep.).[4]  By contrast, talc claimants are mired in LTL's bankruptcy.  The good-faith inquiry "is particularly sensitive where, as here, the petition seeks to distribute value directly from a creditor to a company's shareholders." *Integrated Telecom*, 384 F.3d at 128-29.  Even same-level creditors are treated unequally.  Talc claimants are frozen in bankruptcy, while Old JJCI's trade creditors and non-talc unsecured creditors remain outside bankruptcy.

LTL's scheme removes judicial control over going-concern management.  New JJCI—holding Old JJCI's businesses—remains outside bankruptcy, making management decisions free from bankruptcy-court supervision.  That destroys a critical incentive for debtors to emerge from bankruptcy proceedings promptly: avoiding the constraints of operating in bankruptcy.  App. 4678 (Burian Report 41).  Operating Old JJCI's business units outside bankruptcy, New JJCI is indifferent to the bankruptcy's duration; LTL has no business and no purpose outside bankruptcy.  They lack any incentive to negotiate or press forward.  Indeed, other Two-Step debtors have yet to emerge from bankruptcy. *See In re Bestwall LLC*, No. 17-31795

---

[4] 2022 First Quarterly Dividend Announcement, Johnson & Johnson (Jan. 4, 2022), https://www.jnj.com/johnson-johnson-announces-quarterly-dividend-for-first-quarter-2022.

(Bankr. W.D.N.C.) (petition filed 11/2/2017); *In re DBMP LLC*, No. 20-30080 (Bankr. W.D.N.C.) (petition filed 1/23/2020).

The bankruptcy court's invocation of the Funding Agreement as a substitute for placing Old JJCI's business assets into bankruptcy, *see* App. 31-32, 43-45 (MTD Op.), compounds the error. It does not cure the evasion of the protections discussed above. And the Code expects debtors to surrender control of their assets to the court. It does not license them to evade that requirement, and move all productive assets beyond bankruptcy, by offering an unsecured funding promise in their stead. *Contrast* 11 U.S.C. §1129(b)(2)(A)(iii) (plan can provide for "indubitable equivalent" of secured claims). The Funding Agreement, a contractual obligation of New JJCI and J&J, App. 44 n.27 (MTD Op.), is no substitute regardless. Before the Two-Step scheme, talc claimants had property rights in Old JJCI, enforceable by judgment lien. The Two-Step leaves them with a right against a different party, LTL, that holds an unsecured promise it would have to enforce against the original tortfeasors (which control LTL).

"A debtor . . . who invokes the aid of the federal courts in reorganization or rehabilitation . . . assumes all of the consequences which flow from that jurisdiction." *Case v. L.A. Lumber Prods. Co.*, 308 U.S. 106, 125 (1939). Where the debtor was created to evade bankruptcy's statutory scheme—to circumvent rather than "con-

35

form[ ] with the Code's underlying principles"—the equitable requirement of good faith is absent. *SGL*, 200 F.3d at 161.

This case is fundamentally different from other mass-tort bankruptcies where debtors, facing liability for their own conduct, themselves filed for bankruptcy. *See, e.g.*, *In re Johns-Manville*, 36 B.R. 727, 738 (Bankr. S.D.N.Y. 1984) ("a real business with real creditors in pressing need of economic reorganization"); *In re Dow Corning Corp.*, 244 B.R. 673, 677 (Bankr. E.D. Mich. 1999) ("'a real company with real debt, real creditors and a compelling need to reorganize'"); *In re Mallinckrodt PLC*, — B.R. —, No. 20-12522, 2022 WL 404323, at *1 (Bankr. D. Del. Feb. 8, 2022). LTL is a shell created by wealthy tortfeasors to move talc liabilities into bankruptcy, while keeping themselves, their productive assets, and other liabilities outside bankruptcy.

Former bankruptcy judge Judith Fitzgerald, who presided over more asbestos bankruptcies during her tenure than any other bankruptcy judge, made precisely that point:

> If the pre-merger company is so inundated with claims from victims of the company's wrongdoing that it faces economic ruin, it should use the statute that Congress has passed and file its own bankruptcy—put its assets and its liabilities up for public scrutiny and court supervision . . . . The bankruptcy system should not be used by a non-debtor as an artifice or stratagem to escape the requirements

36

> Congress has instituted to relieve the honest but unfortunate debtor from true financial woes.

Written Testimony of Hon. Judith Fitzgerald at 9, Sheldon Whitehouse U.S. Senator for Rhode Island (Feb. 8, 2022), https://www.whitehouse.senate.gov/imo/media/doc/Fitzgerald%20Testimony.pdf.

The bankruptcy court acknowledged the Code's requirements, from the listing of assets to court supervision of non-ordinary-course conduct. App. 48-49 (MTD Op.). It nowhere denied that the Two-Step scheme sidestepped those requirements. *Id.* But the court questioned their value given "the attention this case is receiving" from media and counsel. *Id.* The court assailed the consequences of placing the actual tortfeasors into bankruptcy as administratively costly and risking "too much value." *Id.* at 47. But "courts cannot deviate from the procedures 'specified by the Code,' even when they sincerely 'believ[e] that . . . creditors would be better off.'" *Jevic*, 137 S. Ct. at 987. Nor can they license circumvention of legislative choices. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 328 (2015). Supposed compliance with the Texas merger statute cannot answer the "good faith" question either. App. 42, 51 (MTD Op.). ***How*** Old JJCI accomplished its line-item bankruptcy cannot license efforts to "step outside" Chapter 11's "equitable limitations." *BEPCO*, 589 F.3d at 618 n.8; *see In re Primestone Inv. Partners L.P.*, 272 B.R. 554, 558 (D. Del. 2002) (affirming dismissal where there was "nothing inherently

improper" about debtor's form).  In bankruptcy, "substance will not give way to form." *Pepper v. Litton*, 308 U.S. 295, 305 (1939).

### 2.    The Scheme Threatens the Public Interest and Raises Serious Constitutional Questions

As the bankruptcy court acknowledged, its decision has implications for "restructurings beyond" this case.  App. 3764-65 (74:21-75:8) (hearing transcript).  Under the Two-Step blueprint, any company could shed tort or other liabilities in bankruptcy while avoiding Bankruptcy Code requirements.

Addressing concerns about "'open[ing] the floodgates' to similar machinations," the bankruptcy court suggested that "maybe the gates indeed should be opened."  App. 52.  Alternatively, it speculated that only sophisticated corporations could engineer Two-Step transactions.  *Id.*  But Congress did not create a two-tier Bankruptcy Code, with one set of rules for well-heeled companies able to afford evasive maneuvers, and another for everyone else.  Besides, "[o]nce the floodgates are opened" and the model is established, "debtors . . . can be expected to make every case that 'rare case.'"  *Jevic*, 137 S. Ct. at 986.

The scheme raises serious constitutional questions.  Because "bankruptcy courts possess no free-floating authority to decide claims traditionally heard by Article III courts," "their ability to resolve such matters is limited to a narrow class of common law claims as an incident to [their] primary . . . adjudicative function" of

handling bankruptcies. *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 679-80 (2015); *see Stern*, 564 U.S. at 494-95. The Two-Step scheme tests those constitutional limits: It transfers traditional state-law claims to bankruptcy court using a shell entity manufactured for bankruptcy. Talc claimants are deprived of their "Seventh Amendment right to try [their] … claims before a jury" without a corresponding bankruptcy justification. *SGL*, 200 F.3d at 169 n.23. The canon of constitutional avoidance requires courts to avoid so testing constitutional limits. *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001).

## C. The Bankruptcy Court's Finding of "Financial Distress" Was Reversible Error

A valid bankruptcy purpose exists, moreover, only if **the debtor** is experiencing "serious financial and/or managerial difficulties at the time of filing." *SGL*, 200 F.3d at 164.

### 1. Old JJCI's Financial Situation Was Irrelevant

The bankruptcy court found financial distress because **non-debtors** "J&J and Old JJCI were … facing a torrent of significant talc-related liabilities … ." App. 40; *id.* at 14, 33-40 (MTD Op.). But any financial distress of non-debtors is irrelevant. What matters is the debtor's situation. In *SGL*, for example, this Court repeatedly referred to the bankruptcy "petitioner" (11 times) and "debtor" (29 times); "if a **petitioner** has no need to rehabilitate or reorganize," the Court emphasized, "its

39

petition cannot serve [Chapter 11's] rehabilitative purpose." 200 F.3d at 166 (emphasis added). Likewise, *BEPCO* found that running a bankruptcy to protect non-debtors supports dismissal. 589 F.3d at 609, 620-24.

Here, the bankruptcy court found that talc litigation could have "threaten[ed] *Old JJCI's* ability to sustain the marketing, distribution, and R&D expenditures needed to compete in the U.S. market." App. 33 (MTD Op.) (emphasis added). But *Old JJCI* no longer exists. App. 448 (Kim Decl. ¶ 16). The debtor here, LTL, faces *none* of those risks. It engages in no marketing, distribution, R&D, or manu-facturing. Either LTL's financial circumstances should be judged independently or Old JJCI should have filed for bankruptcy itself. Old JJCI's situation cannot justify putting a different debtor into bankruptcy while keeping Old JJCI's productive assets—held by New JJCI—beyond bankruptcy control. Characterizing the restructuring and the bankruptcy as "a single, pre-planned, integrated transaction," App. 14 (MTD Op.), does not convert an effort to evade bankruptcy requirements into a good-faith filing.

### 2. The Bankruptcy Court Applied the Wrong Legal Standard

Invoking out-of-circuit precedent, the bankruptcy court stated that the "Code does not 'require any *particular degree* of financial distress . . . .'" App. 38. But this Court has emphasized that there must be "immediate" and "serious financial . . .

40

difficulties at the time of filing." *SGL*, 200 F.3d at 164.  In *Johns-Manville*, the debtor faced the prospect of "book[ing] a $1.9 billion reserve thereby triggering potential default on a $450 million debt." 200 F.3d at 164.  In *A.H. Robins*, "Robins' financial picture had become so bleak that financial institutions were unwilling to lend it money." *In re A.H. Robins Co.*, 89 B.R. 555, 558 (Bankr. E.D. Va. 1988); *see SGL*, 200 F.3d at 164 n.15.

*SGL* reversed a finding of financial distress, even though antitrust plaintiffs there sought "hundreds of millions of dollars in damages, before trebling, an amount well in excess of the Debtor's ability to pay." 233 B.R. at 287.  That "potential liability," the district court had found, "could very well force [the debtor] out of business." *Id.* at 291.  While acknowledging "that a debtor need not be insolvent," this Court reversed.  *SGL*, 200 F.3d at 163.  "Whether or not [debtor] faces a potentially crippling antitrust judgment, it is incorrect to conclude it had to file when it did.  As noted, [debtor] faces no ***immediate*** financial difficulty." *Id.* (emphasis added).

The requirement of "serious" and "immediate" financial distress confines federal bankruptcy jurisdiction to its constitutionally circumscribed role—adjusting rights and liabilities for genuinely distressed debtors.  It prevents wealthy companies facing only speculative risks from converting bankruptcy into an alternative claims-

processing regime at the cost of Seventh Amendment rights and federalism principles.

### 3. No Finding of Financial Distress Is Sustainable as to LTL

The bankruptcy court made no finding of "immediate" and "serious" financial distress for LTL. When LTL filed for bankruptcy, it had not been presented with a single talc judgment to pay. The Funding Agreement recited that LTL had "financial capacity sufficient to satisfy its obligations as they become due in the ordinary course of business, including any Talc Related Liabilities." App. 4229-30 (Funding Agreement 1-2). LTL told the bankruptcy court that the Funding Agreement provides $61 billion in liquidity and that there is no "imminent or even likely need of the Debtor to invoke the Funding Agreement to its maximum amount or anything close to it." App. 3747 (Debtor's Obj. to Mots. for Certification 22); *see* p. 11, *supra*. Those representations, if assumed correct, require dismissal.

LTL's board, moreover, lacked sufficient information to make a judgment of "financial distress" when it filed for bankruptcy. For example, the board was never provided with estimates of talc liabilities or analyses of the Funding Agreement's value. *See* pp. 12-13, *supra*. The assertion of financial distress was manufactured during bankruptcy. It rested on speculation that "[d]efending just the over 38,000 pending ovarian cancer claims through trial would cost up to $190 billion," assuming

costs between $2 million and $5 million to try each case.  App. 37 (MTD Op.).  But J&J never tried every case; there is no evidence LTL would.  J&J's treasurer told Standard & Poor's in October 2020 that the "worst case" talc liability was between $7 billion and $7.5 billion.  App. 3423 (35:10-36:19) (Kaplan Dep.); *see* App. 4766-67 (S&P Oct. 13, 2020 Notes).

### D.    The Court's "Unusual Circumstances" Holding Was Erroneous

The bankruptcy court asserted that "unusual circumstances" preclude dismissal under § 1112(b)(2), invoking "the interests of current tort creditors and the absence of viable protections for future tort claimants outside of bankruptcy." App. 13 n.8 (MTD Op.).  Whether dismissal is in *creditors'* best interests, however, is best answered by *creditors*—virtually all of whom sought dismissal.  *See* App. 1726-1804, 1864-71 (Claimants' Motions to Dismiss).[5]  When this Court finds good faith absent, it orders dismissal.  *SGL*, 200 F.3d at 159 n.8.

The bankruptcy court also failed to address § 1112(b)(2)'s other requirements. Neither LTL nor any other party established "a reasonable likelihood that a plan will be confirmed" within the statutory period.  § 1112(b)(2)(A).  Even the bankruptcy court found the "success of Debtor's reorganization [was] speculative."  App. 186 (PI

---

[5] An opposition, App. 1968-69, was filed on behalf of the proposed representative of an uncertified Canadian class-action.

Op. 47).   There is no "reasonable justification" for the LTL act supporting

dismissal—filing a petition without a valid bankruptcy purpose while seeking to

evade the Code's requirements. § 1112(b)(2)(B)(i).  And those circumstances cannot

be "cured within a reasonable period of time."  § 1112(b)(2)(B)(ii).

Regardless, the bankruptcy court's preference for bankruptcy over traditional

handling of mass torts, App. 13  n.8 (MTD Op.), is not the type of "objective analy-

sis" courts can consider.  *Cf. BEPCO*, 589 F.3d at 618 n.8; *see* p. 19, *supra*.  If that

sufficed, "unusual circumstances" would encompass any policy preferences for

dispute resolution in bankruptcy.

## II.   THE BANKRUPTCY COURT COMMITTED LEGAL ERROR IN FREEZING TENS OF THOUSANDS OF SUITS AGAINST HUNDREDS OF NON-DEBTORS

After structuring their eve-of-bankruptcy transactions to put ***only LTL*** into

bankruptcy—and to exclude J&J and New JJCI—J&J and New JJCI asked the

bankruptcy court to stay actions against J&J, New JJCI, and some 670 other non-

debtors in view of LTL's bankruptcy.  Even though the automatic stay under § 362

extends only to actions against ***the debtor***, the bankruptcy court granted the request,

halting more than 38,000 talc lawsuits asserting direct liability claims against

hundreds of ***non-debtors*** (where the debtor was not a named defendant).  It froze

cases in a federal MDL and state courts across the country, even during trial, shutting

down relief for rapidly failing and now-deceased plaintiffs.  *See, e.g.*, App. 597-99 (Vanklive Objection).  Over 300 talc claimants represented by TCC firms have died since that order issued, never having had their day in court.  App. 3775 (TCC Statement 9).

No court of appeals has ever approved such a sweeping extension of relief. The bankruptcy court here found it had jurisdiction under bankruptcy provisions governing "core" and "related-to" proceedings but overlooked precedent foreclosing those theories.  And the court lacked a factual or legal basis for an injunction of that magnitude.

Standard of review.  This Court exercises plenary review over subject-matter jurisdiction.  *Combustion Engineering*, 391 F.3d at 224 n.34.  The Court reviews "legal determinations de novo, . . . factual findings for clear error, and . . . exercise of discretion for abuse thereof."  *In re Cont'l Airlines*, 203 F.3d 203, 208, 213 (3d Cir. 2000).

### A.     The Bankruptcy Court Lacked "Core" Jurisdiction To Enjoin Tens of Thousands of Suits Against Non-Debtors

The *sine qua non* for federal court action is subject-matter jurisdiction. *Temple Univ. Hosp., Inc. v. Sec'y U.S. Dep't of Health & Hum. Servs.*, 2 F.4th 121, 130 (3d Cir. 2021).  Here, the bankruptcy court asserted authority to freeze actions against non-debtors under § 362(a)—which authorizes stays of actions ***against the***

45

*debtor*—together with its authority under §105 to enter "necessary or appropriate" relief. *See* App. 147-52 (PI Op. 8-13). The court recognized that this Court had "not addressed" how the Code's jurisdictional provision, 28 U.S.C. §1334(b), would cover such relief. App. 152 (PI Op. 13).

1.    The bankruptcy court first held that §1334(b)'s provisions relating to "'core' proceedings" gave it jurisdiction over actions against non-debtors. App. 151 (PI Op. 12). Those provisions provide jurisdiction over "(1) cases 'under' title 11; (2) proceedings 'arising under' title 11; [and] (3) proceedings 'arising in' a case under title 11." *Id.* (quoting *Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006)). Efforts "to extend an automatic stay and injunction to non-debtor third parties pursuant to sections 362 and 105," the court ruled, "qualify as 'core' proceedings" over which it "can exercise jurisdiction." *Id.* at 152-53 (PI Op. 13-14).

That was error. "Whether a proceeding is a 'core' proceeding that 'arises under' title 11 depends upon whether the Bankruptcy Code creates the cause of action or provides the substantive right invoked." *Stoe*, 436 F.3d at 217. In *Stoe*, this Court held there was no "core" jurisdiction over state-law claims removed to federal court under 28 U.S.C. §1452, because the underlying claims arose under state law, "not under the Bankruptcy Code." *Id.* "The Bankruptcy Code did not create [plaintiff] Stoe's cause of action." *Id.* That reasoning applies here. Talc

litigation against non-debtors arises under state law, App. 5242-5284 (MDL Second Amended Complaint), not the Bankruptcy Code.

The bankruptcy court erroneously looked to the statutory provision LTL invoked to support its ***claim for stay relief***—the fact that §§ 362 and 105 are bankruptcy provisions—while ignoring the basis for the state-court and federal MDL talc ***cases LTL sought to enjoin***.  This Court rejected that approach in *In re W.R. Grace & Co.*, 591 F.3d 164 (3d Cir. 2009).  There, the debtor argued that "the Bankruptcy Court does not need related-to jurisdiction over the [state-court] Actions in order to enjoin them, because the Court's jurisdiction over the adversary proceeding in [debtor's] Chapter 11 case is sufficient to provide it with a basis for expanding the § 105(a) injunction" to non-debtors.  *Id.* at 174.  This Court rejected that argument because it would give "a bankruptcy court . . . power to enjoin any action, no matter how unrelated to the underlying bankruptcy it may be, so long as the injunction motion was filed in the adversary proceeding." *Id.*

The bankruptcy court made the same mistake here.  The question is not the statutory basis for requested ***bankruptcy relief***.  It is the court's subject-matter jurisdiction over ***the cases LTL seeks to enjoin***.  The court invoked the facts that the relief was sought "under the Bankruptcy Code" and that bankruptcy stay proceedings "arise only in the context of a bankruptcy case."  App. 152-53 (PI Op. 13-

47

14). If that sufficed, bankruptcy courts would have jurisdiction to stay ***any case, with or without any relation to bankruptcy***. *See W.R. Grace*, 591 F.3d at 174. "Neither the Bankruptcy Code nor . . . the [bankruptcy] Plan" is the "source of the bankruptcy court's subject matter jurisdiction." *In re Resorts Int'l, Inc.*, 372 F.3d 154, 161 (3d Cir. 2004). Determining jurisdiction based on the relief sought would impermissibly allow LTL to write its "own jurisdictional ticket." *Id. Stoe* and *W.R. Grace* foreclose that extravagant extension of "core" bankruptcy jurisdiction.

2.    Nor can expansive relief for non-debtors be characterized as an application of §362's automatic stay. "[T]he clear language of section 362(a) indicates that it stays only proceedings ***against*** a 'debtor'—the term used by the statute itself." *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991); *see McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 509 (3d Cir. 1997) (similar). Insofar as the question is "unsettled," App. 150 (PI Op. 11), that statutory text should control. To stay tens of thousands of cases against ***non-debtors***, the bankruptcy court had to invoke §105 authority for "necessary or appropriate" orders.

Indeed, the "courts cited by *McCartney* . . . relied on 11 U.S.C. §105(a), not §362(a), to enjoin the actions against the non-bankrupt parties." *Stanford v. Foamex L.P.*, Civ. A. 07-4225, 2009 WL 1033607, at *1 n.7 (E.D. Pa. Apr. 15, 2009). Such orders, "although referred to as extensions of the automatic stay, were in fact

injunctions issued by the bankruptcy court" under § 105. *Patton v. Bearden*, 8 F.3d 343, 349 (6th Cir. 1993). Section 105(a), however, is not about "core" proceedings and "does not provide an independent source of federal subject matter jurisdiction"; that jurisdiction must be established separately. *Combustion Engineering*, 391 F.3d at 225. Enjoining state-law actions against non-debtors is not a "core proceeding" under the Code.

### B. The Bankruptcy Court Lacked "Related-To" Jurisdiction To Enjoin Cases Against Non-Debtors

The bankruptcy court alternatively invoked "related-to" jurisdiction under § 1334(b). App. 153-54 (PI Op. 14-15). Four times—in *Pacor, Inc. v. Higgins*, 743 F.2d 984, 986 (3d Cir. 1984), *In re Federal-Mogul Glob. Inc.*, 300 F.3d 382 (3d Cir. 2002), *Combustion Engineering*, and *W.R. Grace*—this Court has enforced strict limits on "related-to" bankruptcy jurisdiction. Four times, this Court has rejected efforts to enjoin asbestos suits against non-debtors under "related-to" jurisdiction, even where the suits might trigger indemnification claims against the debtor. *Id.*

"Related-to" jurisdiction depends on "whether the allegedly related lawsuit would affect the bankruptcy *without* the intervention of yet *another lawsuit*." *Federal-Mogul*, 300 F.3d at 382 (emphasis added). In *Combustion Engineering*, the Court rejected the argument that the debtor and non-debtors had a "unity of interest" based on "joint operations at single sites leading to the asbestos personal injury

claims at issue" and "extensive financial inter-dependence." 391 F.3d at 213, 230.
Any "potential indemnification and contribution claims by non-debtors" are
insufficient for "related-to" jurisdiction because they "would require another lawsuit
before they could affect" the debtor's estate. *Id.* at 227. Shared insurance cannot
provide a basis for "related-to" jurisdiction absent "findings regarding the terms and
operation of the subject policies." *Id.* at 232-33. And made-for-bankruptcy agree-
ments between the parties, like those here, are insufficient. Subject-matter juris-
diction "cannot be conferred by consent of the parties" or "agreement even in a plan
of reorganization." *Id.* at 228. The bankruptcy court's finding of "related-to" juris-
diction here defies *Combustion Engineering*.

### 1.    Manufactured Grounds for "Related-To" Jurisdiction Cannot Support Jurisdiction

"[N]o action of the parties can confer subject-matter jurisdiction upon a
federal court." *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S.
694, 702 (1982); *see* 28 U.S.C. § 1359; *In re Maislin Indus., U.S., Inc.*, 66 B.R. 614,
617 (E.D. Mich. 1986). Here, the bankruptcy court found "related-to" jurisdiction
because LTL "is liable for the talc claims as the result of pre-petition corporate
transactions, including the 2021 Corporate Restructuring, and various contractual
indemnification obligations." App. 153 (PI Op. 14). But the bankruptcy court
accepted the premise that LTL's indemnity obligations were "'based ***solely*** on the

50

allocation of agreements to the debtor on the ***eve of the bankruptcy*** filing ***for the very purpose of extending the stay***.'" *Id.* at 159 (emphasis added).  LTL's assets "were all created to effectuate a bankruptcy filing and have no other business purpose."  App. 1514 (Transfer Order 9).

Such efforts to fabricate subject-matter jurisdiction—through related-party transactions on the bankruptcy courthouse steps—cannot suffice.  In *Combustion Engineering*, the parties sought to support a channeling injunction by invoking the non-debtors' agreement to provide financial support to the debtor.  This Court rejected the effort.  391 F.3d at 228.  If such made-for-bankruptcy agreements were sufficient, "a debtor could create subject matter jurisdiction over any non-debtor third party" by agreement.  *Id.*; *contrast McCartney*, 106 F.3d at 509 (considering pre-existing, longstanding business connections).  The court below accepted such made-for-bankruptcy allocations as creating jurisdiction nonetheless.

That defect cuts across the bankruptcy court's opinion.  The court invoked indemnification agreements, shared insurance coverage, and related connections between LTL and non-debtors.  App. 153 (PI Op. 14).  But LTL never signed any indemnification agreements, insurance policies, or other agreements.  It never manufactured or sold baby powder.  J&J unilaterally allocated all that to LTL via deal documents when LTL was created on the eve of bankruptcy for bankruptcy

purposes. Precedent and equity forbid such efforts to manipulate the scope of federal jurisdiction (or manufacture an identity of interest) on the courthouse steps.

### 2. Putative Effects of Suits Against Non-Debtors Fall Short

Any LTL indemnification obligations do not create the required effect on the reorganization regardless. App. 153, 159-60 (PI Op. 14, 20-21). *First*, when non-debtors (or carriers using shared insurance) pay talc claimants, that at worst reduces, dollar-for-dollar, claims against LTL. Liquidating claims against non-debtor joint-tortfeasors merely replaces the personal-injury claims of talc claimants with indemnity claims by affiliates and commercial partners.

*Second*, the Funding Agreement prevents any impact on reorganization (even assuming indemnification occurs). Under the Funding Agreement, LTL has the "contractual right to look to J&J and New JJCI as primary obligors"—"without having to establish independent liability"—to fund claims against LTL, ***including talc-related indemnification claims***. App. 44 (MTD Op.). As a result, if J&J or New JJCI were to tender an adverse talc judgment to LTL, LTL would simply tender that liability back under the Funding Agreement—a circular flow that avoids any impact on reorganization (and shows how contrived the indemnity is).

The bankruptcy court opined that LTL's estate could be affected because, under "the Funding Agreement, Debtor must first use its own assets to fund the

trust." App. 160 (PI Op. 21). However, when LTL filed for bankruptcy, all its assets other than the Funding Agreement (*i.e.*, rights to royalty streams valued at $367.1 million and a $6 million bank account, App. 7 (MTD Op.)), were spoken for; they represented a fraction of the talc liabilities assigned to LTL, *id.* at 36. Any indemnification claims against LTL based on ***continued*** litigation cannot affect already-spoken-for LTL assets.

The indemnity theory fails for yet another reason. J&J had no right to indemnity from LTL's predecessor, Old JJCI; as a result, LTL could not have inherited such an obligation. The bankruptcy court interpreted a 1979 agreement as having transferred J&J's talc-related liabilities to Old JJCI. App. 164 (PI Op. 25). But the 1979 Agreement stated that Baby Products Company (Old JJCI's predecessor) would assume "all the indebtedness, liabilities and obligations of every kind and description ***which are allocated on the books or records*** of J&J as pertaining to its BABY Division." *Id.* (emphasis added). The record is devoid of evidence that any talc claims were "allocated on the books or records of J&J" in 1979. The first talc-related tort case was not filed against J&J until 1982. App. 360 (Debtor Info Brief 45). The bankruptcy court found the indemnity provision "ambiguous," App. 167 (PI Op. 28), but failed to construe that ambiguity against the indemnitee

53

(here J&J), as New Jersey law requires. *See Kieffer v. Best Buy*, 14 A.3d 737, 743 (N.J. 2011).

### 3.    Claims Against Non-Debtors Would Not Liquidate Claims Against LTL

The bankruptcy court held that claims against non-debtors would "liquidate" claims against LTL, as LTL owes them "contractual, common law, and statutory indemnification obligations." App. 153, 169 (PI Op. 14, 30). This Court has rejected such theories. Because LTL would not be a party to talc lawsuits against non-debtors, it could litigate its own liability later. *See, e.g.*, *W.R. Grace*, 591 F.3d at 172 (debtor "will not be bound by any judgment against the third party in question"). That LTL's liability could not be established without a separate proceeding against LTL negates "related-to" jurisdiction. *Federal-Mogul*, 300 F.3d at 382. If such a later proceeding *were* brought *against LTL*, the bankruptcy court could stay *that* action. But enjoining tens of thousands of suits against non-debtors in advance goes too far.

For the same reason, "principles of res judicata, collateral estoppel, and record taint" cannot support such relief. App. 173-180 (PI Op. 34-41); *Pacor*, 743 F.2d at 995 ("Since Manville is not a party . . . , it could not be bound by res judicata or collateral estoppel."). The bankruptcy court, moreover, nowhere determined that collateral estoppel, res judicata, or record taint would result. App. 176 (PI Op. 37)

("collateral estoppel *may not* adversely impact Debtor in subsequent litigation") (emphasis added); *id.* at 179 ("there *exists a risk* that . . . res judicata could adversely impact Debtor"); *id.* at 180 (record taint "*could* prejudice Debtor") (emphasis added). Speculation is not enough.

The bankruptcy court insisted that talc claims against J&J would "involve the same products, same time periods, same alleged injuries, and same evidence as claims against the Debtor." App. 158 (PI Op. 19). But talc claims against J&J rest on J&J's *own* tortious conduct and culpability. Courts and juries have held J&J and Old JJCI independently liable. App. 4706-07 (Diaz Report 13-14); App. 4952 (Summary of Talc Verdicts). Courts have instructed juries to consider the liability of J&J and Old JJCI separately and to differentiate between them for each claim. App. 4549-4629 (Verdict Forms and Transcripts). Numerous courts have affirmed J&J's independent talc liability. *E.g.*, *Ingham*, 608 S.W.3d at 714-19, 723 (J&J "engaged in reprehensible conduct of its own").[6]

---

[6] *See Olson v. Brenntag N. Am., Inc.*, No. 190328/2017, 2020 WL 6603580, at *49 (N.Y. Sup. Ct. Nov. 11, 2020) (punitive liability 2/3 to J&J, 1/3 to Old JJCI, compensatory damages joint) (appeal pending); App. 4623-29 (Verdict Forms), *Prudencio v. Johnson & Johnson*, No. RG20061303 (Cal. Super. Ct. Aug. 27, 2021) (punitive and non-economic damages 85% to J&J, 15% to Old JJCI, remainder joint).

Evidence, claims, time periods, and products overlap in every case involving joint tortfeasors. The bankruptcy court's reasoning would allow joint tortfeasors to benefit from bankruptcy stays as a matter of course, contradicting *Pacor* and its progeny. *See Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1076 (3d Cir. 1983).[7]

### 4.    Allegations of Shared Insurance Cannot Establish "Related-To" Jurisdiction

The bankruptcy court's invocation of shared insurance, App. 153 (PI Op. 14), was less persuasive still. The court acknowledged "the message from *In re Combustion*"—"that a court must make adequate factual findings before staying proceedings against nondebtor co-insureds on the theory that asbestos-related personal injury claims against the nondebtors will automatically deplete the insurance proceeds available to the debtor." *Id.* at 183. But the bankruptcy court nowhere made the "record findings regarding the terms and operation of the [insurance policies]" that *Combustion Engineering* requires. 391 F.3d at 232-33.

Disputing coverage, J&J's insurers have never paid a penny to any J&J entity for talc-liability defense costs, settlement, or judgment. App. 462 (Kim Decl. ¶ 53).

---

[7] Because the actions against non-debtors do not sufficiently affect LTL's estate, there is also no "identity of interest" to justify stay relief under §§ 362 and 105. *See* pp. 57-58, *infra*.

Moreover, if coverage exists, LTL failed to show that the $2 billion policy limit, App. 182 (PI Op. 43), was not already overtopped by the $3.5 billion in talc judgments and settlements J&J paid in the five years *before* LTL filed for bankruptcy, App. 34 n.22 (MTD Op.). The bankruptcy court admitted that "certain coverage is disputed, and no definitive determination has been made as to exhaustion." App. 182 (PI Op. 43). The court nowhere explained how it could find that pending lawsuits threatened to draw down insurance available to LTL, as *Combustion Engineering* requires, without addressing whether such insurance exists or is already spoken for.

### C.    The Bankruptcy Court Failed To Apply the Correct Legal Standard

Jurisdiction aside, the bankruptcy court failed to apply the proper legal standard when enjoining tens of thousands of cases against non-debtors.

1.    The bankruptcy court erred insofar as it purported to extend relief to non-debtors under §362. Section 362(a) stays actions "against the debtor," not non-debtors. *See* pp. 48-49, *supra*. "[T]he automatic stay is not available to non-bankrupt co-defendants . . . even if they are in a similar legal or factual nexus with the debtor." *Maritime Electric*, 959 F.2d at 1205. Efforts to extend relief to suits against non-debtors must invoke §105. Any supposed "identity of interest," App. 158 (PI Op. 19), should bear on whether an injunction can be granted under

§ 105. *See* pp. 49-50, *supra*. And such an "identity" of interest cannot be manufactured artificially on the eve of bankruptcy. *See* pp. 51-52, *supra*.

Extension of the stay to a non-debtor, moreover, is typically inappropriate where it is "independently liable," as in the case of "joint tortfeasors or where the nondebtor's liability rests upon his own breach of a duty." *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986); *see CAE Indus. LTD v. Aerospace Holdings Co.*, 116 B.R. 31, 33 (S.D.N.Y. 1990); *Chesapeake Crossing Assocs. v. TJX Cos.*, Civ. A. 2:92CV631, 1992 WL 469801, *4 (E.D. Va. 1992). For J&J, that is the situation here. *See* p. 55, *supra*.

2.    The bankruptcy court's invocation of § 105 was error as well. To obtain a preliminary injunction, plaintiffs must show threatened harm that is concrete and imminent, not remote or speculative. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Under § 105, the debtor must also satisfy the traditional 4-factor test, demonstrating: (i) a reasonable likelihood of a successful reorganization plan; (ii) irreparable harm to the debtor's ability to reorganize absent the requested relief; (iii) a balance-of-harms weighing in favor of relief; and (iv) that the requested relief would serve the public interest. App. 185 (PI Op. 46). Injunctive relief "should not be granted unless the movant, ***by a clear showing***, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

58

The bankruptcy court never required that "clear showing," much less concrete and imminent harm.  Instead, it invoked conjecture and inverted the burden of proof:

- For likelihood of a successful reorganization plan, the court admitted "the success of Debtor's reorganization is speculative."  App. 186 (PI Op. 47). Ignoring Debtor's burden to show likelihood of success, the court substituted a finding that "nothing in the record . . . suggest[s] that Debtor does ***not*** have a reasonable likelihood of reorganization."  *Id.*

- For irreparable harm to LTL, the court again indulged speculation, saying LTL "could" face "risks" of preclusion and record taint, *id.* at 173, 179, 180, without finding ***any*** J&J entity, in ***any*** talc case, has ***ever*** been subject to preclusion or "record taint" based on a judgment against a different entity.

- For indemnification, the court declined to require a "clear showing" and instead reversed the burden, finding "nothing in the record" proved that LTL would ***not*** face automatic indemnification obligations.  *Id.* at 172.

- For shared insurance, the court failed to require a "clear showing" that lawsuits against non-debtors risked insurance proceeds, ignoring disputes about availability and evidence that any coverage is spoken-for already. *See* pp. 56-57, *supra.*

- The court enjoined cases against nearly 150 third-party retailers despite LTL's failure to show an actual indemnification obligation for each. App. 173 (PI Op. 34) (quoting LTL's assertion it had "provided a summary" and "exemplars" of J&J tender agreements).  Nor did Debtor ***certify*** indemnification rights for each.  The court instead put the burden on claimants to disprove such agreements later:  "[T]his Court would be willing at a later date to review continuance of the stay if a ***record exists establishing the lack*** of a Tender Agreement or other contractual obligation."  *Id.* (emphasis added).

The harm to claimants and the public interest is plain.  "[T]he clear damage to the plaintiffs is the hardship of being forced to wait for an indefinite and, if recent

experience is any guide, a lengthy time before their causes are heard . . . . [P]laintiffs and crucial witnesses are dying, often from the very diseases that have led to these actions." *Johns-Manville*, 723 F.2d at 1076.  In the *Bestwall* talc bankruptcy, for example, ***all*** the original creditors' committee representatives have died without having their day in court.  *See* Appellants' Br. at 8, *In re Bestwall LLC*, 22-1127, Dkt. 30 (4th Cir. May 18, 2022).  Here, over 300 plaintiffs have died while their cases were frozen by the bankruptcy court.  *See* p. 45, *supra*.

The bankruptcy court's view, App. 187-89 (PI Op. 48-50), that talc claimants will benefit from having their cases frozen for years—as they decline and die—is absurd.  No witness, not even Debtor's experts, denied that claimants suffer irreparable harm.  Many have Stage 4 ovarian cancer, with a 5-year survival rate of 17%.[8]  Others have mesothelioma, a fatal cancer with a 5-year relative survival rate of 12%.[9]

---

[8] Ovarian Cancer: Stage 4, Minnesota Ovarian Cancer Alliance (last visited June 28, 2022), https://www.mnovarian.org/stage-4/#:~:text=In%20Stage%204%2C%20can cer%20has,considered%20Stage%204%20ovarian%20cancer.&text=Most%20wo men%20diagnosed%20with%20Stage,survival%20rate%20of%20approximately% 2017%25.

[9] Survival Rates for Mesothelioma, American Cancer Society (Mar. 2, 2022), https://www.cancer.org/cancer/malignant-mesothelioma/detection-diagnosis-stagin g/survival-statistics.html.

The extraordinary nature of the injunction also militates against it.  The bankruptcy court effectively awarded some 670 non-debtors the kind of channeling injunction available for confirmed plans under § 524(g).  For non-debtors to be protected under § 524(g), however, the plan must be approved by more than 75% of asbestos claimants and, even then, relief is limited to "derivative liability" where "statutory relationship" requirements are met.  *See In re W.R. Grace & Co.*, 13 F.4th 279, 283-84 (3d Cir. 2021).  The bankruptcy court here awarded such far-reaching relief at the outset without regard to § 524(g)'s prerequisites.  It froze non-derivative direct-liability claims against non-debtor J&J and claims against non-debtor retailers not eligible for relief under § 524(g).  Injunctive relief "can only be exercised within the confines of the Bankruptcy Code"—not to circumvent its requirements.  *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988).

*  *  *  *  *

If J&J or Old JJCI had chosen to declare bankruptcy in good faith, it would have been entitled to the benefit of an automatic stay and other bankruptcy relief.  But they structured LTL and its bankruptcy to make *LTL* the debtor and to keep themselves and their operations outside bankruptcy.  They cannot demand that equity save them from the consequences of that choice by granting them statutory relief from which they deliberately excluded themselves.  Equity will not "relieve

parties from the consequences of their own negligence or folly," much less strategic choices. *Dunphy v. Ryan*, 116 U.S. 491, 498 (1886).

## CONCLUSION

For the foregoing reasons, the Committee respectfully requests that the Court (i) reverse the MTD Order and dismiss the case, or alternatively, (ii) reverse the PI Order and vacate the stay and injunctive relief granted therein.

June 30, 2022

Respectfully submitted,

*/s/ Angelo J. Genova*

MOLOLAMKEN LLP
Jeffrey A. Lamken
600 New Hampshire Ave., N.W.
Washington, DC 20037
(202) 556-2010

GENOVA BURNS LLC
Angelo J. Genova
Daniel M. Stolz
110 Allen Road, Suite 304
Basking Ridge, NJ 07920
(973) 533-0777

BROWN RUDNICK LLP
David J. Molton
Michael S. Winograd
Robert J. Stark
7 Times Square
New York, NY 10036
(212) 209-4800

OTTERBOURG P.C.
Melanie L. Cyganowski
Adam C. Silverstein
230 Park Avenue
New York, NY 10169
(212) 661-9100

MASSEY & GAIL LLP
Jonathan S. Massey
1000 Maine Ave., S.W., Suite 450
Washington, DC 20024
(202) 652-4511

BAILEY & GLASSER LLP
Brian A. Glasser
1055 Thomas Jefferson St., N.W.
Washington, DC 20007
(202) 463-2101

PARKINS LEE & RUBIO LLP
Lenard M. Parkins
700 Milam St., Suite 1300
Houston, TX 77002
(713) 715-1666

*Counsel for Appellant Official Committee of Talc Claimants*

## <u>CERTIFICATE OF BAR MEMBERSHIP</u>

Pursuant to Third Circuit Local Rule 28.3(d), I certify that I am a member of the Bar of this Court.


June 30, 2022                    */s/ Angelo J. Genova*
                                 Angelo J. Genova

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,998 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

This brief complies with the electronic filing requirements of Third Circuit Local Rule 31.1(c) because the text of the electronic brief is identical to the text in the paper copies, and a virus detection program has been run on this file and no virus was detected.  The virus detection program utilized was Vipre Virus Protection, version 3.1.

June 30, 2022                                     */s/ Angelo J. Genova*
                                                              Angelo J. Genova

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I certify that today, June 30, 2022, I electronically filed the foregoing Brief and Appendix Volume 1 with the Clerk of the Court for the U.S. Court of Appeals for the Third Circuit using the appellate CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.


June 30, 2022                              */s/ Angelo J. Genova*
                                          Angelo J. Genova

# JOINT APPENDIX VOLUME 1

**JOINT APPENDIX**
**TABLE OF CONTENTS**

**VOLUME 1**
**IN COMPLIANCE WITH LOCAL RULE 32.2(c)**

| ITEM | D.I. NO. | DESCRIPTION | APPENDIX PAGE |
|---|---|---|---|
| **VOLUME 1 – IN COMPLIANCE WITH LOCAL RULE 32.2(c)** | | | |
| **VOLUME 1** | | | |
| **DOCUMENTS FILED IN CASE NO. 21-30589-MBK (MAIN BANKRUPTCY CASE)** | | | |
| 1. | 1572 | Memorandum Opinion (Denying Motions to Dismiss) | A1 |
| 2. | 1603 | Order Denying Motions to Dismiss | A57 |
| 3. | 1651 | Notice of Appeal (related documents: 1603, 1572, 1635, and Adv. Proc. 184).  Filed by Aylstock, Witkin, Kreis & Overholtz, PLLC | A59 |
| 4. | 1652 | Joint Notice of Appeal (related document:1603).  Filed by Official Committee of Talc Claimants II | A66 |
| 5. | 1653 | Joint Notice of Appeal (related document: 1635). Filed by Official Committee of Talc Claimants II | A77 |
| 6. | 1696 | Notice of Appeal (related documents:1572, 1603).  Filed by Official Committee of Talc Claimants I | A87 |
| 7. | 1710 | Notice of Appeal (related document:1603). Filed by Arnold & Itkin LLP | A96 |
| 8. | 1746 | Amended Joint Notice of Appeal (related document: 1603).  Filed by Official Committee of Talc Claimants II | A103 |

| \multicolumn{4}{c}{**VOLUME 1 – IN COMPLIANCE WITH LOCAL RULE 32.2(c)**} | | | |
|:---:|:---:|:---:|:---:|
| **ITEM** | **D.I. NO.** | **DESCRIPTION** | **APPENDIX PAGE** |
| 9. | 1747 | Amended Joint Notice of Appeal (related document: 1635). Filed by Official Committee of Talc Claimants II | A114 |
| 10. | 1803 | Notice of Appeal (related document: 1635). Filed by Official Committee of Talc Claimants I | A125 |
| 11. | 1955 | Order Certifying Direct Appeal to the United States Court of Appeals for the Third Circuit of Order Denying Motions to Dismiss | A135 |
| \multicolumn{4}{c}{**DOCUMENTS FILED IN CASE NO. 21-03032-MBK (ADVERSARY PROCEEDING)**} | | | |
| 12. | 184 | Opinion Granting Preliminary Injunction and Resolving Adversary Proceeding in Debtor's Favor | A140 |
| 13. | 187 | Order (I) Declaring that Automatic Stay Applies to Certain Actions Against Non-Debtors and (II) Preliminarily Enjoining Certain Actions | A194 |
| 14. | 189 | Notice of Appeal to Third Circuit Court. (related documents: 184, 187). Filed by Aylstock, Witkin, Kreis & Overholtz, PLLC | A202 |
| 15. | 190 | Joint Notice of Appeal to District Court. (related document: 187). Filed by Official Committee of Talc Claimants II | A209 |
| 16. | 201 | Notice of Appeal to District Court. (related documents: 184, 187). Filed by Official Committee of Talc Claimants I | A219 |
| 17. | 202 | Exhibits C and D to Notice of Appeal (related document: 201) [excerpt: pages 1-2; 672-690] | A229 |

| VOLUME 1 – IN COMPLIANCE WITH LOCAL RULE 32.2(c) | | | |
|---|---|---|---|
| ITEM | D.I. NO. | DESCRIPTION | APPENDIX PAGE |
| 18. | 210 | Amended Joint Notice of Appeal. (related document: 187).  Filed by Official Committee of Talc Claimants II | A251 |
| 19. | 231 | Order Certifying Direct Appeal to the United States Court of Appeals for the Third Circuit of Order Extending Automatic Stay and Issuing Preliminary Injunction | A262 |
| **DOCUMENTS FILED IN THIRD CIRCUIT CASE NO. 22-8015** | | | |
| 20. | 12 | Order Granting Petitions for Permission to Appeal Pursuant to 28 U.S.C. Section 158(d)(2) | A268 |

## VOLUMES 2 - 8
## DOCUMENTS FILED IN CASE NO. 21-30589-MBK

| DOCUMENTS FILED IN CASE NO. 21-30589-MBK | | | |
|---|---|---|---|
| ITEM | D.I. NO. | DESCRIPTION | APPENDIX PAGE |
| **VOLUME 2** | | | |
| 21. | -- | Docket Sheet | A273 |
| 22. | 1 | Voluntary Petition Under Chapter 11 | A291 |
| 23. | 3 | Informational Brief of LTL Management LLC | A313 |
| 24. | 5 | Declaration of John K. Kim in Support of First Day Pleadings | A445 |
| 25. | 8 | Debtor's Motion for an Order Authorizing Establishment of a Qualified Settlement Fund for Payment of Talc Claims | A499 |
| 26. | 34 | Ex Parte Order (I) Scheduling an Expedited Hearing on Certain First Day Pleadings and | A539 |

| | | DOCUMENTS FILED IN CASE NO. 21-30589-MBK | |
|---|---|---|---|
| **ITEM** | **D.I. NO.** | **DESCRIPTION** | **APPENDIX PAGE** |
| | | (II) Approving the Form and Manner of Limited Notice Thereof | |
| 27. | 44 | Debtor's Emergency Motion to Enforce the Automatic Stay Against Talc Claimants Who Seek to Pursue Their Claims Against the Debtor and Its Non-Debtor Affiliates | A542 |
| 28. | 94 | Order on Debtor's Ex Parte Motion for Entry of an Order Scheduling an Emergency Hearing on the Motion to Enforce the Automatic Stay and MDL Plaintiffs Steering Committee Ex Parte Motion to Shorten Notice | A595 |
| 29. | 102 | Nedelka Vanklive's (I) Response/Objection to Debtor's Emergency Motion to Enforce the Automatic Stay Against Talc Claimants Who Seek to Pursue Their Claims Against the Debtor and its Non-Debtor Affiliates, or, in the Alternative (II) Motion for Abstention as to Pending California Action, and (III) Objection to Debtor's Ex Parte Motion Requesting Authority to Exceed Maximum Page Limit [excerpt: pages 1-3] | A597 |
| 30. | 178 | Transcript for Hearing/Trial held on 10/20/21 | A600 |
| | | **VOLUME 3** | |
| 31. | 344 | Exhibit List from Hearing Held on 11/05/2021 | A825 |
| 32. | 390 | Transcript for Hearing/Trial held on 11/4/21 [excerpt: pages 73-295] | A849 |
| 33. | 391 | Transcript for Hearing/Trial held on 11/5/21 | A1072 |

| VOLUME 4 | | | |
|---|---|---|---|
| 34. | 392 | Transcript for Hearing/Trial held on 11/10/21 | A1348 |
| 35. | 416 | Order Transferring Case to the District of New Jersey | A1506 |
| 36. | 417 | Inter district transfer case from other court | A1518 |
| 37. | 495 | [Amended] Initial Statement of Official Committee of Talc Claimants Respecting Chapter 11 Case | A1578 |
| 38. | 545 | Transcript regarding Hearing Held 11/22/21 | A1600 |
| 39. | 547 | Application For Retention of Professional Bates White, LLC, Effective as of October 14, 2021 | A1666 |
| 40. | 632 | Motion of the Official Committee of Talc Claimants to Dismiss Debtor's Chapter 11 Case | A1726 |
| 41. | 766 | [Arnold & Itkin LLP's] Motion to Dismiss Bankruptcy Case [exhibits omitted] | A1765 |
| 42. | 918 | Debtor's Motion for Entry of an Order Authorizing the Filing Under Seal of Certain Confidential Exhibits from North Carolina Preliminary Injunction Hearing | A1805 |
| 43. | 948 | Order for Entry of Agreed Protective Order Governing Confidential Information by and Between the Talc Creditors' Committee and the Debtor Pursuant to D.N.J. LBR 9021-1(b) | A1834 |
| 44. | 956 | Debtor's Objection to Motion to Dismiss Chapter 11 Case [excerpt: pages 14-17] | A1863.1 |
| 45. | 1003 | Motion of Aylstock, Witkin, Kreis & Overholtz, PLLC to Dismiss Bankruptcy Case and Joinder in Related Filings | A1864 |
| 46. | 1092 | Joinder of Claimants Represented by the Barnes Law Group to Motions Filed by Official Committee of Talc Claimants and | A1870 |

| | | Arnold & Itkin LLP to Dismiss the Debtor's Chapter 11 Case | |
|---|---|---|---|
| 47. | 1226 | Joint Stipulation and Agreed Order Between the Official Committee of Talc Claimants I and the Official Committee of Talc Claimants II Regarding Pleadings Previously Filed | A1872 |
| 48. | 1354 | [Arnold & Itkin's] Reply in Support of Motion to Dismiss Bankruptcy Case [exhibits omitted] | A1877 |
| 49. | 1380 | Letter to The Hon. Michael B. Kaplan from John A. Morris on behalf of Arnold & Itkin (Motion in Limine) | A1914 |
| **VOLUME 5** | | | |
| 50. | 1396 | Memorandum of Law of Amicus Curiae by Erwin Chemerinsky in Support of Motion of the Official Committee of Talc Claimants to Dismiss Debtor's Chapter 11 Case | A1917 |
| 51. | 1410 | Memorandum of Law of Amici Curiae by Certain Complex Litigation Law Professors in Support of Motion of the Official Committee of Talc Claimants to Dismiss Debtor's Chapter 11 Case | A1932 |
| 52. | 1432 | Canadian Class Action Plaintiffs' Opposition to Motions to Dismiss Chapter 11 Case [excerpt: pages 1-2] | A1968 |
| 53. | 1454 | Order Denying Motions in Limine | A1970 |
| 54. | 1465 | [Corrected] Memorandum of Law of Amici Curiae by Certain Law Professors in Support of Motion of the Official Committee of Talc Claimants to Dismiss Debtor's Chapter 11 Case | A1972 |
| 55. | 1481 | Transcript regarding Hearing Held 02/14/22 | A1992 |

| 56. | 1494 | Transcript regarding Hearing Held 02/15/22 | A2281 |
|---|---|---|---|
| 57. | 1497 | Joint Stipulation and Agreed Order Between Movants and Debtor Regarding the Admission of Exhibits at Motion to Dismiss Trial | A2493 |
| **VOLUME 6** | | | |
| 58. | 1516 | Joint Stipulation and Agreed Order Between the Official Committee of Talc Claimants I, the Official Committee of Talc Claimants II, and the Debtor Regarding the Evidentiary Record in Preliminary Injunction Adversary Proceeding and Trial on Motions to Dismiss | A2584 |
| 59. | 1518 | Transcript regarding Hearing Held 02/16/22 | A2591 |
| 60. | 1528 | Transcript regarding Hearing Held 02/17/22 - AM Session | A2789 |
| 61. | 1529 | Transcript regarding Hearing Held 02/17/22 - PM Session | A2917 |
| **VOLUME 7** | | | |
| 62. | 1553 | Transcript regarding Hearing Held 02/18/22 | A3028 |
| 63. | 1566 | Joint Stipulation and Agreed Order Between Movants and Debtor Regarding the Admission of Deposition Designations at Motion to Dismiss Trial [includes deposition transcript excerpts] | A3284 |
| **VOLUME 8** | | | |
| 64. | 1573 | Memorandum Opinion (Granting Preliminary Injunction and Resolving Adversary Proceeding in Debtor's Favor) | A3659 |
| 65. | 1635 | Order (I) Declaring that Automatic Stay Applies to Certain Actions Against Non-Debtors and (II) | A3713 |

| | | Preliminarily Enjoining Certain Actions | |
|---|---|---|---|
| 66. | 1835 | Debtor's Omnibus Objection to Motions for Certification of Direct Appeal | A3720 |
| 67. | 1926 | Transcript regarding Hearing Held 3/30/22 [excerpt: pages 70 to 76] | A3760 |
| 68. | 2566 | Statement of the Official Committee of Talc Claimants in Support of the Court's Modifying Upon Revisiting of the PI Order | A3767 |

## VOLUME 8 (Cont'd)
## DOCUMENTS FILED IN CASE NO. 21-03032-MBK
## (*LTL MANAGEMENT LLC VS. THOSE PARTIES LISTED ON APPENDIX A TO COMPLAINT, ET AL.*)

| ITEM | D.I. NO. | DESCRIPTION | APPENDIX PAGE |
|---|---|---|---|
| \multicolumn | | DOCUMENTS FILED IN CASE NO. 21-03032-MBK | |
| | | **VOLUME 8 (Cont'd)** | |
| 69. | -- | Docket Sheet | A3789 |
| 70. | 1 | Debtor's Complaint for Declaratory and Injunctive Relief (I) Declaring That the Automatic Stay Applies to Certain Actions Against Non-Debtors or, (II) Preliminarily Enjoining Such Actions and (II) Granting a Temporary Restraining Order Pending a Final Hearing [pages 2 to 670 omitted from Appendix A] | A3798 |
| 71. | 2 | Debtor's Motion for an Order (I) Declaring That the Automatic Stay Applies to Certain Actions Against Non-Debtors or (II) Preliminarily Enjoining Such Actions and (III) Granting a Temporary Restraining Order Pending a Final Hearing [pages 2 to 670 omitted from Appendix A] | A3843 |
| 72. | 3 | Supplemental Declaration of John K. Kim in Support of Debtor's Complaint for Declaratory and Injunctive Relief and Related Motions | A3961 |
| 73. | 17 | Transcript for Hearing/Trial held on 10/22/2021 | A3975 |
| 74. | 23 | Transcript for Hearing/Trial held on 10/25/2021 | A4143 |
| 75. | 28 | Order Regarding Debtor's Motion for an Order (I) Declaring the Automatic Stay | A4184 |

| ITEM | D.I. NO. | DESCRIPTION | APPENDIX PAGE |
|------|----------|-------------|---------------|
| \multicolumn | | DOCUMENTS FILED IN CASE NO. 21-03032-MBK | |
|  |  | Applies to Certain Actions Against Non-Debtors or (II) Preliminarily Enjoining Such Actions, and (III) Granting A Temporary Restraining Order Pending a Final Hearing |  |
| 76. | 71 | Order Granting Motion to Restrict Public Access (related document: 66) | A4190 |
| 77. | 72 | Order Granting Motion to Restrict Public Access (related document: 67) | A4192 |
| 78. | 102 | Order Granting the Debtor's Request for Preliminary Injunctive Relief | A4194 |
| 79. | 103 | Inter District Transfer Case from Other Court | A4206 |
| 80. | 146 | Debtor's Omnibus Reply in Support of Motion for an Order (A) Declaring that the Automatic Stay Applies to Certain Actions Against Non-Debtors or (B) Preliminarily Enjoining Such Actions and (C) Granting a Temporary Restraining Order Pending a Final Hearing [excerpt: pages 1, 51-53] | A4218 |
| 81. | 157 | Bridge Order Extending Termination Date of Order Granting the Debtors Request for Preliminary Injunctive Relief | A4222 |
| 82. | 175 | Order Granting Debtor's Motion to Seal Document | A4226 |

**VOLUMES 9 - 18**
**EXHIBITS ADMITTED AT TRIAL[1]**

| EXHIBITS ADMITTED AT TRIAL | | | |
|---|---|---|---|
| ITEM | TRIAL EX. NO. | DESCRIPTION | APPENDIX PAGE |
| **MOVANTS' EXHIBTS** | | | |
| **VOLUME 9** | | | |
| **CLOSING BINDER, DEPOSITION EXHBITS, AND JUDICIAL NOTICE DOCUMENTS** | | | |
| 83. | 1.20 | Funding Agreement | A4229 |
| 84. | 1.24 | Plan of Divisional Merger (LTL0001327-29) | A4249 |
| 85. | 1.52 | Amended and Restated Funding Agreement | A4313 |
| 86. | 1.53 | Divisional Merger Support Agreement | A4334 |
| 87. | 1.54 | Services Agreement | A4341 |
| 88. | 1.56 | Secondment Agreement | A4357 |
| 89. | 2 | Form 10-Q for the period ending 10.3.2021 | A4368 |
| 90. | 9 | Approval Request for Restructuring of JJCI – Memo of Approval | A4444 |
| 91. | 23 | Minutes of Board of Managers | A4456 |
| 92. | 26 | J&J Press Release Re: Johnson & Johnson Announces Plans to Accelerate Innovation, Serve Patients and Consumers, and Unlock Value through Intent to Separate Consumer Health Business | A4463 |
| 93. | 110 | Email re: Litigation follow-up | A4469 |
| 94. | 113 | J&J Form 10-Q as of 7.4.21 | A4472 |

---

[1] Per the Joint Stipulation and Agreed Order Regarding the Admission of Exhibits at the Motion to Dismiss Trial (Dkt. 1497), Movants' and Debtor's exhibits were admitted on February 16, 2022; certain exhibits were admitted for a limited purpose or remain under seal, as noted herein.

| **EXHIBITS ADMITTED AT TRIAL** | | | |
|---|---|---|---|
| **ITEM** | **TRIAL EX. NO.** | **DESCRIPTION** | **APPENDIX PAGE** |
| 95. | 161 | Debtor's Supplemental Response to Official Committee of Talc Claimants' RPD No. 40 | A4548 |
| 96. | 251 | Verdict, *Estate of Fox v. Johnson & Johnson,* Missouri 22nd Judicial Circuit, St. Louis City, No. 1422-CC09012; February 22, 2016. | A4549 |
| 97. | 252 | Verdict Form, *Gloria Ristesund v. Johnson & Johnson, et al.*, Missouri 22nd Judicial Circuit, St. Louis City, No. 1422-CC09012-01; May 2, 2016. | A4553 |
| 98. | 254 | Verdict Form, *Lois Slemp v. Johnson & Johnson,* Missouri 22nd Judicial Circuit, St. Louis City, No. 1422-09326; May 4, 2017. | A4557 |
| 99. | 259 | Verdict Form, *Teresa Leavitt v. Johnson & Johnson et al*, California Superior Court, Alameda Co., Case No. RG17882401; March 13, 2019. | A4561 |
| 100. | 260 | Verdict Transcript, *Donna and Robert Olson v. Johnson & Johnson Consumer Inc., et al*, Supreme Court of New York County, New York, Index No. 19038/2017; May 21, 2019. [excerpt: pages 9517-9520] | A4571 |
| 101. | 263 | Jury Verdict Sheets - Amended, *Douglas and Roslyn Barden, et al v. Johnson & Johnson et al.,* New Jersey Superior Court, Middlesex County, Docket No.: MID-L-1809-17 AS; September 11, 2019. | A4575 |
| 102. | 265 | Phase 2 Verdict Transcript, *Douglas and Roslyn Barden, et al., v. Brenntag North America, et al.*, New Jersey Superior Court, Middlesex County, Docket No.: MID-1809-17AS; February 2, 2020. | A4594 |

| EXHIBITS ADMITTED AT TRIAL | | | |
|---|---|---|---|
| **ITEM** | **TRIAL EX. NO.** | **DESCRIPTION** | **APPENDIX PAGE** |
| 103. | 267 | Verdict Form, *Christina Prudencio v. Johnson & Johnson, et al.*, California Superior Court, Alameda Co., Case No. RG20061303; August 23, 2021. | A4623 |
| 104. | 268 | Verdict on Punitive Damages, *Christina Prudencio v. Johnson & Johnson, et al.*, California Superior Court, Alameda Co., Case No. RG20061303; August 27, 2021. | A4629 |
| 105. | 284 | J&J Worldwide Financial Procedures | A4630 |
| 106. | 300 | Email re: Plato | A4634 |
| 107. | 332 | Expert Report of Saul E. Burian | A4638 |
| 108. | 377 | Expert Report of Matthew Diaz (01.28.2022) | A4694 |
| 109. | 384 | 10/13/2020 JNJ Internal Conversation | A4766 |
| 110. | 385 | 10/27/2020 S&P Global Ratings Periodic Review of Johnson & Johnson | A4768 |
| **VOLUME 10** | | | |
| **ADDITIONAL EXHIBITS** | | | |
| 111. | 558 | Compilation Exhibit reflecting verdicts in talc litigation | A4952 |
| **NORTH CAROLINA PRELIMINARY HEARING EXHIBITS** | | | |
| 112. | 600.002 | Agreement for Transfer of Assets and Bill of Sale, dated January 1, 1979, between Johnson & Johnson and Johnson & Johnson Baby Products Company (LTL 0000561) | A4953 |
| 113. | 600.003 | Agreement for Transfer of Assets and Bill of Sale, dated January 1, 1979, between Johnson & Johnson and Johnson & Johnson Baby Products Company | A4961 |
| 114. | 600.006 | December 12, 1978 Board of Directors Meeting Minutes | A5006 |

| ITEM | TRIAL EX. NO. | DESCRIPTION | APPENDIX PAGE |
|---|---|---|---|
| **EXHIBITS ADMITTED AT TRIAL** | | | |
| 115. | 600.008 | FRE 1006 Insurance Coverage Evidence Summary | A5020 |
| 116. | 600.013 | Insurance Agreement: North River JU 0802 | A5032 |
| 117. | 600.015 | 1989 Agreement with Safeway for indemnification | A5071 |
| 118. | 600.016 | 2020 Agreement with HEB for indemnification | A5074 |
| 119. | 600.017 | FRE 1006 Tender Agreement Evidence Summary | A5081 |
| 120. | 600.018 | Tender Agreement wherein Johnson & Johnson Consumer Inc. agrees to tender defense and indemnify Safeway for claims by Abbott, Richard, dated May 13, 2019 | A5163 |
| 121. | 600.019 | Tender Agreement wherein Johnson & Johnson Consumer Inc. agrees to tender defense and indemnify Albertson for claims by Lane, Ardys, dated October 8, 2018 | A5168 |
| 122. | 600.020 | MDL Second Amended Master Complaint, MDL NO. 16-2738 (D.N.J. Dec. 22, 2020) | A5173 |
| **VOLUME 11** | | | |
| 123. | 600.021 | Cadagin, et al v. Johnson & Johnson, et al., No. 18-L-572 In the Circuit Court of the Twentieth Judicial Circuit St. Clair County, Illinois, (Jul. 28, 2021 Trial Transcript and Verdict form) | A5287 |
| 124. | 600.022 | Anderson et al. v. Borg Warner Corp. et al., No. BC666513, in the Superior Court for the State of California, County of Los Angeles (Jun. 27, 2017) | A5441 |
| 125. | 600.023 | Barden v. Johnson & Johnson, et al., MID-L-1809-17AS, Superior Court of New Jersey, | A5491 |

| ITEM | TRIAL EX. NO. | DESCRIPTION | APPENDIX PAGE |
|---|---|---|---|
| \multicolumn{4}{c}{**EXHIBITS ADMITTED AT TRIAL**} |
| | | Middlesex County (Feb. 6, 2021 Trial Transcript) | |
| 126. | 600.024 | Prudencio v. Johnson & Johnson, No. RG20061303, in the Superior Court of California, Alameda County (Aug. 13, 2021 Trial Transcript) | A5685 |
| **VOLUME 12** |
| 127. | 600.025 | Vanklive v. Johnson & Johnson, No. RC20062734, Superior Court of California, County of Alameda (Oct. 22, 2021 Trial Transcript & Oct. 26, 2021 Trial Transcript) | A5829 |
| 128. | 600.026 | McBride et al. v American International Industries, Inc., et al., No. 49D13-2110-MI-034781, Marion County Superior Court for the State of Indiana (Oct. 15, 2021) | A5929 |
| 129. | 600.027 | McBrayer, et al. v. Acme et al., No. 2020-CP10-03946, County of Charleston for the State of South Carolina (October 28, 2021 Trial Transcript) | A5950 |
| 130. | 600.028 | Transcript of July 30, 2019 proceeding in Hayes v. Colgate Palmolive Co., Case No. 16-CI-03503 (Ky. Cir. Ct. Jefferson Jul. 30, 2019), Testimony of Dr. John Hopkins [excerpt: pages 49-56] | A6055 |
| 131. | 600.029 | Settlement Facility Agreement by and among Johnson & Johnson, Johnson & Johnson Consumer Inc., LTL Management LLC, and U.S. Bank National Association, as the Trustee, Funding Agreement Documents (Dkt. 8 – 1, Ex. A) | A6063 |
| 132. | 600.031 | Expert report of Charles H. Mullin PhD dated September 13, 2021 | A6092 |

| | | EXHIBITS ADMITTED AT TRIAL | |
|---|---|---|---|
| **ITEM** | **TRIAL EX. NO.** | **DESCRIPTION** | **APPENDIX PAGE** |
| 133. | 600.032 | List of Protected Parties (Adv. Pro. Dkt. 1 -1, Appendix B; Adv. Pro. Dkt. 2-1, Appendix B) | A6245 |
| 134. | 600.034 | Plan and Agreement of Reorganization between Eastern Magnesia Talc Co., Inc., and Johnson & Johnson, dated July 30, 1965. | A6284 |
| 135. | 600.035 | Acquisition of the assets and Liabilities of Eastern Magnesia Talc Co., Inc. by a Wholly-Owned Subsidiary of Johnson & Johnson, dated July 30, 1965 | A6306 |
| 136. | 600.043 | Johnson & Johnson Medical Safety Counsel Charter, dated April 19, 2013 | A6308 |
| 137. | 600.044 | Johnson & Johnson Medical Safety Counsel Charter, dated April 10, 2014 | A6318 |
| 138. | 600.045 | Johnson & Johnson Medical Safety Counsel Charter, dated July 27, 2015 | A6329 |
| 139. | 600.046 | Consumer Medical Safety Counsel Operational Charter, dated June 26, 2017 | A6339 |
| 140. | 600.047 | Consumer Medical Safety Counsel Operational Charter, dated June 28, 2018 | A6350 |
| 141. | 600.048 | Consumer Medical Safety Counsel Operational Charter, dated March 6, 2019 | A6361 |
| 142. | 600.049 | Declaration of Susan Schirger-Ward | A6372 |
| 143. | 600.050 | Declaration of Adam Lisman | A6376 |
| 144. | 600.051 | Letter from A.J. Huetteman to A. Marinaro, dated October 31, 1977 | A6382 |
| 145. | 600.052 | Johnson & Johnson Baby Products Company Action Authorized by Unanimous Consent of Shareholder, dated July 21, 1981, attaching Agreement for Transfer of Assets and Bill of | A6383 |

| | | EXHIBITS ADMITTED AT TRIAL | |
|---|---|---|---|
| **ITEM** | **TRIAL EX. NO.** | **DESCRIPTION** | **APPENDIX PAGE** |
| | | Sale, dated July 27, 1981, between Johnson & Johnson Baby Products Company and Omni Education Corporation | |
| 146. | 600.053 | Certificate of Merger of Personal Products Company into Johnson & Johnson Baby Products Company, dated July 27, 1981 | A6391 |
| 147. | 600.054 | Agreement for Transfer of Assets and Bill of Sale, dated January 3, 1988, between Johnson & Johnson Baby Products Company (renamed Johnson & Johnson Orthopaedics) and Johnson & Johnson Dental Products (renamed Johnson & Johnson Consumer Products, Inc.) | A6394 |
| 148. | 600.055 | Johnson & Johnson Consumer Companies, Inc. Certificate of Incorporation, dated July 1, 1997 | A6399 |
| 149. | 600.056 | Incorporation of Personal Products, dated October 9, 1970 | A6401 |
| 150. | 600.057 | Certificate of Merger between McNeil Consumer Products Company and Personal Products Company, dated November 28, 1988 | A6465 |
| 151. | 600.058 | Certificate of Merger, dated June 25, 2015, between Neutrogena, LLC, Johnson & Johnson Consumer Companies LLC, Johnson & Johnson Sales and Logistics Company, LLC, and McNEIL-PPC, Inc. | A6469 |
| | | **VOLUME 13** | |
| 152. | 600.059 | Certificate of Merger between Johnson & Johnson Consumer Companies, LLC and Johnson & Johnson Consumer Companies, Inc., dated June 25, 2015 | A6473 |

| EXHIBITS ADMITTED AT TRIAL | | | |
|---|---|---|---|
| **ITEM** | **TRIAL EX. NO.** | **DESCRIPTION** | **APPENDIX PAGE** |
| 153. | 600.061 | Agreement and Plan of Merger dated, dated June 25, 2015, between Neutrogena, LLC, Johnson & Johnson Consumer Companies LLC, Johnson & Johnson Sales and Logistics Company, LLC, and McNEIL-PPC, Inc. | A6477 |
| 154. | 600.062 | Johnson & Johnson Consumer Inc. Talc 2021 Accounting Entry Sample – Confidential | A6482 |
| 155. | 600.064 | Johnson & Johnson Worldwide Financial Procedures, 330Ba - Legal Fees, last revised March 2005 | A6484 |
| 156. | 600.065 | Johnson & Johnson 10-K, dated January 2, 1977 | A6488 |
| 157. | 600.066 | Johnson & Johnson 10-K, dated December 30, 1979 | A6532 |
| 158. | 600.067 | 1986 Johnson & Johnson Annual Report | A6572 |
| 159. | 600.068 | Johnson & Johnson 10-K, dated January 1, 1978 | A6640 |
| 160. | 600.069 | Johnson & Johnson 10-K, dated December 31, 1978 | A6684 |
| 161. | 600.070 | Excerpt from 1985 Annual Report | A6745 |
| 162. | 600.071 | Excerpt from 1986 Annual Report | A6746 |
| 163. | 600.072 | Excerpt from 1989 Annual Report | A6747 |
| 164. | 600.073 | Agreement between Johnson & Johnson Consumer Companies, Inc. and PTI Royston, LCC regarding Talc Sanitization Project, dated March 15, 2011 | A6748 |
| 165. | 600.076 | Executive Committee Actions, Dated July 18 to September 11, 1986 | A6771 |

| EXHIBITS ADMITTED AT TRIAL | | | |
|---|---|---|---|
| ITEM | TRIAL EX. NO. | DESCRIPTION | APPENDIX PAGE |
| 166. | 600.077 | Figure 1 from the Expert Report of Dr. Charles Mullin of October 29, 2021 | A6772 |
| 167. | 600.078 | Figure 2 from the Expert Report of Dr. Charles Mullin of October 29, 2021 | A6774 |
| 168. | 600.079 | Figure 3 from the Expert Report of Dr. Charles Mullin of October 29, 2021 | A6776 |
| 169. | 600.080 | Trial outcome chart | A6778 |
| 170. | 600.081 | Johnson & Johnson Medical Safety Standard | A6780 |
| 171. | 600.083 | Notice of Bankruptcy Filing in Hill v. J&J et al., dated Oct. 26, 2021 | A6803 |
| 172. | 600.086 | Richards v. Johnson & Johnson et al. Complaint | A6819 |
| 173. | 600.087 | Plant Inspection Report | A6885 |
| 174. | 600.088 | Years of Exposure & Compensation Table | A6887 |
| 175. | 601.001 | Barden et al. v. Brenntag et al. Transcript 7/22/2019 [excerpt: pages 41-47] | A6889 |
| 176. | 601.003 | Transcript of Deposition of John Hopkins in In re LAOSD Asbestos Cases, Superior Court of Los Angeles County, California; J.C.C.P. No. 4674; 4/11/2018 [excerpt: pages 37-39] | A6896 |
| 177. | 601.006 | Transcript of Proceeding in Olson v. J&J et al., Supreme Court of New York County, New York; Index No. 190328/2017; May 3, 2019 [excerpt: pages 7743-7753; 7831-7833] | A6899 |
| 178. | 601.012 | J&J "What We Know" Advertisement Review Email 12/17/2018 | A6913 |
| 179. | 601.013 | J&J Letter to U.S. House Subcommittee 3/11/2019 | A6915 |

| EXHIBITS ADMITTED AT TRIAL | | | |
|---|---|---|---|
| **ITEM** | **TRIAL EX. NO.** | **DESCRIPTION** | **APPENDIX PAGE** |
| 180. | 601.014 | J&J CEO Alex Gorsky Twitter Video December 2018 | A6919 |
| 181. | 601.015 | CNN "Mad Money" Screenshot Featuring J&J CEO Alex Gorsky | A6920 |
| 182. | 601.132 | J&J Form 8-K, dated October 19, 2021 | A6924 |
| 183. | 601.150 | J&J 1986 Annual Report | A6927 |
| 184. | 601.161 | Plaintiffs' First Amended Master Long Form Complaint and Jury Demand, MDL No. 16-2738 (FLW) (LHG), Doc. 132, Filed March 16, 2017 | A6995 |
| **VOLUME 14** | | | |
| 185. | 601.173 | 2018 Draft Screening Assessment on Talc - Health Canada [excerpt: pages i-v; 1-10] | A7059 |
| 186. | 601.174 | 2021 Final Screening Assessment on Talc - Health Canada [excerpt: pages i-v; 1-5] | A7074 |
| 187. | 603.017 | Memorandum of Law in Support of J&J's and Johnson & Johnson Consumer Inc.'s Motion to Fix Venue for Claims Related to Imery's Bankruptcy filed on April 18, 2019 in In re Imerys Talc America, Inc., et al., Civ. Action No. 19-mc-00103 (MN) (D. Del. 2019) [Imerys Civ. Action Dkt. No. 2] | A7085 |
| 188. | 603.018 | Reply Memorandum of Law in Further Support of J&J's and JJCI's Motion to Fix Venue for Claims Related to Imery's Bankruptcy [Imerys Civ. Action Dkt. No. 81] filed on May 28, 2019 [excerpt: page 38] | A7113 |
| **SPGI DOCUMENTS** | | | |
| 189. | 746 | David Kaplan Notes re: Johnson & Johnson (7.19.21) | A7115 |

| | | **DEBTOR'S EXHIBTS** | |
|---|---|---|---|
| 190. | 2 | Expert Report of Gregory K. Bell, Ph.D., offered January 28, 2022 | A7117 |
| 191. | 3 | Expert Report of John R. Castellano, offered January 28, 2022 | A7219 |
| 192. | 4 | Expert Report of Charles H. Mullin, Ph.D., offered October 29, 2021 | A7259 |
| 193. | 15 | Johnson & Johnson Reconciliation of Non-GAAP Financial Measures, Fourth Quarter 2020 | A7300 |
| 194. | 16 | Johnson & Johnson Reconciliation of Non-GAAP Financial Measures, Fourth Quarter 2021 | A7306 |
| 195. | 18 | Minutes of the October 14, 2021 Meeting of the Board of Managers of LTL Management LLC | A7312 |
| 196. | 19 | Exhibit 14 to the deposition of Robert Wuesthoff, taken December 22, 2021 in the matter of *In re LTL Management LLC*, No. 21-30589 (MBK) | A7313 |
| 197. | 20 | Exhibit 15 to the deposition of Robert Wuesthoff, taken December 22, 2021 in the matter of *In re LTL Management LLC*, No. 21-30589 (MBK) | A7315 |
| 198. | 21 | October 20, 2017 email to numerous individuals including Robert Wuesthoff with the subject line, "California Talc Verdict reversed" | A7335 |
| 199. | 22 | Exhibit 17 to the deposition of Robert Wuesthoff, taken December 22, 2021 in the matter of *In re LTL Management LLC*, No. 21-30589 (MBK) | A7337 |
| 200. | 23 | Exhibit 20 to the deposition of Robert Wuesthoff, taken December 22, 2021 in the matter of *In re LTL Management LLC*, No. 21-30589 (MBK) | A7351 |
| 201. | 25 | *Johnson & Johnson v. Ingham*, Petition for Writ of Ceriorari, 141 S. Ct. 2716 (2021) | A7353 |

| 202. | 26 | Exhibit 62, entitled, "Johnson & Johnson Consumer Inc. Talc 2021 Accounting Entry Sample – Confidential" | A7406 |
|---|---|---|---|
| 203. | 55 | Exhibit 107 to the deposition of Michelle Ryan, taken January 27, 2022 in the matter of *In re LTL Management LLC*, No. 21-30589 (MBK) | A7408 |
| 204. | 56 | Project Plato Memorandum of Approval, sent on and dated October 11, 2021 | A7410 |
| 205. | 57 | Michelle Ryan's Consent to the Project Plato Memorandum of Approval, emailed October 11, 2021 | A7421 |
| 206. | 58 | Valuation of Old JJCI | A7422 |
| 207. | 59 | Exhibit 34 to the deposition of Thibaut Mongon, taken January 19, 2022 in the matter of *In re LTL Management LLC*, No. 21-30589 (MBK), entitled, "Johnson & Johnson's (JNJ) Management Presents at Barclays Global Consumer Staples Conference (Transcript)," dated September 10, 2021 | A7427 |
| 208. | 60 | Exhibit 39 to the deposition of Thibaut Mongon, taken January 19, 2022 in the matter of *In re LTL Management LLC*, No. 21-30589 (MBK), entitled, "Johnson & Johnson (JNJ) Q3 2021 Results – Earnings Call Transcript," dated October 19, 2021 | A7439 |
| 209. | 61 | February 23, 2016 Email from D. Bass to J. Mesquita et al. re: "URGENT: Talc Update" | A7463 |
| 210. | 62 | October 28, 2016 Email from T. Mongon to Consumer AP Employees et al. re: "Talc Update" | A7466 |
| 211. | 63 | December 4, 2019 Email from K. Wengel to JJCUS Enterprise Supply Chain Leadership Team re: "Bernstein Analyst Report for Investor Visit to Consumer Skillman R&D Site," and attachment | A7467 |
| 212. | 64 | Exhibit 31 to the deposition of Thibaut Mongon, taken January 19, 2022 in the | A7488 |

| | | matter of *In re LTL Management LLC*, No. 21-30589 (MBK), a January 31, 2020 Email from D. Lorenson to M. Sneed et al. re: "INFORM: Talc News next week" | |
|---|---|---|---|
| 213. | 65 | May 7, 2020 Email from K. Widmer to T. Mongon re: "Talc Reco," and attachments | A7489 |
| 214. | 67 | Exhibit 26 to the deposition of Thibaut Mongon, taken January 19, 2022 in the matter of *In re LTL Management LLC*, No. 21-30589 (MBK), entitled, "Johnson & Johnson Announces Plans to Accelerate Innovation, Serve Patients and Consumers, and Unlock Value through Intent to Separate Consumer Health Business," dated November 12, 2021 | A7578 |
| 215. | 68 | Exhibit 44 to the deposition of Thibaut Mongon, taken January 19, 2022 in the matter of *In re LTL Management LLC*, No. 21-30589 (MBK), an October 11, 2021 Email from C. Andrew to T. Mongon re: "Project Plato Approval Memorandum for Approval Today" | A7584 |
| 216. | 69 | Exhibit 9 to the deposition of Thibaut Mongon, taken January 19, 2022 in the matter of *In re LTL Management LLC*, No. 21-30589 (MBK), an October 11, 2021 Approval Request for the Restructuring of Johnson & Johnson Consumer Inc. | A7596 |
| 217. | 70 | Exhibit 36 to the deposition of Thibaut Mongon, taken January 19, 2022 in the matter of *In re LTL Management LLC*, No. 21-30589 (MBK), an October 11, 2021 Email from C. Andrew to T. Mongon re: "Project Plato Approval Memorandum for Approval Today" | A7607 |
| **VOLUME 15** | | | |
| 218. | 73 | October 21, 2017 Email from M. Saitzyk to C. Goodrich and A. Scavazzini re: "California Talc Verdict Reversed" | A7609 |

| 219. | 76 | Debtor's Supplemental Memorandum of Law in Support of Preliminary Injunction Motion, including Second Supplemental Declaration of John K. Kim in Support of Debtor's Supplemental Memorandum of Law in Support of the Preliminary Injunction Motion, filed 12-08-2021 in *In re LTL Management LLC*, No. 21-30589 (MBK) and Exhibits A – P cited therein | A7611 |
|------|----|---|---|
| **VOLUME 16** | | | |
| 220. | 77 | Debtor's Omnibus Reply in Support of Motion for an Order (A) Declaring that the Automatic Stay Applies to Certain Actions Against Non-Debtor or (B) Preliminarily Enjoining Such Actions and (C) Granting a Temporary Restraining Order Pending a Final Hearing, including Third Supplemental Declaration of John K. Kim in Support of Debtor's Omnibus Reply in Support of the Preliminary Injunction Motion, filed 01-05-2022 in *In re LTL Management LLC*, No. 21-30589 (MBK) and Exhibits A – U cited therein | A8075 |
| 221. | 86 | Exhibit 10 to the deposition of Michelle Goodridge, taken December 20, 2021 in the matter of *In re LTL Management LLC*, No. 21-30589 (MBK), a May 19, 2020 Email from K. Wallace to L. Deo et al. re: "CONFIDENTIAL: Final Materials for Today" | A8456 |
| 222. | 88 | Supplemental Declaration of John K. Kim in Support of Debtor's Complaint for Declaratory and Injunctive Relief and Related Motions, filed October 21, 2021 | A8464 |
| **VOLUME 17** | | | |
| 223. | 91 | Request for Judicial Notice, filed by the Official Committee of Talc Claimants II on February 8, 2022 [cont'd in Vol. 18] | A8478 |

| | | **VOLUME 18** | |
|---|---|---|---|
| 224. | 98 | Publication entitled, "Financial Accounting Standards Board, Statement of Financial Accounting Concepts No. 5," dated December 1984 | A9165 |
| 225. | 99 | Publication entitled, "Financial Accounting Standards Board, Statement of Financial Accounting Concepts No. 6," dated December 1985 | A9210 |
| 226. | 100 | Exhibit 234 to the deposition of Adam Lisman, taken February 8, 2021 in the matter of *In re LTL Management LLC*, No. 21-30589 (MBK), Johnson & Johnson Consumer Inc. Balance Sheet for the period ending September 2021 | A9335 |
| 227. | 101 | Exhibit 235 to the deposition of Adam Lisman, taken February 8, 2022 in the matter of *In re LTL Management LLC*, No. 21-30589 (MBK), Johnson & Johnson Consumer Inc. Income Statement for the period ending September 2021 | A9336 |
| 228. | 102 | Exhibit 284 to the deposition of Adam Lisman, taken February 8, 2022 in the matter of *In re LTL Management LLC*, No. 21-30589 (MBK), a document entitled, "Worldwide Financial Procedures, 330Ba – Legal Fees" | A9338 |
| 229. | 103 | Publication entitled, "Financial Accounting Standards Board Conceptual Framework, Statement of Financial Accounting Concepts No. 8, Conceptual Framework for Financial Reporting, Chapter 4, *Elements of Financial Statements*," dated December 2021 | A9342 |
| 230. | 107 | Royalty A&M DCF Analysis | A9393 |
| 231. | 108 | April 30, 2019 Email from P. Kwan to D. Kaplan re: "Talc" | A9399 |

| 232. | 109 | Praedicat Inc. article entitled, "Talc: the next wave of asbestos litigation?" | A9404 |
| 233. | 110 | Johnson & Johnson Form 10-K for the fiscal year ended January 3, 2021 | A9406 |
| 234. | 112 | Ingham Verdict Media Monitoring Report | A9426 |
| 235. | 113 | Email re: Loss in Ingham Appeal, Talc | A9434 |

**VOLUMES 19 - 20**
**EXHIBITS FILED UNDER SEAL**

| | | EXHIBITS FILED UNDER SEAL | |
|---|---|---|---|
| **ITEM** | **TRIAL EX. NO.** | **DESCRIPTION** | **APPENDIX PAGE** |
| | | **MOVANTS' EXHIBTS** | |
| | | **NORTH CAROLINA PRELIMINARY HEARING EXHIBITS** | |
| | | **VOLUME 19** | |
| 236. | 600.009 | Johnson & Johnson Insurance Coverage Chart [SEALED] | A9436 |
| 237. | 600.010 | Insurance Agreement: Aetna #38 AL 12880 SR(Y) 1-1-1967 to 1-1-1970 [SEALED] | A9452 |
| 238. | 600.011 | Insurance Agreement: Aetna 38 XN 07 SCA [SEALED] | A9601 |
| 239. | 600.012 | Insurance Agreement: Home HEC 4764031 [SEALED] | A9610 |
| 240. | 600.014 | Insurance Agreement: Aetna Primary 38 PK 15 SCA [SEALED] | A9633 |
| 241. | 600.036 | Asset Purchase Agreement between Johnson & Johnson Consumer Companies, Inc. and Pharma Teach Industries, Inc., dated Apr. 4, 2005 [SEALED] | A9654 |
| 242. | 600.037 | Manufacturing and Supply Agreement between Johnson & Johnson Consumer Companies, Inc. and Pharma Teach Industries, Inc., dated Aug. 29, 2005 [SEALED] | A9780 |
| 243. | 600.038 | 2008 Amendment to Manufacturing and Supply Agreement between Johnson & Johnson Consumer Companies, Inc. and Pharma Teach Industries, Inc., dated Aug. 29, 2005 – Confidential [SEALED] | A9855 |
| 244. | 600.039 | 2013 Amendment to Manufacturing and Supply Agreement between Johnson & | A9861 |

| | | EXHIBITS FILED UNDER SEAL | |
|---|---|---|---|
| **ITEM** | **TRIAL EX. NO.** | **DESCRIPTION** | **APPENDIX PAGE** |
| | | Johnson Consumer Companies, Inc. and PTI Royston, LLC, dated Aug. 29, 2005 – Confidential [SEALED] | |
| | | **VOLUME 20** | |
| 245. | 600.040 | 2017 Amended and Restated Supply Agreement between Johnson & Johnson Consumer Companies, Inc. and PTI Royston, LLC, dated Aug. 29, 2005 – Confidential [SEALED] | A9886 |
| 246. | 600.041 | Indemnification agreement between Bausch Health Companies (f/k/a Valeant Pharmaceuticals International, Inc.) and Johnson & Johnson Consumer, Inc., dated Sept. 9, 2012 [SEALED] | A9998 |
| 247. | 600.060 | Asset Purchase Agreement among Johnson & Johnson Consumer Companies, Inc. and Valeant Pharmaceutics International, Inc., dated September 9, 2012 [SEALED] | A10006 |
| 248. | 600.063 | Talc 2007-2021 Other Income & Expense Details – Confidential [SEALED] | A10102 |
| 249. | 600.074 | Asset Purchase Agreement between Johnson & Johnson Consumer Companies, Inc. and Valeant Pharmaceuticals International, Inc., dated Sept. 9, 2012 [SEALED] | A10104 |

**FOR PUBLICATION**

<table>
<tr><td>

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-2(c)**

In re:

LTL MANAGEMENT, LLC,

                    Debtor.

</td><td>

Case No. 21-30589 (MBK)

Chapter 11

Hearing Date: February 14-18, 2022

Judge: Michael B. Kaplan,
       Chief Judge

</td></tr>
</table>

*All Counsel of Record*

## MEMORANDUM OPINION

This matter comes before the Court upon motions (collectively, "Motions") filed by the

Official Committee of Talc Claimants[1] (ECF No. 632) and the law firm of Arnold & Itkin, LLP, on

behalf of certain talc personal injury claimants (ECF No. 766) (together, "Movants" or

"Claimants"),[2] seeking an order of the Court dismissing the within bankruptcy proceeding

---

[1] On November 8, 2021, prior to transferring venue of the Case to this Court, the United States Bankruptcy Court for the Western District of North Carolina entered an order appointing the Official Committee of Talc Claimants (the "Original TCC") (ECF No. 355). On December 23, 2021, subsequent to the filing of the Motions, the United States Trustee for Region 3 docketed a Notice of the United States Trustee's Filing of Reconstituted and Amended: (i) Notice of Appointment of Official Committee of Talc Claimants I; and (ii) Notice of Appointment of Official Committee of Talc Claimants II (ECF No. 965) ("Amended Notice"). The Amended Notice effectively divided the membership of the Original TCC into two committees—the Official Committee of Talc Claimants I ("TCC I"), consisting of ovarian cancer claimants, and the Official Committee of Talc Claimants II ("TCC II"), consisting of mesothelioma claimants— and appointed additional members to each such committee. Each committee has expressed support for the within Motions. At a hearing held on January 20, 2022, this Court granted the motions filed by Debtor and the law firm of Arnold & Itkin, LLP, challenging the validity of the Amended Notice, and struck the Amended Notice, effectively reinstating the Original TCC.

[2] A separate motion and joinder to the Motions has been filed on behalf of Aylstock, Witkin, Kreis & Overholtz, PLLC, ("AWKO") (ECF No. 1003), as well as a joinder by the Barnes Law Group (ECF No. 1092). In addition, three *amici curie* briefs have been filed on behalf of Certain Bankruptcy Law Professors (ECF No. 1384), on behalf of Complex Litigation and Mass Torts Professors (ECF No. 1410), and on behalf of Erwin Chemerinsky, who is Dean of the University of California, Berkeley School of Law (ECF No. 1396). At the hearing held on February 17, 2022, the United States Trustee read a statement into the record supporting either dismissal of the case or the appointment of a chapter 11 trustee. Besides Debtor's objection to the Motions, the Court has also reviewed the Canadian Class

pursuant to § 1112(b) as not having been filed in good faith. For the reasons expressed below, the Court denies the Motions in their entirety. The Court issues the following findings of fact and conclusions of law as required by FED. R. BANKR. P. 7052.[3] The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012, referring all bankruptcy cases to the Bankruptcy Court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

## I.  Background & Procedural History

On October 14, 2021, LTL Management, LLC ("LTL" or "Debtor") filed a voluntary petition for chapter 11 relief (ECF No. 1) in the United States Bankruptcy Court for the Western District of North Carolina (the "North Carolina Bankruptcy Court"). LTL is an indirect subsidiary of Johnson & Johnson ("J&J") and traces its roots back to Johnson & Johnson Baby Products, Company ("J&J Baby Products"), a New Jersey company incorporated in 1970 as a wholly-owned subsidiary of J&J. *See Declaration of John K. Kim in Support of First Day Pleadings* ("*Kim Decl.*") ¶¶ 9-10, ECF No. 5. J&J, a New Jersey company incorporated in 1887, first began selling JOHNSON'S® Baby Powder ("Johnson's Baby Powder") in 1894, launching its baby care line of products. *Id.* at ¶¶ 10-14. In 1972, J&J established a formal operating division for its baby products business, including Johnson's Baby Powder. *Id.* In 1979, J&J executed a transaction (the "1979

---

Action Plaintiffs' Opposition to Motions to Dismiss Chapter 11 Case (ECF No. 1432) (the "Canadian Plaintiffs' Opposition").

[3] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

A2

Agreement") transferring all assets associated with the Baby Products division to J&J Baby Products. *Id.* In connection with this transfer, J&J Baby Products assumed all liabilities associated with the Baby Products division. *Id.* J&J no longer manufactured or sold baby products, such as Johnson's Baby Powder after this transaction. *Id.* Today, J&J is a global company primarily focused on products relating to human health and wellbeing. *See Expert Report of Saul E. Burian, Ph.D.,* ("*Burian Report*") at 25. J&J is composed of three business segments, including Consumer Health, Pharmaceutical, and Medical Devices. *Id.*

Prior or to October 12, 2021, one of J&J's corporate subsidiaries was Johnson & Johnson Consumer Inc. ("Old JJCI"). *See Kim Decl.* ¶¶ 10-14, ECF No. 5. As the result of a series of intercompany transactions, Old JJCI assumed responsibility for all claims alleging that J&J's talc-containing Johnson's Baby Powder caused ovarian cancer and mesothelioma. *Id.* at ¶¶ 15, 32. In the talc lawsuits, claimants contend generally that multiple scientific studies have repeatedly found (i) that samples of Johnson's Baby Powder contain amphibole asbestos and fibrous talc; (ii) that perineal or genital application of talcum powder increases the risk of and can cause ovarian cancer; and (iii) that exposure to asbestos-contaminated talcum powders can cause mesothelioma. *Original TCC's Motion to Dismiss* ¶ 16, ECF No. 632. Despite this product being sold since 1894, prior to 2010, there were a limited number of isolated cases involving cosmetic talc filed against Old JJCI and J&J, asserting a range of claims including talcosis, mesothelioma, dermatitis, and rashes. *Kim Decl.* ¶ 34, ECF No. 5. Litigation escalated after the 2013 trial *Deane Berg v. J&J,* wherein plaintiff alleged she had developed ovarian cancer as a result of genital exposure to Old JJCI's talc-based product. *Id.* at ¶ 35. The jury found for the plaintiff but awarded no damages. Following that

A3

verdict, over thirteen hundred ovarian cancer lawsuits were filed against Old JJCI and J&J by the end of 2015. *Id.* Since 2016, talc-related lawsuits have grown to over 38,000 cases. *Burian Report* at 35. In May 2020, Old JJCI announced their discontinuation of talc-based baby powder in the United States and Canada. *Expert Report of Gregory K. Bell, Ph.D.* ("*Bell Report*") ¶ 17. Debtor contends that from January 2020 to today, the company has been served on average with one or more ovarian cancer complaint every hour of every day, every single day of the week. *Debtor's Informational Brief* 125, ECF No. 3. The $4.69 billion verdict reached in the *Ingham* case[4] (the total award was reduced on appeal to $2.25 billion) certainly raised the stakes for all concerned.

The increase in talc-related litigation imposed a financial burden on Old JJCI. In the seven quarters of operations preceding the bankruptcy filing, the talc litigation led to financial statement charges totaling $5.6 billion and cash payments totaling $3.6 billion. *Bell Report* at ¶ 8. Talc litigation charges—otherwise referred to as "probable costs"—accounted for 51 percent of sales, and the talc litigation payments—or costs previously paid—accounted for 122 percent of the pre-tax cashflows estimated to be generated by operations. *Id.* Old JJCI's income before tax for the business segment dropped from a $2.1 billion profit in 2019 to a $1.1 billion loss in 2020. *Id.* Much of the reverse in profits, of course, were attributable to the *Ingham* charge and payment.

On October 12, 2021, Old JJCI engaged in a series of transactions (the "2021 Corporate Restructuring") through which it ceased to exist, and two new companies, LTL and Johnson & Johnson Consumer Inc. ("New JJCI"), ultimately were formed. *Kim Decl.* ¶¶ 16, 22-23, ECF No.

---

[4] *Robert Ingham v. Johnson & Johnson*, 608 S.W.3d 663 (Mo. Ct. App. 2020), *reh'g and/or transfer denied* (July 28, 2020), *transfer denied* (Nov. 3, 2020), *cert. denied*, 141 S. Ct. 2716, 210 L. Ed. 2d 879 (2021).

A4

5. The labyrinthine progression toward the creation of Debtor is somewhat overwhelming. First, Old JJCI's then-direct parent, Janssen Pharmaceuticals, Inc., organized Currahee Holding Company Inc. ("Currahee") to become the new direct parent of Old JJCI. Currahee organized Chenango Zero LLC, a Texas limited liability company, as its wholly-owned subsidiary. After this, Old JJCI merged with Chenango Zero LLC, leaving Chenango Zero LLC as the surviving entity. A funding agreement, as discussed below, was agreed to by J&J and Currahee as payors and Chenango Zero LLC as payee. Using the Texas Business Organizations Code, Chenango Zero (Old JJCI) effected a divisional merger where Old JJCI was dismantled, leaving two new Texas limited liability companies—Chenango One LLC and Chenango Two LLC—to divide all the assets and liabilities of Old JJCI. Chenango Two LLC merged with and into Currahee. As the surviving entity, Currahee then changed its name to Johnson and Johnson Consumer Inc. ("New JJCI"). Chenango One LLC converted from a Texas limited liability company into a North Carolina limited liability company and changed its name to LTL Management, LLC. *Id*. at ¶¶ 22-23.

The supposed purpose of this restructuring was to "globally resolve talc-related claims through a chapter 11 reorganization without subjecting the entire Old JJCI enterprise to a bankruptcy proceeding." *Id*. at ¶ 21. As a result of the 2021 Corporate Restructuring, LTL assumed responsibility for Old JJCI's talc-related liabilities. *Id*. at ¶¶ 16, 24. Through the restructuring, LTL also received Old JJCI's rights under a funding agreement (the "Funding Agreement"). *Id*. at ¶ 24. Under the Funding Agreement, J&J and New JJCI, on a joint and several basis, are obligated to

5

A5

pay "any and all costs and expenses" up to the value of New JJCI[5] excluding the talc liability that

LTL incurs during its bankruptcy case, "including the costs of administering the Bankruptcy Case"

to the extent necessary. *Funding Agreement* 6, *Annex 2 to Kim Decl.* ECF No. 5. In addition, the

Funding Agreement obligates New JJCI and J&J to fund amounts necessary:

> (a) to satisfy the Debtor's talc-related liabilities at any time when there is no
> bankruptcy case and (b) in the event of a chapter 11 filing, to provide the funding
> for a trust, in both situations to the extent that any cash distributions received by
> the Debtor from Royalty A&M are insufficient to pay such costs and expenses and
> further, in the case of the funding of a trust, the Debtor's other assets are insufficient
> to provide that funding.

*Id.* at ¶ 27. Debtor has no repayment obligation as the Funding Agreement does not establish a

loan. *Id.*

The 2021 Corporate Restructuring also lays out Debtor as the direct parent of a North

Carolina limited liability company, Royalty A&M LLC ("Royalty A&M"), which owns a portfolio

of royalty revenue streams, including royalty revenue streams based on third-party sales of

LACTAID®, MYLANTA® / MYLICON® and ROGAINE® products. *Burian Report* at 15.

Debtor asserts that it intends to review royalty monetization opportunities in the healthcare

industry and grow its business by reinvesting the income from these existing royalty revenue

streams into both the acquisition of additional external royalty revenue streams, as well as

financings to third parties secured by similar royalty streams. *Kim Decl.* ¶ 18. On October 11,

2021, Old JJCI organized Royalty A&M as a direct subsidiary of LTL and—in exchange for full

---

[5] As explained at trial by Debtor's Counsel, the "floor" of the Funding Agreement is the value of Old JJCI at the time
of the merger, minus the talc liability. The value of the Funding Agreement increases, however, as the value of New
JJCI post-transaction increases.

ownership of Royalty A&M's equity—contributed $367.1 million. *Id.* at ¶ 22. Subsequently, Royalty A&M used those funds to acquire certain royalty streams from Old JJCI and certain of its affiliates. *Id.* Debtor estimates that the fair market value of its interest in Royalty A&M was approximately $367.1 million as of the petition date. Together with the $6 million in cash it received for its bank account after the merger, Debtor's value is approximately $373.1 million, not including the Funding Agreement with New JJCI and J&J. *Id.* at ¶ 26. Thereafter, on October 14, 2021, LTL filed a voluntary petition for chapter 11 relief in the North Carolina Bankruptcy Court.

On December 1, 2021, the Original TCC filed a motion to dismiss Debtor's chapter 11 bankruptcy case with prejudice pursuant to § 1112(b) of the Bankruptcy Code (ECF No. 632). Shortly thereafter, the law firm of Arnold & Itkin LLP ("A&I") filed its own motion (ECF No. 766) also seeking dismissal of Debtor's case. Debtor filed opposition to the Motions (ECF No. 956). Two law firms representing talc claimants filed joinders to the Motions (ECF Nos. 1003 and 1092). A&I, TCC I, and TCC II (collectively, the "Movants") filed separate replies (ECF Nos. 1354, 1357 and 1358, respectively). The Canadian Class Action Plaintiffs opposed the Motions (ECF No. 1432). The Court approved a briefing schedule that allowed for the filing of sur-replies by Debtor and Movants (ECF Nos. 1444 and 1457, respectively). On February 14, 2022, the Court commenced a five-day trial to address the Motions and the related Preliminary Injunction Motion in the pending Adversary Proceeding (ECF No. 2 in Adv. Pro. No. 21-03032). Both sides made oral argument and introduced fact and expert witnesses. Specifically, the Court considered testimony from the following fact witnesses:

- John H. Kim, Chief Legal Officer of LTL Management LLC
- Adam Lisman, Vice President and Assistant Corporate Controller of Johnson & Johnson

A7

- Thibaut Mongon, Executive Vice President and Worldwide Chair of Johnson & Johnson Consumer Health
- Michelle Ryan, former Treasurer of Johnson & Johnson (via recorded deposition testimony)
- Michelle Wang Goodridge, President of U.S. Self-Care with Johnson & Johnson Consumer Health and President of Johnson & Johnson Consumer Inc.
- Robert O. Wuesthoff, President of LTL Management, LLC and President of Royalty A&M LLC

The Court also heard testimony from five expert witnesses including:

- Gregory K. Bell, PhD, Group Vice President of Charles River Associates for Debtor
- John R. Castellano, Managing Director at Alix Partners for Debtor
- Charles H. Mullin, PhD, Managing Partner at Bates White Economic Consulting for Debtor
- Saul E. Burian, Managing Director at Houlihan Lokey for Movants
- Matthew Diaz, Senior Managing Director at FTI Consulting, Inc. for Movants

To the extent the Court finds the expert testimony helpful, reference has been made in this opinion to the applicable report or testimony. In rendering its decision, the Court also has reviewed declarations submitted by Rebecca J. Love, D.D.S., a member of TCC I, and Kristie Doyle, a member of the TCC II. Finally, the Court has considered brief statements offered by the United States Trustee and counsel for the Canadian Class Action Plaintiffs on the final day of trial, February 18, 2022.

## II. Discussion

### A. Overview

By way of brief overview, the Movants and other talc claimants, in their own words, view their tasks as a moral and legal imperative to vigorously oppose the efforts of **both** J&J and Old JJCI to utilize the bankruptcy system as a litigation tactic to address their talc-related litigation liabilities through this Debtor. Movants point to the fact that LTL was created within hours before the chapter 11 filing, as a special purpose vehicle, with the stated purpose of filing chapter 11 to

employ the bankruptcy's automatic stay and asbestos resolution schemes for the benefit of its

solvent operating parent and affiliated entities, as well as certain third parties ("Protected Parties"),

without such entities filing for chapter 11.[6] Movants further note that Debtor has no business

purpose, no employees apart from those seconded by J&J, and that LTL's board, management and

employees all work for J&J and owe 100% fealty to J&J. Movants assert that Debtor has no trade

creditors, lenders, bondholders, customers, suppliers, vendors, landlords, tax creditors, etc., and,

in general, the chapter 11 process offers nothing of value to this estate and its creditors. Moreover,

Movants contend that Debtor's creation through the pre-petition restructuring mechanism—the

divisional merger under the Texas Business Corporation Act widely referred to as the "Texas Two-

Step" ("2021 Corporate Restructuring")—was intended to force talc claimants to face delay and

to secure a "bankruptcy discount"; in Movants' words, "an obvious legal maneuver to impose an

unfavorable settlement dynamic on talc victims." *TCC I Reply Mem.* 3, ECF No. 1357.

Not unexpectedly, Debtor takes a far more positive view of the chapter 11 foundation and

its purposes: to produce an equitable resolution of both current and future talc claims by means of

a settlement trust, established pursuant to § 105 or § 524(g), that can promptly, efficiently, and

fairly compensate claimants. Indeed, from the very outset of the case, Debtor acknowledges

through John Kim's First Day Declaration that the 2021 Corporate Restructuring was implemented

to enable Debtor to fully resolve talc-related claims though a chapter 11 reorganization, without

subjecting the entire enterprise to a bankruptcy proceeding. Debtor makes no effort to conceal its

---

[6] In the Committees' words, the bankruptcy lacks a proper purpose because LTL is a "dummy" corporation with "no business, no operations, no employees, no funded debt," limited "assets," and no need for a "fresh start." *Comm. Mot.* ¶¶ 4-5, 41, ECF No. 632.

9

A9

reservations regarding redress through the tort system, which Debtor views as creating inefficiencies, inequities, and delay. Debtor characterizes the jury system as a lottery in which a few plaintiffs have obtained recoveries ranging from tens of millions to multiple billions in dollars, while others have been denied recoveries completely. Unsurprisingly, Debtor also disputes the negative portrayal of the intent and impact of the restructuring, noting that neither Debtor, nor any of its affiliated entities have escaped liability and also emphasizing that all of the assets and funding sources extant pre-restructuring, remain available through this proceeding. Debtor highlights that the Funding Agreement, which provides funding up to at least the fair market value of Old JJCI (pegged by Debtor's management at approximately $60 billion) serves to eliminate any prejudice to creditors and overcome fraudulent transfer challenges.

### B.  Applicable Legal Standard

The Third Circuit has held that "a Chapter 11 petition is subject to dismissal for 'cause' under 11 U.S.C. § 1112(b) unless it is filed in good faith." *In re SGL Carbon Corp.*, 200 F.3d 154, 162 (3d Cir. 1999). At its most fundamental level, the good faith requirement ensures that the Bankruptcy Code's careful balancing of interests is not undermined by petitioners whose aims are antithetical to the basic purposes of bankruptcy:

> [A good faith standard] furthers the balancing process between the interests of debtors and creditors which characterizes so many provisions of the bankruptcy laws and is necessary to legitimize the delay and costs imposed upon parties to a bankruptcy. Requirement [sic] of good faith prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefitting them in any way . . . .

*SGL Carbon*, 200 F.3d at 161–62 (quoting *Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1072 (5th Cir. 1986)); *see also Carolin Corp.*

*v. Miller*, 886 F.2d 693, 698 (4th Cir. 1989) (holding that the good faith requirement is "indispensable to proper accomplishment of the basic purposes of Chapter 11 protection"). Once the movant establishes that there is an issue regarding good faith,[7] the debtor bears the burden of proving that a petition was filed in good faith. *NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.)*, 384 F.3d 108, 118 (3d Cir. 2004); *In re GVS Portfolio I B, LLC*, No. 21-10690 (CSS), 2021 WL 2285285, at *5 (Bankr. D. Del. June 4, 2021) (quoting *Tamecki v. Frank (In re Tamecki)*, 229 F.3d 205, 208 (3d Cir. 2000) ("[O]nce a debtor's good faith is appropriately put at issue, it is the burden of the debtor to produce evidence of good faith.")); *In re Cloudeeva, Inc.*, No. 14-24874, 2014 WL 6461514, at *4 (Bankr. D.N.J. Nov. 18, 2014). The debtor bears the burden of proving good faith by a preponderance of the evidence. *In re Vascular Access Centers, L.P.*, 611 B.R. 742, 761 (Bankr. E.D. Pa. 2020).

The good faith inquiry is based on "'the totality of facts and circumstances.'" *In re Integrated Telecom*, 384 F.3d at 118 (quoting *In re SGL Carbon*, 200 F.3d at 162). In determining whether a chapter 11 petition was filed in good faith, the court must undertake a "fact intensive inquiry" to determine where the petition "falls along the spectrum ranging from the clearly acceptable to the patently abusive." *Id.*; *see also Perlin v. Hitachi Cap. Am. Corp.*, 497 F.3d 364,

---

[7] Debtor contends that a movant must first establish a *prima facie* case of "bad faith" before the burden shifts to the Debtor and cites to *In re Walden Ridge Dev. LLC*, 292 B.R. 58, 62 (Bankr. D. N.J. 2003). While this case, and others in fact so hold, this line of cases traces this proposition all the way back to *Matter of Century City, Inc.*, 8 B.R. 25 (Bankr. D.N.J. 1980), in which Judge DeVito simply noted that unlike chapter X of the Bankruptcy Act of 1898, the Bankruptcy Code does not explicitly require filings to be undertaken in good faith, and thus required the movant to make a *prima facie* showing of lack of good faith. The bulk of the case law in this Circuit has evolved in the past 42 years without employing this *prima facie* showing requirement. Notwithstanding, even if the Court were to do so, Movants have raised the issue of Debtor's good faith sufficiently to shift the burden upon Debtor. *See In re Mottilla*, 306 B.R. 782, 789 (Bankr. M.D. Pa. 2004) ("After scrutinizing the *Tamecki* decision, I can only conclude that the Circuit requires a movant to produce relatively little evidence to place a debtor's good faith at issue.").

372 (3d Cir. 2007). The focus of the inquiry is whether the petitioner sought "to achieve objectives outside the legitimate scope of the bankruptcy laws." *In re SGL Carbon Corp.*, 200 F.3d at 165 (internal quotations omitted). The question of a debtor's good faith "depends on an amalgam of factors and not upon a specific fact." *Id.* (quoting *Idaho Dep't of Lands v. Arnold* (*In re Arnold*), 806 F.2d 937, 939 (9th Cir. 1986)). "[T]he courts may consider any factors which evidence 'an intent to abuse the judicial process and the purposes of the reorganization provisions.'" *Phoenix Piccadilly, Ltd. v. Life Ins. Co. of Va. (In re Phoenix Piccadilly, Ltd.)*, 849 F.2d 1393, 1394 (11th Cir. 1988) (quoting *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670, 674 (11th Cir. 1984)); *In re JER/Jameson Mezz Borrower II, LLC*, 461 B.R. 293, 297–98 (Bankr. D. Del. 2011); *see also In re Schafer*, 597 B.R. 777, 791 (Bankr. E.D. Pa. 2019), *aff'd sub nom. Matter of Schafer*, 606 B.R. 228 (E.D. Pa. 2019), *aff'd sub nom. In re Schafer*, No. 19-3664, 2020 WL 2529371 (3d Cir. Jan. 24, 2020).

All parties acknowledge that the general focus must be "(1) whether the petition serves a valid bankruptcy purpose and (2) whether the petition is filed merely to obtain a tactical litigation advantage." *15375 Mem'l Corp. v. BEPCO, L.P. (In re 15375 Mem'l Corp.)*, 589 F.3d 605, 618 (3d Cir. 2009) (citing *In re SGL Carbon*, 200 F.3d 154,165 (3d Cir. 1995)). "[T]he 'good faith' filing requirement encompasses several, distinct equitable limitations that courts have placed on Chapter 11 filings . . . to deter filings that seek to achieve objectives outside the legitimate scope of the bankruptcy laws." *SGL Carbon,* 200 F.3d at 165 (quoting *In re Marsch*, 36 F.3d 825, 828 (9th Cir. 1994)). In evaluating the legitimacy of Debtor's bankruptcy filing, this Court must also examine a far more significant issue: which judicial system—the state/federal court trial system,

or a trust vehicle established under a chapter 11 reorganization plan structured and approved by the United States Bankruptcy Court—serves best the interests of this bankruptcy estate, comprised primarily of present and future tort claimants with serious financial and physical injuries.[8] It goes without saying that this and related inquiries have been the subject of academic, judicial, and policy debates for years. In ruling today, however, this Court considers only the facts and applicable law relevant to this case, and this case only, and there is no expectation that this decision will be the final word on the matters.

As will be discussed below, the Court is unwilling to dismiss this case as a bad faith filing. The Court employs the standards cited above and followed by other courts within the Third Circuit. On aside, the Court acknowledges there is a much more stringent standard for dismissal of a case for lacking good faith in the Fourth Circuit, which would have governed a decision by Judge Whitley in North Carolina. The Court cannot help but ponder how a bankruptcy filing, which took place in North Carolina and most likely satisfied the good faith standards under the applicable law in that jurisdiction, suddenly morphs post-petition into a bad faith filing simply because the case travels 400 miles up I-95 to Trenton, New Jersey. Notwithstanding, the Court rules today that the chapter 11 filing also satisfies the standards this Court must apply under Third Circuit precedent.

---

[8] While Movants may take issue with the Court's decision to assess the merits of the competing judicial systems as part of the totality of circumstances underlying the chapter 11 filing, these issues are likewise relevant as to whether § 1112(b)(2) provides an alternative to dismissal. "[E]ven if 'cause' exists, § 1112(b)(2) precludes dismissal or conversion if 'unusual circumstances' exist such that that conversion or dismissal of the case is not in the best interests of the creditors or the bankruptcy estate and there is a reasonable likelihood that a chapter 11 plan will be confirmed within either a reasonable time or applicable statutory deadlines." *In re: 1121 Pier Village LLC, et al.*, No. 21-11466 (ELF), 2022 WL 102622 (Bankr. E.D. Pa. Jan. 11, 2022). As discussed *infra*, the Court finds that Debtor has pursued the chapter 11 filing in good faith. Even if this were not the case, the Court holds that the interests of current tort creditors and the absence of viable protections for future tort claimants outside of bankruptcy would constitute such "unusual circumstances" as to preclude either dismissal or conversion of the case.

**1.    Valid Bankruptcy Purpose Underlying LTL Management LLC's Decision to File Chapter 11**

To be filed in good faith, a chapter 11 petition must be supported by "a valid reorganizational purpose." *In re SGL Carbon*, 200 F.3d at 165–66. When a company "seek[s] the protections of bankruptcy when faced with pending litigation that pose[s] a serious threat to [a] compan[y's] long term viability," a valid reorganizational purpose exists only if the company is experiencing "serious financial and/or managerial difficulties at the time of filing . . . to establish the good faith of its present petition." *In re SGL Carbon*, 200 F.3d at 164. As the Supreme Court has explained, the two main functions of the bankruptcy law are (1) "preserving going concerns" and (2) "maximizing property available to satisfy creditors." *In re Integrated Telecom Express, Inc.*, 384 F.3d 119 (quoting *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 453, 119 S. Ct. 1411, 143 L.Ed.2d 607 (1999)). "If **neither** of these purposes can be demonstrated, the petition will be dismissed." *In re Am. Cap. Equip., LLC*, 296 F. App'x 270, 274 (3d Cir. 2008) (citation omitted) (emphasis added).  In their oral and written arguments, Movants urge the Court to restrict its examination to the valid business purpose held by the Debtor, LTL, as opposed to the reorganizational needs of Old JJCI. The Court certainly agrees that it is the **Debtor's** good faith at issue. Yet, even the Movants' experts testified that the 2021 Corporate Restructuring and the ensuing bankruptcy filing should be viewed by this Court as "a single, pre-planned, integrated transaction" comprised of interdependent steps. *See Burian Report* at 8; *Expert Report of Matthew Diaz* ("*Diaz Report*") at 19. This Court must undertake an analysis that considers the totality of the circumstances and consider the financial risks and burdens facing both Old JJCI and Debtor.

14

While the parties may debate whether as a result of the 2021 Corporate Restructuring, LTL continues as a "going concern," this Court has little trouble finding that the chapter 11 filing serves to maximize the property available to satisfy creditors by employing the tools available under the Bankruptcy Code to ensure that all present and future tort claimants will share distributions through the court-administered claims assessment process. Movants' challenge to the manner the estate is to be maximized does not alter the fact that a successful reorganization and implementation of a settlement trust will dramatically reduce costs and ensure balanced recoveries for present and future claimants. *See, e.g.*, *In re Am. Cap. Equip., LLC*, 296 F. App'x at 274 ("As the District Court explained, while Appellants make a number of arguments that Debtors' plan does not maximize the value of the estate, what these arguments actually take issue with is 'how the value was maximized.' What is clear is that under Debtors' plan, both the asbestos claimants and the unsecured creditors will be able to share in the assets of the estate").

From the outset, J&J and Debtor have been candid and transparent about employing Debtor's chapter 11 filing as a vehicle to address the company's growing talc-related liability exposure and costs in defending the tens of thousands of pending ovarian cancer claims and hundreds of mesothelioma cases, as well as future claims. As Movants' own experts have acknowledged, the use of the Texas divisional merger statute and subsequent filing by the newly formed LTL constituted a single integrated transaction designed to allow "New JJCI to continue to operate Johnson & Johnson's Consumer Health business in the United States without interruption and provide LTL with the opportunity to pursue process to resolve current and future [cl]aims in an equitable and efficient manner." *Debtor's Exhibit* D-56.

15

A15

Let's be clear, the filing of a chapter 11 case with the expressed aim of addressing the present and future liabilities associated with ongoing global personal injury claims to preserve corporate value is unquestionably a proper purpose under the Bankruptcy Code. *See, e.g., In re Bestwall LLC*, 605 B.R. 43, 49 (Bankr. W.D.N.C. 2019) ("Attempting to resolve asbestos claims through 11 U.S.C. § 524(g) is a valid reorganizational purpose, and filing for Chapter 11, especially in the context of an asbestos or mass tort case, need not be due to insolvency);[9] *In re SGL Carbon*, 200 F.3d at 163-64, 169 (distinguishing confined nature of litigation in *SGL Carbon* with efforts to resolve thousands of mass tort claims) (citing ALAN N. RESNICK, *Bankruptcy as a Vehicle for Resolving Enterprise–Threatening Mass Tort Liability*, 148 U. PA. L. REV. 2045, 2050–51 (June 2000)); *In re Muralo, Co. Inc.*, 301 B.R. 690, 706 (Bankr. D.N.J. 2003) (finding debtor's "sudden high-risk exposure to thousands of seemingly random and unmanageable asbestos . . . cases" a "significant factor evidencing the good faith of Debtors' filings"). At the time of filing, Debtor— as did its immediate predecessor—faced nearly 40,000 pending tort claims, with thousands of additional claims expected annually for decades to come. *Bell Report* at 10.  As of the petition date, Debtor also anticipated billions of dollars in talc-related liability and defense costs. *Id.* Indeed, in the first nine months of 2021, more than 12,300 new lawsuits were filed. *Id.* Additionally, there were pending (although contested) indemnification obligations owing to talc suppliers Imerys Talc America, Inc. and Cyprus Mines Corporation estimated at anywhere between $25 billion to $118.2 billion in damages. *Bell Report* at 12. These anticipated liabilities

---

[9] Movants contend that the Court should not rely upon *Bestwall* since that court was considering dismissal under the far more stringent *Carolin* standard of "objective futility." However, a determination as to the existence of a "valid business purpose" is separate and apart from the futility of a debtor's reorganization efforts and the court's opinion retains relevance.

16

are not merely speculative, given the history of actual defense spending and verdicts rendered to date. Since June of 2018, there have been 13 mesothelioma verdicts awarding $320.6 million in punitive damages and $155.2 million in compensatory damages for a total of $475.8 million. *See Diaz Report* at 13. By this Court's math, that averages to approximately $36.6 million per claim. With approximately 430 mesothelioma claims filed as of the chapter 11 petition date, one could argue that the Debtor's financial exposure exceeded $15 billion, not including the tens of thousands of ovarian cancer claims and all future cancer claims. Debtor's efforts to address the financially draining mass tort exposure through a bankruptcy is wholly consistent with the aims of the Bankruptcy Code.

The Court is cognizant of the Third Circuit's admonition, as pointed out by Movants, that "a desire to take advantage of a particular provision in the Bankruptcy Code, standing alone . . . does not . . . establish[] *good* faith." *In re Integrated Telecom*, 384 F.3d at 127-128 ("Just as a desire to take advantage of the protections of the Code cannot establish *bad* faith as a matter of law, that desire cannot establish *good* faith as a matter of law. Given the truism that every bankruptcy petition seeks some advantage offered in the Code, any other rule would eviscerate any limitation that the good faith requirement places on Chapter 11 filings."). However, Debtor here has demonstrated an intent to make use of the Bankruptcy Code as a whole, apart from any single Code section, to address its financial needs. There is no question as to the import and value to Debtor of implementing an asbestos trust under § 524(g). Nonetheless, this tool does not operate in a vacuum. Rather, the Debtor seeks to take advantage of the centrality of the bankruptcy forum, the breathing spell available under § 362, the efficiencies found in the claims allowance and

17

estimation processes, and most significantly the opportunity to negotiate a global resolution to torrents of talc-related litigation as to present and future cancer victims. Moreover, the creation of a settlement trust is not wholly dependent upon § 524(g)—numerous non-asbestos mass tort cases have established trust mechanisms under confirmed plans bottomed on other Code provisions.

All Code sections are not equal in import or impact. In *Integrated Telecom,* a nonoperating liquidating debtor desired to take advantage of the § 502(b)(6) cap on the landlord's claim and argued that this purpose, in and of itself, established good faith. *See In re Integrated Telecom*, 384 F.3d 108. *Integrated* involved an effort to file a chapter 11 to reduce a singular type of claim for an isolated creditor. In contrast, Congress added 11 U.S.C. § 524(g) to the Bankruptcy Code to "help asbestos victims receive maximum value" from bankrupt entities. 140 Cong. Rec. S14,461 (Sept. 12, 1994) (statement of Sen. Heflin); *see also In re Am. Cap. Equip., LLC*, 688 F.3d 145, 159 (3rd Cir. 2012) ("[T]he [bankrupt] company remains viable . . . [and] continues to generate assets to pay claims today and into the future. In essence, the reorganized company becomes the goose that lays the golden egg by remaining a viable operation and maximizing the trust's assets to pay claims." (alterations in original)); *In re ACandS, Inc.* 311 B.R. 36, 42 (Bankr. D. Del. 2004). Section 524(g) was meant to "strengthen . . . trust/injunction mechanisms," 140 Cong. Rec. 20, 27, 692 (1994), and, to the extent possible, account for "the interests of future claimants," H.R. Rep. No. 103–835, 3349 (1994). Quite simply, this Court will not equate the use of this provision with merely an effort to cap a landlord's rent.

Determining whether Debtor is pursuing a valid bankruptcy purpose through this chapter 11 proceeding also requires the Court to examine a far more difficult issue—whether there is

A18

available to Debtor and the tort claimants a more beneficial and equitable path toward resolving Debtor's ongoing talc-related liabilities. For the reasons which follow, this Court holds a strong conviction that the bankruptcy court is the optimal venue for redressing the harms of both present and future talc claimants in this case—ensuring a meaningful, timely, and equitable recovery.

There is no question that, over time, our bankruptcy courts have witnessed serious abuses and inefficiencies, striking at the heart of the integrity of our bankruptcy courts. For instance, the approval of overly broad nonconsensual third-party releases, and the propriety/necessity for twenty-four hour accelerated bankruptcy cases have drawn deserved scrutiny. Likewise, the selection of case venue, as in the matter at hand, has warranted critical attention and debate.[10] In point of fact, there has been a deluge of critical commentary in recent months by academics, commentators, and even policymakers[11] challenging the shortfalls of the bankruptcy system and calling for reform. Some have even employed such distasteful, click-generating insidious phrases as "morally corrupt" or "lawless" in reference to the bankruptcy courts. No one can deny that there are situations in which tools and strategies have been abused and warrant critical review. Unfortunately, however, these commentators choose to focus on the limited failings of the system, as opposed to its innumerable successes. Every one of the Court's 370 plus colleagues on the

---

[10] This case is venued now where it should be. The appropriateness of the original filing in North Carolina can be debated, but that discussion should not color the primary inquiry as to whether the case at this point should proceed in the bankruptcy court.

[11] By way of example, upon direct and cross examination, Mr. Kim was shown correspondence dated November 10, 2021, from certain members of Congress taking issue with the Debtor's approach in this bankruptcy proceeding. As these policymakers have not had the benefit of reading the briefs, examining the evidence, or listening to oral arguments, the correspondence holds no weight. As is well-established, Congress speaks with one voice through enacted legislation Cf. MICHAEL B. W. SINCLAIR, *Guide to Statutory Interpretation* 103 (2000) ("[O]ur legislatures speak only through their statutes; statutes are their only voice. . . .")

bankruptcy bench can point to successful case outcomes where large and small businesses are reorganized, productive business relationships are maintained, jobs preserved and, most importantly, meaningful returns distributed to creditors—all in situations where outside of the bankruptcy system there would be fewer if any identifiable benefits, and the parties left to expensive and time-consuming litigation. This holds especially true for mass tort situations, including asbestos bankruptcies, in which § 524(g) trusts and comparable non-asbestos trust vehicles have been established to ensure meaningful, timely recoveries for present and future suffering parties and their families.

While this Court recognizes and appreciates the passion and commitment of the Committee members and every one of the attorneys advocating for the interests of the injured cosmetic talc claimants in this case, the Court simply cannot accept the premise that continued litigation in state and federal courts serves best the interest of their constituency. Many of these cases, both in the United States and abroad, have been pending for a half dozen or more years and remain years away from trial dates, not to mention the substantial delays they face in the inevitable appeals process. Notably, since 2014, there have been only 49 trials that have proceeded to verdict. True, in this same period, there have been approximately 6,800 cases which have settled outside of court. *Movants' Exhibit* 161. This number is dwarfed, nonetheless, by the projected 10,000 new cases to be filed each year going forward. *See Expert Report of Charles H. Mullin, PhD* ("*Mullin Report*") at 5. As noted in her *amici curiae* brief, Professor Maria Glover acknowledges there is no perfect solution to the problems with mass tort litigation: "But no mechanism for handling the thorny challenges of mass torts is perfect, including bankruptcy. Indeed, it is the nature of mass torts to

20

present different combinations of challenges, and those challenges follow mass torts wherever they go." *Memorandum of Law of Amici Curiae by Certain Complex Litigation Law Professors* ("*Glover Brief*") 25, ECF No. 1410.

For instance, a class action is not usually suitable for mass tort cases, since there typically exists too much variation concerning claimants' injuries, illnesses, and related losses. In the 1990s, the United States Supreme Court issued two decisions that effectively terminated the use of class actions, at least for product liability cases. In *Georgine v. Amchem Prods., Inc.*, 521 U.S. 591, 138 L.Ed.2d 689 (1996), an asbestos case, the Supreme Court held that class actions under FED. R. CIV. P. 23 could not be used to manage mass tort cases. The cases were too dissimilar, and there were also some "future" plaintiffs, individuals exposed to asbestos, but not yet manifesting disease. Likewise, in *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 144 L.Ed. 715 (1999), the Supreme Court shut the door with respect to class actions for mass tort cases involving a "limited fund," where the parties attempted to structure the settlement as a mandatory class—that is, without opt-out rights for class members—on the theory that a "limited fund" existed. The Supreme Court took issue with the settlement class in *Ortiz* for failing to assure the necessary level of cohesiveness of interests among absent class members, the representative plaintiffs, and class counsel to justify class treatment. The Court held that the class failed to provide structural protections against the likely conflicts of interests among class members. *Ortiz*, 527 U.S. at 856-57. The attempt to describe the litigation as a limited fund also received minimal sympathy. In the Court's view, a limited fund class had to demonstrate both necessity and equitable distribution. *See id.* at 850–53

A21

(admonishing lower courts for accepting, without investigation, the litigants' attempt to create a limited fund by discounting the value of assets available for payment to class members).

Significantly, as Debtor points out, the *Ortiz* Court highlighted the difference between due process concerns in representative suits (*e.g.* class actions) versus bankruptcy cases. *Id.* at 846; *see also Debtor's Omnibus Response to the Amicus Briefs* 20-21, ECF No. 1554. The Supreme Court rejected the use of class actions under FED. R. CIV. P. 23 to aggregate unliquidated tort claims under a limited fund rationale and, in examining commentary to the Rule, observed that if such action were allowed, "in mass torts, (b)(1)(B) 'limited fund' classes would emerge as the functional equivalent to bankruptcy by embracing 'funds' created by the litigation itself[.]" *Ortiz*, 527 U.S. at 843 (quoting HENRY PAUL MONAGHAN, *Antisuit Injunctions and Preclusion Against Absent Nonresident Class Members*, 98 COLUM. L. REV. 1148, 1164 (1998). Thus, in *Ortiz*, the Supreme Court recognizes bankruptcy as a sound and appropriate approach to addressing mass tort claims. *Id.*

> As further noted by Professor Troy A. McKenzie:
>
> The Court's strict formalism in *Amchem* and *Ortiz* also derived from an unhidden skepticism about the use of the Federal Rules of Civil Procedure as license to undertake essentially legislative reforms. The question presented in *Amchem*, as Justice Ginsburg phrased it, was "the *legitimacy under Rule 23* of the Federal Rules of Civil Procedure of a class action certification sought to achieve global settlement of current and future asbestos claims." The unspoken assumption in both cases, then, was that methods of global resolution that did not invoke the Federal Rules of Civil Procedure could escape the rigid strictures placed on the class action by the Court.

TROY A. MCKENZIE, *Toward a Bankruptcy Model for Non-Class Aggregate Litigation*, 87 N.Y.U. L. Rev. 960, 977 (2012) (emphasis in original).

Addressing mass torts through a legislative scheme enacted by Congress within the bankruptcy system does not run afoul of the concerns expressed above and provides a judicially accepted means of aggregating and resolving mass tort claims. There is no authority to the contrary ruling that use of § 105 or § 524(g) settlement trusts contravene *Amchem* and *Ortiz*. Moreover, there is no evidence before this Court that Debtor or its predecessor, Old JJCI, manufactured a limited fund by undervaluing or limiting assets. Rather, the Court finds that any such limited fund is the product of overwhelming potential talc liabilities, which far exceed Debtor's (and Old JJCI's) capacity to satisfy through current available assets.

The multi-district litigation ("MDL") poses its own set of significant challenges and inefficiencies. Here in New Jersey, for instance, the MDL being handled by Chief Judge Wolfson —which does not include mesothelioma cases, the Canadian class actions, state court proceedings, or the claims of future tort victims—will at best produce a handful of bellwether trials later in 2022, offering some insight into the strength of the cases, but will also necessarily return nearly 40,000 cases to federal courts across the country to await pre-trial proceedings and eventual trials and appeals. Notwithstanding the pre-trial work undertaken through the MDL, the fact remains that plaintiffs and defendants will be forced to relitigate causation, and damages, and apportion liability among defendants in every case, which will be both costs prohibitive and "burden the tort system with unnecessarily drawn-out litigation." *Mullin Report* at 9.

Again, in her *amici curiae* submission, Professor Glover touts the "flexibility and adaptiveness" of MDL in facilitating settlements and global resolutions by experienced MDL judges. *Glover Brief* at 24. The Court has no doubt that talented federal judges have produced

23

A23

significant settlements though MDL devices. To be sure, this Court knows of no better jurist at bringing about settlements than Chief Judge Wolfson. Yet, in nearly six years, there has been no progress toward a global resolution through the current MDL. The Court is unaware of any meaningful settlement talks apart from the near global settlement in the *Imerys* bankruptcy.

The fact remains that since 2014—over seven years ago—only 49 trials have gone to verdict, and many of those remain on appeal or have been remanded to retry. Given the pace of the litigations to date, as well as the mounting escalation in the number of new actions being brought monthly,[12] the vast majority suffering from illness in the existing backlog of cases will not see a penny in recovery for years. The tort system has struggled to meet the needs of present claimants in a timely and fair manner.[13] The system is ill-equipped to provide for future claimants. The Court has no reason to believe this will differ for the talc plaintiffs here.

This Court is neither blind nor deaf to the stated preferences of plaintiffs who seek to remain in the tort system and have their cases tried before a jury. The tort claimants have not chosen the bankruptcy forum. Indeed, creditors rarely choose to have their rights vindicated in the bankruptcy courts, but our Constitution and the laws passed by Congress countenance such a result. Undeniably, there have been sizable multi-million and multi-billion dollar verdicts in favor of handful of plaintiffs who were fortunate to have their claims brought in front of a jury. Movants

---

[12] New ovarian cancer filings have been accruing at more than 10,000 claims per year. *Mullin Report* at 5.

[13] *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 598 (1997) ("[D]ockets in both federal and state courts continue to grow; long delays are routine; trials are too long; the same issues are litigated over and over; transaction costs exceed the victims' recovery by nearly two to one; exhaustion of assets threatens and distorts the process; and future claimants may lose altogether.") (quoting *Report of The Judicial Conference Ad Hoc Committee on Asbestos Litigation* 2-3 (Mar. 1991)).

contend that the loss of jury trial rights would violate claimants' Seventh Amendment jury rights. Nonetheless, there have been numerous asbestos trusts implemented under § 524(g) which provide tort victims with choices between receiving guaranteed compensation under the trusts, or alternatively pursuing recovery against the trusts through jury trials.[14] The trust distribution procedures ("TDP") and plans, however, will usually place timing restrictions and caps on compensatory and punitive damage recoveries. These limitations are critical to the process since one of Congress's primary intentions in creating § 524(g) was to ensure uniform treatment of all claimants. *In re W.R. Grace & Co.*, 475 B.R. 34, 171 (D. Del. 2012), *aff'd sub nom. In re WR Grace & Co.*, 729 F.3d 332 (3d Cir. 2013), and *aff'd*, 532 F. App'x 264 (3d Cir. 2013), and *aff'd*, 729 F.3d 311 (3d Cir. 2013), and *aff'd sub nom. In re WR Grace & Co.*, 729 F.3d 332 (3d Cir. 2013). If the talc claimants were not subject to such a cap on jury verdicts and judgments, they would be receiving preferential treatment in comparison to other similarly situated claimants.

---

[14] By way of example, § 7.6 of the Trust Distribution Procedures in the *Duro Dyne National Corp.* bankruptcy case provides:

> 7.6 Suits in the Tort System. If the holder of a disputed claim disagrees with the Asbestos Trust's determination regarding the Disease Level of the claim or the claimant's exposure history, and if the holder has first submitted the claim to non-binding arbitration as provided in Section 5.8 above, the holder may file a lawsuit against the Asbestos Trust in the Claimant's Jurisdiction as defined in Section 8.3 below. Any such lawsuit must be filed by the claimant in his or her own right and name and not as a member or representative of a class, and no such lawsuit may be consolidated with any other lawsuit. All defenses (including, with respect to the Asbestos Trust, all defenses which could have been asserted by a Debtor) shall be available to both sides at trial; however, the Asbestos Trust may waive any defense and/or concede any issue of fact or law. If the claimant was alive at the time the initial pre-petition complaint was filed or on the date the proof of claim form was filed with the Asbestos Trust, the case shall be treated as a personal injury case with all personal injury damages to be considered even if the claimant has died during the pendency of the claim.

*Trust Distribution Procedures* 43, *Exhibit F to Third Amended Plan*, ECF No. 1-2 in Case No. 19-cv-15433 (also available at ECF No. 784-3 in Bankr. Case No. 18-27963).

Critically important is that § 524(g) ensures that present claimants do not exhaust the debtor's assets before future claimants have even manifested injuries. *Id*. The Seventh Amendment jury rights of talc plaintiffs would remain intact under a properly drafted and approved plan and TDP, and no case cited to the Court provides otherwise.

This Court also has factored into its decision the substantial risks facing the talc claimants in the tort system. There have been countless plaintiffs denied any recovery and many of the plaintiffs' verdicts have been reversed ultimately on appeal.[15] "The results of the 49 [t]alc [l]itigation cases to proceed to trial are inconsistent in terms of liability and damages awards. Defendants prevailed in 18 cases; plaintiffs prevailed in 17 cases; eight cases resulted in mistrials; and six cases settled during trial." *Bell Report* at 14. It is inarguable that continued litigation of talc claims in the state and federal tort system comes with a meaningful risk of recovery. Debtor points to prior multiple litigation successes by J&J and Old JJCI over the years by securing dismissals of roughly 1,300 ovarian cancer cases and over 250 mesothelioma cases without payment and trying sixteen cases to defense verdicts. *See Kim Decl*. ¶ 38. ECF No. 5. Old JJCI secured reversal of numerous plaintiff verdicts. *Id*. Of equal concern to this Court is the capacity for the state and federal courts to protect future claimants, whose claims may surface in the next half century given the acknowledged latency period for the types of cancer at issue. The needs of these victims are wholly ignored by the current rush to secure judgments against Debtor in the

---

[15] *See Hrg. Tr.* 34:11-12, Oct. 20, 2021, ECF No. 178 ("Old JJCI . . . ultimately prevailed in most of the talc cases it tried."); *Hrg. Tr.* 15:16-17, Dec. 15, 2021, ECF No. 846 ("[T]he company was prevailing in the majority of cases . . . ."); *Hrg. Tr.* 75:8-11, Jan. 11, 2022, ECF No. 1118 ("And most of the cases ended up with a defense verdict, and even where there's a plaintiff verdict most of them are reversed on appeal.").

A26

federal and state courts. In the eyes of this Court, the tort system produces an uneven, slow-paced race to the courthouse, with winners and losers. Present and future talc claimants should not have to bear the sluggish pace and substantial risk if there exists another viable option.

The Court's comments are not intended to dismiss or discredit the inarguable benefits of our tort system and the essential work of our plaintiffs' bar in bringing about corporate transparency and vindicating the rights of those victims who are ill-equipped to pursue their rights against large corporate defendants. In this vein, we can all point to concrete illustrations where such litigation has been responsible for necessary safety reforms and health measures. What the Court regards as folly is the contention that the tort system offers the **only fair and just pathway** of redress and that other alternatives should simply fall by the wayside. It is manifestly evident that Congress did not share this narrow view in developing the structure of asbestos trusts under §524(g). There is nothing to fear in the migration of tort litigation out of the tort system and into the bankruptcy system.[16] Rather, this Court regards the chapter 11 process as a meaningful opportunity for justice, which can produce comprehensive, equitable, and timely recoveries for injured parties. The bankruptcy courts offer a unique opportunity to compel the participation of all parties in interest (insurers, retailers, distributors, claimants, as well as Debtor and its affiliates) in a single forum with an aim of reaching a viable and fair settlement. As the Third Circuit noted in *In re Federal-Mogul Global, Inc.*:

> Bankruptcy has proven an attractive alternative to the tort system for corporations [facing mass tort claims] because it permits a global resolution and discharge of

---

[16] *But cf.* BRUBAKER, RALPH, *Mandatory Aggregation of Mass Tort Litigation in Bankruptcy* (November 9, 2021). The Yale Law Journal Forum, forthcoming, University of Illinois College of Law Legal Studies Research Paper No. 22-01, Available at SSRN: https://ssrn.com/abstract=3960117.

present and future liability, while claimant's interests are protected by the bankruptcy court's power to use future earnings to compensate similarly situated tort claimants equitably.

684 F.3d 355, 359 (3d 2012). Indeed, the Third Circuit has taken notice that the asbestos bankruptcy trusts achieved Congress's expressed aims in best serving the interests current and future asbestos victims,[17] as well as corporations saddled with such liabilities:

> Furthermore, the trusts appear to have fulfilled Congress's expectation that they would serve the interests of both current and future asbestos claimants and corporations saddled with asbestos liability. In particular, observers have noted the trusts' effectiveness in remedying some of the intractable pathologies of asbestos litigation, especially given the continued lack of a viable alternative providing a just and comprehensive resolution. Empirical research suggests the trusts considerably reduce transaction costs and attorneys' fees over comparable rates in the tort system.

*In re Federal-Mogul Glob., Inc.,* 684 F.3d at 362 (citing studies).

The Court acknowledges that Movants have raised a challenging and interesting issue as to whether Debtor can take advantage of a §524(g) trust: "[B]ecause LTL has never been named as a defendant in a talc case, then a channeling injunction and Section 524(g) trust will be unavailable under the plain language of the statute." *TCC II Reply Mem.* at 19 n.11, ECF No. 1358 (citing 11 U.S.C. § 524(g)(2)(B)(i)(I), which dictates that the injunction, together with the trust, must "assume the liabilities of a debtor which at the time of entry of the order for relief *has been named as a defendant* in personal injury, wrongful death, or property-damage actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or

---

[17] The legislative history of § 524(g) is clear that Congress enacted the statute to assist any company facing liability that involves asbestos. H.R. REP. 103-835, 41, 1994 U.S.C.C.A.N. 3340, 3350 ("The asbestos trust/injunction mechanism established in the bill is available for use by any asbestos company facing a similarly overwhelming liability.").

asbestos-containing products") (emphasis added). The causes of action held by the talc plaintiffs are owing by Debtor as successor in interest to Old JJCI and, consequently, Debtor substitutes for Old JCCI in all federal actions as a matter of law. *See* FED. R. CIV. P. 25(c). At closing during the hearing, Debtor's counsel apprised the Court and all parties that Debtor in fact has been named in pending suits. Notwithstanding, as we have seen in other non-asbestos mass tort cases, referenced below, chapter 11 can still offer the opportunity to reach consensus on a global resolution of present and future claims without express resort to § 524(g).

In recent weeks and months, we have seen comprehensive and productive mediated settlements, producing hundreds of millions of dollars in funding of settlement trusts. Indeed, we need look only at the USA Gymnastics settlement approaching $400 million, the proposed Mallinckrodt $1.7 billion trust and the Boy Scouts proposed settlement nearing $3 billion as examples. Likewise, settlement trusts are in some stage of negotiation in over thirty Catholic Church diocese cases across the country. The Court places these positive results against a backdrop of dozens of successful asbestos trust cases created over the years pursuant to § 524(g), which continue to fund payments to asbestos victims. Claims reconciliation through these bankruptcy trusts place reduced evidentiary and causation burdens on the injured and their families, and resolution of claims and payments to victims can be achieved at a far more expeditious pace than through uncertain litigation in the tort system. A trust would establish a far simpler and streamlined process—both for present and future cosmetic talc claimants—than

currently available in the tort system.[18] As noted by the court in *In re Bestwall LLC*, 606 B.R. at

257: "[A] section 524(g) trust will provide all claimants—including future claimants who have

yet to institute litigation—with an efficient means through which to equitably resolve their

claims."

Through adopted procedures, these trusts establish fixed criteria and common parameters

for payments to claimants, ensuring a level playing field for all present and future victims, taking

into consideration the significance of preserving all due process rights. *See In re W.R. Grace &

Co.*, 729 F.3d 311, 324 (3d Cir. 2013) ("Therefore, as long as a court correctly determines that

§ 524(g)'s requirements are satisfied, present and future claims can be channeled to a § 524(g)

trust without violating due process."). In recent years, state attorneys general and the United

States Justice Department have undertaken numerous investigations of existing trust funding and

trust distribution procedures and have brought issues before courts aimed at safeguarding the

availability of funding for future claimants. In sum, the bankruptcy system, through use of a

§524(g) trust, will "provide all claimants—including future claimants who have yet to institute

litigation—with an efficient means through which to equitably resolve their claims." *In re

Bestwall LLC*, 606 B.R. at 257.   A settlement trust, with proper oversight and funding, can best

serve the needs of Debtor and talc claimants alike.

---

[18] "A plan of reorganization can implement a trust with administrative procedures to resolve claims with far lower transaction costs [attorneys' fees] and in a timelier manner for both the claimants and Debtor than continued litigation in the tort system." *Mullin Report* at 5, 12.

A30

Throughout their submissions and oral argument, Movants have decried Debtor's (and its affiliated entities') efforts to "cap" the liabilities owing the injured parties.[19] Likewise, there have been emotive contentions that the chapter 11 process offers Debtor—as well as J&J and other affiliates—an unfair advantage, or upper hand in protecting assets and escaping liabilities and exposure. The Court does not share these views. Frankly, it is unsurprising that J&J and Old JJCI management would seek to limit exposure to present and future claims. Their fiduciary obligations and corporate responsibilities demand such actions. Nonetheless, merely seeking to limit liabilities, standing alone, does not demonstrate "bad faith" for purposes of filing under chapter 11. If that were so, nary a debtor would meet the "good faith' requirements. Rather, the Court finds this chapter 11 is being used, not to escape liability, but to bring about accountability and certainty.

The record before the Court does not reflect assets that have been ring-fenced, concealed, or removed. Neither J&J nor New JJCI (nor any J&J affiliate for that matter) are to be released from liability, or their assets placed out of reach of creditors, absent a negotiated settlement under a plan in which J&J's and New JJCI's roles and funding contributions warrant a release as a matter of both law and fact. True, a handful of claimants who have secured judgments may be delayed by the bankruptcy process, but this Court must act to ensure justice for all the nearly 40,000 current claimants and undetermined future injured parties (and families) who face years in litigation. Also, it is nonsensical to accept the notion that J&J and Old JJCI would bear the brunt of public and judicial scrutiny, as well as the time and costs to implement this integrated transaction, simply to

---

[19] *See, e.g., A&I Reply Mem.* 23, ECF No. 1354 ("J&J created LTL to file for bankruptcy not only to "cap" the talc liabilities of Old JJCI that had been imposed on the Debtor, but also to 'cap' the talc liabilities *of J&J* and shield it from any talc litigation and any more judgments in favor of talc victims.").

31

A31

stall claimants or walk away from its financial commitments under the Funding Agreement.
Moreover, remedial creditor actions addressing the pre-petition divisive merger and restructuring
remain available for creditors to pursue, if necessary. It is appropriate to note that the true leverage
remains where Congress allocated such leverage, with the tort claimants who must approve of any
plan employing a § 524(g) trust by a 75% super majority.[20] In filing this chapter 11, Debtor faces
a risk that good-faith negotiations will not produce the consensus necessary to confirm a plan;
notwithstanding, the Court hopes and expects the parties to undertake a sensible, pragmatic and
reasonable approach to negotiations.

---

[20] As noted by Judge Beyer in *In re Bestwall, LLC*, 606 B.R. 243, 251 (Bankr. W.D.N.C. 2019), "claimants will be
afforded due process in this case as a result of the requirements of the Bankruptcy Code and, in particular, section
524(g). Section 524(g) contemplates the active participation and support of the Committee, requires the affirmative
vote of at least 75% of asbestos claimants in connection with confirmation of a plan seeking the benefits of that section
(*see* 11 U.S.C. § 524(g)(2)(B)(ii)(IV)(bb)), and calls for approval of the plan of reorganization by both this Court and
the District Court (*see* 11 U.S.C. § 524(g)(3)(A))."

A32

### 2.  Debtor's Financial Distress

Debtor is the successor to Old JCCI and has been allocated its predecessor's talc-based liabilities, including verdicts, settlements, and defense costs, "as reflected in Old JJCI's general ledger." *Debtor's Sur-Reply* 9, ECF No. 1444. As testified in detail by Mr. Adam Lisman, Assistant J&J Controller, at both his deposition and during trial, the talc-related expenses were charged to Old JJCI because it had legal responsibility for them. *Deposition Tr. of Adam Lisaman Lisman Dep. Tr.* 117:1-3, Oct. 30, 2021, *Ex. H to Toroborg Decl.*, ECF No. 1444-9 ("[T]hese are talc product liability costs that JJCI was ultimately responsible for, which is why it is showing up as a [sic]expense on their account.").[21] One cannot distinguish between the financial burdens facing Old JCCI and Debtor. At issue in this case is Old JJCI's talc liability (and the financial distress that liability caused), now the legal responsibility of Debtor. Absent a global settlement, neither entity would be able to defend or economically resolve the current and future talc-related claims. As Debtor's expert, Dr. Gregory Bell testified, and as reflected in J&J's public filings, talc-related litigation was the "primary driver" that caused J&J's entire Consumer Health segment "to drop from a $2.1 billion profit (14.8 percent of sales) in 2019 to a $1.1 billion loss (-7.6 percent of sales) in 2020." *Bell Report* at 4; *see also id.* at 6 ("This current and potential future financial drain imposed by the Talc Litigation . . . was threatening Old JJCI's ability to sustain the marketing, distribution, and R&D expenditures needed to compete in the U.S. market . . . placing Old JJCI at a significant competitive disadvantage.").

This chapter 11 followed denial of review by the U.S. Supreme Court of a multi-billion dollar award in the *Ingham* litigation, as well as other more recent verdicts for hundreds of millions

33

of dollars. There was also a break-down of a potential multi-billion dollar global settlement in the *Imerys* bankruptcy. The evidence before the Court establishes that at the time of the chapter 11 filing, this Debtor, LTL, had contingent liabilities in the billions of dollars and likely would be expending annually sums ranging $100-200 million in its defense of the tens of thousands of talc personal injury cases for decades to come.[22] The evidence confirms that the talc litigation payments and expenses forced Old JJCI into a loss position in 2020. *Bell Report* at 4-5. Indeed, to date, the talc-related litigation charges have eradicated all profits earned by Old JJCI from sales of talc-based consumer products, since inception, by more than four times over and have displaced more than 140% of the cash generated from the sales. *Bell Report* at 14. As highlighted in Debtor's Reply Memorandum, even plaintiffs' attorneys have recognized the substantial exposure facing Debtor (as successor to Old JJCI):

> Mr. Klein: "If the last seven jury awards in mesothelioma trials are any indication, and I submit to Your Honor that they are, then my Committee's constituents' claims are worth ten[s] of billions of dollars." [transcript citations omitted]
>
> Mr. Finch: "You know, Mr. Rice resolved the tobacco litigation 20 some years ago for $250 billion. I happen to think that the, the dollar figure here has to be a lot closer to 250 billion than the 2 billion that Johnson & Johnson has put on the table." [transcript citations omitted]

*Debtor's Sur-Reply* at 8, n.12, 13, ECF No. 1444 (citing transcripts of hearings held on Jan. 19, 2022 and Nov. 4, 2021 (*Toroborg Decl. Ex. E, F*, ECF No. 1444-6, 1444-7)).

---

[21] In the accompanying Memorandum Opinion Declaring That the Automatic Stay Applies to Certain Actions Against Non-Debtors and Preliminarily Enjoining Such Actions, dated February 28, 2022, the Court analyzes in greater detail the bona fides of J&J's 1979 transfer of assets to and assumption of liabilities by Old JJCI's predecessor, which serves as the basis for the latter's legal responsibility for all talc-related liabilities.

[22] "$1 billion in defense costs over the prior five years; $3.5 billion in verdicts and settlements over that same timeframe; billions more in indemnification claims from Imerys; and (given latency) the immense costs of decades more of the same." *Debtor's Obj.* at 8. "It would cost $190 billion in defense costs just to try the *current* claims." *Id.*

Claimants repeatedly have called to the Court's attention the market capitalization ($450 billion) and stellar credit-rating of Debtor's indirect parent, J&J. Nonetheless, apart from voluntarily undertaking such an obligation or a judicial finding as to alter ego status, J&J (like all parent corporations) have no legal duty to satisfy the claims against its wholly-owned or affiliated subsidiaries. *See, e.g., Travelers Indem. Co. v. Cephalon, Inc.,* 32 F. Supp. 3d 538, 556 (E.D. Pa. 2014), *aff'd*, 620 F. App'x 82 (3d Cir. 2015) (a parent company is not liable for the actions of its subsidiaries unless the parent company itself has engaged in wrongdoing, or exercises control over the subsidiary entity).

It is true that Debtor, under the Funding Agreement, could compel J&J to deplete its available cash (amounting to nearly 7% of its entire market cap) or pursue a forced liquidation of New JJCI to tap into its enterprise value of $61 billion. Needless to say, such actions would have a horrific impact on these companies, with attendant commercial disruptions and economic harm to thousands of employees, customers, vendors, and shareholders, and threaten their continued viability. The Court is at a loss to understand, why—merely because Debtor contractually has the right to exhaust its funding options—the Debtor is not to be regarded as being in "financial distress."

It is of no moment that the Debtor, by virtue of the Funding Agreement, was not insolvent on the date of the chapter 11 filing. "As a statutory matter, it is clear that the bankruptcy law does not require that a bankruptcy debtor be insolvent, either in the balance sheet sense (more liabilities than assets) or in the liquidity sense (unable to pay the debtor's debts as they come due), to file a chapter 11 case or proceed to the confirmation of a plan of reorganization." *Marshall v. Marshall*

35

*(In re Marshall)*, 721 F.3d 1032, 1052 (9th Cir. 2013). Prior to the chapter 11 filing, J&J and Old

JJCI incurred compensatory damages awards in ovarian cancer cases which ranged from $5 million

to $70 million, while punitive damage awards ranged from $50 million to $347 million. Likewise,

in mesothelioma cases, there were compensatory damages awards ranging from $2.5 million to

$40 million, while punitive damages ranged from $100,000 to $300 million. As acknowledged by

all parties, in the *Ingham* case, a jury awarded $4.14 billion in punitive damages, one of the largest

personal injury verdicts ever seen in the United States, ultimately reversed in part and reduced on

appeal to $2.24 billion.[23] Even without a calculator or abacus, one can multiply multi-million

dollar or multi-billion dollar verdicts by tens of thousands of existing claims, let alone future

claims, and see that the continued viability of all J&J companies is imperiled.

> As Dr. Bell testified at trial,
>
> Old JJCI was not positioned to continue making substantial Talc Litigation payments from working capital or other readily marketable assets. . . . As a consequence, it is apparent that Old JJCI had no significant excess net current assets available for the satisfaction of future Talc Litigation payments. In addition, Old JJCI had no other assets that were readily marketable in order to satisfy liabilities associated with the Talc litigation, which could be substantial.

*Bell Report* at 19-21, 32. At the time of filing, the prospects of continued monthly $10-20 million

defense expenditures, with rapidly increasing numbers of new claims being filed, warranted

seeking action in this Court. By comparison, the administrative burdens and costs to oversee the

trust distributions under a § 524(g) trust represent a small fraction of the funds being expended

currently to litigate these cases through the trial and appellate courts.

---

[23] *Debtor's Informational Br.* at 119-20.

Several years ago, Judge Laurie Selber Silverstein noted in *In re Rent-A-Wreck of America, Inc.*, 580 B.R. 364 (Bankr. D. Del. 2018), that a valid business purpose assumes an entity in distress. Well, such distress is patently apparent in the case at bar. *Id.* at 375. The Debtor has estimated that the costs to try a single ovarian cancer claim ranges between $2 million to $5 million. Defending just the over 38,000 pending ovarian cancer claims through trial would cost up to $190 billion. In addition, Old JJCI and J&J are facing billions of dollars in indemnification claims from their talc supplier, Imerys Talc America, Inc. and two of its affiliates, Imerys Talc Vermont, Inc. and Imerys Talc Canada, Inc. (collectively, "Imerys").[24]

No public or private company can sustain operations and remain viable in the long term with juries poised to render nine and ten figure judgments, and with such litigation anticipated to last decades going forward. The Court must also factor in the negative impact of ongoing regulatory investigations by state attorneys general. The Third Circuit in *In re SGL Carbon* noted that there exists a "need for early access to bankruptcy relief to allow a debtor to rehabilitate its business before it is faced with a hopeless situation." 200 F.3d at 163; *see also In re Johns-Manville*, 36 B.R. 727, 736 (Bankr. S.D.N.Y 1984) (holding debtor "should not be required to wait until the economic situation is beyond repair in order to file a reorganization petition," and noting that the "'Congressional purpose' in enacting the Code was to encourage resort to the bankruptcy process"). While the Third Circuit requires "some" degree of financial distress, *see In re*

---

[24] "In its bankruptcy case, Imerys has contended that it has claims against Old JJCI and J&J for indemnification and joint insurance proceeds," claims allegedly in the billions of dollars. *Kim Decl.* ¶ 55, ECF No. 5. Similarly, Cyprus Mines Corporation and its parent company, which had owned certain Imerys talc mines, filed an adversary proceeding in the Imerys bankruptcy against Old JJCI, J&J, Imerys Talc America, Inc., and Imerys Talc Vermont, Inc. seeking a declaration of indemnity under certain contractual agreements. Cyprus Mines Corporation has since filed its own bankruptcy case. *Id.* at ¶ 56.

*Integrated*, *supra*, the Bankruptcy Code does not "require any **particular** degree of financial distress as a condition precedent to a petition seeking relief." *In re Gen. Growth Props., Inc.*, 409 B.R. 43, 61 (Bankr. S.D.N.Y. 2009) (quoting *United States v. Huebner*, 48 F.3d 376, 379 (9th Cir. 1994) (emphasis added)). Old JJCI need not have waited until its viable business operations were threatened past the breaking point. Movants ask the Court to require the highest level of distress,[25] for which there is no precedent.

At the hearing, Movants attempted to make the case that J&J would have continued to fund all talc-related obligations of Old JJCI without any bankruptcy filing. This was merely supposition, offered without evidentiary support. The focus then shifted to Old JJCI's rising profits, year after year, of J&J's Consumer Health Sector, allegedly undermining any claim of financial distress. Movants' expert, Saul E. Burian, testified, on both direct and cross examination, that none of the entities (LTL, J&J, Old JJCI or New JJCI) needed to file bankruptcy. *Burian Report* at 34-39. To be sure, Mr. Burian highlighted that *after taking out payments and charges relative to the talc litigation*, the sales and adjusted income before tax for J&J's Total Consumer Health sector have grown steadily since 2016; pointedly, the loss experienced in 2020 by Old JJCI is attributable primarily to the one-off payment of the *Ingham* judgment. *Id.* Movants also call to the Court's attention Debtor's access to funding through the Funding Agreement:

> Here, the totality of facts and circumstances conclusively show that LTL was not
> in serious financial distress when it filed its bankruptcy petition. To the contrary,
> prior to the bankruptcy, J&J entered into a Funding Agreement with LTL pursuant

---

[25] " Because those tort claims were not a **terminal threat** to the company, as detailed above, LTL's intent plainly was to use the bankruptcy system to gain advantages that J&J and Old JJCI were unable to obtain in the tort system." *TCC II Reply Mem.* 28, ECF No. 1358 (emphasis added).

to which it and New JJCI agreed to fund LTL's current and future talc liabilities up
to the value of New JJCI—roughly $61 billion.

*TCC II Reply Mem.* 8, ECF No. 1358. As a result, Movants contend that "LTL had the ability to

require that J&J and New JJCI fund up to $61 billion to satisfy talc liabilities." *Id.* at 9. Similarly,

Movants insist that LTL was not in serious financial distress because it could "have relied on the

Funding Agreement to [settle its liabilities] before filing for bankruptcy, because at the moment of

the divisive merger, J&J had approximately $31 billion in cash on its balance sheet, and a half

trillion-dollar market cap." *Id.* at 11, n.7.

Movants appear to suggest that due to Old JJCI's pre-petition sales revenues, as well as

Debtor's financial capacity (primarily derivative from funding provided by J&J and New JJCI),

this Court cannot find that Debtor suffered from financial distress at the time of filing. This

suggestion, as a corollary, would mean that neither J&J nor Old JJCI (which had an even greater

asset base than New JJCI) could have filed for chapter 11 in good faith. Yet, this is wholly

inconsistent with Movants oft repeated contention:

> If the Debtor and/or J&J wanted the Court to focus on the financial condition of
> Old JJCI in evaluating the good faith of this proceeding, ***Old JJCI should have
> filed for bankruptcy.*** It did not. . . . J&J or Old JJCI could have chosen what it
> perceived to be the difficult path of obtaining the benefits and complying with the
> burdens of Chapter 11.

*TCC II Reply Mem.* at 23, ECF No. 1358 (emphasis in original).

More significantly, the Court is troubled by Movants' conflicting positions as to whether

any chapter 11 filing had to be undertaken at all, as claimants submit that J&J and Old JJCI could

have satisfied the extant claims without resorting to the bankruptcy court. On the one hand,

Movants minimize Debtor's true talc-related financial exposure by pointing out that over 6,800

39

ovarian cancer and mesothelioma claims have been settled since 2017 for under $1 billion. *Movants' Ex.* 161. Similarly, during trial, Movants presented video testimony of two Directors at S&P Global, a rating agency, as well as supporting documentary evidence (contemporaneous notes and emails) reflecting the understanding of these witnesses that J&J allegedly viewed their overall talc-related liabilities at no greater than $7 billion. These understandings were reached after communications with J&J personnel. In sum, Movants press that J&J could have managed its talc-related liabilities without resort to the bankruptcy court.

Yet, on the other hand, Movants' counsel compelled Mr. Kim to acknowledge on cross examination that plaintiffs have prevailed in the last seven mesothelioma trials, for verdicts totaling over $360 million. *Diaz Report* at 13. These verdicts average to over $50 million for each mesothelioma claim and hardly can be characterized as manageable. Movants also highlighted significant events in the timeline which point toward greater talc exposure for Debtor:

- October 2019: FDA finds asbestos in Johnson's Baby Powder
- June 2020: Missouri Court of Appeals affirms *Ingham*
- April 21, 2021: Health Canada confirms its 2018 finding of a significant association, indicative of a causal effect, between exposure to talc and ovarian cancer
- May/June 2021: Settlement in *Imerys* falls apart
- June 2021: U.S. Supreme Court denies *certiorari* in the *Ingham* case

*TCC I Closing* at 19. Simply put, there is a clear inconsistency in the message to the Court: either JJCI was facing increased unmanageable financial risk from the talc litigation, warranting bankruptcy consideration, or it was not. At the end of the day, this Court concludes that the weight of evidence supports a finding that J&J and Old JJCI were in fact facing a torrent of significant talc-related liabilities for years to come. The evidence at trial, including the testimony of S&P Global witnesses Arthur Wong and David Kaplan, raise doubts about the intentions underlying the

40

A40

communications to S&P Global—were they truly projections of amounts necessary to resolve current and future talc liabilities, or estimates of anticipated short-term reserves or bankruptcy settlements? What is not in doubt are a series of events which pointed to the need for bankruptcy consideration: the $4.16 billion *Ingham* verdict and ultimate denial of appellate review, the shift by claimants to multi-billion dollar damage demands, as well as the failure to reach an accord in *Imerys*. These were triggering events that changed the landscape for future talc settlements and litigation. Neither the settlements nor verdicts which predated these events could thereafter serve as dependable guideposts for expectations going forward.

### 3. Debtor's Chapter 11 Filing Was Not Undertaken to Secure an Unfair Tactical Advantage

As noted, in addition to gauging whether a chapter 11 filing serves a valid bankruptcy purpose, courts must also consider "whether the petition is filed merely to obtain a tactical litigation advantage." *In re Integrated Telecom Express, Inc.*, 384 F.3d at 120; *SGL Carbon*, 200 F.3d at 165. In this regard, the thrust of Movants' challenge to Debtor's filing appears bottomed on the 2021 Corporate Restructuring and the use of the Texas divisional merger statute to create a special purpose vehicle in the hours before the filing to accomplish J&J's goals. Pertinently, Movants contend that the 2021 Corporate Restructuring "hindered," "delayed," and "prejudiced" talc claimants—by "blocking talc creditors from obtaining access" to "Old JJCI's substantial business assets" and "remov[ing] Old JJCI's business assets and operations from the reach of its talc creditors." *Original TCC's Mot. to Dismiss* ¶¶ 2-4, 41, 50, ECF No. 632; *A&I's Mot. to Dismiss* ¶¶ 4, 55-63, ECF No. 766. Yet, notwithstanding the barrage of academic and media criticism leveled at the use of the divisional merger provisions under the Texas Business

41

Organizations Code, the Court concludes that there have been no improprieties or failures to comply with the Texas statute's requirements for implementation, and that the interests of present and future talc litigation creditors have not been prejudiced.

Debtor was incorporated and domiciled in Texas prior to effectuating the 2021 Corporate Restructuring, albeit only days before implementation. The Texas statute "applies to all business entities, regardless of when such entities were formed." *Phillips v. United Heritage Corp.*, 319 S.W.3d 156, 163 n.5 (Tex. Ct. App. 2010). The Texas Business Organizations Code establishes the procedures that an entity must follow to effect a divisional merger, including development of a plan of merger (specifying, among other things, the allocation of assets and liabilities) and a filing with the Secretary of State. *See* Tex. Bus. Orgs. Code Ann. §§ 10.001(b), 10.002, 10.003, 10.151. Moreover, under Texas's Business Organizations Code, upon a divisional merger in which the dividing entity does not survive, "all liabilities and obligations" of the dividing entity automatically "are allocated to one or more of the . . . new organizations in the manner provided by the plan of merger." Tex. Bus. Orgs. Code Ann. § 10.008(a)(2), (3). So, where the dividing entity does not survive (such as Old JJCI), and the plan of merger allocates a particular liability or obligation to a single new entity, that designated new entity is exclusively liable for that obligation. Except as otherwise provided, "no other [entity] created under the plan of merger is liable for the debt or other obligation." *Id.* § 10.008(a)(4). The record establishes conclusively that Old JJCI complied with all requirements under Texas law.

42

A42

Movants posit that the 2021 Corporate Restructuring left Debtor undercapitalized from the outset and placed the contingent talc creditors at greater risk.[26] Indeed, Movants have raised several challenges as to the efficacy of the Funding Agreement, including that: (1) J&J and New JJCI may refuse to make payments under the Funding Agreement; (2) the Funding Agreement substitutes the assets of valuable operating businesses with "an amorphous, artificially capped contract right, the value of which would take years to adjudicate;" and (3) enforcement of the agreement rests with the Debtor, which is under the control of both Payors under the Funding Agreement. *Original TCC's Mot. to Dismiss* ¶ 23, ECF No. 632. Accordingly, Movants contend that "[t]alc claimants have thus been intentionally rendered worse off than they were prior to the divisional merger, an outcome prohibited by the statute." *Id.*

The divisional merger under the Texas statute, in the absence of any subsequent bankruptcy filing by LTL, may possibly have prejudiced creditors by requiring them to await LTL's draw upon the Funding Agreement; however, that did not occur and is not the situation presented. Rather, a bankruptcy filing for the newly created, smaller entity housing the talc liabilities was a critical component of the 2021 Corporate Restructuring from the outset. As noted above, it is uncontested that the restructuring was intended as a single integrated transaction. Indeed, no one contests that J&J and Old JJCI looked to the Bankruptcy Code for a way to globally address all talc-related claims. With Debtor's chapter 11 filing, this Court now has jurisdiction and oversight over the bankruptcy estate, which controls LTL's rights under the Funding Agreement, and can ensure that Debtor pursues its available rights against J&J and New JJCI. It is inexplicable

---

[26] The Court previously raised the inconsistency of Movants' argument, given the repeated contention that neither Old JJCI nor the Debtor was in financial distress at the time of the filing.

43

that Movants would want to dismiss this proceeding and lose such leverage and access to an immediate enforcement vehicle. The Court is unpersuaded that the tort claimants have been placed in a worse position due to either the 2021 Corporate Restructuring or implementation of the Funding Agreement.

The Funding Agreement between Debtor, on the one hand, and J&J and New JJCI (on a joint and several basis) on the other, is not intended to—and is unlikely to—impair the ability of talc claimants to recover on their claims. *See Kim Decl.* ¶ 21, ECF No. 5 ("A key objective of the restructuring was to make certain that the Debtor has the same, if not greater, ability to fund the costs of defending and resolving present and future talc-related claims as Old JJCI did prior to the restructuring.") In this regard, under the Funding Agreement, all creditors, including talc claimants, maintain the ability to enforce any liquidated and fixed claims against LTL, with the added benefit of having both J&J and New JJCI backstop such obligations, up to the fair market value of Old JJCI as a floor amount, along with any additional value in New JJCI.[27] Thus, as a result of the 2021 Corporate Restructuring, Debtor would have the funding available to satisfy present and future claims against Old JJCI, with the added contractual right to look to J&J and New JJCI as primary obligors without having to establish independent liability. Moreover, with

---

[27] Without any corresponding repayment obligation, the Funding Agreement obligates New JJCI and J&J, on a joint and several basis, to provide funding, up to the full value of New JJCI, to pay for costs and expenses of the Debtor incurred in the normal course of its business (a) at any time when there is no bankruptcy case and (b) during the pendency of any chapter 11 case, including the costs of administering the chapter 11 case, in both situations to the extent that any cash distributions received by the Debtor from Royalty A&M are insufficient to pay such costs and expenses. *Declaration of John K. Kim in Support of First Day Pleadings* ¶ 27, ECF No. 5. In addition, the Funding Agreement requires New JJCI and J&J to, up to the full value of New JJCI, fund amounts necessary (a) to satisfy the Debtor's talc-related liabilities at any time when there is no bankruptcy case and (b) in the event of a chapter 11 filing, to provide the funding for a trust, in both situations to the extent that any cash distributions received by the Debtor from Royalty A&M are insufficient to pay such costs and expenses and further, in the case of the funding of a trust, the Debtor's other assets are insufficient to provide that funding. *Id.*

the bankruptcy filing, the bankruptcy estate succeeds to all rights held by Debtor, with the

oversight and jurisdiction of this Court as needed for enforcement. Significantly, the resources

under the Funding Agreement will be available upon confirmation of a plan—whether or not the

plan is acceptable to J&J or New JJCI, and whether or not the plan offers payors protections under

§ 524(g).

This Court agrees with Judge Beyer in *In re Bestwall LLC,* in analyzing a comparable

funding agreement facing similar challenges:

> The Court disagrees with the [c]ommittee's argument [that the divisional merger
> 'enabled Old GP to replace the assets against which asbestos creditors had a claim
> with a much smaller subset of assets'] for several reasons. First, because of the
> [f]unding [a]greement, the [d]ebtor's ability to pay valid Bestwall [a]sbestos
> [c]laims after the 2017 [c]orporate [r]estructuring is identical to Old GP's ability to
> pay before the restructuring.

606 B.R. at 252. Debtor, in argument and its submissions, points out that for over thirty years,

Texas law has permitted divisional mergers that exclusively allocate liabilities (and assets) to a

new entity created by the transaction, *see* CURTIS W. HUFF, *The New Texas Business Corporation*

*Act Merger Provisions*, 21 St. Mary's L.J. 109, 110 (1989), and that several other states have since

enacted similar statutes, *see, e.g.,* 15 PA. CONS. STAT. § 361; ARIZ. REV. STAT. ANN. § 29-2601;

DEL. CODE ANN. tit. 6, § 18-217(b)-(c). Debtor further underscores that corporate transactions

similar to the 2021 Corporate Restructuring were effectuated pre-bankruptcy filing in several other

mass tort bankruptcies—even apart from the other similarly structured filings currently pending in

the Western District of North Carolina.[28] Indeed, the Court has come to learn that in *G-I Holdings,*

---

[28] *See, e.g., In re Garlock Sealing Tech., LLC,* 10-31607 (Bankr. W.D.N.C. 2017); *In re Mid Valley, Inc.,* No. 03-25592 (Bankr. W.D. Pa. 2003); *In re Babcock & Wilcox Co.* No. 00-10992-10995 (Bankr. E.D. La, 2002).

*Inc.* (Case No. 01-30135 (RG)), a case which graced our court's hallways here in New Jersey for

nearly a decade, was filed by a successor-in-interest entity which assumed liability for over

100,000 then pending asbestos-related lawsuits. While all of these cases may indeed have factual

distinctions from the case at bar, the important takeaway is that the 2021 Corporate Restructuring

was not such a novel ploy and the attention it has received is likely attributable more to the

significant financial capacity of J&J, the controversial venue effort, and the timing of the

bankruptcy filing given the uproar surrounding the *Purdue Pharma* confirmation battle. None of

these factors, however, bear upon on this Court's resolution of the pending Motions.

Movants point to the indisputable fact that the current Debtor had no liabilities (and thus

no need for a bankruptcy filing) until the divisional merger was completed hours before the filing.

The Court fully understands the refrain that if J&J or New JJCI are to obtain the benefits under the

Bankruptcy Code, they should file their own chapter 11 cases and bear the burdens under the

Bankruptcy Code. As noted in Movants' Reply Memorandum:

> Under the law, J&J and New JJCI must shoulder burdens commensurate to such
> benefits: "Since a discharge is an extreme remedy, stripping a creditor of claims
> against its will, it is a privilege reserved for those entities which file a petition under
> the bankruptcy code and abide by its rules. Simply put, 'the enjoyment of the
> benefits afforded by the code is contingent on the acceptance of its burdens.'" *In re
> Arrowmill Dev't Corp.*, 211 B.R. 497, 503 (Bankr. D.N.J. 1997) (citation omitted).
> J&J and New JJCI thus must file for bankruptcy for this kind of benefits package.
> *See id.* at 506.

*TCC I Reply Mem.* at 10, ECF No. 1357. While that argument has facial appeal, it falters when the

Court reviews and weighs the harm such filings would cause to Debtor, its affiliates, the

bankruptcy estate, all creditors and claimants, and non-insider third parties. Filings by these

companies would create behemoth bankruptcies, extraordinary administrative costs and burdens,

significant delays and unmanageable dockets. One need only look at the conflict list in this case—revealing pages and pages of domestic and global affiliated entities and related parties—to confirm that such filings would pose massive disruptions to operations, supply chains, vendor and employee relationships, ongoing scientific research, and banking and retail relationships—just to name a few impacted areas. The administrative and professional fees and costs associated with such filings would likely dwarf the hundreds of millions of dollars paid in mega cases previously filed—and for what end? Even if Old JJCI had itself filed for bankruptcy, the talc actions would still be subject to the automatic stay, the assets available to pay those claims would be no greater, and the sole issue in the case would still be the resolution of the talc liabilities.

Let me be clear, this is not a case of too big to fail… rather, this is a case of too much value to be wasted, which value could be better used to achieve some semblance of justice for existing and future talc victims. The Court is not addressing the needs of a failing company engaged in a forced liquidation. Instead, the J&J corporate enterprise is a profitable global supplier of health, consumer products and pharmaceuticals that employs over 130,000 individuals globally, whose families are dependent upon continued successful operations. Why is it necessary to place at risk the livelihoods of employees, suppliers, distributors, vendors, landlords, retailers—just to name a few innocent third parties—due to the dramatically increased costs and risks associated with all chapter 11 filings, when there is no palpable benefits to those suffering and their families? Clearly, the added hundreds of millions of dollars that would be spent on professional fees alone would be better directed to a settlement trust for the benefit of the cancer victims. As acknowledged by other

47

courts, bankruptcy filings by J&J, Old JJCI, or New JJCI would pose potential negative consequences, without offering a positive change in direction or pathway to success in this case.[29]

And what are the important burdens of bankruptcy that J&J, Old JJCI and New JJCI have avoided through use of the Texas divisional merger statute? The Bankruptcy Code requires full transparency of all assets, liabilities and financial conduct through scheduling and reporting. Moreover, the Code mandates accountability for all assets and expenditures. Likewise, the Code requires judicial oversight over all non-ordinary course of business conduct. Finally, the Code burdens a debtor with the need to reach a consensus with its creditor base though the plan process and voting requirements. Given what will be required to confirm a plan in this case, as well as the attention this case is receiving from the public, media, government regulators, policy makers—let alone the Court, the United States Trustee and the dozens of attorneys involved—the Court is disinclined to view any of these entities as escaping the scrutiny or burdens.

There is no question that a fair resolution of this chapter 11 proceeding will require extraordinarily large contributions by the J&J corporate family, and likely insurers, toward a settlement fund. The sooner we get there, the better all around. Grossly multiplying the costs and complexity of this proceeding will not help the process. The J&J corporate family will not attain the benefits sought in this proceeding unless and until the parties can reach a court-approved global resolution under a confirmed plan of reorganization. This dynamic does not change whether Debtor, as a special purpose vehicle, filed the chapter 11 or the J&J family filed independent

---

[29] *See In re Aldrich Pump, LLC,* 2021 WL 3729335, at *8 (acknowledging the "serious negative consequences" of a hypothetical bankruptcy filing of Old IRNJ and Old Trane); *In re DBMP LLC,* 2021 WL 3552350, at *8 (acknowledging adverse effects of hypothetical bankruptcy filing of Old CertainTeed).

48

chapter 11 cases. The potential loss in market value, the disruptions to operations, and the excessive administrative costs associated with independent chapter 11 filings justify the business decision to employ the divisional merger statute as a means of entering the bankruptcy system.

The decision to seek resolution of the present and future talc claims within the bankruptcy system, through a § 524(g) asbestos settlement trust in lieu of continued state court litigation, is consistent with congressional objectives dating back to implementation of the § 524 asbestos provisions, which codified the approach taken in *In re Johns-Manville*. Congress has not made significant modifications to the statute, so we must assume that such mass tort resolutions—at least as to asbestos claims—are consistent with public policy. Notwithstanding, Movants and the plaintiffs' committees in the cases pending in North Carolina are vigorously challenging the chapter 11 process. As noted previously, Congress placed the tort claimants in a strong position by implementing a 75% super majority class voting requirement to confirm a plan with a § 524(g) trust. This leverage comes with responsibility, however, to engage in good faith and pursue the best interests of the collective class. In exchange, this Court will endeavor to ensure that those who are suffering currently, and in the future, have their day in court—this Court—and receive fair compensation under a comprehensive and transparent distribution scheme.

As to whether the divisional merger or the desired implementation of a § 524(g) trust should be regarded as an abusive or unfair "litigation strategy" warranting dismissal of the case for bad faith, this Court is tasked to define the permissible parameters of a debtor's pre-petition litigation strategy. In doing so, this Court takes into account the totality of circumstances, such as litigation posture outside the bankruptcy court, the subjective intent of the debtor and management,

49

A49

the degree of financial distress facing the debtor, the pressures from nonmoving creditors, pre-petition litigation conduct, the nature of the creditor body and the extent of assets, the structure and formation of the debtor, and—most importantly in this Court's view—the debtor's reorganizational purpose and exit strategy. Here, Debtor did not undertake the corporate restructuring and bankruptcy filing as litigation tactics designed **solely** to gain a litigation advantage or hinder a plaintiff in any of the thousands of pending tort actions. Rather, Debtor seeks to employ the tools provided by Congress under the Bankruptcy Code (the automatic stay and §105 or § 524(g) trust) to attain a bankruptcy resolution of its mass tort liabilities. Without more, merely availing itself of chapter 11 tools does not constitute an improper litigation tactic. *See In re Am. Cap. Equip., LLC*, 296 F. App'x. 270, 274 (3d Cir. 2008) (finding no intent to confer "a particular litigation advantage to Debtors, over and above the advantages that a typical debtor may properly obtain by availing himself of the bankruptcy system").

A finding that there exists an abusive litigation strategy, warranting dismissal of the case, is made most often in such obvious circumstances as a filing intended to simply delay the inevitable entry of judgment, to forestall collection efforts to allow the transfer of assets, a filing without any real prospects of confirming a plan or reorganizing, or where there is pointed effort to exploit the Bankruptcy Code—to name just a few examples. Certainly, this case differs from the above scenarios. The Claimants cite to *In re Integrated Telecom Express, Inc.*, 384 F.3d 108 (3d Cir. 2004), and *In re 15375 Memorial Corp.*, 589 F.3d 605 (3d Cir. 2009), for the proposition that a desire to use a particular provision in the Bankruptcy Code is "by itself" insufficient to establish

50

A50

good faith.[30] *Comm. Mot. to Dismiss* ¶ 48, ECF No. 632; *Arnold & Itkin Mot. to Dismiss*. ¶¶ 51-52, ECF No. 766. Yet, Claimants fail to explain how Debtor's filing effectuated any "tactical litigation advantage" in any of the tens of thousands of talc claims pending as of the Petition Date. It is evident from the record that Debtor filed this case to resolve the potentially crippling costs and financial drain associated with defending—over the next several decades—tens of thousands (if not hundreds of thousands) of personal injury claims with a multi-billion dollar exposure to Debtor and nondebtor affiliates.[31] Indeed, as this Court has emphasized throughout this Opinion, far from a means to "hinder and delay talc claimants," a global resolution of these claims though the bankruptcy may indeed accelerate payment to cancer victims and their families.

With respect to the use of the now infamous "Texas Two-Step," the Court finds nothing inherently unlawful or improper with application of the Texas divisional merger scheme in a manner which would facilitate a chapter 11 filing for one of the resulting new entities. This Court does not find that the rights of the talc claimants and holders of future demands are materially affected by the divisional merger. Certainly, I can say with some confidence, that the legislature

---

[30] The Court finds many of the other cases cited by Movants to be inapposite, in that they involve efforts by a debtor to hinder, delay or disrupt a pending two-party disputes, as opposed to the circumstances present in this matter. *See Marsch v. Marsch (In re Marsch*), 36 F.3d 825, 829 (9th Cir. 1994) (finding debtor with clear ability to pay judgment filed solely to avoid paying a judgment or posting appeal bond); *In re Ravick Corp.*, 106 B.R. 834, 851 (Bankr. D.N.J. 1989) (finding debtor sought to upend previous decision of trial court ordering specific performance against debtor); *Argus Grp. 1700, Inc. v. Steinman (In re Argus Grp.)*, 206 B.R. 757, 759-60 (E.D. Pa. 1997) (finding financially health debtor filed bankruptcy three days after state appellate court vacated earlier order staying proceeding); *Furness v. Lilienfield*, 35 B.R. 1006, 1007-08 (D. Md. 1983) (finding debtor filed bankruptcy on the eve of trial after repeated delays and multiple unsuccessful attempts to postpone trial).

[31] It is uncontested that during the twenty-one months (January 1, 2020 through September 30, 2021) preceding the petition date, Old JJCI expended roughly $3.6 billion of litigation expenses relating to the Talc Claims—34% of the company's sales, resulting in a pre-tax loss of nearly a billion dollars ($893.4 million) in the 21 months leading up to the petition date. *See JJCI Income Statements* (for the periods Jan. 1, 2020 to Dec. 31, 2020 and Jan. 1, 2021 to Sept. 30, 2021), *Torborg Decl. Exhibits C, D*, ECF No. 956-4.

which passed the statute into law probably did not foresee its current popular use. Notwithstanding, the statute makes clear the legislative intent that there be a neutral impact upon creditors. If current use of the divisional merger scheme as a foundation for chapter 11 filings conflicts with Texas' legislative scheme and goals, it can be repealed or modified. Until such time that there is legislative action, I am not prepared to rule that use of the statute as undertaken in this case, standing alone, evidences bad faith.

Argument has been put forward by Movants, other parties in interest, and the drafters of the *amici curie* brief that allowing this case to proceed will inevitably "open the floodgates" to similar machinations and chapter 11 filings by other companies defending against mass tort claims. Given the Court's view that the establishment of a settlement trust within the bankruptcy system offers a preferred approach to best serve the interests of injured tort claimants and their families, maybe the gates indeed should be opened. Nonetheless, for most companies, the complexity, necessary capital structure, and financial commitments required to lawfully implement a corporate restructuring as done in this case, will limit the utility of the "Texas Two-Step." Not many debtors facing financial hardships have an independent funding source willing and capable of satisfying the business's outstanding indebtedness. Moreover, the Court notes that in the fifteen years since having been appointed to the bankruptcy bench, there have been roughly 60 asbestos case filings under chapter 11 across the country, and under 100 filings since the very first case in 1982—hardly a flood. There have been, of course, dozens of additional mass tort cases not involving asbestos, primarily filings by a handful of pharmaceutical companies, manufacturers and several dozen catholic dioceses. With respect to the latter, the Court doubts very much that the dioceses will be

utilizing the Texas Business Code to restructure in advance of filing under the Bankruptcy Code.

Quite simply, the Court does not anticipate the forecasted parade of horribles.

### 4.  Application of Equitable Considerations

Movants urge the Court to exercise its equitable powers in dismissing this proceeding:

> Bankruptcy courts are courts of equity. *See, e.g.*, *Young v. United States*, 535 U.S. 43, 50–51 (2002) (explaining that bankruptcy courts "appl[y] the principles and rules of equity jurisprudence") (citation omitted); *United States v. Energy Res. Co.*, 495 U.S. 545, 549 (1990) ("[B]ankruptcy courts, as courts of equity, have broad authority to modify creditor-debtor relationships.") (citation omitted); *United States v. Energy Res. Co.*, 495 U.S. 545, 549 (1990) ("[B]ankruptcy courts, as courts of equity, have broad authority to modify creditor-debtor relationships."); *Pepper v. Litton*, 308 U.S. 295, 304 (1939) ("for many purposes 'courts of bankruptcy are essentially courts of equity, and their proceedings inherently proceedings in equity'" (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 240 (1934))). . . . A bankruptcy court can exercise its equitable powers "to the end that fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done." *Pepper*, 308 U.S. at 305.

*TCC II Reply Mem.* at 33, ECF No. 1358. The Court is unsure how this argument aides Movants' position. Indeed, the last quote above from the *Pepper* opinion suggests—and the Court agrees—that form should not supplant substance.  Such is the very reason the Court is disinclined to dismiss this case based on Debtor's 2021 corporate reorganization efforts. At the risk of being labeled didactic, the Court observes that notwithstanding the ubiquitous acceptance by courts and attorneys, bankruptcy courts are not courts of equity. Rather, bankruptcy courts exercise authority granted by statute and may address both legal and equitable claims. *See* HON. MARICA S. KREIGER, *"The Bankruptcy Court is a Court of Equity": What does that Mean?*, 50 S.C.L. REV. 275 (1999).

True, for purposes of jurisdiction and authority, the Bankruptcy Act of 1898[32] granted the

district courts exclusive bankruptcy jurisdiction at law and equity. A comparable grant of equitable

jurisdiction is wholly absent in the Bankruptcy Code or Judicial Code. Bankruptcy courts are

specialized courts with limited jurisdiction that apply statutory law. Included within these statutory

powers is § 105(a) of the Bankruptcy Code which empowers this Court to "[i]ssue any order,

process or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy

Code. 11 U.S.C. § 105(a). Pursuant to this provision, the Court has certain authority to fashion any

order or decree that is in the interest of preserving or protecting the value of a debtor's assets. *See*

*e.g., In re Morristown & Erie Railroad Co.*, 885 F.2d 98, 100 (3d Cir. 1990) (noting that § 105(a)

of the Bankruptcy Code is a powerful and versatile tool).

In permitting this case to proceed going forward, this Court stands prepared to employ its

limited equitable authority under § 105(a) to facilitate and assist Debtor and all tort claimants to

achieve a fair and just result, consistent with the social policies and objectives intended by

Congress in enacting the Bankruptcy Code. As noted by the late District Judge Jack B. Weinstein,

the use of equitable concepts is particularly appropriate to address the social needs involved with

mass tort cases:

> Once the province of common law courts and judges, mass tort cases now forced
> the courts to adopt an equitable posture. Courts of equity traditionally have taken
> into account the equities-the concrete issues of fact and fairness of the particular
> situation-in fashioning remedies. In the mass tort context these include: (1) fairly
> and expeditiously compensating numerous victims, and (2) deterring wrongful
> conduct where possible; while (3) preventing over deterrence in mass torts from
> shutting down industry or removing needed products from the market, (4) keeping
> the courts from becoming paralyzed by tens or even hundreds of thousands of

---

[32] Bankruptcy Act of 1898, ch. 541, 30 Stat. 545 (1898).

A54

repetitive personal injury cases, and (5) reducing transactional costs of compensation.

JACK B. WEINSTEIN & EILEEN B. HERSHENOV, *The Effect of Equity on Mass Tort Law,* 991 U. ILL. While class actions offer no pathway for redress with personal injury mass tort litigation and MDL's have been employed in the past with only limited success, and neither address the needs of future claimants, the use of the tools found within the Bankruptcy Code may well be the key here to fashion the remedies envisioned by Judge Weinstein.

### III.    Conclusion

For the reasons discussed, the Court denies the Motions in their entirety. The Court is aware that its decision today will be met with much angst and concern. Nonetheless, the matter before the Court is so much more than an academic exercise or public policy debate. These issues impact real lives. This Court lives with the distress in the voice of Vincent Hill, a mesothelioma plaintiff, when he testified about wanting his day in court and the need to care for his family. Sadly, Mr. Hill passed away recently and his death reaffirms for this Court the horrible truth that many of these cancer victims will not live to see their cases through the trial and appellate systems, but certainly deserve the comfort in knowing that their families' financial needs will be addressed timely. The Court remains steadfast in its belief that justice will best be served by expeditiously providing critical compensation through a court-supervised, fair, and less costly settlement trust arrangement.

During closing arguments, the U.S. Trustee suggested that if the case were not dismissed, the Court should consider the appointment of a chapter 11 trustee. This same argument was raised by counsel for the Canadian Class Plaintiffs. In apparent response, Debtor offered to consent to

A55

(1) the appointment of an examiner to investigate and (2) derivative standing for the Original TCC to pursue any valid claims for possible avoidance actions or other claims relative to the 2021 Corporate Restructuring. The record does not support a finding of Debtor's pre-petition or post-petition malfeasance, or other cause warranting the appointment of a chapter 11 trustee and the attendant costs. The Court, nonetheless, agrees that there is a need for independent scrutiny of possible claims while the case progresses through the appointment of a Future Talc Claims Representative, mediation and towards the plan formulation process. The Court will take up these issues at the upcoming March 8, 2022, omnibus hearing. The Court will enter an order consistent with this Opinion.


Michael B. Kaplan, Chief Judge
U.S. Bankruptcy Court
District of New Jersey


Dated: February 25, 2022

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**Order Filed on March 2, 2022
by Clerk
U.S. Bankruptcy Court
District of New Jersey**

| | |
|---|---|
| In Re: | Case No.: _____21-30589_____ |
| LTL MANAGEMENT LLC, | Chapter: _____11_____ |
| Debtor. | Hearing Date: ____February 14, 2022____ |
| | Judge: _____Michael B. Kaplan_____ |

## ORDER DENYING MOTIONS TO DISMISS

The relief set forth on the following pages, numbered two (2) through
_____2_____ is **ORDERED**.

**DATED: March 2, 2022**

Honorable Michael B. Kaplan
United States Bankruptcy Judge

**THIS MATTER** comes before the Court upon motions filed by the Official Committee of Talc Claimants (ECF No. 632) and the law firm of Arnold & Itkin, LLP, on behalf of certain talc personal injury claimants (ECF No. 766), seeking an order of the Court dismissing the within bankruptcy proceeding pursuant to § 1112(b) as not having been filed in good faith; And the Court having considered fully the submissions of the parties and the argument of counsel the week of February 14, 2022 - February 18, 2022; and for good cause; IT IS HEREBY

**ORDERED** that the Motions (ECF Nos. 632 and 766) are DENIED in their entirety for reasons set forth in the accompanying opinion on the docket (ECF No. 1572).

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-1(b)

**OFFIT KURMAN, P.A.**
Paul J. Winterhalter, Esquire (006961986)
99 Wood Avenue South, Suite 302
Iselin, New Jersey 08830
Telephone:    (267) 338-1370
Facsimile:    (267) 338-1335
E-mail:    pwinterhalter@offitkurman.com

**KTBS LAW LLP**
Michael L. Tuchin, Esq. (*Pro Hac Vice*)
Robert J. Pfister, Esq. (*Pro Hac Vice*)
Samuel M. Kidder, Esq. (*Pro Hac Vice*)
Nir Maoz, Esq. (*Pro Hac Vice*)
1801 Century Park East, 26th Floor
Los Angeles, California 90067
Telephone:    (310) 407-4000
Facsimile:    (310) 407-9090
Email:    mtuchin@ktbslaw.com
    rpfister@ktbslaw.com
    skidder@ktbslaw.com
    nmaoz@ktbslaw.com

*Attorneys for Aylstock, Witkin, Kreis & Overholtz,
PLLC*

| | |
|---|---|
| In re: | Chapter 11 |
| LTL MANAGEMENT LLC,[1] | Case No.: 21-30589 (MBK) |
| Debtor. | Judge: Michael B. Kaplan |

## NOTICE OF APPEAL

**NOTICE IS HEREBY GIVEN** that Aylstock, Witkin, Kreis & Overholtz, PLLC

("AWKO"), on behalf of more than three thousand holders of talc claims, hereby appeals,

pursuant to 28 U.S.C. § 158(a)(1), from (i) the *Order Denying Motions to Dismiss* [Docket No.

1603] (the "MTD Order"), entered on March 2, 2022, and the related *Memorandum Opinion*

---

[1]  The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501 George
Street, New Brunswick, New Jersey 08933.

[Docket No. 1572] (the "MTD Memorandum"), entered on February 25, 2022 and which the Bankruptcy Court referenced in the MTD Order and (ii) the *Order (i) Declaring that Automatic Stay Applies to Certain Actions Against Non-Debtors and (ii) Preliminarily Enjoining Certain Actions* [Docket No. 1635] ("PI Order" and together with the MTD Order, the "Orders"), entered on March 7, 2022, and the related *Memorandum Opinion* [Adv. Pro. No. 21-03032, Docket No. 184] (the "PI Memorandum" and together with the MTD Memorandum, the "Memoranda"), entered on February 25, 2022 and which the Bankruptcy Court referenced in the PI Order. Copies of the MTD Order and the MTD Memorandum are attached hereto as **Exhibit A** and **Exhibit B** respectively and copies of the PI Order and the PI Memorandum are attached hereto as **Exhibit C** and **Exhibit D** respectively.

Pursuant to Bankruptcy Rule 8006, AWKO intends to seek certification of the Orders and Memoranda for direct review by the United States Court of Appeals for the Third Circuit under 28 U.S.C. § 158(d)(2).

Pursuant to Bankruptcy Rule 8003(a)(3) and in accordance with Official Form 417A, the names of all parties (other than AWKO) to the Orders and Memoranda and the names, addresses, and telephone numbers of their attorneys are:

| Party Name | Role | Attorney Contact Information |
|---|---|---|
| 1.  LTL Management, LLC | Debtor and Plaintiff in the Adversary Case | WOLLMUTH MAHER & DEUTSCH LLP<br>Paul R. DeFilippo, Esq.<br>500 Fifth Avenue<br>New York, New York 10110<br>Telephone: (212) 382-3300<br>Facsimile: (212) 382-0050<br>pdefilippo@wmd-law.com<br><br>and<br><br>JONES DAY<br>Gregory M. Gordon, Esq. |

Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com

2.   Official Committee of Talc   Movant
      Claimants I

GENOVA BURNS LLC
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
Matthew I.W. Baker, Esq.
dstolz@genovaburns.com
dclarke@genovaburns.com
mbaker@genovaburns.com
110 Allen Road, Suite 304
Basking Ridge, NJ 07920
Tel: (973) 467-2700
Fax: (973) 467-8126

and

BROWN RUDNICK LLP
David J. Molton, Esq.
Robert J. Stark, Esq.
Jeffrey L. Jonas, Esq.
Michael Winograd, Esq.
dmolton@brownrudnick.com
rstark@brownrudnick.com
jjonas@brownrudnick.com
mwinograd@brownrudnick.com
Seven Times Square
New York, NY 10036
Tel: (212) 209-4800
Fax: (212) 209-4801

and

Sunni P. Beville, Esq.
sbeville@brownrudnick.com
One Financial Center
Boston, MA 02111

Tel: (617) 856-8200
Fax: (617) 856-8201

and

PARKINS LEE & RUBIO LLP
Leonard M. Parkins, Esq.
Charles M. Rubio, Esq.
lparkins@parkinslee.com
crubio@parkinslee.com
Pennzoil Place
700 Milan St., Suite 1300
Houston, TX 77002
Tel: (713) 715-1666

and

OTTERBOURG PC
Melanie L. Cyganowski, Esq.
Adam C. Silverstein, Esq.
Jennifer S. Feeney, Esq.
mcyganowski@otterbourg.com
asilverstein@otterbourg.com
jfeeney@otterbourg.com
230 Park Avenue
New York, NY 10169
Tel: (212) 905-3628
Fax: (212) 682-6104

| 3. | Official Committee of Talc Claimants II | Movant | COOLEY LLP<br>Cullen D. Speckhart<br>Michael Klein<br>Erica J. Richards<br>Lauren A. Reichardt<br>Evan Lazerowitz<br>55 Hudson Yards<br>New York, NY 10001<br>Tel: (212) 479-6000<br>Fax: (212) 479-6275<br>Email: cspeckhart@cooley.com<br>mklein@cooley.com<br>erichards@cooley.com<br>lreichardt@cooley.com<br>elazerowitz@cooley.com<br><br>and |

BAILEY GLASSER LLP
Brian A. Glasser, Esq.
Thomas B. Bennett, Esq.
Kevin W. Barrett, Esq.
Maggie B. Burrus, Esq.
105 Thomas Jefferson St. NW
Suite 540
Washington, DC 20007
Tel: (202) 463-2101
Fax: (202) 463-2103
Email: bglasser@baileyglasser.com
tbennett@baileyglasser.com

and

WALDREP WALL BABCOCK &
BAILEY PLLC
Thomas W. Waldrep, Jr.
Kevin L. Sink
James C. Lanik
Jennifer B. Lyday
370 Knollwood Street
Suite 600
Winston-Salem, NC 27103
Tel: (336) 717-1280
Fax: (336) 717-1340
Email: notice@waldrepwall.com

and

SHERMAN, SILVERSTEIN, KOHL,
ROSE & PODOLSKY, P.A.
Arthur J. Abramowitz
Alan I. Moldoff
Ross J. Switkes
308 Harper Drive, Suite 200
Moorestown, New Jersey 08057
Tel: (856) 662-0700
Email:
abramowitz@shermansilverstein.com
amoldoff@shermansilverstein.com

| | | | |
|---|---|---|---|
| 4. | Arnold & Itkin LLP | Movant | PACHULSKI STANG ZIEHL & JONES LLP<br>Laura Davis Jones<br>Karen B. Dine<br>Colin R. Robinson<br>Peter J. Keane<br>919 N. Market Street, 17th Floor<br>Wilmington, DE 19801<br>Telephone: (302) 652-4100<br>Facsimile: (302) 652-4400<br>Email: ljones@pszjlaw.com<br>kdine@pszjlaw.com<br>crobinson@pszjlaw.com<br>pkeane@pszjlaw.com |
| 5. | United States Trustee | Party in Interest | UNITED STATES DEPARTMENT OF JUSTICE<br>OFFICE OF THE UNITED STATES TRUSTEE<br>ANDREW R. VARA<br>UNITED STATES TRUSTEE, REGIONS 3 & 9<br>Mitchell B. Hausman, Esq.<br>Jeffrey M. Sponder, Esq.<br>Lauren Bielskie, Esq.<br>Robert J. Schneider, Jr., Esq.<br>One Newark Center, Suite 2100<br>Newark, NJ 07102<br>Telephone: (973) 645-3014<br>Fax: (973) 645-5993<br>E-mail:<br>mitchell.b.hausman@usdoj.gov<br>jeffrey.m.sponder@usdoj.gov<br>lauren.bielskie@usdoj.gov<br>robert.j.schneider@usdoj.gov |
| 6. | DeSanto Canadian Class Action Creditors | Party in Interest | LITE DEPALMA GREENBERG & AFANADOR, LLC<br>570 Broad Street, Suite 1201<br>Newark, New Jersey 07102<br>Direct Dial: (973) 877-3814<br>Main No.: (973) 623-3000<br>Allen J. Underwood II, Esq.<br>Email: aunderwood@litedepalma.com |

DATED:  March 7, 2022                    Respectfully submitted,

**OFFIT KURMAN, P.A.**

/s/ Paul J. Winterhalter
_____
Paul J. Winterhalter
99 Wood Avenue South, Suite 302
Iselin, New Jersey 08830
Telephone:    (267) 338-1370
Facsimile:    (267) 338-1335
E-mail:        pwinterhalter@offitkurman.com

- and -

**KTBS LAW LLP**
Michael L. Tuchin (*pro hac vice*)
Robert J. Pfister  (*pro hac vice*)
Samuel M. Kidder (*pro hac vice*)
Nir Maoz (*pro hac vice*)
1801 Century Park East, 26th Floor
Los Angeles, California 90067
Telephone:    (310) 407-4000
Facsimile:    (310) 407-9090
Email:        mtuchin@ktbslaw.com
              rpfister@ktbslaw.com
              skidder@ktbslaw.com
              nmaoz@ktbslaw.com

*Attorneys for Aylstock, Witkin, Kreis & Overholtz, PLLC*

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>**Caption in Compliance with D.N.J. LBR 9004-1(b)** | |
| **COOLEY LLP**<br>Cullen D. Speckhart (admitted pro hac vice)<br>Ian Shapiro (admitted pro hac vice)<br>Russell Capone (admitted pro hac vice)<br>Michael Klein (admitted pro hac vice)<br>55 Hudson Yards<br>New York, NY 10001<br>Tel: (212) 479-6000<br>Fax: (212) 479-6275<br>Email: cspeckhart@cooley.com<br>     ishapiro@cooley.com<br>     rcapone@cooley.com<br>     mklein@cooley.com<br><br>*Proposed Co-Counsel to the*<br>*Official Committee of Talc Claimants II* | **BAILEY GLASSER LLP**<br>Brian A. Glasser (admitted pro hac vice)<br>Thomas B. Bennett (admitted pro hac vice)<br>Kevin W. Barrett (admitted pro hac vice)<br>Maggie B. Burrus (admitted pro hac vice)<br>1055 Thomas Jefferson St. NW, Suite 540<br>Washington, DC 20007<br>Tel: (202) 463-2101<br>Fax: (202) 463-2103<br>Email: bglasser@baileyglasser.com<br>     tbennett@baileyglasser.com<br>     kbarrett@baileyglasser.com<br>     mburrus@baileyglasser.com<br><br>*Proposed Co-Counsel to the*<br>*Official Committee of Talc Claimants II* |
| **WALDREP WALL BABCOCK & BAILEY PLLC**<br>Thomas W. Waldrep, Jr. (admitted pro hac vice)<br>Kevin L. Sink (admitted pro hac vice)<br>James C. Lanik (admitted pro hac vice)<br>Jennifer B. Lyday (admitted pro hac vice)<br>370 Knollwood Street, Suite 600<br>Winston-Salem, NC 27103<br>Tel: (336) 717-1280<br>Fax: (336) 717-1340<br>Email: notice@waldrepwall.com<br><br>*Proposed Co-Counsel to the*<br>*Official Committee of Talc Claimants II* | **MASSEY & GAIL LLP**<br>Jonathan S. Massey (admitted pro hac vice)<br>1000 Maine Ave. SW, Suite 450<br>Washington, DC 20024<br>Tel: (202) 652-4511<br>Fax: (312) 379-0467<br>Email: jmassey@masseygail.com<br><br>*Proposed Co-Counsel to the*<br>*Official Committee of Talc Claimants II* |
| **SHERMAN, SILVERSTEIN,**<br>**KOHL, ROSE & PODOLSKY, P.A.**<br>Arthur J. Abramowitz<br>Alan I. Moldoff<br>Ross J. Switkes<br>308 Harper Drive, Suite 200<br>Moorestown, NJ 08057<br>Tel: (856) 662-0700<br>Email: aabramowitz@shermansilverstein.com<br>     amoldoff@shermansilverstein.com<br>     rswitkes@shermansilverstein.com<br><br>*Proposed Local Counsel to the*<br>*Official Committee of Talc Claimants II* | |

| In re: | Chapter 11 |
|--------|-----------|
| **LTL MANAGEMENT LLC,** | Case No.: 21-30589 (MBK) |
| Debtor. | Honorable Michael B. Kaplan |

## JOINT NOTICE OF APPEAL

**PLEASE TAKE NOTICE** that the Official Committee of Talc Claimants II ("TCC II"),

together with Patricia Cook, Evan Plotkin, Randy Derouen, Kristie Doyle as estate representative

of Dan Doyle, Katherine Tollefson, and Tonya Whetsel as estate representative of Brandon

Whetsel, hereby appeal to the United States District Court for the District of New Jersey[1] pursuant

to 28 U.S.C. §158 and rules 8002 and 8003 of the Federal Rules of Bankruptcy Procedure, from

the order (D.I. 1603) (the "Order") denying motions to dismiss, entered on March 2, 2022 by the

United States Bankruptcy Court for the District of New Jersey.

**PLEASE TAKE FURTHER NOTICE** that a copy of the Order is attached hereto as

**Exhibit A**.

**PLEASE TAKE FURTHER NOTICE** that the names of all parties to the Order appealed

from and the names, addresses and telephone numbers of their respective attorneys are as follows:

| Party | Counsel |
|-------|---------|
| Official Committee of Talc Claimants II | **COOLEY LLP**<br>Cullen D. Speckhart<br>Ian Shapiro<br>Russell Capone<br>Michael Klein<br>55 Hudson Yards<br>New York, NY 10001<br>Tel: (212) 479-6000<br>Fax: (212) 479-6275<br>Email: cspeckhart@cooley.com<br>        ishapiro@cooley.com |

---

[1] Concurrently herewith, the appellants are filing a motion seeking direct certification of this appeal to the Third Circuit
Court of Appeals pursuant to 28 U.S.C. § 152(d)(2).

rcapone@cooley.com
mklein@cooley.com

**BAILEY GLASSER LLP**
Brian A. Glasser
Thomas B. Bennett
Kevin W. Barrett
Maggie B. Burrus
1055 Thomas Jefferson St. NW, Suite 540
Washington, DC 20007
Tel: (202) 463-2101
Fax: (202) 463-2103
Email: bglasser@baileyglasser.com
tbennett@baileyglasser.com
kbarrett@baileyglasser.com
mburrus@baileyglasser.com

**MASSEY & GAIL LLP**
Jonathan S. Massey
1000 Maine Ave. SW, Suite 450
Washington, DC 20024
Tel: (202) 652-4511
Fax: (312) 379-0467
Email: jmassey@masseygail.com

**WALDREP WALL BABCOCK &
BAILEY PLLC**
Thomas W. Waldrep, Jr.
Kevin L. Sink
James C. Lanik
Jennifer B. Lyday
370 Knollwood Street, Suite 600
Winston-Salem, NC 27103
Tel: (336) 717-1280
Fax: (336) 717-1340
Email: notice@waldrepwall.com

**SHERMAN, SILVERSTEIN, KOHL,
ROSE & PODOLSKY, P.A.**
Arthur J. Abramowitz
Alan I. Moldoff
Ross J. Switkes
308 Harper Drive, Suite 200
Moorestown, NJ 08057
Tel: (856) 662-0700
Email: aabramowitz@shermansilverstein.com

3

A68

| | |
|---|---|
| | amoldoff@shermansilverstein.com<br>rswitkes@shermansilverstein.com |
| Patricia Cook | **WEITZ & LUXENBERG, P.C.**<br>Perry Weitz<br>Lisa Nathanson Busch<br>Justine Delaney<br>700 Broadway<br>New York, NY 10083<br>Tel: (212) 558-5500<br>Email: lbusch@weitzlux.com<br>        pw@weitzlux.com<br>        jdelaney@weitzlux.com |
| Evan Plotkin | **LEX NOVA LAW, LLC**<br>E. Richard Dressel<br>10 E. Stow Rd., Suite 250<br>Marlton, NJ 08053<br>Tel. (856) 382-8550<br>Email: rdressel@lexnovalaw.com<br><br>**DEAN OMAR BRANHAM SHIRLEY, LLP**<br>Trey Branham<br>302 N. Market Street, Suite 300<br>Dallas, TX 75202<br>Tel: (214) 722-5990<br>Email: tbranham@dobslegal.com |
| Randy Derouen | **LEVY KONIGSBERG LLP**<br>Moshe Maimon<br>Jerome H. Block<br>Audrey Perlman Raphael<br>605 Third Avenue, 33rd Floor<br>New York, NY 10158<br>Tel: (212) 605-6200<br>Email: MMaimon@levylaw.com<br>        JBlock@levylaw.com<br>        ARaphael@levylaw.com |
| Kristie Doyle, as estate representative of Dan Doyle | **SAIBER LLC**<br>Marc E. Wolin<br>John M. August<br>18 Columbia Turnpike, Suite 200<br>Florham Park, NJ 07932<br>Tel: (973) 622-8401 |

4

A69

| | Email: mwolin@saiber.com<br>jaugust@saiber.com<br><br>**KAZAN, McCLAIN, SATTERLEY &<br>GREENWOOD**<br>A Professional Law Corporation<br>Steven Kazan, Esq.<br>Joseph D. Satterley, Esq.<br>Denyse F. Clancy, Esq.<br>Jack London Market<br>55 Harrison Street, Suite 400<br>Oakland, California 94607<br>Tel: (510) 302-1000<br>Email: skazan@kazanlaw.com<br>JSatterley@kazanlaw.com<br>DClancy@kazanlaw.com |
|---|---|
| Katherine Tollefson | **MAUNE RAICHLE HARTLEY FRENCH<br>& MUDD LLC**<br>Suzanne M. Ratcliffe<br>150 West 30th Street, Suite 201<br>New York, NY 10001<br>Tel: (800) 358-5922<br>Email: sratcliffe@mrhfmlaw.com<br><br>Neil J. Maune<br>Marcus E. Raichle Jr.<br>Christopher McKean<br>Clayton L. Thompson<br>1015 Locust Street<br>St. Louis, MO 63191<br>Tel: (800) 358-5922<br>Email: nmaune@mrhfmlaw.com<br>mraichle@mrhfmlaw.com<br>cmckean@mrhfmlaw.com<br>cthompson@mrhfmlaw.com |
| Tonya Whetsel, as estate representative of Brandon Whetsel | **KARST & von OISTE, LLP**<br>David A. Chandler<br>505 Main Street<br>Port Jefferson, NY 11777<br>Tel: (855) 970-9988<br>Email: dac@karstvonoiste.com |
| LTL Management, LLC | **WOLLMUTH MAHER & DEUTSCH<br>LLP**<br>Paul R. DeFilippo |

5

A70

| | 500 Fifth Avenue<br>New York, NY 10110<br>Tel: (212) 382-3300<br>Fax: (212) 382-0050<br>Email: pdefilippo@wmd-law.com<br><br>**JONES DAY**<br>Gregory M. Gordon<br>Brad B. Erens<br>Dan B. Prieto<br>Amanda Rush<br>2727 N. Harwood Street<br>Dallas, TX 75201<br>Tel: (214) 220-3939<br>Fax: (214) 969-5100<br>Email: gmgordon@jonesday.com<br>        bberens@jonesday.com<br>        dbprieto@jonesday.com<br>        arush@jonesday.com |
| Official Committee of Talc Claimants I | **GENOVA BURNS LLC**<br>Daniel M. Stolz<br>Donald W. Clarke<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ 07920<br>Tel: (973) 467-2700<br>Fax: (973) 467-8126<br>Email: dstolz@genovaburns.com<br>        dclarke@genovaburns.com<br><br>**BROWN RUDNICK LLP**<br>David J. Molton<br>Robert J. Stark<br>Michael S. Winograd<br>Seven Times Square<br>New York, NY 10036<br>Tel: (212) 209-4800<br>Fax: (212) 209-4801<br>Email: dmolton@brownrudnick.com<br>        rstark@brownrudnick.com<br>        mwinograd@brownrudnick.com<br><br>Jeffrey L. Jonas<br>Sunni P. Beville<br>One Financial Center<br>Boston, MA 02111 |

| | |
|---|---|
| | Tel: (617) 856-8200<br>Fax: (617) 856-8201<br>Email: jjonas@brownrudnick.com<br>     sbeville@brownrudnick.com<br><br>**OTTERBOURG PC**<br>Melanie L. Cyganowski<br>Adam C. Silverstein<br>Jennifer S. Feeney<br>230 Park Avenue<br>New York, NY 10169<br>Tel: (212) 905-3628<br>Fax: (212) 682-6104<br>Email: mcyganowski@otterbourg.com<br>     asilverstein@otterbourg.com<br>     jfeeney@otterbourg.com<br><br>**PARKINS LEE & RUBIO LLP**<br>Pennzoil Place<br>700 Milan Street, Suite 1300<br>Houston, TX 77002<br>Tel: (713) 715-1666<br>Email: lparkins@parkinslee.com<br>     crubio@parkinslee.com |
| Arnold & Itkin LLP | **PACHULSKI STANG ZIEHL & JONES LLP**<br>Laura Davis Jones<br>Karen B. Dine<br>Colin R. Robinson<br>Peter J. Keane<br>919 N. Market Street, 17th Floor<br>Wilmington, DE 19801<br>Tel: (302) 652-4100<br>Fax: (302) 652-4400<br>Email: ljones@pszjlaw.com<br>     kdine@pszjlaw.com<br>     crobinson@pszjlaw.com<br>     pkeane@pszjlaw.com |
| Aylstock, Witkin, Kreis & Overholtz, PLLC | **OFFIT KURMAN, P.A.**<br>Paul J. Winterhalter<br>99 Wood Avenue South, Suite 302<br>Iselin, New Jersey 08830<br>Tel: (267) 338-1370<br>Fax: (267) 338-1335 |

| | |
|---|---|
| | Email: pwinterhalter@offitkurman.com<br><br>**KTBS LAW LLP**<br>Michael L. Tuchin<br>Robert J. Pfister<br>Samuel M. Kidder<br>Nir Maoz<br>1801 Century Park East, 26th Floor<br>Los Angeles, California 90067<br>Tel: (310) 407-4000<br>Fax: (310) 407-9090<br>Email: mtuchin@ktbslaw.com<br>rpfister@ktbslaw.com<br>skidder@ktbslaw.com<br>nmaoz@ktbslaw.com |
| Claimants Represented by the Barnes Law Group | **COLE SCHOTZ P.C.**<br>Felice Yudkin<br>Court Plaza North<br>25 Main Street<br>P.O. Box 800<br>Hackensack, NJ 07602-0800<br>Tel: (201) 489-3000<br>Fax: (201) 489-1536<br>Email: fyudkin@coleschotz.com<br><br>Mark Tsukerman<br>1325 Avenue of the Americas, 19th Floor<br>New York, NY 10019-6079<br>Tel: (212) 752-8000<br>Fax: (646) 563-7948<br>Email: mtsukerman@coleschotz.com |
| DeSanto Canadian Class Action Creditors | **LITE DEPALMA GREENBERG & AFANADOR, LLC**<br>Allen J. Underwood II<br>570 Broad Street, Suite 1201<br>Newark, NJ 07102<br>Tel: (973) 623-3000<br>Email: aunderwood@litedepalma.com |
| Andrew R. Vara, United States Trustee, District of New Jersey | **THE OFFICE OF THE UNITED STATES TRUSTEE, DISTRICT OF NEW JERSEY**<br>Martha R. Hildebrandt, Assistant United States Trustee<br>Jeffrey M. Sponder, Trial Attorney |

A73

|  | One Newark Center, Suite 2100<br>Newark, NJ 07102<br>Tel: (973) 645-3014<br>Fax: (973) 645-5993 |
|---|---|

*[signatures follow]*

9

Date: March 7, 2022

**SHERMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY, P.A.**

*/s/ Arthur J. Abramowitz*
Arthur J. Abramowitz
Ross J. Switkes
Sherman, Silverstein, Kohl, Rose &
Podolsky, P.A.
308 Harper Drive, Suite 200
Moorestown, NJ 08057
Tel: (856) 662-0700
aabramowitz@shermansilverstein.com
rswitkes@shermansilverstein.com

*Proposed Local Counsel to the Official Committee of Talc Claimants II*

**WEITZ & LUXENBERG, P.C.**

*/s/ Lisa Nathanson Busch*
Lisa Nathanson Busch
700 Broadway
New York, NY 10083
Tel: (212) 558-5500
lbusch@weitzlux.com

*Counsel to Patricia Cook*

**LEX NOVA LAW, LLC**

*/s/ E. Richard Dressel*
E. Richard Dressel
10 E. Stow Rd., Suite 250
Marlton, NJ 08053
Tel: (856) 382-8550
rdressel@lexnovalaw.com

*Counsel to Evan Plotkin*

**LEVY KONIGSBERG LLP**

*/s/ Jerome H. Block*
Jerome H. Block
605 Third Avenue, 33rd Floor
New York, NY 10158
Tel: (212) 605-6200
jblock@levylaw.com

10

A75

*Counsel to Randy Derouen*

**SAIBER LLC**

*/s/ Marc E. Wolin*

Marc E. Wolin
John M. August
18 Columbia Turnpike, Suite 200
Florham Park, NJ 07932
Tel: (973) 622-8401
mwolin@saiber.com
jaugust@saiber.com

*Counsel to Kristie Doyle, as estate
representative of Dan Doyle*

**MAUNE RAICHLE HARTLEY
FRENCH & MUDD LLC**

*/s/ Suzanne M. Ratcliffe*

Suzanne M. Ratcliffe
150 West 30th Street, Suite 201
New York, NY 10001
Tel: (800) 358-5922
sratcliffe@mrhfmlaw.com

*Counsel to Katherine Tollefson*

**KARST & von OISTE, LLP**

*/s/ David A. Chandler*

David A. Chandler
505 Main Street
Port Jefferson, NY 11777
Tel: (855) 970-9988
dac@karstvonoiste.com

*Counsel to Tonya Whetsel, as estate
representative of Brandon Whetsel*

A76

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>**Caption in Compliance with D.N.J. LBR 9004-1(b)** | |
| **COOLEY LLP**<br>Cullen D. Speckhart (admitted pro hac vice)<br>Ian Shapiro (admitted pro hac vice)<br>Russell Capone (admitted pro hac vice)<br>Michael Klein (admitted pro hac vice)<br>55 Hudson Yards<br>New York, NY 10001<br>Tel: (212) 479-6000<br>Fax: (212) 479-6275<br>Email: cspeckhart@cooley.com<br>      ishapiro@cooley.com<br>      rcapone@cooley.com<br>      mklein@cooley.com<br><br>*Proposed Co-Counsel to the*<br>*Official Committee of Talc Claimants II* | **BAILEY GLASSER LLP**<br>Brian A. Glasser (admitted pro hac vice)<br>Thomas B. Bennett (admitted pro hac vice)<br>Kevin W. Barrett (admitted pro hac vice)<br>Maggie B. Burrus (admitted pro hac vice)<br>1055 Thomas Jefferson St. NW, Suite 540<br>Washington, DC 20007<br>Tel: (202) 463-2101<br>Fax: (202) 463-2103<br>Email: bglasser@baileyglasser.com<br>      tbennett@baileyglasser.com<br>      kbarrett@baileyglasser.com<br>      mburrus@baileyglasser.com<br><br>*Proposed Co-Counsel to the*<br>*Official Committee of Talc Claimants II* |
| **WALDREP WALL BABCOCK & BAILEY PLLC**<br>Thomas W. Waldrep, Jr. (admitted pro hac vice)<br>Kevin L. Sink (admitted pro hac vice)<br>James C. Lanik (admitted pro hac vice)<br>Jennifer B. Lyday (admitted pro hac vice)<br>370 Knollwood Street, Suite 600<br>Winston-Salem, NC 27103<br>Tel: (336) 717-1280<br>Fax: (336) 717-1340<br>Email: notice@waldrepwall.com<br><br>*Proposed Co-Counsel to the*<br>*Official Committee of Talc Claimants II* | **MASSEY & GAIL LLP**<br>Jonathan S. Massey (admitted pro hac vice)<br>1000 Maine Ave. SW, Suite 450<br>Washington, DC 20024<br>Tel: (202) 652-4511<br>Fax: (312) 379-0467<br>Email: jmassey@masseygail.com<br><br>*Proposed Co-Counsel to the*<br>*Official Committee of Talc Claimants II* |
| **SHERMAN, SILVERSTEIN,**<br>**KOHL, ROSE & PODOLSKY, P.A.**<br>Arthur J. Abramowitz<br>Alan I. Moldoff<br>Ross J. Switkes<br>308 Harper Drive, Suite 200<br>Moorestown, NJ 08057<br>Tel: (856) 662-0700<br>Email: aabramowitz@shermansilverstein.com<br>      amoldoff@shermansilverstein.com<br>      rswitkes@shermansilverstein.com<br><br>*Proposed Local Counsel to the*<br>*Official Committee of Talc Claimants II* | |

| In re:<br><br>**LTL MANAGEMENT LLC,**<br><br>Debtor. | Chapter 11<br><br>Case No.: 21-30589 (MBK)<br><br>Honorable Michael B. Kaplan |
|---|---|
| **LTL MANAGEMENT LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**THOSE PARTIES LISTED ON APPENDIX A TO COMPLAINT** and **JOHN AND JANE DOES 1-1000,**<br><br>Defendants. | Adv. Pro. No.: 21-03032 (MBK) |

## <u>JOINT NOTICE OF APPEAL</u>

**PLEASE TAKE NOTICE** that the Official Committee of Talc Claimants II ("TCC II"), together with Patricia Cook, Evan Plotkin, Randy Derouen, Kristie Doyle as estate representative of Dan Doyle, Katherine Tollefson, and Tonya Whetsel as estate representative of Brandon Whetsel, hereby appeal to the United States District Court for the District of New Jersey[1] pursuant to 28 U.S.C. §158 and rules 8002 and 8003 of the Federal Rules of Bankruptcy Procedure, from the order (Dkt. 1635) (the "<u>Order</u>") (i) declaring that the automatic stay applies to certain actions against non-debtors and (ii) preliminarily enjoining certain actions, entered on March 7, 2022 by the United States Bankruptcy Court for the District of New Jersey.

**PLEASE TAKE FURTHER NOTICE** that a copy of the Order is attached hereto as **Exhibit A**.

**PLEASE TAKE FURTHER NOTICE** that the names of all parties to the Order appealed from and the names, addresses and telephone numbers of their respective attorneys are as follows:

---

[1] Concurrently herewith, the appellants are filing a motion seeking direct certification of this appeal to the Third Circuit Court of Appeals pursuant to 28 U.S.C. § 152(d)(2).

2

A78

| Party | Counsel |
|-------|---------|
| Official Committee of Talc Claimants II | **COOLEY LLP**<br>Cullen D. Speckhart<br>Ian Shapiro<br>Russell Capone<br>Michael Klein<br>55 Hudson Yards<br>New York, NY 10001<br>Tel: (212) 479-6000<br>Fax: (212) 479-6275<br>Email: cspeckhart@cooley.com<br>　　　 ishapiro@cooley.com<br>　　　 rcapone@cooley.com<br>　　　 mklein@cooley.com<br><br>**BAILEY GLASSER LLP**<br>Brian A. Glasser<br>Thomas B. Bennett<br>Kevin W. Barrett<br>Maggie B. Burrus<br>1055 Thomas Jefferson St. NW, Suite 540<br>Washington, DC 20007<br>Tel: (202) 463-2101<br>Fax: (202) 463-2103<br>Email: bglasser@baileyglasser.com<br>　　　 tbennett@baileyglasser.com<br>　　　 kbarrett@baileyglasser.com<br>　　　 mburrus@baileyglasser.com<br><br>**MASSEY & GAIL LLP**<br>Jonathan S. Massey<br>1000 Maine Ave. SW, Suite 450<br>Washington, DC 20024<br>Tel: (202) 652-4511<br>Fax: (312) 379-0467<br>Email: jmassey@masseygail.com<br><br>**WALDREP WALL BABCOCK &<br>BAILEY PLLC**<br>Thomas W. Waldrep, Jr.<br>Kevin L. Sink<br>James C. Lanik<br>Jennifer B. Lyday |

3

| | 370 Knollwood Street, Suite 600<br>Winston-Salem, NC 27103<br>Tel: (336) 717-1280<br>Fax: (336) 717-1340<br>Email: notice@waldrepwall.com<br><br>**SHERMAN, SILVERSTEIN, KOHL,**<br>**ROSE & PODOLSKY, P.A.**<br>Arthur J. Abramowitz<br>Alan I. Moldoff<br>Ross J. Switkes<br>308 Harper Drive, Suite 200<br>Moorestown, NJ 08057<br>Tel: (856) 662-0700<br>Email: aabramowitz@shermansilverstein.com<br>        amoldoff@shermansilverstein.com<br>        rswitkes@shermansilverstein.com |
|---|---|
| Patricia Cook | **WEITZ & LUXENBERG, P.C.**<br>Perry Weitz<br>Lisa Nathanson Busch<br>Justine Delaney<br>700 Broadway<br>New York, NY 10083<br>Tel: (212) 558-5500<br>Email: lbusch@weitzlux.com<br>        pw@weitzlux.com<br>        jdelaney@weitzlux.com |
| Evan Plotkin | **LEX NOVA LAW, LLC**<br>E. Richard Dressel<br>10 E. Stow Rd., Suite 250<br>Marlton, NJ 08053<br>Tel. (856) 382-8550<br>Email: rdressel@lexnovalaw.com<br><br>**DEAN OMAR BRANHAM SHIRLEY,**<br>**LLP**<br>Trey Branham<br>302 N. Market Street, Suite 300<br>Dallas, TX 75202<br>Tel: (214) 722-5990<br>Email: tbranham@dobslegal.com |
| Randy Derouen | **LEVY KONIGSBERG LLP**<br>Moshe Maimon |

A80

| | |
|---|---|
| | Jerome H. Block<br>Audrey Perlman Raphael<br>605 Third Avenue, 33rd Floor<br>New York, NY 10158<br>Tel: (212) 605-6200<br>Email: MMaimon@levylaw.com<br>    JBlock@levylaw.com<br>    ARaphael@levylaw.com |
| Kristie Doyle, as estate representative of Dan Doyle | **SAIBER LLC**<br>Marc E. Wolin<br>John M. August<br>18 Columbia Turnpike, Suite 200<br>Florham Park, NJ 07932<br>Tel: (973) 622-8401<br>Email: mwolin@saiber.com<br>    jaugust@saiber.com<br><br>**KAZAN, McCLAIN, SATTERLEY & GREENWOOD**<br>A Professional Law Corporation<br>Steven Kazan, Esq.<br>Joseph D. Satterley, Esq.<br>Denyse F. Clancy, Esq.<br>Jack London Market<br>55 Harrison Street, Suite 400<br>Oakland, California 94607<br>Tel: (510) 302-1000<br>Email: skazan@kazanlaw.com<br>    JSatterley@kazanlaw.com<br>    DClancy@kazanlaw.com |
| Katherine Tollefson | **MAUNE RAICHLE HARTLEY FRENCH & MUDD LLC**<br>Suzanne M. Ratcliffe<br>150 West 30th Street, Suite 201<br>New York, NY 10001<br>Tel: (800) 358-5922<br>Email: sratcliffe@mrhfmlaw.com<br><br>Neil J. Maune<br>Marcus E. Raichle Jr.<br>Christopher McKean<br>Clayton L. Thompson<br>1015 Locust Street<br>St. Louis, MO 63191 |

A81

| | Tel: (800) 358-5922<br>Email: nmaune@mrhfmlaw.com<br>    mraichle@mrhfmlaw.com<br>    cmckean@mrhfmlaw.com<br>    cthompson@mrhfmlaw.com |
|---|---|
| Tonya Whetsel, as estate representative of Brandon Whetsel | **KARST & von OISTE, LLP**<br>David A. Chandler<br>505 Main Street<br>Port Jefferson, NY 11777<br>Tel: (855) 970-9988<br>Email: dac@karstvonoiste.com |
| LTL Management, LLC | **WOLLMUTH MAHER & DEUTSCH LLP**<br>Paul R. DeFilippo<br>500 Fifth Avenue<br>New York, NY 10110<br>Tel: (212) 382-3300<br>Fax: (212) 382-0050<br>Email: pdefilippo@wmd-law.com<br><br>**JONES DAY**<br>Gregory M. Gordon<br>Brad B. Erens<br>Dan B. Prieto<br>Amanda Rush<br>2727 N. Harwood Street<br>Dallas, TX 75201<br>Tel: (214) 220-3939<br>Fax: (214) 969-5100<br>Email: gmgordon@jonesday.com<br>    bberens@jonesday.com<br>    dbprieto@jonesday.com<br>    arush@jonesday.com |
| Official Committee of Talc Claimants I | **GENOVA BURNS LLC**<br>Daniel M. Stolz<br>Donald W. Clarke<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ 07920<br>Tel: (973) 467-2700<br>Fax: (973) 467-8126<br>Email: dstolz@genovaburns.com<br>    dclarke@genovaburns.com |

A82

| | **BROWN RUDNICK LLP** |
|---|---|
| | David J. Molton |
| | Robert J. Stark |
| | Michael S. Winograd |
| | Seven Times Square |
| | New York, NY 10036 |
| | Tel: (212) 209-4800 |
| | Fax: (212) 209-4801 |
| | Email: dmolton@brownrudnick.com |
| |      rstark@brownrudnick.com |
| |      mwinograd@brownrudnick.com |
| | |
| | Jeffrey L. Jonas |
| | Sunni P. Beville |
| | One Financial Center |
| | Boston, MA 02111 |
| | Tel: (617) 856-8200 |
| | Fax: (617) 856-8201 |
| | Email: jjonas@brownrudnick.com |
| |      sbeville@brownrudnick.com |
| | |
| | **OTTERBOURG PC** |
| | Melanie L. Cyganowski |
| | Adam C. Silverstein |
| | Jennifer S. Feeney |
| | 230 Park Avenue |
| | New York, NY 10169 |
| | Tel: (212) 905-3628 |
| | Fax: (212) 682-6104 |
| | Email: mcyganowski@otterbourg.com |
| |      asilverstein@otterbourg.com |
| |      jfeeney@otterbourg.com |
| | |
| | **PARKINS LEE & RUBIO LLP** |
| | Pennzoil Place |
| | 700 Milan Street, Suite 1300 |
| | Houston, TX 77002 |
| | Tel: (713) 715-1666 |
| | Email: lparkins@parkinslee.com |
| |      crubio@parkinslee.com |
| Aylstock, Witkin, Kreis & Overholtz, PLLC | **OFFIT KURMAN, P.A.** |
| | Paul J. Winterhalter |
| | 99 Wood Avenue South, Suite 302 |
| | Iselin, New Jersey 08830 |
| | Tel: (267) 338-1370 |

A83

|  | Fax: (267) 338-1335<br>Email: pwinterhalter@offitkurman.com<br><br>**KTBS LAW LLP**<br>Michael L. Tuchin<br>Robert J. Pfister<br>Samuel M. Kidder<br>Nir Maoz<br>1801 Century Park East, 26th Floor<br>Los Angeles, California 90067<br>Tel: (310) 407-4000<br>Fax: (310) 407-9090<br>Email: mtuchin@ktbslaw.com<br>　　　rpfister@ktbslaw.com<br>　　　skidder@ktbslaw.com<br>　　　nmaoz@ktbslaw.com |
| Atlanta International Insurance Company (as successor in interest to Drake Insurance Company); AIG Property Casualty Company (f/k/a Birmingham Fire Insurance Company of Pennsylvania); AIG Europe S.A. (as successor in interest to Union Atlantique d'Assurances S.A) ; AIU Insurance Company; ASR Schadeverzekering N.V. (as successor in interest to Assurantiekoor Van Wijk & Co.); Granite State Insurance Company; The Insurance Company of the State of Pennsylvania; Lexington Insurance Company; National Union Fire Insurance Company of Pittsburgh, Pa.; New Hampshire Insurance Company; The North River Insurance Company; Starr Indemnity & Liability Company (as successor in interest to Republic Insurance Company); N.V. Schadeverzekeringsmaatschappij Maas Lloyd (individually and as successor in interest to policies subscribed in favor of Johnson & Johnson by N.V. Rotterdamse Assurantiekas, n/k/a De Ark); and Rheinland Versicherungen (as successor in interest only to the subscriptions of the former Dutch company Rheinland Verzekeringen) | **TRIF & MODUGNO, LLC**<br>Louis Modugno<br>89 Headquarters Plaza, Suite 1201<br>Morristown, New Jersey 07960<br>Tel: (973) 547-3611<br>Fax: (973) 554-1220<br>Email: lmodugno@tm-firm.com<br><br>**KATTEN MUCHIN ROSENMAN LLP**<br>Shaya Rochester<br>Katherine Scherling<br>575 Madison Avenue<br>New York, NY 10022<br>Tel: (212) 940-8800<br>Fax: (212) 940-8776<br>Email: shaya.rochester@katten.com<br>　　　katherine.scherling@katten.com<br><br>**MENDES & MOUNT LLP**<br>Eileen McCabe<br>Stephen Roberts<br>750 Seventh Avenue<br>New York, NY 10019<br>Tel: (212) 261-8000<br>Fax: (212) 261-8750<br>Email: eileen.mccabe@mendes.com<br>　　　stephen.roberts@mendes.com |

*[signatures follow]*

8

A84

Date: March 7, 2022

**SHERMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY, P.A.**

*/s/ Arthur J. Abramowitz*

Arthur J. Abramowitz
Ross J. Switkes
Sherman, Silverstein, Kohl, Rose &
Podolsky, P.A.
308 Harper Drive, Suite 200
Moorestown, NJ 08057
Tel: (856) 662-0700
aabramowitz@shermansilverstein.com
rswitkes@shermansilverstein.com

*Proposed Local Counsel to the Official
Committee of Talc Claimants II*

**WEITZ & LUXENBERG, P.C.**

*/s/ Lisa Nathanson Busch*

Lisa Nathanson Busch
700 Broadway
New York, NY 10083
Tel: (212) 558-5500
lbusch@weitzlux.com

*Counsel to Patricia Cook*

**LEX NOVA LAW, LLC**

*/s/ E. Richard Dressel*

E. Richard Dressel
10 E. Stow Rd., Suite 250
Marlton, NJ 08053
Tel: (856) 382-8550
rdressel@lexnovalaw.com

*Counsel to Evan Plotkin*

**LEVY KONIGSBERG LLP**

*/s/ Jerome H. Block*

Jerome H. Block
605 Third Avenue, 33rd Floor
New York, NY 10158
Tel: (212) 605-6200
jblock@levylaw.com

9

A85

*Counsel to Randy Derouen*

**SAIBER LLC**

*/s/ Marc E. Wolin*
Marc E. Wolin
John M. August
18 Columbia Turnpike, Suite 200
Florham Park, NJ 07932
Tel: (973) 622-8401
mwolin@saiber.com
jaugust@saiber.com

*Counsel to Kristie Doyle, as estate
representative of Dan Doyle*

**MAUNE RAICHLE HARTLEY
FRENCH & MUDD LLC**

*/s/ Suzanne M. Ratcliffe*
Suzanne M. Ratcliffe
150 West 30th Street, Suite 201
New York, NY 10001
Tel: (800) 358-5922
sratcliffe@mrhfmlaw.com

*Counsel to Katherine Tollefson*

**KARST & von OISTE, LLP**

*/s/ David A. Chandler*
David A. Chandler
505 Main Street
Port Jefferson, NY 11777
Tel: (855) 970-9988
dac@karstvonoiste.com

*Counsel to Tonya Whetsel, as estate
representative of Brandon Whetsel*

A86

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>**GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>Matthew I.W. Baker, Esq.<br>dstolz@genovaburns.com<br>dclarke@genovaburns.com<br>mbaker@genovaburns.com<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ 07920<br>Tel: (973) 467-2700<br>Fax: (973) 467-8126<br>*Local Counsel to the Official Committee of*<br>*Talc Claimants I* | **BROWN RUDNICK LLP**<br>David J. Molton, Esq.<br>Robert J. Stark, Esq.<br>Michael S. Winograd, Esq.<br>dmolton@brownrudnick.com<br>rstark@brownrudnick.com<br>mwinograd@brownrudnick.com<br>Seven Times Square<br>New York, NY 10036<br>Tel : (212) 209-4800<br>Fax : (212) 209-4801<br><br>and<br><br>Jeffrey L. Jonas, Esq.<br>Sunni P. Beville, Esq.<br>Shari I. Dwoskin, Esq.<br>jjonas@brownrudnick.com<br>sbeville@brownrudnick.com<br>sdwoskin@brownrudnick.com<br>One Financial Center<br>Boston, MA 02111<br>Tel: (617) 856-8200<br>Fax: (617) 856-8201<br>*Co-Counsel for the Official Committee of*<br>*Talc Claimants I* |
| **OTTERBOURG PC**<br>Melanie L. Cyganowski, Esq.<br>Adam C. Silverstein, Esq.<br>Jennifer S. Feeney, Esq.<br>mcyganowski@otterbourg.com<br>asilverstein@otterbourg.com<br>jfeeney@otterbourg.com<br>230 Park Avenue<br>New York, NY 10169<br>Tel: (212) 905-3628<br>Fax: (212) 682-6104<br>*Co-Counsel for the Official Committee of*<br>*Talc Claimants I* | **PARKINS LEE & RUBIO LLP**<br>Leonard M. Parkins, Esq.<br>Charles M. Rubio, Esq.<br>lparkins@parkinslee.com<br>crubio@parkinslee.com<br>Pennzoil Place<br>700 Milan St., Suite 1300<br>Houston, TX 77002<br>Tel: (713) 715-1666<br>*Special Counsel to the Official Committee of*<br>*Talc Claimants I* |

| | |
|---|---|
| In Re: | Chapter 11 |
| **LTL MANAGEMENT, LLC,**[1] | Case No.: 21-30589 (MBK) |
| Debtor. | Honorable Michael B. Kaplan |

## <u>NOTICE OF APPEAL AND STATEMENT OF ELECTION</u>

### <u>Part 1: Identify the Appellant(s)</u>

1.    **Names(s) of appellant(s):**  The Official Committee of Talc Claimants I.[2]

2.    **Position of appellant(s) in the bankruptcy case that is the subject of this appeal:**  Appellant is an official committee of tort claimants in the underlying bankruptcy case. Appellant is also a movant with respect to the motion to dismiss the underlying bankruptcy proceeding.

---

[1]    The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

[2]    The *Motion of the Official Committee of Talc Claimants to Dismiss Debtor's Chapter 11 Case* (Dkt. 632) (the "<u>Motion</u>") was filed by the original Official Committee of Talc Claimants (the "<u>Original TCC</u>") on December 1, 2021.  On December 23, 2021, the United States Trustee filed a notice (Dkt. 965) appointing the Official Committee of Talc Claimants I ("<u>TCC I</u>") and the Official Committee of Talc Claimants II ("<u>TCC II</u>") in place of the Original TCC.  By Stipulation and Order, entered January 21, 2022 (Dkt. 1226), all pleadings and motions filed by the Original TCC, including the Motion, were deemed to be filed by each of TCC I and TCC II, and each of TCC I and TCC II were permitted to prosecute all such pleadings and motions.  On January 26, 2022, the Bankruptcy Court entered an order (Dkt. 1273) reinstating the Original TCC but staying the effect of its ruling through March 8, 2022.  On March 8, 2022, the Court issued a bench ruling staying the reinstatement of the Original TCC and extending the existence of TCC I and TCC II through and including April 12, 2022.  As such, TCC I and TCC II have filed separate notices of appeal.  Also during the March 8 hearing, the parties agreed to stipulate that the filings by TCC I and TCC II will be deemed to have filed by the Original TCC if the Original TCC is reinstated in the future.

**Part 2: Identify the subject of this appeal**

1.    **Describe the judgment, order, or decree appealed from:** Appellant, pursuant to 28 U.S.C. § 158(a) and Federal Rules of Bankruptcy Procedure 8001(a), hereby gives notice of appeal to the United States District Court for the District of New Jersey from each and every part of the opinion and order of the United States Bankruptcy Court for the District of New Jersey as follows:

(a)    the Memorandum Opinion denying the motions filed by the Official Committee of Tort Claimants and Arnold & Itkin LLP[3] to dismiss the Debtor's Chapter 11 case (Dkt. 1572) (the "Memorandum Opinion", annexed hereto as **Exhibit A**); and

(b)    the Order Denying Motions to Dismiss, which denied the motions filed by the Official Committee of Tort Claimants[4] and Arnold & Itkin, LLP[5] to dismiss Debtor's Chapter 11 case (Dkt. 1603) (the "Order", annexed hereto as **Exhibit B**).

2.    **State the date on which the judgment, order, or decree was entered:** The Memorandum Opinion was entered on February 25, 2022 and the Order was entered on March 2, 2022.

**Part 3: Identify the other parties to the appeal:**

**List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys:**

| Party | Attorneys |
|---|---|
| Appellant-Movant: the Official Committee of Talc Claimants I | **GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>Matthew I.W. Baker, Esq. |

---

[3]    The Memorandum Opinion notes that, in addition to the motions to dismiss filed by the Official Committee of Tort Claimants and Arnold & Itkin, LLP, a motion to dismiss and joinder was filed by Aylstock, Witkin, Kreis & Overholtz, PLLC (Dkt. 1003) and a joinder was filed by the Barnes Law Group (Dkt. 1092).

[4]    Dkt. 632.

[5]    Dkt. 766.

dstolz@genovaburns.com
dclarke@genovaburns.com
mbaker@genovaburns.com
110 Allen Road, Suite 304
Basking Ridge, NJ 07920
Tel: (973) 467-2700
Fax: (973) 467-8126

**BROWN RUDNICK LLP**
David J. Molton, Esq.
Robert J. Stark, Esq.
Michael S. Winograd, Esq.
dmolton@brownrudnick.com
rstark@brownrudnick.com
mwinograd@brownrudnick.com
Seven Times Square
New York, NY 10036
Tel : (212) 209-4800
Fax : (212) 209-4801

and

Jeffrey L. Jonas, Esq.
Sunni P. Beville, Esq.
Shari I. Dwoskin, Esq.
jjonas@brownrudnick.com
sbeville@brownrudnick.com
sdwoskin@brownrudnick.com
One Financial Center
Boston, MA 02111
Tel: (617) 856-8200
Fax: (617) 856-8201

**OTTERBOURG PC**
Melanie L. Cyganowski, Esq.
Adam C. Silverstein, Esq.
Jennifer S. Feeney, Esq.
mcyganowski@otterbourg.com
asilverstein@otterbourg.com
jfeeney@otterbourg.com
230 Park Avenue
New York, NY 10169
Tel: (212) 905-3628
Fax: (212) 682-6104

4

A90

| | |
|---|---|
| | **PARKINS LEE & RUBIO LLP**<br>Leonard M. Parkins, Esq.<br>Charles M. Rubio, Esq.<br>lparkins@parkinslee.com<br>crubio@parkinslee.com<br>Pennzoil Place<br>700 Milan St., Suite 1300<br>Houston, TX 77002<br>Tel: (713) 715-1666 |
| Appellee: LTL Management, LLC | **WOLLMUTH MAHER & DEUTSCH LLP**<br>Paul R. DeFilippo, Esq.<br>pdefilippo@wmd-law.com<br>500 Fifth Avenue<br>New York, NY 10110<br>Tel: (212) 382-3300<br>Fax: (212) 382-0050<br><br>**JONES DAY**<br>Gregory M. Gordon, Esq.<br>Brad B. Erens, Esq.<br>Dan B. Prieto, Esq.<br>Amanda Rush, Esq.<br>gmgordon@jonesday.com<br>bberens@jonesday.com<br>dbprieto@jonesday.com<br>asrush@jonesday.com<br>2727 N. Harwood Street<br>Dallas, TX 75201<br>Tel: (214) 220-3939<br>Fax: (214) 969-5100 |
| Movant: Arnold & Itkin, LLP, on behalf of certain claimants | **PACHULSKI STANG ZIEHL & JONES LLP**<br>Laura Davis Jones<br>Karen B. Dine<br>Colin R. Robinson<br>Peter J. Keane<br>ljones@pszjlaw.com<br>kdine@pszjlaw.com<br>crobinson@pszjlaw.com<br>pkeane@pszjlaw.com<br>919 N. Market Street, 17th Floor<br>Wilmington, DE  19801<br>Tel: (302) 652-4100<br>Fax: (302) 652-4400 |

A91

| | |
|---|---|
| Movant: Aylstock, Witkin, Kreis & Overholtz, PLLC, on behalf of certain claimants | **OFFIT KURMAN, P.A.**<br>Paul J. Winterhalter, Esq.<br>pwinterhalter@offitkurman.com<br>99 Wood Avenue South, Suite 302<br>Iselin, New Jersey 08830<br>Tel: (267) 338-1370<br>Fax: (267) 338-1335<br><br>**KTBS LAW LLP**<br>Michael L. Tuchin, Esq.<br>Robert J. Pfister, Esq.<br>Samuel M. Kidder, Esq.<br>Nir Maoz, Esq.<br>mtuchin@ktbslaw.com<br>rpfister@ktbslaw.com<br>skidder@ktbslaw.com<br>nmaoz@ktbslaw.com<br>1801 Century Park East, 26th Floor<br>Los Angeles, California 90067<br>Tel: (310) 407-4000<br>Fax: (310) 407-9090 |
| Movant: Barnes Law Group, on behalf of certain claimants | **COLE SCHOTZ P.C.**<br>Felice Yudkin, Esq.<br>FYudkin@coleschotz.com<br>Court Plaza North<br>25 Main Street<br>P.O. Box 800<br>Hackensack, New Jersey 07602-800<br>Tel: (201) 489-3000<br>Fax: (201) 489-1536<br><br>and<br><br>Mark Tsukerman, Esq.<br>mtsukerman@coleschotz.com<br>1325 Avenue of the Americas, 19th Floor<br>New York, New York 10019-6079<br>Tel: (212) 752-8000<br>Fax: (646) 563-7948 |
| Movant: Official Committee of Talc Claimants II | **COOLEY LLP**<br>Cullen D. Speckhart, Esq.<br>Michael Klein, Esq.<br>Erica J. Richards, Esq.<br>Lauren A. Reichardt, Esq. |

|  | Evan Lazerowitz, Esq.<br>cspeckhart@cooley.com<br>mklein@cooley.com<br>erichards@cooley.com<br>lreichardt@cooley.com<br>elazerowitz@cooley.com<br>55 Hudson Yards<br>New York, NY 10001<br>Tel: (212) 479-6000<br>Fax: (212) 479-6275<br><br>**BAILEY GLASSER LLP**<br>Brian A. Glasser, Esq.<br>Thomas B. Bennett, Esq.<br>Kevin W. Barrett, Esq.<br>Maggie B. Burrus, Esq.<br>bglasser@baileyglasser.com<br>tbennett@baileyglasser.com<br>kbarrett@baileyglasser.com<br>mburrus@baileyglasser.com<br>105 Thomas Jefferson St. NW Suite 540<br>Washington, DC 20007<br>Tel: (202) 463-2101<br>Fax: (202) 463-2103<br><br>**MASSEY & GAIL LLP**<br>Jonathan S. Massey, Esq.<br>jmassey@masseygail.com<br>1000 Maine Ave. SW, Suite 450<br>Washington, DC 20024<br>Tel: (202) 652-4511<br>Fax: (312) 379-0467<br><br>**WALDREP WALL BABCOCK & BAILEY PLLC**<br>Thomas W. Waldrep, Jr., Esq.<br>Kevin L. Sink, Esq.<br>James C. Lanik, Esq.<br>Jennifer B. Lyday, Esq.<br>notice@waldrepwall.com<br>370 Knollwood Street Suite 600<br>Winston-Salem, NC 27103<br>Tel: (336) 717-1280<br>Fax: (336) 717-1340 |
|--|--|

7

A93

| | |
|---|---|
| | **SHERMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY, P.A.**<br>Arthur J. Abramowitz, Esq.<br>Alan I. Moldoff, Esq.<br>Ross J. Switkes, Esq.<br>abramowitz@shermansilverstein.com<br>amoldoff@shermansilverstein.com<br>rswitkes@shermansilverstein.com<br>308 Harper Drive, Suite 200<br>Moorestown, New Jersey 08057<br>Tel: (856) 662-0700 |
| Interested party: DeSanto Canadian Class Action Creditors | **LITE DEPALMA GREENBERG & AFANADOR, LLC**<br>Allen J. Underwood II, Esq.<br>aunderwood@litedepalma.com<br>570 Broad Street, Suite 1201<br>Newark, NJ 07102<br>Tel: (973) 623-3000<br>Fax: (973) 623-0858 |
| Interested party: United States Trustee | **THE OFFICE OF THE UNITED STATES TRUSTEE, ANDREW R. VARA, UNITED STATES TRUSTEE, REGIONS 3 & 9**<br>Mitchell B. Hausman, Esq.<br>Jeffrey M. Sponder, Esq.<br>Lauren Bielskie, Esq.<br>Robert J. Schneider, Jr., Esq.<br>mitchell.b.hausman@usdoj.gov<br>jeffrey.m.sponder@usdoj.gov<br>lauren.bielskie@usdoj.gov<br>robert.j.schneider@usdoj.gov<br>One Newark Center, Suite 2100<br>Newark, NJ 07102<br>Tel: (973) 645-3014<br>Fax: (973) 645-5993 |

**Part 4: Not Applicable (No BAP in this District)**

A94

**Part 5: Signature**

DATED this 10th day of March 2022.

Respectfully submitted,

**GENOVA BURNS, LLC**

By: ___*/s/  Daniel M. Stolz*_____.
Daniel M. Stolz, Esq.
Donald W. Clark, Esq.
dstolz@genovaburns.com
dclarke@genovaburns.com
110 Allen Road, Suite 304
Basking Ridge, NJ 07920
Tel: (973) 533-0777
Fax: (973) 467-8126

*Local Counsel to the Official Committee of
Talc Claimants I*

9

A95

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in compliance with D.N.J. LBR 9004-1(b)**

**PACHULSKI STANG ZIEHL & JONES LLP**
Laura Davis Jones
Karen B. Dine
Colin R. Robinson
Peter J. Keane
919 N. Market Street, 17th Floor
Wilmington, DE  19801
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email:  ljones@pszjlaw.com
  kdine@pszjlaw.com
  crobinson@pszjlaw.com
  pkeane@pszjlaw.com

*Counsel to Arnold & Itkin LLP*

| | |
|---|---|
| In re: | Chapter 11 |
| LTL MANAGEMENT LLC, | Case No. 21-30589 (MBK) |
| Debtor. [1] | |

## NOTICE OF APPEAL

NOTICE IS HEREBY GIVEN that Arnold & Itkin LLP ("Arnold & Itkin"), on behalf of

certain personal injury claimants represented by Arnold & Itkin (the "Movants"), hereby appeals

to the United States District Court for the District of New Jersey, pursuant to 28 U.S.C. § 158(a)

and Rules 8002 and 8003 of the Federal Rules of Bankruptcy Procedure, from the Order entered

on March 2, 2022 [D.I. 1603] (the "Order"), denying the *Motion to Dismiss Bankruptcy Case* [D.I.

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

766] filed on December 9, 2021, which Order is based upon the Opinion, entered February 25, 2022 [D.I. 1572] (the "Opinion").

A copy of the Order is attached hereto as **Exhibit A** and a copy of the Opinion is attached hereto as **Exhibit B**.

The parties to the Order and Opinion appealed from, and the names, addresses and telephone numbers of their respective attorneys are as follows:

| PARTIES | ATTORNEYS |
|---|---|
| Arnold & Itkin LLP | **PACHULSKI STANG ZIEHL & JONES LLP**<br>Laura Davis Jones<br>Karen B. Dine<br>Colin R. Robinson<br>Peter J. Keane<br>919 N. Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, DE 19899-8705 (Courier 19801)<br>Telephone: (302) 652-4100<br>Facsimile: (302) 652-4400<br>Email: ljones@pszjlaw.com<br>       kdine@pszjlaw.com<br>       crobinson@pszjlaw.com<br>       pkeane@pszjlaw.com<br><br>*Counsel for Arnold & Itkin LLP* |
| Debtor LTL Management, LLC | WOLLMUTH MAHER & DEUTSCH LLP<br>Paul R. DeFilippo, Esq.<br>500 Fifth Avenue<br>New York, New York 10110<br>Telephone: (212) 382-3300<br>Facsimile: (212) 382-0050<br>pdefilippo@wmd-law.com<br><br>JONES DAY<br>Gregory M. Gordon, Esq.<br>Brad B. Erens, Esq.<br>Dan B. Prieto, Esq. |

2

Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com

(Admitted pro hac vice)

ATTORNEYS FOR DEBTOR

| | |
|---|---|
| Office of the United States Trustee | UNITED STATES DEPARTMENT OF JUSTICE<br>OFFICE OF THE UNITED STATES TRUSTEE<br>ANDREW R. VARA UNITED STATES<br>TRUSTEE, REGIONS 3 & 9<br>Jeffrey M. Sponder, Esq.<br>Lauren Bielskie, Esq.<br>Robert J. Schneider, Jr., Esq.<br>One Newark Center, Suite 2100<br>Newark, NJ 07102<br>Telephone: (973) 645-3014<br>Fax: (973) 645-5993<br>E-mail: jeffrey.m.sponder@usdoj.gov<br>lauren.bielskie@usdoj.gov<br>robert.j.schneider@usdoj.gov |
| Official Committee of Talc<br>Claimants I | GENOVA BURNS LLC<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>dstolz@genovaburns.com<br>dclarke@genovaburns.com<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ 07920<br>Tel: (973) 467-2700<br>Fax: (973) 467-8126<br>Local Counsel to the Official Committee of Talc<br>Claimants I<br><br>BROWN RUDNICK LLP<br>David J. Molton, Esq.<br>Robert J. Stark, Esq.<br>Michael S. Winograd, Esq.<br>dmolton@brownrudnick.com |

3

DOCS_DE:238556.1 05471/002

rstark@brownrudnick.com
mwinograd@brownrudnick.com
Seven Times Square
New York, NY 10036
Tel: (212) 209-4800
Fax: (212) 209-4801

and

Jeffrey L. Jonas, Esq.
Sunni P. Beville, Esq.
jjonas@brownrudnick.com
sbeville@brownrudnick.com
One Financial Center
Boston, MA 02111
Tel: (617) 856-8200
Fax: (617) 856-8201
Co-Counsel for the Official Committee of Talc
Claimants I

OTTERBOURG PC
Melanie L. Cyganowski, Esq.
Adam C. Silverstein, Esq.
Jennifer S. Feeney, Esq.
mcyganowski@otterbourg.com
asilverstein@otterbourg.com
jfeeney@otterbourg.com
230 Park Avenue
New York, NY 10169
Tel: (212) 905-3628
Fax: (212) 682-6104
Co-Counsel for the Official Committee of Talc
Claimants I

Official Committee of Talc
Claimants II

SHERMAN, SILVERSTEIN, KOHL, ROSE &
PODOLSKY, P.A.
Arthur J. Abramowitz
Alan I. Moldoff
Ross J. Switkes
308 Harper Drive, Suite 200
Moorestown, NJ 08057
Tel: (856) 662-0700
Email: aabramowitz@shermansilverstein.com
amoldoff@shermansilverstein.com
rswitkes@shermansilverstein.com

4

A99

Proposed Local Counsel to the Official Committee
of Talc Claimants II

COOLEY LLP
Cullen D. Speckhart (admitted pro hac vice)
Michael Klein (admitted pro hac vice)
Erica J. Richards (admitted pro hac vice)
Lauren A. Reichardt (admitted pro hac vice)
Evan M. Lazerowitz
55 Hudson Yards
New York, NY 10001
Tel: (212) 479-6000
Fax: (212) 479-6275
Email: cspeckhart@cooley.com
mklein@cooley.com
erichards@cooley.com
lreichardt@cooley.com
elazerowitz@cooley.com
Proposed Co-Counsel to the Official Committee of
Talc Claimants II

BAILEY GLASSER LLP
Brian A. Glasser (admitted pro hac vice)
Thomas B. Bennett (admitted pro hac vice)
Kevin W. Barrett (admitted pro hac vice)
Maggie B. Burrus (admitted pro hac vice)
1055 Thomas Jefferson St. NW, Suite 540
Washington, DC 20007
Tel: (202) 463-2101
Fax: (202) 463-2103
Email: bglasser@baileyglasser.com
tbennett@baileyglasser.com
kbarrett@baileyglasser.com
mburrus@baileyglasser.com
Proposed Co-Counsel to the Official Committee of
Talc Claimants II

WALDREP WALL BABCOCK & BAILEY PLLC
Thomas W. Waldrep, Jr. (admitted pro hac vice)
Kevin L. Sink (admitted pro hac vice)
James C. Lanik (admitted pro hac vice)
Jennifer B. Lyday (admitted pro hac vice)
370 Knollwood Street, Suite 600
Winston-Salem, NC 27103
Tel: (336) 717-1280
Fax: (336) 717-1340

DOCS_DE:238556.1 05471/002

A100

Email: notice@waldrepwall.com
Proposed Co-Counsel to the Official Committee of
Talc Claimants II

MASSEY & GAIL LLP
Jonathan S. Massey (admitted pro hac vice)
1000 Maine Ave. SW, Suite 450
Washington, DC 20024
Tel: (202) 652-4511
Fax: (312) 379-0467
Email: jmassey@masseygail.com
Proposed Co-Counsel to the Official Committee of
Talc Claimants II

Aylstock, Witkin, Kreis & Overholtz,
PLLC

OFFIT KURMAN, P.A.
Paul J. Winterhalter
99 Wood Avenue South, Suite 302
Iselin, New Jersey 08830
Telephone: (267) 338-1370
Facsimile: (267) 338-1335
E-mail: pwinterhalter@offitkurman.com

KTBS LAW LLP
Michael L. Tuchin (pro hac vice)
Robert J. Pfister (pro hac vice)
Samuel M. Kidder (pro hac vice)
Nir Maoz (pro hac vice)
1801 Century Park East, 26th Floor
Los Angeles, California 90067
Telephone: (310) 407-4000
Facsimile: (310) 407-9090
Email: mtuchin@ktbslaw.com
rpfister@ktbslaw.com
skidder@ktbslaw.com
nmaoz@ktbslaw.com

Attorneys for Aylstock, Witkin, Kreis & Overholtz,
PLLC

6

A101

Dated: March 11, 2022

**PACHULSKI STANG ZIEHL & JONES LLP**

By: */s/ Colin R. Robinson*
Laura Davis Jones
Karen B. Dine
Colin R. Robinson
Peter J. Keane
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
        kdine@pszjlaw.com
        crobinson@pszjlaw.com
        pkeane@pszjlaw.com

*Counsel for Arnold & Itkin LLP*

DOCS_DE:238556.1 05471/002

A102

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>**Caption in Compliance with D.N.J. LBR 9004-1(b)** | |
| **COOLEY LLP**<br>Cullen D. Speckhart (admitted pro hac vice)<br>Ian Shapiro (admitted pro hac vice)<br>Russell Capone (admitted pro hac vice)<br>Michael Klein (admitted pro hac vice)<br>55 Hudson Yards<br>New York, NY 10001<br>Tel: (212) 479-6000<br>Fax: (212) 479-6275<br>Email: cspeckhart@cooley.com<br>　　　 ishapiro@cooley.com<br>　　　 rcapone@cooley.com<br>　　　 mklein@cooley.com<br><br>*Co-Counsel to the Official Committee of Talc*<br>*Claimants II* | **BAILEY GLASSER LLP**<br>Brian A. Glasser (admitted pro hac vice)<br>Thomas B. Bennett (admitted pro hac vice)<br>Kevin W. Barrett (admitted pro hac vice)<br>Maggie B. Burrus (admitted pro hac vice)<br>1055 Thomas Jefferson St. NW, Suite 540<br>Washington, DC 20007<br>Tel: (202) 463-2101<br>Fax: (202) 463-2103<br>Email: bglasser@baileyglasser.com<br>　　　 tbennett@baileyglasser.com<br>　　　 kbarrett@baileyglasser.com<br>　　　 mburrus@baileyglasser.com<br><br>*Co-Counsel to the Official Committee of Talc*<br>*Claimants II* |
| **WALDREP WALL BABCOCK & BAILEY PLLC**<br>Thomas W. Waldrep, Jr. (admitted pro hac vice)<br>Kevin L. Sink (admitted pro hac vice)<br>James C. Lanik (admitted pro hac vice)<br>Jennifer B. Lyday (admitted pro hac vice)<br>370 Knollwood Street, Suite 600<br>Winston-Salem, NC 27103<br>Tel: (336) 717-1280<br>Fax: (336) 717-1340<br>Email: notice@waldrepwall.com<br><br>*Co-Counsel to the Official Committee of Talc*<br>*Claimants II* | **MASSEY & GAIL LLP**<br>Jonathan S. Massey (admitted pro hac vice)<br>1000 Maine Ave. SW, Suite 450<br>Washington, DC 20024<br>Tel: (202) 652-4511<br>Fax: (312) 379-0467<br>Email: jmassey@masseygail.com<br><br>*Co-Counsel to the Official Committee of Talc*<br>*Claimants II* |
| **SHERMAN, SILVERSTEIN,**<br>**KOHL, ROSE & PODOLSKY, P.A.**<br>Arthur J. Abramowitz<br>Alan I. Moldoff<br>Ross J. Switkes<br>308 Harper Drive, Suite 200<br>Moorestown, NJ 08057<br>Tel: (856) 662-0700<br>Email: aabramowitz@shermansilverstein.com<br>　　　 amoldoff@shermansilverstein.com<br>　　　 rswitkes@shermansilverstein.com<br><br>*Local Counsel to the Official Committee of Talc*<br>*Claimants II* | |

| In re: | Chapter 11 |
| **LTL MANAGEMENT LLC,** | Case No.: 21-30589 (MBK) |
| Debtor. | Honorable Michael B. Kaplan |

<u>**AMENDED JOINT NOTICE OF APPEAL**</u>

**PLEASE TAKE NOTICE** that the Official Committee of Talc Claimants II ("TCC II"),
together with Patricia Cook, Evan Plotkin, Randy Derouen, Kristie Doyle as estate representative
of Dan Doyle, Katherine Tollefson, Tonya Whetsel as estate representative of Brandon Whetsel,
Giovanni Sosa, and Jan Deborah Michelson-Boyle, hereby appeal to the United States District
Court for the District of New Jersey pursuant to 28 U.S.C. §158 and rules 8002 and 8003 of the
Federal Rules of Bankruptcy Procedure, from the order (D.I. 1603) (the "<u>Order</u>") denying motions
to dismiss, entered on March 2, 2022 by the United States Bankruptcy Court for the District of
New Jersey.[1]

**PLEASE TAKE FURTHER NOTICE** that a copy of the Order is attached hereto as
**<u>Exhibit A</u>**.

**PLEASE TAKE FURTHER NOTICE** that the names of all parties to the Order appealed
from and the names, addresses and telephone numbers of their respective attorneys are as follows:

| <u>**Party**</u> | <u>**Counsel**</u> |
|---|---|
| Official Committee of Talc Claimants II | **COOLEY LLP**<br>Cullen D. Speckhart<br>Ian Shapiro<br>Russell Capone<br>Michael Klein<br>55 Hudson Yards<br>New York, NY 10001<br>Tel: (212) 479-6000<br>Fax: (212) 479-6275<br>Email: cspeckhart@cooley.com |

---

[1] This filing is an amendment to the notice of appeal originally filed on March 7, 2022 at D.I. 1652.

A104

ishapiro@cooley.com
rcapone@cooley.com
mklein@cooley.com

**BAILEY GLASSER LLP**
Brian A. Glasser
Thomas B. Bennett
Kevin W. Barrett
Maggie B. Burrus
1055 Thomas Jefferson St. NW, Suite 540
Washington, DC 20007
Tel: (202) 463-2101
Fax: (202) 463-2103
Email: bglasser@baileyglasser.com
        tbennett@baileyglasser.com
        kbarrett@baileyglasser.com
        mburrus@baileyglasser.com

**MASSEY & GAIL LLP**
Jonathan S. Massey
1000 Maine Ave. SW, Suite 450
Washington, DC 20024
Tel: (202) 652-4511
Fax: (312) 379-0467
Email: jmassey@masseygail.com

**WALDREP WALL BABCOCK &
BAILEY PLLC**
Thomas W. Waldrep, Jr.
Kevin L. Sink
James C. Lanik
Jennifer B. Lyday
370 Knollwood Street, Suite 600
Winston-Salem, NC 27103
Tel: (336) 717-1280
Fax: (336) 717-1340
Email: notice@waldrepwall.com

**SHERMAN, SILVERSTEIN, KOHL,
ROSE & PODOLSKY, P.A.**
Arthur J. Abramowitz
Alan I. Moldoff
Ross J. Switkes
308 Harper Drive, Suite 200
Moorestown, NJ 08057
Tel: (856) 662-0700

3

A105

| | Email: aabramowitz@shermansilverstein.com |
| | amoldoff@shermansilverstein.com |
| | rswitkes@shermansilverstein.com |
| Patricia Cook | **WEITZ & LUXENBERG, P.C.** |
| | Perry Weitz |
| | Lisa Nathanson Busch |
| | Justine Delaney |
| | 700 Broadway |
| | New York, NY 10083 |
| | Tel: (212) 558-5500 |
| | Email: lbusch@weitzlux.com |
| | pw@weitzlux.com |
| | jdelaney@weitzlux.com |
| Evan Plotkin | **LEX NOVA LAW, LLC** |
| | E. Richard Dressel |
| | 10 E. Stow Rd., Suite 250 |
| | Marlton, NJ 08053 |
| | Tel. (856) 382-8550 |
| | Email: rdressel@lexnovalaw.com |
| | |
| | **DEAN OMAR BRANHAM SHIRLEY, LLP** |
| | Trey Branham |
| | 302 N. Market Street, Suite 300 |
| | Dallas, TX 75202 |
| | Tel: (214) 722-5990 |
| | Email: tbranham@dobslegal.com |
| Giovanni Sosa | **LEX NOVA LAW, LLC** |
| | E. Richard Dressel |
| | 10 E. Stow Rd., Suite 250 |
| | Marlton, NJ 08053 |
| | Tel. (856) 382-8550 |
| | Email: rdressel@lexnovalaw.com |
| | |
| | **COONEY & CONWAY** |
| | John Cooney |
| | Kathy Byrne |
| | 120 N. Lasalle Street, Suite 3000 |
| | Chicago, IL 60602 |
| | Tel: (800) 322-5573 |
| | Email: kbyrne@cooneyconway.com |

4

A106

| | |
|---|---|
| Randy Derouen | **LEVY KONIGSBERG LLP**<br>Moshe Maimon<br>Jerome H. Block<br>Audrey Perlman Raphael<br>605 Third Avenue, 33rd Floor<br>New York, NY 10158<br>Tel: (212) 605-6200<br>Email: MMaimon@levylaw.com<br>      JBlock@levylaw.com<br>      ARaphael@levylaw.com |
| Kristie Doyle, as estate representative of Dan Doyle | **SAIBER LLC**<br>Marc E. Wolin<br>John M. August<br>18 Columbia Turnpike, Suite 200<br>Florham Park, NJ 07932<br>Tel: (973) 622-8401<br>Email: mwolin@saiber.com<br>      jaugust@saiber.com<br><br>**KAZAN, McCLAIN, SATTERLEY & GREENWOOD**<br>A Professional Law Corporation<br>Steven Kazan, Esq.<br>Joseph D. Satterley, Esq.<br>Denyse F. Clancy, Esq.<br>Jack London Market<br>55 Harrison Street, Suite 400<br>Oakland, California 94607<br>Tel: (510) 302-1000<br>Email: skazan@kazanlaw.com<br>      JSatterley@kazanlaw.com<br>      DClancy@kazanlaw.com |
| Katherine Tollefson<br><br>Jan Deborah Michelson-Boyle | **MAUNE RAICHLE HARTLEY FRENCH & MUDD LLC**<br>Suzanne M. Ratcliffe<br>150 West 30th Street, Suite 201<br>New York, NY 10001<br>Tel: (800) 358-5922<br>Email: sratcliffe@mrhfmlaw.com<br><br>Neil J. Maune<br>Marcus E. Raichle Jr.<br>Christopher McKean<br>Clayton L. Thompson<br>1015 Locust Street |

A107

| | |
|---|---|
| | St. Louis, MO 63191<br>Tel: (800) 358-5922<br>Email: nmaune@mrhfmlaw.com<br>mraichle@mrhfmlaw.com<br>cmckean@mrhfmlaw.com<br>cthompson@mrhfmlaw.com |
| Tonya Whetsel, as estate representative of Brandon Whetsel | **KARST & von OISTE, LLP**<br>David A. Chandler<br>505 Main Street<br>Port Jefferson, NY 11777<br>Tel: (855) 970-9988<br>Email: dac@karstvonoiste.com |
| LTL Management, LLC | **WOLLMUTH MAHER & DEUTSCH LLP**<br>Paul R. DeFilippo<br>500 Fifth Avenue<br>New York, NY 10110<br>Tel: (212) 382-3300<br>Fax: (212) 382-0050<br>Email: pdefilippo@wmd-law.com<br><br>**JONES DAY**<br>Gregory M. Gordon<br>Brad B. Erens<br>Dan B. Prieto<br>Amanda Rush<br>2727 N. Harwood Street<br>Dallas, TX 75201<br>Tel: (214) 220-3939<br>Fax: (214) 969-5100<br>Email: gmgordon@jonesday.com<br>bberens@jonesday.com<br>dbprieto@jonesday.com<br>arush@jonesday.com |
| Official Committee of Talc Claimants I | **GENOVA BURNS LLC**<br>Daniel M. Stolz<br>Donald W. Clarke<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ 07920<br>Tel: (973) 467-2700<br>Fax: (973) 467-8126<br>Email: dstolz@genovaburns.com<br>dclarke@genovaburns.com |

6

A108

|  | **BROWN RUDNICK LLP** |
|--|-----------------------|
|  | David J. Molton |
|  | Robert J. Stark |
|  | Michael S. Winograd |
|  | Seven Times Square |
|  | New York, NY 10036 |
|  | Tel: (212) 209-4800 |
|  | Fax: (212) 209-4801 |
|  | Email: dmolton@brownrudnick.com |
|  | rstark@brownrudnick.com |
|  | mwinograd@brownrudnick.com |
|  |  |
|  | Jeffrey L. Jonas |
|  | Sunni P. Beville |
|  | One Financial Center |
|  | Boston, MA 02111 |
|  | Tel: (617) 856-8200 |
|  | Fax: (617) 856-8201 |
|  | Email: jjonas@brownrudnick.com |
|  | sbeville@brownrudnick.com |
|  |  |
|  | **OTTERBOURG PC** |
|  | Melanie L. Cyganowski |
|  | Adam C. Silverstein |
|  | Jennifer S. Feeney |
|  | 230 Park Avenue |
|  | New York, NY 10169 |
|  | Tel: (212) 905-3628 |
|  | Fax: (212) 682-6104 |
|  | Email: mcyganowski@otterbourg.com |
|  | asilverstein@otterbourg.com |
|  | jfeeney@otterbourg.com |
|  |  |
|  | **PARKINS LEE & RUBIO LLP** |
|  | Pennzoil Place |
|  | 700 Milan Street, Suite 1300 |
|  | Houston, TX 77002 |
|  | Tel: (713) 715-1666 |
|  | Email: lparkins@parkinslee.com |
|  | crubio@parkinslee.com |
| Arnold & Itkin LLP | **PACHULSKI STANG ZIEHL & JONES LLP** |
|  | Laura Davis Jones |
|  | Karen B. Dine |

A109

| | Colin R. Robinson<br>Peter J. Keane<br>919 N. Market Street, 17th Floor<br>Wilmington, DE 19801<br>Tel: (302) 652-4100<br>Fax: (302) 652-4400<br>Email: ljones@pszjlaw.com<br>        kdine@pszjlaw.com<br>        crobinson@pszjlaw.com<br>        pkeane@pszjlaw.com |
|---|---|
| Aylstock, Witkin, Kreis & Overholtz, PLLC | **OFFIT KURMAN, P.A.**<br>Paul J. Winterhalter<br>99 Wood Avenue South, Suite 302<br>Iselin, New Jersey 08830<br>Tel: (267) 338-1370<br>Fax: (267) 338-1335<br>Email: pwinterhalter@offitkurman.com<br><br>**KTBS LAW LLP**<br>Michael L. Tuchin<br>Robert J. Pfister<br>Samuel M. Kidder<br>Nir Maoz<br>1801 Century Park East, 26th Floor<br>Los Angeles, California 90067<br>Tel: (310) 407-4000<br>Fax: (310) 407-9090<br>Email: mtuchin@ktbslaw.com<br>        rpfister@ktbslaw.com<br>        skidder@ktbslaw.com<br>        nmaoz@ktbslaw.com |
| Claimants Represented by the Barnes Law Group | **COLE SCHOTZ P.C.**<br>Felice Yudkin<br>Court Plaza North<br>25 Main Street<br>P.O. Box 800<br>Hackensack, NJ 07602-0800<br>Tel: (201) 489-3000<br>Fax: (201) 489-1536<br>Email: fyudkin@coleschotz.com<br><br>Mark Tsukerman<br>1325 Avenue of the Americas, 19th Floor<br>New York, NY 10019-6079 |

A110

| | |
|---|---|
| | Tel: (212) 752-8000<br>Fax: (646) 563-7948<br>Email: mtsukerman@coleschotz.com |
| DeSanto Canadian Class Action Creditors | **LITE DEPALMA GREENBERG & AFANADOR, LLC**<br>Allen J. Underwood II<br>570 Broad Street, Suite 1201<br>Newark, NJ 07102<br>Tel: (973) 623-3000<br>Email: aunderwood@litedepalma.com |
| Andrew R. Vara, United States Trustee, District of New Jersey | **THE OFFICE OF THE UNITED STATES TRUSTEE, DISTRICT OF NEW JERSEY**<br>Martha R. Hildebrandt, Assistant United States Trustee<br>Jeffrey M. Sponder, Trial Attorney<br>One Newark Center, Suite 2100<br>Newark, NJ 07102<br>Tel: (973) 645-3014<br>Fax: (973) 645-5993 |

*[signatures follow]*

9

A111

Date: March 16, 2022

**SHERMAN, SILVERSTEIN, KOHL,
ROSE & PODOLSKY, P.A.**

*/s/ Arthur J. Abramowitz*
Arthur J. Abramowitz
Ross J. Switkes
Sherman, Silverstein, Kohl, Rose &
Podolsky, P.A.
308 Harper Drive, Suite 200
Moorestown, NJ 08057
Tel: (856) 662-0700
aabramowitz@shermansilverstein.com
rswitkes@shermansilverstein.com

*Local Counsel to the Official Committee of
Talc Claimants II*

**WEITZ & LUXENBERG, P.C.**

*/s/ Lisa Nathanson Busch*
Lisa Nathanson Busch
700 Broadway
New York, NY 10083
Tel: (212) 558-5500
lbusch@weitzlux.com

*Counsel to Patricia Cook*

**LEX NOVA LAW, LLC**

*/s/ E. Richard Dressel*
E. Richard Dressel
10 E. Stow Rd., Suite 250
Marlton, NJ 08053
Tel: (856) 382-8550
rdressel@lexnovalaw.com

*Counsel to Evan Plotkin and Giovanni Sosa*

**LEVY KONIGSBERG LLP**

*/s/ Jerome H. Block*
Jerome H. Block
605 Third Avenue, 33rd Floor
New York, NY 10158
Tel: (212) 605-6200

10

A112

jblock@levylaw.com

*Counsel to Randy Derouen*

**SAIBER LLC**

*/s/ Marc E. Wolin*
Marc E. Wolin
John M. August
18 Columbia Turnpike, Suite 200
Florham Park, NJ 07932
Tel: (973) 622-8401
mwolin@saiber.com
jaugust@saiber.com

*Counsel to Kristie Doyle, as estate
representative of Dan Doyle*

**MAUNE RAICHLE HARTLEY
FRENCH & MUDD LLC**

*/s/ Suzanne M. Ratcliffe*
Suzanne M. Ratcliffe
150 West 30th Street, Suite 201
New York, NY 10001
Tel: (800) 358-5922
sratcliffe@mrhfmlaw.com

*Counsel to Katherine Tollefson and Jan
Deborah Michelson-Boyle*

**KARST & von OISTE, LLP**

*/s/ David A. Chandler*
David A. Chandler
505 Main Street
Port Jefferson, NY 11777
Tel: (855) 970-9988
dac@karstvonoiste.com

*Counsel to Tonya Whetsel, as estate
representative of Brandon Whetsel*

11

A113

| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY Caption in Compliance with D.N.J. LBR 9004-1(b) | |
|---|---|
| **COOLEY LLP**<br>Cullen D. Speckhart (admitted pro hac vice)<br>Ian Shapiro (admitted pro hac vice)<br>Russell Capone (admitted pro hac vice)<br>Michael Klein (admitted pro hac vice)<br>55 Hudson Yards<br>New York, NY 10001<br>Tel: (212) 479-6000<br>Fax: (212) 479-6275<br>Email: cspeckhart@cooley.com<br>        ishapiro@cooley.com<br>        rcapone@cooley.com<br>        mklein@cooley.com<br><br>*Co-Counsel to the Official Committee of Talc Claimants II* | **BAILEY GLASSER LLP**<br>Brian A. Glasser (admitted pro hac vice)<br>Thomas B. Bennett (admitted pro hac vice)<br>Kevin W. Barrett (admitted pro hac vice)<br>Maggie B. Burrus (admitted pro hac vice)<br>1055 Thomas Jefferson St. NW, Suite 540<br>Washington, DC 20007<br>Tel: (202) 463-2101<br>Fax: (202) 463-2103<br>Email: bglasser@baileyglasser.com<br>        tbennett@baileyglasser.com<br>        kbarrett@baileyglasser.com<br>        mburrus@baileyglasser.com<br><br>*Co-Counsel to the Official Committee of Talc Claimants II* |
| **WALDREP WALL BABCOCK & BAILEY PLLC**<br>Thomas W. Waldrep, Jr. (admitted pro hac vice)<br>Kevin L. Sink (admitted pro hac vice)<br>James C. Lanik (admitted pro hac vice)<br>Jennifer B. Lyday (admitted pro hac vice)<br>370 Knollwood Street, Suite 600<br>Winston-Salem, NC 27103<br>Tel: (336) 717-1280<br>Fax: (336) 717-1340<br>Email: notice@waldrepwall.com<br><br>*Co-Counsel to the Official Committee of Talc Claimants II* | **MASSEY & GAIL LLP**<br>Jonathan S. Massey (admitted pro hac vice)<br>1000 Maine Ave. SW, Suite 450<br>Washington, DC 20024<br>Tel: (202) 652-4511<br>Fax: (312) 379-0467<br>Email: jmassey@masseygail.com<br><br>*Co-Counsel to the Committee of Talc Claimants II* |
| **SHERMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY, P.A.**<br>Arthur J. Abramowitz<br>Alan I. Moldoff<br>Ross J. Switkes<br>308 Harper Drive, Suite 200<br>Moorestown, NJ 08057<br>Tel: (856) 662-0700<br>Email: aabramowitz@shermansilverstein.com<br>        amoldoff@shermansilverstein.com<br>        rswitkes@shermansilverstein.com<br><br>*Local Counsel to the Official Committee of Talc Claimants II* | |

| In re: | Chapter 11 |
|---|---|
| **LTL MANAGEMENT LLC,** | Case No.: 21-30589 (MBK) |
| Debtor. | Honorable Michael B. Kaplan |
| **LTL MANAGEMENT LLC,** <br><br> Plaintiff, <br><br> v. <br><br> **THOSE PARTIES LISTED ON APPENDIX A TO COMPLAINT** and **JOHN AND JANE DOES 1-1000,** <br><br> Defendants. | Adv. Pro. No.: 21-03032 (MBK) |

### AMENDED JOINT NOTICE OF APPEAL

**PLEASE TAKE NOTICE** that the Official Committee of Talc Claimants II ("TCC II"), together with Patricia Cook, Evan Plotkin, Randy Derouen, Kristie Doyle as estate representative of Dan Doyle, Katherine Tollefson, and Tonya Whetsel as estate representative of Brandon Whetsel, Giovanni Sosa, and Jan Deborah Michaelson-Boyle, hereby appeal to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. §158 and rules 8002 and 8003 of the Federal Rules of Bankruptcy Procedure, from the order (D.I. 1635) (the "Order") (i) declaring that the automatic stay applies to certain actions against non-debtors and (ii) preliminarily enjoining certain actions, entered on March 7, 2022 by the United States Bankruptcy Court for the District of New Jersey.[1]

**PLEASE TAKE FURTHER NOTICE** that a copy of the Order is attached hereto as **Exhibit A**.

**PLEASE TAKE FURTHER NOTICE** that the names of all parties to the Order appealed from and the names, addresses and telephone numbers of their respective attorneys are as follows:

---

[1] This filing is an amendment to the notice of appeal originally filed on March 7, 2022 at D.I. 1653.

A115

| Party | Counsel |
|---|---|
| Official Committee of Talc Claimants II | **COOLEY LLP**<br>Cullen D. Speckhart<br>Ian Shapiro<br>Russell Capone<br>Michael Klein<br>55 Hudson Yards<br>New York, NY 10001<br>Tel: (212) 479-6000<br>Fax: (212) 479-6275<br>Email: cspeckhart@cooley.com<br>　　　　ishapiro@cooley.com<br>　　　　rcapone@cooley.com<br>　　　　mklein@cooley.com<br><br>**BAILEY GLASSER LLP**<br>Brian A. Glasser<br>Thomas B. Bennett<br>Kevin W. Barrett<br>Maggie B. Burrus<br>1055 Thomas Jefferson St. NW, Suite 540<br>Washington, DC 20007<br>Tel: (202) 463-2101<br>Fax: (202) 463-2103<br>Email: bglasser@baileyglasser.com<br>　　　　tbennett@baileyglasser.com<br>　　　　kbarrett@baileyglasser.com<br>　　　　mburrus@baileyglasser.com<br><br>**MASSEY & GAIL LLP**<br>Jonathan S. Massey<br>1000 Maine Ave. SW, Suite 450<br>Washington, DC 20024<br>Tel: (202) 652-4511<br>Fax: (312) 379-0467<br>Email: jmassey@masseygail.com<br><br>**WALDREP WALL BABCOCK &**<br>**BAILEY PLLC**<br>Thomas W. Waldrep, Jr.<br>Kevin L. Sink<br>James C. Lanik<br>Jennifer B. Lyday<br>370 Knollwood Street, Suite 600<br>Winston-Salem, NC 27103 |

A116

| | Tel: (336) 717-1280<br>Fax: (336) 717-1340<br>Email: notice@waldrepwall.com<br><br>**SHERMAN, SILVERSTEIN, KOHL,<br>ROSE & PODOLSKY, P.A.**<br>Arthur J. Abramowitz<br>Alan I. Moldoff<br>Ross J. Switkes<br>308 Harper Drive, Suite 200<br>Moorestown, NJ 08057<br>Tel: (856) 662-0700<br>Email: aabramowitz@shermansilverstein.com<br>    amoldoff@shermansilverstein.com<br>    rswitkes@shermansilverstein.com |
| --- | --- |
| Patricia Cook | **WEITZ & LUXENBERG, P.C.**<br>Perry Weitz<br>Lisa Nathanson Busch<br>Justine Delaney<br>700 Broadway<br>New York, NY 10083<br>Tel: (212) 558-5500<br>Email: lbusch@weitzlux.com<br>    pw@weitzlux.com<br>    jdelaney@weitzlux.com |
| Evan Plotkin | **LEX NOVA LAW, LLC**<br>E. Richard Dressel<br>10 E. Stow Rd., Suite 250<br>Marlton, NJ 08053<br>Tel. (856) 382-8550<br>Email: rdressel@lexnovalaw.com<br><br>**DEAN OMAR BRANHAM SHIRLEY,<br>LLP**<br>Trey Branham<br>302 N. Market Street, Suite 300<br>Dallas, TX 75202<br>Tel: (214) 722-5990<br>Email: tbranham@dobslegal.com |
| Giovanni Sosa | **LEX NOVA LAW, LLC**<br>E. Richard Dressel<br>10 E. Stow Rd., Suite 250<br>Marlton, NJ 08053 |

A117

| | Tel. (856) 382-8550<br>Email: rdressel@lexnovalaw.com<br><br>**COONEY & CONWAY**<br>John Cooney<br>Kathy Byrne<br>120 N. Lasalle Street, Suite 3000<br>Chicago, IL 60602<br>Tel: (800) 322-5573<br>Email: kbyrne@cooneyconway.com |
|---|---|
| Randy Derouen | **LEVY KONIGSBERG LLP**<br>Moshe Maimon<br>Jerome H. Block<br>Audrey Perlman Raphael<br>605 Third Avenue, 33rd Floor<br>New York, NY 10158<br>Tel: (212) 605-6200<br>Email: MMaimon@levylaw.com<br>          JBlock@levylaw.com<br>          ARaphael@levylaw.com |
| Kristie Doyle, as estate representative of Dan Doyle | **SAIBER LLC**<br>Marc E. Wolin<br>John M. August<br>18 Columbia Turnpike, Suite 200<br>Florham Park, NJ 07932<br>Tel: (973) 622-8401<br>Email: mwolin@saiber.com<br>          jaugust@saiber.com<br><br>**KAZAN, McCLAIN, SATTERLEY & GREENWOOD**<br>A Professional Law Corporation<br>Steven Kazan, Esq.<br>Joseph D. Satterley, Esq.<br>Denyse F. Clancy, Esq.<br>Jack London Market<br>55 Harrison Street, Suite 400<br>Oakland, California 94607<br>Tel: (510) 302-1000<br>Email: skazan@kazanlaw.com<br>          JSatterley@kazanlaw.com<br>          DClancy@kazanlaw.com |

A118

| | |
|---|---|
| Katherine Tollefson<br><br>Jan Deborah Michaelson-Boyle | **MAUNE RAICHLE HARTLEY FRENCH & MUDD LLC**<br>Suzanne M. Ratcliffe<br>150 West 30th Street, Suite 201<br>New York, NY 10001<br>Tel: (800) 358-5922<br>Email: sratcliffe@mrhfmlaw.com<br><br>Neil J. Maune<br>Marcus E. Raichle Jr.<br>Christopher McKean<br>Clayton L. Thompson<br>1015 Locust Street<br>St. Louis, MO 63191<br>Tel: (800) 358-5922<br>Email: nmaune@mrhfmlaw.com<br>    mraichle@mrhfmlaw.com<br>    cmckean@mrhfmlaw.com<br>    cthompson@mrhfmlaw.com |
| Tonya Whetsel, as estate representative of Brandon Whetsel | **KARST & von OISTE, LLP**<br>David A. Chandler<br>505 Main Street<br>Port Jefferson, NY 11777<br>Tel: (855) 970-9988<br>Email: dac@karstvonoiste.com |
| LTL Management, LLC | **WOLLMUTH MAHER & DEUTSCH LLP**<br>Paul R. DeFilippo<br>500 Fifth Avenue<br>New York, NY 10110<br>Tel: (212) 382-3300<br>Fax: (212) 382-0050<br>Email: pdefilippo@wmd-law.com<br><br>**JONES DAY**<br>Gregory M. Gordon<br>Brad B. Erens<br>Dan B. Prieto<br>Amanda Rush<br>2727 N. Harwood Street<br>Dallas, TX 75201<br>Tel: (214) 220-3939<br>Fax: (214) 969-5100<br>Email: gmgordon@jonesday.com |

A119

| | |
|---|---|
| | bberens@jonesday.com<br>dbprieto@jonesday.com<br>arush@jonesday.com |
| Official Committee of Talc Claimants I | **GENOVA BURNS LLC**<br>Daniel M. Stolz<br>Donald W. Clarke<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ 07920<br>Tel: (973) 467-2700<br>Fax: (973) 467-8126<br>Email: dstolz@genovaburns.com<br>  dclarke@genovaburns.com<br><br>**BROWN RUDNICK LLP**<br>David J. Molton<br>Robert J. Stark<br>Michael S. Winograd<br>Seven Times Square<br>New York, NY 10036<br>Tel: (212) 209-4800<br>Fax: (212) 209-4801<br>Email: dmolton@brownrudnick.com<br>  rstark@brownrudnick.com<br>  mwinograd@brownrudnick.com<br><br>Jeffrey L. Jonas<br>Sunni P. Beville<br>One Financial Center<br>Boston, MA 02111<br>Tel: (617) 856-8200<br>Fax: (617) 856-8201<br>Email: jjonas@brownrudnick.com<br>  sbeville@brownrudnick.com<br><br>**OTTERBOURG PC**<br>Melanie L. Cyganowski<br>Adam C. Silverstein<br>Jennifer S. Feeney<br>230 Park Avenue<br>New York, NY 10169<br>Tel: (212) 905-3628<br>Fax: (212) 682-6104<br>Email: mcyganowski@otterbourg.com<br>  asilverstein@otterbourg.com<br>  jfeeney@otterbourg.com |

A120

| | |
|---|---|
| | **PARKINS LEE & RUBIO LLP**<br>Pennzoil Place<br>700 Milan Street, Suite 1300<br>Houston, TX 77002<br>Tel: (713) 715-1666<br>Email: lparkins@parkinslee.com<br>       crubio@parkinslee.com |
| Aylstock, Witkin, Kreis & Overholtz, PLLC | **OFFIT KURMAN, P.A.**<br>Paul J. Winterhalter<br>99 Wood Avenue South, Suite 302<br>Iselin, New Jersey 08830<br>Tel: (267) 338-1370<br>Fax: (267) 338-1335<br>Email: pwinterhalter@offitkurman.com<br><br>**KTBS LAW LLP**<br>Michael L. Tuchin<br>Robert J. Pfister<br>Samuel M. Kidder<br>Nir Maoz<br>1801 Century Park East, 26th Floor<br>Los Angeles, California 90067<br>Tel: (310) 407-4000<br>Fax: (310) 407-9090<br>Email: mtuchin@ktbslaw.com<br>       rpfister@ktbslaw.com<br>       skidder@ktbslaw.com<br>       nmaoz@ktbslaw.com |
| Atlanta International Insurance Company (as successor in interest to Drake Insurance Company); AIG Property Casualty Company (f/k/a Birmingham Fire Insurance Company of Pennsylvania); AIG Europe S.A. (as successor in interest to Union Atlantique d'Assurances S.A); AIU Insurance Company; ASR Schadeverzekering N.V. (as successor in interest to Assurantiekoor Van Wijk & Co.); Granite State Insurance Company; The Insurance Company of the State of Pennsylvania; Lexington Insurance Company; National Union Fire Insurance Company of Pittsburgh, Pa.; New Hampshire Insurance Company; The North River Insurance | **TRIF & MODUGNO, LLC**<br>Louis Modugno<br>89 Headquarters Plaza, Suite 1201<br>Morristown, New Jersey 07960<br>Tel: (973) 547-3611<br>Fax: (973) 554-1220<br>Email: lmodugno@tm-firm.com<br><br>**KATTEN MUCHIN ROSENMAN LLP**<br>Shaya Rochester<br>Katherine Scherling<br>575 Madison Avenue<br>New York, NY 10022<br>Tel: (212) 940-8800<br>Fax: (212) 940-8776 |

A121

| | |
|---|---|
| Company; Starr Indemnity & Liability Company (as successor in interest to Republic Insurance Company); N.V. Schadeverzekeringsmaatschappij Maas Lloyd (individually and as successor in interest to policies subscribed in favor of Johnson & Johnson by N.V. Rotterdamse Assurantiekas, n/k/a De Ark); and Rheinland Versicherungen (as successor in interest only to the subscriptions of the former Dutch company Rheinland Verzekeringen) | Email: shaya.rochester@katten.com<br>     katherine.scherling@katten.com<br><br>**MENDES & MOUNT LLP**<br>Eileen McCabe<br>Stephen Roberts<br>750 Seventh Avenue<br>New York, NY 10019<br>Tel: (212) 261-8000<br>Fax: (212) 261-8750<br>Email: eileen.mccabe@mendes.com<br>     stephen.roberts@mendes.com |

[*signatures follow*]

9

A122

Date: March 16, 2022

**SHERMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY, P.A.**

*/s/ Arthur J. Abramowitz*
Arthur J. Abramowitz
Ross J. Switkes
Sherman, Silverstein, Kohl, Rose & Podolsky, P.A.
308 Harper Drive, Suite 200
Moorestown, NJ 08057
Tel: (856) 662-0700
aabramowitz@shermansilverstein.com
rswitkes@shermansilverstein.com

*Local Counsel to the Official Committee of Talc Claimants II*

**WEITZ & LUXENBERG, P.C.**

*/s/ Lisa Nathanson Busch*
Lisa Nathanson Busch
700 Broadway
New York, NY 10083
Tel: (212) 558-5500
lbusch@weitzlux.com

*Counsel to Patricia Cook*

**LEX NOVA LAW, LLC**

*/s/ E. Richard Dressel*
E. Richard Dressel
10 E. Stow Rd., Suite 250
Marlton, NJ 08053
Tel: (856) 382-8550
rdressel@lexnovalaw.com

*Counsel to Evan Plotkin and Giovanni Sosa*

**LEVY KONIGSBERG LLP**

*/s/ Jerome H. Block*
Jerome H. Block
605 Third Avenue, 33rd Floor
New York, NY 10158
Tel: (212) 605-6200
jblock@levylaw.com

A123

*Counsel to Randy Derouen*

**SAIBER LLC**

*/s/ Marc E. Wolin*
Marc E. Wolin
John M. August
18 Columbia Turnpike, Suite 200
Florham Park, NJ 07932
Tel: (973) 622-8401
mwolin@saiber.com
jaugust@saiber.com

*Counsel to Kristie Doyle, as estate
representative of Dan Doyle*

**MAUNE RAICHLE HARTLEY
FRENCH & MUDD LLC**

*/s/ Suzanne M. Ratcliffe*
Suzanne M. Ratcliffe
150 West 30th Street, Suite 201
New York, NY 10001
Tel: (800) 358-5922
sratcliffe@mrhfmlaw.com

*Counsel to Katherine Tollefson and Jan
Deborah Michaelson-Boyle*

**KARST & von OISTE, LLP**

*/s/ David A. Chandler*
David A. Chandler
505 Main Street
Port Jefferson, NY 11777
Tel: (855) 970-9988
dac@karstvonoiste.com

*Counsel to Tonya Whetsel, as estate
representative of Brandon Whetsel*

11

A124

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>**GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>Matthew I.W. Baker, Esq.<br>dstolz@genovaburns.com<br>dclarke@genovaburns.com<br>mbaker@genovaburns.com<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ 07920<br>Tel: (973) 467-2700<br>Fax: (973) 467-8126<br>*Local Counsel to the Official Committee of Talc Claimants I* | **BROWN RUDNICK LLP**<br>David J. Molton, Esq.<br>Robert J. Stark, Esq.<br>Michael S. Winograd, Esq.<br>dmolton@brownrudnick.com<br>rstark@brownrudnick.com<br>mwinograd@brownrudnick.com<br>Seven Times Square<br>New York, NY 10036<br>Tel : (212) 209-4800<br>Fax : (212) 209-4801<br><br>and<br><br>Jeffrey L. Jonas, Esq.<br>Sunni P. Beville, Esq.<br>Shari I. Dwoskin, Esq.<br>jjonas@brownrudnick.com<br>sbeville@brownrudnick.com<br>sdwoskin@brownrudnick.com<br>One Financial Center<br>Boston, MA 02111<br>Tel: (617) 856-8200<br>Fax: (617) 856-8201<br>*Co-Counsel for the Official Committee of Talc Claimants I* |
| **OTTERBOURG PC**<br>Melanie L. Cyganowski, Esq.<br>Adam C. Silverstein, Esq.<br>Jennifer S. Feeney, Esq.<br>mcyganowski@otterbourg.com<br>asilverstein@otterbourg.com<br>jfeeney@otterbourg.com<br>230 Park Avenue<br>New York, NY 10169<br>Tel: (212) 905-3628<br>Fax: (212) 682-6104<br>*Co-Counsel for the Official Committee of Talc Claimants I* | **PARKINS LEE & RUBIO LLP**<br>Leonard M. Parkins, Esq.<br>Charles M. Rubio, Esq.<br>lparkins@parkinslee.com<br>crubio@parkinslee.com<br>Pennzoil Place<br>700 Milan St., Suite 1300<br>Houston, TX 77002<br>Tel: (713) 715-1666<br>*Special Counsel to the Official Committee of Talc Claimants I* |

| | |
|---|---|
| In Re:<br><br>**LTL MANAGEMENT, LLC,**[1]<br><br>Debtor. | Chapter 11<br><br>Case No.: 21-30589 (MBK)<br><br>Honorable Michael B. Kaplan |

### NOTICE OF APPEAL AND STATEMENT OF ELECTION[2]

**Part 1: Identify the Appellant(s)**

1. **Names(s) of appellant(s):**  The Official Committee of Talc Claimants I.[3]

2. **Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:**  Appellant is an official committee of tort claimants in the underlying bankruptcy case.  Appellant is an interested party and an objector in the adversary proceeding.

**Part 2: Identify the subject of this appeal**

1. **Describe the judgment, order, or decree appealed from:**  Appellant, pursuant to 28 U.S.C. § 158(a) and Federal Rule of Bankruptcy Procedure 8001(a), hereby gives notice of

---

[1]  The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

[2]  Unless otherwise noted, "Dkt." refers to the docket in the main bankruptcy case, 21-30589 (MBK).

[3]  The *Objection of the Official Committee of Talc Claimants to Debtor's Motion for an Order (i) Declaring That the Automatic Stay Applies to Certain Actions Against Non-Debtors or (ii) Preliminarily Enjoining Such Actions and (iii) Granting a Temporarily Restraining Order Pending a Final Hearing* (Adv. Proc. No. 21-03032, Dkt. No. 142) (the "Objection") was filed by the original Official Committee of Talc Claimants (the "Original TCC") on December 22, 2021.  On December 23, 2021, the United States Trustee filed a notice (Dkt. No. 965) appointing the Official Committee of Talc Claimants I ("TCC I") and the Official Committee of Talc Claimants II ("TCC II") in place of the Original TCC.  By Stipulation and Order, entered January 21, 2022 (Dkt. 1226), all pleadings and motions filed by the Original TCC, including the Objection, were deemed to be filed by each of TCC I and TCC II, and each of TCC I and TCC II were permitted to prosecute all such pleadings and motions.  On January 26, 2022, the Bankruptcy Court entered an order (Dkt. No. 1273) reinstating the Original TCC but staying the effect of its ruling through March 8, 2022.  On March 8, 2022, the Court issued a bench ruling staying the reinstatement of the Original TCC and extending the existence of TCC I and TCC II through and including April 12, 2022.  As such, TCC I and TCC II have filed separate notices of appeal.  Also during the March 8 hearing, the parties agreed to stipulate that the filings by TCC I and TCC II will be deemed to have filed by the Original TCC if the Original TCC is reinstated in the future.

A126

appeal to the United States District Court for the District of New Jersey from each and every part

of the *Order (i) Declaring That Automatic Stay Applies to Certain Actions Against Non-Debtors*

*and (ii) Preliminarily Enjoining Certain Actions* (Dkt. No. 1635) (the "<u>Order</u>", annexed hereto as

**Exhibit A**) entered by the United States Bankruptcy Court for the District of New Jersey.

      **2.**      **State the date on which the judgment, order, or decree was entered:**  The Order

was entered on March 7, 2022.

**<u>Part 3: Identify the other parties to the appeal:</u>**

**List the names of all parties to the judgment, order, or decree appealed from and the names,**

**addresses, and telephone numbers of their attorneys:**

| Party | Attorneys |
|---|---|
| Appellant: the Official Committee of Talc Claimants I | **GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>Matthew I.W. Baker, Esq.<br>dstolz@genovaburns.com<br>dclarke@genovaburns.com<br>mbaker@genovaburns.com<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ 07920<br>Tel: (973) 467-2700<br>Fax: (973) 467-8126<br><br>**BROWN RUDNICK LLP**<br>David J. Molton, Esq.<br>Robert J. Stark, Esq.<br>Michael Winograd, Esq.<br>dmolton@brownrudnick.com<br>rstark@brownrudnick.com<br>mwinograd@brownrudnick.com<br>Seven Times Square<br>New York, NY 10036<br>Tel : (212) 209-4800<br>Fax : (212) 209-4801<br><br>and |

A127

| | |
|---|---|
| | Jeffrey L. Jonas, Esq.<br>Sunni P. Beville, Esq.<br>Shari I. Dwoskin, Esq.<br>jjonas@brownrudnick.com<br>sbeville@brownrudnick.com<br>sdwoskin@brownrudnick.com<br>One Financial Center<br>Boston, MA 02111<br>Tel: (617) 856-8200<br>Fax: (617) 856-8201<br><br>**OTTERBOURG PC**<br>Melanie L. Cyganowski, Esq.<br>Adam C. Silverstein, Esq.<br>Jennifer S. Feeney, Esq.<br>mcyganowski@otterbourg.com<br>asilverstein@otterbourg.com<br>jfeeney@otterbourg.com<br>230 Park Avenue<br>New York, NY 10169<br>Tel: (212) 905-3628<br>Fax: (212) 682-6104<br><br>**PARKINS LEE & RUBIO LLP**<br>Leonard M. Parkins, Esq.<br>Charles M. Rubio, Esq.<br>lparkins@parkinslee.com<br>crubio@parkinslee.com<br>Pennzoil Place<br>700 Milan St., Suite 1300<br>Houston, TX 77002<br>Tel: (713) 715-1666 |
| Appellee - Plaintiff: LTL Management, LLC | **WOLLMUTH MAHER & DEUTSCH LLP**<br>Paul R. DeFilippo, Esq.<br>pdefilippo@wmd-law.com<br>500 Fifth Avenue<br>New York, NY 10110<br>Tel: (212) 382-3300<br>Fax: (212) 382-0050<br><br>**JONES DAY**<br>Gregory M. Gordon, Esq.<br>Brad B. Erens, Esq.<br>Dan B. Prieto, Esq. |

4

A128

| | |
|---|---|
| | Amanda Rush, Esq.<br>gmgordon@jonesday.com<br>bberens@jonesday.com<br>dbprieto@jonesday.com<br>asrush@jonesday.com<br>2727 N. Harwood Street<br>Dallas, TX 75201<br>Tel: (214) 220-3939<br>Fax: (214) 969-5100 |
| Defendants (See **Exhibit B**) | See **Exhibit B** |
| Interested party: the Protected Parties (see **Exhibit C**) | |
| Interested party/objector: OnderLaw, LLC, on behalf of certain claimants | **PARKINS LEE & RUBIO LLP**<br>Lenard M. Parkins, Esq.<br>Charles M. Rubio, Esq.<br>lparkins@parkinslee.com<br>crubio@parkinslee.com<br>Pennzoil Place<br>700 Milam Street, Suite 1300<br>Houston, TX 77002<br>Tel: 713-715-1666<br><br>**J.C. WHITE LAW GROUP PLLC**<br>James C. White, Esq.<br>jwhite@jcwhitelaw.com<br>100 Europa Drive, Suite 401<br>Chapel Hill, NC 27517<br>Tel: (919) 246-4676<br>Fax: (919) 246-9113 |

A129

| | |
|---|---|
| Interested party/objector: the Objecting Insurers, consisting of the following entities:<br><br>Atlanta International Insurance Company (as successor in interest to Drake Insurance Company); AIG Property Casualty Company (f/k/a Birmingham Fire Insurance Company of Pennsylvania); AIG Europe S.A. (as successor in interest to Union Atlantique d'Assurances S.A) ; AIU Insurance Company; ASR Schadeverzekering N.V. (as successor in interest to Assurantiekoor Van Wijk & Co.); Granite State Insurance Company; The Insurance Company of the State of Pennsylvania; Lexington Insurance Company; National Union Fire Insurance Company of Pittsburgh, Pa.; New Hampshire Insurance Company; The North River Insurance Company ("North River"); Starr Indemnity & Liability Company (as successor in interest to Republic Insurance Company); N.V. Schadeverzekeringsmaatschappij Maas Lloyd (individually and as successor in interest to policies subscribed in favor of Johnson & Johnson by N.V. Rotterdamse Assurantiekas, n/k/a De Ark); and Rheinland Versicherungen (as successor in interest only to the subscriptions of the former Dutch company Rheinland Verzekeringen). | **TRIF & MODUGNO, LLC**<br>Louis Modugno, Esq.<br>lmodugno@tm-firm.com<br>89 Headquarters Plaza, Suite 1201<br>Morristown, New Jersey 07960<br>Tel: (201) 874-4596<br><br>**KATTEN MUCHIN ROSENMAN LLP**<br>Shaya Rochester, Esq.<br>Katherine Scherling, Esq.<br>shaya.rochester@katten.com<br>katherine.scherling@katten.com<br>575 Madison Avenue<br>New York, NY 10022<br>Tel: (212) 940-8800<br><br>**MENDES & MOUNT LLP**<br>Eileen McCabe, Esq.<br>Stephen Roberts, Esq.<br>eileen.mccabe@mendes.com<br>stephen.roberts@mendes.com<br>750 Seventh Avenue<br>New York, NY 10019<br>Tel: (212) 261-8000 |

A130

| | |
|---|---|
| Interested party/objector: Aylstock, Witkin, Kreis & Overholtz, PLLC, on behalf of certain claimants | **OFFIT KURMAN, P.A.**<br>Paul J. Winterhalter, Esq.<br>pwinterhalter@offitkurman.com<br>99 Wood Avenue South, Suite 302<br>Iselin, New Jersey 08830<br>Tel: (267) 338-1370<br>Fax: (267) 338-1335<br><br>**KTBS LAW LLP**<br>Michael L. Tuchin, Esq.<br>Robert J. Pfister, Esq.<br>Samuel M. Kidder, Esq.<br>Nir Maoz, Esq.<br>mtuchin@ktbslaw.com<br>rpfister@ktbslaw.com<br>skidder@ktbslaw.com<br>nmaoz@ktbslaw.com<br>1801 Century Park East, 26th Floor<br>Los Angeles, California 90067<br>Tel: (310) 407-4000<br>Fax: (310) 407-9090 |
| Interested party/objector: Official Committee of Talc Claimants II | **COOLEY LLP**<br>Cullen D. Speckhart, Esq.<br>Michael Klein, Esq.<br>Erica J. Richards, Esq.<br>Lauren A. Reichardt, Esq.<br>Evan Lazerowitz, Esq.<br>cspeckhart@cooley.com<br>mklein@cooley.com<br>erichards@cooley.com<br>lreichardt@cooley.com<br>elazerowitz@cooley.com<br>55 Hudson Yards<br>New York, NY 10001<br>Tel: (212) 479-6000<br>Fax: (212) 479-6275<br><br>**BAILEY GLASSER LLP**<br>Brian A. Glasser, Esq.<br>Thomas B. Bennett, Esq.<br>Kevin W. Barrett, Esq.<br>Maggie B. Burrus, Esq.<br>bglasser@baileyglasser.com<br>tbennett@baileyglasser.com<br>kbarrett@baileyglasser.com |

7

A131

mburrus@baileyglasser.com
105 Thomas Jefferson St. NW Suite 540
Washington, DC 20007
Tel: (202) 463-2101
Fax: (202) 463-2103

**MASSEY & GAIL LLP**
Jonathan S. Massey, Esq.
jmassey@masseygail.com
1000 Maine Ave. SW, Suite 450
Washington, DC 20024
Tel: (202) 652-4511
Fax: (312) 379-0467

**WALDREP WALL BABCOCK & BAILEY
PLLC**
Thomas W. Waldrep, Jr., Esq.
Kevin L. Sink, Esq.
James C. Lanik, Esq.
Jennifer B. Lyday, Esq.
notice@waldrepwall.com
370 Knollwood Street Suite 600
Winston-Salem, NC 27103
Tel: (336) 717-1280
Fax: (336) 717-1340

**SHERMAN, SILVERSTEIN, KOHL, ROSE &
PODOLSKY, P.A.**
Arthur J. Abramowitz, Esq.
Alan I. Moldoff, Esq.
Ross J. Switkes, Esq.
abramowitz@shermansilverstein.com
amoldoff@shermansilverstein.com
rswitkes@shermansilverstein.com
308 Harper Drive, Suite 200
Moorestown, New Jersey 08057
Tel: (856) 662-0700

8

A132

| Interested party: United States Trustee | **THE OFFICE OF THE UNITED STATES TRUSTEE, ANDREW R. VARA, UNITED STATES TRUSTEE, REGIONS 3 & 9**<br>Mitchell B. Hausman, Esq.<br>Jeffrey M. Sponder, Esq.<br>Lauren Bielskie, Esq.<br>Robert J. Schneider, Jr., Esq.<br>mitchell.b.hausman@usdoj.gov<br>jeffrey.m.sponder@usdoj.gov<br>lauren.bielskie@usdoj.gov<br>robert.j.schneider@usdoj.gov<br>One Newark Center, Suite 2100<br>Newark, NJ 07102<br>Tel: (973) 645-3014<br>Fax: (973) 645-5993 |
|---|---|

**Part 4: Not Applicable (No BAP in this District)**

**Part 5: Signature**

DATED this 21st day of March 2022.

Respectfully submitted,

**GENOVA BURNS, LLC**

By: _____

Daniel M. Stolz, Esq.
Donald W. Clark, Esq.
dstolz@genovaburns.com
dclarke@genovaburns.com
110 Allen Road, Suite 304
Basking Ridge, NJ 07920
Tel: (973) 533-0777
Fax: (973) 467-8126

Local Counsel to the Official Committee of
Talc Claimants I

9

A133

A134

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**Order Filed on April 4, 2022
by Clerk
U.S. Bankruptcy Court
District of New Jersey**

| | |
|---|---|
| In Re: | Case No.: _____21-30589_____ |
| LTL MANAGEMENT, LLC | Chapter: _____11_____ |
| | Hearing Date: _____ |
| | Judge: _____Michael B. Kaplan_____ |

## ORDER CERTIFYING DIRECT APPEAL TO THE

## UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT OF

## ORDER DENYING MOTIONS TO DISMISS

⸺⸺    The relief set forth on the following pages, is **ORDERED**.

**DATED: April 4, 2022**

Honorable Michael B. Kaplan
United States Bankruptcy Judge

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>**GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>Matthew I.W. Baker, Esq.<br>dstolz@genovaburns.com<br>dclarke@genovaburns.com<br>mbaker@genovaburns.com<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ 07920<br>Tel: (973) 467-2700<br>Fax: (973) 467-8126<br>*Local Counsel to the Official Committee of Talc Claimants I* | **BROWN RUDNICK LLP**<br>David J. Molton, Esq.<br>Robert J. Stark, Esq.<br>Michael S. Winograd, Esq.<br>dmolton@brownrudnick.com<br>rstark@brownrudnick.com<br>mwinograd@brownrudnick.com<br>Seven Times Square<br>New York, NY 10036<br>Tel: (212) 209-4800<br>Fax: (212) 209-4801<br><br>and<br><br>Jeffrey L. Jonas, Esq.<br>Sunni P. Beville, Esq.<br>Sharon I. Dwoskin, Esq.<br>jjonas@brownrudnick.com<br>sbeville@brownrudnick.com<br>sdwoskin@brownrudnick.com<br>One Financial Center<br>Boston, MA 02111<br>Tel: (617) 856-8200<br>Fax: (617) 856-8201<br>*Co-Counsel for the Official Committee of Talc Claimants I* |
| **OTTERBOURG PC**<br>Melanie L. Cyganowski, Esq.<br>Adam C. Silverstein, Esq.<br>Jennifer S. Feeney, Esq.<br>mcyganowski@otterbourg.com<br>asilverstein@otterbourg.com<br>jfeeney@otterbourg.com<br>230 Park Avenue<br>New York, NY 10169<br>Tel: (212) 905-3628<br>Fax: (212) 682-6104<br>*Co-Counsel for the Official Committee of Talc Claimants I* | **PARKINS LEE & RUBIO LLP**<br>Lenard M. Parkins, Esq.<br>Charles M. Rubio, Esq.<br>lparkins@parkinslee.com<br>crubio@parkinslee.com<br>Pennzoil Place<br>700 Milan St., Suite 1300<br>Houston, TX 77002<br>Tel: (713) 715-1666<br>*Special Counsel to the Official Committee of Talc Claimants I* |

Page:        2

Debtor:      LTL Management, LLC

Case No.:    21-30589(MBK)

Caption:     Order Certifying Direct Appeal to the United States Court of Appeals for the Third
             Circuit of Order Denying Motions to Dismiss

---

| | |
|---|---|
| In Re:<br><br>**LTL MANAGEMENT, LLC,**[1]<br><br>Debtor. | Chapter 11<br><br>Case No.: 21-30589 (MBK)<br><br>Honorable Michael B. Kaplan |

### [PROPOSED] ORDER CERTIFYING DIRECT APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT OF ORDER DENYING MOTIONS TO DISMISS

The relief set forth on the following pages is hereby ORDERED.

---

[1]   The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

A137

Page:           3

Debtor:         LTL Management, LLC

Case No.:       21-30589(MBK)

Caption:        Order Certifying Direct Appeal to the United States Court of Appeals for the Third
                Circuit of Order Denying Motions to Dismiss

---

Upon consideration of the *Request of Official Committee of Talc Claimants I for Order Certifying Direct Appeal to the United States Court of Appeals for the Third Circuit* (the "TCC I Request") (Dkt. 1709); the *Motion of Official Committee of Talc Claimants II, Patricia Cook, Evan Plotkin, Randy Derouen, Kristie Doyle as Estate Representative of Dan Doyle, Katherine Tollefson, Jan Deborah Michelson-Boyle, Giovanni Sosa, and Tonya Whetsel as Estate Representative of Brandon Whetsel, for Certification of Direct Appeal to the United States Court of Appeals for the Third Circuit* (the "TCC II Motion") (Dkt. 1654); the *Motion of Aylstock, Witkin, Kreis & Overholtz, PLLC for Certification of Direct Appeal to the United States Court of Appeals for the Third Circuit* (the "AWKO Motion") (Dkt. 1713); and the *Request of Arnold & Itkin LLP for Certification of Direct Appeal to the United States Court of Appeals for the Third Circuit* (the "A&I Request") (Dkt. 1720) (collectively, the "MTD Certification Requests"); and all papers filed in support of and in opposition to the MTD Certification Requests, including the *Debtor's Omnibus Objection to Motions for Certification of Direct Appeal* (the "Objection") and all reply briefs filed in further support of the MTD Certification Requests (Dkts. 1884, 1887, 1888, 1889); and the hearing on the MTD Certification Requests held on March 30, 2022 (the "Hearing"); and all prior proceedings herein; the Court hereby finds as follows:

For the reasons set forth by the Court on the record during the March 30, 2022 Hearing (Dkt. 1926 at 70:2-76:17), which portions of the record are incorporated herein by reference, the Court finds that the conditions of 28 U.S.C. § 158(d)(2) have been met, and

A138

Page:        4

Debtor:      LTL Management, LLC

Case No.:    21-30589(MBK)

Caption:     Order Certifying Direct Appeal to the United States Court of Appeals for the Third
             Circuit of Order Denying Motions to Dismiss

---

**IT IS THEREFORE HEREBY ORDERED THAT:**

1.     The MTD Certification Requests are GRANTED.

2.     Pursuant to 28 U.S.C. § 158(d)(2) and Rule 8006 of the Federal Rules of
Bankruptcy Procedure, the *Motions to Dismiss Memorandum Opinion* (Dkt. 1572) and the *Order
Denying Motions to Dismiss* (Dkt. 1603) are hereby certified for direct appeal to the United States
Court of Appeals for the Third Circuit.

4

A139

FOR PUBLICATION

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**Caption in Compliance with D.N.J. LBR 9004-2(c)** | |
| | |
| LTL MANAGEMENT, LLC,<br>   Debtor. | Case No. 21-30589 (MBK) |
| LTL MANAGEMENT, LLC,<br><br>   Plaintiff,<br><br>v.<br><br>THOSE PARTIES LISTED ON APPPENDIX A TO<br>COMPLAINT and JOHN AND JANE DOES 1-1000,<br><br>   Defendants. | Adv. Pro. No. 21-03032 (MBK)<br><br>Chapter 11<br><br>Hearing Date:  February 18, 2022 |

*All Counsel of Record*

## MEMORANDUM OPINION

This matter comes before the Court by way Debtor's bankruptcy case (Case No. 21-30589)

and subsequent adversary proceeding (Adv. Pro. No. 21-03032) and motion ("Motion") (ECF No.

2 in Adv. Pro. No. 21-03032)[1] filed by Plaintiff LTL Management, LLC ("LTL" or "Debtor")

seeking an Order (I) Declaring That the Automatic Stay Applies to Certain Actions Against Non-

Debtors or (II) Preliminarily Enjoining Such Actions and (III) Granting a Temporary Restraining

---

[1] Unless otherwise specified, all ECF Nos. will refer to docket entries in the Adversary Proceeding, Adv. Pro. No. 21-03032.

Order Pending a Final Hearing. The Motion was initially filed in the Western District of North

Carolina. Debtor filed a Supplemental Brief (ECF No. 128) to incorporate applicable Third Circuit

law. The matter was fully briefed and scheduled for a Final Hearing. The Court has fully

considered the submissions of the parties and the arguments set forth on the record at a hearing

held on February 18, 2022. For the reasons set forth below, the Court grants Debtor's Motion and

resolves the adversary proceeding in favor of Debtor. The Court issues the following findings of

fact and conclusions of law as required by FED. R. BANKR. P. 7052.[2] Contemporaneously with

filing this Memorandum Opinion, the Court is filing a separate Opinion Denying the Motions to

Dismiss with respect to the pending motions to dismiss this chapter 11 proceeding. These matters

have been tried collectively at evidentiary hearings held on February 14-18, 2022. The Court also

adopts and incorporates herein the factual findings and conclusions of law set forth in the separate

Memorandum Opinion dated February 25, 2022.

## I.    Venue and Jurisdiction

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and

157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended

September 18, 2012, referring all Bankruptcy cases to the Bankruptcy Court. As explained in

detail below, this matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and

(G). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

## II.     Background

On October 14, 2021, LTL filed a voluntary petition for chapter 11 relief in the United States Bankruptcy Court for the Western District of North Carolina (the "North Carolina bankruptcy court"). *Petition*, ECF No. 1 in Case No. 21-30589. LTL is an indirect subsidiary of Johnson & Johnson ("J&J") and traces its roots back to Johnson & Johnson Baby Products, Company ("J&J Baby Products"), a New Jersey company incorporated in 1970 as a wholly owned subsidiary of J&J. *Declaration of John K. Kim in Support of First Day Pleadings* ("*Kim Decl.*") ¶¶ 9-10, ECF No. 5 in Case No. 21-30589.  J&J, a New Jersey company incorporated in 1887, first began selling JOHNSON'S® Baby Powder in 1894, launching its baby care line of products. *Id.* at ¶¶ 10-14.  In 1972, J&J established a formal operating division for its baby products business, which included JOHNSON'S® Baby Powder. *Id.*  In 1979, J&J transferred all its assets associated with the Baby Products division to J&J Baby Products. *Id.*  In connection with this transfer, J&J Baby Products assumed all liabilities associated with the Baby Products division. *Supplemental Declaration of John K. Kim in Support of Debtor's Complaint for Declaratory and Injunctive Relief and Related Motions ("Kim Supp. Decl.")* ¶ 5, ECF No. 3.  Over the next few decades, nearly all assets[3] of the Baby Products division were transferred in a series of transactions and mergers, ultimately resting with one of J&J's corporate subsidiaries, Johnson & Johnson Consumer Inc. ("Old JJCI") in 2015. *Kim Decl.* ¶ 10-14, ECF No. 5 in Case No. 21-30589. Following these intercompany transactions, Old JJCI assumed responsibility for all claims alleging that J&J's talc-containing baby powder caused ovarian cancer and mesothelioma. *Id.* at ¶¶ 15, 32.

---

[3] The only exception being those assets allocated to its diaper programs.

3

Similarly, through a series of transfers and indemnification agreements, Old JJCI assumed responsibility for all claims alleging that another J&J product, "Shower to Shower" caused cancer or other diseases. *Debtor's Supplemental Memorandum in Support of Preliminary Injunction Motion* ("*Debtor's Supp. Mem.*") 12-14, ECF No. 128. Old JJCI also agreed to indemnify various retailers ("Retailers") who sold Old JJCI's talc-containing products for claims related to the sale of such products. *Kim Supp. Decl.* ¶¶ 8-12, ECF No. 3.

On October 12, 2021, Old JJCI engaged in a series of transactions (the "2021 Corporate Restructuring") through which it ceased to exist and two new companies, LTL and Johnson & Johnson Consumer Inc. ("New JJCI"), were formed. *Kim Decl.* ¶ 16, 22-23, ECF No. 5 in Case No. 21-30589. The alleged purpose of this restructuring was to "globally resolve talc-related claims through a chapter 11 reorganization without subjecting the entire Old JJCI enterprise to a bankruptcy proceeding." *Id.* at ¶ 21. As a result of the restructuring, LTL assumed responsibility for all of Old JJCI's talc-related liabilities. *Id.* at ¶¶ 16, 24. Through the restructuring, LTL also received Old JJCI's rights under a funding agreement (the "Funding Agreement"). *Id.* at ¶ 24. Under the Funding Agreement, J&J and New JJCI are obligated to pay, *inter alia*, "any and all costs and expenses" LTL incurs during its bankruptcy case, "including the costs of administering the Bankruptcy Case" to the extent necessary. *Funding Agreement 6, Annex 2 to Declaration of John K. Kim in Support of First Day Pleadings*, ECF No. 5 in Case No. 21-30589.

Shortly after filing for bankruptcy on October 14, 2021 in the Western District of North Carolina, Debtor initiated the instant adversary proceeding, seeking declaratory and injunctive relief. Specifically, the Complaint requests an order declaring that the automatic stay applies to

4

A143

certain actions against nondebtors (the "Protected Parties") or, in the alternative, asks the Court to enjoin such actions and grant a temporary restraining order pending a final hearing. *Complaint*, ECF No. 1. Debtor simultaneously filed the instant Motion requesting a preliminary injunction enjoining the prosecution of actions outside of the chapter 11 case on account of the same talc claims that exist against the Debtor in the chapter 11 case. *Motion*, ECF No. 2. The North Carolina bankruptcy court held a two-day evidentiary hearing on November 4 and 5, 2021. On November 10, 2021, Judge Whitley issued oral findings of fact and conclusions of law and granted the motion on a preliminary basis. *North Carolina Bankruptcy Court's Order Granting Motion for Preliminary Injunction*, ECF No. 102. As the result of Judge Whitley's Order, the defendants were "prohibited and enjoined, pursuant to sections 105 and 362 of the Bankruptcy Code, from commencing or continuing to prosecute any [talc-related claims] against any of the Protected Parties" for a period of 60 days. *Id.* at 7-8. Judge Whitley made clear that his Order was without prejudice and was "not intended to bind a subsequent Presiding Court." *Id.* at 7. He then transferred the bankruptcy case to the Bankruptcy Court for the District of New Jersey, and, on November 17, 2021, this Court assumed exclusive jurisdiction of the adversary proceeding and the underlying bankruptcy case.[4]

---

[4] This matter was initially scheduled to be heard on January 11, 2022, three days ahead of the January 14 expiration date of the Preliminary Injunction imposed by the North Carolina Order. However, after the case was transferred to this Court, the Original TCC filed a Motion for Withdrawal of Reference (ECF No. 110) with the district court. Because the district court had not ruled on that motion—and in light of an identity of issues and evidence with the pending Motions to Dismiss in the main bankruptcy case—this Court adjourned the hearing date for this Motion to February 18, 2022, the final scheduled date for argument on the Motion to Dismiss. Accordingly, On January 15, 2022, this Court entered a Bridge Order (ECF No. 157) extending the Preliminary Injunction entered by the North Carolina Bankruptcy Court to February 28, 2022. In the interim, the District Court denied the Motion for Withdrawal of the Reference (ECF No. 32 in Case No. 21-cv-20252).

Following the transfer of the case to the District of New Jersey, Debtor supplemented its

initial brief and amended and restated its arguments in support of the relief sought to reflect Third

Circuit precedent.  At its core, Debtor's argument remains the same and is two-fold.  First, Debtor

cites to 11 U.S.C. § 362 and contends that the automatic stay prohibits prosecution of talc claims

against the Protected Parties.  Second, Debtor asserts that the Court should exercise its authority

under 11 U.S.C. § 105(a) to enjoin the continuation or commencement of the talc claims against

the Protected Parties.

Several interested parties oppose the Motion, including: the Official Committee of Talc

Claimants[5] (ECF No. 142), certain plaintiff-insurers (the "Objecting Insurers") (ECF No. 141),

and attorneys for Alystock, Witkin, Kreis & Overholtz, PLLC ("AWKO") (ECF No. 143).  The

Debtor submitted an omnibus reply (ECF No. 146).[6]

In opposition to the Motion, the Original TCC contends that an extension of the stay under

§ 362(a) is not warranted.  Moreover, the TCC asserts that this Court lacks subject matter

jurisdiction to enjoin actions between nondebtors under § 105(a).  AWKO likewise opposes the

Motion and raises similar arguments.  AWKO asserts that J&J must file its own bankruptcy

---

[5] At the time it filed its Opposition (ECF No. 142) on December 22, 2021, there existed only one Official Committee of Talc Claimants (the "Original TCC").  Soon thereafter, however, the United States Trustee reconstituted the Original TCC and appointed two separate committees: the Official Committee of Talc Claimants I (the "Ovarian Cancer Claimants Committee" or "TCC I")  and the Official Committee of Talc Claimants II (the "Mesothelioma Claimants Committee" or "TCC II").  The U.S. Trustee's actions were challenged by way of motions filed in the underlying bankruptcy proceeding, which the Court granted in an Opinion dated January 20, 2022 (ECF No. 1212 in Case No. 21-30589).  An Order memorializing the Court's ruling was entered on January 26, 2022 (ECF No. 1273).  However, given the procedural posture of, and the pending motions in, both the underlying bankruptcy case and the instant adversary proceeding, the Court stayed the effect of its ruling, ordering that both TCC I and TCC II (collectively, the "Committees") "shall remain in full force and effect through March 8, 2022." *Order Granting Motions Challenging United States Trustees' Notice of Appointment* 2, ECF No. 1273 in Case No. 21-30589.

[6] On February 1, 2022, TCC II filed a Sur-Reply (ECF No. 166); however, that pleading was struck for the reasons set forth on the record during the hearing on February 10, 2022.

petition to enjoy the benefits and protections of the Bankruptcy Code's automatic stay and argues

that equitable relief under § 105(a) is not warranted. Finally, the Objecting Insurers object to the

Motion only to the extent it seeks to enjoin pending litigation in the Superior Court of New Jersey

(the "New Jersey Coverage Action").

### III.    Discussion

#### A.  The Automatic Stay

Section 362(a) of the Bankruptcy Code provides, in relevant part, that

a petition filed under section 301, 302, or 303 of this title . . . operates as a stay applicable
to all entities, of—

> (1)  the commencement or continuation, including the issuance or employment of
> process, of a judicial, administrative, or other action or proceeding against the
> debtor that was or could have been commenced before the commencement of the
> case under this title, or to recover a claim against the debtor that arose before the
> commencement of the case under this title;
>
> . . .
>
> (3) any act to obtain possession of property of the estate or of property from the
> estate or to exercise control over property of the estate[.]

11 U.S.C. § 362(a).

The Third Circuit has explained that the purpose of the automatic stay is "two-fold." *In re
Denby-Peterson*, 941 F.3d 115, 122 (3d Cir. 2019). First, it serves to "protect the debtor, by
stopping all collection efforts, harassment, and foreclosure actions, thereby giving the debtor a
respite from creditors and a chance to attempt a repayment or reorganization plan or simply be
relieved of the financial pressures that drove him or her into bankruptcy[.]" *Id.* (quotations,
citations, and alterations omitted). Second it "protect[s] creditors by preventing particular

7

creditors from acting unilaterally in self-interest to obtain payment from a debtor to the detriment of other creditors." *Id.*

Although the scope of the automatic stay is broad, its protections typically apply only to debtors, not nondebtor defendants. *ACandS, Inc. v. Travelers Cas. & Sur. Co.,* 435 F.3d 252, 259 (3d Cir. 2006) (noting that "the scope of the automatic stay is broad and covers all proceedings against a debtor"); *McCartney v. Integra Nat. Bank N.,* 106 F.3d 506, 509 (3d Cir. 1997) (holding that "the clear language of section 362(a) stays actions only against a 'debtor.'"); *see also In re SN Liquidation, Inc.,* 388 B.R. 579 (Bankr. D. Del. 2008). Nevertheless, by way of the Motion, Debtor seeks a declaration that the automatic stay enjoins actions against the Protected Parties, who are nondebtor entities.

### 1.  Authority for Extension of Stay to Nondebtors

Prior to engaging in analysis, this Court clarifies the framework within which motions seeking this type of relief are evaluated. As with the instant Motion, most motions seeking to prevent litigation against nondebtor third parties are premised on both the automatic stay under §362(a) and a court's equitable powers under § 105(a). However,

> [I]t is unclear whether the Third Circuit views staying an action to aid a debtor's reorganization the result of extending the § 362(a) stay or the result of issuing a separate injunction pursuant to, for example, a district court's inherent power to stay a pending action or a bankruptcy court's power under § 105(a).

*Stanford v. Foamex L.P.,* No. CIV. A. 07-4225, 2009 WL 1033607, at *1 n.7 (E.D. Pa. Apr. 15, 2009). Courts in this circuit have recognized that "caselaw concerning the use of authority conferred by section 105(a) to implement the substantive powers created by section 362(a) is not entirely consistent." *In re Philadelphia Newspapers, LLC,* 423 B.R. 98, 103 n.8 (E.D. Pa. 2010)

8

(citing *In re Philadelphia Newspapers, LLC*, 407 B.R. 606, 611 (E.D. Pa. 2009) (noting that courts have often conflated the analysis of sections 362(a) and 105(a), and confused the issue). Indeed, many courts have used some iteration of the phrases "extension of the stay" and "injunctive relief" interchangeably when discussing whether to permit actions against nondebtor third parties to proceed. Additionally, many courts have cited only to § 105(a). *See, e.g., In re W.R. Grace & Co.*, 115 F. App'x 565, 568 (3d Cir. 2004) (reviewing a § 105(a) injunction); *In re Monroe Well Serv., Inc.*, 67 B.R. 746, 751 (Bankr. E.D. Pa. 1986) (granting an injunction under § 105(a), without discussion of § 362(a)).

In this Court's view, ample authority exists to conclude that § 362(a), § 105(a), or a court's inherent powers can each serve as independent bases for extension of a stay to nondebtor third parties. For example, in *In re A.H. Robins Co., Inc.*—a case which the Third Circuit has cited with approval—the Fourth Circuit meticulously set forth the courts' powers, discussing each different source of authority in a separate section of the decision. *See In re A.H. Robins Co (A.H. Robins Co. v. Piccinin)*, 788 F.2d 994, 1001-1003 (4th Cir. 1986) (cited with approval in *McCartney v. Integra Nat. Bank N.*, 106 F.3d 506 (3d Cir. 1997)). The *Robins* court stated that a bankruptcy court may preclude lawsuits directly under: (1) § 362(a); or (2) by way of an injunction under §105(a); or (3) pursuant to its inherent power. 788 F.2d at 1001-003. The following year, in a subsequent case also related to the A.H. Robins bankruptcy, the Fourth Circuit clarified that it held in *Robins* "that the district court had four independent grounds on which it could stay the plaintiffs' suit against [the nondebtor third party]." *In re A.H. Robins Co. Inc. (A.H. Robins Co. v Aetna)*, 828 F.2d 1023, 1024 (4th Cir. 1987) (referring to § 362(a)(1), § 362(a)(3), § 105(a), and a court's

9

inherent powers under 28 U.S.C. § 1334 as independent bases for extension of the automatic stay to nondebtor third parties).

Further, the Third Circuit in *McCartney v. Integra Nat. Bank N.* recognized "a number of cases where courts have applied the automatic stay protection to nondebtor third parties." 106 F.3d 506, 510 (3d Cir. 1997). In doing so, the Third Circuit cited to *Robins* and explicitly acknowledged that the *Robins* court had relied on "both the automatic stay provision and the bankruptcy court's equitable powers under 11 U.S.C. § 105 to enjoin actions against nondebtor codefendants." *Id.* (citing *Robins*, 788 F.2d. 994). In its analysis, the *McCartney* court held that the plaintiff "was stayed from pursuing a deficiency judgment action against the nondebtor third party" because— due to the unusual circumstances of the case—doing so would "defeat the purpose of § 362." *Id.* at 511. Thus, the Third Circuit in *McCartney* upheld extension of the stay to a nondebtor solely on the basis of § 362, and without mention of § 105(a) in its analysis. To this Court, the decision in *McCartney* appears to be an endorsement of § 362 as an independent basis for extending the stay.

Nevertheless, several courts still view this as an open-ended question. *See, e.g.*, *In re Philadelphia Newspapers, LLC*, 423 B.R. at 103 n.8; *In re Philadelphia Newspapers, LLC*, 407 B.R. at 611; *Starford v. Foamex L.P.*, 2009 WL 1033607, at *1 n.7. In their view, however, the issue is "academic as the practical effect (i.e., the staying of an action) is the same regardless of the means employed." *Foamex*, 2009 WL 1033607, at *1 n.7; *see also In re Philadelphia Newspapers, LLC*, 423 B.R. at 103 n.8 (declining to "delve into this analytical quagmire . . . [regarding] . . . whether the order issued by the Bankruptcy Court constituted the extension of the

10

stay under section 362(a) or an injunction under section 105(a)" because it was "of no moment for purposes of this appeal"). This Court disagrees. Although a discussion of the ultimate *effect* may be purely "academic" because the end result is the same, the proper *procedure* for getting there under each basis employs different methodologies and, thus, cannot be brushed aside as semantics. Significantly, if a court were to determine that § 362(a)(3), alone, serves as a proper basis to extend the stay to a nondebtor, then the inquiry could end there. However, to the extent a court wishes to rely on § 105(a) to enjoin actions against nondebtors, the court must first decide that it has subject matter jurisdiction. *See In re W.R. Grace & Co.,* 591 F.3d 164, 170–71 (3d Cir. 2009) (quoting *In re Combustion Eng'g, Inc.,* 391 F.3d 190, 225 (3d Cir.2004)) (holding that, because § 105(a) does not provide an independent source of federal subject matter jurisdiction, a court must establish that it has subject matter jurisdiction prior to issuing an injunction under § 105(a)).

Ultimately, until the Third Circuit provides clearer guidance, this issue remains unsettled. Indeed, in several cases out of the Eastern District of Pennsylvania, district courts have used and re-used a three-step inquiry to determine whether the bankruptcy court's extension of a stay to a nondebtor was appropriate: "(1) whether the Bankruptcy Court had jurisdiction to issue the injunction; (2) whether the Bankruptcy Court properly extended the automatic stay under section 362(a) to the non-debtors; and (3) whether the Bankruptcy Court properly exercised its discretion in issuing the injunction." *In re Philadelphia Newspapers, LLC,* 423 B.R. at 102 (citing *Philadelphia Newspapers II,* 407 B.R. at 611). Therefore, although this Court maintains that application of the stay to nondebtor third parties can be premised on several distinct grounds, this

11

A150

Court will follow the framework established in the *In re Philadelphia Newspapers* line of cases.

Accordingly, the Court first addresses its jurisdiction.

### B.  Subject Matter Jurisdiction

"Bankruptcy jurisdiction extends to four types of title 11 matters: (1) cases 'under' title 11;

(2) proceedings 'arising under' title 11; (3) proceedings 'arising in' a case under title 11; and (4)

proceedings 'related to' a case under title 11." *Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006),

as amended (Mar. 17, 2006) (citing 28 U.S.C. § 1334(b) and *In re Combustion Eng'g, Inc.*, 391

F.3d 190, 225 (3d Cir. 2004) (citations omitted)).  "The first three categories are considered 'core'

proceedings, whereas the fourth category, 'related to' proceedings, are considered 'non-core'

proceedings." *In re E. Orange Gen. Hosp., Inc.*, 587 B.R. 53, 71 (D.N.J. 2018) (citing *In re Resorts

Int'l, Inc.*, 372 F.3d 154, 162 (3d Cir. 2004)).  A bankruptcy court has the power to hear, decide

and enter final orders and judgments in the first three categories of proceedings. 28 U.S.C.

§157(b)(1); *In re Roggio*, 612 B.R. 655, 660 (Bankr. M.D. Pa. 2020).

A proceeding "arise[s] under" the Bankruptcy Code when the Bankruptcy Code creates the

cause of action or provides the substantive right being invoked. *Stoe v. Flaherty*, 436 F.3d at 217.

(3d Cir. 2006).  A proceeding "arise[s] in" a case when it is a proceeding that, by its nature, could

arise only in the context of a bankruptcy case. *Id.* at 216 (quoting *United States Trustee v. Gryphon

at the Stone Mansion, Inc.*, 166 F.3d 552, 556 (3d Cir. 1999) and explaining that a proceeding

arises in a bankruptcy case if it has "no existence outside of the bankruptcy").  Finally, "a claim

falls within the bankruptcy court's 'related to' jurisdiction if the outcome of that proceeding could

conceivably have any effect on the estate being administered in bankruptcy." *In re Winstar*

*Commc'ns, Inc.*, 554 F.3d 382, 405 (3d Cir. 2009) (internal quotations and citations omitted); *see also In re W.R. Grace & Co.*, 591 F.3d 164 (3d Cir. 2009).

The Original TCC maintains that this Court lacks subject matter jurisdiction over this issue. First, the Original TCC contends that Debtor's request for injunctive relief is not a core proceeding because it does not "arise under" or "arise in" the bankruptcy case. The Original TCC does not develop this argument and asserts, broadly, that injunctive relief is not unique to bankruptcy cases and that "Debtor's mere invocation of § 105 (or § 362, for that matter) is insufficient to establish that the injunction it seeks" is a core proceeding. *Objection of Original TCC* 80, ECF No. 142. The Original TCC then adds that, "[e]ven if these statutory provisions fall under the Court's 'core' jurisdiction in a general sense, the Court is without any jurisdiction to stay actions between non-debtors unless those actions could have some conceivable impact on the estate." *Id.* at 80-81. As Debtor points out, the Original TCC is incorrect. To the extent a proceeding is a "core" proceeding, the Court has jurisdiction and the inquiry ends there. Courts need not consider the impact on the estate unless they are exercising "related-to" jurisdiction. The case law cited by the Original TCC in its supporting footnote supports this position. *See, e.g.*, *Stoe v. Flaherty*, 436 F.3d 209 (finding that the court lacked jurisdiction because the matter was *not* a core proceeding).

Although "the Third Circuit has not addressed this precise issue, other courts have concluded that motions to extend an automatic stay and injunction to non-debtor third parties pursuant to sections 362 and 105 qualify as 'core' proceedings." *LTL Mgmt., LLC v. Those Parties Listed on Appendix A to Complaint*, No. 21-cv-20252 (FLW), 2022 WL 190673, at *4 (D.N.J. Jan. 21, 2022) (collecting cases). Further, Debtor in this case invokes § 362 to obtain the relief it seeks.

Because the instant proceeding invokes a substantive right under the Bankruptcy Code and is a proceeding that, by its nature, could arise only in the context of a bankruptcy case, the Court determines that it is a core proceeding over which this Court can exercise jurisdiction. In denying the Original TCC's motion to withdraw the reference, the district court reached the same conclusion. *Id.* ("Here, the Adversary Proceeding is a 'core' proceeding.").

In any event, the Court determines that it also has "related to" jurisdiction. The Original TCC contends that talc-related claims against the nondebtor Protected Parties have "no conceivable effect on the Debtor's bankruptcy estate . . . ." *Objection of Original TCC* 81, ECF No. 142. As discussed in greater detail *infra*, this Court disagrees. "What will or will not be sufficiently related to a bankruptcy to warrant the exercise of subject matter jurisdiction is a matter that must be developed on a fact-specific, case-by-case basis." *In re W.R. Grace & Co.*, 591 F.3d 164, 174 n.9 (3d Cir. 2009). Here, the Court concludes that Debtor is liable for the talc claims as the result of pre-petition corporate transactions, including the 2021 Corporate Restructuring, and various contractual indemnification obligations. Additionally, although the extent of shared insurance coverage is disputed, it remains uncontested that Debtor shares insurance policies—which are estate property under 11 U.S.C. § 541(a)—with the Protected Parties. Therefore, continued litigation of talc claims against the Protected Parties has a "conceivable effect" on the bankruptcy estate because it effectively seeks to collect and liquidate claims against Debtor and could deplete available insurance coverage. The weight of the case law supports this conclusion. *See, e.g.*, *In re Union Tr. Philadelphia, LLC*, 460 B.R. 644, 657 (E.D. Pa. 2011) (finding that debtor's potential indemnification obligations and the impact on debtor's reorganization efforts,

14

A153

taken together, provide an adequate basis for the Court to find that the state court proceedings are sufficiently "related to" the underlying bankruptcy); *In re Philadelphia Newspapers, LLC*, 423 B.R. at 103 (finding "related to" jurisdiction where debtor might be obligated to indemnify third party in the event of a judgment); *Philadelphia Newspaper, LLC*, 407 B.R. at 614–15 (finding "related to" jurisdiction due to the impact of the litigation on the debtor's reorganization efforts as well as the debtor's practice of indemnifying its employees).[7]

### C.  § 362(a)(1)

In support of its position, Debtor first cites to subsection (1) of § 362(a).  Specifically, Debtor contends that the talc claims are—at their core—an attempt to liquidate and recover claims against Debtor.  Debtor explains that Old JJCI no longer exists and Debtor, alone, is responsible for the talc claims.  Debtor also contends that Old JJCI's and J&J's talc-related liabilities were transferred to Debtor as the result of the corporate transactions previously discussed.  Thus, Debtor asserts that talc-related claims against Old JJCI and J&J constitute "action[s] or proceeding[s] against the debtor" to collect pre-petition debts and are expressly precluded under § 362(a)(1). *Debtor's Supp. Mem.* 41, ECF No. 128 (citing *In re Heating Oil Partners*, No. 08-1976, 2009 WL 5110838, at *6-7 (D. Conn. Dec. 17, 2009)).

---

[7] In a footnote, the Original TCC relies on the Third Circuit's decision in *Federal-Mogul* for the proposition that "related to" bankruptcy jurisdiction "exists only where 'the allegedly related lawsuit would affect the bankruptcy proceeding without the intervention of yet another lawsuit.' " *Objection of Original TCC* 81, n.38, ECF No. 142. (quoting *In re Fed.-Mogul Glob., Inc.*, 300 F.3d 368, 382 (3d Cir. 2002).  As Debtor points out, however, the court in *Federal-Mogul* did not reach the merits of whether the district court had "related to" jurisdiction. *In re Fed.-Mogul Glob., Inc.*, 300 F.3d at 384.  Instead, the appellate court reviewed the district court's denial of defendant's transfer motion in the context of deciding whether to grant a writ of mandamus. *Id.*  Thus, the Original TCC's reliance on *Federal-Mogul* does not alter this Court's conclusion with respect to subject matter jurisdiction.

A154

Additionally, Debtor points out that it is responsible for claims asserted against the Retailers and certain other indemnified parties, including New JJCI and J&J (the "Indemnified Parties"). Accordingly, Debtor argues that although talc claims are asserted against these other entities, Debtor is the true defendant. Indeed, Third Circuit precedent recognizes that the automatic stay under § 362(a)(1) can be extended to third parties where "unusual circumstances" exist. *See McCartney v. Integra Nat. Bank N.*, 106 F.3d at 510. Such unusual circumstances may be found "where 'there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.'" *Id.* (quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)); *see also In re Philadelphia Newspapers, LLC*, 407 B.R. 606, 616 (E.D. Pa. 2009) (explaining that unusual circumstances exist warranting extension of the stay to nondebtors when: "(i) the non-debtor and debtor enjoy such an identity of interests that the suit of the non-debtor is essentially a suit against the debtor; or (ii) the third-party action will have an adverse impact on the debtor's ability to accomplish reorganization"); *In re W.R. Grace & Co.*, No. 01-01139 (JKF), 2004 WL 954772, at *2 (Bankr. D. Del. Apr. 29, 2004).

The Original TCC and AWOK (collectively, the "Objecting Parties") vehemently object to Debtor's request to extend the automatic stay to the Protected Parties. Their primary argument in opposition is bottomed on the Objecting Parties' distaste for the 2021 Corporate Restructuring and the use of the Texas divisional merger statute to create a special purpose vehicle in the hours before the bankruptcy filing to accomplish J&J's goals. *See Objection of Original TCC* 49-52, ECF No. 142, *Objection of AWOK* ¶12, ECF No. 143. Both Objecting Parties ask this Court to

16

look beyond the plain statutory language and see the larger picture. *See Objection of Original TCC* 51-53, ECF No. 142; *Objection of AWOK* 7, ECF No. 143 (asking the Court to "take into account all the relevant circumstances"). In short, they contend it would be inequitable—and produce an "absurd result"—if courts were to permit nondebtors to "avail themselves of the automatic stay simply by unilaterally allocating to the debtor indemnity and other obligations on the eve of the bankruptcy filing." *Objection of Original TCC* 53, ECF No. 142.

This Court recognizes that it is obligated "to construe statutes sensibly and avoid constructions which yield absurd or unjust results." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 302 (3d Cir. 2014) (quoting *United States v. Fontaine*, 697 F.3d 221, 227 (3d Cir. 2012); *see also United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S. Ct. 1026, 103 L.Ed.2d 290 (1989)). However, as discussed at length in the Opinion Denying the Motions to Dismiss, this Court finds no impropriety in the divisional merger used here to create a special-purpose vehicle to address the talc claims and, thus, perceives no "absurd or unjust result" produced if the automatic stay is extended to the Protected Parties to enable Debtor to achieve its ultimate objective. As Debtor points out, and as expressly found by Judge Whitley after the initial hearing, if the stay is *not* extended to the Protected Parties, it is difficult to envision how a successful reorganization can be achieved in this case. *See Transcript of Hearing* 142:15-17, ECF No. 392 in Case No. 21-30589 (Nov. 10, 2021) ("We're not going to have a bankruptcy case of any sort if everybody can go sue J&J and assert the same claims that they would be asserting there.").

The Court acknowledges and appreciates the Objecting Parties' concerns regarding Old JJCI's pre-petition corporate restructuring and Debtor's subsequent bankruptcy filing.

A156

Nevertheless, as detailed in the Opinion Denying the Motions to Dismiss, this Court determines that those valid concerns do not change the fact that Debtor was created pursuant to—and in compliance with—a long-standing Texas statute.  Additionally, those concerns do not establish bad faith, nor do they undermine the legitimate purpose of this bankruptcy.  In so ruling, this Court considered the totality of circumstances, including, but not limited to, litigation posture outside the bankruptcy court, the subjective intent of Debtor and management, the degree of financial distress facing Debtor, the pressures from non-moving creditors, pre-petition litigation conduct, the nature of the creditor body and the extent of assets, the structure and formation of Debtor, and Debtor's reorganizational purpose and exit strategy.  In sum, the Court is not persuaded by the Objecting Parties' allegations of gamesmanship or inequity.  Those arguments provide neither grounds for dismissal, nor a sufficient basis to decline to extend the stay to the Protected Parties.  The case law on which the Original TCC relies is distinguishable.[8]  Therefore—working from the baseline that the bankruptcy was filed in good faith—this Court focuses its attention on Third Circuit precedent as applied to the facts of this case in resolving the instant Motion.

---

[8] Citing *In re Owens Corning*, 419 F.3d 195, 212 (3d Cir. 2005) and *In re Integrated Telecom Express, Inc.*, 384 F.3d 108 (3d Cir. 2004), the Original TCC contends that "the Third Circuit has rejected similar attempts to 'game' the Bankruptcy Code." *Objection of Original TCC* 53, ECF No. 142.  However, in *In re Owens Corning*, the court denied substantive consolidation where it was used as a means of giving debtor(s) an advantage over one group in plan negotiations, and the court in *In re Integrated* found a lack of good faith where the bankruptcy was filed with the sole purposes of prejudicing one creditor.  As discussed at length in this Court's Opinion Denying the Motions to Dismiss, the bankruptcy in this case does not provide Debtor with an improper tactical advantage and does not result in prejudice to nondebtor creditors.  Thus, *In re Owens Corning* and *In re Integrated* do not change this Court's analysis.  The Original TCC also cites multiple cases for the proposition that "feigned" or "collusive" filings should be rejected.  *Objection of Original TCC* 54, ECF No. 142 (citing *Poe v. Ullman*, 367 U.S. 497, 505, 81 S. Ct. 1752, 1757, 6 L. Ed. 2d 989 (1961); *United States v. Johnson*, 319 U.S. 302, 303, 63 S. Ct. 1075, 1076, 87 L. Ed. 1413 (1943); *Muskrat v. United States*, 219 U.S. 346, 31 S. Ct. 250, 55 L. Ed. 246 (1911).  Again, this Court has resolved the issue of good faith and finds the instant bankruptcy is neither "feigned" nor "collusive" and serves a legitimate bankruptcy purpose.  Accordingly, the cases cited by the Original TCC are unpersuasive and do not serve as a basis for denying extension of the automatic stay.

### 1. Identify of Interests

Here, the Court finds that the nondebtor Protected Parties and Debtor enjoy such an identity of interests that a lawsuit asserting talc-related claims against the Protected Parties is essentially a suit against Debtor.  Following the two-day evidentiary hearing in the North Carolina Bankruptcy Court, Judge Whitley reached the same conclusion. *See Transcript of Hearing* 141:8-12, ECF No. 392 in Case No. 21-30589 (Nov. 10, 2021) ("I believe there is, in effect, an identity of interest within the meaning of the *Robins* case and that, notwithstanding the potential that some of the claims may be direct, almost all of them, if not all of them, relate to the debtor's operations.").  As an initial matter, the talc claims against the Protected Parties involve the same products, same time periods, same alleged injuries, and same evidence as claims against Debtor.  *See id.* 138:14-19 ("They're being sued on, effectively, the same products, the same time periods, etc.).  The Objecting Parties do not—and cannot—dispute that Old JJCI no longer exists and that Debtor assumed its liabilities. *See* TEX. BUS. ORGS. CODE ANN. § 10.008(a)(2), (3) (directing that "all liabilities and obligations" of the dividing entity automatically "are allocated to one or more of the . . . new organizations in the manner provided by the plan of merger").  Likewise, the Objecting Parties do not—and cannot—deny the corporate transactions and indemnity agreements that left Debtor ultimately responsible for talc-related liabilities.  Judge Whitley similarly concluded that Old JJCI assumed liability associated with the J&J Baby Products Division. *Transcript of Hearing* 138:13-17, ECF No. 392 in Case No. 21-30589 (Nov. 10, 2021) ("I believe under the circumstances that the language used effectively means that what we had was an assumption of all of the liabilities of the debtor and that is broad enough to cover future product liability claims.").

19

A158

The Original TCC states in its opposition that "the claim of shared identities of interests is based solely on the allocation of agreements to the debtor on the eve of the bankruptcy filing for the very purpose of extending the stay." *Objection of Original TCC* 56, ECF No. 14. The Court is willing to accept that summarization and views it as a valid basis for extending the stay to the Protected Parties—not as a reason to decline extension of the stay as advanced by the Original TCC.

### 2. Impact on Bankruptcy Estate and Reorganization

The Original TCC additionally argues that "the existence of an indemnification from the debtor to a non-debtor . . . is an insufficient ground for extension of the automatic stay." *Objection of Original TCC* 57, ECF No. 14. Rather, the Original TCC insists that a debtor must also demonstrate that "the indemnification obligation threatens the debtor's assets or reorganization." *Id.* Relevant case law and the underlying purpose of the automatic stay support the Original TCC's interpretation. The court in *Robins* provided an illustration, noting that a situation in which extension of the stay would be warranted "would be a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case [because] . . . [t]o refuse application of the statutory stay in that case would defeat the very purpose and intent of the statute." *A.H. Robins Co. v. Piccinin*, 788 F.2d at 999; *see also McCartney*, 106 F.3d at 510. Thus, a critical factor in deciding whether to extend the stay is the potential adverse impact on a debtor's estate and prospect of reorganization.

The Original TCC asserts that Debtor cannot prove that its indemnification obligations expose it to adverse consequences because "Debtor is a shell and has no actual estate to be impacted." *Objection of Original TCC* 58, ECF No. 142. Again, the Original TCC's argument

20

is rooted in its contention that this bankruptcy is a "charade." *Id.* at 57. The Court has already addressed and dispelled this argument in the accompanying Opinion Denying the Motions to Dismiss and will not belabor the point here. The bottom line is that Debtor is valid corporate entity, created properly and in accordance with Texas statute, with a bankruptcy estate comprised of assets and liabilities—including talc-related liabilities and indemnity obligations assumed from Old JJCI. Although the Original TCC attempts to characterize the Funding Agreement as a circular exchange of liability and payments that leaves Debtor's estate ultimately unaffected, this argument ignores the fact that, pursuant to the terms of the Funding Agreement, Debtor must first use its own assets to fund the trust—resorting only to financial contributions from J&J and New JJCI as a backstop. Thus, in this Court's view, the talc claims have an undeniable impact on Debtor's estate. Moreover, the Original TCC's unsupported allegations that Debtor and J&J "will not honor its reimbursement obligations under the Funding Agreement" or intend to "maroon [their] liability" represent mere speculation and wholly ignore this Court's role in supervising the bankruptcy case, the creation and funding of a trust, and trust distributions. *Objection of Original TCC* 58, ECF No. 142. Given Debtor's and J&J's actions in this case— which, to date, have been candid and transparent—there is simply no indication that the Funding Agreement is a "scheme to hinder, delay, and defraud talc powder creditors" as the Original TCC alleges. *Id.* And, to the extent Debtor's actions drift in that direction, this Court is prepared to take swift action and will honor its commitment of ensuring that claimants receive fair and timely compensation under a comprehensive and transparent distribution scheme.

Given the facts of this case, the Court concludes that continued litigation against the

21

A160

Protected Parties would liquidate pending tort claims, as well as indemnification claims, against

Debtor outside of chapter 11 and potentially deplete available insurance coverage—frustrating

the purpose of the automatic stay. *See, e.g.*, *In re Dow Corning Corp.*, 86 F.3d 482, 494 (6th Cir.

1996), *as amended on denial of reh'g and reh'g en banc* (June 3, 1996) ("The potential for Dow

Corning's being held liable to the nondebtors in claims for contribution and indemnification, or

vice versa, suffices to establish a conceivable impact on the estate in bankruptcy."). Moreover,

continued litigation against the Protected Parties would divert funds and resources toward

defense costs and potentially disrupt the flow of funds and resources to Debtor's trust pursuant

to the Funding Agreement. *See, e.g. In re MCSi, Inc.*, 371 B.R. 270, 271–72 (S.D. Ohio 2004)

(quoting *Gray v. Hirsch*, 230 B.R. 239, 243 (S.D.N.Y.1999) and collecting cases in which courts

"stayed actions against non-debtor co-defendants 'where they have found that the bankrupt estate

would be adversely affected because the creditor's action would prevent the non-debtor from

contributing funds to the reorganization, or would consume time and energy of the non-debtor

that would otherwise be devoted to a reorganization effort' "). Furthermore, continued litigation

against the Protected Parties would undoubtedly impair mediation efforts and negotiations within

this bankruptcy and would complicate estimation hearings, with multiple uncoordinated hearings

nationwide.

### 3.  Joint Tortfeasor

The Original TCC also asserts that J&J is a joint tortfeasor with direct liability and, thus,

the automatic stay should not preclude prosecution of those independent and direct claims

against J&J as a nondebtor third party.  The Original TCC cites a host of cases and asserts that

A161

it is "settled law that 'joint tortfeasors' are not entitled to the benefit of the automatic stay upon a co-defendant's bankruptcy filing." *Objection of Original TCC* 60, ECF No. 142. This assertion and the selective portions of underlying case law are misleading. Indeed, as previously discussed, the automatic stay typically applies only to the debtor and, like any other nondebtor third party, does not extend to "joint tortfeasors." Also discussed, there exists an exception to this general rule in that the stay can be extended when the circumstances so warrant. Thus, even assuming direct liability exists, the analysis for whether an extension of the automatic stay is warranted based on "unusual circumstances" remains unaffected. The authority upon which the Original TCC relies does not convince this Court otherwise. Specifically, the Original TCC cites to *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 128 (4th Cir. 1983) and *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1076 (3d Cir. 1983), and quotes the *Robins* court. However, in both *Johns-Manville* and *Williford*, the joint tortfeasors sought to stay proceedings under the theory that the debtor co-defendants were "indispensable parties." Neither of those cases involved the situation presented here, wherein Debtor argues that suits against the Protected Parties (the "joint tortfeasors") will have an adverse impact on the bankruptcy estate. Additionally, the Original TCC quotes from the *Robins* decision and asserts that the *Robins* court "opin[ed]" that the automatic stay would "clearly not extend to such non debtor." *Robins*, 788 F.2d at 999. However, the language quoted is truly dicta in which the *Robins* court discusses the analysis of a bankruptcy court in the District of Connecticut, *see In re Metal Ctr., Inc.*, 31 B.R. 458 (Bankr. D. Conn. 1983). Further, in the very next sentence, the *Robins* court acknowledges the exception to the general rule in its continued discussion of the *In re Metal* opinion, explaining

A162

that if "a debtor and nondebtor are so bound by statute or contract that the liability of the nondebtor is imputed to the debtor by operation of law, then the Congressional intent to provide relief to debtors would be frustrated by permitting indirectly what is expressly prohibited in the Code. . . . Clearly, the debtor's protection must be extended to enjoin litigation against others if the result would be binding upon the debtor's estate." *Robins*, 788 F.2d at 999 (quoting *In re Metal Ctr., Inc.*, 31 B.R. at 462).

For the foregoing reasons, the Original TCC's "joint tortfeasor" argument does not preclude extension of the automatic stay to the Protected Parties.

### 4.  Challenge to the 1979 Agreement

The Original TCC disputes Debtor's talc liability by challenging the 1979 transaction in which Old JJCI agreed to indemnify J&J (the "1979 Agreement"). Specifically, the Original TCC claims there is no legal or factual support in the record. The Court disagrees. The 1979 Agreement provides, in relevant part:

> WHEREAS, J&J has a number of operating divisions conducting various lines of business; and WHEREAS, one of these operating divisions is named the JOHNSON & JOHNSON BABY PRODUCTS COMPANY Division (sometimes hereinafter called the "BABY Division"); and
>
> WHEREAS, the Subsidiary corporation, is wholly-owned by J&J and J&J is desirous of **transferring to this Subsidiary all assets and liabilities** which are now allocated to the BABY Division on the books or records of Johnson & Johnson; …
>
> *1979 Agreement* (emphasis added), *Movants' Ex.* 600.02.

Section 1 of the 1979 Agreement clearly provides that J&J Baby Products assumed all

24

A163

liabilities of every kind and description associated with the Baby Products division and indemnified J&J for such liabilities:

> J&J . . . does grant, bargain, sell, assign, alien, remise, release, convey, transfer, set over and confirm, unto the Subsidiary, its successors and assigns, forever, all the businesses, franchises, properties and assets . . . which are now allocated on its books or records of J&J to its Baby Division . . . .
>
> . . .
>
> . . . Subsidiary agrees to assume . . . all the indebtedness, liabilities and obligations of every kind and description which are allocated on the books or records of J&J as pertaining to its BABY Division and the Subsidiary hereby covenants and agrees with J&J that the Subsidiary will forever . . . indemnify and save harmless J&J against all the indebtedness, liabilities and obligations aforesaid hereby assumed. . . .
>
> . . .
>
> [T]he covenants and agreements herein contained shall inure to the benefit of and shall bind the respective parties hereto and their respective successors and assigns.

*Id.* §§ 1, 4.    In interpreting the language of the 1979 Agreement and the relevant circumstances, the Court concludes that J&J Baby Products assumed all liabilities, including contingent and future product liability claims.    The Original TCC makes much of the fact that the 1979 Agreement uses the phrase "on the books or records."    In the Original TCC's view, the use of this phrase has a specific meaning in the context of corporate law and, thus, limited the scope of liability assumed to only those liabilities existing and reported on J&J's books and records at the time of the transaction.    The Original TCC cites to *Deutsche Bank Nat'l Tr. Co. v. Fed. Deposit Ins. Corp.*, 109 F. Supp. 3d 179 (D.D.C. 2015) in support of this position.    In *Deutsche*, the court analyzed a contractual provision that provided for the sale of liabilities and used the phrase "which are reflected on the Books and Records" to define those liabilities. *Deutsche*, 109 F. Supp

25

A164

at 198. When a dispute arose as to the amount of the liabilities assumed in the contract, the *Deutsche* court concluded that "the liabilities assumed by [the buyer] do not extend beyond the amounts listed [in the seller's] financial accounting records." *Id.* However, the contractual clause at issue in *Duetsche* is distinguishable from the clause at issue in this case in several respects. First, the contract in *Duetsche* memorialized a sale between two unrelated entities as opposed to the inter-company transfer in the present case. Second, the contract in *Deutsche* provided that the liabilities were assumed "expressly . . . at Book Value." *Id.* The reference to "Book Value"— which is absent from the contract at issue in the instant case—suggests a finite value to the liability being transferred. In contrast, the agreement at issue here does not include such definitive language. Instead, it includes the word "forever" and explains that the contract will bind the parties as well as their successors and assigns. *1979 Agreement*, § 1. Accordingly, it appears the 1979 Agreement contemplates continuing and future obligations resulting from the transfer of the business. In this respect the Court is persuaded by the decision in *Bouton v. Litton Indus., Inc.*, 423 F.2d 643 (3d Cir. 1970), a case relied on by Debtor. Like the parties in *Bouton*, the parties in this case expressed a clear intention of carrying that business forward after the transfer. *Bouton*, 423 F.2d at 651.

Additionally, the court in *Deutsche* used extrinsic evidence to determine the meaning of the contract. *Deutsche*, 109 F. Supp at 204-207. The New Jersey Supreme Court "permit[s] a broad use of extrinsic evidence to achieve the ultimate goal of discovering the intent of the parties." *Conway v. 287 Corp. Ctr. Assocs.*, 187 N.J. 259, 270, 901 A.2d 341, 347 (2006) ("Extrinsic evidence may be used to uncover the true meaning of contractual terms.") (citing *Atl.*

26

*N. Airlines v. Schwimmer*, 12 N.J. 293, 304, 96 A.2d 652, 657 (1953)); *see also Caldwell Trucking PRP v. Rexon Tech. Corp.*, 421 F.3d 234, 243–44 (3d Cir. 2005) (stating that "under New Jersey law, courts should interpret a contract considering the objective intent manifested in the language of the contract in light of the circumstances surrounding the transaction") (internal quotations and citations omitted); *Pier 541 LLC v. Crab House, Inc.*, No. 19-00437, 2021 WL 4438128, at *3 (D.N.J. Sept. 28, 2021). While the *Deutsche* court ultimately concluded that the contract limited the amount of liability assumed, the factual distinctions between the circumstances in *Deutsche* and the case at hand compel this Court to reach an opposite conclusion. The meeting minutes for the J&J Board of Directors Meeting held on December 12, 1978 provide insight into the purpose of the 1979 Agreement. Specifically, the minutes reflect that, in furtherance of J&J's "long standing policy of decentralization of corporate business," the 1979 Agreement was intended to transfer all assets to subsidiaries who would, in turn, assume liabilities. *c* Thus, the construction of the 1979 Agreement advanced by the Original TCC, which limits the liability assumed to such reported in the books and records at the time of the transaction, is inconsistent with the stated purpose of the transaction as reflected in the Board Minutes.

During oral argument on this Motion, counsel for TCC II asserted that the language of the 1979 Agreement was "particular" and "specific," suggesting that the Court should not look beyond the plain meaning of the Agreement's terms for purposes of interpretation. However, evidence of circumstances is admissible in aid of interpretation of an integrated agreement, even though the contract on its face is free from ambiguity. *See Conway*, 187 N.J. 259 (citing

*Schwimmer*, 12 N.J. 293). In point of fact, this Court finds the 1979 Agreement to be ambiguous as to the status and treatment of future liability. Indeed, the 1979 Agreement is silent in this respect. "Under New Jersey law, ambiguities in an indemnification agreement are generally construed against the indemnitee," which is the party receiving indemnity. *Caldwell Trucking PRP*, 421 F.3d at 244 (3d Cir. 2005) (citing *SmithKline Beecham Corp. v. Rohm & Haas Co.*, 89 F.3d 154, 161 n.3 (3d Cir. 1996). Thus, in this case, any ambiguity in the 1979 Agreement should be construed in favor of Old JJCI as the indemnitor. The Court need not engage further in this analysis as the record demonstrates that both Old JJCI and the Protected Parties share a common understanding as to which party was responsible for talc-related liabilities following the 1979 Agreement.

In addition, when faced with the absence of a critical contractual term—here, future liability—"courts 'will imply a reasonable missing term or, if necessary, will receive evidence to provide a basis for such an implication.' " *Twp. of White v. Castle Ridge Dev. Corp.*, 419 N.J. Super. 68, 76–77, 16 A.3d 399, 404 (App. Div. 2011) (quoting *Satellite Entm't Ctr., Inc. v. Keaton,* 347 N.J. Super. 268, 276, 789 A.2d 662 (App. Div. 2002)). "In particular, courts will look to, among other things, all the relevant circumstances surrounding the transaction, as well as evidence of the parties' course of dealing, usage and course of performance." *Elliott & Frantz, Inc. v. Ingersoll–Rand Co.,* 457 F.3d 312, 328 (3d Cir. 2006) (applying New Jersey law); *see also* 49 N.J. PRACTICE PROCEDURE § 7:25 (2010 ed.) (citing RESTATEMENT (SECOND) OF CONTRACTS § 202(4) (1979)). Accordingly, the Court considers the parties' course of performance since the time of the 1979 Agreement to glean the intent of the parties.

A167

Debtor represents, and the Original TCC does not dispute, that "all talc-related costs not otherwise covered by insurance have been charged to Old JJCI since the assumption of liabilities under the 1979 Agreement." *Debtor's Omnibus Reply* 19, ECF No 146. Although the Original TCC attempts to frame this course of action as "purely a function of accounting policy, not legal responsibility," *Objection of Original TCC* 38, ECF No. 142, deposition and trial testimony from Adam Lisman—who is the assistant controller for Johnson & Johnson and the Apex Company—confirms that the accounting was based on an underlying obligation. Specifically, Mr. Lisman confirmed that since the 1979 transaction, Old JJCI is legally responsible for, and has actually paid, all talc-related expenses. *Trial Tr.* 123:21-22, Feb. 16, 2022, ECF No. 1518 ("My understanding is that JJCI borne [sic] all financial responsibility [for the talc litigation]."); *Lisman Dep. Tr.* 117:1-3, Oct. 30, 2021, *Ex. H to Toroborg Decl.*, ECF No. 1444-9 ("[T]hese are talc product liability costs that JJCI was ultimately responsible for, which is why it is showing up as an expense on their account."); *id* at 194:21, 195:10 ("Q: And does that mean that accounting follows the legal obligation associated with the expense? . . . A: Yes.") (objections omitted). Accordingly, the parties' course of performance since the time of the 1979 Agreement reinforces this Court's conclusion that Old JJCI was legally responsible for talc-related liabilities as a result of the 1979 Agreement.

The 1979 Agreement also provides J&J Baby Products with an irrevocable power of attorney to substitute itself "for J&J and in its [J&J's] name and stead . . . on behalf of and for the benefit of the Subsidiary" to, among other things, "defend and compromise any and all actions, suits or proceedings in respect of any said Properties"—defined as the Baby Products

A168

division's "businesses, franchises, properties and asset." *1979 Agreement* §2, *Movants' Ex.* 600.02. Thus, in 1979, J&J Baby Products became the real party in interest for all actions, suits or proceedings relating to the talc previously sold by J&J or in any way arising out of the talc business that was being transferred. And, as the result of a series of transactions culminating in the 2021 Corporate Restructuring, Debtor assumed that liability and substituted in as the real party in interest. This, in turn, weighs in favor of extending the stay.

### 5. Retailers

The Original TCC next contends that an extension of the stay to the Retailers is inappropriate because no identity of interests exists between Debtor and the Retailers. In support of this position, the Original TCC revives its argument that the Retailers are joint tortfeasors who may owe direct liability to talc claimants. The Original TCC asserts that "the fact that Old JJCI, after the fact, may have entered into Tender Agreements [or indemnification agreements] with the retailers does not eliminate such liability." *Objection of Original TCC* 70, ECF No. 142. Nonetheless, as discussed, the existence of joint tortfeasor status or direct liability does not end the inquiry as to whether the automatic stay should be extended to a nondebtor co-defendant. Here, Debtor certifies that it owes contractual, common law, and statutory indemnification obligations to the Retailers and the Indemnified Parties. *Kim Decl.* ¶ 53, ECF No. 5 in Case No. 21-30589. These obligations—viewed in conjunction with the fact that the claims against the Retailers involve the same products, the same time period, the same alleged defect, and the same alleged harm as the claims against Debtor—are sufficient to establish the "unusual circumstances" warranting extension of the stay. In fact, the Court cannot identify a scenario

30

A169

where a retailer would have liability without some action or inaction by Debtor's predecessor also forming the basis of a cause of action. There is nothing in the record to demonstrate that any single lawsuit—out of the tens of thousands pending—consist of claims against Retailers in which J&J or Old JJCI have not been named as a defendant for the manufacture/sale of the product.

### 6. Absolute Indemnification

The Original TCC asserts that Debtor's indemnification obligation must be "absolute" to warrant extension of the automatic stay. *See, e.g. Robins* (giving example of "unusual circumstance" as where a debtor has "absolute" indemnity obligation to nondebtor); *Stanford v. Foamex L.P.*, No. CIV. A. 07-4225, 2009 WL 1033607, at *2 n.9 (E.D. Pa. Apr. 15, 2009) ("Even assuming that Foamex is the real party in interest, Foamex's indemnification obligations do not appear absolute, as required by courts extending the stay due to the existence of indemnification agreements; *id.* (collecting cases, including *Hess Corp. v. Performance Texaco, Inc.*, No. 3:08-CV-1426, 2008 WL 4960203 at *2 (M.D. Pa. Nov. 19, 2008) (reasoning that indemnification agreements constitute unusual circumstances only in "actions against non-debtors who are entitled to *absolute indemnity* by the debtor for a judgment against them") (emphasis added)) (citing *In re Mid-Atl. Handling Sys., LLC*, 304 B.R. 111, 128 (Bankr. D.N.J. 2003)). In opposition, Debtor cites to *In re Dow Corning Corp.*, for the proposition that "[t]here is no requirement that there be 'automatic' liability in respect of indemnification obligations." *Debtor's Omnibus Reply* 31, ECF No. 146 (citing *In re Dow Corning, Corp.*, 86 F.3d 482 (6th Cir. 1996), *as amended on denial of reh'g and reh'g en banc* (June 3, 1996)). Notably, in *In re*

31

A170

*Dow Corning*, the Sixth Circuit observed that "[i]t has become clear following *Pacor* that 'automatic' liability is not necessarily a prerequisite for a finding of "related to" jurisdiction." *In re Dow Corning, Corp.*, 86 F.3d at 491 (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 987 (3d Cir. 1984)). Thus, the discussion of "automatic" liability in that case—and in *Pacor*—was in the context of a jurisdictional analysis; not in the context here, in which this Court is considering whether an "unusual circumstance" exists warranting extension of the automatic stay to a nondebtor third party. Nevertheless, this Court remains unpersuaded that "absolute" indemnity is a prerequisite for extension of the automatic stay.

The Fourth Circuit clarified in the follow-up case related to the A.H. Robins bankruptcy that it previously "found that a stay was authorized under 11 U.S.C. § 362(a)(3) because Aetna *might* seek indemnification from Robins for any damages it had to pay, thus implicating the debtor's property." *In re A.H. Robins Co. Inc. (A.H. Robins Co. v. Aetna)*, 828 F.2d 1023, 1025 (4th Cir. 1987) (emphasis added). The Fourth Circuit's use of the word "might" suggests that conditional indemnification is sufficient to trigger extension of automatic stay. Other courts which have addressed this issue likewise indicate that the mere possibility of indemnification obligations warrants extension of the automatic stay. *See, e.g., In re W.R. Grace & Co.*, 115 F. App'x 565, 568–69 (3d Cir. 2004) (refusing to modify injunction precluding state court action against nondebtor third parties because the "prospect of indemnification" warranted a stay); *In re Philadelphia Newspapers, LLC*, 423 B.R. 98 (E.D. Pa. 2010) (holding that unusual circumstances existed to justify extension of automatic stay where debtor owed potential indemnification obligation); *In re Philadelphia Newspapers, LLC*, 407 B.R. 606, 616 (E.D. Pa.

32

A171

2009) (holding that "the 'unusual circumstances' to warrant the extension of the section 362(a) stay [were] present . . . [in part] because the Debtors owe potential contractual and common law duties to indemnify the Non–Debtors").

Notwithstanding, Debtor asserted during trial that its indemnification obligation is, in fact, automatic. Counsel for Debtor argued that the only prerequisite to the indemnification obligation is that Debtor manufactured the product, which its predecessor indisputably did. Thus, Debtor concludes that indemnification obligations inarguably exist in this case and are automatically triggered by lawsuits involving talc products. The Objecting Parties did not demonstrate—in their briefing or during trial—that Debtor's indemnification obligations are conditional or that there exists a basis for Debtor to avoid indemnification liability. Accordingly, even assuming absolute indemnification is a prerequisite, or that Debtor's indemnification obligations are conditional, nothing in the record provides this Court with a plausible basis for concluding that the limitations on Debtor's obligations would come into play. The Court therefore determines that Debtor's indemnification obligations are automatic and, as a corollary, rejects the Original TCC's objection premised on absolute indemnification. *See, e.g.*, *Gulfmark Offshore, Inc. v. Bender Shipbuilding & Repair Co.*, No. CIV. A. 09-0249, 2009 WL 2413664, at *2 (S.D. Ala. Aug. 3, 2009) (rejecting party's objection premised on absence of absolute indemnification because objecting party "points to no facts or circumstances tending to suggest that those conditions [to indemnification liability] would or might be relevant here").

33

### 7.  Tender Agreements

The Original TCC further submits that Debtor has not "proven the existence, let alone, terms, of all of these claimed Tender Agreements.  Scant few are in the record." *Objection of Original TCC* 70, ECF No. 142.  In response, Debtor counters that "this [argument] ignores that the Debtor has provided a summary of all the Tender Agreements, produced exemplars of many such agreements and also has common-law indemnification obligations to the Retailers." *Debtor's Omnibus Reply* 24, ECF No. 146.  Moreover, this Court would be willing at a later date to review continuance of the stay if a record exists establishing the lack of a Tender Agreement or other contractual obligation.

### 8.  Res Judicata, Collateral Estoppel, and Evidentiary Prejudice

The Debtor additionally relies on the principles of res judicata, collateral estoppel, and record taint in support of its Motion.  Specifically, Debtor contends that permitting continued litigation against the Protected Parties "creates risks of binding the Debtor through res judicata and collateral estoppel, and creating an evidentiary record that prejudices the Debtor." *Debtor's Supp. Mem.* 44, ECF No. 128.  The Court agrees.

In *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 206 L. Ed. 2d 893 (2020), the Supreme Court explained the doctrines of res judicata and collateral estoppel.  "[I]ssue preclusion (sometimes called collateral estoppel) . . . precludes a party from relitigating an issue actually decided in a prior case and necessary to the judgment." *Id.* at 1594 (citing *Allen v. McCurry*, 449 U.S. 90, 94, 101 S. Ct. 411, 66 L.Ed.2d 308 (1980)) (other citations

34

A173

omitted).  Claim preclusion (or res judicata), on the other hand, "prevents parties from raising

issues that could have been raised and decided in a prior action—even if they were not actually

litigated." *Id; see also Beasley v. Howard*, 14 F.4th 226, 231–32 (3d Cir. 2021).

### a. Collateral Estoppel

The Court will first address the doctrine of collateral estoppel.  In order for collateral

estoppel to apply, the following four elements must be satisfied: "(1) the identical issue was

previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was

necessary to the decision; and (4) the party being precluded from relitigating the issue was fully

represented in the prior action." *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d

237, 247–48 (3d Cir. 2010) (quoting *Szehinskyj v. Att'y Gen.*, 432 F.3d 253, 255 (3d Cir. 2005)).

Collateral estoppel will also apply to a person who is not a formal party, to the extent such person

also had "the opportunity to present proofs and argument" in the previous litigation. *Taylor*, 553

U.S. at 895 (quoting Restatement (Second) of Judgments § 39, cmt. a (Am. L. Inst. 1980)).

In the instant case, the Original TCC contends that Debtor's apprehension regarding

potential use of collateral estoppel in future litigation is "misplaced." *Objection of Original TCC*

72, ECF No. 142.  The Original TCC argues that collateral estoppel cannot apply when the party

against whom the earlier decision is asserted did not have a full and fair opportunity to litigate

that issue in the earlier case. *Id.* (citing *Allen v. McCurry*, 449 U.S. 90, 101 S. Ct. 411, 66 L. Ed.

2d 308 (1980)).  Debtor will not be a party to continued litigation against the nondebtor

defendants, thus, in the Original TCC's view, Debtor cannot be collaterally estopped from later

A174

litigating any issue decided in those actions.  The Third Circuit explicitly cautioned against this type of logic in *In re W.R. Grace & Co.*, 115 F. App'x 565 (3d Cir. 2004).  In that case, a debtor sought extension of the automatic stay to a co-defendant and relied, in part, on the theory of collateral estoppel.  The plaintiff in *In re W.R. Grace* set forth the same theory that the Original TCC advances here: If the debtor is not a party to the litigation against the nondebtor, the debtor will not be collaterally estopped from later litigating those same issues in an action against it.  The Third Circuit cautioned that this theory should not be tested at the debtor's peril because "[i]t is more supposition than certainty at this juncture." *Id.* at 569.  In a footnote, the Third Circuit explained that it believed the issue to be "at least unclear," and cited several cases where courts had determined that a debtor may be adversely affected by liability determinations or witness testimony in suits against nondebtors. *Id.* at 569 n.4 (citing *United Nat'l Ins. Co. v. Equip. Ins. Managers,* No. 95–CV–0116, 1997 WL 241152, at *11–13 (3d Cir. May 6, 1997); *In re American Film Technologies, Inc.,* 175 B.R. 847, 850 (Bankr. D. Del. 1994); *In re Johns–Manville Corp.,* 40 B.R. 219, 225 (S.D.N.Y. 1984) (discussing the potential effect that witness testimony could have on the debtor)).  Further, the Third Circuit observed that "the courts have never adopted the absence of collateral estoppel as the test for preventing actions from proceeding against third parties when the debtor is protected by the automatic stay.  Rather, courts employ a broader view of the potential impact on the debtor." *In re W.R. Grace & Co.*, 115 F. App'x at 570 (quoting *In re A.H. Robins Co.*, 828 F.2d at 1025) (explaining that a proper test for extension of the stay "is generally whether the litigation 'could interfere with the reorganization of the debtor' ")).

36

A175

This Court sees no reason to deviate from the prudent course navigated by the Third Circuit in *In re W.R. Grace*. The possibility that collateral estoppel may not adversely impact Debtor in subsequent litigation does not outweigh the many reasons why extension of the stay is appropriate. The cases cited by the Original TCC are distinguishable and do not suggest otherwise. First, the Second Circuit in *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282 (2d Cir. 2003) denied extension of the to a nondebtor where the basis for doing so was premised "solely" on the apprehension of later use against the debtor of offensive collateral estoppel or the precedential effect of an adverse decision. Here, Debtor's basis for extending the stay is not bottomed "solely" on collateral estoppel concerns. This Court additionally notes that, in *Queenie*, the Second Circuit observed that the stay can apply to nondebtors if a claim against the nondebtor will have an immediate adverse economic consequence for the debtor's estate and did, in fact, extend the stay to a different entity because it was wholly-owned by the debtor, and adjudication of a claim against that nondebtor entity would have an immediate adverse economic impact on the debtor. *Id.* at 287-88 (citing *A.H. Robins Co. v. Piccinin*, 788 F.2d at 999 (4th Cir. 1986)) (other citations omitted). Thus, the holding *Queenie* does not support the Original TCC's position regarding collateral estoppel and, instead, further buttresses this Court's decision to extend the stay in light of the adverse economic impact of the continued litigation on Debtor.

Next, *Int'l Union of Painters & Allied Trades Dist. Council No. 21 Health & Welfare Fund v. Serv. Painting, Inc.*, No. CV 18-3480, 2019 WL 2143370 (E.D. Pa. May 16, 2019)—another case relied on by the Original TCC—is distinguishable. In that case, the court explained that "collateral estoppel concerns arise when the debtor owes an indemnification obligation to

A176

the non-debtor," and the court declined to extend the stay because the nondebtor had neither argued nor offered evidence that the debtor owed him an indemnification obligation. *Id.* at *9. Here, Debtor's indemnification obligations are clearly established. Likewise, *In re MCSi, Inc.*, 371 B.R. 270 (S.D. Ohio 2004) offers the Original TCC no help. In that case, third parties sought to lift the stay as to certain nondebtor co-defendants who had previously been covered by the stay by way court order. The nondebtor co-defendants objected. In its analysis, the *MCSi* court acknowledged that proceedings against nondebtor co-defendants can be properly stayed if certain "unusual circumstances" exist. *Id.* at 271 (citing *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 314 (6th Cir.2000), *cert. denied,* 533 U.S. 951, 121 S. Ct. 2594, 150 L.Ed.2d 752 (2001); *A.H. Robins Company, Inc.*, 788 F.2d 994). However, the *MCSi* court rejected each and every basis for extending the stay and found no such "unusual circumstances" present. Thus, when addressing the nondebtors' concern regarding collateral estoppel, the court observed that— although it was a valid concern—"this concern has never been the sole justification for extending the stay as to such co-defendants." *Id.* at 275. Further, a critical factor in the *MCSi* court's analysis was that the debtor did not oppose lifting the stay as to those nondebtor co-defendants and "its silence is deafening." *In re MCSi, Inc.*, 371 B.R. at 275. In the present case, Debtor is not silent and instead is explicitly requesting extension of the stay, and, again, collateral estoppel is not its sole basis for doing so.

### b.  Res Judicata

Res judicata—or claim preclusion—precludes relitigation of claims that could have been asserted and decided in a prior action. It bars not only claims that were brought in a previous

38

A177

action, but also claims that could have been brought. *Beasley v. Howard*, 14 F.4th 226, 231 (3d

Cir. 2021); *Post v. Hartford Ins. Co.*, 501 F.3d 154, 169 (3d Cir. 2007). The Supreme Court has

explained that "[i]f a later suit advances the same claim as an earlier suit between the same parties

[or their privies], the earlier suit's judgment 'prevents litigation of all grounds for, **or defenses**

**to**, recovery that were previously available to the parties, regardless of whether they were

asserted or determined in the prior proceeding.'" *Lucky Brand Dungarees, Inc.*, 140 S. Ct. at

1594-95 (quoting *Brown v. Felsen*, 442 U.S. 127, 131, 99 S. Ct. 2205, 60 L.Ed.2d 767 (1979))

(emphasis added). A party seeking to invoke the res judicata doctrine must demonstrate that

there has been "(1) a final judgment on the merits in a prior suit involving (2) the same parties

or their privies and (3) a subsequent suit based on the same cause of action." *Duhaney v. Att'y*

*Gen. of the U.S.*, 621 F.3d 340, 347 (3d Cir. 2010) (citing *In re Mullarkey*, 536 F.3d 215, 225

(3d Cir. 2008)); *see also Kenny v. Schrading*, No. 20-cv-15786 (MASDEA), 2021 WL 5495898,

at *2 (D.N.J. Nov. 23, 2021).

Although Debtor cites to both collateral estoppel *and* res judicata in its submissions, the

substantive argument it presents is focused entirely on collateral estoppel. The cases on which

Debtor relies in support of its position likewise focus on the potential prejudicial effect of

collateral estoppel, as opposed to res judicata.[9] Indeed, the parties' briefs devote very little

---

[9] *See, e.g.*, *McCartney v. Integra Nat. Bank N.*, 106 F.3d 506, 512 (3d Cir. 1997) (no mention of res judicata); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1000 (4th Cir. 1986) (using term "res judicata" only once while quoting another case and providing no analysis of the doctrine); *In re Mallinckrodt Plc*, No. AP 20-50850-JTD, 2021 WL 523625, at *8 (D. Del. Feb. 11, 2021) (no mention of res judicata); *In re Bestwall LLC*, 606 B.R. 243, 256 (Bankr. W.D.N.C. 2019), *aff'd*, No. 3:20-CV-105-RJC, 2022 WL 68763 (W.D.N.C. Jan. 6, 2022) (mentioning the term "res judicata" but citing to case law that analyzed risk of prejudice based on collateral estoppel only); *In re W.R. Grace & Co.*, 386 B.R. 17, 24 (Bankr. D. Del. 2008) (no mention of res judicata); *In re Am. Film Techs., Inc.*, 175 B.R. 847, 850 (Bankr. D. Del. 1994) (discussing only doctrine of collateral estoppel); *In re Sudbury, Inc.*, 140 B.R. 461, 464 (Bankr. N.D. Ohio

A178

attention to this doctrine, mentioning the term only a few times without development. It appears to this Court that parties in situations similar to Debtor—and courts addressing issues similar to those facing this Court—reference both doctrines in the interest of completeness, but do not adequately acknowledge their different applications or develop their arguments. Nevertheless, this Court acknowledges that res judicata "is an affirmative defense, and 'the party asserting [the doctrine] bear[s] the burden of showing that it applies.' " *Edwards v. U.S. Dep't of H.U.D.*, 799 F. App'x 113, 114 (3d Cir. 2020) (quoting *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir. 1984)). It is, therefore, unnecessary for this Court to explore in detail the potential preclusive effect of final judgment against the Protected Parties. *See, e.g. In re Harang*, No. 21-8003, 2021 WL 6128992, at *5 (B.A.P. 6th Cir. Dec. 28, 2021) (noting that the preclusive effect of a ruling is an "open question for another court in a collateral proceeding"). Rather, it suffices to acknowledge that there *exists a risk* that the doctrine of res judicata could adversely impact Debtor in future litigation. This risk weighs in favor of extending the stay under § 362(a)(1). *See In re W.R. Grace & Co.*, 115 F. App'x 565 (holding that risk of future preclusive consequences was enough to weigh in favor of extending the stay).

### c. Record Taint

Finally, Debtor asserts that continued litigation could create an evidentiary record that would negatively impact subsequent litigation—a concept otherwise known as "record taint." In

---

1992) (finding that extension of stay was warranted where debtor had legitimate indemnity and collateral estoppel concerns and not discussing res judicata); *In re Johns-Manville Corp.*, 26 B.R. 420, 429 (Bankr. S.D.N.Y. 1983), *aff'd*, 40 B.R. 219 (S.D.N.Y. 1984), and *appeal allowed, decision vacated in part*, 41 B.R. 926 (S.D.N.Y. 1984) (using the term "res judicata" only once without analysis and instead finding basis to extend stay where debtor "could be collaterally estopped in subsequent suits from relitigating issues determined against its officers and directors").

40

deciding whether to extend the stay, the Third Circuit has considered the risk of record taint as part of its "broad[] view of the potential impact on the debtor." *See, e.g., In re W.R. Grace & Co.*, 115 F. App'x 565, 569 n.4 (3d Cir. 2004) (citing *In re Johns-Manville Corp.*, 40 B.R. 219, 225 (S.D.N.Y. 1984) and acknowledging a risk that the evidentiary record created in a case against a nondebtor could later be used in a case against the debtor); *In re Mallinckrodt PLC*, Adv. Pro. No. 20-50850-JTD, 2021 WL 5275781, at *2 (D. Del. Nov. 10, 2021) (denying leave to file interlocutory appeal of order extending preliminary injunction because bankruptcy court appropriately performed "unusual circumstances" test and held that continued proceedings created "significant risk" of, among other thing, record taint); *In re W.R. Grace & Co.*, 386 B.R. 17, 35 (Bankr. D. Del. 2008) ("Under this 'broader view of the potential impact on the debtor,' this court takes into account the risks of collateral estoppel and record taint."). The Original TCC acknowledges that the possibility of record taint has been cited as a basis for extension of the automatic stay. *See Objection of Original TCC* 73 n.34, ECF No. 142). Nevertheless, the Original TCC asserts that the factors supporting such a finding are not present in the instant case. The Court disagrees. Because the talc-related claims against the Debtor and the Protected Parties implicate the same product, the same time period, the same alleged defect and the same alleged harm, it is possible that the evidentiary record developed in continued litigation against the Protected Parties could prejudice Debtor—especially considering that Debtor would be absent from the continued litigation. As stated previously, the risk that litigation against the Protected Parties could result in adverse consequences for Debtor—such as record taint—weighs in favor of extending the automatic stay.

41

**D. § 362(a)(3)**

Debtor also looks to § 362(a)(3) as a basis for staying proceedings against the Protected Parties. Subsection (a)(3) of the statute directs a stay of any action against an entity from obtaining possession of or exercising control over the property of the bankruptcy estate. 11 U.S.C. § 362(a)(3). "It has long been the rule in this Circuit that insurance policies are considered part of the property of a bankruptcy estate." *ACandS, Inc. v. Travelers Cas. & Sur. Co.*, 435 F.3d 252, 260 (3d Cir. 2006) (collecting cases); *see also In re W.R. Grace & Co.*, 475 B.R. 34, 148–49 (D. Del. 2012), *aff'd sub nom. In re WR Grace & Co.*, 729 F.3d 332 (3d Cir. 2013), and *aff'd*, 532 F. App'x 264 (3d Cir. 2013), and *aff'd*, 729 F.3d 311 (3d Cir. 2013), and *aff'd sub nom. In re WR Grace & Co.*, 729 F.3d 332 (3d Cir. 2013).

Here, Debtor states that "J&J and the Debtor are both covered for talc-related claims under various shared insurance policies" and that "[t]he Retailers are named as insureds in many such policies." *Debtor's Supp. Mem.* 45, ECF No. 128. Thus, Debtor asserts that prosecution of claims against J&J or the Retailers would deplete insurance proceeds available to Debtor, thereby diminishing the bankruptcy estate. The Original TCC concedes that insurance policies are estate property. Nevertheless, the Original TCC maintains that § 362(a)(3) does not apply because "[e]ither no coverage exists or, if it does, it has been exhausted." *Objection of Original TCC* 76, ECF No. 142. With respect to the existence of coverage, the Original TCC points out that the insurance carriers are currently disputing coverage. In the Original TCC's view, it remains uncertain whether Debtor is entitled to coverage which, in turn, casts doubt on whether actions against co-insureds would actually deplete the policies and affect the bankruptcy estate. The

42

A181

Original TCC further argues that J&J and its affiliates have already exceeded the limits of coverage as the result of past litigation and exhausted any coverage to which Debtor may have been entitled. Thus, the Original TCC contends that continued litigation against the co-insureds would not affect estate property because there can be no further depletion of exhausted policies.

Ultimately, it is unquestionable that shared policies exist. Admittedly, certain coverage is disputed, and no definitive determination has been made as to exhaustion. However, these uncertainties do not change the fact that that the policies are estate property. *See In re W.R. Grace & Co.*, 475 B.R. at 81 (collecting cases). Moreover, as Debtor points out, and contrary to the Original TCC's assertions, the insurance policies have not yet been exhausted because "only payments made by the policyholder's insurers erode or exhaust the limits of the policies." *Omnibus Reply* 37, ECF No. 146. Although Old JJCI and J&J have incurred significant losses from the underlying talc claims, no agreement has been reached—nor has a court ruling been issued—regarding the allocation of those talc losses across the policy periods in question. Thus, nearly the entire policy coverage of $2 billion is potentially still available to Debtor and J&J.

Furthermore, that there are tens of thousands of talc-related actions pending with potential indemnity and that these claims far exceed the $2 billion policy limit are facts well-established in the record.[10] *See A.H. Robins Co.*, 788 F.2d at 1008 (4th Cir. 1986) ("That there are thousands of Dalkon Shield actions and claims pending is a fact established in the record and

---

[10] As detailed in Dr. Bell's expert report, at the time of filing, Debtor faced nearly 40,000 pending tort claims, with thousands of additional claims expected annually for decades to come. *Expert Report of Gregory K. Bell, Ph.D.* ("*Bell Report*") at 10. Additionally, as of the petition date, Debtor anticipated billions of dollars in talc-related liability and defense costs. *Id.* Indeed, in the first nine months of 2021, more than 12,300 new lawsuits were filed. *Id.*

A182

the limited fund available under Robins' insurance policy is recognized in the record."). To the extent suits are permitted to proceed against additional insureds, those parties will incur costs that will undoubtedly deplete the insurance potentially available to Debtor for the talc claims.

This Court acknowledges that that—prior to finding "related to" jurisdiction over a nondebtor for purposes of extending the stay under § 105(a)—the Third Circuit has instructed that a court must make factual findings regarding the terms, scope or coverage of the allegedly shared insurance policies. *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 232 (3d Cir. 2004), *as amended* (Feb. 23, 2005). As an initial matter, this Court presently is analyzing whether extension of the automatic stay is appropriate under § 362(a)(3) and, thus, is not yet invoking its equitable powers under § 105(a). However, regardless of the basis for extension of the stay, the message from *In re Combustion* is that a court must make adequate factual findings before staying proceedings against nondebtor co-insureds on the theory that asbestos-related personal injury claims against the nondebtors will automatically deplete the insurance proceeds available to the debtor and, thus, reduce the assets available to the bankruptcy estate. *See id.*, 391 F.3d at 232–33 ("Courts finding 'related to' jurisdiction over claims against non-debtors based in part on shared insurance policies have relied not only on extensive record findings regarding the terms and operation of the subject policies, but also on additional evidence of automatic liability against the debtor."); *see also In re Imerys Talc Am., Inc.*, No. 19-MC-103 (MN), 2019 WL 3253366, at *5 (D. Del. July 19, 2019) ("Here, Johnson & Johnson also fails to offer a sufficient record that the terms and operation of the policies establish subject matter jurisdiction."); *Kleiner v. Rite Aid Corp.*, 604 B.R. 1, 8 (E.D. Pa. 2019) ("We, like our Court of Appeals in *In re*

44

*Combustion Engineering, Inc.*, lack a sufficiently developed record of the relevant policies. And

we decline to rest subject matter jurisdiction solely upon counsel's or a corporate representative's

say-so."). Admittedly, the record in the instant case is not as sufficiently developed with respect

to the insurance policies as in some of the other cases that have extended the stay on this basis.

However, the existence of shared insurance coverage and tens of thousands of lawsuits that could

exhaust that coverage is established. *See Bell Report* at 10. As an illustration of this point, while

the trial in this matter was ongoing, a group of insurers filed a motion (ECF No. 1491) seeking

relief from the automatic stay to proceed with litigation on the very issue of coverage in New

Jersey state court. Moreover, this Court is mindful that the insurance policies are not Debtor's

sole basis for extension of the stay to the Protected Parties in the instant case. Finally, the court

heeds the advice given by the Third Circuit in *In re W.R. Grace & Co.*, discussed *supra.* 115 F.

App'x 565 (3d Cir. 2004). In that case, the Third Circuit cautioned that a party's theory that a

debtor would not be later adversely affected by collateral estoppel should not be tested at the

debtor's peril. *Id.* at 569. Likewise, the Original TCC's theory that Debtor's insurance will not

be affected—because Debtor is not entitled to it or because it has already been exhausted—will

not be tested at Debtor's peril. Just as the risk of future preclusive consequences to the debtor

in *W.R. Grace* was enough to weigh in favor of extending the stay, the chance that Debtor in this

case could later prevail with respect to its insurance coverage demands weighs in favor of

extending the stay.

### E.   § 105(a) Injunction

Pursuant to § 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process,

or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C.

§ 105(a). "The issuance of an injunction under section 105(a) is governed by the standards

generally applicable to the issuance of injunctive relief in non-bankruptcy contexts." *In re*

*Philadelphia Newspapers, LLC*, 423 B.R. at 105. To qualify for injunctive relief, a litigant must

demonstrate a likelihood of success on the merits, that it will suffer irreparable harm if the

injunction is denied, that the granting of preliminary relief will not result in even greater harm

to the non-moving party and that the public interest favors such relief. *Kos Pharmaceuticals Inc.*

*v. Andrex Corp.*, 369 F.3d 700 (3d Cir. 2004); *In re G-I Holdings Inc.*, 420 B.R. 216, 281 (D.N.J.

2009) (citing *In re Phila. Newspapers, LLC*, 407 B.R. 606, 617 (E.D. Pa. 2009); *Tenafly Eruv*

*Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 157 (3d Cir. 2002)). However, "[a] preliminary

injunction is an 'extraordinary remedy, which should be granted only in limited circumstances.'

" *Kos Pharm., Inc.*, 369 F.3d at 708 (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*,

882 F.2d 797, 800 (3d Cir. 1989)). In determining whether a preliminary injunction is

appropriate, the Court considers the following factors:

> (1) whether the movant has shown a reasonable probability of success on the merits;
> (2) whether the movant will be irreparably injured by denial of the relief; (3)
> whether granting preliminary relief will result in even greater harm to the
> nonmoving party; and (4) whether granting the preliminary relief will be in the
> public interest.

*McTernan v. City of York, Pa.*, 577 F.3d 521, 527 (3d Cir. 2009) (quoting *United States v. Bell*,

414 F.3d 474, 478 n.4 (3d Cir. 2005)). "In considering a request for an injunction, these four

factors are not weighed simultaneously against one another. Rather, the Court determines

whether the first two threshold prongs are established, and if so, only then does it proceed to

46

A185

consider the third and fourth factors." *In re Philadelphia Newspapers, LLC*, 423 B.R. at 106 n.11

(citing *Tenafly*, 309 F.3d at 157).

"In the bankruptcy context, reasonable likelihood of success is equivalent to the debtor's

ability to successfully reorganize." *In re Union Tr. Philadelphia, LLC*, 460 B.R. 644, 660 (E.D.

Pa. 2011) (quoting *In re Monroe Well Serv., Inc.*, 67 B.R. 746, 752 (Bankr. E.D. Pa. 1986)

(explaining reasonable likelihood of success in terms of a successful reorganization)).  Here—

although the success of Debtor's reorganization is speculative at this early stage—there is

nothing in the record to suggest that Debtor does *not* have a reasonable likelihood of

reorganization.  To the contrary, Debtor has explained its strategy for reorganization and has

already executed a Funding Agreement which will aid in the reorganization process.[11]

Moreover, to demonstrate a reasonable likelihood of success, a movant need only show the

prospect or possibility that he or she will succeed, and need not prove same with certainty. *See*

*Conestoga Wood Specialties Corp. v. Sec'y of U.S. Dep't of Health & Human Servs.*, 724 F.3d

377 (3d Cir. 2013) (Jordan, J., dissenting) *rev'd and remanded sub nom. Burwell v. Hobby Lobby*

*Stores, Inc.*, 573 U.S. 682, 134 S. Ct. 2751, 189 L. Ed. 2d 675 (2014) (collecting cases).  Debtor

has met its burden here.  The Original TCC's arguments in opposition are equally speculative

---

[11] The Original TCC asserts that Debtor has not demonstrated that § 524(g) is available to it because the statute requires that, as of the Petition Date, the "debtor" must "be named as a defendant in [a] personal injury" lawsuit. *Objection of Original TCC* 85, ECF No. 142 (quoting 11 U.S.C. § 524(g)(2)(B)(i)(I). Counsel for AWKO echoed this argument in closing statements on February 18, 2022. In the Objecting Parties' view, the term "debtor" in the statutory provision refers to LTL, who the Objecting Parties assert was *not* named in any lawsuit.  Thus, the Objecting parties conclude that LTL cannot utilize § 524(g) and § 105(a) cannot be utilized to afford LTL a substantive right to which they are not entitled under the Code.  However, the Original TCC's position ignores the fact that LTL assumed the liabilities of Old JJCI—who *was* the named defendant in personal injury lawsuits—and that Old JJCI ceased to exist.  Thus, Debtor/LTL, as successor, is substituted under FED. R. CIV. P. 25(c).  In any event, a successful plan in this case also can be bottomed on a trust established under § 105(a), apart from § 524(g).

47

A186

and, in large part, are again rooted in its general objection to the bankruptcy for lack of good faith—an argument which this Court has rejected. *See Objection of Original TCC* 87, ECF No. 142.

As to the second factor, the Court determines that Debtor is likely to suffer irreparable injury without relief. As previously explained, continued litigation will have an adverse impact on the bankruptcy estate, will hinder reorganization efforts, and will serve as a constant drain on resources and time. In reaching this conclusion, the Court considers Debtor's liability as a result of the 2021 Corporate Restructuring, Debtor's contractual indemnification obligations, and the potential disruption that continued litigation against New JJCI and J&J could cause to funding of Debtor's trust. *See In re Union Tr. Philadelphia, LLC*, 460 B.R. 644, 660 (E.D. Pa. 2011) (affirming bankruptcy court's finding that debtor would suffer harm without preliminary injunction because, without "unfettered assistance," the debtor's "ability to reorganize is clearly diminished and [its] estate risks substantial harm if it is deprived of [nondebtor's] assistance in reorganizing"). For reasons previously discussed, the Original TCC's arguments in opposition are not persuasive.

The Court must next consider whether granting preliminary relief will result in even greater harm to the nonmoving party—here, the talc claimants. For reasons expressed in the Opinion Denying the Motions to Dismiss, the Court concludes that the talc claimants will not be prejudiced through the issuance of a preliminary injunction, and will—in fact—benefit from the extension of the automatic stay to the Protected Parties and the handling of their claims through the bankruptcy process. This method of dealing with claims also protects the interests of future

48

claimants, prevents a race for proceeds, and promotes equality in distribution. In the state and district courts, talc claimants struggle with the sluggish pace of litigation and face a legitimate possibility that they will not succeed in proving their claims. Should a judgment be awarded, claimants must then endure the appellate process, where—at worst—their judgment is overturned, and—at best—recovery is delayed. Extension of the automatic stay to the Protected Parties, on the other hand, ensures that all claims are reconciled through a bankruptcy trust, which would place reduced evidentiary and causation burdens on claimants. Resolution of claims and payments to claimants can be achieved at a far more expeditious pace in bankruptcy than through uncertain litigation in the tort system. A trust would establish a far simpler and streamlined process than currently available in the tort system. Indeed, the Multi-District Litigation ("MDL") has been ongoing since 2016, with only a handful of bellwether trials on the horizon. This Court is mindful that—as Professor Maria Glover acknowledges in her *amici curiae* brief—there is no perfect solution to the problems with mass tort litigation: "But no mechanism for handling the thorny challenges of mass torts is perfect, including bankruptcy. Indeed, it is the nature of mass torts to present different combinations of challenges, and those challenges follow mass torts wherever they go." *Glover* Brief at 25. However, this Court cannot ignore the reality that MDL is not meeting the needs of the claimants. The number of settlements reached in the talc-related lawsuits is dwarfed by the projected 10,000 new cases to be filed each year going forward. *See Expert Report of Charles H. Mullin, Ph.D.* at 5. And although MDLs may be a useful device to facilitate settlements, the MDL in the instant case is far from a global resolution and is ill-equipped to provide for future claimants. In short, a preliminary injunction

49

A188

will not result in greater harm to the talc claimants. Instead, it will "remedy[] some of the intractable pathologies of asbestos litigation." *In re Federal-Mogul Glob., Inc.*, 684 F.3d at 362.

In this same vein, the Court finds that granting the preliminary injunction would be in the public interest. The Original TCC argues that this bankruptcy serves no interests other than J&J's own. The Court disagrees. As detailed in this Court's Opinion Denying the Motions to Dismiss, this Court holds no doubts that claim resolution through the bankruptcy process is in the public interest. First, as previously explained, a settlement trust benefits existing claimants— whose time is valuable and may be limited due to their illnesses—by streamlining the claim recovery process. Additionally, a bankruptcy trust protects the needs of future talc claimants— a class of individuals who have not yet developed symptoms or initiated litigation. These individuals will have very real injuries; however, their interests are largely unrepresented in the tort system. As noted by the court in *In re Bestwall LLC*, "a section 524(g) trust will provide all claimants—including future claimants who have yet to institute litigation—with an efficient means through which to equitably resolve their claims." 606 B.R. 243, 257 (Bankr. W.D.N.C. 2019). Through adopted procedures, these trusts establish fixed criteria and common parameters for payments to claimants, ensuring a level playing field for all present and future claimants while taking into consideration the significance of preserving all due process rights. *See In re W.R. Grace & Co.*, 729 F.3d 311, 324 (3d Cir. 2013) ("Therefore, as long as a court correctly determines that § 524(g)'s requirements are satisfied, present and future claims can be channeled to a § 524(g) trust without violating due process."). Indeed, both present and future "claimant's interests are protected by the bankruptcy court's power to use future earnings to compensate

50

similarly situated tort claimants equitably." *In re Federal-Mogul Glob., Inc.*, 684 F.3d at 359.

The Original TCC asserts that "there is no logical stopping point to the Debtor's strategy." *Objection of Original TCC* 92, ECF No. 142. It posits that "any rich company facing liabilities could completely stymie them simply by allocating them to a new entity and putting the entity into bankruptcy." *Id.* at 92-93. This argument was repeated at trial and Counsel for TCC I cautioned that extending the stay would "open the floodgate" for other companies to spin their liabilities off into a new company and then send that new company into bankruptcy. This position ignores statutory requirements, existing case law, and the courts' role in overseeing bankruptcies. First, a company—like Debtor—must invoke, and comply with, a statutory authority when engaging in corporate restructuring. Here, Debtor utilized the Texas Business Organizations Code to effect its divisional merger. While other companies can also utilize this statute, or another like it, those other companies must likewise follow procedures and requirements set forth in those statutes. Accordingly, a "rich company's" ability to effectuate the type of divisive merger present in this case is not unchecked or unregulated. Similarly, a company's ability to file for bankruptcy and—more significantly—a company's ability to extend the automatic stay to an affiliate nondebtor company are subject to limitation. *See, e.g.*, *McCartney*, 106 F.3d 506 (noting that automatic stay can be extended to nonbankrupt codefendants where "unusual circumstances" exist); *Robins*, 788 F.2d 994 (same); *In re Irish Bank Resol. Corp. Ltd.*, No. BR 13-12159-CSS, 2019 WL 4740249, at *5 (D. Del. Sept. 27, 2019) (collecting cases stating same). Finally, to the extent a "rich company" seeks to enter the bankruptcy system in bad faith or without a valid reorganization purpose, the courts serve as

51

A190

gatekeepers for this type of abusive practice.

Ultimately, this Court determines that all factors weigh in favor of Debtor's position. The Court determines that a preliminary injunction pursuant to § 105(a) that extends the stay to the Protected Parties is appropriate given the circumstances of this case.

### F. Public Policy

At the heart of the Objecting Parties' argument is the allegation that Debtor and J&J have unclean hands. The Original TCC alleges both entities have engaged in bad faith and wrongful conduct that has caused further insult and injury to already-suffering talc claimants. The Court makes no determinations as to Debtor's, Old JJCI's, or J&J's conduct in other proceedings. However, as to the case before it, this Court finds no ill-intent or reprehensible behavior. The allegations of bad faith are insufficient to preclude Debtor from utilizing the bankruptcy system to achieve the goals it seeks—goals which this Court believes will ensure justice for existing and future talc claimants.

The Original TCC urges this Court not to use this case to "set new precedent." *Objection of Original TCC* 51, ECF No. 142. However, as discussed in this Court's Opinion Denying the Motion to Dismiss, corporate transactions similar to the 2021 Corporate Restructuring were effectuated pre-bankruptcy filing in several other mass tort bankruptcies—even apart from the other similarly structured filings currently pending in the Western District of North Carolina.[12]

---

[12] *See, e.g., In re Garlock Sealing Tech., LLC*, 10-31607 (Bankr. W.D.N.C. 2017); *In re Mid Valley, Inc.*, No. 03-25592 (Bankr. W.D.Pa. 2003); *In re Babcock & Wilcox Co.* No. 00-10992-10995 (Bankr. E.D. La, 2002).

A191

The existence of those cases suggests that a ruling in favor of Debtor will not set entirely new precedent.

Moreover, the Court determines that the Original TCC's concerns regarding the consequences of a ruling in Debtor's favor are unfounded. The Original TCC characterizes a ruling in Debtor's favor as providing "a blueprint to transform the Bankruptcy Code into a tool for unbridled corporate greed and manipulation." *Objection of Original TCC* 3, ECF No. 142. As discussed in this Court's Opinion Denying the Motions to Dismiss, the Court does not share the Original TCC's outlook. Congress implemented § 524(g) and granted the bankruptcy court broad equitable powers under § 105(a) to serve a purpose under a specific set of circumstances. When companies can utilize that statute for their benefit and the benefit of existing and future claimants, they should be permitted to do so. Admittedly, the bankruptcy system—like the mass tort system, or any tool in the proverbial "toolbox"—is susceptible to abuse. However, this Court does not believe that mere potential for abuse requires removal of a tool from the toolbox. Instead, the potential for abuse demands stronger scrutiny. Thus, courts must conduct a fact-specific inquiry in each case and determine—among other things—whether an appropriate set of circumstances are present, whether an entity is in compliance with statutory regulations, whether a valid reorganization purpose exists, and whether innocent third parties will be unduly prejudiced. After considering those factors in the context of this case, the Court determines that extension of the automatic stay to the Protected Parties is warranted. Given that this determination is limited to the unique facts of the case presently before the Court, this ruling will not open the floodgates to an unchecked, unregulated, or inherently abusive method of addressing liability.

## IV.    Conclusion

For the reasons set forth above, the Court concludes that "unusual circumstances" are present warranting an extension of the automatic stay to the Protected Parties under § 362(a)(1) and (3).  To the extent § 362(a) does not serve as an independent basis for extension of the stay to nondebtor parties, the Court determines that a preliminary injunction under § 105(a) extending the automatic stay is appropriate.  The Court, thus, grants Debtor's Motion and resolves the instant adversary proceeding in Debtor's favor.  However, the Court concludes that taking measures in smaller steps will ensure that the parties progress in good faith towards mediation and plan formation.  The Court will revisit continuation of the automatic stay and preliminary injunction in 120 days, on June 29, 2022, and similar periods thereafter.

The Court understands that all sides are pointing fingers and suggesting that their adversaries will take advantage of these shorter periods of review and will endeavor to "run out the clock."  Let's be clear, the only clock of import sits on the Court's desk in Chambers and shows 1,869 days until retirement.  The Court is confident that it can outlast either side's efforts to slow-walk the proceedings and will not countenance such conduct.

The Court will enter a form of Order consistent with this Opinion.

Michael B. Kaplan, Chief Judge
U.S. Bankruptcy Court
District of New Jersey

Dated: February 25, 2022

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**WOLLMUTH MAHER & DEUTSCH LLP**
Paul R. DeFilippo, Esq.
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admitted *pro hac vice*)

*ATTORNEYS FOR DEBTOR*

Order Filed on March 4, 2022
by Clerk
U.S. Bankruptcy Court
District of New Jersey

| | |
|---|---|
| In re: | Chapter 11 |
| LTL MANAGEMENT LLC,[1] | Case No.: 21-30589 (MBK) |
| Debtor. | Judge: Michael B. Kaplan |
| LTL MANAGEMENT LLC, <br><br> Plaintiff, <br><br> v. <br><br> THOSE PARTIES LISTED ON APPENDIX A TO COMPLAINT and JOHN AND JANE DOES 1-1000, <br><br> Defendants. | Adv. No.: 21-3032 (MBK) |

### ORDER (I) DECLARING THAT AUTOMATIC STAY APPLIES TO CERTAIN ACTIONS AGAINST NON-DEBTORS AND (II) PRELIMINARILY ENJOINING CERTAIN ACTIONS

The relief set forth on the following pages is hereby **ORDERED**.

**DATED: March 4, 2022**

Honorable Michael B. Kaplan
United States Bankruptcy Judge

---

[1]    The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

(Page 2)
Debtor: LTL Management LLC
Case No. 21-3032-MBK
Caption: Order (I) Declaring that Automatic Stay Applies to Certain Actions Against
Non-Debtors and (II) Preliminarily Enjoining Certain Actions

This matter coming before the Court on the *Complaint for Declaratory and Injunctive*

*Relief (i) Declaring That the Automatic Stay Applies to Certain Actions Against Non-Debtors or*

*(ii) Preliminarily Enjoining Such Actions and (iii) Granting a Temporary Restraining Order*

*Pending a Final Hearing* [Adv. Dkt. 1] (the "Complaint"), the *Debtor's Motion for an Order*

*(i) Declaring that the Automatic Stay Applies to Certain Actions Against Non-Debtors or*

*(ii) Preliminarily Enjoining Such Actions and (iii) Granting a Temporary Restraining Order*

*Pending a Final Hearing* [Adv. Dkt. 2] (the "Motion"),[2] both filed by the above-captioned

plaintiff and debtor (the "Debtor");[3] the Court having considered (i) the submissions of the

parties, including the Complaint, the Motion, the Debtor's supplemental memorandum of law,

and the responses, objections and replies in respect of the Motion or the Complaint,[4] (ii) the

arguments set forth on the record at a hearing held on February 18, 2022, and (iii) the evidence

submitted by the parties, including declarations, testimony and exhibits filed with or presented to

---

[2]    Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.
For purposes of this Order only, the term "Enjoined Talc Claims" shall mean, collectively, any
talc-related claims against the Debtor, including all claims relating in any way to talc or
talc-containing materials that formerly were asserted against (or that could have been asserted
against) the former Johnson & Johnson Consumer Inc. ("Old JJCI") on any theory of liability
(whether direct, derivative, joint and several, successor liability, vicarious liability, fraudulent or
voidable transfer or conveyance, alter ego or otherwise). For the avoidance of doubt, Enjoined
Talc Claims include, without limitation, all talc personal injury claims and other talc-related
claims allocated to the Debtor from Old JJCI in the documents implementing the 2021 Corporate
Restructuring. The Enjoined Talc Claims do not include talc-related claims for which the
exclusive remedy is provided under workers' compensation statutes and similar laws.

[3]    The Plaintiff in this adversary proceeding (the "Adversary Proceeding") is Debtor LTL
Management LLC. The Defendants in the Adversary Proceeding are those parties listed on
Appendix A to the Complaint, as amended [Adv. Pro. Dkt. 60], as well as John and Jane Does 1-
1000. The Defendants listed on Appendix A are all named plaintiffs in talc-related lawsuits
against the Debtor (or for which the Debtor is responsible or alleged responsible) as of the Petition
Date who sought to hold, or may seek to hold, the Protected Parties liable for the Enjoined Talc
Claims. The Protected Parties are listed in Appendix B to the Complaint. Defendants John and
Jane Does 1-1000 are prospective plaintiffs who may at any time while the above-captioned
chapter 11 case is pending seek to hold the Protected Parties liable for the Enjoined Talc Claims.

[4]    See Adv. Dkts. 44, 45, 49, 50, 52, 58, 104, 128, 141, 142, 143, and 146.

A195

(Page 3)
Debtor: LTL Management LLC
Case No. 21-3032-MBK
Caption:  Order (I) Declaring that Automatic Stay Applies to Certain Actions Against
Non-Debtors and (II) Preliminarily Enjoining Certain Actions

the Court or the Bankruptcy Court for the Western District of North Carolina;[5] the Court having

entered the *Bridge Order Extending Termination Date of Order Granting the Debtor's Request*

*for Preliminary Injunctive Relief* [Adv. Dkt. 157] and having issued the *Memorandum Opinion*

[Adv. Dkt. 184] (the "PI Opinion"); for the reasons set forth in the PI Opinion, which is

incorporated herein by reference, **IT IS HEREBY ORDERED THAT:**

1.    The Motion is GRANTED and the Adversary Proceeding is resolved in

favor of the Debtor.  All objections to the relief granted herein are OVERRULED.

2.    The Defendants are prohibited and enjoined, pursuant to sections 105 and

362 of the Bankruptcy Code, from commencing or continuing to prosecute any Enjoined Talc

Claim against any of the Protected Parties, on any theory of liability, whether direct, derivative,

joint and several, successor liability, vicarious liability, fraudulent or voidable transfer or

conveyance, alter ego or otherwise, for the period this Order is effective pursuant to

paragraph 15, below.  This injunction includes, without limitation:  (a) the pursuit of discovery

from the Protected Parties or their officers, directors, employees or agents; (b) the enforcement

of any discovery order against the Protected Parties; (c) further motions practice related to the

foregoing; and (d) any collection activity on account of an Enjoined Talc Claim against any

Protected Party or its officers, directors, employees or agents or its respective assets.

3.    In addition, and without limiting the foregoing, the Court finds and

declares that the commencement or continued prosecution of any Enjoined Talc Claim by any

Defendant against any of the Protected Parties while the Chapter 11 Case remains pending,

---

[5]    See Adv. Dkt. 176.

A196

(Page 4)
Debtor: LTL Management LLC
Case No. 21-3032-MBK
Caption:  Order (I) Declaring that Automatic Stay Applies to Certain Actions Against
Non-Debtors and (II) Preliminarily Enjoining Certain Actions

including the actions listed in the last sentence of paragraph 2, above, would violate the

automatic stay imposed by sections 362(a)(l) and 362(a)(3) of the Bankruptcy Code and

therefore is prohibited.

        4.      This Order is entered without prejudice to the Debtor's right to request

that the Court extend this Order to include other entities or persons not previously identified in

Appendix A or Appendix B to the Complaint.  In the event that the Debtor seeks to supplement

either Appendix A or Appendix B, the Debtor shall file with the Court and serve a notice,

together with a proposed order, setting forth any such modifications to Appendix A or

Appendix B.  The burden of proof for any modification of Appendix A or Appendix B is not

affected by this Order.  Parties shall have 14 days from the date of service of the notice to object

to the modification(s) to Appendix A or Appendix B, and the Debtor shall have 7 days from the

service of such objection to file and serve a response.  Absent a timely objection, the Debtor's

proposed modifications to Appendix A or Appendix B shall be approved by order of the Court

without the necessity of a hearing.  For the avoidance of doubt, the inclusion of a talc-related

claim on Appendix A is not an admission that such Defendant holds a currently pending claim

against either the Debtor or the Protected Parties.

        5.      Notwithstanding anything to the contrary in this Order, Imerys Talc

America, Inc. and its affiliates (collectively, the "Imerys Entities") or Cyprus Mines Corporation

and its affiliates (collectively, the "Cyprus Entities") are not Defendants in this proceeding.  The

relief granted herein shall not apply to the Imerys Entities or the Cyprus Entities, and this Order

and the PI Opinion shall not bind the Imerys Entities or the Cyprus Entities.  The right of the

(Page 5)
Debtor: LTL Management LLC
Case No. 21-3032-MBK
Caption:  Order (I) Declaring that Automatic Stay Applies to Certain Actions Against
Non-Debtors and (II) Preliminarily Enjoining Certain Actions

Debtor to seek to enjoin the Imerys Entities or the Cyprus Entities, and the right of the Imerys

Entities or Cyprus Entities to oppose such relief, are hereby preserved in all respects.

6.    Notwithstanding anything to the contrary in this Order, governmental units

(as defined under section 101 of the Bankruptcy Code) are not Defendants in this proceeding.

The relief granted herein, including any relief granted under this Order under section 105 of the

Bankruptcy Code, shall not apply to restrict or enlarge the rights of the Debtor or any

governmental unit under applicable bankruptcy law and all such rights are hereby preserved.

7.    Any party subject to this Order may seek relief from any of the provisions

of this Order for cause shown.  This Order is without prejudice to the Debtor's or others' rights

to seek relief pursuant to section 362 of the Bankruptcy Code.

8.    Notwithstanding anything to the contrary in this Order, any party asserting

Enjoined Talc Claims, without leave of the Court, may take reasonable steps to perpetuate

the testimony of any person subject to this Order who is not expected to survive the duration of

this Order or who otherwise is expected to be unable to provide testimony if such testimony is

not perpetuated during the duration of this Order.  Notice shall be provided to the Debtor by

notifying counsel for the Debtor of the perpetuation of such testimony.  The Debtor shall have

the right to object to the notice on any grounds it would have if it were a party to the underlying

proceeding and not subject to the terms of this Order, and the Debtor may raise any such

objection with the Court, except that the Debtor, Old JJCI and J&J waive objecting to the use of

such testimony based on lack of notice or lack of opportunity to cross-examine.  The use of such

testimony in any appropriate jurisdiction shall be subject to the applicable procedural and

evidentiary rules of such jurisdiction.  All parties reserve and do not waive any and all objections

A198

(Page 6)
Debtor: LTL Management LLC
Case No. 21-3032-MBK
Caption:  Order (I) Declaring that Automatic Stay Applies to Certain Actions Against
Non-Debtors and (II) Preliminarily Enjoining Certain Actions

with respect to such testimony.  Defendants or other individuals asserting Enjoined Talc Claims

may not seek to perpetuate the testimony of representatives, including directors, officers,

employees and agents of the Debtor or the Protected Parties without the consent of the Debtor or

an order of the Court.  Notwithstanding the forgoing, parties in lawsuits pending in the MDL

who wish to perpetuate the testimony of any person subject to this Order who is not expected to

survive the duration of this Order or who otherwise is expected to be unable to provide testimony

if it is not perpetuated during the duration of this Order shall comply with the process outlined in

the In Extremis Deposition Protocol entered on January 23, 2017 in the MDL.

   9.  Pursuant to Bankruptcy Rule 7065, the Debtor is relieved from posting

any security in connection with this Order pursuant to Civil Rule 65(c).

   10.  This Order shall be immediately effective and enforceable upon its entry.

   11.  In accordance with section 108(c) of the Bankruptcy Code, this Order

shall toll, as of November 10, 2021, any applicable non-bankruptcy law, any order entered in a

non-bankruptcy proceeding, or any agreement that fixes a period under which an enjoined

Defendant is required to commence or continue a civil action in a court other than this Court on

any Enjoined Talc Claim asserted against the Debtor or any of the Protected Parties until the later

of:  (a) the end of such period, including any suspension of such period occurring on or after the

commencement of the case; or (b) 30 days after the termination or expiration of the preliminary

injunction issued by this Order.

   12.  The automatic stay shall continue to be lifted solely to permit the

applicable Defendants to proceed with and complete the following appeals, in each of which

(Page 7)
Debtor: LTL Management LLC
Case No. 21-3032-MBK
Caption:  Order (I) Declaring that Automatic Stay Applies to Certain Actions Against
Non-Debtors and (II) Preliminarily Enjoining Certain Actions

surety bonds have been issued in connection with the appeal: (a) Leavitt; (b) Olson; (c) Schmitz;

(d) Barden (as to Barden, Etheridge, McNeill and Ronning); (e) Soskin; and (f) Prudencio.

13. The personal injury claims (including pain and suffering damages) of the plaintiff in the Vanklive lawsuit shall be preserved even if the plaintiff subsequently dies (with no impairment of such plaintiff's personal injury damages, including pain and suffering damages). The Debtor, New JJCI, and J&J specifically consent and agree to this provision.

14. The Debtor shall cause a copy of this Order to be served via e-mail, facsimile, hand delivery or overnight carrier on counsel for the known Defendants within three business days of its entry on the Court's docket.

15. This Order shall be promptly filed in the Clerk of Court's office and entered into the record, and, except as the Court may otherwise determine, it shall remain effective for the period through and including 30 days after the effective date of a confirmed plan of reorganization in the Chapter 11 Case that is no longer subject to appeal or discretionary review.

16. The Court will revisit continuation of the automatic stay and preliminary injunction ordered herein in 120 days from entry of the PI Opinion, on June 29, 2022, and similar periods thereafter.

17. The Court shall have exclusive jurisdiction over this Order and any and all matters arising from or relating to the implementation, interpretation or enforcement of this Order.

A200

Form order − ntcorder

# UNITED STATES BANKRUPTCY COURT

District of New Jersey
402 East State Street
Trenton, NJ 08608

In Re:  LTL Management LLC
Debtor

                              Case No.: 21−30589−MBK
                              Chapter 11

LTL Management LLC
Plaintiff

v.

Those Parties Listed on Appendix A to the Complaint and
John and Jane Does 1−1000
Defendant

Adv. Proc. No. 21−03032−MBK                    Judge: Michael B. Kaplan

## NOTICE OF JUDGMENT OR ORDER
### Pursuant to Fed. R. Bankr. P. 9022

Please be advised that on March 4, 2022, the court entered the following judgment or order on the court's docket in the above−captioned case:

Document Number: 187 − 2, 157
ORDER (I) DECLARING THAT AUTOMATIC STAY APPLIES TO CERTAIN ACTIONS AGAINST NON−DEBTORS AND (II) PRELIMINARY ENJOINING CERTAIN ACTIONS (related document:2 Motion for Preliminary Injunction − Debtor's Motion for an Order (I) Declaring That the Automatic Stay Applies to Certain Actions Against Non−Debtors or (II) Preliminarily Enjoining Such Actions and (III) Granting a Temporary Restraining Order Pending a Final Hearing filed by Matthew L Tomsic on behalf of LTL Management LLC. (Tomsic, Matthew) [Transferred from North Carolina Western on 11/17/2021.] filed by Plaintiff LTL Management LLC, 157 BRIDGE ORDER EXTENDING TERMINATION DATE OF ORDER GRANTING THE DEBTORS REQUEST FOR PRELIMINARY INJUNCTIVE RELIEF (related document:102 Order Granting Motion For Preliminary Injunction (Related Doc 2) (krt) [Transferred from North Carolina Western on 11/17/2021.]). Service of notice of the entry of this order pursuant to Rule 9022 was made on the appropriate parties. See BNC Certificate of Notice. Signed on 1/15/2022. (dmi)). Service of notice of the entry of this order pursuant to Rule 9022 was made on the appropriate parties. See BNC Certificate of Notice. Signed on 3/4/2022. (wir)

Parties may review the order by accessing it through PACER or the court's electronic case filing system (CM/ECF). Public terminals for viewing are also available at the courthouse in each vicinage.

Dated: March 4, 2022
JAN: wir

                                      Jeanne Naughton
                                      Clerk

A201

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-1(b)

**OFFIT KURMAN, P.A.**
Paul J. Winterhalter, Esquire (006961986)
99 Wood Avenue South, Suite 302
Iselin, New Jersey 08830
Telephone:    (267) 338-1370
Facsimile:    (267) 338-1335
E-mail:    pwinterhalter@offitkurman.com

**KTBS LAW LLP**
Michael L. Tuchin, Esq. (*Pro Hac Vice*)
Robert J. Pfister, Esq. (*Pro Hac Vice*)
Samuel M. Kidder, Esq. (*Pro Hac Vice*)
Nir Maoz, Esq. (*Pro Hac Vice*)
1801 Century Park East, 26th Floor
Los Angeles, California 90067
Telephone:    (310) 407-4000
Facsimile:    (310) 407-9090
Email:    mtuchin@ktbslaw.com
    rpfister@ktbslaw.com
    skidder@ktbslaw.com
    nmaoz@ktbslaw.com

*Attorneys for Aylstock, Witkin, Kreis & Overholtz,
PLLC*

| | |
|---|---|
| In re:<br><br>LTL MANAGEMENT LLC,[1]<br><br>　　　　　　　　Debtor. | Chapter 11<br><br>Case No.:  21-30589 (MBK)<br><br>Judge: Michael B. Kaplan |
| LTL MANAGEMENT LLC,<br><br>　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>THOSE PARTIES LISTED ON APPPENDIX A TO<br>COMPLAINT and JOHN AND JANE DOES 1-1000,<br><br>　　　　　　　　Defendants. | Adv. Pro. No. 21-03032 (MBK) |

---

[1]  The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

## NOTICE OF APPEAL

**NOTICE IS HEREBY GIVEN** that Aylstock, Witkin, Kreis & Overholtz, PLLC

("AWKO"), on behalf of more than three thousand holders of talc claims, hereby appeals,

pursuant to 28 U.S.C. § 158(a)(1), from the *Order (i) Declaring that Automatic Stay Applies to*

*Certain Actions Against Non-Debtors and (ii) Preliminarily Enjoining Certain Actions* [Adv.

Docket No. 187] ("Order"), entered on March 7, 2022, and the related *Memorandum Opinion*

[Adv. Docket No. 184] (the "Memorandum"), entered on February 25, 2022 and which the

Bankruptcy Court referenced in the Order.  Copies of the Order and the Memorandum are

attached hereto as **Exhibit A** and **Exhibit B** respectively.

Pursuant to Bankruptcy Rule 8006, AWKO intends to seek certification of the Order and

Memorandum for direct review by the United States Court of Appeals for the Third Circuit under

28 U.S.C. § 158(d)(2).

Pursuant to Bankruptcy Rule 8003(a)(3) and in accordance with Official Form 417A, the

names of all parties (other than AWKO) to the Orders and Memoranda and the names, addresses,

and telephone numbers of their attorneys are:

| Party Name | Role | Attorney Contact Information |
|---|---|---|
| 1.   LTL Management, LLC | Plaintiff | WOLLMUTH MAHER & DEUTSCH LLP<br>Paul R. DeFilippo, Esq.<br>500 Fifth Avenue<br>New York, New York 10110<br>Telephone: (212) 382-3300<br>Facsimile: (212) 382-0050<br>pdefilippo@wmd-law.com<br><br>and<br><br>JONES DAY<br>Gregory M. Gordon, Esq.<br>Brad B. Erens, Esq.<br>Dan B. Prieto, Esq. |

Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com

2.    Official Committee of Talc    Defendant
Claimants I

GENOVA BURNS LLC
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
Matthew I.W. Baker, Esq.
dstolz@genovaburns.com
dclarke@genovaburns.com
mbaker@genovaburns.com
110 Allen Road, Suite 304
Basking Ridge, NJ 07920
Tel: (973) 467-2700
Fax: (973) 467-8126

and

BROWN RUDNICK LLP
David J. Molton, Esq.
Robert J. Stark, Esq.
Jeffrey L. Jonas, Esq.
Michael Winograd, Esq.
dmolton@brownrudnick.com
rstark@brownrudnick.com
jjonas@brownrudnick.com
mwinograd@brownrudnick.com
Seven Times Square
New York, NY 10036
Tel: (212) 209-4800
Fax: (212) 209-4801

and

Sunni P. Beville, Esq.
sbeville@brownrudnick.com
One Financial Center
Boston, MA 02111
Tel: (617) 856-8200
Fax: (617) 856-8201

and

PARKINS LEE & RUBIO LLP
Leonard M. Parkins, Esq.
Charles M. Rubio, Esq.
lparkins@parkinslee.com
crubio@parkinslee.com
Pennzoil Place
700 Milan St., Suite 1300
Houston, TX 77002
Tel: (713) 715-1666

and

OTTERBOURG PC
Melanie L. Cyganowski, Esq.
Adam C. Silverstein, Esq.
Jennifer S. Feeney, Esq.
mcyganowski@otterbourg.com
asilverstein@otterbourg.com
jfeeney@otterbourg.com
230 Park Avenue
New York, NY 10169
Tel: (212) 905-3628
Fax: (212) 682-6104

3.   Official Committee of Talc   Defendant
     Claimants II

COOLEY LLP
Cullen D. Speckhart
Michael Klein
Erica J. Richards
Lauren A. Reichardt
Evan Lazerowitz
55 Hudson Yards
New York, NY 10001
Tel: (212) 479-6000
Fax: (212) 479-6275
Email: cspeckhart@cooley.com
mklein@cooley.com
erichards@cooley.com
lreichardt@cooley.com
elazerowitz@cooley.com

and

BAILEY GLASSER LLP

A205

Brian A. Glasser, Esq.
Thomas B. Bennett, Esq.
Kevin W. Barrett, Esq.
Maggie B. Burrus, Esq.
105 Thomas Jefferson St. NW
Suite 540
Washington, DC 20007
Tel: (202) 463-2101
Fax: (202) 463-2103
Email: bglasser@baileyglasser.com
tbennett@baileyglasser.com

and

WALDREP WALL BABCOCK &
BAILEY PLLC
Thomas W. Waldrep, Jr.
Kevin L. Sink
James C. Lanik
Jennifer B. Lyday
370 Knollwood Street
Suite 600
Winston-Salem, NC 27103
Tel: (336) 717-1280
Fax: (336) 717-1340
Email: notice@waldrepwall.com

and

SHERMAN, SILVERSTEIN, KOHL,
ROSE & PODOLSKY, P.A.
Arthur J. Abramowitz
Alan I. Moldoff
Ross J. Switkes
308 Harper Drive, Suite 200
Moorestown, New Jersey 08057
Tel: (856) 662-0700
Email:
abramowitz@shermansilverstein.com
amoldoff@shermansilverstein.com

| 5. | United States Trustee | Party in Interest | UNITED STATES DEPARTMENT OF JUSTICE OFFICE OF THE UNITED STATES TRUSTEE ANDREW R. VARA |

UNITED STATES TRUSTEE,
REGIONS 3 & 9
Mitchell B. Hausman, Esq.
Jeffrey M. Sponder, Esq.
Lauren Bielskie, Esq.
Robert J. Schneider, Jr., Esq.
One Newark Center, Suite 2100
Newark, NJ 07102
Telephone: (973) 645-3014
Fax: (973) 645-5993
E-mail:
mitchell.b.hausman@usdoj.gov
jeffrey.m.sponder@usdoj.gov
lauren.bielskie@usdoj.gov
robert.j.schneider@usdoj.gov

DATED:  March 7, 2022                  Respectfully submitted,

**OFFIT KURMAN, P.A.**

/s/ Paul J. Winterhalter
Paul J. Winterhalter
99 Wood Avenue South, Suite 302
Iselin, New Jersey 08830
Telephone:    (267) 338-1370
Facsimile:    (267) 338-1335
E-mail:        pwinterhalter@offitkurman.com

- and -

**KTBS LAW LLP**
Michael L. Tuchin (*pro hac vice*)
Robert J. Pfister  (*pro hac vice*)
Samuel M. Kidder (*pro hac vice*)
Nir Maoz (*pro hac vice*)
1801 Century Park East, 26th Floor
Los Angeles, California 90067
Telephone:    (310) 407-4000
Facsimile:    (310) 407-9090
Email:        mtuchin@ktbslaw.com
                rpfister@ktbslaw.com
                skidder@ktbslaw.com
                nmaoz@ktbslaw.com

*Attorneys for Aylstock, Witkin, Kreis & Overholtz, PLLC*

A208

| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**Caption in Compliance with D.N.J. LBR 9004-1(b)** | |
|---|---|
| **COOLEY LLP**<br>Cullen D. Speckhart (admitted pro hac vice)<br>Ian Shapiro (admitted pro hac vice)<br>Russell Capone (admitted pro hac vice)<br>Michael Klein (admitted pro hac vice)<br>55 Hudson Yards<br>New York, NY 10001<br>Tel: (212) 479-6000<br>Fax: (212) 479-6275<br>Email: cspeckhart@cooley.com<br>    ishapiro@cooley.com<br>    rcapone@cooley.com<br>    mklein@cooley.com<br><br>*Proposed Co-Counsel to the*<br>*Official Committee of Talc Claimants II* | **BAILEY GLASSER LLP**<br>Brian A. Glasser (admitted pro hac vice)<br>Thomas B. Bennett (admitted pro hac vice)<br>Kevin W. Barrett (admitted pro hac vice)<br>Maggie B. Burrus (admitted pro hac vice)<br>1055 Thomas Jefferson St. NW, Suite 540<br>Washington, DC 20007<br>Tel: (202) 463-2101<br>Fax: (202) 463-2103<br>Email: bglasser@baileyglasser.com<br>    tbennett@baileyglasser.com<br>    kbarrett@baileyglasser.com<br>    mburrus@baileyglasser.com<br><br>*Proposed Co-Counsel to the*<br>*Official Committee of Talc Claimants II* |
| **WALDREP WALL BABCOCK & BAILEY PLLC**<br>Thomas W. Waldrep, Jr. (admitted pro hac vice)<br>Kevin L. Sink (admitted pro hac vice)<br>James C. Lanik (admitted pro hac vice)<br>Jennifer B. Lyday (admitted pro hac vice)<br>370 Knollwood Street, Suite 600<br>Winston-Salem, NC 27103<br>Tel: (336) 717-1280<br>Fax: (336) 717-1340<br>Email: notice@waldrepwall.com<br><br>*Proposed Co-Counsel to the*<br>*Official Committee of Talc Claimants II* | **MASSEY & GAIL LLP**<br>Jonathan S. Massey (admitted pro hac vice)<br>1000 Maine Ave. SW, Suite 450<br>Washington, DC 20024<br>Tel: (202) 652-4511<br>Fax: (312) 379-0467<br>Email: jmassey@masseygail.com<br><br>*Proposed Co-Counsel to the*<br>*Official Committee of Talc Claimants II* |
| **SHERMAN, SILVERSTEIN,<br>KOHL, ROSE & PODOLSKY, P.A.**<br>Arthur J. Abramowitz<br>Alan I. Moldoff<br>Ross J. Switkes<br>308 Harper Drive, Suite 200<br>Moorestown, NJ 08057<br>Tel: (856) 662-0700<br>Email: aabramowitz@shermansilverstein.com<br>    amoldoff@shermansilverstein.com<br>    rswitkes@shermansilverstein.com<br><br>*Proposed Local Counsel to the*<br>*Official Committee of Talc Claimants II* | |

| | |
|---|---|
| In re:<br><br>**LTL MANAGEMENT LLC,**<br><br>          Debtor. | Chapter 11<br><br>Case No.: 21-30589 (MBK)<br><br>Honorable Michael B. Kaplan |
| **LTL MANAGEMENT LLC,**<br><br>          Plaintiff,<br><br>v.<br><br>**THOSE PARTIES LISTED ON APPENDIX A TO COMPLAINT** and **JOHN AND JANE DOES 1-1000,**<br><br>          Defendants. | Adv. Pro. No.: 21-03032 (MBK) |

## <u>JOINT NOTICE OF APPEAL</u>

**PLEASE TAKE NOTICE** that the Official Committee of Talc Claimants II ("TCC II"), together with Patricia Cook, Evan Plotkin, Randy Derouen, Kristie Doyle as estate representative of Dan Doyle, Katherine Tollefson, and Tonya Whetsel as estate representative of Brandon Whetsel, hereby appeal to the United States District Court for the District of New Jersey[1] pursuant to 28 U.S.C. §158 and rules 8002 and 8003 of the Federal Rules of Bankruptcy Procedure, from the order (Adv. Pro. D.I. 187) (the "<u>Order</u>") (i) declaring that the automatic stay applies to certain actions against non-debtors and (ii) preliminarily enjoining certain actions, entered on March 4, 2022 by the United States Bankruptcy Court for the District of New Jersey.

**PLEASE TAKE FURTHER NOTICE** that a copy of the Order is attached hereto as **Exhibit A**.

**PLEASE TAKE FURTHER NOTICE** that the names of all parties to the Order appealed from and the names, addresses and telephone numbers of their respective attorneys are as follows:

---

[1] Concurrently herewith, the appellants are filing a motion seeking direct certification of this appeal to the Third Circuit Court of Appeals pursuant to 28 U.S.C. § 152(d)(2).

A210

| Party | Counsel |
|---|---|
| Official Committee of Talc Claimants II | **COOLEY LLP**<br>Cullen D. Speckhart<br>Ian Shapiro<br>Russell Capone<br>Michael Klein<br>55 Hudson Yards<br>New York, NY 10001<br>Tel: (212) 479-6000<br>Fax: (212) 479-6275<br>Email: cspeckhart@cooley.com<br>      ishapiro@cooley.com<br>      rcapone@cooley.com<br>      mklein@cooley.com<br><br>**BAILEY GLASSER LLP**<br>Brian A. Glasser<br>Thomas B. Bennett<br>Kevin W. Barrett<br>Maggie B. Burrus<br>1055 Thomas Jefferson St. NW, Suite 540<br>Washington, DC 20007<br>Tel: (202) 463-2101<br>Fax: (202) 463-2103<br>Email: bglasser@baileyglasser.com<br>      tbennett@baileyglasser.com<br>      kbarrett@baileyglasser.com<br>      mburrus@baileyglasser.com<br><br>**MASSEY & GAIL LLP**<br>Jonathan S. Massey<br>1000 Maine Ave. SW, Suite 450<br>Washington, DC 20024<br>Tel: (202) 652-4511<br>Fax: (312) 379-0467<br>Email: jmassey@masseygail.com<br><br>**WALDREP WALL BABCOCK &<br>BAILEY PLLC**<br>Thomas W. Waldrep, Jr.<br>Kevin L. Sink<br>James C. Lanik<br>Jennifer B. Lyday |

3

A211

| | 370 Knollwood Street, Suite 600<br>Winston-Salem, NC 27103<br>Tel: (336) 717-1280<br>Fax: (336) 717-1340<br>Email: notice@waldrepwall.com<br><br>**SHERMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY, P.A.**<br>Arthur J. Abramowitz<br>Alan I. Moldoff<br>Ross J. Switkes<br>308 Harper Drive, Suite 200<br>Moorestown, NJ 08057<br>Tel: (856) 662-0700<br>Email: aabramowitz@shermansilverstein.com<br>　　amoldoff@shermansilverstein.com<br>　　rswitkes@shermansilverstein.com |
| Patricia Cook | **WEITZ & LUXENBERG, P.C.**<br>Perry Weitz<br>Lisa Nathanson Busch<br>Justine Delaney<br>700 Broadway<br>New York, NY 10083<br>Tel: (212) 558-5500<br>Email: lbusch@weitzlux.com<br>　　pw@weitzlux.com<br>　　jdelaney@weitzlux.com |
| Evan Plotkin | **LEX NOVA LAW, LLC**<br>E. Richard Dressel<br>10 E. Stow Rd., Suite 250<br>Marlton, NJ 08053<br>Tel. (856) 382-8550<br>Email: rdressel@lexnovalaw.com<br><br>**DEAN OMAR BRANHAM SHIRLEY, LLP**<br>Trey Branham<br>302 N. Market Street, Suite 300<br>Dallas, TX 75202<br>Tel: (214) 722-5990<br>Email: tbranham@dobslegal.com |
| Randy Derouen | **LEVY KONIGSBERG LLP**<br>Moshe Maimon |

A212

| | Jerome H. Block<br>Audrey Perlman Raphael<br>605 Third Avenue, 33rd Floor<br>New York, NY 10158<br>Tel: (212) 605-6200<br>Email: MMaimon@levylaw.com<br>    JBlock@levylaw.com<br>    ARaphael@levylaw.com |
|---|---|
| Kristie Doyle, as estate representative of Dan Doyle | **SAIBER LLC**<br>Marc E. Wolin<br>John M. August<br>18 Columbia Turnpike, Suite 200<br>Florham Park, NJ 07932<br>Tel: (973) 622-8401<br>Email: mwolin@saiber.com<br>    jaugust@saiber.com<br><br>**KAZAN, McCLAIN, SATTERLEY & GREENWOOD**<br>A Professional Law Corporation<br>Steven Kazan, Esq.<br>Joseph D. Satterley, Esq.<br>Denyse F. Clancy, Esq.<br>Jack London Market<br>55 Harrison Street, Suite 400<br>Oakland, California 94607<br>Tel: (510) 302-1000<br>Email: skazan@kazanlaw.com<br>    JSatterley@kazanlaw.com<br>    DClancy@kazanlaw.com |
| Katherine Tollefson | **MAUNE RAICHLE HARTLEY FRENCH & MUDD LLC**<br>Suzanne M. Ratcliffe<br>150 West 30th Street, Suite 201<br>New York, NY 10001<br>Tel: (800) 358-5922<br>Email: sratcliffe@mrhfmlaw.com<br><br>Neil J. Maune<br>Marcus E. Raichle Jr.<br>Christopher McKean<br>Clayton L. Thompson<br>1015 Locust Street<br>St. Louis, MO 63191 |

A213

| | |
|---|---|
| | Tel: (800) 358-5922<br>Email: nmaune@mrhfmlaw.com<br>mraichle@mrhfmlaw.com<br>cmckean@mrhfmlaw.com<br>cthompson@mrhfmlaw.com |
| Tonya Whetsel, as estate representative of Brandon Whetsel | **KARST & von OISTE, LLP**<br>David A. Chandler<br>505 Main Street<br>Port Jefferson, NY 11777<br>Tel: (855) 970-9988<br>Email: dac@karstvonoiste.com |
| LTL Management, LLC | **WOLLMUTH MAHER & DEUTSCH LLP**<br>Paul R. DeFilippo<br>500 Fifth Avenue<br>New York, NY 10110<br>Tel: (212) 382-3300<br>Fax: (212) 382-0050<br>Email: pdefilippo@wmd-law.com<br><br>**JONES DAY**<br>Gregory M. Gordon<br>Brad B. Erens<br>Dan B. Prieto<br>Amanda Rush<br>2727 N. Harwood Street<br>Dallas, TX 75201<br>Tel: (214) 220-3939<br>Fax: (214) 969-5100<br>Email: gmgordon@jonesday.com<br>bberens@jonesday.com<br>dbprieto@jonesday.com<br>arush@jonesday.com |
| Official Committee of Talc Claimants I | **GENOVA BURNS LLC**<br>Daniel M. Stolz<br>Donald W. Clarke<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ 07920<br>Tel: (973) 467-2700<br>Fax: (973) 467-8126<br>Email: dstolz@genovaburns.com<br>dclarke@genovaburns.com |

6

A214

| | **BROWN RUDNICK LLP** |
|---|---|
| | David J. Molton |
| | Robert J. Stark |
| | Michael S. Winograd |
| | Seven Times Square |
| | New York, NY 10036 |
| | Tel: (212) 209-4800 |
| | Fax: (212) 209-4801 |
| | Email: dmolton@brownrudnick.com |
| |     rstark@brownrudnick.com |
| |     mwinograd@brownrudnick.com |
| | |
| | Jeffrey L. Jonas |
| | Sunni P. Beville |
| | One Financial Center |
| | Boston, MA 02111 |
| | Tel: (617) 856-8200 |
| | Fax: (617) 856-8201 |
| | Email: jjonas@brownrudnick.com |
| |     sbeville@brownrudnick.com |
| | |
| | **OTTERBOURG PC** |
| | Melanie L. Cyganowski |
| | Adam C. Silverstein |
| | Jennifer S. Feeney |
| | 230 Park Avenue |
| | New York, NY 10169 |
| | Tel: (212) 905-3628 |
| | Fax: (212) 682-6104 |
| | Email: mcyganowski@otterbourg.com |
| |     asilverstein@otterbourg.com |
| |     jfeeney@otterbourg.com |
| | |
| | **PARKINS LEE & RUBIO LLP** |
| | Pennzoil Place |
| | 700 Milan Street, Suite 1300 |
| | Houston, TX 77002 |
| | Tel: (713) 715-1666 |
| | Email: lparkins@parkinslee.com |
| |     crubio@parkinslee.com |
| Aylstock, Witkin, Kreis & Overholtz, PLLC | **OFFIT KURMAN, P.A.** |
| | Paul J. Winterhalter |
| | 99 Wood Avenue South, Suite 302 |
| | Iselin, New Jersey 08830 |
| | Tel: (267) 338-1370 |

7

A215

| | |
|---|---|
| | Fax: (267) 338-1335<br>Email: pwinterhalter@offitkurman.com<br><br>**KTBS LAW LLP**<br>Michael L. Tuchin<br>Robert J. Pfister<br>Samuel M. Kidder<br>Nir Maoz<br>1801 Century Park East, 26th Floor<br>Los Angeles, California 90067<br>Tel: (310) 407-4000<br>Fax: (310) 407-9090<br>Email: mtuchin@ktbslaw.com<br>    rpfister@ktbslaw.com<br>    skidder@ktbslaw.com<br>    nmaoz@ktbslaw.com |
| Atlanta International Insurance Company (as successor in interest to Drake Insurance Company); AIG Property Casualty Company (f/k/a Birmingham Fire Insurance Company of Pennsylvania); AIG Europe S.A. (as successor in interest to Union Atlantique d'Assurances S.A); AIU Insurance Company; ASR Schadeverzekering N.V. (as successor in interest to Assurantiekoor Van Wijk & Co.); Granite State Insurance Company; The Insurance Company of the State of Pennsylvania; Lexington Insurance Company; National Union Fire Insurance Company of Pittsburgh, Pa.; New Hampshire Insurance Company; The North River Insurance Company; Starr Indemnity & Liability Company (as successor in interest to Republic Insurance Company); N.V. Schadeverzekeringsmaatschappij Maas Lloyd (individually and as successor in interest to policies subscribed in favor of Johnson & Johnson by N.V. Rotterdamse Assurantiekas, n/k/a De Ark); and Rheinland Versicherungen (as successor in interest only to the subscriptions of the former Dutch company Rheinland Verzekeringen) | **TRIF & MODUGNO, LLC**<br>Louis Modugno<br>89 Headquarters Plaza, Suite 1201<br>Morristown, New Jersey 07960<br>Tel: (973) 547-3611<br>Fax: (973) 554-1220<br>Email: lmodugno@tm-firm.com<br><br>**KATTEN MUCHIN ROSENMAN LLP**<br>Shaya Rochester<br>Katherine Scherling<br>575 Madison Avenue<br>New York, NY 10022<br>Tel: (212) 940-8800<br>Fax: (212) 940-8776<br>Email: shaya.rochester@katten.com<br>    katherine.scherling@katten.com<br><br>**MENDES & MOUNT LLP**<br>Eileen McCabe<br>Stephen Roberts<br>750 Seventh Avenue<br>New York, NY 10019<br>Tel: (212) 261-8000<br>Fax: (212) 261-8750<br>Email: eileen.mccabe@mendes.com<br>    stephen.roberts@mendes.com |

*[signatures follow]*

8

A216

Date: March 7, 2022

**SHERMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY, P.A.**

*/s/ Arthur J. Abramowitz*
Arthur J. Abramowitz
Ross J. Switkes
Sherman, Silverstein, Kohl, Rose & Podolsky, P.A.
308 Harper Drive, Suite 200
Moorestown, NJ 08057
Tel: (856) 662-0700
aabramowitz@shermansilverstein.com
rswitkes@shermansilverstein.com

*Proposed Local Counsel to the Official Committee of Talc Claimants II*

**WEITZ & LUXENBERG, P.C.**

*/s/ Lisa Nathanson Busch*
Lisa Nathanson Busch
700 Broadway
New York, NY 10083
Tel: (212) 558-5500
lbusch@weitzlux.com

*Counsel to Patricia Cook*

**LEX NOVA LAW, LLC**

*/s/ E. Richard Dressel*
E. Richard Dressel
10 E. Stow Rd., Suite 250
Marlton, NJ 08053
Tel: (856) 382-8550
rdressel@lexnovalaw.com

*Counsel to Evan Plotkin*

**LEVY KONIGSBERG LLP**

*/s/ Jerome H. Block*
Jerome H. Block
605 Third Avenue, 33rd Floor
New York, NY 10158
Tel: (212) 605-6200
jblock@levylaw.com

9

A217

*Counsel to Randy Derouen*

**SAIBER LLC**

*/s/ Marc E. Wolin*
Marc E. Wolin
John M. August
18 Columbia Turnpike, Suite 200
Florham Park, NJ 07932
Tel: (973) 622-8401
mwolin@saiber.com
jaugust@saiber.com

*Counsel to Kristie Doyle, as estate
representative of Dan Doyle*

**MAUNE RAICHLE HARTLEY
FRENCH & MUDD LLC**

*/s/ Suzanne M. Ratcliffe*
Suzanne M. Ratcliffe
150 West 30th Street, Suite 201
New York, NY 10001
Tel: (800) 358-5922
sratcliffe@mrhfmlaw.com

*Counsel to Katherine Tollefson*

**KARST & von OISTE, LLP**

*/s/ David A. Chandler*
David A. Chandler
505 Main Street
Port Jefferson, NY 11777
Tel: (855) 970-9988
dac@karstvonoiste.com

*Counsel to Tonya Whetsel, as estate
representative of Brandon Whetsel*

10

A218

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **Caption in Compliance with D.N.J. LBR 9004-1(b)** | **BROWN RUDNICK LLP**<br>David J. Molton, Esq.<br>Robert J. Stark, Esq.<br>Michael S. Winograd, Esq. |
| **GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>Matthew I.W. Baker, Esq.<br>dstolz@genovaburns.com<br>dclarke@genovaburns.com<br>mbaker@genovaburns.com<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ 07920<br>Tel: (973) 467-2700<br>Fax: (973) 467-8126<br>*Local Counsel to the Official Committee of Talc Claimants I* | dmolton@brownrudnick.com<br>rstark@brownrudnick.com<br>mwinograd@brownrudnick.com<br>Seven Times Square<br>New York, NY 10036<br>Tel : (212) 209-4800<br>Fax : (212) 209-4801<br><br>and<br><br>Jeffrey L. Jonas, Esq.<br>Sunni P. Beville, Esq.<br>Shari I. Dwoskin, Esq.<br>jjonas@brownrudnick.com<br>sbeville@brownrudnick.com<br>sdwoskin@brownrudnick.com<br>One Financial Center<br>Boston, MA 02111<br>Tel: (617) 856-8200<br>Fax: (617) 856-8201<br>*Co-Counsel for the Official Committee of Talc Claimants I* |
| **OTTERBOURG PC**<br>Melanie L. Cyganowski, Esq.<br>Adam C. Silverstein, Esq.<br>Jennifer S. Feeney, Esq.<br>mcyganowski@otterbourg.com<br>asilverstein@otterbourg.com<br>jfeeney@otterbourg.com<br>230 Park Avenue<br>New York, NY 10169<br>Tel: (212) 905-3628<br>Fax: (212) 682-6104<br>*Co-Counsel for the Official Committee of Talc Claimants I* | **PARKINS LEE & RUBIO LLP**<br>Leonard M. Parkins, Esq.<br>Charles M. Rubio, Esq.<br>lparkins@parkinslee.com<br>crubio@parkinslee.com<br>Pennzoil Place<br>700 Milan St., Suite 1300<br>Houston, TX 77002<br>Tel: (713) 715-1666<br>*Special Counsel to the Official Committee of Talc Claimants I* |

A219

| In Re: | Chapter 11 |
|---|---|
| **LTL MANAGEMENT, LLC,**[1] | Case No.: 21-30589 (MBK) |
| Debtor. | Honorable Michael B. Kaplan |
| In Re:<br><br>**LTL MANAGEMENT, LLC,**<br><br>Plaintiff,<br><br>**THOSE PARTIES LISTED ON APPENDIX A TO COMPLAINT AND JOHN AND JANE DOES 1-1000,**<br><br>Defendants. | Adv. Pro. No. 21-03032 (MBK) |

### NOTICE OF APPEAL AND STATEMENT OF ELECTION

#### Part 1: Identify the Appellant(s)

    **1.**    **Names(s) of appellant(s):**  The Official Committee of Talc Claimants I.[2]

---

[1]   The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

[2]   The *Objection of the Official Committee of Talc Claimants to Debtor's Motion for an Order (i) Declaring That the Automatic Stay Applies to Certain Actions Against Non-Debtors or (Ii) Preliminarily Enjoining Such Actions and (Iii) Granting a Temporarily Restraining Order Pending a Final Hearing* (Dkt. No. 142) (the "Objection") was filed by the original Official Committee of Talc Claimants (the "Original TCC") on December 22, 2021.  On December 23, 2021, the United States Trustee filed a notice (Dkt. No. 965) appointing the Official Committee of Talc Claimants I ("TCC I") and the Official Committee of Talc Claimants II ("TCC II") in place of the Original TCC.  By Stipulation and Order, entered January 21, 2022 (Dkt. 1226), all pleadings and motions filed by the Original TCC, including the Objection, were deemed to be filed by each of TCC I and TCC II, and each of TCC I and TCC II were permitted to prosecute all such pleadings and motions.  On January 26, 2022, the Bankruptcy Court entered an order (Dkt. No. 1273) reinstating the Original TCC but staying the effect of its ruling through March 8, 2022.  On March 8, 2022, the Court issued a bench ruling staying the reinstatement of the Original TCC and extending the existence of TCC I and TCC II through and including April 12, 2022.  As such, TCC I and TCC II have filed separate notices of appeal.  Also during the March 8 hearing, the parties agreed to stipulate that the filings by TCC I and TCC II will be deemed to have filed by the Original TCC if the Original TCC is reinstated in the future.

A220

2.    **Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:** Appellant is an interested party and an objector in the adversary proceeding.

**Part 2: Identify the subject of this appeal**

1.    **Describe the judgment, order, or decree appealed from:** Appellant, pursuant to 28 U.S.C. § 158(a) and Federal Rule of Bankruptcy Procedure 8001(a), hereby gives notice of appeal to the United States District Court for the District of New Jersey from each and every part of the opinion and order of the United States Bankruptcy Court for the District of New Jersey as follows:

(a)    the Memorandum Opinion granting LTL Management, LLC's motion and resolving the adversary proceeding in favor of LTL Management, LLC (Dkt. No. 184) (the "Memorandum Opinion", annexed hereto as **Exhibit A**); and

(b)    the Order (I) Declaring That Automatic Stay Applies to Certain Actions Against Non-Debtors and (II) Preliminarily Enjoining Certain Actions (Dkt. No. 187) (the "Order", annexed hereto as **Exhibit B**).

2.    **State the date on which the judgment, order, or decree was entered:** The Memorandum Opinion was entered on February 25, 2022 and the Order was entered on March 4, 2022.

**Part 3: Identify the other parties to the appeal:**

**List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys:**

| Party | Attorneys |
| --- | --- |

A221

| Appellant: the Official Committee of Talc Claimants I | **GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>Matthew I.W. Baker, Esq.<br>dstolz@genovaburns.com<br>dclarke@genovaburns.com<br>mbaker@genovaburns.com<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ 07920<br>Tel: (973) 467-2700<br>Fax: (973) 467-8126<br><br>**BROWN RUDNICK LLP**<br>David J. Molton, Esq.<br>Robert J. Stark, Esq.<br>Michael Winograd, Esq.<br>dmolton@brownrudnick.com<br>rstark@brownrudnick.com<br>mwinograd@brownrudnick.com<br>Seven Times Square<br>New York, NY 10036<br>Tel : (212) 209-4800<br>Fax : (212) 209-4801<br><br>and<br><br>Jeffrey L. Jonas, Esq.<br>Sunni P. Beville, Esq.<br>Shari I. Dwoskin, Esq.<br>jjonas@brownrudnick.com<br>sbeville@brownrudnick.com<br>sdwoskin@brownrudnick.com<br>One Financial Center<br>Boston, MA 02111<br>Tel: (617) 856-8200<br>Fax: (617) 856-8201<br><br>**OTTERBOURG PC**<br>Melanie L. Cyganowski, Esq.<br>Adam C. Silverstein, Esq.<br>Jennifer S. Feeney, Esq.<br>mcyganowski@otterbourg.com<br>asilverstein@otterbourg.com<br>jfeeney@otterbourg.com<br>230 Park Avenue<br>New York, NY 10169 |

A222

| | |
|---|---|
| | Tel: (212) 905-3628<br>Fax: (212) 682-6104<br><br>**PARKINS LEE & RUBIO LLP**<br>Leonard M. Parkins, Esq.<br>Charles M. Rubio, Esq.<br>lparkins@parkinslee.com<br>crubio@parkinslee.com<br>Pennzoil Place<br>700 Milan St., Suite 1300<br>Houston, TX 77002<br>Tel: (713) 715-1666 |
| Appellee - Plaintiff: LTL Management, LLC | **WOLLMUTH MAHER & DEUTSCH LLP**<br>Paul R. DeFilippo, Esq.<br>pdefilippo@wmd-law.com<br>500 Fifth Avenue<br>New York, NY 10110<br>Tel: (212) 382-3300<br>Fax: (212) 382-0050<br><br>**JONES DAY**<br>Gregory M. Gordon, Esq.<br>Brad B. Erens, Esq.<br>Dan B. Prieto, Esq.<br>Amanda Rush, Esq.<br>gmgordon@jonesday.com<br>bberens@jonesday.com<br>dbprieto@jonesday.com<br>asrush@jonesday.com<br>2727 N. Harwood Street<br>Dallas, TX 75201<br>Tel: (214) 220-3939<br>Fax: (214) 969-5100 |
| Defendants (See **Exhibit C**) | See **Exhibit C** |
| Interested party: the Protected Parties (see **Exhibit D**) | |
| Interested party/objector: OnderLaw, LLC, on behalf of certain claimants | **PARKINS LEE & RUBIO LLP**<br>Lenard M. Parkins, Esq.<br>Charles M. Rubio, Esq.<br>lparkins@parkinslee.com<br>crubio@parkinslee.com<br>Pennzoil Place<br>700 Milam Street, Suite 1300<br>Houston, TX 77002 |

5

A223

| | |
|---|---|
| | Tel: 713-715-1666<br><br>**J.C. WHITE LAW GROUP PLLC**<br>James C. White, Esq.<br>jwhite@jcwhitelaw.com<br>100 Europa Drive, Suite 401<br>Chapel Hill, NC 27517<br>Tel: (919) 246-4676<br>Fax: (919) 246-9113 |
| Interested party/objector: the Objecting Insurers, consisting of the following entities:<br><br>Atlanta International Insurance Company (as successor in interest to Drake Insurance Company); AIG Property Casualty Company (f/k/a Birmingham Fire Insurance Company of Pennsylvania); AIG Europe S.A. (as successor in interest to Union Atlantique d'Assurances S.A); AIU Insurance Company; ASR Schadeverzekering N.V. (as successor in interest to Assurantiekoor Van Wijk & Co.); Granite State Insurance Company; The Insurance Company of the State of Pennsylvania; Lexington Insurance Company; National Union Fire Insurance Company of Pittsburgh, Pa.; New Hampshire Insurance Company; The North River Insurance Company ("North River"); Starr Indemnity & Liability Company (as successor in interest to Republic Insurance Company); N.V. Schadeverzekeringsmaatschappij Maas Lloyd (individually and as successor in interest to policies subscribed in favor of Johnson & Johnson by N.V. Rotterdamse Assurantiekas, n/k/a De Ark); and Rheinland Versicherungen (as successor in interest only to the subscriptions of the former Dutch company Rheinland Verzekeringen). | **TRIF & MODUGNO, LLC**<br>Louis Modugno, Esq.<br>lmodugno@tm-firm.com<br>89 Headquarters Plaza, Suite 1201<br>Morristown, New Jersey 07960<br>Tel: (201) 874-4596<br><br>**KATTEN MUCHIN ROSENMAN LLP**<br>Shaya Rochester, Esq.<br>Katherine Scherling, Esq.<br>shaya.rochester@katten.com<br>katherine.scherling@katten.com<br>575 Madison Avenue<br>New York, NY 10022<br>Tel: (212) 940-8800<br><br>**MENDES & MOUNT LLP**<br>Eileen McCabe, Esq.<br>Stephen Roberts, Esq.<br>eileen.mccabe@mendes.com<br>stephen.roberts@mendes.com<br>750 Seventh Avenue<br>New York, NY 10019<br>Tel: (212) 261-8000 |

6

A224

| Interested party/objector: Aylstock, Witkin, Kreis & Overholtz, PLLC, on behalf of certain claimants | **OFFIT KURMAN, P.A.**<br>Paul J. Winterhalter, Esq.<br>pwinterhalter@offitkurman.com<br>99 Wood Avenue South, Suite 302<br>Iselin, New Jersey 08830<br>Tel: (267) 338-1370<br>Fax: (267) 338-1335<br><br>**KTBS LAW LLP**<br>Michael L. Tuchin, Esq.<br>Robert J. Pfister, Esq.<br>Samuel M. Kidder, Esq.<br>Nir Maoz, Esq.<br>mtuchin@ktbslaw.com<br>rpfister@ktbslaw.com<br>skidder@ktbslaw.com<br>nmaoz@ktbslaw.com<br>1801 Century Park East, 26th Floor<br>Los Angeles, California 90067<br>Tel: (310) 407-4000<br>Fax: (310) 407-9090 |
| Interested party/objector: Official Committee of Talc Claimants II | **COOLEY LLP**<br>Cullen D. Speckhart, Esq.<br>Michael Klein, Esq.<br>Erica J. Richards, Esq.<br>Lauren A. Reichardt, Esq.<br>Evan Lazerowitz, Esq.<br>cspeckhart@cooley.com<br>mklein@cooley.com<br>erichards@cooley.com<br>lreichardt@cooley.com<br>elazerowitz@cooley.com<br>55 Hudson Yards<br>New York, NY 10001<br>Tel: (212) 479-6000<br>Fax: (212) 479-6275<br><br>**BAILEY GLASSER LLP**<br>Brian A. Glasser, Esq.<br>Thomas B. Bennett, Esq.<br>Kevin W. Barrett, Esq.<br>Maggie B. Burrus, Esq.<br>bglasser@baileyglasser.com<br>tbennett@baileyglasser.com<br>kbarrett@baileyglasser.com |

7

mburrus@baileyglasser.com
105 Thomas Jefferson St. NW Suite 540
Washington, DC 20007
Tel: (202) 463-2101
Fax: (202) 463-2103

**MASSEY & GAIL LLP**
Jonathan S. Massey, Esq.
jmassey@masseygail.com
1000 Maine Ave. SW, Suite 450
Washington, DC 20024
Tel: (202) 652-4511
Fax: (312) 379-0467

**WALDREP WALL BABCOCK & BAILEY PLLC**
Thomas W. Waldrep, Jr., Esq.
Kevin L. Sink, Esq.
James C. Lanik, Esq.
Jennifer B. Lyday, Esq.
notice@waldrepwall.com
370 Knollwood Street Suite 600
Winston-Salem, NC 27103
Tel: (336) 717-1280
Fax: (336) 717-1340

**SHERMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY, P.A.**
Arthur J. Abramowitz, Esq.
Alan I. Moldoff, Esq.
Ross J. Switkes, Esq.
abramowitz@shermansilverstein.com
amoldoff@shermansilverstein.com
rswitkes@shermansilverstein.com
308 Harper Drive, Suite 200
Moorestown, New Jersey 08057
Tel: (856) 662-0700

A226

| Interested party: United States Trustee | **THE OFFICE OF THE UNITED STATES TRUSTEE, ANDREW R. VARA, UNITED STATES TRUSTEE, REGIONS 3 & 9**<br>Mitchell B. Hausman, Esq.<br>Jeffrey M. Sponder, Esq.<br>Lauren Bielskie, Esq.<br>Robert J. Schneider, Jr., Esq.<br>mitchell.b.hausman@usdoj.gov<br>jeffrey.m.sponder@usdoj.gov<br>lauren.bielskie@usdoj.gov<br>robert.j.schneider@usdoj.gov<br>One Newark Center, Suite 2100<br>Newark, NJ 07102<br>Tel: (973) 645-3014<br>Fax: (973) 645-5993 |
|---|---|

**Part 4: Not Applicable (No BAP in this District)**

**Part 5: Signature**

DATED this 10th day of March 2022.

Respectfully submitted,

**GENOVA BURNS, LLC**

By: ___/s/   Daniel M. Stolz_____.
Daniel M. Stolz, Esq.
Donald W. Clark, Esq.
dstolz@genovaburns.com
dclarke@genovaburns.com
110 Allen Road, Suite 304
Basking Ridge, NJ 07920
Tel: (973) 533-0777
Fax: (973) 467-8126

Local Counsel to the Official Committee of
Talc Claimants I

9

A227

10

A228

# EXHIBIT C

**Appendix A**
**List of Defendants and Their Counsel**

| Claimant Name | State Filed | Docket Number | Plaintiff Counsel |
|---|---|---|---|
| BONDURANT, LYNDA | NJ - USDC for the District of New Jersey | 3:19-cv-14366 | ALLAN BERGER AND ASSOCIATES |
| BUBRIG, REBA | NJ - USDC for the District of New Jersey | 3:21-cv-11386 | ALLAN BERGER AND ASSOCIATES |
| HOLLAND, LOIS | NJ - USDC for the District of New Jersey | 3:19-cv-14372 | ALLAN BERGER AND ASSOCIATES |
| LEONARD, PHYLLIS | NJ - USDC for the District of New Jersey | 3:20-cv-06131 | ALLAN BERGER AND ASSOCIATES |
| TRIPP, ARLENE | NJ - USDC for the District of New Jersey | 3:19-cv-17898 | ALLAN BERGER AND ASSOCIATES |
| WILLIAMS, SHARON | NJ - USDC for the District of New Jersey | 3:19-cv-15810 | ALLAN BERGER AND ASSOCIATES |
| DRENGACS, TERESA | NJ - USDC for the District of New Jersey | 3:19-cv-17797 | ALLEN & NOLTE PLLC |
| SIMPSON, CYNTHIA | NJ - USDC for the District of New Jersey | 3:19-cv-17425 | ALLEN & NOLTE PLLC |
| MANLA, JOSEPHINE | NJ - Superior Court - Atlantic County | ATL-L-003351-20 | ALOIA LAW FIRM LLC |
| BELLANTIS, CATHERINE | NJ - USDC for the District of New Jersey | 3:20-cv-09238 | ANAPOL WEISS |
| BERNOUDY, LAURA | NJ - USDC for the District of New Jersey | 3:20-cv-15545 | ANAPOL WEISS |
| CAMPBELL, TASHIA | NJ - USDC for the District of New Jersey | 3:20-cv-15544 | ANAPOL WEISS |
| GREENE, CAROL | NJ - USDC for the District of New Jersey | 3:20-cv-09260 | ANAPOL WEISS |
| HUSETH, SANDRA | NJ - Superior Court - Atlantic County | ATL-L-1341-17 | ANAPOL WEISS |
| KAMINSKY, DOROTHY | NJ - USDC for the District of New Jersey | 3:19-cv-21750 | ANAPOL WEISS |
| MCNEAL, PATRICIA | NJ - USDC for the District of New Jersey | 3:20-cv-15610 | ANAPOL WEISS |
| MENDES, HOLLY | NJ - USDC for the District of New Jersey | 3:20-cv-15536 | ANAPOL WEISS |
| MILLIS, JOAN | NJ - USDC for the District of New Jersey | 3:18-cv-06079 | ANAPOL WEISS |
| ONOPA, JOAN | NJ - USDC for the District of New Jersey | 3:17-cv-04012 | ANAPOL WEISS |
| OYLER, LISA | NJ - USDC for the District of New Jersey | 3:20-cv-13681 | ANAPOL WEISS |
| PATTON, MARCELLA | NJ - USDC for the District of New Jersey | 3:17-cv-07926 | ANAPOL WEISS |
| SNEDEN, CATHERINE | NJ - USDC for the District of New Jersey | 3:20-cv-15541 | ANAPOL WEISS |
| CARPENTER, ROSEMARY | NJ - USDC for the District of New Jersey | 3:19-cv-19786 | ANDREWS THORNTON HIGGINS RAZMARA, LLP |
| KUREH, MAHA | CA - Superior Court - Los Angeles County | BC628713 | ANDREWS THORNTON HIGGINS RAZMARA, LLP |
| SILVA, KAMALA | CA - Superior Court - Los Angeles County | BC635962 | ANDREWS THORNTON HIGGINS RAZMARA, LLP |
| BARRAS, MARGARET | NJ - USDC for the District of New Jersey | 3:18-cv-15967 | ANDRUS WAGSTAFF, P.C |
| BELIZEARD, VALLERIE | NJ - USDC for the District of New Jersey | 3:21-cv-04595 | ANDRUS WAGSTAFF, P.C |
| BLASINI, NYDIA | NJ - USDC for the District of New Jersey | 3:21-cv-16715 | ANDRUS WAGSTAFF, P.C |
| BOWERS, CATHERINE | NJ - USDC for the District of New Jersey | 3:20-cv-14545 | ANDRUS WAGSTAFF, P.C |
| BOYLAN, STEPHANIE | NJ - USDC for the District of New Jersey | 3:21-cv-04461 | ANDRUS WAGSTAFF, P.C |
| BURKE, LORA | NJ - USDC for the District of New Jersey | 3:21-cv-04591 | ANDRUS WAGSTAFF, P.C |
| CAMPBELL, DORA | NJ - USDC for the District of New Jersey | 3:19-cv-00655 | ANDRUS WAGSTAFF, P.C |
| CHARLES, NORALEE | NJ - USDC for the District of New Jersey | 3:21-cv-16416 | ANDRUS WAGSTAFF, P.C |
| CHRISTIAN, NANETTE | NJ - USDC for the District of New Jersey | 3:20-cv-18847 | ANDRUS WAGSTAFF, P.C |
| DANIEL, SUSAN | NJ - USDC for the District of New Jersey | 3:20-cv-18876 | ANDRUS WAGSTAFF, P.C |
| DAVIS, RUTHANNE | NJ - USDC for the District of New Jersey | 3:18-cv-00498 | ANDRUS WAGSTAFF, P.C |
| EDWARDS, LATASHA | NJ - USDC for the District of New Jersey | 3:20-cv-14184 | ANDRUS WAGSTAFF, P.C |
| ELMORE, DESIREE | NJ - USDC for the District of New Jersey | 3:21-cv-14467 | ANDRUS WAGSTAFF, P.C |
| HAACK, PATRICIA | NJ - USDC for the District of New Jersey | 3:21-cv-13695 | ANDRUS WAGSTAFF, P.C |
| HERRERA, DELILAH | NJ - USDC for the District of New Jersey | 3:21-cv-14291 | ANDRUS WAGSTAFF, P.C |
| HORNE, EMILY | NJ - USDC for the District of New Jersey | 3:17-cv-12625 | ANDRUS WAGSTAFF, P.C |
| HUBBARD, GEMMA | NJ - USDC for the District of New Jersey | 3:20-cv-18842 | ANDRUS WAGSTAFF, P.C |
| JONES, MARGARET | IL - Circuit Court - Cook County | 2021L003098 | ANDRUS WAGSTAFF, P.C |
| LAFOND, VERBENIA | NJ - USDC for the District of New Jersey | 3:21-cv-03558 | ANDRUS WAGSTAFF, P.C |
| LAND, JENNA | NJ - USDC for the District of New Jersey | 3:18-cv-01902 | ANDRUS WAGSTAFF, P.C |
| LEE, JILL | NJ - USDC for the District of New Jersey | 3:20-cv-14669 | ANDRUS WAGSTAFF, P.C |
| LISTON, MARY | NJ - USDC for the District of New Jersey | 3:19-cv-14590 | ANDRUS WAGSTAFF, P.C |
| LYONS, JESSICA | NJ - USDC for the District of New Jersey | 3:21-cv-04538 | ANDRUS WAGSTAFF, P.C |
| MARTIN, JULIA | NJ - USDC for the District of New Jersey | 3:17-cv-12630 | ANDRUS WAGSTAFF, P.C |
| MAY, PENNY | NJ - USDC for the District of New Jersey | 3:18-cv-00251 | ANDRUS WAGSTAFF, P.C |
| MCKENZIE, KATHY | NJ - USDC for the District of New Jersey | 3:17-cv-12633 | ANDRUS WAGSTAFF, P.C |
| NICHOLSON, SANDRA | NJ - USDC for the District of New Jersey | 3:21-cv-15449 | ANDRUS WAGSTAFF, P.C |
| OLSON, VANESSA | NJ - USDC for the District of New Jersey | 3:20-cv-14188 | ANDRUS WAGSTAFF, P.C |
| PLAISANCE, MARY | NJ - USDC for the District of New Jersey | 3:20-cv-14547 | ANDRUS WAGSTAFF, P.C |
| PLUNKETT, SHARI | NJ - USDC for the District of New Jersey | 3:19-cv-07718 | ANDRUS WAGSTAFF, P.C |
| RENTERIA, LETITIA | NJ - USDC for the District of New Jersey | 3:21-cv-15482 | ANDRUS WAGSTAFF, P.C |
| RICHARDSON, VICTORIA | NJ - USDC for the District of New Jersey | 3:17-cv-12634 | ANDRUS WAGSTAFF, P.C |
| SIMS, EMMA | NJ - USDC for the District of New Jersey | 3:21-cv-14204 | ANDRUS WAGSTAFF, P.C |
| VINCENT, LETHA | NJ - USDC for the District of New Jersey | 3:20-cv-14567 | ANDRUS WAGSTAFF, P.C |
| WALLACE, CYNTHIA | NJ - USDC for the District of New Jersey | 3:21-cv-07777 | ANDRUS WAGSTAFF, P.C |
| WEAVER, EBONI | NJ - USDC for the District of New Jersey | 3:17-cv-12635 | ANDRUS WAGSTAFF, P.C |
| WEBER, PATRICIA | NJ - USDC for the District of New Jersey | 3:17-cv-12636 | ANDRUS WAGSTAFF, P.C |
| WELLS, SHANNON | NJ - USDC for the District of New Jersey | 3:21-cv-16110 | ANDRUS WAGSTAFF, P.C |
| WHITE, MONICA | NJ - USDC for the District of New Jersey | 3:21-cv-14296 | ANDRUS WAGSTAFF, P.C |
| WILLIS, TAMARA | NJ - USDC for the District of New Jersey | 3:18-cv-01324 | ANDRUS WAGSTAFF, P.C |
| YATES, JAIME | NJ - USDC for the District of New Jersey | 3:19-cv-13974 | ANDRUS WAGSTAFF, P.C |
| ABERCROMBIE, BETTY | NJ - USDC for the District of New Jersey | 3:21-cv-10399 | ARNOLD & ITKIN LLP |
| ABNEY, SHAMAE | NJ - USDC for the District of New Jersey | 3:20-cv-19449 | ARNOLD & ITKIN LLP |
| ACHENBACH, DORIS | NJ - USDC for the District of New Jersey | 3:18-cv-11789 | ARNOLD & ITKIN LLP |
| ACOSTA, WENDY | NJ - USDC for the District of New Jersey | 3:21-cv-00812 | ARNOLD & ITKIN LLP |
| ADAMS, ANGELA | NJ - USDC for the District of New Jersey | 3:20-cv-15656 | ARNOLD & ITKIN LLP |
| ADAMS, PRISCILLA | NJ - USDC for the District of New Jersey | 3:20-cv-05974 | ARNOLD & ITKIN LLP |
| AKERS, DEBRA | NJ - USDC for the District of New Jersey | 3:20-cv-19725 | ARNOLD & ITKIN LLP |

| Claimant Name | State Filed | Docket Number | Plaintiff Counsel |
|---|---|---|---|
| ALBERTS, SHARON | NJ - USDC for the District of New Jersey | 3:21-cv-03656 | ARNOLD & ITKIN LLP |
| ALEGRE, TERESA | NJ - USDC for the District of New Jersey | 3:21-cv-16783 | ARNOLD & ITKIN LLP |
| ALEGRIA, MONICA | NJ - USDC for the District of New Jersey | 3:20-cv-02948 | ARNOLD & ITKIN LLP |
| ALKHAS, ANITA | NJ - USDC for the District of New Jersey | 3:20-cv-09373 | ARNOLD & ITKIN LLP |
| ALKHOURI, MADLAIN | NJ - USDC for the District of New Jersey | 3:21-cv-10402 | ARNOLD & ITKIN LLP |
| ALLBRIGHT, DIANE | NJ - USDC for the District of New Jersey | 3:18-cv-08732 | ARNOLD & ITKIN LLP |
| ALLEN, DEBORAH | NJ - USDC for the District of New Jersey | 3:20-cv-19736 | ARNOLD & ITKIN LLP |
| AMBROS, KATHERINE | NJ - USDC for the District of New Jersey | 3:20-cv-16294 | ARNOLD & ITKIN LLP |
| AMERSON, DEANDRA | CA - Superior Court - Los Angeles County | CGC-20-588782 | ARNOLD & ITKIN LLP |
| AMEY, DEBRA | NJ - USDC for the District of New Jersey | 3:21-cv-10626 | ARNOLD & ITKIN LLP |
| ANDERSON, BRANDY | NJ - USDC for the District of New Jersey | 3:20-cv-20052 | ARNOLD & ITKIN LLP |
| ANDERSON, BRENDA | NJ - USDC for the District of New Jersey | 3:21-cv-02528 | ARNOLD & ITKIN LLP |
| ANDERSON, GEORGIA | NJ - USDC for the District of New Jersey | 3:21-cv-15243 | ARNOLD & ITKIN LLP |
| APONTE, NOEMI | NJ - USDC for the District of New Jersey | 3:20-cv-12208 | ARNOLD & ITKIN LLP |
| ARCHER, KELLY | NJ - USDC for the District of New Jersey | 3:20-cv-09035 | ARNOLD & ITKIN LLP |
| ARNOLD, GENIE | NJ - USDC for the District of New Jersey | 3:20-cv-11129 | ARNOLD & ITKIN LLP |
| ARNOLD, PHYLLIS | NJ - USDC for the District of New Jersey | 3:19-cv-18654 | ARNOLD & ITKIN LLP |
| ARNOLD, TERRI | NJ - USDC for the District of New Jersey | 3:21-cv-01736 | ARNOLD & ITKIN LLP |
| ARREOLA, YOLAND | NJ - USDC for the District of New Jersey | 3:19-cv-18095 | ARNOLD & ITKIN LLP |
| ARTESSA, CHRISTINE | NJ - USDC for the District of New Jersey | 3:21-cv-14370 | ARNOLD & ITKIN LLP |
| ASHLEY-JARMON, DESHAWN | NJ - USDC for the District of New Jersey | 3:20-cv-10869 | ARNOLD & ITKIN LLP |
| ASKEW, DANIELLE | NJ - USDC for the District of New Jersey | 3:21-cv-02022 | ARNOLD & ITKIN LLP |
| ATWOOD, NORMA | NJ - USDC for the District of New Jersey | 3:20-cv-19232 | ARNOLD & ITKIN LLP |
| AUSTIN, JANIS | NJ - USDC for the District of New Jersey | 3:20-cv-03323 | ARNOLD & ITKIN LLP |
| AUSTIN, KATHY | NJ - USDC for the District of New Jersey | 3:20-cv-15108 | ARNOLD & ITKIN LLP |
| BAGWELL, DORA | NJ - USDC for the District of New Jersey | 3:20-cv-19249 | ARNOLD & ITKIN LLP |
| BAILEY, BECKY | NJ - USDC for the District of New Jersey | 3:21-cv-15290 | ARNOLD & ITKIN LLP |
| BAILEY, CHRISSA | NJ - USDC for the District of New Jersey | 3:20-cv-18223 | ARNOLD & ITKIN LLP |
| BAILEY-WYCHE, SYLVIA | NJ - USDC for the District of New Jersey | 3:21-cv-01359 | ARNOLD & ITKIN LLP |
| BAKER, MEGHAN | NJ - USDC for the District of New Jersey | 3:20-cv-11127 | ARNOLD & ITKIN LLP |
| BALDUCCI, MARIAN AVANTS | NJ - USDC for the District of New Jersey | 3:21-cv-15281 | ARNOLD & ITKIN LLP |
| BANKS, LOREDA | NJ - USDC for the District of New Jersey | 3:20-cv-06638 | ARNOLD & ITKIN LLP |
| BARLEY, LESLIE | NJ - USDC for the District of New Jersey | 3:20-cv-11873 | ARNOLD & ITKIN LLP |
| BARNFIELD, NICOLE | NJ - USDC for the District of New Jersey | 3:20-cv-11123 | ARNOLD & ITKIN LLP |
| BARNHART, MARYANN | NJ - USDC for the District of New Jersey | 3:20-cv-19542 | ARNOLD & ITKIN LLP |
| BARRETT, ROBIN | NJ - USDC for the District of New Jersey | 3:20-cv-20030 | ARNOLD & ITKIN LLP |
| BASINGER, ELSA | NJ - USDC for the District of New Jersey | 3:20-cv-08122 | ARNOLD & ITKIN LLP |
| BATTS, TAMMIE | NJ - USDC for the District of New Jersey | 3:21-cv-13261 | ARNOLD & ITKIN LLP |
| BAZILE, SHIRLEY | NJ - USDC for the District of New Jersey | 3:21-cv-14259 | ARNOLD & ITKIN LLP |
| BEACH, CLAIRE | NJ - USDC for the District of New Jersey | 3:20-cv-11131 | ARNOLD & ITKIN LLP |
| BEAN, SCARLETT | NJ - USDC for the District of New Jersey | 3:20-cv-08209 | ARNOLD & ITKIN LLP |
| BEARD, KAY | NJ - USDC for the District of New Jersey | 3:20-cv-00180 | ARNOLD & ITKIN LLP |
| BEDENBAUGH, CHERYL | NJ - USDC for the District of New Jersey | 3:20-cv-12724 | ARNOLD & ITKIN LLP |
| BELL, ETHEL | NJ - USDC for the District of New Jersey | 3:21-cv-10981 | ARNOLD & ITKIN LLP |
| BELL, ETHEL | NJ - USDC for the District of New Jersey | 3:20-cv-16980 | ARNOLD & ITKIN LLP |
| BELLEW, TAMMY | NJ - USDC for the District of New Jersey | 3:21-cv-16210 | ARNOLD & ITKIN LLP |
| BENDELL, HANSINA | NJ - USDC for the District of New Jersey | 3:20-cv-13715 | ARNOLD & ITKIN LLP |
| BENTON, IRENE | NJ - USDC for the District of New Jersey | 3:21-cv-10710 | ARNOLD & ITKIN LLP |
| BERRY, JOAN | NJ - USDC for the District of New Jersey | 3:20-cv-12616 | ARNOLD & ITKIN LLP |
| BESHEARS, DELORIS | NJ - USDC for the District of New Jersey | 3:21-cv-01912 | ARNOLD & ITKIN LLP |
| BETTS, RHONDA | CA - Superior Court - Los Angeles County | 20STCV48090 | ARNOLD & ITKIN LLP |
| BILLIE, ADELINE | NJ - USDC for the District of New Jersey | 3:21-cv-15723 | ARNOLD & ITKIN LLP |
| BIRCH, KIERSTEN | IL - Circuit Court - Cook County | 2021L000547 | ARNOLD & ITKIN LLP |
| BLACKMON, CATINA | NJ - USDC for the District of New Jersey | 3:21-cv-11820 | ARNOLD & ITKIN LLP |
| BLAND, SHELIA | NJ - USDC for the District of New Jersey | 3:21-cv-12036 | ARNOLD & ITKIN LLP |
| BLATT, DEBORA | NJ - USDC for the District of New Jersey | 3:21-cv-01054 | ARNOLD & ITKIN LLP |
| BLEDSOE, HANNAH | NJ - USDC for the District of New Jersey | 3:21-cv-07451 | ARNOLD & ITKIN LLP |
| BLOUGH, BILLIE | NJ - USDC for the District of New Jersey | 3:21-cv-03794 | ARNOLD & ITKIN LLP |
| BLUE, KHELIA | NJ - USDC for the District of New Jersey | 3:20-cv-12543 | ARNOLD & ITKIN LLP |
| BODNAR, ROSE | NJ - USDC for the District of New Jersey | 3:20-cv-00151 | ARNOLD & ITKIN LLP |
| BOLDS, DOMINIQUE | NJ - USDC for the District of New Jersey | 3:21-cv-16656 | ARNOLD & ITKIN LLP |
| BONDA, JUDI | PA - Philadelphia County Court of Common Pleas | 201200816 | ARNOLD & ITKIN LLP |
| BORUFF, PAMELA | NJ - USDC for the District of New Jersey | 3:21-cv-07418 | ARNOLD & ITKIN LLP |
| BOSSALINA, DONNA | NJ - USDC for the District of New Jersey | 3:20-cv-14242 | ARNOLD & ITKIN LLP |
| BOTTS, DELIA | NJ - USDC for the District of New Jersey | 3:21-cv-10463 | ARNOLD & ITKIN LLP |
| BOUDREAUX, CHERYL | NJ - USDC for the District of New Jersey | 3:21-cv-12288 | ARNOLD & ITKIN LLP |
| BOWLSON, KENYATTA | NJ - USDC for the District of New Jersey | 3:20-cv-19479 | ARNOLD & ITKIN LLP |
| BOYCE, LINDA | NJ - Superior Court - Atlantic County | ATL-L-000449-21 | ARNOLD & ITKIN LLP |
| BOYD, JENNETTE | NJ - USDC for the District of New Jersey | 3:20-cv-10881 | ARNOLD & ITKIN LLP |
| BOYD, YVONNE | NJ - USDC for the District of New Jersey | 3:21-cv-10468 | ARNOLD & ITKIN LLP |
| BRADLEY-COMBS, LULA | NJ - USDC for the District of New Jersey | 3:21-cv-10144 | ARNOLD & ITKIN LLP |
| BRAITHWAITE, CATHY | NJ - USDC for the District of New Jersey | 3:20-cv-01280 | ARNOLD & ITKIN LLP |
| BRAND, STACEY | NJ - USDC for the District of New Jersey | 3:21-cv-12445 | ARNOLD & ITKIN LLP |
| BRANDON, SHANNON | NJ - USDC for the District of New Jersey | 3:21-cv-16423 | ARNOLD & ITKIN LLP |
| BRANTLEY, LORETTA | NJ - USDC for the District of New Jersey | 3:20-cv-19912 | ARNOLD & ITKIN LLP |
| BRAY, RUTH | NJ - USDC for the District of New Jersey | 3:20-cv-09834 | ARNOLD & ITKIN LLP |
| BREGEL, JOSEPHINE | NJ - USDC for the District of New Jersey | 3:20-cv-14801 | ARNOLD & ITKIN LLP |
| BRESCIA, FRANCES | NJ - USDC for the District of New Jersey | 3:20-cv-06629 | ARNOLD & ITKIN LLP |
| BRILL, PAMELA | NJ - USDC for the District of New Jersey | 3:20-cv-02151 | ARNOLD & ITKIN LLP |

# EXHIBIT D

## Non-Debtor Affiliates

3Dintegrated ApS
Acclarent, Inc.
Actelion Ltd
Actelion Manufacturing GmbH
Actelion Pharmaceuticals Australia
    Pty. Limited
Actelion Pharmaceuticals Korea Ltd.
Actelion Pharmaceuticals Ltd
Actelion Pharmaceuticals Mexico
    S.A. De C.V.
Actelion Pharmaceuticals Trading
    (Shanghai) Co., Ltd.
Actelion Pharmaceuticals UK Limited
Actelion Pharmaceuticals US, Inc.
Actelion Registration Limited
Actelion Treasury Unlimited Company
Akros Medical, Inc.
Albany Street LLC
ALZA Corporation
Alza Land Management, Inc.
AMO (Hangzhou) Co., Ltd.
AMO (Shanghai) Medical Devices
    Trading Co., Ltd.
AMO ASIA LIMITED
AMO Australia Pty Limited
AMO Canada Company
AMO Denmark ApS
AMO Development, LLC
AMO France
AMO Germany GmbH
AMO Groningen B.V.
AMO International Holdings
AMO Ireland
AMO Ireland Finance Unlimited Company
AMO Italy SRL
AMO Japan K.K.
AMO Manufacturing Spain S.L.
AMO Manufacturing USA, LLC
AMO Netherlands BV
AMO Nominee Holdings, LLC
AMO Norway AS
AMO Puerto Rico Manufacturing, Inc.
AMO Sales and Service, Inc.
AMO Singapore Pte. Ltd.

AMO Spain Holdings, LLC
AMO Switzerland GmbH
AMO U.K. Holdings, LLC
AMO United Kingdom, Ltd.
AMO Uppsala AB
AMO US Holdings, Inc.
AMO USA Sales Holdings, Inc.
AMO USA, LLC
Animas Diabetes Care, LLC
Animas LLC
Animas Technologies LLC
AorTx, Inc.
Apsis
Aragon Pharmaceuticals, Inc.
Asia Pacific Holdings, LLC
Atrionix, Inc.
AUB Holdings LLC
Auris Health, Inc.
Backsvalan 2 Aktiebolag
Backsvalan 6 Handelsbolag
Beijing Dabao Cosmetics Co., Ltd.
BeneVir BioPharm, Inc.
Berna Rhein B.V.
BioMedical Enterprises, Inc.
Biosense Webster (Israel) Ltd.
Biosense Webster, Inc.
C Consumer Products Denmark ApS
Calibra Medical LLC
Campus-Foyer Apotheke GmbH
Carlo Erba OTC S.r.l.
Centocor Biologics, LLC
Centocor Research & Development, Inc.
ChromaGenics B.V.
Ci:Labo Customer Marketing Co., Ltd.
Ci:z. Labo Co., Ltd.
Cilag AG
Cilag GmbH International
Cilag Holding AG
Cilag Holding Treasury Unlimited Company
Cilag-Biotech, S.L.
CNA Development GmbH
Codman & Shurtleff, Inc.
Coherex Medical, Inc.
ColBar LifeScience Ltd.
Company Store.com, Inc.
Cordis de Mexico, S.A. de C.V.

NAI-1522309200

Cordis International Corporation
Corimmun GmbH
CoTherix Inc.
CSATS, Inc.
Darlain Trading S.A.
Debs-Vogue Corporation
    (Proprietary) Limited
DePuy France
DePuy Hellas SA
DePuy International Limited
DePuy Ireland Unlimited Company
DePuy Mexico, S.A. de C.V.
DePuy Mitek, LLC
DePuy Orthopaedics, Inc.
DePuy Products, Inc.
DePuy Spine, LLC
DePuy Synthes Gorgan Limited
DePuy Synthes Institute, LLC
DePuy Synthes Leto SARL
DePuy Synthes Products, Inc.
DePuy Synthes Sales, Inc.
DePuy Synthes, Inc.
Dr. Ci:Labo Co., Ltd.
DR. CI:LABO COMPANY LIMITED
Dutch Holding LLC
ECL7, LLC
EES Holdings de Mexico,
    S. de R.L. de C.V.
EES, S.A. de C.V.
EIT Emerging Implant Technologies GmbH
Ethicon Biosurgery Ireland
Ethicon Endo-Surgery (Europe) GmbH
Ethicon Endo-Surgery, Inc.
Ethicon Endo-Surgery, LLC
Ethicon Holding Sarl
Ethicon Ireland Unlimited Company
Ethicon LLC
Ethicon PR Holdings Unlimited Company
Ethicon Sarl
Ethicon US, LLC
Ethicon Women's Health & Urology Sarl
Ethicon, Inc.
Ethnor (Proprietary) Limited
Ethnor del Istmo S.A.
Ethnor Farmaceutica, S.A.
Ethnor Guatemala, Sociedad Anomina

NAI-1522309200

A235

Finsbury (Development) Limited
Finsbury (Instruments) Limited
Finsbury Medical Limited
Finsbury Orthopaedics International Limited
Finsbury Orthopaedics Limited
FMS Future Medical System SA
GH Biotech Holdings Limited
Global Investment Participation B.V.
GMED Healthcare BV
Guangzhou Bioseal Biotech Co., Ltd.
Hansen Medical Deutschland GmbH
Hansen Medical International, Inc.
Hansen Medical UK Limited
Hansen Medical, Inc.
Healthcare Services (Shanghai) Ltd.
I.D. Acquisition Corp.
Innomedic Gesellschaft für innovative
    Medizintechnik und Informatik mbH
Innovalens B.V.
Innovative Surgical Solutions, LLC
J & J Company West Africa Limited
J&J Pension Trustees Limited
J.C. General Services BV
Janssen Alzheimer Immunotherapy
    (Holding) Limited
Janssen Biologics (Ireland) Limited
Janssen Biologics B.V.
Janssen BioPharma, Inc.
Janssen Biotech, Inc.
Janssen Cilag Farmaceutica S.A.
Janssen Cilag S.p.A.
Janssen Cilag SPA
Janssen Cilag, C.A.
Janssen de Mexico, S. de R.L. de C.V.
Janssen Development Finance
    Unlimited Company
Janssen Diagnostics, LLC
Janssen Egypt LLC
Janssen Farmaceutica Portugal Lda
Janssen Global Services, LLC
Janssen Group Holdings Limited
Janssen Holding GmbH
Janssen Inc.
Janssen Irish Finance Company UC
Janssen Korea Ltd.
Janssen Oncology, Inc.

Janssen Ortho LLC
Janssen Pharmaceutica
    (Proprietary) Limited
Janssen Pharmaceutica NV
Janssen Pharmaceutica S.A.
Janssen Pharmaceutical
Janssen Pharmaceutical K.K.
Janssen Pharmaceutical Sciences
    Unlimited Company
Janssen Pharmaceuticals, Inc.
Janssen Products, LP
Janssen R&D Ireland
Janssen Research & Development, LLC
Janssen Sciences Ireland
    Unlimited Company
Janssen Scientific Affairs, LLC
Janssen Supply Group, LLC
Janssen Vaccines & Prevention B.V.
Janssen Vaccines Corp.
Janssen-Cilag
Janssen-Cilag (New Zealand) Limited
Janssen-Cilag A/S
Janssen-Cilag AG
Janssen-Cilag Aktiebolag
Janssen-Cilag AS
Janssen-Cilag B.V.
Janssen-Cilag de Mexico S. de R.L. de C.V.
Janssen-Cilag Farmaceutica Lda.
Janssen-Cilag Farmaceutica Ltda.
Janssen-Cilag GmbH
Janssen-Cilag International NV
Janssen-Cilag Kft.
Janssen-Cilag Limited
Janssen-Cilag Limited
Janssen-Cilag Manufacturing, LLC
Janssen-Cilag NV
Janssen-Cilag OY
Janssen-Cilag Pharma GmbH
Janssen-Cilag Pharmaceutical S.A.C.I.
Janssen-Cilag Polska, Sp. z o.o.
Janssen-Cilag Pty Ltd
Janssen-Cilag S.A.
Janssen-Cilag s.r.o.
Janssen-Cilag, S.A.
Janssen-Cilag, S.A. de C.V.
Janssen-Pharma, S.L.

J-C Health Care Ltd.
Jevco Holding, Inc.
JJ Surgical Vision Spain, S.L.
JJC Acquisition Company B.V.
JJHC, LLC
JJSV Belgium BV
JJSV Manufacturing Malaysia SDN. BHD.
JJSV Norden AB
JJSV Produtos Oticos Ltda.
JNJ Global Business Services s.r.o.
JNJ Holding EMEA B.V.
JNJ International Investment LLC
JNJ Irish Investments ULC
Johnson & Johnson
Johnson & Johnson - Societa' Per Azioni
Johnson & Johnson (Angola), Limitada
Johnson & Johnson (China) Investment Ltd.
Johnson & Johnson (Egypt) S.A.E.
Johnson & Johnson (Hong Kong) Limited
Johnson & Johnson (Ireland) Limited
Johnson & Johnson (Jamaica) Limited
Johnson & Johnson (Kenya) Limited
Johnson & Johnson (Middle East) Inc.
Johnson & Johnson (Mozambique),
    Limitada
Johnson & Johnson (Namibia)
    (Proprietary) Limited
Johnson & Johnson (New Zealand) Limited
Johnson & Johnson (Philippines), Inc.
Johnson & Johnson (Private) Limited
Johnson & Johnson (Thailand) Ltd.
Johnson & Johnson (Trinidad) Limited
Johnson & Johnson (Vietnam) Co., Ltd
Johnson & Johnson AB
Johnson & Johnson AG
Johnson & Johnson Belgium
    Finance Company BV
Johnson & Johnson Bulgaria EOOD
Johnson & Johnson China Ltd.
Johnson & Johnson Consumer
    (Hong Kong) Limited
Johnson & Johnson Consumer
    (Thailand) Limited
Johnson & Johnson Consumer B.V.
Johnson & Johnson Consumer
    Holdings France

Johnson & Johnson Consumer Inc.
Johnson & Johnson Consumer NV
Johnson & Johnson Consumer
    Saudi Arabia Limited
Johnson & Johnson Consumer Services
    EAME Ltd.
Johnson & Johnson d.o.o.
Johnson & Johnson de Argentina
    S.A.C. e. I.
Johnson & Johnson de Chile Limitada
Johnson & Johnson de Chile S.A.
Johnson & Johnson de Colombia S.A.
Johnson & Johnson de Costa Rica, S.A.
Johnson & Johnson de Mexico, S.A. de C.V.
Johnson & Johnson de Uruguay S.A.
Johnson & Johnson de Venezuela, S.A.
Johnson & Johnson del Ecuador, S.A.
Johnson & Johnson Del Paraguay, S.A.
Johnson & Johnson del Peru S.A.
Johnson & Johnson do Brasil Industria E
    Comercio de Produtos Para Saude Ltda.
Johnson & Johnson Dominicana, S.A.S.
Johnson & Johnson Enterprise
    Innovation Inc.
Johnson & Johnson European
    Treasury Company
Johnson & Johnson Finance Corporation
Johnson & Johnson Finance Limited
Johnson & Johnson Financial
    Services GmbH
Johnson & Johnson for Export and
    Import LLC
Johnson & Johnson Foundation Scotland
    (NON-PROFIT)
Johnson & Johnson Gateway, LLC
Johnson & Johnson Gesellschaft m.b.H.
Johnson & Johnson GmbH
Johnson & Johnson Guatemala, S.A.
Johnson & Johnson Health and
    Wellness Solutions, Inc.
Johnson & Johnson Health Care
    Systems Inc.
Johnson & Johnson Hellas Commercial and
    Industrial S.A.
Johnson & Johnson Hellas Consumer
    Products Commercial Societe Anonyme

Johnson & Johnson Hemisferica S.A.
Johnson & Johnson Holding GmbH
Johnson & Johnson Holdings K.K.
Johnson & Johnson Inc.
Johnson & Johnson Industrial Ltda.
Johnson & Johnson Innovation - JJDC, Inc.
Johnson & Johnson Innovation Limited
Johnson & Johnson Innovation LLC
Johnson & Johnson International
Johnson & Johnson International
   (Singapore) Pte. Ltd.
Johnson & Johnson International Financial
   Services Company
Johnson & Johnson Japan Inc.
Johnson & Johnson K.K.
Johnson & Johnson Kft.
Johnson & Johnson Korea Ltd.
Johnson & Johnson Korea Selling &
   Distribution LLC
Johnson & Johnson Limitada
Johnson & Johnson Limited
Johnson & Johnson LLC
Johnson & Johnson Luxembourg Finance
   Company Sarl
Johnson & Johnson Management Limited
Johnson & Johnson Medical (China) Ltd.
Johnson & Johnson Medical
   (Proprietary) Ltd
Johnson & Johnson Medical (Shanghai) Ltd.
Johnson & Johnson Medical (Suzhou) Ltd.
Johnson & Johnson Medical B.V.
Johnson & Johnson Medical Devices &
   Diagnostics Group - Latin America,
   L.L.C.
Johnson & Johnson Medical GmbH
Johnson & Johnson Medical Korea Ltd.
Johnson & Johnson Medical Limited
Johnson & Johnson Medical Mexico, S.A.
   de C.V.
Johnson & Johnson Medical NV
Johnson & Johnson Medical
   Products GmbH
Johnson & Johnson Medical Pty Ltd
Johnson & Johnson Medical S.A.
Johnson & Johnson Medical S.p.A.
Johnson & Johnson Medical SAS

Johnson & Johnson Medical
   Saudi Arabia Limited
Johnson & Johnson Medical Servicios
   Profesionales S. de R.L. de C.V.
Johnson & Johnson Medical Taiwan Ltd.
Johnson & Johnson Medical, S.C.S.
Johnson & Johnson Medikal Sanayi ve
   Ticaret Limited Sirketi
Johnson & Johnson Middle East FZ-LLC
Johnson & Johnson Morocco
   Societe Anonyme
Johnson & Johnson Nordic AB
Johnson & Johnson Pacific Pty Limited
Johnson & Johnson Pakistan
   (Private) Limited
Johnson & Johnson Panama, S.A.
Johnson & Johnson Personal Care
   (Chile) S.A.
Johnson & Johnson Poland Sp. z o.o.
Johnson & Johnson Private Limited
Johnson & Johnson Pte. Ltd.
Johnson & Johnson Pty. Limited
Johnson & Johnson Research Pty Ltd
Johnson & Johnson Romania S.R.L.
Johnson & Johnson S.E. d.o.o.
Johnson & Johnson S.E., Inc.
Johnson & Johnson Sante Beaute France
Johnson & Johnson SDN. BHD.
Johnson & Johnson Services, Inc.
Johnson & Johnson Servicios Corporativos,
   S. de R.L. de C.V.
Johnson & Johnson Surgical Vision India
   Private Limited
Johnson & Johnson Surgical Vision, Inc.
Johnson & Johnson Taiwan Ltd.
Johnson & Johnson UK Treasury
   Company Limited
Johnson & Johnson Ukraine LLC
Johnson & Johnson Urban Renewal
   Associates
Johnson & Johnson Vision Care
   (Shanghai) Ltd.
Johnson & Johnson Vision Care Ireland
   Unlimited Company
Johnson & Johnson Vision Care, Inc.
Johnson & Johnson, S.A.

Johnson & Johnson, S.A. de C.V.
Johnson & Johnson, s.r.o.
Johnson & Johnson, s.r.o.
Johnson and Johnson (Proprietary) Limited
Johnson and Johnson Sihhi Malzeme Sanayi
    Ve Ticaret Limited Sirketi
JOM Pharmaceutical Services, Inc.
La Concha Land Investment Corporation
Latam International Investment Company
    Unlimited Company
Lifescan
McNeil AB
McNeil Consumer Pharmaceuticals Co.
McNeil Denmark ApS
McNeil Healthcare (Ireland) Limited
McNeil Healthcare (UK) Limited
McNeil Healthcare LLC
McNeil Iberica S.L.U.
McNeil LA LLC
McNEIL MMP, LLC
McNeil Nutritionals, LLC
McNeil Panama, LLC
McNeil Products Limited
McNeil Sweden AB
MDS Co. Ltd.
Medical Device Business Services, Inc.
Medical Devices & Diagnostics Global
    Services, LLC
Medical Devices International LLC
Medical Industrial do Brasil Ltda.
Medos International Sarl
Medos Sarl
MegaDyne Medical Products, Inc.
Menlo Care De Mexico, S.A. de C.V.
Mentor B.V.
Mentor Deutschland GmbH
Mentor Medical Systems B.V.
Mentor Partnership Holding
    Company I, LLC
Mentor Texas GP LLC
Mentor Texas L.P.
Mentor Worldwide LLC
Micrus Endovascular LLC
Middlesex Assurance Company Limited
Momenta Ireland Limited
Momenta Pharmaceuticals, Inc.

NeoStrata Company, Inc.
NeoStrata UG (haftungsbeschränkt)
Netherlands Holding Company
Neuravi Inc.
Neuravi Limited
NeuWave Medical, Inc.
Novira Therapeutics, LLC
NuVera Medical, Inc.
Obtech Medical Mexico, S.A. de C.V.
OBTECH Medical Sarl
OGX Beauty AU Pty Ltd
OGX Beauty Limited
OMJ Holding GmbH
OMJ Ireland Unlimited Company
OMJ Pharmaceuticals, Inc.
Omrix Biopharmaceuticals Ltd.
Omrix Biopharmaceuticals NV
Omrix Biopharmaceuticals, Inc.
Ortho Biologics LLC
Ortho Biotech Holding LLC
Ortho-McNeil Pharmaceutical, LLC
Orthotaxy
Patriot Pharmaceuticals, LLC
Peninsula Pharmaceuticals, LLC
Penta Pty. Limited
Percivia LLC
Perouse Plastie
Pharmadirect Ltd.
Pharmedica Laboratories (Proprietary)
    Limited
PMC Holdings G.K.
Princeton Laboratories, Inc.
Productos de Cuidado Personal y de La
    Salud de Bolivia S.R.L.
Proleader S.A.
PT Integrated Healthcare Indonesia
PT. Johnson & Johnson Indonesia
Pulsar Vascular, Inc.
Regency Urban Renewal Associates
RespiVert Ltd.
RoC International
Royalty A&M LLC
Rutan Realty LLC
Scios LLC
Sedona Enterprise Co., Ltd.
Sedona Singapore International Pte. Ltd.

Sedona Thai International Co., Ltd.
Serhum S.A. de C.V.
Shanghai Elsker For Mother & Baby
    Co., Ltd
Shanghai Johnson & Johnson Ltd.
Shanghai Johnson & Johnson Pharmaceuticals Ltd.
Sightbox, LLC
Sodiac ESV
Spectrum Vision Limited Liability Company
Spectrum Vision Limited Liability Company
Spectrum Vision Limited Liability
    Partnership
Spine Solutions GmbH
SterilMed, Inc.
Sterilmed, Inc.
Surgical Process Institute Deutschland
    GmbH
Synthes Costa Rica S.C.R., Limitada
SYNTHES GmbH
Synthes GmbH
Synthes Holding AG
Synthes Holding Limited
SYNTHES Medical Immobilien GmbH
Synthes Medical Surgical Equipment &
    Instruments Trading LLC
Synthes Produktions GmbH
Synthes Proprietary Limited
Synthes S.M.P., S. de R.L. de C.V.
Synthes Tuttlingen GmbH
Synthes USA Products, LLC
Synthes USA, LLC
Synthes, Inc.
TARIS Biomedical LLC
TearScience, Inc.
The Anspach Effort, LLC
The Vision Care Institute, LLC
Tibotec, LLC
Torax Medical, Inc.
TriStrata, Incorporated
UAB "Johnson & Johnson"
Vania Expansion
Verb Surgical Inc.
Vision Care Finance Unlimited Company
Vogue International LLC
Vogue International Trading, Inc.
WH4110 Development Company, L.L.C.

Xian Janssen Pharmaceutical Ltd.
XO1 Limited
Zarbee's, Inc.

**Retailers and Indemnified Parties**

7-Eleven
7-Eleven, Inc.
Acme Markets, Inc.
Ahold Delhaize USA, Inc.
Albertsons Companies, Inc.
Alpha Beta Company
Associated Wholesaler Grocers, Inc.
Bartell Drug Company
Bashas', Inc.
Bausch Health US, LLC
Bausch Health Americas, Inc.
Bausch Health Companies Inc.
BCW LLC
Best Market of Astoria, Inc.
BI-LO, LLC
Bi-Mart Corporation
C&S Wholesale Grocers
C&S Wholesale Grocers, Inc.
Classic Pharmacy, Inc.
Cosentino Enterprises, Inc.
Cosentino Group, Inc.
Cosentino Price Chopper
Cosentino's Food Stores
Costco Wholesale Corporation
CVS Health Corporation
CVS Pharmacy, Inc.
Demoulas Super Markets, Inc.
Dierbergs Markets, Inc.
Discount Drug Mart, Inc.
Dollar Tree Stores, Inc.
DRI I, Inc.
Duane Reade, Inc.
Eckerd Corporation of Florida, Inc.
Family Dollar Stores
Fleming Companies, Inc.
Food 4 Less of California
Food 4 Less of Southern California, Inc.
Foodland
Foodland Super Market, LTD
Foot Locker Specialties, Inc., individually and as successor-in-interest to F.W. Woolworth Co.

Foot Locker Specialty, Inc.
Foot Locker, Inc./Woolworth Corporation
Four B Corporation d/b/a Balls Food Stores
Fred Meyer Stores, Inc.
Fruth Pharmacy, Inc.
Gerlands Food Fair, LLC
Gerlands, LLC
Gerlands, LLC/Lewis Food Town, Inc.
Giant Eagle, Inc.
Giant Food of Maryland, LLC
Giant Food Stores, LLC
Grocery Outlet Holding Corporation
Grocery Outlet Inc.
Grocery Outlet, Inc.
HAC, Inc.
H-E-B, LP
Hughes Markets, Inc.
Hy-Vee, Inc.
Jewel Food Stores
Jewel Osco
Jewel Osco Southwest
K&B Corporation
K&B Louisiana Corporation
Kings Park Slope, Inc.
Kings Pharmacy
Kings Pharmacy Holdings, LLC
Kings Third Ave. Pharmacy, Inc.
Knorr Street ShopRite, Inc.
La Luz Market, LTD. Co.
Lewis Food Town, Inc.
Longs Drug Stores California, L.L.C
Longs Drug Stores of Southern California, L.L.C.
Longs Drug Stores, L.L.C.
Lucky Stores, Inc.
Marc Glassman Inc.
Marc Glassman, Inc. d/b/a Marc's Store & Pharmacy
MBF Healthcare Holdings, Inc.
MBF Healthcare Management, LLC
Meijer, Inc.
MMG Equity Partners
Navarro Discount Pharmacies No. 5, LLC
Navarro Discount Pharmacies, LLC
Owens & Minor Distribution, Inc.
Owens & Minor, Inc.
Piggly Wiggly Carolina Co.
Piggly Wiggly Carolina Co., Inc.

Piggly Wiggly Companies, Inc.
Piggly Wiggly, LLC
Piggly Wiggly, LLC (subsidiary of C&S Wholesale Grocers)
PTI
PTI Royston LLC, a Georgia Limited Liability Co., d/b/a Pharma Tech Industries
PTI Union, LLC d/b/a Pharma Tech Industries
Publix Super Markets, Inc.
Raley's
Ralphs Grocery Company
Randall's Food & Drug LP
Randall's Food Markets, Inc.
Rite Aid
Rite Aid Corporation
Rite Aid Hdqtrs. Corp.
Rite Aid of New York City, Inc.
Rite Aid of New York, Inc.
Rite Aid of Pennsylvania, Inc.
Rite Aid of South Carolina, Inc.
Rouse's Enterprises, L.L.C.
Rouse's Enterprises, L.L.C. d/b/a Rouses Market
Safeway Inc.
Save Mart Supermarkets, Inc.
Save Mart Supermarkets, Inc./Lucky Stores
Schnuck Markets
Schnuck Markets, Inc.
Sedano's Market, Inc.
Shanti Pharmacy Corp.
Shaw's Supermarkets, Inc.
Shop-Rite Supermarkets, Inc. a/k/a Shop Rite of Knorr Street
Smith Food and Drug Center, Inc.
Southeastern Grocers, Inc.
Star Markets Company, Inc.
Stater Bros. Markets
Super Center Concepts, Inc. d/b/a Superior Grocers
Superior Grocers
SuperValu, Inc.
T. Levy Associates, d/b/a Beauty Land Enterprises
T. Levy Associates, Inc. d/b/a Beauty Land Enterprises/Beautyland
Target Corporation
The Bartell Drug Company
The Kroger Company
The Stop & Shop Supermarket Company LLC
The Vons Companies, Inc.
Thrifty Payless, Inc.
Thrifty White Drug
Tops Holding, LLC

NAI-1522309200

Valeant Pharmaceuticals International
Valeant Pharmaceuticals International, Inc.
Valeant Pharmaceuticals North America LLC
Wakefern Food Corp.
Walgreen Co.
Walgreen Eastern Co., Inc.
Walgreen Pharmacy Strategies, LLC
Walgreens Boots Alliance, Inc.
Walmart Inc.
Wegmans Food Markets, Inc.
Winn-Dixie Stores, Inc.
Woolworth Corporation

**Insurers**
A.G. Securitas
ACE Property & Casualty Insurance
     Company
Aetna Casualty and Surety Company
Affiliated FM Ins. Company
AIG Europe S.A.
AIG Property and Casualty Company
AIU Ins. Company
Allianz Ins. Company
Allianz Global Risks US Insurance
     Company
Allstate Insurance Company
American Centennial Ins. Company
American Motorists Ins. Company
American Re-Insurance Company
Arrowood Indemnity Company
ASR Schadeverzekering N.V.
Assurances Generales De France
Assurantiekantoor VanWijk & Co.
Atlanta International Insurance Company
Birmingham Fire Ins. Company of
     Pennsylvania
Central National Ins. Company of Omaha
Century Indemnity Company
Champion Dyeing Allocation Year
Chubb
City Ins. Company
Colonia Versicherungs AG, Koln
Continental Insurance Company
Darag Deutsche Versicherungs-Und
     Rückversicherungs-AG
Drake Ins. Company of New York

Employers Ins. Company of Wausau
Employers Ins. of Wausau
Employers Mutual Casualty Company
Eurinco Allgemeine
    Versicherungs AG, Dusseldorf
Everest Reinsurance Company
Fireman's Fund Ins. Company
First State Ins. Company
GAP
Gibraltar Casualty Company
Granite State Ins. Company
Great American
Great Northern Ins. Company
Great Southwest Fire Ins. Company
Groupe Drouot
Harbor Ins. Company
Hartford Accident and Indemnity Company
Home Ins. Company
Ideal Mutual Ins. Company
Industrial Indemnity Company
Ins. Company of North America
Ins. Company of the State of Pennsylvania
Ins. Corporation of Singapore Limited
Integrity Ins. Company
International Ins. Company
International Surplus Lines Ins. Company
Lexington Ins. Company
London Guarantee and Accident
    Company of N.Y.
L'Union Atlantique S.A. d'Assurances
Mead Reinsurance Corporation
Middlesex Assurance Company
Midland Ins. Company
Midstates Reinsurance Corp.
Mission Ins. Company
Mission National Ins. Company
Munich Reinsurance America, Inc.
Mutual Fire, Marine, & Inland Ins.
    Company
N.V. De Ark
N.V. Rotterdamse Assurantiekas
N.V. Schadeverzekeringsmaatschappij
    Maas Lloyd
National Casualty Company
National Union Fire Ins. Company of
    Pittsburgh, PA

NAI-1522309200

A249

Nationwide
New Hampshire Ins. Company
North River Ins. Company
Northbrook Excess and Surplus
    Ins. Company
Northeastern Fire Ins. Company
    of Pennsylvania
Pacific Employers Ins. Company
ProSight
Prudential Reinsurance Company
Puritan Insurance Company
Republic Indemnity Company of America
Republic Ins. Company
Republic Western Ins. Company
Repwest Insurance Company
Resolute Management Inc.
Rheinland Versicherungen
Rheinland Verzekeringen
Riverstone Insurers
Royal Belge I.R., S.A. d'Assurances
Royal Indemnity Company
Royal Ins. Company
Safety Mutual Casualty Corporation
Safety National Casualty Corporation
Seguros La Republica SA
Sentry Insurance A Mutual Company
Southern American Ins. Company
Starr Indemnity & Liability Company
TIG Insurance Company
Transamerica Premier Insurance Company
Transit Casualty Company
Travelers Casualty and Surety Company
UAP
Union Atlantique d'Assurances S.A.
Union Indemnity Ins. Company
    of New York
Westchester Fire Insurance Company
Westport Insurance Corporation
XL Ins. Company

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>**Caption in Compliance with D.N.J. LBR 9004-1(b)** | |
| **COOLEY LLP**<br>Cullen D. Speckhart (admitted pro hac vice)<br>Ian Shapiro (admitted pro hac vice)<br>Russell Capone (admitted pro hac vice)<br>Michael Klein (admitted pro hac vice)<br>55 Hudson Yards<br>New York, NY 10001<br>Tel: (212) 479-6000<br>Fax: (212) 479-6275<br>Email: cspeckhart@cooley.com<br>      ishapiro@cooley.com<br>      rcapone@cooley.com<br>      mklein@cooley.com<br><br>*Co-Counsel to the Official Committee of Talc Claimants II* | **BAILEY GLASSER LLP**<br>Brian A. Glasser (admitted pro hac vice)<br>Thomas B. Bennett (admitted pro hac vice)<br>Kevin W. Barrett (admitted pro hac vice)<br>Maggie B. Burrus (admitted pro hac vice)<br>1055 Thomas Jefferson St. NW, Suite 540<br>Washington, DC 20007<br>Tel: (202) 463-2101<br>Fax: (202) 463-2103<br>Email: bglasser@baileyglasser.com<br>      tbennett@baileyglasser.com<br>      kbarrett@baileyglasser.com<br>      mburrus@baileyglasser.com<br><br>*Co-Counsel to the Official Committee of Talc Claimants II* |
| **WALDREP WALL BABCOCK & BAILEY PLLC**<br>Thomas W. Waldrep, Jr. (admitted pro hac vice)<br>Kevin L. Sink (admitted pro hac vice)<br>James C. Lanik (admitted pro hac vice)<br>Jennifer B. Lyday (admitted pro hac vice)<br>370 Knollwood Street, Suite 600<br>Winston-Salem, NC 27103<br>Tel: (336) 717-1280<br>Fax: (336) 717-1340<br>Email: notice@waldrepwall.com<br><br>*Co-Counsel to the Official Committee of Talc Claimants II* | **MASSEY & GAIL LLP**<br>Jonathan S. Massey (admitted pro hac vice)<br>1000 Maine Ave. SW, Suite 450<br>Washington, DC 20024<br>Tel: (202) 652-4511<br>Fax: (312) 379-0467<br>Email: jmassey@masseygail.com<br><br>*Co-Counsel to the Official Committee of Talc Claimants II* |
| **SHERMAN, SILVERSTEIN,**<br>**KOHL, ROSE & PODOLSKY, P.A.**<br>Arthur J. Abramowitz<br>Alan I. Moldoff<br>Ross J. Switkes<br>308 Harper Drive, Suite 200<br>Moorestown, NJ 08057<br>Tel: (856) 662-0700<br>Email: aabramowitz@shermansilverstein.com<br>      amoldoff@shermansilverstein.com<br>      rswitkes@shermansilverstein.com<br><br>*Local Counsel to the Official Committee of Talc Claimants II* | |

| | |
|---|---|
| In re:<br><br>**LTL MANAGEMENT LLC,**<br><br>          Debtor. | Chapter 11<br><br>Case No.: 21-30589 (MBK)<br><br>Honorable Michael B. Kaplan |
| **LTL MANAGEMENT LLC,**<br><br>          Plaintiff,<br><br>v.<br><br>**THOSE PARTIES LISTED ON APPENDIX A TO COMPLAINT** and **JOHN AND JANE DOES 1-1000,**<br><br>          Defendants. | Adv. Pro. No.: 21-03032 (MBK) |

## <u>AMENDED JOINT NOTICE OF APPEAL</u>

**PLEASE TAKE NOTICE** that the Official Committee of Talc Claimants II ("TCC II"), together with Patricia Cook, Evan Plotkin, Randy Derouen, Kristie Doyle as estate representative of Dan Doyle, Katherine Tollefson, and Tonya Whetsel as estate representative of Brandon Whetsel, Giovanni Sosa, and Jan Deborah Michelson-Boyle, hereby appeal to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. §158 and rules 8002 and 8003 of the Federal Rules of Bankruptcy Procedure, from the order (Adv. Pro. D.I. 187) (the "<u>Order</u>") (i) declaring that the automatic stay applies to certain actions against non-debtors and (ii) preliminarily enjoining certain actions, entered on March 4, 2022 by the United States Bankruptcy Court for the District of New Jersey.[1]

**PLEASE TAKE FURTHER NOTICE** that a copy of the Order is attached hereto as **Exhibit A**.

**PLEASE TAKE FURTHER NOTICE** that the names of all parties to the Order appealed from and the names, addresses and telephone numbers of their respective attorneys are as follows:

---

[1] This filing is an amendment to the notice of appeal originally filed on March 7, 2022 at D.I. 190.

A252

| Party | Counsel |
|---|---|
| Official Committee of Talc Claimants II | **COOLEY LLP**<br>Cullen D. Speckhart<br>Ian Shapiro<br>Russell Capone<br>Michael Klein<br>55 Hudson Yards<br>New York, NY 10001<br>Tel: (212) 479-6000<br>Fax: (212) 479-6275<br>Email: cspeckhart@cooley.com<br>ishapiro@cooley.com<br>rcapone@cooley.com<br>mklein@cooley.com<br><br>**BAILEY GLASSER LLP**<br>Brian A. Glasser<br>Thomas B. Bennett<br>Kevin W. Barrett<br>Maggie B. Burrus<br>1055 Thomas Jefferson St. NW, Suite 540<br>Washington, DC 20007<br>Tel: (202) 463-2101<br>Fax: (202) 463-2103<br>Email: bglasser@baileyglasser.com<br>tbennett@baileyglasser.com<br>kbarrett@baileyglasser.com<br>mburrus@baileyglasser.com<br><br>**MASSEY & GAIL LLP**<br>Jonathan S. Massey<br>1000 Maine Ave. SW, Suite 450<br>Washington, DC 20024<br>Tel: (202) 652-4511<br>Fax: (312) 379-0467<br>Email: jmassey@masseygail.com<br><br>**WALDREP WALL BABCOCK &<br>BAILEY PLLC**<br>Thomas W. Waldrep, Jr.<br>Kevin L. Sink<br>James C. Lanik<br>Jennifer B. Lyday<br>370 Knollwood Street, Suite 600<br>Winston-Salem, NC 27103 |

3

A253

| | |
|---|---|
| | Tel: (336) 717-1280<br>Fax: (336) 717-1340<br>Email: notice@waldrepwall.com<br><br>**SHERMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY, P.A.**<br>Arthur J. Abramowitz<br>Alan I. Moldoff<br>Ross J. Switkes<br>308 Harper Drive, Suite 200<br>Moorestown, NJ 08057<br>Tel: (856) 662-0700<br>Email: aabramowitz@shermansilverstein.com<br>        amoldoff@shermansilverstein.com<br>        rswitkes@shermansilverstein.com |
| Patricia Cook | **WEITZ & LUXENBERG, P.C.**<br>Perry Weitz<br>Lisa Nathanson Busch<br>Justine Delaney<br>700 Broadway<br>New York, NY 10083<br>Tel: (212) 558-5500<br>Email: lbusch@weitzlux.com<br>        pw@weitzlux.com<br>        jdelaney@weitzlux.com |
| Evan Plotkin | **LEX NOVA LAW, LLC**<br>E. Richard Dressel<br>10 E. Stow Rd., Suite 250<br>Marlton, NJ 08053<br>Tel. (856) 382-8550<br>Email: rdressel@lexnovalaw.com<br><br>**DEAN OMAR BRANHAM SHIRLEY, LLP**<br>Trey Branham<br>302 N. Market Street, Suite 300<br>Dallas, TX 75202<br>Tel: (214) 722-5990<br>Email: tbranham@dobslegal.com |
| Giovanni Sosa | **LEX NOVA LAW, LLC**<br>E. Richard Dressel<br>10 E. Stow Rd., Suite 250<br>Marlton, NJ 08053 |

A254

| | |
|---|---|
| | Tel. (856) 382-8550<br>Email: rdressel@lexnovalaw.com<br><br>**COONEY & CONWAY**<br>John Cooney<br>Kathy Byrne<br>120 N. Lasalle Street, Suite 3000<br>Chicago, IL 60602<br>Tel: (800) 322-5573<br>Email: kbyrne@cooneyconway.com |
| Randy Derouen | **LEVY KONIGSBERG LLP**<br>Moshe Maimon<br>Jerome H. Block<br>Audrey Perlman Raphael<br>605 Third Avenue, 33rd Floor<br>New York, NY 10158<br>Tel: (212) 605-6200<br>Email: MMaimon@levylaw.com<br>        JBlock@levylaw.com<br>        ARaphael@levylaw.com |
| Kristie Doyle, as estate representative of Dan Doyle | **SAIBER LLC**<br>Marc E. Wolin<br>John M. August<br>18 Columbia Turnpike, Suite 200<br>Florham Park, NJ 07932<br>Tel: (973) 622-8401<br>Email: mwolin@saiber.com<br>        jaugust@saiber.com<br><br>**KAZAN, McCLAIN, SATTERLEY & GREENWOOD**<br>A Professional Law Corporation<br>Steven Kazan, Esq.<br>Joseph D. Satterley, Esq.<br>Denyse F. Clancy, Esq.<br>Jack London Market<br>55 Harrison Street, Suite 400<br>Oakland, California 94607<br>Tel: (510) 302-1000<br>Email: skazan@kazanlaw.com<br>        JSatterley@kazanlaw.com<br>        DClancy@kazanlaw.com |

A255

| | |
|---|---|
| Katherine Tollefson<br><br>Jan Deborah Michelson-Boyle | **MAUNE RAICHLE HARTLEY FRENCH & MUDD LLC**<br>Suzanne M. Ratcliffe<br>150 West 30th Street, Suite 201<br>New York, NY 10001<br>Tel: (800) 358-5922<br>Email: sratcliffe@mrhfmlaw.com<br><br>Neil J. Maune<br>Marcus E. Raichle Jr.<br>Christopher McKean<br>Clayton L. Thompson<br>1015 Locust Street<br>St. Louis, MO 63191<br>Tel: (800) 358-5922<br>Email: nmaune@mrhfmlaw.com<br>         mraichle@mrhfmlaw.com<br>         cmckean@mrhfmlaw.com<br>         cthompson@mrhfmlaw.com |
| Tonya Whetsel, as estate representative of Brandon Whetsel | **KARST & von OISTE, LLP**<br>David A. Chandler<br>505 Main Street<br>Port Jefferson, NY 11777<br>Tel: (855) 970-9988<br>Email: dac@karstvonoiste.com |
| LTL Management, LLC | **WOLLMUTH MAHER & DEUTSCH LLP**<br>Paul R. DeFilippo<br>500 Fifth Avenue<br>New York, NY 10110<br>Tel: (212) 382-3300<br>Fax: (212) 382-0050<br>Email: pdefilippo@wmd-law.com<br><br>**JONES DAY**<br>Gregory M. Gordon<br>Brad B. Erens<br>Dan B. Prieto<br>Amanda Rush<br>2727 N. Harwood Street<br>Dallas, TX 75201<br>Tel: (214) 220-3939<br>Fax: (214) 969-5100<br>Email: gmgordon@jonesday.com |

6

A256

| | |
|---|---|
| | bberens@jonesday.com<br>dbprieto@jonesday.com<br>arush@jonesday.com |
| Official Committee of Talc Claimants I | **GENOVA BURNS LLC**<br>Daniel M. Stolz<br>Donald W. Clarke<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ 07920<br>Tel: (973) 467-2700<br>Fax: (973) 467-8126<br>Email: dstolz@genovaburns.com<br>       dclarke@genovaburns.com<br><br>**BROWN RUDNICK LLP**<br>David J. Molton<br>Robert J. Stark<br>Michael S. Winograd<br>Seven Times Square<br>New York, NY 10036<br>Tel: (212) 209-4800<br>Fax: (212) 209-4801<br>Email: dmolton@brownrudnick.com<br>       rstark@brownrudnick.com<br>       mwinograd@brownrudnick.com<br><br>Jeffrey L. Jonas<br>Sunni P. Beville<br>One Financial Center<br>Boston, MA 02111<br>Tel: (617) 856-8200<br>Fax: (617) 856-8201<br>Email: jjonas@brownrudnick.com<br>       sbeville@brownrudnick.com<br><br>**OTTERBOURG PC**<br>Melanie L. Cyganowski<br>Adam C. Silverstein<br>Jennifer S. Feeney<br>230 Park Avenue<br>New York, NY 10169<br>Tel: (212) 905-3628<br>Fax: (212) 682-6104<br>Email: mcyganowski@otterbourg.com<br>       asilverstein@otterbourg.com<br>       jfeeney@otterbourg.com |

7

A257

| | **PARKINS LEE & RUBIO LLP**<br>Pennzoil Place<br>700 Milan Street, Suite 1300<br>Houston, TX 77002<br>Tel: (713) 715-1666<br>Email: lparkins@parkinslee.com<br>crubio@parkinslee.com |
|---|---|
| Aylstock, Witkin, Kreis & Overholtz, PLLC | **OFFIT KURMAN, P.A.**<br>Paul J. Winterhalter<br>99 Wood Avenue South, Suite 302<br>Iselin, New Jersey 08830<br>Tel: (267) 338-1370<br>Fax: (267) 338-1335<br>Email: pwinterhalter@offitkurman.com<br><br>**KTBS LAW LLP**<br>Michael L. Tuchin<br>Robert J. Pfister<br>Samuel M. Kidder<br>Nir Maoz<br>1801 Century Park East, 26th Floor<br>Los Angeles, California 90067<br>Tel: (310) 407-4000<br>Fax: (310) 407-9090<br>Email: mtuchin@ktbslaw.com<br>rpfister@ktbslaw.com<br>skidder@ktbslaw.com<br>nmaoz@ktbslaw.com |
| Atlanta International Insurance Company (as successor in interest to Drake Insurance Company); AIG Property Casualty Company (f/k/a Birmingham Fire Insurance Company of Pennsylvania); AIG Europe S.A. (as successor in interest to Union Atlantique d'Assurances S.A); AIU Insurance Company; ASR Schadeverzekering N.V. (as successor in interest to Assurantiekoor Van Wijk & Co.); Granite State Insurance Company; The Insurance Company of the State of Pennsylvania; Lexington Insurance Company; National Union Fire Insurance Company of Pittsburgh, Pa.; New Hampshire Insurance Company; The North River Insurance | **TRIF & MODUGNO, LLC**<br>Louis Modugno<br>89 Headquarters Plaza, Suite 1201<br>Morristown, New Jersey 07960<br>Tel: (973) 547-3611<br>Fax: (973) 554-1220<br>Email: lmodugno@tm-firm.com<br><br>**KATTEN MUCHIN ROSENMAN LLP**<br>Shaya Rochester<br>Katherine Scherling<br>575 Madison Avenue<br>New York, NY 10022<br>Tel: (212) 940-8800<br>Fax: (212) 940-8776 |

8

A258

| | |
|---|---|
| Company; Starr Indemnity & Liability Company (as successor in interest to Republic Insurance Company); N.V. Schadeverzekeringsmaatschappij Maas Lloyd (individually and as successor in interest to policies subscribed in favor of Johnson & Johnson by N.V. Rotterdamse Assurantiekas, n/k/a De Ark); and Rheinland Versicherungen (as successor in interest only to the subscriptions of the former Dutch company Rheinland Verzekeringen) | Email: shaya.rochester@katten.com katherine.scherling@katten.com<br><br>**MENDES & MOUNT LLP**<br>Eileen McCabe<br>Stephen Roberts<br>750 Seventh Avenue<br>New York, NY 10019<br>Tel: (212) 261-8000<br>Fax: (212) 261-8750<br>Email: eileen.mccabe@mendes.com stephen.roberts@mendes.com |

[*signatures follow*]

9

A259

Date: March 16, 2022

**SHERMAN, SILVERSTEIN, KOHL,
ROSE & PODOLSKY, P.A.**

*/s/ Arthur J. Abramowitz*
Arthur J. Abramowitz
Ross J. Switkes
Sherman, Silverstein, Kohl, Rose &
Podolsky, P.A.
308 Harper Drive, Suite 200
Moorestown, NJ 08057
Tel: (856) 662-0700
aabramowitz@shermansilverstein.com
rswitkes@shermansilverstein.com

*Local Counsel to the Official Committee of
Talc Claimants II*

**WEITZ & LUXENBERG, P.C.**

*/s/ Lisa Nathanson Busch*
Lisa Nathanson Busch
700 Broadway
New York, NY 10083
Tel: (212) 558-5500
lbusch@weitzlux.com

*Counsel to Patricia Cook*

**LEX NOVA LAW, LLC**

*/s/ E. Richard Dressel*
E. Richard Dressel
10 E. Stow Rd., Suite 250
Marlton, NJ 08053
Tel: (856) 382-8550
rdressel@lexnovalaw.com

*Counsel to Evan Plotkin and Giovanni Sosa*

**LEVY KONIGSBERG LLP**

*/s/ Jerome H. Block*
Jerome H. Block
605 Third Avenue, 33rd Floor
New York, NY 10158
Tel: (212) 605-6200
jblock@levylaw.com

A260

*Counsel to Randy Derouen*

**SAIBER LLC**

*/s/ Marc E. Wolin*
Marc E. Wolin
John M. August
18 Columbia Turnpike, Suite 200
Florham Park, NJ 07932
Tel: (973) 622-8401
mwolin@saiber.com
jaugust@saiber.com

*Counsel to Kristie Doyle, as estate
representative of Dan Doyle*

**MAUNE RAICHLE HARTLEY
FRENCH & MUDD LLC**

*/s/ Suzanne M. Ratcliffe*
Suzanne M. Ratcliffe
150 West 30th Street, Suite 201
New York, NY 10001
Tel: (800) 358-5922
sratcliffe@mrhfmlaw.com

*Counsel to Katherine Tollefson and Jan
Deborah Michelson-Boyle*

**KARST & von OISTE, LLP**

*/s/ David A. Chandler*
David A. Chandler
505 Main Street
Port Jefferson, NY 11777
Tel: (855) 970-9988
dac@karstvonoiste.com

*Counsel to Tonya Whetsel, as estate
representative of Brandon Whetsel*

11

A261

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Order Filed on April 4, 2022
by Clerk
U.S. Bankruptcy Court
District of New Jersey

Case No.:              21-30589

Adv. No.:              21-03032

In Re:

LTL MANAGEMENT, LLC

                     Plaintiff(s)

v.

THOSE PARTIES LISTED ON
APPENDIX A TO COMPLAINT AND
JOHN AND JANE DOES 1-1000

                     Defendant(s)

Hearing Date: _____

Judge:        Michael B. Kaplan

## ORDER CERTIFYING DIRECT APPEAL TO THE

## UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT OF ORDER

## EXTENDING AUTOMATIC STAY AND ISSUING PRELIMINARY INJUNCTION

The relief set forth on the following pages, is hereby **ORDERED**.

**DATED: April 4, 2022**

Honorable Michael B. Kaplan
United States Bankruptcy Judge

A262

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **Caption in Compliance with D.N.J. LBR 9004-1(b)** | **BROWN RUDNICK LLP**<br>David J. Molton, Esq.<br>Robert J. Stark, Esq.<br>Michael S. Winograd, Esq.<br>dmolton@brownrudnick.com<br>rstark@brownrudnick.com<br>mwinograd@brownrudnick.com<br>Seven Times Square<br>New York, NY 10036<br>Tel: (212) 209-4800<br>Fax: (212) 209-4801 |
| **GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>Matthew I.W. Baker, Esq.<br>dstolz@genovaburns.com<br>dclarke@genovaburns.com<br>mbaker@genovaburns.com<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ 07920<br>Tel: (973) 467-2700<br>Fax: (973) 467-8126<br>*Local Counsel to the Official Committee of Talc Claimants I* | and<br><br>Jeffrey L. Jonas, Esq.<br>Sunni P. Beville, Esq.<br>Shari I. Dwoskin, Esq.<br>jjonas@brownrudnick.com<br>sbeville@brownrudnick.com<br>sdwoskin@brownrudnick.com<br>One Financial Center<br>Boston, MA 02111<br>Tel: (617) 856-8200<br>Fax: (617) 856-8201<br>*Co-Counsel for the Official Committee of Talc Claimants I* |
| **OTTERBOURG PC**<br>Melanie L. Cyganowski, Esq.<br>Adam C. Silverstein, Esq.<br>Jennifer S. Feeney, Esq.<br>mcyganowski@otterbourg.com<br>asilverstein@otterbourg.com<br>jfeeney@otterbourg.com<br>230 Park Avenue<br>New York, NY 10169<br>Tel: (212) 905-3628<br>Fax: (212) 682-6104<br>*Co-Counsel for the Official Committee of Talc Claimants I* | **PARKINS LEE & RUBIO LLP**<br>Leonard M. Parkins, Esq.<br>Charles M. Rubio, Esq.<br>lparkins@parkinslee.com<br>crubio@parkinslee.com<br>Pennzoil Place<br>700 Milan St., Suite 1300<br>Houston, TX 77002<br>Tel: (713) 715-1666<br>*Special Counsel to the Official Committee of Talc Claimants I* |

Page:        2

Debtor:      LTL Management, LLC

Case No.:    21-30589(MBK)

Caption:     Order Certifying Direct Appeal to the United States Court of Appeals for the Third
             Circuit of Order Extending Automatic Stay and Issuing Preliminary Injunction

---

| In Re: | Chapter 11 |
|---|---|
| **LTL MANAGEMENT, LLC,**[1] | Case No.: 21-30589 (MBK) |
| Debtor. | Honorable Michael B. Kaplan |
| In Re: | |
| **LTL MANAGEMENT, LLC,** | Adv. Pro. No. 21-03032 (MBK) |
| Plaintiff, | |
| **THOSE PARTIES LISTED ON APPENDIX A TO COMPLAINT AND JOHN AND JANE DOES 1-1000,** | |
| Defendants. | |

### [PROPOSED] ORDER CERTIFYING DIRECT APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT OF ORDER EXTENDING AUTOMATIC STAY AND ISSUING PRELIMINARY INJUNCTION

The relief set forth on the following pages is hereby ORDERED.

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501
George Street, New Brunswick, New Jersey 08933.

2

A264

Page:        3

Debtor:      LTL Management, LLC

Case No.:    21-30589(MBK)

Caption:     Order Certifying Direct Appeal to the United States Court of Appeals for the Third
             Circuit of Order Extending Automatic Stay and Issuing Preliminary Injunction

---

Upon consideration of the *Request of Official Committee of Talc Claimants I for Order Certifying Direct Appeal to the United States Court of Appeals for the Third Circuit* (the "TCC I Request") (Adv. Proc. Dkt. 205); the *Motion of Official Committee of Talc Claimants II, Patricia Cook, Evan Plotkin, Randy Derouen, Kristie Doyle as Estate Representative of Dan Doyle, Katherine Tollefson, Jan Deborah Michelson-Boyle, Giovanni Sosa, and Tonya Whetsel as Estate Representative of Brandon Whetsel, for Certification of Direct Appeal to the United States Court of Appeals for the Third Circuit* (the "TCC II Motion") (Adv. Proc. Dkt. 191); the *Motion of Aylstock, Witkin, Kreis & Overholtz, PLLC for Certification of Direct Appeal to the United States Court of Appeals for the Third Circuit* (the "AWKO Motion") (Adv. Proc. Dkt. 206); and the *Request of Arnold & Itkin LLP for Certification of Direct of Appeal to the United States Court of Appeals for the Third Circuit* (the "A&I Request") (Ch. 11 Case Dkt. 1720) (collectively, the "Stay/PI Certification Requests"); and all papers filed in support of and in opposition to the PI Certification Requests, including the *Debtor's Omnibus Objection to Motions for Certification of Direct Appeal* (the "Objection") and all reply briefs filed in further support of the PI Certification Requests (Adv. Proc. Dkts. 221, 224, 225, 226; Ch. 11 Case Dkt. 1884); and the hearing on the PI Certification Requests held on March 30, 2022 (the "Hearing"); and all prior proceedings herein; the Court hereby finds as follows:

A265

Page:           4

Debtor:         LTL Management, LLC

Case No.:       21-30589(MBK)

Caption:        Order Certifying Direct Appeal to the United States Court of Appeals for the Third
                Circuit of Order Extending Automatic Stay and Issuing Preliminary Injunction

---

For the reasons set forth by the Court on the record during the March 30, 2022 Hearing (Adv. Proc. Dkt. 230 at 70:2-76:17), which portions of the record are incorporated herein by reference, the Court finds that the conditions of 28 U.S.C. § 158(d)(2) have been met, and

**IT IS THEREFORE HEREBY ORDERED THAT:**

1.      The Stay/PI Certification Requests are GRANTED.

2.      Pursuant to 28 U.S.C. § 158(d)(2) and Rule 8006 of the Federal Rules of Bankruptcy Procedure, the *PI/Stay Memorandum Opinion* (Adv. Proc. Dkt. 184) and the *Order (i) Declaring that Automatic Stay Applies to Certain Actions Against Non-Debtors and (ii) Preliminarily Enjoining Certain Actions* (Adv. Proc. Dkt. 187) are hereby certified for direct appeal to the United States Court of Appeals for the Third Circuit.

Dated:  April ____, 2022

                                        _____
                                        HONORABLE MICHAEL B. KAPLAN
                                        UNITED STATES BANKRUPTCY JUDGE

A266

Form order − ntcorder

# UNITED STATES BANKRUPTCY COURT

District of New Jersey
402 East State Street
Trenton, NJ 08608

In Re:  LTL Management LLC
Debtor

Case No.: 21−30589−MBK
Chapter 11

LTL Management LLC
Plaintiff

v.

Those Parties Listed on Appendix A to the Complaint and
John and Jane Does 1−1000
Defendant

Adv. Proc. No. 21−03032−MBK                              Judge: Michael B. Kaplan

## NOTICE OF JUDGMENT OR ORDER
### Pursuant to Fed. R. Bankr. P. 9022

Please be advised that on April 4, 2022, the court entered the following judgment or order on the court's docket in the above−captioned case:

Document Number: 231 − 191, 205, 206
ORDER CERTIFYING DIRECT APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT OF ORDER EXTENDING AUTOMATIC STAY AND ISSUING PRELIMINARY INJUNCTION(related document:191 Motion for Request for Certification of Direct Appeal to Circuit Court Filed by Official Committee of Talc Claimants II.Hearing scheduled for 3/30/2022 at 10:00 AM at MBK − Courtroom 8, Trenton. (Attachments: # 1 Brief # 2 Proposed Order) filed by Creditor Committee Official Committee of Talc Claimants II, 205 Motion for Request for Certification of Direct Appeal to Circuit Court Filed by Official Committee of Talc Claimants I.Hearing scheduled for 3/30/2022 at 10:00 AM at MBK − Courtroom 8, Trenton. (Attachments: # 1 Request of Official Committee of Talc Claimants I for Order Certifying Direct Appeal of the Motion to Dismiss and Preliminary Injunction Opinions and Orders to the United States Court of Appeals for the Third Circuit # 2 Proposed Order for Direct Appeal to the United States Court of Appeals for the Third Circuit) filed by Creditor Committee Official Committee of Talc Claimants I, 206 Motion re: to Certify direct Appeal to the United States Court of Appeals for the Third Circuit Filed by Aylstock, Witkin, Kreis & Overholtz, PLLC.Hearing scheduled for 3/30/2022 at 10:00 AM at MBK − Courtroom 8, Trenton. filed by Interested Party Aylstock, Witkin, Kreis & Overholtz, PLLC). Service of notice of the entry of this order pursuant to Rule 9022 was made on the appropriate parties. See BNC Certificate of Notice. Signed on 4/4/2022. (bwj)

Parties may review the order by accessing it through PACER or the court's electronic case filing system (CM/ECF). Public terminals for viewing are also available at the courthouse in each vicinage.

Dated: April 4, 2022
JAN: bwj

Jeanne Naughton
Clerk

A267

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

DCO-071

No. 22-8015

In re: LTL MANAGEMENT LLC,
Debtor

LTL MANAGEMENT LLC v. THOSE PARTIES LISTED ON APPENDIX A TO THE
COMPLAINT AND JOHN AND JANE DOES 1-1000

THE OFFICIAL COMMITTEE OF TALC CLAIMANTS I,
Petitioner

(N.J. Bk. Nos. 21-ap-03032, 21-bk-30589;
D.N.J. Nos. 3-22-cv-01339, 3-22-cv-01350)

No. 22-8016

In re: LTL MANAGEMENT LLC,
Debtor

LTL MANAGEMENT LLC v. THOSE PARTIES LISTED ON APPENDIX A
TO THE COMPLAINT AND JOHN AND JANE DOES 1-1000

PATRICIA COOK; RANDY DEROUEN; JAN DEBORAH
MICHELSON-BOYLE; EVAN PLOTKIN; GIOVANNI SOSA; KATHERINE
TOLLEFSON; KRISTIE DOYLE, as Estate Representative of Dan Doyle;
TONYA WHETSEL, as Estate Representative of Brandon Whetsel; THE
OFFICIAL COMMITTEE OF TALC CLAIMANTS II,
Petitioners

(N.J. Bk. Nos. 21-ap-03032, 21-bk-30589;
D.N.J. Nos. 3-22-cv-01289, 3-22-cv-01296, 3-22-cv-01303)

A268

No. <u>22-8020</u>

In re: LTL MANAGEMENT LLC,
Debtor

ARNOLD & ITKIN LLP, on behalf of Approximately 7,000 Talc Personal Injury
Claimants who are represented by Arnold & Itkin LLP,
Petitioner

(N.J. Bk. No. 21-bk-30589; D.N.J. No. 3-22-cv-01387)


No. <u>22-8021</u>

In re: LTL MANAGEMENT LLC,
Debtor

LTL MANAGEMENT LLC v. THOSE PARTIES LISTED ON APPENDIX A
TO THE COMPLAINT AND JOHN AND JANE DOES 1-1000

AYLSTOCK WITKIN KREIS & OVERHOLTZ PLLC,
Petitioner

(N.J. Bk. Nos. 21-ap-03032, 21-bk-30589; D.N.J. Nos. 3-22-cv-01290, 3-22-cv-01292)


Present: JORDAN, PORTER and MATEY, <u>Circuit Judges</u>

1. Petition for Permission to Appeal pursuant to 28 U.S.C. Section 158(d)(2) filed
   by Petitioner Official Committee of Talc Claimants I in 22-8015.

2. Petition for Permission to Appeal pursuant to 28 U.S.C. Section 158(d)(2) filed
   by Petitioners Patricia Cook, Randy Derouen, Kristie Doyle, Jan Deborah
   Michelson-Boyle, Evan Plotkin, Giovanni Sosa, Katherine Tollefson, Kristie
   Doyle, as Estate Representative of Dan Doyle, Tonya Whetsel, as Estate
   Representative of Brandon Whetsel, and The Official Committee of Talc
   Claimants II in 22-8016.

3. Petition for Permission to Appeal pursuant to 28 U.S.C. Section 158(d)(2) filed
   by Petitioner Arnold & Itkin LLP, on behalf of Approximately 7,000 Talc
   Personal Injury Complaints who are represented by Arnold & Itkin LLP
   in 22-8020.

A269

4.  Petition for Permission to Appeal pursuant to 28 U.S.C. Section 158(d)(2) filed
    by Petitioner Alystock Witkin Kreis & Overholtz PLLC in 22-8021.

5.  Consolidated Answer in Opposition to Petitions for Direct Appeal under 28
    U.S.C. Section 158(d)(2) by Respondent LTL Management LLC.

Respectfully,
Clerk/CND

_____ORDER_____
The foregoing Petitions are **GRANTED.**

By the Court,

s/David J. Porter
Circuit Judge

Dated:        May 11, 2022

CND/cc:       All Counsel of Record

**A True Copy:**

Patricia S. Dodszuweit, Clerk

# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

## NOTICE

### GRANT OF PERMISSION FOR LEAVE TO APPEAL PURSUANT TO 28 U.S.C. SECTION 158(d)(2)(A)

The Court of Appeals has granted a petition for leave to appeal in this matter. Appellant(s) must pay the $207.00 docketing fee in the bankruptcy court for each notice of appeal that they wish to have docketed in the Court of Appeals within 14 days after the entry of the order granting permission for leave to appeal. If the United States government is the appellant, an additional fee by the government is not required. Fed. R. App. P.5.

A new notice of appeal does not need to be filed. A copy of the Court's order granting permission for leave to appeal serves as the notice of appeal and has been forwarded to the appropriate court.

The entry of date of the order granting permission to appeal serves as the date of filing of the notice of appeal for calculating time under Fed. R. App. P. 5(d)(1). **Appellant(s) shall notify the Court of Appeals by filing a notification through ECF in the current case that the filing fee has been paid.**

Upon receipt of the notice from Appellant(s), the appeal will be opened on the general docket. All future filings regarding the appeal will be entered under the new docket number.

Very truly yours,
Patricia S. Dodszuweit, Clerk

By: s/Cara
Case Manager
267-299-4210

cc:     Arthur J. Abramowitz, Esq.
        Jerome H. Block, Esq.
        Charles W. Branham III, Esq.
        Lisa N. Busch, Esq.
        Kathy Byrne, Esq.
        Caitlin K. Cahow, Esq.
        David A. Chandler, Esq.
        John D. Conney, Esq.
        Melanie L. Cyganowski, Esq.
        Paul R. DeFilippo, Esq.
        Jeffrey M. Dine, Esq.
        Karen B. Dine, Esq.
        Sharon I. Dwoskin, Esq.
        Brad B. Erens, Esq.
        Angelo J. Genova, Esq.

A271

Brian A. Glasser, Esq.
Gregory M. Gordon, Esq.
Robert W. Hamilton, Esq.
Kathleen R. Hartnett, Esq.
Jeffrey L. Jonas, Esq.
James M. Jones, Esq.
Laura D. Jones, Esq.
Honorable Michael B. Kaplan
Neal K. Katyal, Esq.
Steven Kazan, Esq.
Peter J. Keane, Esq.
Samuel M. Kidder, Esq.
Marek P. Krzyzowski, Esq.
James N. Lawlor, Esq.
Nir Maoz, Esq.
Sean M. Marotta, Esq.
C. Kevin Marshall, Esq.
Jonathan S. Massey, Esq.
David J. Molton, Esq.
Ms. Jeanne A. Naughton
Joseph F. Pacelli, Esq.
Lenard M. Parkins, Esq.
Robert J. Pfister, Esq.
Daniel B. Prieto, Esq.
Mark W. Rasmussen, Esq.
Suzanne Ratcliffe, Esq.
Michael W. Reining, Esq.
Colin R. Robinson, Esq.
Amanda Rush, Esq.
Joseph D. Satterley, Esq.
Ian R. Shapiro, Esq.
Adam C. Silverstein, Esq.
Cullen D. Speckhart, Esq.
Daniel M. Stolz, Esq.
Clay Thompson, Esq.
Lyndon M. Tretter, Esq.
Michael L. Tuchin, Esq.
Julie Veroff, Esq.
Thomas W. Waldrep Jr., Esq.
Mr. William T. Walsh
Michael S. Winograd, Esq.
Paul J. Winterhalter, Esq.
Honorable Freda L. Wolfson