**Nos. 22-2003, 22-2004, 22-2005,
22-2006, 22-2007, 22-2008, 22-2009, 22-2010, 22-2011**

# United States Court of Appeals
# for the Third Circuit

◆

In re LTL Management LLC,

*Debtor*,

Aylstock, Witkin, Kreis & Overholtz, PLLC,

*Appellant*,

v.

LTL Management LLC,

*Appellee*.

◆

On Certified Direct Appeal From the United States Bankruptcy Court for the
District of New Jersey (Hon. Michael B. Kaplan, Chief Judge)
Bankruptcy Case No. 21-30589 / Adversary Proceeding No. 21-03032

◆

**OPENING BRIEF OF APPELLANT
AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC**

◆

*Of Counsel:*

Paul J. Winterhalter
OFFIT KURMAN, P.A.
99 Wood Avenue South, Suite 302
Iselin, New Jersey 08830
(267) 338-1370

Michael L. Tuchin
Robert J. Pfister
Samuel M. Kidder
Nir Maoz
KTBS LAW LLP
1801 Century Park East, 26th Floor
Los Angeles, California 90067
(310) 407-4000

June 30, 2022

## DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Third Circuit Local Appellate Rule 26.1.1, Aylstock, Witkin, Kreis & Overholtz, PLLC ("AWKO") makes the following disclosures:

1. AWKO has no parent corporation.

2. No publicly-held corporation owns 10% or more of AWKO.

Because the debtor – LTL Management LLC ("LTL") – is the appellee in each of these consolidated appeals, it is responsible for the disclosures required by Federal Rule of Appellate Procedure 26.1(c)(2) and Third Circuit Local Appellate Rule 26.1.1(c).

# TABLE OF CONTENTS

**Page**

DISCLOSURE STATEMENT ........................................................................i

TABLE OF CONTENTS...................................................................... ii

TABLE OF AUTHORITIES ......................................................................iv

JURISDICTIONAL STATEMENT .........................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ......................4

STATEMENT OF RELATED CASES AND PROCEEDINGS ..............5

STATEMENT OF THE CASE...................................................................7

    A.    The Texas Two-Step ........................................................7

    B.    The Talc Litigation Against J&J and JJCI ..........................13

SUMMARY OF THE ARGUMENT ......................................................19

ARGUMENT ..........................................................................................22

I.    THE BANKRUPTCY CASE MUST BE DISMISSED BECAUSE LTL CANNOT SATISFY BANKRUPTCY CODE SECTION 524(g)(2)(B)...............................................................24

    A.    The Evidentiary Record is Clear – LTL Does Not Qualify ...............24

    B.    The Bankruptcy Court Did Not Make a Contrary Factual Finding........................................................................27

    C.    Federal Rule of Civil Procedure 25(c) Does Not Apply .....................30

    D.    The Bankruptcy Court's Alternative Legal Holding Fails..................33

II.    THE BANKRUPTCY CASE MUST BE DISMISSED BECAUSE ITS FUNDAMENTAL PURPOSE IS AT ODDS WITH THE CODE .........................................................................34

    A.     Basic Principles and Practice in a Genuine
              Reorganization...............................................................................35

    B.     The Texas Two-Step Changes the Chapter 11 Baseline .....................38

CONCLUSION .....................................................................................................43

COMBINED CERTIFICATE OF COMPLIANCE ................................................44

CERTIFICATE OF SERVICE ..............................................................................45

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re 15375 Memorial Corp.*,
  589 F.3d 605 (3d Cir. 2009) .................................................................22, 23, 42

*A.H. Robins Co. v. Piccinin*,
  788 F.2d 994 (4th Cir. 1986) ............................................................12

*In re Aldrich Pump LLC*,
  2021 WL 3729335, 2021 Bankr. LEXIS 2294
  (Bankr. W.D.N.C. 2021).....................................................................20, 39

*Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*,
  526 U.S. 434 (1999).........................................................................38

*In re Brown*,
  916 F.2d 120 (3d Cir. 1990) ..............................................................3

*Bullard v. Blue Hills Bank*,
  575 U.S. 496 (2015)..........................................................................3

*In re Capmark Fin. Grp. Inc.*,
  438 B.R. 471 (Bankr. D. Del. 2010)....................................................36

*Carl v. Johnson & Johnson*,
  237 A.3d 308 (N.J. Super. Ct. App. Div. 2020) .................................14

*Carolin Corp. v. Miller*,
  886 F.2d 693 (4th Cir. 1989) ...............................................................9

*Case v. Los Angeles Lumber Co.*,
  308 U.S. 106 (1939)...........................................................................37

*In re Combustion Eng'g, Inc.*,
  391 F.3d 190 (3d Cir. 2004) .........................................................11, 34

*In re Cooper Commons LLC*,
  512 F.3d 533 (9th 2008) .....................................................................42

*Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel Cybergenics Corp. v. Chinery,*
  330 F.3d 548 (3d Cir. 2003) ...............................................................35

*Czyzewski v. Jevic Holding Corp.,*
  137 S. Ct. 973 (2017)..........................................................12, 21, 38

*Daubert v. Merrell Dow Pharm., Inc.,*
  509 U.S. 579 (1993).................................................................13

*Devlin v. Scardelletti,*
  536 U.S. 1 (2002).....................................................................29

*In re Fed. Mogul-Glob., Inc.,*
  348 F.3d 390 (3d Cir. 2003) ...................................................29

*In re Garlock Sealing Techs., LLC,*
  504 B.R. 71 (Bankr. W.D.N.C. 2014) .............................9, 10

*In re Integrated Telecom Express, Inc.,*
  384 F.3d 108 (3d Cir. 2004) ...........................................22, 23, 42

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Prods. Liability Litig.,*
  220 F. Supp. 3d 1356 (J.P.M.L. 2016) .................................13

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Prods. Liability Litig,*
  509 F. Supp. 3d 116 (D.N.J. 2020)......................................14

*Kumho Tire Co., Ltd. v. Carmichael,*
  526 U.S. 137 (1999)................................................................13

*Luxliner P.L. Exp., Co. v. RDI/Luxliner, Inc.,*
  13 F.3d 69 (3d Cir. 1993) ..............................................32, 33

*In re Mansaray-Ruffin,*
  530 F.3d 230 (3d Cir. 2008) ..................................................1

*Mars, Inc. v. JCM Am. Corp.,*
  2007 WL 776786, 2007 U.S. Dist. LEXIS 17351 (D.N.J. 2007)......................32

*McCartney v. Integra Nat'l Bank N.*,
    106 F.3d 506 (3d Cir. 1997) ...............................................................12

*Morrison v. Olson*,
    487 U.S. 654 (1988).............................................................................42

*In re Nicole Gas Prod., Ltd.*,
    916 F.3d 566 (6th Cir. 2019) ..............................................................12

*N. Pac. R.R. Co. v. Boyd*,
    228 U.S. 482 (1913)..............................................................................37

*Plastronics Socket Partners, Ltd. v. Dong Weon Hwang*,
    2019 WL 1009404, 2019 U.S. Dist. LEXIS 32896
    (E.D. Tex. 2019) ..................................................................................32

*Ritzen Grp., Inc. v. Jackson Masonry, LLC*,
    140 S. Ct. 582 (2020)..............................................................................3

*In re SGL Carbon Corp.*,
    200 F.3d 154 (3d Cir. 1999) ........................................21, 22, 23, 42

*In re Tech. Knockout Graphics, Inc.*,
    833 F.2d 797 (9th Cir. 1987) ..............................................................35

*U.S. Bank Nat'l Ass'n v. Vill. at Lakeridge, LLC*,
    138 S. Ct. 960 (2018)......................................................................23, 40

*U.S. v. Noland*,
    517 U.S. 535 (1996)..............................................................................41

**The Bankruptcy Code (11 U.S.C.)**

    § 301(b)...............................................................................................26

    § 363(b)(1) ..........................................................................................36

    § 524(g)...........................................................................................11, 26

    § 524(g)(2)(B)(i)(I)................................................4, 15, 20, 23, 30, 33

    § 524(g)(4)(A)(iii) ...............................................................................30

    § 541(a) ...............................................................................................35

§ 544 ..................................................................................................36

§ 547 ..................................................................................................36

§ 548 ..................................................................................................36

§ 725 ..................................................................................................38

§ 726 ..................................................................................................38

§ 1102(a)(1) ......................................................................................37

§ 1107 ................................................................................................35

§ 1108 ................................................................................................35

§ 1112(b) ...........................................................................................22

§ 1129(a)(7) ......................................................................................38

§ 1129(b) ...........................................................................................38

**The Judicial Code (28 U.S.C.)**

§ 157(a) ................................................................................................1

§ 158(a)(3) ...........................................................................................3

§ 158(d)(2) ....................................................................................3, 18

§ 1334 ..................................................................................................1

§ 1334(e) ...........................................................................................35

§ 1407 ................................................................................................13

§ 1411(a) ...........................................................................................42

§ 1412 ..................................................................................................1

§ 2072(b) ...........................................................................................33

**The Texas Business Organizations Code**

§ 10.008(a)(2)(C) ....................................................................7, 24, 31

**Other Authorities**

168 CONG. REC. S682-S683 (daily ed. Feb. 15, 2022) ...................................8

13 Charles Alan Wright & Arthur R. Miller, FED. PRAC. &
PROC. § 1958 (3d ed.) ..............................................................................32

