Nos. 22-2003, 22-2004, 22-2005, 22-2006, 22-2007,
22-2008, 22-2009, 22-2010, 22-2011 (Consolidated)

# United States Court of Appeals for the Third Circuit

IN RE LTL MANAGEMENT, LLC,

*Debtor.*

OFFICIAL COMMITTEE OF TALC CLAIMANTS, *et al.*,

*Petitioners-Appellants,*

v.

LTL MANAGEMENT, LLC,

*Debtor-Appellee.*

Direct Appeal from the United States Bankruptcy Court for the District of New
Jersey in Ch. 11 No. 21-30589 and Adv. Pro. No. 21-03032

## REPLY BRIEF FOR APPELLANT
## OFFICIAL COMMITTEE OF TALC CLAIMANTS

MOLOLAMKEN LLP
Jeffrey A. Lamken
600 New Hampshire Ave., N.W.
Washington, DC 20037
(202) 556-2010

GENOVA BURNS LLC
Angelo J. Genova
Daniel M. Stolz
110 Allen Road, Suite 304
Basking Ridge, NJ 07920
(973) 533-0777

*Counsel for Appellant Official Committee of Talc Claimants*
(Additional Counsel Listed on Inside Cover)

BROWN RUDNICK LLP
David J. Molton
Michael S. Winograd
Robert J. Stark
7 Times Square
New York, NY 10036
(212) 209-4800

OTTERBOURG P.C.
Melanie L. Cyganowski
Adam C. Silverstein
230 Park Avenue
New York, NY 10169
(212) 661-9100

MASSEY & GAIL LLP
Jonathan S. Massey
1000 Maine Ave. S.W., Suite 450
Washington, DC 20024
(202) 652-4511

BAILEY & GLASSER LLP
Brian A. Glasser
1055 Thomas Jefferson St., N.W.
Washington, DC 20007
(202) 463-2101

PARKINS LEE & RUBIO LLP
Lenard M. Parkins
700 Milam St., Suite 1300
Houston, TX 77002
(713) 715-1666

*Counsel for Appellant Official Committee of Talc Claimants*

# **TABLE OF CONTENTS**

<u>Page</u>

INTRODUCTION ................................................................................1

ARGUMENT ......................................................................................3

I.     The Bankruptcy Court Erred in Denying Appellants' Motion To
       Dismiss ..................................................................................3

       A.     The Petition Seeks To Evade Bankruptcy-Code Requirements ...........3

       B.     LTL's Rationalizations Lack Merit .........................................8

       C.     LTL's Lack of Reorganizational Purpose and Effort To Achieve
              Improper Advantage Compel Dismissal ............................15

              1.     Reorganizational Purpose ........................................15

              2.     Improper Litigation Advantage .................................17

              3.     The Bankruptcy Court's Policy Judgments .............19

              4.     LTL's Supposed Desire To Invoke § 524(g) ...........21

II.    The Bankruptcy Court Erred in Freezing Thousands of Actions
       Against Some 670 Non-Debtors ....................................23

       A.     The Bankruptcy Court Lacked Core Jurisdiction To Stay
              Actions Against Non-Debtors ...........................24

       B.     The Bankruptcy Court Lacked Authority Under § 105 ...............28

CONCLUSION ..............................................................................30

# TABLE OF AUTHORITIES

Page(s)

## CASES

*In re 15375 Mem'l Corp. v. BEPCO L.P.*,
589 F.3d 605 (3d Cir. 2009) .......................................................................*passim*

*In re 15375 Mem'l Corp. v. BEPCO L.P.*,
382 B.R. 652 (Bankr. D. Del. 2008) .....................................................16

*A.H. Robins Co., Inc. v. Piccinin*
788 F.2d 994 (4th Cir. 1994) .............................................................25

*In re Aldrich Pump LLC*,
No. 20-30608 (JCW), 2021 WL 3729335 (Bankr. W.D.N.C. Aug.
23, 2021) ....................................................................................13, 14

*In re Am. Cap. Equip., LLC*,
688 F.3d 145 (3d Cir. 2012) ................................................................11

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997)..........................................................................19

*In re American Film Techs., Inc.*,
175 B.R. 847 (Bankr. D. Del. 1994)...................................................25

*Anadarko Petroleum Corp. v. Panhandle E. Corp.*,
545 A.2d 1171 (Del. 1988) ....................................................................6

*In re Bestwall LLC*,
605 B.R. 43 (Bankr. W.D.N.C. 2019) .....................................13, 14, 21

*In re Capitol Food Corp. of Fields Corner*,
490 F.3d 21 (1st Cir. 2007).....................................................................9

*Celotex Corp. v. Edwards*,
514 U.S. 300 (1995)......................................................................24, 25

*In re Colonial Realty Co.*,
980 F.2d 125 (2d Cir. 1992) .............................................................26, 27

*In re Combustion Eng'g, Inc.*,
   391 F.3d 190 (3d Cir. 2004) ........................................................*passim*

*Czyzewski v. Jevic Holding Corp.*,
   137 S. Ct. 973 (2017)....................................................................3, 5, 8

*In re DBMP LLC*,
   No. 20-30080, 2021 WL 3552350 (Bankr. W.D.N.C. Aug. 11,
   2021) ..........................................................................................13, 14

*In re Dow Corning Corp.*,
   86 F.3d 482 (6th Cir. 1996) ...............................................................28

*In re Family Health Services, Inc.*,
   105 B.R. 937 (Bankr. C.D. Cal. 1989) ...............................................25

*In re Federal-Mogul Global, Inc.*,
   300 F.3d 368 (3rd Cir. 2002) ........................................................28, 29

*In re French*,
   440 F.3d 145 (4th Cir. 2006) .............................................................10

*In re Garlock Sealing Techs. LLC*,
   No. 17-cv-00275, 2017 WL 2539412 (W.D.N.C. June 12, 2017) ..............13, 14

*Georgine v. Amchem Prods., Inc.*,
   83 F.3d 610 (3d Cir. 1996) ................................................................19

*Gold v. Johns-Manville Sales Corp.*,
   723 F.2d 1068 (3d Cir. 1983) ............................................................26

*Hedges v. Dixon Cnty.*,
   150 U.S. 182 (1893)............................................................................8

*Ingham v. Johnson & Johnson*,
   608 S.W.3d 663 (Mo. Ct. App. 2020) ................................................20

*In re Integrated Telecom Express, Inc.*,
   384 F.3d 108 (3d Cir. 2004) .........................................................*passim*

iii

*Johnson & Johnson v. Aetna Cas. and Sur. Co.*,
  285 N.J. Super. 575 (App. Div. 1995) .................................................29

*In re Johnson & Johnson Talcum Powder Prod. Mktg. Litig.*,
  509 F. Supp. 3d 116 (D.N.J. 2020) ....................................................20

*In re Little Creek Dev. Co.*,
  779 F.2d 1068 (5th Cir. 1986) ............................................................12

*Mahoney v. U.S. Fid. & Guar. Co.*,
  269 A.2d 235 (Del. 1970) .....................................................................7

*McCartney v. Integra Nat'l Bank North*,
  106 F.3d 506 (3d Cir. 1997) ..........................................................25, 26

