**Nos. 22-2003, 22-2004, 22-2005,
22-2006, 22-2007, 22-2008, 22-2009, 22-2010, 22-2011**

# United States Court of Appeals for the Third Circuit

◆

In re LTL Management LLC,

*Debtor*,

Aylstock, Witkin, Kreis & Overholtz, PLLC,

*Appellant*,

v.

LTL Management LLC,

*Appellee*.

◆

On Certified Direct Appeal From the United States Bankruptcy Court for the District of New Jersey (Hon. Michael B. Kaplan, Chief Judge)
Bankruptcy Case No. 21-30589 / Adversary Proceeding No. 21-03032

◆

**REPLY BRIEF OF APPELLANT
AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC**

◆

| | |
|---|---|
| *Of Counsel:* | Michael L. Tuchin<br>Robert J. Pfister<br>Samuel M. Kidder |
| Paul J. Winterhalter<br>OFFIT KURMAN, P.A.<br>99 Wood Avenue South, Suite 302<br>Iselin, New Jersey 08830<br>(267) 338-1370 | Nir Maoz<br>KTBS LAW LLP<br>1801 Century Park East, 26th Floor<br>Los Angeles, California 90067<br>(310) 407-4000 |

September 6, 2022

# TABLE OF CONTENTS

                                                             **Page**

INTRODUCTION ............................................................................................... 1

ARGUMENT ...................................................................................................... 4

I.     LTL IS INELIGIBLE FOR THE ONLY TYPE OF RELIEF IT IS SEEKING IN ITS BANKRUPTCY CASE ..................................................... 4

II.    THE TEXAS TWO-STEP'S FUNDAMENTAL PURPOSE AND EFFECT IS A LEGAL ISSUE REVIEWED DE NOVO ............................... 7

CONCLUSION ................................................................................................. 14

COMBINED CERTIFICATE OF COMPLIANCE ................................................ 15

CERTIFICATE OF SERVICE ........................................................................... 16

Aylstock, Witkin, Keis & Overholtz, PLLC ("AWKO") submits this Reply to the Brief for Debtor-Appellee LTL Management, LLC ("Answering Brief").[1]

## INTRODUCTION

AWKO's Opening Brief makes two central arguments. The first is a narrow but dispositive statutory construction point concerning whether LTL could ever be eligible for the only type of relief it seeks in this bankruptcy, which is a Section 524(g) injunction. The second is a broader point rooted in the foundational "absolute priority" principle at the heart of insolvency law, practice, and custom for more than a century, which dictates that the claims of creditors (including tort claimants) are categorically and definitionally superior to the interests of equityholders.

Both arguments arise from the distinctive features of the Texas Two-Step. On the statutory construction point, LTL was not "named as a defendant" in any asbestos-related litigation as of the petition date, *see* 11 U.S.C. § 524(g)(2)(B)(i)(I) (articulating this requirement), because LTL is a newly-created entity that existed for approximately 48 hours (in strictest secrecy) before it filed for bankruptcy. And the unique Texas statute under which it was created forecloses the Answering Brief's response that LTL was automatically substituted by operation of law as a defendant

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the *Opening Brief of Appellant Aylstock, Witkin, Kreis & Overholtz, PLLC* [Docket No. 55 in Case 22-2003].

in the pending litigation pursuant to Federal Rule of Civil Procedure 25(c). That rule applies only "[i]f an interest is transferred," Fed. R. Civ. P. 25(c), but the Texas statute makes clear that nothing LTL owns or owes was ever "transferred" to LTL. *See* TEX. BUS. ORGS. CODE ANN. § 10.008(a)(2)(C).

So, too, with the broader absolute priority point. LTL's petition is at odds with "the Code's underlying principles," *In re SGL Carbon Corp.*, 200 F.3d 154, 161 (3d Cir. 1999), because the Texas Two-Step – which uses a newly created subsidiary's bankruptcy as a jurisdictional ticket available for purchase by a wealthy equityholder – is at odds with the Code's underlying principles. The entire construct is, at bottom, "a mechanism to orchestrate pending litigation" for the benefit of the non-debtor parent. *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 120 (3d Cir. 2004). Its very purpose is to "distribute value directly from a creditor to a company's shareholders," *15375 Mem'l Corp. v. BEPCO, L.P.*, 589 F.3d 605, 624 (3d Cir. 2009), in derogation of the "basic underpinning of business bankruptcy law" that is embodied in the absolute priority principle, *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017).

