Nos. 22-2003, 22-2004, 22-2005, 22-2006,
22-2007, 22-2008, 22-2009, 22-2010, 22-2011

# IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

————————

IN RE LTL MANAGEMENT, LLC,

Debtor.

————————

LTL MANAGEMENT, LLC,

Appellee,

v.

THOSE PARTIES LISTED ON APPENDIX A TO
COMPLAINT AND JOHN DOES 1-1000.

————————

On Appeal from the United States Bankruptcy Court for the District of
New Jersey (Case Nos. 3:21-bk-30589-MBK, 3:21-ap-3032-MBK)

————————

**BRIEF OF WASHINGTON LEGAL FOUNDATION AS AMICUS CURIAE
SUPPORTING DEBTOR-APPELLEE AND REHEARING EN BANC**

————————

John M. Masslon II
Cory L. Andrews
WASHINGTON LEGAL FOUNDATION
2009 Massachusetts Ave., NW
Washington, DC 20036
(202) 588-0302
jmasslon@wlf.org

February 20, 2023

## DISCLOSURE STATEMENT

Washington Legal Foundation is a nonprofit corporation under § 501(c)(3) of the Internal Revenue Code. WLF has no parent company, issues no stock, and no publicly held company owns an interest in it.

# TABLE CONTENTS

**Page**

DISCLOSURE STATEMENT ....................................................................i

TABLE OF AUTHORITIES ...................................................................iii

INTEREST OF AMICUS CURIAE ...........................................................1

ARGUMENT ..........................................................................................1

I.    THE PANEL ERRED BY FAILING TO JUSTIFY ITS SPLIT FROM THE FOURTH CIRCUIT ON WHEN A BANKRUPTCY COURT MAY DISMISS A PETITION FOR LACK OF GOOD FAITH ...............................1

II.   THE PANEL ERRED BY NOT WEIGHING ALL EQUITABLE CONSIDERATIONS WHEN CRAFTING A RULE THAT MAKES CORPORATE RESTRUCTURING MORE DIFFICULT ...............................6

    A.    The Panel Dealt With Equitable Considerations Inconsistently ...........................................................................6

    B.    Bankruptcy Courts Have More Discretion To Ensure Equitable Outcomes Than Judges In Mass Tort Cases .........7

    D.    Bankruptcy Courts Can Consider The Well-Being Of Future Claimants While Mass Tort Judges Cannot ...........10

CONCLUSION ......................................................................................14

CERTIFICATE OF COMPLIANCE .........................................................15

CERTIFICATE OF SERVICE .................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*330 W. Hubbard Rest. Corp. v. United States*,
203 F.3d 990 (7th Cir. 2000) ................................................................. 3

*In re A.H. Robins Co., Inc.*,
880 F.2d 694 (4th Cir. 1989) ................................................................. 9

*A.H. Robins Co. v. Piccinin*,
788 F.2d 994 (4th Cir. 1986) ................................................................. 9

*Baumgart v. Fairchild Aircraft Corp.*,
981 F.2d 824 (5th Cir. 1993) ................................................................. 8

*Begier v. IRS*,
496 U.S. 53 (1990) ................................................................. 11

*Bittner v. Borne Chem. Co.*,
691 F.2d 134 (3d Cir. 1982) ................................................................. 11, 12

*In re Brints Cotton Mktg., Inc.*,
737 F.2d 1338 (5th Cir. 1984) ................................................................. 12

*Carolin Corp. v. Miller*,
886 F.2d 693 (4th Cir. 1989) ................................................................. 1

*Chavez v. Dole Food Co., Inc.*,
836 F.3d 205 (3d Cir. 2016) ................................................................. 4

*In re Combustion Eng'g, Inc.*,
391 F.3d 190 (3d Cir. 2004) ................................................................. 11

*CTS Corp. v. Dynamics Corp. of Am.*,
481 U.S. 69 (1987) ................................................................. 13