COLLIER ON BANKRUPTCY ¶ 1103.05[1][d]
(Richard Levin & Henry J. Sommer eds., 16th ed.) ................................37

FED. R. APP. P. 28(i) .....................................................................................4

FED. R. APP. P. 28(a)(4)(D) ...........................................................................3

FED. R. BANKR. P. 25(a)(3) ..........................................................................31

FED. R. BANKR. P. 7001(7) .............................................................................1

FED. R. BANKR. P. 7001(9) .............................................................................1

FED. R. BANKR. P. 8002(a)(1) .........................................................................2

FED. R. BANKR. P. 8004(e) ..............................................................................3

FED. R. BANKR. P. 8006(b) ..............................................................................2

FED. R. EVID. 702 .........................................................................................13

FED. R. CIV. P. 25(c) ...............................................................................27, 31

Jamie Smyth, *Architects of 'Texas Two-Step' Lambast J&J for
its use of the Maneuver*, FINANCIAL TIMES (Feb. 14, 2022) ......................8

*Judge Throws Manufacturers a Lifeline with Asbestos Ruling*,
29 No. 13 Civ. RICO Rep. 3 (2014) ..........................................................10

Melissa B. Jacoby, *Shocking Business Bankruptcy Law*,
131 YALE L.J. FORUM 409, 411 (2021) .....................................................19

N.J. Ct. R. 4:38A .........................................................................................14

RESTATEMENT (SECOND) OF JUDGMENTS (1980) ...........................................29

# JURISDICTIONAL STATEMENT

These consolidated[1] appeals challenge two orders entered by the United States Bankruptcy Court for the District of New Jersey in the chapter 11 bankruptcy case styled *In re LTL Management LLC*, Bankr. Case No. 21-30589 (Bankr. D.N.J., filed October 14, 2021) (the "Bankruptcy Case"), and the associated adversary proceeding styled *LTL Management LLC v. Those Parties Listed on Appendix A to Complaint (In re LTL Management LLC)*, Adv. Proc. No. 21-03032 (Bankr. D.N.J., filed October 21, 2021) (the "Adversary Proceeding").[2]    The Bankruptcy Court had jurisdiction over the Bankruptcy Case and the Adversary Proceeding pursuant to sections 1334 and 157(a) of the Judicial Code, 28 U.S.C. §§ 1334 & 157(a).[3]

---

[1] By order dated June 10, 2022 [Docket No. 19 in Case No. 22-2003], the Court: (i) consolidated these nine appeals "for the purpose of filing a single joint appendix and for disposition by the same merits panel"; (ii) substituted the Official Committee of Talc Claimants (the "TCC") in place of two predecessor entities; and (iii) directed that a maximum of three opening briefs be filed – one by the TCC, one by Arnold & Itkin LLP ("A&I"), and one by AWKO.  By order dated June 21, 2022 [Docket No. 41 in Case No. 22-2006], the Court permitted the filing of a fourth opening brief by certain individual mesothelioma claimants.

[2] An "adversary proceeding" is essentially a mini-lawsuit that takes place within the confines of the broader bankruptcy case.  *See generally In re Mansaray-Ruffin*, 530 F.3d 230, 234–35 (3d Cir. 2008).  Adversary proceedings are required to, *inter alia*, "obtain an injunction or other equitable relief," Fed. R. Bankr. P. 7001(7), and certain declaratory relief, *see* Fed. R. Bankr. P. 7001(9).

[3] The Bankruptcy Case and Adversary Proceeding were originally filed in the Western District of North Carolina.  They were subsequently transferred to the District of New Jersey pursuant to 28 U.S.C. § 1412.  A1506 (*Order Transferring Case to the District of New Jersey* ("Transfer Order")).  The Transfer Order is
*(footnote continued)*

1

The two orders on appeal – the *Order Denying Motions to Dismiss* [A57] ("MTD Order") and the *Order (I) Declaring that Automatic Stay Applies to Certain Actions Against Non-Debtors and (II) Preliminarily Enjoining Certain Actions* [A194 & A3717] ("Stay/PI Order") – were first entered on March 2, 2022 and March 4, 2022, respectively.[4]  Both orders were timely appealed by AWKO on March 7, 2022 [A59 & A202], and by the other appellants thereafter [A66–134 & A209–61]. *See* Fed. R. Bankr. P. 8002(a)(1) (14-day deadline to appeal).

The Bankruptcy Court timely certified both orders for direct appeal to this Court on April 4, 2022 [A135 & A262].  *See* Fed. R. Bankr. P. 8006(b) (30-day window for bankruptcy court to act – measured from the effective date of the first notice of appeal, which was filed on March 7, 2022).  A motions panel of this Court accepted certification of both orders for direct appeal on May 11, 2022, by granting the petitions filed by the TCC's predecessors (in Case Nos. 22-8015 and 22-8016), A&I (in Case No. 22-8020), and AWKO (in Case No. 22-8021).  A135.

---

not published but is available at 2021 WL 5343945 and 2021 Bankr. LEXIS 3155.

[4]  The *Memorandum Opinion* [A1] ("MTD Opinion") that supports the MTD Order was filed February 25, 2022, and is reported at 637 B.R. 396.  The *Memorandum Opinion* [A104 & A1573] ("Stay/PI Opinion") that supports the Stay/PI Order was also filed February 25, 2022, and is reported at 638 B.R. 291.  And to be precise, the Stay/PI Order was initially entered in the Adversary Proceeding on March 4, 2022, and was subsequently entered in identical form in the Bankruptcy Case on March 7, 2022.

This Court has jurisdiction pursuant to section 158(d)(2) of the Judicial Code, 28 U.S.C. § 158(d)(2).[5]

---

[5] With respect to the required "assertion that the appeal is from a final order or judgment that disposes of all parties' claims, or information establishing the court of appeals' jurisdiction on some other basis," Fed. R. App. P. 28(a)(4)(D), this Court's jurisdiction over certified direct appeals from bankruptcy courts extends both to final orders and interlocutory orders. *See* 28 U.S.C. § 158(d)(2); *Bullard v. Blue Hills Bank*, 575 U.S. 496, 508 (2015); *see also* Fed. R. Bankr. P. 8004(e) ("If leave to appeal an interlocutory order or decree is required under 28 U.S.C. § 158(a)(3), an authorization of a direct appeal by the court of appeals under 28 U.S.C. § 158(d)(2) satisfies the requirement."). In any event, however, both orders on appeal are "final" under the relevant criteria. *See generally Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020); *In re Brown*, 916 F.2d 120, 123 (3d Cir. 1990).

**STATEMENT OF ISSUES PRESENTED FOR REVIEW**

Consistent with this Court's order of June 10, 2022 [Docket No. 19 in Case No. 22-2003] encouraging the parties to coordinate so as to avoid redundant briefing, AWKO joins and adopts by reference the opening briefs submitted by the other appellants. *See* Fed. R. App. P. 28(i). The particular focus of AWKO's Opening Brief is two-fold:

***First***, did the Bankruptcy Court err in ruling LTL satisfies the very particular statutory requirement of the Bankruptcy Code that limits the availability of asbestos-related channeling injunctions to only those debtors that – at the time they file for bankruptcy – have already been "named as a defendant in personal injury, wrongful death, or property-damage actions seeking recovery for damages allegedly caused by … asbestos," 11 U.S.C. § 524(g)(2)(B)(i)(I), given the indisputable evidence that this particular debtor (which was created just 48 hours prior to its bankruptcy filing) had never been named as a defendant in such an action?

***Second***, did the Bankruptcy Court err in allowing the debtor and its corporate parent and ultimate equityholder, Johnson & Johnson ("J&J"), to effectively fashion a new type of bankruptcy relief, never enacted by Congress, that circumvents customary rules and procedures of bankruptcy, affords bankruptcy-specific remedies to non-debtors, and isolates and disadvantages a disfavored group of creditors – all for the ultimate benefit of solvent non-debtors?

**STATEMENT OF RELATED CASES AND PROCEEDINGS**

Aside from the petitions for permission to appeal that were granted by a motions panel of this Court, *see* Case Nos. 22-8015, 22-8016, 22-8020, & 22-8021, LTL's bankruptcy has not been before this Court previously.  With respect to other cases or proceedings that are "in any way related, completed, pending or about to be presented before this court or any other court or agency, state or federal," 3d Cir. L.A.R. 28.1(a)(2), AWKO identifies the following:

1.      A ruling by the Bankruptcy Court enjoining prosecution of a putative securities fraud class action was entered in the adversary proceeding styled *LTL Management LLC v. San Diego County Employees Retirement System (In re LTL Management LLC)*, Adv. Proc. No. 22-01073 (Bankr. D.N.J., filed March 7, 2022), and is on appeal to the United States District Court for the District of New Jersey, where it is pending as Case No. 3:22-cv-02856-GC (D.N.J., filed May 13, 2022). The Bankruptcy Court's opinion is not yet published but is available at 2022 WL 1295927 and 2022 Bankr. LEXIS 1179.  LTL (the appellee) has requested that the District Court stay the appeal pending this Court's ruling in these appeals.

2.      Certain orders of the Bankruptcy Court concerning LTL's retention of professionals were entered on March 10, 2022, March 16, 2022, and March 25, 2022, and were appealed by AWKO and the TCC to the District Court, where the appeals have been consolidated as Case Nos. 3:22-cv-01621-FLW (D.N.J., filed March 22,

2022) and 3:22-cv-01712-FLW (D.N.J., filed March 28, 2022). On stipulation of all parties, the District Court stayed the appeals pending this Court's ruling in these appeals.