*In re Mushroom Transp. Co.*,
  382 F.3d 325 (3d Cir. 2004) .................................................................5

*Newsom v. Gallacher*,
  722 F.3d 1257 (10th Cir. 2013) ............................................................6

*Pepper v. Litton*,
  308 U.S. 295 (1939).............................................................................7

*Printz v. United States*,
  521 U.S. 898 (1997)...........................................................................13

*In re Purdue Pharma L.P.*,
  619 B.R. 38 (S.D.N.Y. 2020) .............................................................28

*In re Quigley Co.*,
  437 B.R. 102 (Bankr. S.D.N.Y. 2010)...........................................13, 14

*In re Rent-A-Wreck of Am., Inc.*,
  580 B.R. 364 (Bankr. D. Del. 2018)....................................................12

*Schnell v. Chris-Craft Indus., Inc.*,
  285 A.2d 437 (Del. 1971) .....................................................................7

*In re SGL Carbon Corp.*,
  200 F.3d 154 (3d Cir. 1999) ........................................................*passim*

*In re SGL Carbon Corp.*,
  233 B.R. 285 (Bankr. D. Del. 1999) ...............................................16

*Stoe v. Flaherty*,
  436 F.3d 209 (3d Cir. 2006) ...........................................................24

*Straton v. New*,
  283 U.S. 318 (1931) ..........................................................................4

*Tiobb v. Radloff*,
  501 U.S. 157 (1991) ........................................................................12

*In re Trident Assocs. Ltd. P'ship*,
  52 F.3d 127 (6th Cir. 1995) ............................................................12

*In re United Air Lines, Inc.*,
  438 F.3d 720 (7th Cir. 2006) ...........................................................3

*In re W.R. Grace & Co.*,
  591 F.3d 164 (3d Cir. 2009) .......................................................*passim*

## CONSTITUTIONAL PROVISIONS AND STATUTES

U.S. Const., amend. VII .......................................................................20

11 U.S.C. § 105 ....................................................................................28

11 U.S.C. § 105(a) ............................................................................2, 25

11 U.S.C. § 109 ....................................................................................12

11 U.S.C. § 157(a) ...............................................................................24

11 U.S.C. § 362(a) ...............................................................2, 23, 24, 25

11 U.S.C. § 521 ......................................................................................4

11 U.S.C. § 521(a)(1)(B)(i) ........................................................9

11 U.S.C. § 524(g) ...........................................................6, 21, 22

11 U.S.C. § 524(g)(2)(B)(i)(II) ..................................................6

11 U.S.C. § 541(a) .....................................................................10

11 U.S.C. § 1112(b) ...................................................................12

28 U.S.C. §1334(b) .............................................................24, 28

## TREATISES

2 L. King, *Collier on Bankruptcy* ...........................................3

## LEGISLATIVE MATERIALS

140 Cong. Rec. S4521-01 (Apr. 20, 1994) (Sen. Heflin) ...........6

H.R. Rep. 103-835, 1994 U.S.C.C.A.N. 3340..........................22

Testimony of Hon. Judith Fitzgerald (Feb. 8, 2022),
    http://www.whitehouse.senate.gov/imo/media/doc/Fitzgerald%20
    Testimony.pdf ...................................................................13

## OTHER AUTHORITIES

Appellee Brief, *In re Integrated Telecom Express, Inc.*, No. 04-2411,
    2004 WL 5020971 (3d Cir. July 7, 2004)............................16

Order Confirming Plan of Reorganization, *In re Quigley Co.*,
    No. 04-15739, ECF.2670 (Bankr. E.D.N.Y. July 2, 2013) ...............14

Order Confirming the Third Amended Plan of Reorganization, *In re
    Paddock Enters. LLC*, No. 20-10028, ECF.1406 (Bankr. D. Del.
    May 26, 2022)...................................................................13

Order Denying Plaintiff's Motion for Preliminary Injunction, *In re Aearo Techs.*, No. 22-50059, ECF.143, (Bankr. S.D. Ind. Aug. 26, 2022) ..................................................................23, 25, 29, 30

Order Granting in Part and Denying in Part Plaintiff's Motion for Preliminary Injunction, *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19-md-2885, ECF.3389 (N.D. Fla. Aug. 16, 2022) .............................................................................................19

Transcript, *In re Imerys Talc America, Inc.*, No. 19-10289, ECF.5031 (Bankr. D. Del. Aug. 30, 2022)................................25

# INTRODUCTION

LTL's response confirms that its bankruptcy petition is designed to evade not just the tort system but bankruptcy's requirements as well. LTL urges that talc-claim liability threatened ***Old JJCI's*** financial stability. But ***Old JJCI*** did not file for bankruptcy. ***LTL***, a made-for-bankruptcy shell, did. LTL concededly was created and property was shuffled around on the eve of bankruptcy—with talc liabilities assigned to LTL and operating businesses going elsewhere—to afford J&J and Old JJCI the benefits of bankruptcy while evading its requirements. If supposedly distressed Old JJCI had declared bankruptcy, the bankruptcy court would have had authority over its businesses and assets. Because those were moved to New JJCI, that control is gone. Had Old JJCI declared bankruptcy, priority rules would have precluded its assets from being used to pay shareholders before talc victims. But now, equity-holders can profit while talc claimants are mired in bankruptcy. LTL admits that such evasion was the "goal." LTL.Br.20. Old JJCI sought to "resolve talc-related claims" in bankruptcy, "without subjecting the entire [ ]JJCI enterprise to a bankruptcy proceeding." *Id.*

The good-faith requirement prohibits precisely that—using Chapter 11 to "cleanse" companies of "liability without enduring the rigors of bankruptcy." *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 237 (3d Cir. 2004). If "Old JJCI's assets . . . could not cover" talc liabilities, as LTL insists, LTL.Br.27, the evaded Code

provisions are especially critical. But New JJCI—concededly "identical [to Old JJCI] except for it no longer [has] the talc liabilities," App.2481 (Kim)—operates free of those requirements.

The bankruptcy has no valid reorganizational purpose. LTL has no operations and no reason to emerge from bankruptcy. It filed to benefit non-debtors—J&J and New JJCI—by enjoining litigation against ***them***, a design contrary to good faith. The bankruptcy court independently erred by indulging that effort, enjoining nearly 40,000 suits against hundreds of non-debtors, while talc victims die daily. The eleventh-hour assignments and indemnification agreements that accompanied LTL's formation cannot manufacture bankruptcy jurisdiction over those actions against non-debtors. Neither § 362(a), § 105(a), nor precedent can support the injunction.

While purporting to describe "the facts as the Bankruptcy Court found them," LTL asserts that "Johnson's Baby Powder never contained asbestos," talc claims "rest on faulty science," and adverse verdicts are the product of a litigation lottery. LTL.Br.1. That narrative is not merely false—courts now uniformly reject it—but reveals J&J's real intent: to attack the tort system and justify resort to a bankruptcy forum it thinks more advantageous. That is not a good-faith reorganizational purpose. Nor is LTL's policy argument that claims can be resolved more cheaply in bankruptcy. Both are invitations to reshape bankruptcy into a mechanism for solvent

2

and highly profitable companies like J&J to shed tort liabilities without undertaking the duties and obligations attendant to filing for bankruptcy themselves.  This Court should decline that invitation.