LTL's Answering Brief does not meaningfully engage with either argument. It addresses the first in a four-sentence footnote that essentially repeats the three-sentence discussion of this issue in the Bankruptcy Court's opinion. *Compare* Answering Br. at 71–72 n.4 *with* A29 (MTD Opinion). But

2

merely repeating the demonstrably untrue assertion that LTL "in fact has been named in pending suits," *id*., does not make it true, and LTL's meager footnote does not (because it cannot) respond to AWKO's detailed exposition of this point in its Opening Brief (at 24–34). With respect to the second argument, the Answering Brief essentially reframes the Bankruptcy Court's policy judgment – that there "is nothing to fear in the migration of tort litigation out of the tort system and into the bankruptcy system," A27 (MTD Opinion) – as a finding that is reviewed deferentially, either for clear error or abuse of discretion. But no amount of finessing or recasting changes the fundamentally legal nature of the ruling below. The Bankruptcy Court's policy judgments about the relative merits of jury trials versus bankruptcy trusts are essentially "legislative" in character, *cf. U.S. v. Noland*, 517 U.S. 535, 540–41 (1996), and cannot sustain the Texas Two-Step's inversion of the Bankruptcy Code enacted by Congress.

Courts increasingly refuse to blindly apply rules and principles that originated in the context of genuine reorganizations to the "synthetic estates" created by the Texas Two-Step and similar machinations designed for the benefit of nondebtors. *See In re Aearo Technologies LLC*, 2022 WL 3756537, 2022 Bankr. LEXIS 2398 (Bankr. S.D. Ind. Aug. 26, 2022) (denying preliminary injunction to enjoin suits against non-debtor parent on the basis of, *inter alia*, the parent's uncapped, round-trip commitment to fund the indemnification obligations assumed by the subsidiary

pre-bankruptcy). That salutary trend is consistent with this Circuit's longstanding case law, including in particular, *SGL Carbon*, *Integrated Telecom*, and *BEPCO*. A proper application of those precedents compels the conclusion that LTL's bankruptcy case must be dismissed.

## ARGUMENT

I. **LTL IS INELIGIBLE FOR THE ONLY TYPE OF RELIEF IT IS SEEKING IN ITS BANKRUPTCY CASE**

LTL fails to meaningfully respond to AWKO's argument that it cannot satisfy section 524(g)(2)(B) of the Bankruptcy Code. Aside from restating the Bankruptcy Court's analysis on this point – which, as AWKO explained in its Opening Brief, is wrong for several reasons – LTL's only response is that determining whether it can satisfy section 524(g) is premature and should not be grounds for dismissal. Ans. Br. at n.4. Section 524(g) is at the core of the MTD Opinion and Stay/PI Opinion, and indeed the only proposed path forward by LTL is through section 524(g). A17 (MTD Opinion) ("There is no question as to the import and value to Debtor of implementing an asbestos trust under § 524(g)."), A20 ("§ 524(g) trusts and comparable non-asbestos trust vehicles have been established to ensure meaningful, timely recoveries for present and future suffering parties and their families").[2]

---

[2] The Bankruptcy Court's intimation that section 105 might be used in lieu of section 524(g) if one or more elements of section 524(g) are lacking is foreclosed by this Court's decision in *In re Combustion Engineering, Inc.*, 391 F.3d 190 (3d Cir.
*(footnote continued)*

4

Because the sole stated purpose of LTL's bankruptcy is unachievable, the bankruptcy is subject to dismissal under section 1112(b). *See, e.g.*, *In re Dewey Commercial Invs., L.P.*, 503 B.R. 643, 654 (Bankr. E.D. Pa. 2013) (dismissing bankruptcy case under Section 1112(b) where the debtor represented that any proposed plan would provide for certain redemption payments, which the court found impossible because the debtor missed the redemption payment deadline under its partnership agreement); *In re JER/Jameson Mezz Borrower II, LLC*, 461 B.R. 293, 302 (Bankr. D. Del. 2011); *cf. Carolin Corp. v. Miller*, 886 F.2d 693, 701 (4th Cir. 1989) (holding that standard for dismissal under Section 1112(b) is objective futility – *i.e.*, reorganization is impossible – coupled with subjective bad faith).

LTL's categorical ineligibility for relief under section 524(g) also requires reversal of the Stay/PI Order, for a similar but independent reason. The Stay/PI Order enjoins the prosecution of nearly 40,000 lawsuits. A fundamental, essential justification for the Stay/PI Order is the Bankruptcy Court's aspiration that a section 524(g) plan can be confirmed. If that aspiration is foreclosed as a matter of

---

2004). That case holds that regardless of whether section 105 might be available in non-asbestos cases – such as the sex abuse and opioid mass tort litigation referenced by the Bankruptcy Court, *see* A29 (MTD Opinion) – in no circumstance can section 105 "be employed to extend a channeling injunction … in an asbestos case where the requirements of § 524(g) have not been met." *Id*. at 236. LTL appears to concede this point and does not argue that a channeling injunction can be issued under 105. *See* Ans. Br. at 70 (acknowledging that a channeling injunction issues under section 524(g)).

law, what possible basis can there be for enjoining the tort litigation? It cannot be to assess their merit or facilitate their liquidation. *See* 28 U.S.C. § 157(b)(2)(B) (bankruptcy court's claim allowance power does not encompass "the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11").