*In re Dow Corning*,
86 F.3d 482 (6th Cir. 1996) ................................................................. 8, 9

# TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

*Draper v. Airco, Inc.*,
  580 F.2d 91 (3d Cir. 1978) ...................................................... 9

*In re Eagle-Picher Indus., Inc.*,
  203 B.R. 256 (Bankr. S.D. Ohio 1996) ................................. 11

*First Fid. Bank v. McAteer*,
  985 F.2d 114 (3d Cir. 1993) .................................................. 9

*In re Forty-Eight Insulations, Inc.*,
  58 B.R. 476 (Bankr. N.D. Ill. 1986) ..................................... 11

*In re Imerys Talc Am., Inc.*,
  38 F.4th 361 (3d Cir. 2022) .................................................. 9

*Ind. State Police Pension Tr. v. Chrysler LLC*,
  558 U.S. 1087 (2009) ............................................................. 1

*Integrated Sols., Inc. v. Serv. Support Specialties, Inc.*,
  124 F.3d 487 (3d Cir. 1997) .................................................. 8

*NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc.*
  (*In re Integrated Telecom Express, Inc.*),
  384 F.3d 108 (3d Cir. 2004) .................................................. 2

*Orozco-Velasquez v. Att'y Gen.*,
  817 F.3d 78 (3d Cir. 2016) .................................................... 5

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999) ............................................................. 10

*Pereira v. Sessions*,
  138 S. Ct. 2105 (2018) ........................................................... 5

*In re POC Properties, LLC*,
  580 B.R. 504 (Bankr. E.D. Wis. 2017) ............................... 12

# TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

*Renchenski v. Williams,*
    622 F.3d 315 (3d Cir. 2010) ................................................................5

*In re SGL Carbon Corp.,*
    200 F.3d 154 (3d Cir. 1999) ..............................................................2

*Stern v. Marshall,*
    564 U.S. 462 (2011) ..........................................................................1

*Toibb v. Radloff,*
    501 U.S. 157 (1991) ........................................................................10

*United States v. Penn,*
    870 F.3d 164 (3d Cir. 2017) ..............................................................3

*United States v. Tyson,*
    947 F.3d 139 (3d Cir. 2020) ..............................................................5

*United States v. Williams,*
    184 F.3d 666 (7th Cir. 1999) .............................................................3

*Wellness Int'l Network, Ltd. v. Sharif,*
    575 U.S. 665 (2015) ..........................................................................6

**Statutes**

Bankrtupcy Code, 11 U.S.C.
    § 105(a) .........................................................................................8, 9
    § 362 ................................................................................................7
    § 502(c)(1) .....................................................................................11
    § 524(g) ...........................................................................................9
    § 1123(b) ........................................................................................8

# TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

## Other Authorities

David S. Salsburg & Jack F. Williams, *A Statistical Approach to Claims Estimation in Bankruptcy*, 32 Wake Forest L. Rev. 1119 (1997).....................................................12

Jonathan Randles & Peter Loftus, *J&J's Talc Bankruptcy Case Thrown Out by Appeals Court*, Wall. St. J. (Jan. 30, 2023) ................................................................6

## INTEREST OF AMICUS CURIAE*

Washington Legal Foundation is a nonprofit, public-interest law firm and policy center with supporters nationwide. WLF promotes free enterprise, individual rights, limited government, and the rule of law. It has appeared as amicus curiae in bankruptcy cases of public importance. *See, e.g.*, *Stern v. Marshall*, 564 U.S. 462 (2011); *Ind. State Police Pension Tr. v. Chrysler LLC*, 558 U.S. 1087 (2009). It filed a panel-stage amicus brief explaining why the Bankruptcy Court correctly found that LTL filed its bankruptcy petition in good faith.

## ARGUMENT

### I.    THE PANEL ERRED BY FAILING TO JUSTIFY ITS SPLIT FROM THE FOURTH CIRCUIT ON WHEN A BANKRUPTCY COURT MAY DISMISS A PETITION FOR LACK OF GOOD FAITH.