3.    Shortly after the Bankruptcy Case and Adversary Proceeding were transferred to New Jersey from North Carolina, *see supra* note 3, certain parties sought to withdraw the reference with respect to the Adversary Proceeding. That request was docketed in the District Court as Case No. 3:21-cv-20252-FLW-LHG (D.N.J., filed November 29, 2021), and was denied on January 21, 2022. The District Court's opinion is not published but is available at 2022 WL 190673 and 2022 U.S. Dist. LEXIS 11468.

4.    Longtime J&J talc suppliers Imerys and Cyprus are debtors in their own chapter 11 cases currently pending in the District of Delaware. *See In re Imerys Talc Am., Inc.*, Case No. 19-10289-LSS (Bankr. D. Del., filed Feb. 13, 2019); *In re Cyprus Mines Corp.*, Case No. 21-10398-LSS (Bankr. D. Del., filed Feb. 11, 2021).

## STATEMENT OF THE CASE

### A.    The Texas Two-Step

LTL's bankruptcy counsel designed and markets a tactic by which businesses with asbestos-related tort liability can enjoy the benefits of bankruptcy without actually filing for bankruptcy. *See* A1024-25 (Nov. 4, 2021 Hr'g Tr. at 248:9–249:8) (testimony of LTL's chief legal officer that Jones Day "pitched" this strategy to J&J six months before it was ultimately implemented).[6]

The tactic involves briefly re-domiciling an entity in Texas and using an obscure provision of the Texas Business Organizations Code (allowing for "divisional mergers") to split that entity into two pieces – one "good" entity, which returns to the original home jurisdiction and resumes operations as if nothing had changed, and one "bad" entity, which is re-domiciled in North Carolina and placed into bankruptcy. *See generally* A2–7 & A41–46 (MTD Opinion).   The original entity, in turn, "cease[s] to exist" by operation of Texas law. *Id*. at A4.  The premise of the strategy is that it cleanses the good entity of all liabilities assigned to the bad entity, *id*. at A42, allegedly "without … any transfer or assignment having occurred," TEX. BUS. ORGS. CODE ANN. § 10.008(a)(2)(C).

---

[6]   This trial testimony from North Carolina was admitted into evidence and became part of the record at the trial that culminated in the MTD Order and Stay/PI Order. *See Joint Stipulation and Agreed Order Between Movants and Debtor Regarding the Admission of Exhibits at Motion to Dismiss Trial* [A2493].

Here, Johnson & Johnson Consumer Inc. ("JJCI") was a New Jersey corporation in existence since 1970. *Id.* at A2 (MTD Opinion); A447 (First Day Decl. ¶ 9).   In October 2021, JJCI took a brief sojourn to Texas, where it was renamed "Chenango Zero LLC" and immediately divided into two new entities, "Chenango One LLC" and "Chenango Two LLC." *See* A5 (MTD Opinion); A451 (First Day Decl. ¶ 23).   One of these new entities moved back to New Jersey and was renamed "Johnson & Johnson Consumer Inc."; it is now referred to as "New JJCI," to distinguish it from "Old JJCI," the New Jersey corporation with that exact name that existed from 1970 until October 2021. *See* A5 (MTD Opinion); A451–452 (First Day Decl. ¶ 23).   The other new entity was re-domiciled in North Carolina, renamed "LTL Management LLC" ("LTL" stands for "legacy talc liabilities"), and placed into bankruptcy in North Carolina. *See* A5 (MTD Opinion); A451–452 (First Day Decl. ¶ 23).

The Bankruptcy Court observed "with some confidence" that the Texas legislature that enacted the statute permitting divisional mergers "probably did not foresee" this use.   A51–52.[7]   Indeed, as the North Carolina bankruptcy court

---

[7]   *Cf.* 168 CONG. REC. S682-S683 (daily ed. Feb. 15, 2022) (Senate floor statement quoting the Texas law's authors for the proposition that the law "would never have passed with the 'Texas two-step' provision.  Never, never, never'" (quoting Jamie Smyth, *Architects of 'Texas Two-Step' Lambast J&J for its use of the Maneuver*, FINANCIAL TIMES (Feb. 14, 2022), which also observed that *(footnote continued)*

8

observed, "[t]he first time any debtor in the country used this procedure was in *Bestwall* in 2017. Thereafter, every debtor using the Texas Two Step filed for bankruptcy in [North Carolina]." A1515 (Transfer Order).[8] This Bankruptcy Case is now the fifth Texas Two-Step. "In each of these cases, a corporation with substantial asbestos liability hired the law firm of Jones Day, the corporation used the 'Texas Two Step' to create a North Carolina entity with limited assets and all or most of its predecessors' asbestos liability, and the North Carolina entity filed for bankruptcy in this district shortly after its creation." A1515 (Transfer Order).[9]

---

"Cleveland-based law firm Jones Day … designed the complex bankruptcy strategy")).

[8]  The *Bestwall* case referred to by the North Carolina court is *In re Bestwall LLC*, Case No. 17-31795 (Bankr. W.D.N.C., filed November 2, 2017). The three others that followed are *In re DBMP LLC*, Case No. 20-30080 (Bankr. W.D.N.C., filed January 23, 2020), *In re Aldrich Pump LLC*, Case No. 20-30608 (Bankr. W.D.N.C. filed, June 18, 2020), and *In re Murray Boiler LLC*, Case No. 20-306069 (Bankr. W.D.N.C., filed June 18, 2020). Jones Day signed each petition and is lead debtor's counsel in each case; the same is true of LTL's petition and Bankruptcy Case. *See Voluntary Petition for Non-Individuals Filing for Bankruptcy* [A291].

[9]  The companies that to date have taken used the Texas Two-Step have little if any meaningful connection to North Carolina, *see id.* at 7–8 (discussing the facts of *Bestwall*, *DBMP*, *Aldrich*, and *Murray Boiler*), and LTL is no different: it is an entity "created to effectuate a bankruptcy filing," with "no other business purpose," and it had "only existed two days in North Carolina before filing bankruptcy." *Id.* at 9. The North Carolina bankruptcy court observed that venue in the Western District of North Carolina was likely chosen "due to the Fourth Circuit's two-prong dismissal standard and Judge Hodges's estimation ruling in the *Garlock* case." *Id.* at 10 (citing *Carolin Corp. v. Miller*, 886 F.2d 693, 700–01 (4th Cir. 1989), for the proposition that in the Fourth Circuit, "a court can
*(footnote continued)*

9

To counter arguments that the Texas Two-Step is a fraudulent transfer, the lawyers who developed the strategy paired it with a "Funding Agreement" that allegedly makes the enterprise value of the old entity (here, Old JJCI) available to satisfy creditor claims as part of a confirmed plan of reorganization. *See* A5–6 & A43–45 (MTD Opinion); *see also id.* A10 (observing that the Funding Agreement is explicitly intended to "overcome fraudulent transfer challenges").[10] Thus, the Funding Agreement in this case is a contractual obligation on the part of both J&J and JJCI to pay up to approximately $61 billion toward a confirmed plan of reorganization. *See id.* A10 & A35.

The $61 billion contractual commitment made in the Funding Agreement appears gratuitous, insofar as the new "good" entity (New JJCI) has supposedly been cleansed by Texas law of all legal responsibility for the tort liability of the new "bad"

---

dismiss a Chapter 11 filing as a bad faith filing when the bankruptcy reorganization is both (i) objectively futile *and* (ii) filed in subjective bad faith" (emphasis in original), and adverting to the estimation ruling in *In re Garlock Sealing Technologies, LLC*, 504 B.R. 71 (Bankr. W.D.N.C. 2014), which was widely viewed as a defense-friendly estimate of that debtor's aggregate asbestos liability, *see, e.g.*, *Judge Throws Manufacturers a Lifeline with Asbestos Ruling*, 29 No. 13 Civ. RICO Rep. 3 (2014)).

[10] Jones Day made changes to the form of this agreement as it filed additional Texas Two-Steps, including to address concerns raised by creditors in the earlier cases. *See, e.g.*, A626–27 (Oct. 20, 2021 Hr'g Tr. at 28:17–29:8) (remarks of LTL's counsel at the first day hearing, explaining modifications to the Funding Agreement that were implemented as a result of criticisms of the *DBMP*, *Aldrich*, and *Murray* funding agreements).

entity (LTL).  *See id.* at A42 (discussing the relevant provisions of Texas law and concluding that "where the dividing entity does not survive (such as Old JJCI), and the plan of merger allocates a particular liability or obligation to a single new entity, that designated new entity is *exclusively liable* for that obligation" (emphasis added)).  Similarly, J&J – the ultimate corporate parent – is itself directly a party to this contractual commitment (and is jointly and severally liable under the Funding Agreement) notwithstanding the insistence below that J&J has no legal responsibility for tort liability transferred to LTL via the Texas Two-Step.