## **ARGUMENT**

### I.    THE BANKRUPTCY COURT ERRED IN DENYING APPELLANTS' MOTION TO DISMISS

#### A.    The Petition Seeks To Evade Bankruptcy-Code Requirements

LTL nowhere disputes that the good-faith standard requires debtors to "act in conformity with the Code's underlying principles."  *In re SGL Carbon Corp.*, 200 F.3d 154, 161 (3d Cir. 1999); *see* TCC.Br.31-32.  Petitions thus must in "good faith . . . reflect the intended policies of the Code."  2 L. King, *Collier on Bankruptcy* §301.05[1].  Courts routinely reject strategies that would "circumvent the Code's procedural safeguards," *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 986 (2017), "step outside" its "'equitable limitations,'" *In re 15375 Mem'l Corp. v. BEPCO L.P.*, 589 F.3d 605, 618 n.8 (3d Cir. 2009), or "manipulate the system to avoid the consequences of controlling [statutory] requirements," *In re United Air Lines, Inc.*, 438 F.3d 720, 733 (7th Cir. 2006).

LTL likewise does not dispute that its bankruptcy was engineered to circumvent bankruptcy requirements.  LTL insists bankruptcy was proper because "*Old JJCI's* assets were not sufficient" to cover threatened talc liabilities.  LTL.Br.38

3

(emphasis added); *see id.* at 17, 27, 35, 50. Even if that were true, *but see* TCC.Br.39-42; A&I.Reply.Br.10-19, **Old JJCI** did not file for bankruptcy. Days before this bankruptcy filing, Old JJCI's productive assets were transferred to New JJCI, while talc liabilities were segregated into newly formed LTL. LTL agrees that the goal of those transfers was to put "talc-related claims through a chapter 11 reorganization without subjecting the entire [ ]JJCI enterprise to a bankruptcy proceeding." LTL.Br.20 (quoting App.450). Wholly apart from whether Old JJCI faced financial distress, that circumvention of the Code's carefully crafted protections renders any assertion of good faith unsustainable.

<u>Court control</u>. Bankruptcy petitioners must "plac[e] [their] property . . . , wherever found, under the control of the court," *Straton v. New*, 283 U.S. 318, 320 (1931), and subject themselves to transparency requirements, 11 U.S.C. § 521. *See* TCC.Br.32; Trustee.Br.17-18. Even as it invokes Old JJCI's supposed distress to justify bankruptcy, LTL.Br.35, LTL admits the goal was to shield Old JJCI's property from bankruptcy requirements—to shed talc liabilities "without subjecting the rest of the assets of JJCI to the bankruptcy procedure," App.2481 (201:12-15); *see* LTL.Br.20. The eleventh-hour restructuring does not merely seek to shield **Old JJCI's** assets and operations. It seeks to freeze and extinguish **J&J's own** independent talc liabilities without subjecting J&J to bankruptcy.

Priority rules.  LTL does not mention the Code's priority rules, including the "fundamental" command that equity "receive nothing until all . . . creditors have been paid in full."  *Jevic*, 137 S. Ct. at 979; *see* TCC.Br.33-34; Trustee.Br.19.  Because Old JJCI's operating assets were transferred to New JJCI, revenues from those assets can now be used to reward New JJCI's equity holder, J&J, while rapidly failing talc claimants languish uncompensated.  Indeed, LTL proposes that result while arguing that assets are so limited that "[f]uture claimants could be shut out entirely."  LTL.Br.2, 5.  The eleventh-hour asset-shuffling also upended priority among creditors.  Old JJCI's trade and other creditors are paid as a matter of course through New JJCI, while talc claimants are singled out.  TCC.Br.34.  LTL embraces that discrimination as beneficial, LTL.Br.54-55, but the Code precludes debtors from self-selecting favored creditors, *Jevic*, 137 S. Ct. at 979.

Fiduciary responsibility.  LTL says nothing about the bankruptcy court's § 363 power over non-routine "use, sale, or lease" of property to ensure such transactions benefit creditors.  TCC.Br.32.  If Old JJCI were in bankruptcy, talc claimants could object to such transactions.  Debtor-in-possession management would have a "trustee's" "fiduciary duty . . . 'to protect and conserve property in its possession for the benefit of ***creditors***.' "  *In re Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir. 2004) (emphasis added).  But New JJCI's management—holding Old JJCI's

business assets—has no such obligation. Quite the opposite: It must use those assets to "maximize the ***parent's*** [J&J's] value." *Newsom v. Gallacher*, 722 F.3d 1257, 1266 (10th Cir. 2013) (citing *Anadarko Petroleum Corp. v. Panhandle E. Corp.*, 545 A.2d 1171, 1174 (Del. 1988)) (emphasis added).

Section 524(g). LTL's emphasis on § 524(g), LTL.Br.9-11, 39, 71-72, underscores the evasion. Section 524(g)(2)(B)(i)(II) requires trusts to be funded with "securities of the [debtor]," including rights to "dividends." "In essence, the reorganized company becomes the goose that lays the golden egg by remaining a viable operation and maximizing the trust's assets to pay claims." *Combustion Eng'g*, 391 F.3d at 248 (citing 140 Cong. Rec. S4521-01, S4523 (Apr. 20, 1994) (Sen. Heflin)). Had Old JJCI entered bankruptcy, any trust would have been funded with securities of JJCI—an actual, productive goose. By making LTL the debtor, J&J swaps in a different goose—one incapable of producing eggs, that at most can assert contractual rights against another goose outside bankruptcy.

Bankruptcy's calibrated balance. The result upsets the Code's balance. *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 119 (3d Cir. 2004). The Code gives debtors incentives to emerge from bankruptcy swiftly to regain control over operations. LTL, conceived for bankruptcy, has no such incentive. Meanwhile, New JJCI—holding Old JJCI's businesses—operates freely outside bankruptcy.

TCC.Br.34.  LTL creates an illusion of progress by noting the bankruptcy court's appointment of an estimation expert, LTL.Br.56, but omits that ***LTL*** proposed to mire parties in a years-long process, Bankr.ECF.2473, at 12-13.  It also overlooks the bankruptcy court's observation that settlement efforts are at an "impasse." Bankr.ECF.2796, at 22.

\* \* \* \* \*

J&J and its affiliates seek what the good-faith requirement proscribes—"to cleanse themselves" of unwanted "liability without enduring the rigors of bank-ruptcy." *Combustion Eng'g*, 391 F.3d at 237.  Debtors have no authority to self-exempt assets and operations from bankruptcy requirements.  They cannot achieve the same result—giving the bankruptcy court only so much authority as they choose—through night-before transactions.  With "strong roots in equity," *SGL*, 200 F.3d at 161, the good-faith requirement embodies notions of "fair play" that prohibit "doing indirectly through [a] corporation what [one] cannot do directly," *Pepper v. Litton*, 308 U.S. 295, 311 (1939); *Mahoney v. U.S. Fid. & Guar. Co.*, 269 A.2d 235, 237 (Del. 1970).  "[I]nequitable action does not become permissible simply because it is legally possible." *Schnell v. Chris-Craft Indus., Inc.*, 285 A.2d 437, 439 (Del. 1971).  The good-faith requirement does not permit artificial machinations to evade bankruptcy-law requirements.