LTL cites only one case, *In re W.R. Grace & Co.*, 386 B.R. 17, 33 (Bank. D. Del. 2008), to support its argument that the Court need not consider whether LTL can ever satisfy the Bankruptcy Code section on which its entire "reorganization" is premised. The *W.R. Grace* decision, in analyzing whether to expand a preliminary injunction, merely found that the likelihood of success on the merits prong focused not on whether the debtor is entitled to a section 524(g) injunction (as the objecting committee argued), but rather whether the debtor had a reasonable likelihood of successful reorganization. *Id.* Neither the objecting committee nor other objectors "addressed the reasonable likelihood of successful reorganization" because proposed plans of reorganization had already been filed and "no party [suggested] that the case should be converted to a chapter 7 or that reorganization is not likely." *Id.* As such the *W.R. Grace* decision does not support the argument for which it is cited by LTL. Here, as both LTL and the Bankruptcy Court made clear, section 524(g) is the only path to reorganization. The Debtors cannot today, nor any day in the future, satisfy section 524(g).

6

At bottom, LTL was created via the Texas Two-Step as "a vessel designed to ferry [J&J's] asbestos liabilities into bankruptcy," *In re DBMP LLC*, 2021 WL 3552350, at *13 (Bankr. W.D.N.C. 2021), for channeling under Section 524(g). That purpose cannot be accomplished, so LTL's manufactured bankruptcy case serves no purpose and should be dismissed.

## II. THE TEXAS TWO-STEP'S FUNDAMENTAL PURPOSE AND EFFECT IS A LEGAL ISSUE REVIEWED DE NOVO

Similar to its treatment of the Section 524(g)(2)(B) statutory construction argument (which is relegated to a footnote), the Answering Brief does not meaningfully engage with the arguments and authorities concerning the absolute priority principle at the heart of insolvency law. That principle dictates that the claims of creditors – including (or perhaps especially) disfavored creditors, such as tort claimants – are superior to the interests of equityholders. The aim of the Texas Two-Step is to upend that fundamental principle and thereby "distribute value directly from a creditor to a company's shareholders." *BEPCO*, 589 F.3d at 624.

The Answering Brief ignores this purpose and effect of the Texas Two-Step, and instead defends the maneuver on the ground that bankruptcy is better than the tort system at resolving mass tort cases. And it seeks to cast the matter to be decided by this Court as whether the Bankruptcy Court clearly erred or abused its discretion. But that is not the test – as the Supreme Court's decision in *U.S. Bank National Association v. Village at Lakeridge, LLC*, 138 S. Ct. 960 (2018), makes clear.

7

"Basic" or "historical" facts (*i.e.*, "questions of who did what, when or where, how or why") are, of course, reviewable for clear error. *Village at Lakeridge*, 138 S. Ct. at 966. But whether the "historical facts found satisfy the legal test chosen" is a mixed question of law and fact. *Id.* In determining what standard of review applies to a particular mixed question, the reviewing court should ask: "What is the nature of the mixed question here and which kind of court (bankruptcy or appellate) is better suited to resolve it?" *Id.* The mixed question presented in these appeals (whether LTL's bankruptcy case was filed in good faith) must be resolved by an appellate court. This appeal does not require the Court to review "multifarious, fleeting, special, narrow facts that utterly resist generalization." *Id.* at 968. Instead, this appeal will require the Court to conduct primarily "legal work." *Id.*[3]

*Village at Lakeridge* is instructive. There, the following question was before the Court: "Given all the basic facts found, was Rabkin's purchase of MBP's claim conducted as if the two were strangers to each other?" *Id.* 968. The Supreme Court found this question "as factual sounding as any mixed question gets." *Id.* Unlike

---

[3] This accords with this Court's careful scrutiny in *SGL Carbon*, *Integrated Telecom*, and *BEPCO*: "The determination of whether the basic and inferred facts of a case support the conclusion of good faith in the filing of a Chapter 11 bankruptcy petition … is subject to plenary review because it is, essentially, a conclusion of law." *In re 15375 Mem'l Corp. v. BEPCO, L.P.*, 589 F.3d 605, 616 (3d Cir. 2009).