The panel acknowledged that "[i]n the Fourth Circuit, a court can only dismiss a bankruptcy petition for lack of good faith on a showing of the debtor's 'subjective bad faith' and the 'objective futility of any possible reorganization.'" Opinion 28 n.8 (quoting *Carolin Corp. v. Miller*, 886 F.2d 693, 694 (4th Cir. 1989)). That is the only time the panel discussed

---

* No party's counsel authored any part of this brief. No one, apart from WLF and its counsel, contributed money intended to fund the brief's preparation or submission.

the Fourth Circuit's two-prong good-faith test. There was no attempt at explaining why the Fourth Circuit's analysis was flawed.

True, the panel cited two prior panel opinions to support its holding on the requirements necessary to establish bad faith for a bankruptcy filing. *See, e.g.*, Opinion 35. But those two cases—both of which came after *Carolin*—also failed to explain why this Court should not follow the Fourth Circuit's decision. For example, *In re SGL Carbon Corp.*, 200 F.3d 154 (3d Cir. 1999) cited *Carolin* only three times. The first two citations bolstered the uncontroversial propositions that there is a good-faith requirement for bankruptcy filings and that there must be a test to determine whether a petition is filed in good faith. *See id.* at 161-62. The final citation noted that the Fourth Circuit exhaustively explored precedent when crafting its good-faith rule. *See id.* at 165. But *SGL Carbon* says nothing about why the Fourth Circuit's test is wrong.

So too for the Court's decision in *NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc.* (*In re Integrated Telecom Express, Inc.*), 384 F.3d 108 (3d Cir. 2004). There, this Court cited *Carolin* only once. And as in *SGL Carbon*, that citation was for the proposition that the Bankruptcy Code includes a good-faith requirement. *See id.* at 119.

In short, the panel never explained why it chose to depart from the Fourth Circuit. This was not because citations to prior Third Circuit decisions explained that departure; they did not. Rather, the failure to explain the alleged flaws in *Carolin* was a mistake—both procedurally and substantively—that deserves en banc review.

When there is a "lack of authority" in this circuit on a legal issue, the Court "look[s] to other circuits' persuasive precedent." *United States v. Penn*, 870 F.3d 164, 170 n.8 (3d Cir. 2017). This makes sense. "Although" courts of appeals "are not bound by them," they should "'carefully and respectfully consider' the opinions of [other] circuits." *330 W. Hubbard Rest. Corp. v. United States*, 203 F.3d 990, 994 (7th Cir. 2000) (quoting *United States v. Williams*, 184 F.3d 666, 671 (7th Cir. 1999) (other citations omitted)).

It is incumbent on three-judge panels to carefully consider the reasoned judgments of their sister circuits when deciding issues of first impression. Otherwise, the practice that this Court look to other circuits' persuasive authority when first considering an issue rings hollow. In essence, it allows for a panel to cherry-pick what sister circuits to look to

for guidance when addressing a question of first impression. The en banc court should discourage that practice.

Another reason that the Court should discourage splitting from other circuits without appropriate explanation is that it encourages forum-shopping. As the panel noted, because this Court's jurisprudence was unclear, many cases using the Texas two-step have been filed in the Western District of North Carolina. Opinion 28 & n.8. Now that this Court has rejected the Fourth Circuit's rule, the rate of forum-shopping will skyrocket. Companies will know that, if they file in Delaware, the bankruptcy courts are bound by the panel's decision. So they will instead try to file in the Fourth Circuit. This Court tries to discourage forum-shopping. *See Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 232 (3d Cir. 2016) (en banc). Requiring panels to explain why they split from a sister circuit will help accomplish this goal. It will also save judicial resources as motions to transfer venue will become rarer.