The ultimate goal of the Texas Two-Step is a confirmed plan of reorganization under the special asbestos channeling provisions of section 524(g) of the Bankruptcy Code, 11 U.S.C. § 524(g).  *See* A462–64 (First Day Decl. ¶¶ 58–59); A9–10 (MTD Opinion).  To that end, LTL was given a sliver of a "business" (in reality, a passive income stream from royalties) so that it could propose a plan that purports to meet the unique requirements of section 524(g), including what this Court has termed the "going concern requirement" of section 524(g)(2)(B)(i)(II).  *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 248 (3d Cir. 2004) (reversing confirmation of a section 524(g) plan where, *inter alia*, the debtor would emerge from bankruptcy "with no employees, no products or services, and in a cash neutral position," with its "sole business activity [being] the ownership of an environmentally contaminated piece of real estate in Connecticut (a so-called 'brown field')").

A key aim of the Texas Two-Step is to halt litigation against non-debtors, notwithstanding the general rule that the Bankruptcy Code's powerful automatic stay "applies only to the debtor and, like any other nondebtor third party, does not extend to 'joint tortfeasors.'" A162 (Stay/PI Opinion). To circumvent that limitation, LTL was saddled with obligations to indemnify the very same parties – J&J and New JJCI – that are responsible for funding LTL's resolution of the talc litigation. *See id.* at A155; A452 (First Day Decl. ¶ 23). That indemnification obligation is the hook for the Bankruptcy Court's conclusion that "'there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant ….'" A155 (Stay/PI Opinion).[11]

Thus, by virtue of what is essentially a roundtrip indemnification obligation (LTL must indemnify J&J and New JJCI, which in turn must indemnify LTL), these two non-debtors get the benefit of the automatic stay, "one of the most important and powerful features of the bankruptcy system." *In re Nicole Gas Prod., Ltd.*, 916 F.3d 566, 578 (6th Cir. 2019).

---

[11] The Bankruptcy Court's opinion is quoting *McCartney v. Integra National Bank North*, 106 F.3d 506, 510 (3d Cir. 1997), which in turn quotes *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986), one of the first mass tort cases to allow for the "extension" of the automatic stay (which by its terms protects only debtors) to halt litigation against non-debtors in certain "unusual circumstances." *Cf. Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 977 (2017) ("Courts cannot deviate from the strictures of the Code, even in 'rare cases.'").

B.    **The Talc Litigation Against J&J and JJCI**

Prior to being pitched the Texas Two-Step by the law firm that developed the tactic, J&J and JJCI were ready, willing, and able to address the talc-based personal injury claims asserted against them in the ordinary course.  Indeed, J&J and JJCI actively availed themselves of the litigation management tools available under the Judicial Code and the Federal Rules by, for example, securing the centralization of all federal litigation against them in their home district pursuant to the multidistrict litigation ("MDL") provisions of the Judicial Code, 28 U.S.C. § 1407.  *See In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Prods. Liability Litig.*, 220 F. Supp. 3d 1356, 1357 (J.P.M.L. 2016) (recounting the companies' support for centralization in New Jersey).

Centralization in the District of New Jersey placed approximately 35,000 individual cases – upwards of 90% of the litigation – before a single federal district judge, *see* A2388–90 (Feb. 15, 2022 Hr'g Tr. at 108:2–110:20) (describing the MDL), and allowed the defendants to pursue *Daubert* motions that could – had they been granted – have been the death knell of the litigation.[12]

---

[12] *See generally Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993); Fed. R. Evid. 702.  A successful *Daubert* motion is typically case-dispositive.  *See, e.g.*, *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 153–158 (1999) (district court properly granted summary judgment after excluding plaintiff's expert).

If the MDL court had agreed with J&J and JJCI that the talc-based personal injury claims against them rest on "junk science,"[13] this bankruptcy would never have been filed.  But the court denied the *Daubert* motions in substantial part in a comprehensive, 141-page opinion exhaustively analyzing the relevant science and finding that "there is scientific evidence supporting each side's opinion" such that "the question of whose experts are correct is a question for the jury …."  *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Prods. Liability Litig*, 509 F. Supp. 3d 116, 187 (D.N.J. 2020).

A state appellate court in New Jersey, where the vast bulk of all non-federal (*i.e.*, non-MDL) cases are pending and have similarly been coordinated pursuant to an orderly, MDL-like state court procedure, *see* N.J. Ct. R. 4:38A, reached the same conclusion under state law, which appears to largely track the federal *Daubert* standard.  *See Carl v. Johnson & Johnson*, 237 A.3d 308, 311–14, 344 (N.J. Super. Ct. App. Div. 2020).

Even after J&J's and JJCI's *Daubert* challenges failed, J&J continued to represent to other courts, including the bankruptcy court presiding over the chapter

---

[13] *See generally Informational Brief of LTL Management LLC* [A313] (the "Informational Brief") (continuing to insist – in a 128-page filing on the first day of the case – that there is no scientific basis for any of the personal injury claims). *But see Initial Statement of Official Committee of Talc Claimants Respecting Chapter 11 Case* [A1578] (providing a useful counterpoint to the Informational Brief).

11 case of several of its talc suppliers, that J&J was eager to defend talc-related personal injury lawsuits in the tort system.  *See, e.g.*, A4508 (July 29, 2021 SEC filing in which J&J recounts its offer to assume the defense of all talc personal injury claims against its supplier that were stayed as a result of the supplier's bankruptcy filing); A4700 (Expert Report of Matthew Diaz) (quoting relevant portions of J&J's representations to the *Imerys* court).

In addition to J&J's and JJCI's demonstrated willingness and wherewithal to litigate in the tort system (at least until the Texas Two-Step was "pitched" as an attractive alternative), the other salient fact with respect to the prepetition talc litigation is which particular entity or entities had actually been "named as a defendant" in that litigation as of October 14, 2021, when LTL filed its bankruptcy petition.  *See* 11 U.S.C. § 524(g)(2)(B)(i)(I) (limiting the extraordinary relief available under section 524(g) to only those debtors that, as of the petition date, had been "named as a defendant in personal injury, wrongful death, or property-damage actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products").

The record on this point is indisputable:  LTL had not been "named as a defendant" in any litigation as of the petition date.  LTL had only been in existence for approximately 48 hours before its bankruptcy filing, *see* A452 (First Day Decl. ¶ 23), and given the transaction's timeline and secrecy, it would have been

impossible for plaintiffs to file complaints against LTL until they learned of LTL's existence by virtue of its bankruptcy filing. Indeed, the plans were so heavily guarded that Robert Wuesthoff, who became LTL's Chief Executive Officer, signed a formal offer letter on October 8, 2021 (less than a week before the petition) that did not specify the name of the entity he would work for, which had not yet been created. *See* A2107 (Feb. 14, 2022 Hr'g Tr. at 115:20–116:25). He only found out the entity's intended name in a later conversation with counsel. *Id. See also* A2427–28 (Feb. 15, 2022 Hr'g Tr. at 147:11–148:15) (describing the secrecy surrounding the planning and execution of the Texas Two-Step).

The following testimony was given in North Carolina by LTL's Chief Legal Officer, and was admitted into evidence at the New Jersey trial:

> Q:    First of all, at the time of the LTL filing on October the 14th there were no talc lawsuits pending against LTL, correct?
>
> A:    True, yes.
>
> Q:    Nobody had [gone] into any courts in the country and named LTL as a defendant alleging LTL caused anybody to get cancer, correct?
>
> A:    That is true.

A1020–21 (Nov. 4, 2021 Hr'g Tr. 244:24-245:1). *See supra* note 6. The same witness attempted to obfuscate the point at the February trial, but ultimately conceded that LTL had not been "named as a defendant" in any prepetition litigation:

Q:    … At the time LTL filed bankruptcy on October 14, 2021, LTL was not named as a defendant in any litigation, talc or otherwise, correct?  Yes or no, sir.

A:    When you say named, did you mean like physically named?  Do you mean that by operation of law it is [*sic*] then takes the place of the originally named defendant?

Q:    Sir, you've been a lawyer a long time, right?

A:    I have.

Q:    Okay.  And you understand in a complaint, okay, parties are named in a complaint and it says plaintiff, right?  It has a talc victim, perhaps, and then it has a defendant.  It might say Johnson & Johnson under there.  That's a complaint, right?

A:    It is.

Q:    Okay.  So my question is, thinking about a complaint, at the time LTL filed, was it named as a defendant in any litigation whatsoever?

A:    So if you're talking specifically about, if you look at the complaint designation -- the name that's written there, is their name there, the answer is no.

A2619–20 (Feb. 16, 2022 Hr'g Tr. at 29:12–30:5).

After the evidentiary portion of the trial had concluded, counsel for LTL asserted for the first time during closing argument that there allegedly exist complaints "that define the defendants, as the named defendant and its successor." A3270 (Feb. 18, 2022 Hr'g Tr. at 243:5–6).  But no such complaints were ever produced or admitted into evidence, nor does counsel's assertion indicate where in any of these complaints the successor language appears or whether any of

these complaints were filed in the 48-hour period between LTL's (secret) creation and bankruptcy filing (as opposed to prior to the entity's existence).[14]

Counsel's non-evidentiary statement during oral argument is referenced in the Bankruptcy Court's opinion, *see* A29 (MTD Opinion) ("At closing during the hearing, Debtor's counsel apprised the Court and all parties that Debtor in fact has been named in pending suits."), and LTL seized on that passing reference as a factual "finding" when opposing direct review. *See Consolidated Answer in Opposition to Petitions for Direct Appeal Under 28 U.S.C. § 158(d)(2)* [Docket No. 9 in Case No. 22-8015] at 33. But the Bankruptcy Court did not purport to make any factual finding, and had no evidence from which to do so. *See* A28–29 (MTD Decision) (Bankruptcy Court's entire discussion of this issue, which references the non-evidentiary statement along with two other legal points that would be unnecessary if the Court were, in fact, purporting to make a factual finding).