Despite LTL's efforts to downplay the decision below as fact-bound, LTL.Br.26, the relevant *facts* are undisputed: Talc liabilities were dumped into LTL, and assets were transferred to New JJCI, to enable J&J and affiliates to obtain bankruptcy's benefits without enduring its rigors. The question is "whether [those] facts . . . support the conclusion of good faith." *BEPCO*, 589 F.3d at 616. That question "is subject to plenary review because it is, essentially, a conclusion of law." *Id.* The conceded evasion of Code obligations here forecloses good faith.

## B.    LTL's Rationalizations Lack Merit

Far from disputing the efforts to evade bankruptcy requirements, LTL touts them.

1.    "[P]utting Old JJCI into bankruptcy," LTL declares, "would be a net negative." LTL.Br.62. This Court and the Supreme Court have rejected such rationales: "[C]ourts cannot deviate from the procedures 'specified by the Code,' even when they sincerely 'believ[e] that . . . creditors would be better off.'" *Jevic*, 137 S. Ct. at 987; *see* TCC.Br.37-38. And "equity follows the law." *Hedges v. Dixon Cnty.*, 150 U.S. 182, 192 (1893). The equitable good-faith obligation to "act in conformity with the Code's underlying principles," *SGL*, 200 F.3d at 161, would mean little if parties could evade bankruptcy requirements by using night-before transfers to fashion alternative systems of their own creation.

LTL speculates that bankruptcy would impose "costs and risks" on Old JJCI's "employees, suppliers, [and] distributors." LTL.Br.24. But any such risks resulted from Old JJCI's ***putative financial distress***, apart from bankruptcy. Chapter 11 ***preserves*** value, allowing debtors to keep valuable contracts, prioritize post-petition payments necessary to maintain operations, etc. *See In re Capitol Food Corp. of Fields Corner*, 490 F.3d 21, 26 (1st Cir. 2007). LTL would authorize debtors to self-select favored creditors and render those systems superfluous.

2.     Alternatively, LTL points to the Funding Agreement, insisting that the restructuring "did not separate Claimants from any value." LTL.Br.59-61. The Code does not allow debtors to substitute a contract for judicial oversight, priority rules, or other Code requirements.

LTL's insistence that the Funding Agreement affords it "the same . . . asset value as Old JJCI," LTL.Br.35, 41, is faulty. Old JJCI's inventory, buildings, intellectual property, and businesses are different from a contractual promise. *See* 11 U.S.C. § 548(d)(2)(A) (distinguishing "property" from "unperformed promise to furnish support to the debtor"). Any funding under the agreement, moreover, is subject to defenses and conditions. App.4320 (obligation "subject to the satisfaction" of "representations and warranties" and "covenant[s]"). If supposedly distressed Old JJCI had declared bankruptcy, its "assets," 11 U.S.C. § 521(a)(1)(B)(i), and

"property," *id.* §541(a), would be property of the estate. Now, they are outside bankruptcy, and returns can go to shareholders while talc claimants remain unpaid.

LTL's assertion that "Old JJCI's assets"—their ***value***—"could not cover [talc] liability," LTL.Br.27, makes the difference stark. If New JJCI's management—freed from fiduciary duties to creditors—encumbers assets or takes risks that leave it unable to pay, LTL would be an unsecured creditor. Had Old JJCI filed for bankruptcy, its management would owe creditors enforceable fiduciary duties. Talc claimants would have a lien on property, not claims against an entity with merely unsecured and conditional funding claims itself. TCC.Br.54.

LTL responds that "New JJCI and J&J . . . have submitted themselves [to] Bankruptcy Court jurisdiction." LTL.Br.62. But they merely agreed to "submit to the jurisdiction of [bankruptcy] courts" as parties to the Funding Agreement, and subject to its limitations. App.4325 (Funding Agreement). That is miles from submitting debtor ***property*** to court control and adhering to priority rules and fiduciary obligations.

The "prejudice" is self-evident. LTL.Br.61. Had Old JJCI filed for bankruptcy, the Code would "protect creditors by preserving the bankruptcy estate against illegitimate depletions," *In re French*, 440 F.3d 145, 154 (4th Cir. 2006), inversion of priority rules, and departure from fiduciary duties to creditors. *See* pp.

4-7, *supra*.   Courts could supervise whether new business opportunities were properly assigned to JJCI or other divisions.   But New JJCI operates free of those, and can distribute proceeds to equity-holder J&J, while talc claimants die uncompensated.   TCC.Br.33-34; *see* pp. 4-5, *supra*.   New JJCI's management can seek to ***maximize*** returns to J&J, and ***minimize*** obligations to LTL (and thus talc claimants)—the opposite of what would prevail in a bankruptcy of Old JJCI.   *See* pp. 5-6, *supra*.

LTL also ignores "procedural rights."   *In re Am. Cap. Equip., LLC*, 688 F.3d 145, 159 (3d Cir. 2012).   Had Old JJCI filed for bankruptcy, talc claimants could protect their interests by, for example, objecting to CEO compensation, or potential "spin out" transactions of lucrative consumer brands.   *See* pp. 5-6, *supra*.   They have been stripped of those rights too.

LTL invokes TCC's statements about Old JJCI's financial strength, arguing that New JJCI can perform under the Funding Agreement.   LTL.Br.61.   But the bankruptcy court insisted that talc liabilities exceed Old JJCI's assets, App.26 (MTD Op.), and that "all J&J entities" were "imperiled," App.36 (MTD Op.), a theory LTL vigorously presses here.   LTL cannot have it both ways.   If those assertions are false, the bankruptcy is illegitimate.   If true, New JJCI may lack sufficient assets to pay all

11

talc liabilities. That makes court supervision imperative, not a technicality to be evaded at debtor option.

3.    LTL's sole *legal* authority is 11 U.S.C. § 109, LTL.Br.62-63, which lists categories of entities that "may" file under various Code provisions. But § 109 does not overturn § 1112(b)'s authority to dismiss for "cause." *SGL*, 200 F.3d at 160. Section 109 nowhere says "courts may not impose a good faith requirement" on otherwise eligible debtors. *In re Trident Assocs. Ltd. P'ship*, 52 F.3d 127, 130 (6th Cir. 1995). Courts agree that equitable considerations, such as the debtor having few assets or no "ongoing business or employees," and the timing of the debtor's "creat[ion]," are relevant to "good faith." *Id.* at 131-32 (discussing "new debtor syndrome"); *see In re Little Creek Dev. Co.*, 779 F.2d 1068, 1073 (5th Cir. 1986) (same); *In re Rent-a-Wreck of Am., Inc.*, 580 B.R. 364, 386 & n.153 (Bankr. D. Del. 2018) ("new-debtor syndrome" and "special purpose entities" indicia of bad faith). For those reasons, *Tiobb v. Radloff*, 501 U.S. 157 (1991), is irrelevant. Courts cannot engraft additional eligibility requirements onto § 109 (*e.g.*, requiring individuals be engaged in business). *Id.* at 161. But *Tiobb*'s holding about that "very specific statutory language" does not eliminate the equitable "good faith" requirement on eligible debtors. *In re Trident*, 52 F.3d at 130.