8

*Village at Lakeridge*, here the "basic facts" are not in dispute.[4]  Instead, this appeal turns on the question whether utilizing a divisive merger to isolate tort liabilities in a bankruptcy "conform[s] with the Code's underlying principles," *SGL Carbon*, 200 F.3d at 161, or is instead "a mechanism to orchestrate pending litigation," *Integrated Telecom*, 384 F.3d at 120.  The answer to this fundamental question ought not vary depending on which particular bankruptcy judge draws the next Texas Two-Step.[5]

To answer this question, the Bankruptcy Court weighed the relative merits of the tort system and the bankruptcy system from a policy perspective.  The Bankruptcy Court's denial of the dismissal motions turned not on the credibility of any witnesses or opinion of any expert, but rather on its policy determination that "the bankruptcy court is the optimal venue" for resolving these tort claims.  A18 (MTD Opinion); *also* A18–19 ("Determining whether Debtor is pursuing a valid bankruptcy purpose through this chapter 11 proceeding also requires the Court to examine a far more difficult issue—whether there is available to Debtor and the tort

---

[4] The only relevant exception is the factual predicate for the legal argument in AWKO's Opening Brief (at 24–34) regarding section 524(g)(2)(B)(i)(I).  To the extent that legal question turns on whether LTL had been "named as a defendant" at any point prepetition (it had not been), that is a "basic" or "historical" in the nature of "who did what, when or where, how or why." *Village at Lakeridge*, 138 S. Ct. at 966.

[5] Courts outside of the Third Circuit have started to call out the inappropriateness of using the bankruptcy system to side-step the tort system.  *See, e.g.*, *Aearo Technologies LLC*, 2022 WL 3756537, 2022 Bankr. LEXIS 2398 (Bankr. S.D. Ind. Aug. 26, 2022).

claimants a more beneficial and equitable path toward resolving Debtor's ongoing talc-related liabilities."); A26 ("This Court also has factored into its decision the substantial risks facing the talc claimants in the tort system."); A27 ("In the eyes of this Court, the tort system produces an uneven, slow-paced race to the courthouse, with winners and losers.").

The ultimate result of the Bankruptcy Court's policy determination is that the J&J enterprise enjoys all of the benefits afforded by the Bankruptcy Code, while subjecting only a sliver of the enterprise to the burdens, restrictions, and scrutiny of the bankruptcy process – including the bedrock principal of chapter 11 that a debtor's creditors have a superior claim to the value of the enterprise than equityholders. *See generally* Opening Br. at 34-42.

The Bankruptcy Court's attempt to allow a mass tort defendant to opt out of the tort system and to rewrite the Code's priority scheme to produce outcomes in line with its policy preferences was error. *See United States v. Noland*, 517 U.S. 535, 536 (1996) (holding that "bankruptcy court may not equitably subordinate claims on a categorical basis in derogation of Congress's scheme of priorities"). The Supreme Court acknowledged that while Congress certainly gave courts leeway to develop the doctrine of equitable subordination, such leeway is not broad enough to allow subordination to be "at odds with congressional ordering of priorities by categories." *Id.* at 540. In other words, courts cannot engage in what are essentially

10

policy determinations – in *Noland* about subordination of tax penalties, and here whether the tort system is inferior to the bankruptcy system – if those determinations conflict with the Code's priority scheme. These kinds of policy decisions necessarily extend beyond finding "basic facts" and thus are subject to plenary review.

Indeed, the Bankruptcy Court's decision is so policy-driven that even the *Brief of Washington Legal Foundation as* Amicus Curiae *in Support of Debtor-Appellee and Affirmance* [Docket No. 108 in Case No. 22-2003] advocates for the use of bankruptcy workarounds to subordinate punitive damages to overcome the tort system. *Id.* at 16-17. At bottom, that is a policy choice. Whether that policy choice is a good policy or an impermissible attempt to legislate has to be a question reviewed *de novo*.

In order for J&J and LTL to use the bankruptcy system in lieu of facing their liabilities in the tort system, LTL had to halt litigation against non-debtors. The subsequent history confirms LTL's true intentions behind the preliminary injunction – to protect its solvent non-debtor parent, J&J. Since the Bankruptcy Court issued the MTD Order and Stay/PI Order, very little progress has been made. LTL and the Official Committee of Talc Claimants began a mediation process that to-date as resulted in nothing but professional fees. *See Order Establishing Mediation Protocol*, *In re LTL Management, LLC*, Case No. 21-30589, ECF 1780 (Bankr.