Still, this Court need not always follow its sister circuits' decisions. Sometimes, the other courts of appeals are split on an issue and this Court must choose between two or more options. In those cases, a panel should explain why it found reasoning from some sister circuits more

persuasive than the reasoning of other circuits. *Cf. United States v. Tyson*, 947 F.3d 139, 147 (3d Cir. 2020) (panel explaining why it was rejecting the Ninth Circuit's rule and adopting the majority rule); *Renchenski v. Williams*, 622 F.3d 315, 330 (3d Cir. 2010) (panel explaining why it was adopting the Fifth and Eleventh Circuits' rule while rejecting the Seventh Circuit's rule). And sometimes, after careful reflection, a panel may conclude that all other circuits to consider an issue reached the wrong result. In those cases, it is critical that the panel explain why it is creating a circuit split. *Cf. Orozco-Velasquez v. Att'y Gen.*, 817 F.3d 78, 82 & n.23 (3d Cir. 2016) (panel explaining why it was creating a circuit split), *abrogated*, *Pereira v. Sessions*, 138 S. Ct. 2105 (2018). That way, the public has confidence that politics are not driving the decision's outcome. It also ensures that the Supreme Court has more information when deciding whether to grant a certiorari petition and—if it does—how to resolve the circuit split. *See generally Pereira*, 138 S. Ct. 2105

So even if this Court were to decide that the panel correctly split from the Fourth Circuit's good-faith test, it should at least explain that decision in an en banc opinion. It's no secret that this case has garnered

substantial interest, both in the legal community and more broadly. *See, e.g.*, Jonathan Randles & Peter Loftus, *J&J's Talc Bankruptcy Case Thrown Out by Appeals Court*, Wall. St. J. (Jan. 30, 2023), https://tinyurl.com/fnnebcv8. The Court owes it to the bar and the public to explain why its sister circuit erred when outlining what a debtor must show to establish that it filed a bankruptcy petition in good faith.

## II. THE PANEL ERRED BY NOT WEIGHING ALL EQUITABLE CONSIDERATIONS WHEN CRAFTING A RULE THAT MAKES CORPORATE RESTRUCTURING MORE DIFFICULT.

### A. The Panel Dealt With Equitable Considerations Inconsistently.

The panel focused on the equitable nature of the Bankruptcy Code when explaining why it preferred an objective test for good faith. Opinion 34 (citation omitted). This holding departed from the Fourth Circuit's precedent, which focuses primarily on the subjective intent of the debtor. The panel's focus on equity makes sense. *Cf. Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 670 (2015) (explaining that Congress gave bankruptcy judges most of the power of a judge sitting in equity (citation omitted)). But the panel was inconsistent when considering the equities in bankruptcy cases.

Rather than recognize and weigh the equities of allowing mass tort cases to be handled in bankruptcy, the panel brushed aside these equitable considerations as irrelevant to the good-faith inquiry. *See* Opinion 54-55. It makes no sense for the panel to focus on some parts of equitable jurisprudence while ignoring other aspects of equity. Such handling of equitable considerations deserves review by the full Court.

If the panel's opinion is read (at 38-39) as grappling with these equitable considerations, that analysis misses the mark. Allowing defendants facing huge mass tort liability to handle the cases in bankruptcy benefits both claimants and defendants. *See* § II.C, *infra*. These equity considerations, ignored by the panel, strongly counsel against the panel's rule.

### B.    Bankruptcy Courts Have More Discretion To Ensure Equitable Outcomes Than Judges In Mass Tort Cases.

Filing Chapter 11 impacts pending tort litigation against a debtor in two main ways. First, the automatic stay gives the debtor and relevant stakeholders breathing room to formulate a plan without the distractions of pressing litigation. 11 U.S.C. § 362. Second, tort claims against a debtor may be consolidated and funneled through the bankruptcy court to be resolved together.

These two bankruptcy procedural components permit a debtor to defend against existential tort liability on just one front. *Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 831 (5th Cir. 1993). The debtor need not divide its attention between state and federal jurisdictions across the country, each with their own unique procedural requirements. This results in efficiencies and maximizes the debtor's estate.