---

[14] The parties briefed the section 524(g)(2)(B) issue well before trial commenced, and nowhere in any of that briefing did LTL mention the existence of any such complaints. To the contrary, LTL's briefing relied exclusively on its legal argument based on Federal Rule of Civil Procedure 25(c) – a legal argument that fails as a matter of law, as detailed below. *See Debtor's Omnibus Reply in Support of Motion for an Order (A) Declaring That the Automatic Stay Applies to Certain Actions Against Non-Debtors or (B) Preliminarily Enjoining Such Actions and (C) Granting a Temporary Restraining Order Pending a Final Hearing* [Adv. Docket No. 146] (filed 40 days before the start of trial) at 49–50.

## SUMMARY OF THE ARGUMENT

The Texas Two-Step uses an idiosyncratic provision in one state's corporate law to supposedly "cleanse" J&J and New JJCI of liability – and then reimposes that same quantum of liability (via the Funding Agreement and circular indemnification obligations) on bespoke terms.  The purpose of doing so is to permit J&J and New JJCI to take advantage of just the portions of the Bankruptcy Code they like.  It is the most aggressive example to date of what one bankruptcy scholar calls "bankruptcy à la carte" or "off-label bankruptcy."  Melissa B. Jacoby, *Shocking Business Bankruptcy Law*, 131 YALE L.J. FORUM 409, 411 (2021) (describing the use of the bankruptcy system "to solve problems other than unpayable debt loads," such as "litigation management").

The Texas Two-Step creates what might be termed a synthetic bankruptcy estate – a pared-down debtor with essentially no hard assets and no "trade creditors, lenders, bondholders, customers, suppliers, vendors, landlords, tax creditors, etc.," A9 (MTD Opinion), and hence no risk of "disruptions" to the "operations, supply chains, vendor and employee relationships, ongoing scientific research, and banking and retail relationships" of "a profitable global supplier of health, consumer products and pharmaceuticals," *id*. at A47.  But as the North Carolina bankruptcy court most familiar with the Texas Two-Step ultimately recognized, none of these alleged innovations are "undertaken for the benefit of the asbestos claimants.  Rather, these

bankruptcies were designed to isolate the asbestos claimants from the overall corporate enterprise and strand them in bankruptcy until such time as they agree to a Section 524(g) plan." *In re Aldrich Pump LLC*, 2021 WL 3729335, at *21, 2021 Bankr. LEXIS 2294, at *60 (Bankr. W.D.N.C. 2021).

There are multiple flaws in this scheme, including those persuasively demonstrated in the other appellants' briefing. The two outcome-determinative points addressed in this brief are:

- A narrow but dispositive statutory construction point concerning Bankruptcy Code section 524(g)(2)(B), which LTL cannot satisfy and hence which forecloses the ultimate relief being sought; and

- A broader policy point that essentially asks *Cui bono?* – that is, Who benefits from this attempt to re-fashion the Bankruptcy Code?

The statutory issue flows from a key element of the Texas Two-Step strategy – the creation of a new entity to house all the old dissolved entity's liabilities, allegedly without any "transfer" of those liabilities. But that means that the new entity has never been "named as a defendant" in any asbestos-related litigation, 11 U.S.C. § 524(g)(2)(B)(i)(I), and thus cannot qualify for the extraordinary relief afforded by section 524(g). LTL's arguments to the contrary attempt to give impermissibly substantive effect to a procedural rule (Federal Rule of Civil Procedure 25(c)), and contradict the Texas statute that is the linchpin of the entire Texas Two-Step strategy.

The broader issue concerns a foundational principle underlying insolvency law for more than a century: that the creditors of an enterprise – including but not limited to litigation claimants – necessarily have a superior claim to the value of the enterprise than equityholders.  Just recently the Supreme Court reaffirmed that this "basic underpinning of business bankruptcy law" is not limited to particular Bankruptcy Code provisions but rather permeates the Code as a whole.  *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017).  It is therefore appropriate, and indeed required by this Court's precedents, to examine whether this bankruptcy case "conform[s] with the Code's underlying principles," *In re SGL Carbon Corp.*, 200 F.3d 154, 161 (3d Cir. 1999), which is ultimately the test for whether there is "cause" for dismissal.

The Texas Two-Step fails this test.  It upends baseline assumptions about what and who is under the control of the Bankruptcy Court and whose benefit the proceedings ultimately serve.  The Bankruptcy Code is not a litigation management device.  It does not exist to aid solvent non-debtors who did not prevail in their *Daubert* challenges and would prefer a "do over" in another forum.  Nor does the Code countenance relief for the benefit of a wealthy equityholder (the half-trillion-dollar J&J corporate enterprise) at the expense of a disfavored group of creditors (personal injury and wrongful death tort claimants).

21

**ARGUMENT**

Section 1112(b) of the Bankruptcy Code provides that, "on request of a party in interest, and after notice and a hearing, the court shall … dismiss a case under this chapter … for cause …."  11 U.S.C. § 1112(b)(1).  As this Court has ruled in three published decisions reversing lower court decisions declining to dismiss improper bankruptcy cases for cause – *In re SGL Carbon Corp.*, 200 F.3d 154 (3d Cir. 1999), *In re Integrated Telecom Express, Inc.*, 384 F.3d 108 (3d Cir. 2004), and *In re 15375 Memorial Corp.*, 589 F.3d 605 (3d Cir. 2009) – the required inquiry is less about subjective intent and more about "conformity with the Code's underlying principles," *In re SGL Carbon*, 200 F.3d at 161, such as alleviating genuine financial distress and preserving or maximizing value for all stakeholders.

This Court's precedents are rightly suspicious of bankruptcies filed "to obtain a tactical litigation advantage" or "as a mechanism to orchestrate pending litigation." *In re Integrated Telecom*, 384 F.3d at 120 (citation omitted).  So, too, with bankruptcies that seek "to distribute value directly from a creditor to a company's shareholders," *id*. at 129, or that are "primarily [about] protecting [non-debtors]," *In re 15375 Memorial*, 589 F.3d at 624.  In such circumstances, this Court's review is especially searching.  True factual findings ("basic and inferred facts") are subject to clearly erroneous review, but so-called "ultimate facts" are subject to "plenary review" because they are essentially conclusions of law." *See id*. at 616.

22

This Court's careful scrutiny of the records in *SGL Carbon*, *Integrated Telecom*, and *15375 Memorial* accords with the Supreme Court's recent decision in *U.S. Bank National Association v. Village at Lakeridge, LLC*, 138 S. Ct. 960 (2018). There, the Supreme Court similarly distinguished between "basic" or "historical" facts (*i.e.*, "questions of who did what, when or where, how or why"), *id*. at 966, versus what this Court has termed "ultimate facts" – that is, the application of law to fact in a way that "amplif[ies] or elaborat[es] on a broad legal standard." *Id*. at 967.

Thus, whether LTL was in fact "named as a defendant" in any asbestos-related litigation at the time of its filing, 11 U.S.C. § 524(g)(2)(B)(i)(I), is a question of historical fact subject to deferential review to the extent it concerns whether a particular document had or had not been filed with a particular court on a particular date. But whether the Texas Two-Step undertaken here "conform[s] with the Code's underlying principles," *In re SGL Carbon*, 200 F.3d at 161, or is instead "'a mechanism to orchestrate pending litigation,'" *In re Integrated Telecom*, 384 F.3d at 120, is fundamentally a question of law reviewed *de novo*.

It is rightly the province of this Court to "clarify legal principles" and "provide guidance to other courts resolving other disputes" with respect to this important topic. *Village at Lakeridge*, 138 S. Ct. at 968. The answer to these fundamental questions ought not vary depending on which particular bankruptcy judge draws the next Texas Two-Step.

## I.    THE BANKRUPTCY CASE MUST BE DISMISSED BECAUSE LTL CANNOT SATISFY BANKRUPTCY CODE SECTION 524(g)(2)(B)

LTL's ultimate aim in bankruptcy is to confirm a plan of reorganization that makes use of the special, asbestos-specific channeling injunction provisions of Bankruptcy Code section 524(g). *See generally* A462–64 (First Day Decl. ¶¶ 58–59); A9–10 (MTD Opinion). Absent any likelihood of qualifying for such relief, LTL's chapter 11 filing serves no purpose. Here there is a dispositive impediment to that objective – and it is directly traceable to the Texas Two-Step mechanism by which LTL entered bankruptcy.

### A.    The Evidentiary Record is Clear – LTL Does Not Qualify

LTL was created on October 12, 2021, when it emerged as one of two new entities ("Chenango One") from the division of "Chenango Zero" (formerly JJCI) under Texas law. *See* A5 (MTD Opinion); A451–452 (First Day Decl. ¶ 23). It was re-domiciled in North Carolina and placed into bankruptcy 48 hours later. *Id*. The entity out of which LTL emerged "ceased to exist" by operation of Texas law, A4 (MTD Opinion), and the liabilities that were siloed in LTL ended up there "without … any transfer or assignment having occurred," TEX. BUS. ORGS. CODE ANN. § 10.008(a)(2)(C).