4.    LTL tries to normalize its strategy by pointing to a few lower court cases. But those efforts *are* unprecedented. *See* TCC.Br.36-37. In former Bankruptcy Judge Fitzgerald's words, "LTL's bankruptcy is not like other mass tort bankruptcies."[1] LTL identifies no case addressing a structure like LTL's during the first *two centuries* of U.S. bankruptcy law (even though use of subsidiaries to hold assets and liabilities is nothing new). "[T]wo centuries of . . . avoidance of [a] practice . . . tends to negate the existence of the . . . power asserted." *Printz v. United States*, 521 U.S. 898, 918 (1997).

LTL's few cases are inapposite. LTL.Br.63-65. Most never address the issue.[2] Only two involved specially-for-bankruptcy debtors that, like LTL, lacked any operating business.[3] One, *In re Quigley Co.*, 437 B.R. 102 (Bankr. S.D.N.Y.

---

[1] Testimony of Hon. Judith Fitzgerald at 8 (Feb. 8, 2022), https://www.whitehouse.senate.gov/imo/media/doc/Fitzgerald%20Testimony.pdf.

[2] LTL concedes that, in the first two cases, creditors "supported" and "jointly proposed" the plan, LTL.Br.63-64, and the issue thus was not raised. *In re DBMP LLC*, No. 20-30080, 2021 WL 3552350, at *23 (Bankr. W.D.N.C. Aug. 11, 2021), deferred the issue. And in *In re Aldrich Pump LLC*, No. 20-30608 (JCW), 2021 WL 3729335, at *26 (Bankr. W.D.N.C. Aug. 23, 2021), there was no motion to dismiss and good faith was "not presently before [the] Court."

[3] *See In re Garlock Sealing Techs. LLC*, No. 17-cv-00275, 2017 WL 2539412, at *7 (W.D.N.C. June 12, 2017) (**post-petition** restructuring); *In re Paddock Enters. LLC*, No. 20-10028, ECF.1406, at 32 (Bankr. D. Del. May 26, 2022) (debtor had operating subsidiary); *In re Bestwall LLC*, 605 B.R. 43, 47 (Bankr. W.D.N.C. 2019) (debtor had "assets related to . . . Old Bestwall business"); *In re DBMP LLC*, 2021 WL 3552350, at *9-*11 (debtor owned operating business).

13

2010) (cited LTL.Br.64), ***rejected*** the proposed plan for "lack of good faith." *Id.* at 126. The court observed that Pfizer had "resuscitated" a "moribund" entity, Quigley, to serve as nominal debtor, and "this is a Quigley bankruptcy in name only." *Id.* It faulted Pfizer's "wrongful[] manipulat[ion]" to "gain the benefit of the channeling injunction for itself and the other Pfizer Protected Parties." *Id.* The decision approving a later plan that LTL cites (at 65) does not address the issue. *In re Quigley Co.*, No. 04-15739, ECF.2670, at 20 (Bankr. E.D.N.Y. July 2, 2013). The other case, *In re Aldrich Pump LLC*, expressed "concerns about the propriety" of the "unorthodox transactions with no apparent business purpose," but determined good faith was not properly before the court. No. 20-30608, 2021 WL 3729335, at *16, *26, *38 (Bankr. W.D.N.C. Aug. 23, 2021).

The two-step bankruptcies LTL cites—*DBMP*, *Bestwall*, and *Aldrich Pump* (all filed by the same debtor's counsel as LTL's)—are cautionary tales. All have languished in bankruptcy for years, and no claims have been resolved. All original creditor-committee members in *Bestwall* have died. Those cases starkly illustrate the risks of departing from the Code's structure and requirements.

This case will set precedent. If ***this Court*** upholds the machinations here, identical two-step bankruptcies—isolating liabilities and sending them into bankruptcy on their own—will become the norm.

14

### C.    LTL's Lack of Reorganizational Purpose and Effort To Achieve Improper Advantage Compel Dismissal

LTL agrees dismissal is appropriate where debtors lack a "'valid bankruptcy purpose'" or seek "'to obtain a tactical litigation advantage.'" LTL.Br.33-34 (quoting *Integrated Telecom*, 384 F.3d at 119-21). Seeking benefits for a ***third party*** is the opposite of a valid bankruptcy purpose. *BEPCO*, 589 F.3d at 624. So is seeking a more favored forum for resolving disputes or obtaining particular bankruptcy remedies. *Id.* at 620.

### 1.    Reorganizational Purpose

Good faith requires "'some relation' between the filing and the 'reorganization-related purposes that [Chapter 11] was designed to serve.'" *SGL*, 200 F.3d at 165; *see* Trustee.Br.13-14. LTL admits it has no "going concerns to preserve—no employees, offices, or business other than the handling of litigation." *BEPCO*, 589 F.3d at 619; *see* LTL.Br.51-52. It is a shell with nothing to reorganize. No operating business will emerge. LTL is a vehicle so J&J and New JJCI can benefit from bankruptcy. TCC.Br.21-31; Trustee.Br.13-17. That forecloses good faith.

LTL insists that it has a valid reorganizational purpose because litigating claims in bankruptcy will be more efficient, LTL.Br.52-54, and will provide a convenient forum for "negotiat[ing] a global resolution," LTL.Br.53. But that does not help ***LTL*** reorganize; it has no operations to preserve outside bankruptcy. And LTL

15

dodges precedent rejecting those justifications. TCC.Br.23-24. Its attempt to distinguish *BEPCO*, LTL.Br.69, overlooks that *BEPCO* involved identical rationalizations, TCC.Br.23-24. The debtors there urged that bankruptcy would "efficiently and cost effectively resolve and liquidate . . . pending and future claims," and that was a "valid bankruptcy purpose." TCC.Br.23. The bankruptcy court found bankruptcy would be "the most efficient way to resolve" claims. 382 B.R. 652, 686 (Bankr. D. Del. 2008). This Court rejected that rationale: "Creation of a central forum to adjudicate claims against the Debtors is not enough to satisfy the good faith inquiry." 589 F.3d at 622.

LTL does not address *Integrated Telecom*'s rejection of the argument that avoiding "costs and delay inherent in litigation," Appellee.Br.2, No. 04-2411, 2004 WL 5020971 (3d Cir. July 7, 2004), is not a valid bankruptcy purpose, 384 F.3d at 120. TCC.Br.23. Nor does it address *SGL*, which rejected the theory that "speedy and efficient resolution of pending litigation," 233 B.R. at 290-91, and overcoming "difficulties [debtor] was having in reaching a settlement," were valid bankruptcy purposes, 200 F.3d at 167. In both *Integrated Telecom* and *SGL* this Court found those supposed features to signal impermissible attempts to gain tactical advantage. 200 F.3d at 167; 384 F.3d at 120.

16

This Court has made clear that some larger "rehabilitative purpose" is required to fulfill Chapter 11's "reorganization objective." *Integrated Telecom*, 384 F.3d at 119.  LTL identifies none.  LTL's platitudes about bankruptcy "maximiz[ing]" asset value, LTL.Br.51-54, just restate LTL's belief that it can dispose of talc claims more cheaply in bankruptcy.