D.N.J. March 18, 2022). LTL then proposed a year-long estimation process. *Debtor's Statement on Proposed Next Steps in Chapter 11 Case*, *In re LTL Management, LLC*, Case No. 21-30589, ECF 2473 (Bankr. D.N.J. June 10, 2022). Recognizing the problem with LTL's proposal, the Bankruptcy Court appointed an expert in connection with estimating LTL's liability for present and future talc claims under section 502(c) of the Bankruptcy Code. *Order Appointing Expert Pursuant to Federal Rule of Evidence 706*, *In re LTL Management, LLC*, Case No. 21-30589, ECF 2881 (Bankr. D.N.J. Aug. 15, 2022). Meanwhile, the ovarian cancer victims are no closer to compensation and no realistic resolution is on the horizon.

The preliminary injunction cannot be reviewed in a vacuum. Indeed, the injunction is part and parcel of the Texas Two-Step and LTL's attempt to sidestep the tort system. The manufactured scheme in this case – namely, the divisive merger and funding agreement – was specifically designed to give J&J all the benefits of bankruptcy without the burdens. It thus follows that the Stay/PI Order is also reviewed *de novo*. As the Bankruptcy Court recognized in certifying both the MTD Order and the Stay/PI Order, the issues presented with respect to those two matters are inextricably intertwined:

> The truth is the preliminary injunction adversary proceeding was bottomed on this Court's determination that there was a proper bankruptcy purpose, and there was a likelihood of a successful reorganization, two of the prongs. And those are intertwined with the issues that are

12

> – and the questions of law that are wrapped and included in the motion to dismiss.

A265 (Order Certifying Direct Appeal) (incorporating oral ruling); *Petition of Aylstock, Witkin, Kreis & Overholtz, PLLC for Direct Appeal of Bankruptcy Court Orders Pursuant to Section 158(d)(2)(A) of the Judicial Code* [Docket No. 1 in Case No. 22-8021] at 173; *see also* A141 (Stay/PI Opinion) (incorporating conclusions of law from the MTD Opinion).

The issue in this appeal is ultimately whether the Texas Two-Step is at odds with "the Code's underlying principles," *SGL Carbon*, 200 F.3d at 161, in its use of a newly created subsidiary's bankruptcy as a jurisdictional bootstrap for a solvent parent entity. That is a legal issue, and its answer is dictated by this Court's precedents, including *SGL Carbon*, *Integrated Telecom*, and *BEPCO*.

## CONCLUSION

For all the foregoing reasons and for the reasons set out in its Opening Brief, AWKO respectfully requests that the decisions below be reversed.

September 6, 2022                                  Respectfully submitted,

|  |  |
|---|---|
|  | /s/ Robert J. Pfister |
|  | Michael L. Tuchin |
| *Of Counsel:* | Robert J. Pfister |
|  | Samuel M. Kidder |
| Paul J. Winterhalter | Nir Maoz |
| OFFIT KURMAN, P.A. | KTBS LAW LLP |
| 99 Wood Avenue South, Suite 302 | 1801 Century Park East, 26th Floor |
| Iselin, New Jersey 08830 | Los Angeles, California 90067 |
| (267) 338-1370 | (310) 407-4000 |

*Attorneys for Aylstock, Witkin, Kreis & Overholtz, PLLC*

# COMBINED CERTIFICATE OF COMPLIANCE

The undersigned counsel of record certifies the following:

1. I am a member of the bar of the United States Court of Appeals for the Third Circuit. *See* 3d Cir. L.A.R. 46.1(e).

2. The foregoing *Reply Brief of Appellant Aylstock, Witkin, Kreis & Overholtz, PLLC* (the "Reply Brief") complies with: (i) the word limit of Federal Rule of Appellate Procedure 5(c)(l) because, excluding the parts of the document exempted by Federal Rules of Appellate Procedure 5(c) and 32(f), it contains 3,175 words; and (ii) the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman with 14 point font.

3. On September 6, 2022, I electronically filed the Reply Brief with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system. The text of the electronic version of the Brief is identical to the text of the hard copies that will be provided.

4. I certify that a virus detection program was run on the electronic version of the Reply Brief, and no viruses were detected. *See* 3d Cir. L.A.R. 31.1(c).

September 6, 2022                                  /s/ Robert J. Pfister

## CERTIFICATE OF SERVICE

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system. I further certify that seven copies of the foregoing *Reply Brief of Appellant Aylstock, Witkin, Kreis & Overholtz, PLLC* were also sent via overnight express mail to the Clerk of the Court for the United States Court of Appeals for the Third Circuit.

September 6, 2022                                   /s/ Robert J. Pfister