Unlike the mass tort system, bankruptcy courts can fashion an appropriate remedy and consider evidence usually off-limits to a jury. For example, bankruptcy courts may include in their plans "any other appropriate provision not inconsistent with the applicable provisions of" the Bankruptcy Code. 11 U.S.C. § 1123(b). They may also marshal the assets of debtors to the benefit of a greater number of creditors. *See Integrated Sols., Inc. v. Serv. Support Specialties, Inc.*, 124 F.3d 487, 495 (3d Cir. 1997). Further, bankruptcy courts can issue "any order process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a).

Bankruptcy courts have successfully used this flexibility in mass tort cases to preserve assets to benefit current claimants and those who may not yet know they have a claim. *See, e.g.*, *In re Dow Corning*, 86 F.3d

482, 490 (6th Cir. 1996); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1013-14 (4th Cir. 1986). This can be accomplished through 11 U.S.C. § 524(g). *See In re Imerys Talc Am., Inc.*, 38 F.4th 361, 379 (3d Cir. 2022). Or it can be accomplished through other provisions of the Bankruptcy Code. *See In re A.H. Robins Co., Inc.*, 880 F.2d 694, 701 (4th Cir. 1989) (applying 11 U.S.C. § 105(a)).

Besides enjoying flexibility in choosing which Code section to proceed under, bankruptcy courts can consider a wider range of evidence than can juries in the mass tort system. This includes the defendant's financial health, which the bankruptcy court can analyze when determining the amount to award a claimant. That financial information—which cannot be used to establish liability in the mass tort system, *Draper v. Airco, Inc.*, 580 F.2d 91, 95 (3d Cir. 1978)—can help bankruptcy courts decide how best to marshal a debtor's limited assets to benefit the most creditors. The same is true for insurance coverage, which a jury is generally prohibited from reviewing, but which bankruptcy courts can consider as a potential asset of the bankruptcy estate. *See First Fid. Bank v. McAteer*, 985 F.2d 114, 117-18 (3d Cir. 1993). The flexibility to consider such issues and then craft appropriate

remedies supports the goal of maximizing the value of the bankruptcy estate. *Toibb v. Radloff*, 501 U.S. 157, 163 (1991).

### C. Bankruptcy Courts Can Consider The Well-Being Of Future Claimants While Mass Tort Judges Cannot.

By elevating current claimants' interests and purported injuries over those of future claimants, mass tort litigation is inequitable. As the Bankruptcy Court correctly found (at J.A. 27, 51, 55), reorganization benefits many more current and future claimants than any form of mass tort litigation.

Current claimants suing in a plaintiff-friendly venue are advantaged over other and future claimants in the mass tort system. Current claimants' attorneys are motivated to maximize recoveries by seeking quick, large verdicts. As the Bankruptcy Court noted (at J.A. 15), this comes at the expense of future claimants. The Supreme Court recognized this problem in *Ortiz v. Fibreboard Corp.*, observing that plaintiffs' counsel had an "egregious" conflict because their interest was in "generous immediate payments" secured for their current clients, while future claimants' interest lay in "an ample, inflation-protected fund for the future." 527 U.S. 815, 845 (1999).

With adequate protections, bankruptcy courts can avoid the problem of counsel prioritizing payment of current claims over payment of claims for those who may need to file in the future. This is done by estimating both claims that have been filed (but not yet reduced to judgment) and future claims. *See* 11 U.S.C. § 502(c)(1) (requiring the court to estimate any contingent claim that "would unduly delay the administration of the case"). Estimating a claim avoids the need to delay the debtor's reorganization indefinitely while cases are tried. *See Bittner v. Borne Chem. Co.*, 691 F.2d 134, 135 (3d Cir. 1982). This Court's asbestos jurisprudence supports treating current and future claimants equitably. *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 239 (3d Cir. 2004) ("Equality of distribution among creditors is a central policy of the Bankruptcy Code." (citing *Begier v. IRS*, 496 U.S. 53, 58 (1990))).