The entire process of LTL's creation, move to North Carolina, and petition for bankruptcy was shrouded in secrecy, *see* A2107 (Feb. 14, 2022 Hr'g Tr. at 115:20–116:25); A2427–28 (Feb. 15, 2022 Hr'g Tr. at 147:11–148:15), and as a

result, LTL was not named as a defendant in a single lawsuit that was filed in the 48 hours that elapsed between LTL's creation on October 12, 2021 and the filing of LTL's bankruptcy petition on October 14, 2021. *See* A1020–21 (Nov. 4, 2021 Hr'g Tr. 244:24-245:1); A2619–20 (Feb. 16, 2022 Hr'g Tr. at 29:12–30:5).

On these incontestable facts, LTL does not qualify for relief under section 524(g). The statute is not a model of concision, but it is plain enough in this regard:

> (1)
>
>> (A) After notice and hearing, a court that enters an order confirming a plan of reorganization under chapter 11 may issue, in connection with such order, an injunction in accordance with this subsection to supplement the injunctive effect of a discharge under this section.
>>
>> (B) An injunction may be issued under subparagraph (A) to enjoin entities from taking legal action for the purpose of directly or indirectly collecting, recovering, or receiving payment or recovery with respect to any claim or demand that, under a plan of reorganization, is to be paid in whole or in part by a trust described in paragraph (2)(B)(i), except such legal actions as are expressly allowed by the injunction, the confirmation order, or the plan of reorganization.
>
> (2)
>
>> (A) Subject to subsection (h), if the requirements of subparagraph (B) are met at the time an injunction described in paragraph (1) is entered, then after entry of such injunction, any proceeding that involves the validity, application, construction, or modification of such injunction, or of this subsection with respect to such injunction, may be commenced only in the district court in which such injunction was entered, and such court shall have exclusive jurisdiction over any such proceeding without regard to the amount in controversy.

    (B)  The requirements of this subparagraph are that –

        (i)  the injunction is to be implemented in connection with a trust that, pursuant to the plan of reorganization –

            (I)  is to assume the liabilities of a debtor ***which at the time of entry of the order for relief has been named as a defendant*** in personal injury, wrongful death, or property-damage actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products ….

11 U.S.C. § 524(g) (emphasis added).

There is one debtor – LTL Management LLC. The question is whether, "at the time of entry of the order for relief," *i.e.*, at the moment the bankruptcy petition was docketed,[15] it was true that that particular entity "has been named as a defendant" in asbestos-related litigation. The statute twice emphasizes the temporal nature of the test – first by referencing a precise point in time ("at the time of entry of the order for relief"), and then by using the past tense ("has been named as a defendant"). There is no colorable way to read the statute as covering a debtor who was first "named as a defendant" after the petition date.

---

[15] *See* 11 U.S.C. § 301(b) ("The commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter."); *id*. § 102(6) ("In this title – … 'order for relief' means entry of an order for relief[.]").

## B. The Bankruptcy Court Did Not Make a Contrary Factual Finding

In response to this argument, LTL seizes on a sentence in the Bankruptcy Court's ruling: "At closing during the hearing, Debtor's counsel apprised the Court and all parties that Debtor in fact has been named in pending suits." A29 (MTD Opinion). In opposition to certification of these appeals, LTL argued that this sentence constitutes a "finding."

The Bankruptcy Court did not make any "finding" in this regard. After introducing the issue, the entirety of the court's analysis is set out in three sentences:

> **[1]** The causes of action held by the talc plaintiffs are owing by Debtor as successor in interest to Old JJCI and, consequently, Debtor substitutes for Old JCCI in all federal actions as a matter of law. *See* Fed. R. Civ. P. 25(c). **[2]** At closing during the hearing, Debtor's counsel apprised the Court and all parties that Debtor in fact has been named in pending suits. **[3]** Notwithstanding, as we have seen in other non-asbestos mass tort cases, referenced below, chapter 11 can still offer the opportunity to reach consensus on a global resolution of present and future claims without express resort to § 524(g).

*Id*. (bold sentence numbers added). In context, the second sentence can hardly be a factual finding. If it was, then the first and third sentences (which are legal points) would be unnecessary and out of order. The second sentence appears to convey that: (a) during closing arguments (after the evidentiary record had closed), (b) a person who was not a witness (Debtor's counsel), (c) made a statement that was not evidentiary ("apprised the Court and all parties"), (d) that counsel believed a certain fact to be true ("that Debtor in fact has been named in pending suits").

27

The accuracy of the Bankruptcy Court's recounting of what transpired during

closing argument can be determined from the official transcript, which confirms that

during argument (not evidence), a lawyer (not a witness), made a certain assertion:

> Mr. Gordon: … but the other thing, Your Honor, and we're prepared to supplement the record on this, we took a quick look through the complaints, and there are complaints. We found at least three already that define the defendants, as the named defendant and its successor.
>
> So, if there's any question in this Court's mind that there's this technical gotcha based on this very minor provision in 524(g), it's defeated by the complaint's [*sic*] themselves. I'm not surprised by that, that there's language like that, but that refers to the defendants and their predecessors and excess -- successors, in at least three complaints that we found already.

A3270 (Feb. 18, 2022 Hr'g Tr. at 243:2–13).[16]

Notwithstanding counsel's asserted willingness to "supplement the record on

this," *id.*, no such complaints have been produced and none are in the record.

Further, based on counsel's description, it would seem that at most LTL located

certain complaints that somewhere (perhaps in the body of the document) use a

defined term "Defendant" and define that particular term to include a particular

---

[16] To be perhaps overly precise, counsel did not actually state "that Debtor in fact has been named in pending suits." A29 (MTD Opinion). Counsel asserted that there exist three complaints "that define the defendants, as the named defendant and its successor." A3270 (Feb. 18, 2022 Hr'g Tr. at 243:4–6).

entity's "successor." Even if that is the case, a generic reference to "successors" in the body of a complaint is not the same thing as being "named as a defendant," which is what the statute requires.[17]   Moreover, no indication is given as to when these particular documents were filed with any court; they may predate LTL's creation by months or even years – in which event they can hardly stand for the proposition that LTL was "named as a defendant" before LTL even existed.  Further, counsel's actual words reference documents that speak of "the **named defendant** and its successor," A3270 (Feb. 18, 2022 Hr'g Tr. at 243:5–6) (emphasis added), suggesting that in the documents there is a "named defendant" that is not LTL, and counsel is attempting to sweep LTL in as the "successor" of such a "named defendant."

Finally, to the extent the Bankruptcy Court did make a "finding" of fact, that finding lacks any evidentiary support whatsoever and is clear error.  A lawyer's statements during argument are not evidence.  *See, e.g.*, *In re Fed. Mogul-Glob., Inc.*, 348 F.3d 390, 406 (3d Cir. 2003) ("If the Committee's figures are only the latter, they do not supply a sufficient basis for the imposition of the fee cap, as it is

---

[17] *Cf. Devlin v. Scardelletti*, 536 U.S. 1, 15 (2002) (Scalia, J., dissenting) (quoting the RESTATEMENT (SECOND) OF JUDGMENTS (1980) for the proposition that "[a] person who is named as a party to an action and subjected to the jurisdiction of the court is a party to the action," and that "[t]he designation of persons as parties is usually made in the caption of the summons or complaint but additional parties may be named in such pleadings as a counterclaim, a complaint against a third party filed by a defendant, or a complaint in intervention'").

well settled that arguments by counsel cannot provide factual support for a trial court's findings."). The actual evidence in the record, including the sworn testimony of LTL's Chief Legal Officer, is that LTL was not named as a defendant in any litigation prior to its bankruptcy filing. *See* A1020–21 (Nov. 4, 2021 Hr'g Tr. 244:24-245:1); A2619–20 (Feb. 16, 2022 Hr'g Tr. at 29:12–30:5).

## C.     Federal Rule of Civil Procedure 25(c) Does Not Apply

LTL next argues that despite the unambiguous statutory language ("a debtor which at the time of entry of the order for relief has been named as a defendant," 11 U.S.C. § 524(g)(2)(B)(i)(I)), the statute is satisfied so long as LTL's predecessor was so named, and asserts that Federal Rule of Civil Procedure 25(c) accomplishes such an automatic substitution.

This argument fails for at least four reasons:

*First*, Congress knew how to differentiate between the "debtor" itself and parties that are related to the debtor, such as a predecessor. Another subparagraph of section 524(g) carefully defines the term "related party" to mean, *inter alia*, "a past or present affiliate of the debtor" or "a predecessor in interest of the debtor." 11 U.S.C. § 524(g)(4)(A)(iii). The drafters of section 524(g) were not particularly sparse with words, and there is no reason to believe that Congress's use of the term "a debtor" in section 524(g)(2)(B)(i)(I) was actually shorthand for "a debtor or its predecessor in interest."

***Second***, LTL's assertion that Federal Rule of Civil Procedure 25(c) resulted in LTL's automatic substitution as a defendant depends on LTL having been "transferred" its interest as a defendant in the litigation, because that is what the rule concerns:

> (c)  Transfer of Interest.  If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party.  The motion must be served as provided in Rule 25(a)(3).