### 2.    Improper Litigation Advantage

This proceeding is "primarily concerned with protecting" third parties J&J and New JJCI, and "not the Debtor[]" LTL—another hallmark of bad faith.  *BEPCO*, 589 F.3d at 624; *see* TCC.Br.25-26.  LTL scarcely disputes that J&J engineered the "single, integrated" set of transactions here, LTL.Br.3, to "cap[]" its own "talc liability" while "avoiding impact on [its] credit rating," App.4469 (J&J email); *see* TCC.Br.25-26.  LTL concedes that its board and management are former and current J&J employees compensated by J&J.  App.3013 (97:9-11); App.3484-3485 (90:17-93:3).  LTL's contention that "the bankruptcy could not achieve its purpose" unless ***J&J*** and other ***non-debtors*** obtain relief, LTL.Br.7, concedes the goal—to benefit them, not LTL.

Nor is it disputed that LTL's board and officers voted to declare bankruptcy with minimal preparation.  TCC.Br.11-12.  LTL quibbles about the extent of briefings or self-education efforts in the hours between the board's first meeting and the

17

vote to declare bankruptcy a day later.  LTL.Br.48.  The only items identified by its witness (LTL's president), however, were "the first day declaration, [and] the information brief" LTL filed in the bankruptcy.  App.2172(181:6-9) (Wuesthoff).  LTL identifies no evidence its officers had an estimate of the extent of talc liability, of any available insurance, or the value of the Funding Agreement.  TCC.Br.25-26.

LTL ignores that its value was *diminished* by filing bankruptcy:  It is undisputed that, once bankruptcy was filed, the Funding Agreement became unavailable to satisfy claims until *after* a plan is approved.  TCC.Br.21-22.  LTL never suggests it considered that fact when filing.  *Id.*  LTL nowhere explains how a bankruptcy engineered by a corporate parent—to obtain bankruptcy's benefits for the parent without subjecting the parent to Code requirements, *see* pp. 3-8, *supra*—can constitute good faith.

LTL's assertion that this case resembles "any bankruptcy filed to resolve litigation liabilities," LTL.Br.67, blinks reality.  Not every bankruptcy involves a non-debtor creating a shell company, orchestrating that shell's bankruptcy to cap its potential liability, and reaping the benefit of a stay of litigation against it.  That is anything but routine.

### 3.    The Bankruptcy Court's Policy Judgments

LTL's brief reads like a whitepaper on tort reform.  Its theory of "good faith" rests on the "policy judgment[ ]" that bankruptcy handles cases like these better than tort.  LTL.Br.68.  But the innovation LTL seeks—turning bankruptcy into an alternative to traditional mechanisms—is for Congress, not the courts.  *Amchem Prods. v. Windsor*, 521 U.S. 591, 598 (1997); *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 634 (3d Cir. 1996); *Combustion Eng'g*, 391 F.3d at 598.  And LTL accords no value to federalism and other constitutional principles.

LTL's tall tale about J&J's innocence and a wayward MDL system lay bare the true motive—to **attack** the tort system and to **relitigate** J&J's culpability.  As one MDL judge explained in response to similar efforts, "unabashed" attacks on "the MDL system, [prior] legal rulings, and multiple jury verdicts" are not a proper "justification" for bankruptcy.  *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19-md-2885, ECF.3389, at 4-5 (N.D. Fla. Aug. 16, 2022).  Such efforts threaten to "deprive[ ]" injured claimants "of their constitutional right to a jury trial" against "a fully solvent and highly profitable Fortune 500 Company that will never file a bankruptcy petition itself." *Id.* at 4.  Those concerns apply with particular force here.  TCC.Br.36-37.

LTL's narrative is also unfounded. LTL says there was no asbestos in J&J talc products. LTL.Br.14-15. In each state or federal case where J&J presented that defense, the contrary evidence was found admissible. *See, e.g.*, *In re Johnson & Johnson Talcum Powder Prod. Mktg., Litig.*, 509 F. Supp. 3d 116, 147 (D.N.J. 2020) (MDL court); *see also* A&I.Br.9-10; App.1584-1586 (discussing dozens of studies, and findings by U.S. and Canadian regulators). The evidence amply supported multiple jury verdicts against both JJCI and J&J. *See, e.g.*, *Ingham v. Johnson & Johnson*, 608 S.W.3d 663 (Mo. Ct. App. 2020). J&J may disagree, but bankruptcy is not a forum to relitigate those issues.

LTL denigrates tort cases as a "lottery" where a few plaintiffs get "lucky," LTL.Br.56, but ignores that different cases have different facts. Some plaintiffs win, for example, because they have better proof that talc exposure caused their injuries. LTL's view that juries should not be allowed to make case-specific determinations is for Congress—and potentially a Constitutional amendment, *see* U.S. Const. amend. VII; Cherminsky.Br.13-21—not for courts.

LTL's assertion that bankruptcy will provide relief to talc claimants without the "delays" of tort suits is far-fetched. LTL.Br.55-57. The tort system resolves thousands of product liability claims annually. TCC.Br.29. MDLs resolved nearly 14,000 cases in 2019. App.1942 (Law Professors' Brief). MDL-875 has resolved

over 186,000 latent-injury asbestos cases since 2006 without a global settlement. TCC.Br.29. J&J resolved some 7,000 talc claims before LTL's bankruptcy. App.4548 (J&J discovery response).

Since this bankruptcy was filed, however, LTL has resolved *no* talc claims. At least one claimant has died every day since filing. TCC.Br.45. In the two-step proceedings cited by LTL, LTL.Br.65, no claimants have been paid since the first case was filed nearly five years ago. Every member of the initial *Bestwall* creditors' committee has died. TCC.Br.60. That delay is by design—made-for-bankruptcy entities with no business operations, like LTL, have no incentive to emerge as reorganized businesses. TCC.Br.34. LTL's supposed efficiencies have proven to be a mirage.

Any debate, however, is beside the point. Chapter 11 has a specific purpose. That purpose is not an alternative claims mechanism for companies that feel "failed" by the tort system. App.7115 (J&J treasurer).

### 4. LTL's Supposed Desire To Invoke §524(g)

LTL argues that, in the "asbestos context specifically," a debtor's desire to invoke §524(g)—ostensibly to provide "equitable treatment" among present and future claimants—is a valid reorganizational purpose. LTL.Br.57. It is hard to credit that putative desire to treat talc claimants equitably when LTL simultaneously argues

they should get nothing because it did nothing wrong.  A "desire to take advantage of a particular provision in the Bankruptcy Code" is not sufficient regardless.  *Integrated Telecom*, 384 F.3d at 127.  "Given the truism that every bankruptcy petition seeks some advantage offered in the Code, any other rule would eviscerate any limitation that the good faith requirement places on Chapter 11 filings." *Id.* at 128.

LTL suggests that "Congress enacted" § 524(g) to create an alternative dispute resolution system for asbestos litigation.  LTL.Br.9-10.  It offers no supporting text or history.  Section 524(g) was intended to embody the "high standards" and "explicit requirements . . . met in the *Manville* case"—where (unlike LTL) the debtor was a named defendant in asbestos litigation and on the precipice of default and liquidation.  H.R. Rep. 103-835, 1994 U.S.C.C.A.N. 3340, 3349.  Despite relying on § 524(g) as a mechanism to protect "future claimants," LTL.Br.67, LTL refuses to address its own eligibility for that provision, LTL.Br.71 n.4; TCC.Br.30-31; Aylstock.Br.24-30.  LTL cannot meet its burden to prove good faith by invoking a statutory provision without deigning to discuss whether it is facially eligible for that provision's benefits.  And LTL's reliance on § 524(g) only underscores how the restructuring deprived talc creditors of the equity in a real company that § 524(g) would otherwise require.  *See* p. 6, *supra*.