There are several ways for bankruptcy courts to protect future claimants. For example, they can appoint independent counsel to advocate on behalf of future claimants. This adversarial process helps ensure that future claimants are adequately protected. *See*, *e.g.*, *In re Eagle-Picher Indus., Inc.*, 203 B.R. 256, 261 (Bankr. S.D. Ohio 1996); *In re Forty-Eight Insulations, Inc.*, 58 B.R. 476, 478 (Bankr. N.D. Ill. 1986).

And as the Bankruptcy Court recognized (at J.A. 25), a well-drafted reorganization plan can address procedural and other concerns about uniform treatment of current and future claimants.

The Bankruptcy Code does not require a court to use a set method when estimating claims, which provides needed flexibility. *See In re Brints Cotton Mktg., Inc.,* 737 F.2d 1338, 1341 (5th Cir. 1984) (instructing the bankruptcy court to "use whatever method is best suited to those circumstances"); *Bittner*, 691 F.2d at 135 (noting the Bankruptcy Code's silence about how to estimate claims); *In re POC Properties, LLC*, 580 B.R. 504, 509 (Bankr. E.D. Wis. 2017) (bankruptcy "[c]ourts have discretion and flexibility in determining the best method to estimate a claim").

Bankruptcy courts can use many models when estimating future claims. *See* David S. Salsburg & Jack F. Williams, *A Statistical Approach to Claims Estimation in Bankruptcy*, 32 Wake Forest L. Rev. 1119, 1130-38 (1997). This discretion helps bankruptcy courts properly allocate resources between current and future claimants to promote equality among claimants.

Again, there is no way to protect future claimants in mass tort cases. For example, if a plaintiff sues in the Philadelphia Court of Common Pleas, that court cannot consider claims that may be filed in the Circuit Court of Cook County, Illinois. And even if there were a way for the Philadelphia court to consider those claims, the judge would lack the authority to enforce any ruling affecting claims that may be brought in other jurisdictions. But the Bankruptcy Code allows for bankruptcy courts to address this problem. Thus, bankruptcy courts ensure far more equitable distribution of assets than the mass tort system. The panel did not weigh this, instead focusing on other equitable considerations.

*          *          *

Judge Ambro is one of the nation's leading bankruptcy law experts. So this Court should rarely reconsider one of his bankruptcy opinions. But even the most learned jurists on a subject sometimes make mistakes. *See, e.g.*, *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69 (1987) (reversing an antitrust opinion by Judge Posner). That happened here, and the Court should grant the petition.

## CONCLUSION

The Court should rehear the case en banc.

Respectfully submitted,

/s/ John M. Masslon II
John M. Masslon II
Cory L. Andrews
WASHINGTON LEGAL FOUNDATION
2009 Massachusetts Ave., NW
Washington, DC 20036
(202) 588-0302
jmasslon@wlf.org

February 20, 2023

# CERTIFICATE OF COMPLIANCE

I certify that: (1) this brief complies with Fed. R. App. P. 29(b)(4) because it contains exactly 2,600 words, excluding those parts exempted by Fed. R. App. P. 32(f); (2) this brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and (6) because it uses 14-point Century Schoolbook font; (3) Both attorneys whose names appear on this brief are members of this Court's bar; (4) the texts of the electronic brief and paper copies are identical; and (5) that McAfee LiveSafe was run on the file and did not detect a virus.

|  | /s/ John M. Masslon II |
|---|---|
| February 20, 2023 | John M. Masslon II |

# CERTIFICATE OF SERVICE

I certify that, on February 20, 2023, I served all counsel of record via the Court's CM/ECF system.

|  | /s/ John M. Masslon II |
|---|---|
| February 20, 2023 | John M. Masslon II |