Fed. R. Civ. P. 25(c).  But a central premise of the Texas statute under which LTL was created – and on which this entire bankruptcy rests – is that nothing that LTL owns or owes has been "transferred" to it.  Instead, everything LTL owns or owes became LTL's "without … any transfer or assignment having occurred …." TEX. BUS. ORGS. CODE ANN. § 10.008(a)(2)(C).  The statute reads:

(a)  When a merger takes effect:

>   (1)  the separate existence of each domestic entity that is a party to the merger, other than a surviving or new domestic entity, ceases;
>
>   (2)  all rights, title, and interests to all real estate and other property owned by each organization that is a party to the merger is allocated to and vested, subject to any existing liens or other encumbrances on the property, in one or more of the surviving or new organizations as provided in the plan of merger ***without***:
>
>      (A)  reversion or impairment;
>
>      (B)  any further act or deed; or

(C) *any transfer or assignment having occurred* ….

*Id.* § 10.008 (emphasis added). LTL has staked its entire bankruptcy filing on the validity and efficacy of this Texas statute. It cannot now deny that the statute works the way it purports to work.[18]

*Third*, even if Rule 25(c) could apply, it would not transform LTL into a "named defendant" in any litigation. Instead, when Rule 25(c) operates, it merely means that a "judgment will be binding on the successor in interest even though the successor is not named." 13 Charles Alan Wright & Arthur R. Miller, FED. PRAC. & PROC. § 1958 (3d ed.). In other words, Rule 25(c) does not transform an unnamed party into a named party; it just ensures that the still-unnamed party will be bound by the result. *See, e.g.*, *Luxliner P.L. Exp., Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 71 (3d Cir. 1993) (explaining that under Rule 25(c), "the case may be continued against the original defendant and the judgment will be binding on the successor even if the successor is not named in the lawsuit"); *Mars, Inc. v. JCM Am. Corp.*, 2007 WL

---

[18] Courts in Texas have given effect to this language, including by holding that a patent that ended up being owned by an entity created as a result of a divisive merger had not actually been "transferred" to that entity. *Plastronics Socket Partners, Ltd. v. Dong Weon Hwang*, 2019 WL 1009404, at *2, 2019 U.S. Dist. LEXIS 32896, at *5–6 (E.D. Tex. 2019) ("Under Texas law, the division of Plastronics constitutes a divisive merger and the transfer of rights therefore occurred by operation of law, so no prohibited transfer occurred.… As a result, 'all rights, title, and interests to all real estate and other property owned by each organization that is a party to the merger is allocated to and vested ... in one or more of the surviving or new organizations as provided in the plan of merger without ... any transfer or assignment having occurred.'" (quoting the statute)).

776786, at *1, 2007 U.S. Dist. LEXIS 17351, at *4 (D.N.J. 2007) (the rule allows a case to continue where "the successor is not a named party").

***Finally***, under the Rules Enabling Act, a Federal Rule of Civil Procedure cannot "abridge, enlarge or modify any substantive right." 28 U.S.C § 2072(b). *See, e.g.*, *Luxliner*, 13 F.3d at 71–72 (explaining that "joinder or substitution under Rule 25(c) does not ordinarily alter the substantive rights of parties but is merely a procedural device designed to facilitate the conduct of a case").

Here, a federal statute explicitly applies only to "a debtor which at the time of entry of the order for relief has been named as a defendant …." 11 U.S.C. § 524(g)(2)(B)(i)(I). LTL's counsel may wish to brush that language aside as a "technical gotcha" based on a "very minor provision" in the statute, A3270 (Feb. 18, 2022 Hr'g Tr. at 243:8–9), but to use Rule 25(c) to apply the statute to a debtor that has ***not*** been so named, and to afford substantive relief as a result of such application, would amount to abridging, enlarging, or modifying a substantive right – which the Rules Enabling Act expressly forbids.

### D.    The Bankruptcy Court's Alternative Legal Holding Fails

LTL makes no effort to embrace or defend the final sentence of the Bankruptcy Court's analysis on this point: "Notwithstanding, as we have seen in other non-asbestos mass tort cases, referenced below, chapter 11 can still offer the opportunity to reach consensus on a global resolution of present and future claims

without express resort to § 524(g)." A29 (MTD Opinion). The premise appears to be that to the extent section 524(g) itself is not available, relief might still be afforded in the form of a section 105 injunction. *See id*. at A9 (referencing a "settlement trust, established pursuant to § 105 or § 524(g)"); A23 (same); A50 (same).

The Bankruptcy Court's intimation that section 105 might be used in lieu of section 524(g) if one or more elements of section 524(g) are lacking is foreclosed by this Court's decision in *In re Combustion Engineering, Inc.*, 391 F.3d 190 (3d Cir. 2004). That case holds that regardless of whether section 105 might be available in non-asbestos cases – such as the sex abuse and opioid mass tort litigation referenced by the Bankruptcy Court, *see* A29 (MTD Opinion) – in no circumstance can section 105 "be employed to extend a channeling injunction … in an asbestos case where the requirements of § 524(g) have not been met." *Id.* at 236.

## II. THE BANKRUPTCY CASE MUST BE DISMISSED BECAUSE ITS FUNDAMENTAL PURPOSE IS AT ODDS WITH THE CODE

A broader and more structural reason why cause exists for dismissal is the way in which LTL's Texas Two-Step cedes only a sliver of the relevant enterprise to the control of the Bankruptcy Court and the scrutiny of the bankruptcy process, while simultaneously allowing the larger enterprise to enjoy the benefits afforded by the Bankruptcy Code. In this regard, it is useful to compare how a genuine chapter 11 reorganization unfolds and on whose interests the court and the parties are

properly focused.  The contrast between such a proceeding with what LTL is attempting here reveals the impropriety of the Texas Two-Step.

### A.  Basic Principles and Practice in a Genuine Reorganization

The filing of a bankruptcy petition creates an estate consisting of all of the property that will be subject to the jurisdiction of the bankruptcy court.  11 U.S.C. § 541(a).  Subject to certain limited exceptions, the bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case" (*i.e.*, all property of the debtor as of the petition date).  *Id.*; *see also* 28 U.S.C. § 1334(e) (vesting the court "in which a case under title 11 is commenced or is pending [with] exclusive jurisdiction … of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate").

In cases under chapter 11, the debtor is authorized to manage the property of the estate and continue to operate the debtor's business as a "debtor in possession," unless and until a trustee is appointed.  *See* 11 U.S.C. §§ 1107, 1108.  The debtor does so, however, with a "fiduciary duty to maximize the value of the estate" for the creditor body as a whole, *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel Cybergenics Corp. v. Chinery*, 330 F.3d 548, 573 (3d Cir. 2003), and thus holds all of its property "in trust for the benefit of creditors, just as would a trustee," *In re Tech. Knockout Graphics, Inc.*, 833 F.2d 797, 802 (9th Cir. 1987). That is why the Code frequently speaks of "the trustee" having certain rights or

undertaking certain tasks, *see, e.g.*, 11 U.S.C. §§ 363(b)(1) (right to use, sell, or lease estate property), 364(b) (right to obtain postpetition financing), 365(a) (right to assume or reject executory contracts and leases), even though in a typical chapter 11 case the debtor itself fulfills that role, *id.* §§ 1101(1) & 1104.

As a fiduciary, the debtor in possession's management of estate property is subject to the close oversight and scrutiny of the bankruptcy judge. For example, a debtor in possession may not use or sell property outside the ordinary course of business without notice, a hearing, and court approval. *Id.* § 363(b). Similarly, a debtor must obtain court approval to pay prepetition debts. *See, e.g.*, *In re Capmark Fin. Grp. Inc.*, 438 B.R. 471, 510 (Bankr. D. Del. 2010). The Bankruptcy Code also provides important tools for the recovery of preferential or fraudulent transfers, 11 U.S.C. §§ 544, 547 & 548, and an automatic stay halts all collection proceedings against the debtor, *id.* § 362(a).

Throughout, the bankruptcy court has broad control:

> Once the property is in the hands of the court private rights as respect that *res* are subject to the superior dominion of the court and are to be adjudicated pursuant to the standards prescribed by the Congress…. The court need not keep the debtor in possession but may substitute for the old management a trustee; or if the old management is retained it operates the business "subject at all times to the control of the judge, and to such limitations, restrictions, terms, and conditions as the judge may from time to time impose and prescribe." Thus, while the property remains in the hands of the court, as it does until dismissal or final decree on confirmation, the debtor, though left in possession by the judge, does not operate it, as it did before

36

the filing of the petition, unfettered and without restraint. The
control of the court is then pervasive.

*Case v. Los Angeles Lumber Co.*, 308 U.S. 106, 125–26 (1939) (footnotes omitted).

Creditors have powerful rights to participate in a bankruptcy case and, by
extension, meaningful oversight with respect to the operation of the debtor's
business. The United States Trustee appoints an official committee of creditors as
soon as practicable after the petition date. 11 U.S.C. § 1102(a)(1). That committee
has the power to, *inter alia*, "investigate the acts, conduct, assets, liabilities, and
financial condition of the debtor" and "participate in the formulation of a plan …."
*Id.* § 1103(c). As committees often consist mostly of trade creditors who may have
ongoing business relationships with the debtor, a debtor generally has strong
incentives to cooperate with the committee to attempt to negotiate a plan that
maximizes value for all stakeholders. *Cf.* COLLIER ON BANKRUPTCY ¶ 1103.05[1][d]
(Richard Levin & Henry J. Sommer eds., 16th ed.) ("Chapter 11 is intended to be a
cooperative process and the formulation of a plan is an endeavor that should be
undertaken by the debtor in constant consultation with its official committees.").