## II.    THE BANKRUPTCY COURT ERRED IN FREEZING THOUSANDS OF ACTIONS AGAINST SOME 670 NON-DEBTORS

Although LTL alone filed for bankruptcy, the bankruptcy court froze nearly 40,000 talc-related actions against some 670 non-debtors.  The court acknowledged that its primary "basis for extending the stay to" non-debtors was "'allocation of agreements to the debtor on the eve of the bankruptcy filing for the very purpose of extending the stay.'"  App.159(PI Op.).  Precedent forecloses such efforts to fabricate "subject matter jurisdiction . . . by agreement."  *Combustion Eng'g*, 391 F.3d at 228.

LTL's view of § 362(a) sweeps away precedent.  Under LTL's theory, it could have assumed indemnity obligations for ***any other*** J&J product (or any company's) on the bankruptcy courthouse steps, and stay relief would follow.  That "write your own jurisdictional ticket" result defies *Combustion Engineering* and *W.R. Grace*.

Such injunctions are hardly "routine," LTL.Br.77, as *In re Aearo Technologies*' denial of stay relief illustrates, *see* No. 22-50059, ECF.143 (Bankr. S.D. Ind. Aug. 26, 2022).  LTL's contrary examples, LTL.Br.77, did not involve a parent like J&J that was not itself restructured and did not participate in the bankruptcy.  Other cases cited by LTL involved non-debtors with genuine pre-bankruptcy relationships. LTL.Br. 77, 91 & nn.7, 8.  The expansive injunction here is unprecedented.

### A.    The Bankruptcy Court Lacked Core Jurisdiction To Stay Actions Against Non-Debtors

Characterizing the relief here as an extension of § 362(a)'s automatic stay, LTL urges that such requests "always" trigger core jurisdiction because any right to § 362(a) stays arises under the Code.  LTL.Br.79.  That is doubly mistaken.  For core jurisdiction, the "cause of action" must "arise under" or "in" the Code.  *Stoe v. Flaherty*, 436 F.3d 209, 217 (3d Cir. 2006).  The lawsuits LTL seeks to freeze do not arise "in" or "under" the Code.  LTL's desire to reach them using § 362(a) cannot change that.  TCC.Br.46-48.

This Court rejected LTL's contrary argument in *W.R. Grace*.  If invoking § 362(a) converted actions against non-debtors into core proceedings, bankruptcy courts could "enjoin any action, no matter how unrelated to the underlying bankruptcy it may be, so long as the injunction motion was filed in the adversary proceeding."  591 F.3d 164, 174 (3d Cir. 2009).  The "debtor could create subject matter jurisdiction over any non-debtor third party."  *Combustion Eng'g*, 391 F.3d at 238.  *Celotex Corp. v. Edwards*, 514 U.S. 300 (1995), rejects LTL's theory, too.  The Supreme Court there looked to the "'arising under,' 'arising in,' or 'related to' language of §§ 1334(b) and 157(a)" to determine bankruptcy-court jurisdiction to enjoin proceedings in another district.  *Id.* at 307.  It upheld jurisdiction only because the proceedings were "related to" the bankruptcy.  *Id.* at 308-10.  That contravenes

LTL's view that merely requesting relief under § 362(a) creates "arising" in or under jurisdiction.

Regardless, § 362(a) limits relief to suits "against the debtor." TCC.Br.48-49. LTL concedes that textual limit, but invokes *McCartney v. Integra National Bank North*, 106 F.3d 506 (3d Cir. 1997). LTL.Br.79-80. In *McCartney*, the court excused failure to bring an otherwise mandatory suit because the plaintiff "would have been required" by state law "to name [the debtor] as a respondent" as a condition of suing third parties. 106 F.3d at 511-12. The potential suit *McCartney* discussed thus ***had to be against the debtor*** by virtue of state law. By contrast, the tort suits here are against joint tortfeasors and defendants (like J&J) with independent liability.

Moreover, *McCartney* addressed §§ 362(a) and 105(a) together, invoking § 105(a) cases—not § 362(a) cases—to justify "'extend[ing] the stay to nondebtor defendants.'" *McCartney*, 106 F.3d at 510 (quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1994)) (citing *In re Am. Film Techs., Inc.*, 175 B.R. 847 (Bankr. D. Del. 1994); *In re Family Health Servs., Inc.*, 105 B.R. 937 (Bankr. C.D. Cal. 1989)). Courts have rejected efforts to construe *McCartney* as extending ***§362(a)*** to non-debtors in contravention of its text. *See In re Imerys Talc Am., Inc.*, No. 19-10289, ECF.5031, at 13 (Bankr. D. Del.) ("*McCartney . . .* is consistent with

the view that the automatic stay . . . only applies to litigation against a debtor[.]");

*Aearo*, ECF.143, at 22.  Indeed, this Court has consistently resisted extending stay relief to non-debtors, *see Combustion Eng'g*, 391 F.3d at 227-33; TCC. Br.49-50—especially joint tortfeasors like J&J here, *see Gold v. Johns-Manville Sales Corp*., 723 F.2d 1068, 1076 (3d Cir. 1983); *W.R. Grace*, 591 F.3d at 172.

LTL's arguments fail even under its reading of *McCartney*.  *McCartney* stated that injunctive relief for non-debtors is available only "in 'unusual circumstances,'" where "'there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.'" 106 F.3d at 510.  *McCartney* nowhere suggested identity of interest can be contrived through eve-of-bankruptcy transactions.  *See id.* at 509.  And LTL's attempt to distinguish *W.R. Grace* and *Combustion Engineering*, LTL.Br.81-82, ignores those cases' key holdings—that parties cannot conspire to fabricate jurisdiction, as J&J and affiliates did here, TCC.Br.50-52.

Despite LTL's insistence that "claims against J&J are the same claims asserted against LTL," LTL.Br.82, J&J faces claims based on its ***independent*** tortious conduct with respect to safety testing and product marketing, TCC.Br.55. That contrasts with *In re Colonial Realty Co.*, 980 F.2d 125 (2d Cir. 1992),

LTL.Br.79, where "[a]bsent a claim against the debtor, there [wa]s no independent basis for the action against the [non-debtor]," 980 F.2d at 132. And LTL's effort to convert suits against J&J into LTL liabilities based on indemnification again invokes contrived agreements that cannot manufacture jurisdiction.[4]

As to supposedly "shared" insurance, LTL cannot provide the "extensive record findings" that *Combustion Engineering* requires. 191 F.3d at 232; TCC. Br.56-57.[5] It ignores the bankruptcy court's concession that "the record in the instant case is not as sufficiently developed with respect to the insurance policies as in some of the other cases that have extended the stay on this basis." App.184(PI Op.). Coverage is contested. More important, LTL does not deny that, given prior judgments **already paid by J&J**, any available coverage is already spoken for and unavailable to the estate. TCC.Br.56-57. LTL contends that only actual insurance payments count against policy limits. But the fact remains that, if insurers eventually

---

[4] LTL's reliance on **Old JJCI's** 1979 indemnification agreement, LTL.Br.49, 83, cannot overcome the fact that any LTL interest was allocated to it on the eve of bankruptcy. It also overlooks that the agreement was limited to liabilities "allocated on the books or records of J&J as pertaining to its BABY Division." App.164(PI Op.). There was no evidence that talc claims (which first arose in 1982) qualified. TCC.Br.53-54.