When formulating a plan, the general rule is that a debtor's creditors have a
superior claim to the value of the enterprise than equityholders. This basic principle
is called the "absolute priority rule," and it traces back at least to *Northern Pacific
Railroad Co. v. Boyd*, 228 U.S. 482, 504–505 (1913). Portions of the rule are
codified, but the principle is broader than any particular statutory provision in the

modern Bankruptcy Code.  *See, e.g.*, *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 444, 448 (1999) (explaining how the absolute priority rule "antedat[es] the current Bankruptcy Code," which "does not codify any authoritative pre-Code version").  The Supreme Court recently reaffirmed that this "basic underpinning of business bankruptcy law" is not limited to any particular Code provision but instead can be seen throughout the Code.  *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017) (citing, *e.g.*, 11 U.S.C. §§ 725, 726, 1129(b)).

In the context of formulating a plan, the parties have "somewhat more flexibility" in distributing value than the distributional priority scheme of a chapter 7 liquidation, for example, because chapter 11 allows for "a different ordering with the consent of the affected parties." *Id*. at 979.  But a bankruptcy court cannot confirm a plan that contains priority-violating distributions over the objection of an impaired creditor class, *see* 11 U.S.C. §§ 1129(a)(7), 1129(b)(2), and individual creditors retain a "best interest" objection that at a minimum ensures they receive at least as much as they would in a liquidation under chapter 7, *id.* § 1129(a)(7).

### B.    The Texas Two-Step Changes the Chapter 11 Baseline

Against this backdrop, the innovations created by the Texas Two-Step are clear.  From the outset of the case, the dynamics are different because virtually all of the enterprise's actual assets, ordinary liabilities, long-term debt, supplier and

lender relationships, and regulators and other stakeholders are left outside the proceedings. Only disfavored litigation claimants are subject to the bankruptcy. They are thus "isolate[d] … from the overall corporate enterprise and strand[ed] … in bankruptcy …." *In re Aldrich Pump LLC*, 2021 WL 3729335, at *21, 2021 Bankr. LEXIS 2294, at *60 (Bankr. W.D.N.C. 2021). Meanwhile, all other creditors continue to be paid in full and in the ordinary course.

This dynamic fundamentally alters the bankruptcy case. There is no operating business that the debtor and creditor body jointly have an interest in maximizing, or that the court has any role in supervising. There is no business imperative to wrap the bankruptcy up as expeditiously and economically as possible, or to seek creative solutions with creditors, contract counterparties, and other stakeholders. Instead, there is only the debtor and one group of disfavored creditors, and those creditors alone are stayed from doing anything other than negotiating with the debtor. That negotiation, in turn, is a zero-sum game: the debtor's chief interest is in paying as little as possible on account of claims that the debtor continues to insist are based on "junk science." *See supra* note 13.

Both LTL and the Bankruptcy Court justify this alternative structure as one that is more efficient and less disruptive. That is a dubious proposition, given the near-glacial pace of the four other Texas Two-Step bankruptcies that are pending in North Carolina. *See supra* note 8. In addition, both LTL and the Bankruptcy Court

point to the Funding Agreement as ameliorating any harm to claimants. But the Funding Agreement is not a safeguard enacted by Congress in the Bankruptcy Code. It is a private contract drawn up between close affiliates pre-bankruptcy – and it is apparently gratuitous. So, too, with LTL's stated commitment to negotiation and prompt settlement. Even if this fifth Texas Two-Step could theoretically play out differently than the prior four, the Court is being asked to bless a construct that is fundamentally different than what Congress enacted. Tort claimants should not have to bear the risk that things will not go precisely as LTL assures they will. And this Court, which is tasked with clarifying general legal principles and providing guidance to lower courts in this Circuit, *see Village at Lakeridge*, 138 S. Ct. at 968, must consider what the next step will be if this Texas Two-Step is allowed to proceed. For example, will the next case be in bad faith if the funding agreement is less generous than LTL claims this Funding Agreement is?

Finally, the rulings below describe at some length the Bankruptcy Court's "strong conviction that the bankruptcy court is the optimal venue for redressing the harms of both present and future talc claimants in this case," A19 (MTD Opinion), and its view that there "is nothing to fear in the migration of tort litigation out of the tort system and into the bankruptcy system," *id.* at A27. *See generally id.* at A3–4 & 16–28; A158–63 (Stay/PI Opinion). Indeed, the Bankruptcy Court even went so

far as to conclude that enjoining the continued prosecution of existing lawsuits

would *benefit* the plaintiffs in those lawsuits:

> For reasons expressed in the Opinion Denying the Motions to
> Dismiss, the Court concludes that the talc claimants will not be
> prejudiced through the issuance of a preliminary injunction, and
> will – in fact – benefit from the extension of the automatic stay
> to the Protected Parties and the handling of their claims through
> the bankruptcy process….
>
> In the state and district courts, talc claimants struggle with the
> sluggish pace of litigation and face a legitimate possibility that
> they will not succeed in proving their claims.  Should a judgment
> be awarded, claimants must then endure the appellate process,
> where – at worst – their judgment is overturned, and – at best –
> recovery is delayed….  Resolution of claims and payments to
> claimants can be achieved at a far more expeditious pace in
> bankruptcy than through uncertain litigation in the tort system.
> A trust would establish a far simpler and streamlined process
> than currently available in the tort system.

A187–89 (Stay/PI Opinion).

As other appellants are addressing at greater length, the Bankruptcy Court's

views in this regard rest on contested assumptions and are largely in the nature of

policy choices.  *Cf. U.S. v. Noland*, 517 U.S. 535, 540–41 (1996) (explaining why

bankruptcy courts cannot "modify the operation of the priority statute at the same

level at which Congress operated when it made its characteristically general

judgment to establish the hierarchy of claims in the first place," because to do so

would sweep away the "distinction between characteristic legislative and trial court

functions").

Further, while the Bankruptcy Court placed great weight on Congress's enactment of section 524(g), *see* A23–28 (MTD Opinion), it gave almost no attention to the explicit Congressional command that neither the Bankruptcy Code nor the jurisdictional provisions of the Judicial Code "affect any right to trial by jury that an individual has under applicable nonbankruptcy law with regard to a personal injury or wrongful death tort claim." 28 U.S.C. § 1411(a).

\*        \*        \*

Writing in a separation of powers case, Justice Scalia once observed that innovations with the potential "to effect important change in the equilibrium of power" are not always immediately discernable – they may first "come before the Court clad, so to speak, in sheep's clothing ….. But this wolf comes as a wolf." *Morrison v. Olson*, 487 U.S. 654, 699 (1988) (dissenting opinion).

So, too, with LTL's Texas Two-Step. It flouts the rules that "animate and guide [bankruptcy] law within the statutory framework set by the Bankruptcy Code," *In re Cooper Commons LLC*, 512 F.3d 533, 534 (9th 2008), on matters both small and large. LTL's attempted use of the bankruptcy process is thus more objectionable than any of the filings this Court found to be abusive in *SGL Carbon*, 200 F.3d 154, *Integrated Telecom Express*, and *15375 Memorial Corp.*, 589 F.3d 605. Those cases involved attempts at opportunistically exploiting specific provisions of the Code. This case, by contrast, seeks to upend the baseline assumptions about what property

is in or out of the bankruptcy estate, which entities are the proper focus of the parties' efforts, and for whose benefit the proceedings are ultimately being conducted.

## CONCLUSION

AWKO accordingly requests that the Court reverse the orders on appeal and remand to the Bankruptcy Court with instructions to dismiss LTL's Bankruptcy Case.

June 30, 2022                                   Respectfully submitted,

                                                /s/ Robert J. Pfister
                                                _____
                                                Michael L. Tuchin
*Of Counsel:*                                   Robert J. Pfister
                                                Samuel M. Kidder
Paul J. Winterhalter                            Nir Maoz
OFFIT KURMAN, P.A.                              KTBS LAW LLP
99 Wood Avenue South, Suite 302                 1801 Century Park East, 26th Floor
Iselin, New Jersey 08830                        Los Angeles, California 90067
(267) 338-1370                                  (310) 407-4000

*Attorneys for Aylstock, Witkin, Kreis & Overholtz, PLLC*

## COMBINED CERTIFICATE OF COMPLIANCE

The undersigned counsel of record certifies the following:

1.      I am a member of the bar of the United States Court of Appeals for the Third Circuit.  *See* 3d Cir. L.A.R. 46.1(e).

2.      The foregoing *Opening Brief of Appellant Aylstock, Witkin, Kreis & Overholtz, PLLC* (the "Brief") complies with: (i) the word limit of Federal Rule of Appellate Procedure 5(c)(l) because, excluding the parts of the document exempted by Federal Rules of Appellate Procedure 5(c) and 32(f), it contains 10,913 words; and (ii) the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman with 14 point font.

3.      On June 30, 2022, I electronically filed the Brief with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system.  The text of the electronic version of the Brief is identical to the text of the hard copies that will be provided.

4.      I certify that a virus detection program was run on the electronic version of the Brief, and no viruses were detected.  *See* 3d Cir. L.A.R. 31.1(c).


 June 30, 2022                                      /s/ Robert J. Pfister
                                              _____

**CERTIFICATE OF SERVICE**

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.  I further certify that seven copies of the foregoing *Opening Brief of Appellant Aylstock, Witkin, Kreis & Overholtz, PLLC* were also sent via overnight express mail to the Clerk of the Court for the United States Court of Appeals for the Third Circuit.

 June 30, 2022                                    /s/ Robert J. Pfister