[5] Insurers have sought a declaration that they have no duty to defend or indemnify J&J/Old JJCI. App.462(Kim.Decl. ¶53).

pay, any money must go to *J&J* for claims already paid—leaving nothing for the estate.

### B.     The Bankruptcy Court Lacked Authority Under §105

1.     LTL concedes that §105 does not provide an independent source of subject-matter jurisdiction, requiring LTL to find "arising under," "arising in," or "related to" jurisdiction under 28 U.S.C. §1334(b). LTL.Br.89. But *W.R. Grace* and *Combustion Engineering* foreclose LTL's view that the bankruptcy court could have "arising in" or "arising under" jurisdiction to issue stay relief. *See* pp. 24-25, *supra.* LTL's own authority, *In re Purdue Pharma L.P.*, 619 B.R. 38, 56-57 (S.D.N.Y. 2020), rejects the argument that the bankruptcy court could assert "core" jurisdiction to justify §105 relief.

That leaves "related to" jurisdiction. Under *Combustion Engineering*, the "related to" test requires proof that the suit to be enjoined "would affect the bankruptcy without the intervention of another lawsuit." 391 F.3d at 227 (quoting *In re Federal-Mogul Glob.*, 300 F.3d 368, 382 (3d Cir. 2002)).[6] LTL must show that judgments against third parties would "automatically result[] in indemnification

_____

[6] This Court has declined to follow *In re Dow Corning Corp.*, 86 F.3d 482, 491 (6th Cir. 1996). *Combustion Eng'g*, 191 F.3d at 227.

liability against the debtor." *Id.* at 226.  LTL's contrived, eve-of-bankruptcy indemnifications are insufficient, as explained above.  *See* pp. 24-25, *supra*.

Moreover, as LTL concedes, "the Bankruptcy Court did not find that LTL would certainly face 'automatic indemnification obligations.'" LTL.Br.96.  LTL will not "be bound by any judgment against [a] third party" and will bear no liability absent an additional lawsuit by that third party against LTL.  *W.R. Grace*, 591 F.3d at 172.  Such a suit would confront multiple defenses, such as talc claims being outside the scope of the 1979 J&J/Old JJCI agreement, *see* TCC.Br.53; p. 27 n.4, *supra*, and public policy against indemnification of punitive damages, *Johnson & Johnson v. Aetna Cas. & Sur. Co.*, 285 N.J. Super. 575, 580-89 (App. Div. 1995).  TCC.Br.59.  The need for that separate lawsuit forecloses jurisdiction under *Federal-Mogul*.

2.      LTL concedes that § 105 relief requires evidence that suits against non-debtors "will undermine the debtor's reorganization." LTL.Br.88.  Here, the Funding Agreement prevents any such impact.  If J&J were to tender an adverse talc judgment to LTL based on indemnification, LTL would tender that liability back to J&J under the Funding Agreement.  TCC.Br.52.  That contrived, "circular agreement" cannot establish harm to the estate.  *Aearo*, No. 22-50059, ECF.143, at 31-32; *see* TCC.Br.52-53.  LTL asserts that the circular flow of funds reduces the total

amount available in bankruptcy, LTL.Br.85, but that assumes a limited-fund bankruptcy, which LTL insists this is not, LTL.Br.60.  And LTL repeats its contention that non-Funding-Agreement assets must be exhausted before J&J would pay claims, LTL.Br.85, but ignores that they are spoken for already, TCC. Br.52-53; *see Aearo*, No. 22-50059, ECF.143, at 31 (rejecting similar argument).

3.    The bankruptcy court repeatedly departed from the demanding standard required for the expansive relief it granted.  TCC.Br.58-61.  Inverting the burden of proof—and ignoring the clear-and-convincing standard—the bankruptcy court never found that LTL likely would face collateral estoppel, res judicata, or record taint regarding indemnity claims, App.176 (PI Op.); it failed to make the requisite findings that lawsuits against non-debtors would implicate shared insurance, App.183-84 (PI Op.); and it did not make findings regarding tender agreements for each retailer, App.173 (PI Op.).  LTL, moreover, admitted that plan confirmation is uncertain— the bankruptcy court called it "speculative."  App.186 (PI Op.).  Those errors independently require the PI Order to be vacated.

## CONCLUSION

This Court has warned that, because bankruptcy presents an inviting "safe harbor" to conclude vexing litigation, "this lure creates the possibility of abuse which must be guarded against to protect the integrity of the bankruptcy system and

the rights of all involved." *SGL*, 200 F.3d at 169.  The "significant departure" from Chapter 11's proper invocation here requires the Court to again protect that integrity and individual rights.  *Id.*  The bankruptcy court's decisions, denying dismissal and issuing the PI Order, should be reversed.

September 6, 2022                          Respectfully submitted,

                                          */s/ Angelo J. Genova*

MOLOLAMKEN LLP                            GENOVA BURNS LLC
Jeffrey A. Lamken                         Angelo J. Genova
600 New Hampshire Ave., N.W.              Daniel M. Stolz
Washington, DC 20037                      110 Allen Road, Suite 304
(202) 556-2010                            Basking Ridge, NJ 07920
                                          (973) 533-0777

BROWN RUDNICK LLP                         OTTERBOURG P.C.
David J. Molton                           Melanie L. Cyganowski
Michael S. Winograd                       Adam C. Silverstein
Robert J. Stark                           230 Park Avenue
7 Times Square                            New York, NY 10169
New York, NY 10036                        (212) 661-9100
(212) 209-4800

MASSEY & GAIL LLP                         BAILEY & GLASSER LLP
Jonathan S. Massey                        Brian A. Glasser
1000 Maine Ave., S.W., Suite 450          1055 Thomas Jefferson St., N.W.
Washington, DC 20024                      Washington, DC 20007
(202) 652-4511                            (202) 463-2101

PARKINS LEE & RUBIO LLP
Lenard M. Parkins
700 Milam St., Suite 1300
Houston, TX 77002
(713) 715-1666

*Counsel for Appellant Official Committee of Talc Claimants*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I certify that today, September 6, 2022, I electronically filed the foregoing Reply Brief with the Clerk of the Court for the U.S. Court of Appeals for the Third Circuit using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

September 6, 2022 　　　　　 */s/ Angelo J. Genova*
　　　　　　　　　　　　　　　 Angelo J. Genova

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,500 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

This brief complies with the electronic filing requirements of Third Circuit Local Rule 31.1(c) because the text of the electronic brief is identical to the text in the paper copies, and a virus detection program has been run on this file and no virus was detected. The virus detection program utilized was Vipre Virus Protection, version 3.1.

September 6, 2022               */s/ Angelo J. Genova*
                              Angelo J. Genova