# United States Court of Appeals
### *for the*
# Third Circuit

---

Case No. 22-2003

In re: LTL MANAGEMENT LLC,

*Debtor,*

*OFFICIAL COMMITTEE OF TALC CLAIMANTS,

*Appellant.*

*(Amended per Court's Order dated 06/10/2022)

---

DIRECT APPEAL FROM THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY IN CH. 11 NO. 21-30589 AND ADV. PRO. NO. 21-03032

**BRIEF OF CERTAIN BANKRUPTCY LAW PROFESSORS AS *AMICI CURIAE* IN SUPPORT OF DEBTOR-APPELLEE'S PETITION FOR REHEARING AND REHEARING *EN BANC***

---

DANIEL S. SHAMAH　　　　　　　PETER FRIEDMAN
O'MELVENY & MYERS LLP　　　　O'MELVENY & MYERS LLP
Seven Times Square　　　　　　　1625 Eye Street, NW
New York, New York 10036　　　　Washington, DC 20006
(212) 326-2000　　　　　　　　　(202) 383-5300

　　　　　　　　LAURA L. SMITH
　　　　　　　　EMMA L. PERSSON
　　　　　　　　O'MELVENY & MYERS LLP
　　　　　　　　2501 North Harwood Street,
　　　　　　　　　Suite 1700
　　　　　　　　Dallas, Texas 75201
　　　　　　　　(972) 360-1900

*Counsel for Amici Curiae*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

INTEREST OF *AMICI CURIAE* ........................................................................ 1

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................ 1

ARGUMENT ........................................................................................................ 3

    I      FAILURE TO RECONSIDER THE PANEL'S RULING WOULD RESULT IN INEQUITABLE DISTRIBUTIONS TO MASS TORT CLAIMANTS, UNDERMINING BANKRUPTCY'S POLICY OF EQUALITY OF DISTRIBUTION. ............................................................................. 3

    II.    THE PANEL'S "FINANCIAL DISTRESS" TEST IS UNWORKABLE AND WILL LEAD TO CONTINUED CONFUSION AND LITIGATION ABOUT THE "GOOD FAITH" STANDARD. ................................................................. 5

CONCLUSION ..................................................................................................... 8

APPENDIX ........................................................................................................... 9

## TABLE OF AUTHORITIES

Page(s)

**Cases:**

*Begier v. IRS*,
  496 U.S. 53 (1990) ................................................................................... 4

*In re A. H. Robins Co.*,
  88 B.R. 742 (Bankr. E.D. Va. 1988) ......................................................... 2

*In re Dow Corning Corp.*,
  211 B.R. 545 (Bankr. E.D. Mich. 1997) .................................................... 2

*In re Integrated Telecom Express, Inc.*,
  384 F.3d 108 (3d Cir. 2004) .................................................................. 5, 7

*In re Johns-Manville Corp.*,
  68 B.R. 618 (Bankr. S.D.N.Y. 1986) ..................................................... 2, 3

*In re LTL Mgmt., LLC,*
  637 B.R. 396 (Bankr. D.N.J. 2022) ........................................................... 2

*In re Mallinckrodt PLC*,
  639 B.R. 837 (Bankr. D. Del. 2022) .......................................................... 2

*In re Marshall*,
  300 B.R. 507 (Bankr. C.D. Cal. 2003) ....................................................... 5

*In re Owens Corning*,
  No. 00-3837, 2006 Bankr. LEXIS 2856 (Bankr. D. Del. Oct. 19, 2006) .... 2

*In re PG&E Corp.*,
  617 B.R. 671 (Bankr. N.D. Cal. 2020) ....................................................... 2

*In re SGL Carbon Corp.*,
  200 F.3d 154 (3d Cir. 1999) ....................................................................... 5

*In re WR Grace & Co.*,
  729 F.3d 332 (3d Cir. 2013) ....................................................................... 4

*Jacobellis v. State of Ohio*,
  84 S. Ct. 1676 (1964) ................................................................................. 7

*Marx v. Gen. Revenue Corp.*,
    568 U.S. 371 (2013) ................................................................................................6

*State Farm Fire & Casualty Co. v. United States ex rel. Rigsby*,
    580 U.S. 26 (2016) ..................................................................................................6

*Toibb v. Radloff*,
    501 US 157 (1991) ..................................................................................................6

**Statutes and Other Authorities:**

11 U.S.C. § 109 ...............................................................................................................6

11 U.S.C. § 109(c)(3) .......................................................................................................6

Anthony J. Casey & Joshua C. Macey, *In Defense of Chapter 11 for
    Mass Torts*, __ U. CHI. L. REV. ___ (forthcoming 2023) ......................................7

Report of the National Bankruptcy Review Commission 315 (Oct. 20, 1997) .........3

Samir D. Parikh, *Bankruptcy is the Optimal Venue for Mass Tort Cases*,
    Law360 (Feb. 28, 2022) ..........................................................................................7

Samir D. Parikh, *The New Mass Torts Bargain*, 91 FORDHAM L. REV. 447
    (2022) ......................................................................................................................3

# INTEREST OF *AMICI CURIAE*[1]

The amici curiae, whose names and affiliations are set forth in the attached Appendix, are nationally-recognized professors of law (collectively, the "Law Professors") who teach courses and seminars in corporate governance, business law, and bankruptcy law and reorganization. The Law Professors have published numerous articles and treatises on the subject of business reorganizations and mass tort bankruptcies, provided testimony to Congress on various bankruptcy matters, and maintain a professional interest in ensuring that this Court is appropriately informed about how the bankruptcy framework is uniquely suited to address the issues affecting mass tort plaintiffs and defendants. The Law Professors' vast experience and authorship in this area of law are critically relevant to the above-referenced appeal. The Law Professors submit this brief in support of the Debtor's petition for rehearing and rehearing *en banc*.

# INTRODUCTION AND SUMMARY OF ARGUMENT

The bankruptcy system affords plaintiffs with substantial claims and debtors with finite resources an efficient and expeditious process to resolve their differences and allocate meaningful settlement funds fairly among current and future mass tort

---

[1] All parties have consented to the filing of this brief. Pursuant to Federal Rule of Appellate Procedure 29, Amici state that no counsel for a party authored this brief in whole or in part. No person other than Amici or their counsel made a monetary contribution to its preparation or submission.

claimants.[2] The Hon. Michael Kaplan's decision denying dismissal of the Debtor's bankruptcy case fostered this goal, holding that, "[the] Debtor filed this case to resolve the potentially crippling costs and financial drain associated with defending—over the next several decades—tens of thousands (if not hundreds of thousands) of personal injury claims with a multi-billion dollar exposure to Debtor and non-debtor affiliates."[3] As opposed to "hinder[ing] and delay[ing] talc claimants," Judge Kaplan correctly concluded that "a global resolution of these claims th[r]ough the bankruptcy may indeed accelerate payment to cancer victims and their families."[4] The panel failed to apply well-settled Third Circuit law permitting a debtor facing billions of dollars in liabilities to avail itself of Chapter 11. Instead, the panel manufactured a new, labored "financial distress" standard that diverges from the Code and will only confuse prospective debtors and bankruptcy courts. The Law Professors submit that granting rehearing is necessary to clarify the

---

[2] *See, e.g., In re Mallinckrodt PLC*, 639 B.R. 837, 850 (Bankr. D. Del. 2022); *In re PG&E Corp.,* 617 B.R. 671, 673 (Bankr. N.D. Cal. 2020); *In re Owens Corning*, No. 00-3837, 2006 Bankr. LEXIS 2856, at *1 (Bankr. D. Del. Oct. 19, 2006); *In re A. H. Robins Co.*, 88 B.R. 742, 747 (Bankr. E.D. Va. 1988); *In re Dow Corning Corp.*, 211 B.R. 545, 562 n.16 (Bankr. E.D. Mich. 1997); *In re Johns-Manville Corp.*, 68 B.R. 618, 627 (Bankr. S.D.N.Y. 1986).
[3] *See In re LTL Mgmt., LLC,* 637 B.R. 396, 427 (Bankr. D.N.J. 2022).
[4] *Id.*

panel's "financial distress" requirement, and ensure that the goals of equity and equality—the cornerstones of the "good faith" analysis—are served.

## ARGUMENT

I. **FAILURE TO RECONSIDER THE PANEL'S RULING WOULD RESULT IN INEQUITABLE DISTRIBUTIONS TO MASS TORT CLAIMANTS, UNDERMINING BANKRUPTCY'S POLICY OF EQUALITY OF DISTRIBUTION.**

Dating back to the *Johns-Manville* asbestos bankruptcy in the 1980s, Chapter 11's uniquely powerful tools have offered "a structured system to manage multiple liabilities and ha[ve] provided a forum for companies with massive liabilities to attempt to do so."[5] The panel's decision here bars mass tort debtors from using these tools and is inconsistent with long-established practice and precedent that ensures present and future tort claimants share in distributions equally through a court-administered claims process. These tools include centralization of claims, the automatic stay, the broad reach of bankruptcy jurisdiction, claims estimation, extensive disclosure requirements, appointment of a future claims representative with fiduciary duties, and the Chapter 11 plan process.[6] Taken together, these features reduce transaction costs by centralizing litigation, offering the means – including mediation and claim estimation – to achieve an expedited global

---

[5] Report of the National Bankruptcy Review Commission 315 (Oct. 20, 1997).
[6] *See* Samir D. Parikh, *The New Mass Torts Bargain*, 91 FORDHAM L. REV. 447, 479-82 (2022), available at https://ssrn.com/abstract=3649611.

settlement, and provide the statutory flexibility to efficiently resolve claims held by both current and future claimants. The bankruptcy process further ensures that claims arising out of the same nucleus of facts do not receive wildly divergent recoveries—a result customarily seen when mass tort cases are resolved through other non-bankruptcy venues, including jury trials in varied jurisdictions.[7]

Dismissal of mass tort bankruptcy cases where the debtor fails to meet an undefined "financial distress" requirement, however, will relegate victims to a lottery system. If the panel's ruling is allowed to stand, many tort claimants who have progressed further through the litigation process as of the petition date will resume their cases and some percentage of them could receive significant judgments. At some point, the accumulation of these judgments will presumably impose enough "financial distress"—an inflection point not easily susceptible to determination under the panel's decision—to reopen the bankruptcy court doors to the Debtor. At that point, other claimants with nascent suits and those who hold future claims would encounter a potentially depleted debtor and receive a substantially diminished recovery vis-à-vis other similarly situated victims who are no more deserving but

---

[7] *See generally, e.g., In re WR Grace & Co.*, 729 F.3d 332, 343 (3d Cir. 2013) ("Equality of distribution among creditors is a central policy of the Bankruptcy Code."); *Begier v. IRS*, 496 U.S. 53, 58 (1990) (same).

merely had the good fortune to file suits earlier. Avoiding this type of recovery disparity is one of bankruptcy's most inveterate features.

Thus, dismissal of the bankruptcy case will lead to inequity, which is not the intended result of a court's "good faith" inquiry.[8] Requiring debtors that are enmeshed in the mass tort system to wait until they reach some imprecise quantum of "financial distress" (*i.e.*, an unknown position of financial difficulty that lies somewhere between insolvency and solvency) destroys value that could otherwise flow to creditors equitably in a bankruptcy proceeding.[9] Such a result should not be allowed to stand.

## II. THE PANEL'S "FINANCIAL DISTRESS" TEST IS UNWORKABLE AND WILL LEAD TO CONTINUED CONFUSION AND LITIGATION ABOUT THE "GOOD FAITH" STANDARD.

As a practical matter, lower courts applying the panel's "financial distress" test will likely require some showing of insolvency to satisfy the "good faith" requirement. Such a requirement would be inconsistent with prior case law in the Third Circuit and elsewhere that permits solvent companies to access Chapter 11.[10]

---

[8] *See In re SGL Carbon Corp.*, 200 F.3d 154, 161 (3d Cir. 1999) ("The 'good faith' requirement for Chapter 11 petitioners has strong roots in equity").

[9] *See In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 122, 130 (3d Cir. 2004). (Third Circuit could identify "no value for Integrated's assets that was threatened outside of bankruptcy" and ultimately ordered dismissal of the bankruptcy case).

[10] *See, e.g., SGL Carbon*, 200 F.3d at 163 ("Early access for solvent debtors designed to preempt 'a hopeless situation.'"); *In re Marshall*, 300 B.R. 507, 512–13 (Bankr. C.D. Cal. 2003) ("It is not uncommon for debtors to be solvent under the balance

And statutory construction canons further demonstrate that Congress did not intend to require insolvency as a criteria for filing Chapter 11. Congress is presumed to act intentionally and purposefully where it includes particular language in one section of a statute but omits it in another.[11] Here, Congress explicitly stated in Bankruptcy Code section 109 that insolvency is not a requirement for a Chapter 11 filing and has only included such a requirement with respect to a debtor under Chapter 9.[12] Accordingly, the panel's "financial distress" requirement, to the extent it equates with insolvency, does not comport with the Bankruptcy Code.[13]

This case illustrates why the panel's "financial distress" test is unworkable. Here, the Debtor faces tens of thousands of current tort claims. It is easy to predict that if even just a small percentage of those claims are successful, the Debtor's assets

---

sheet test, and yet to have severe financial problems. . . . The United States bankruptcy law is designed to provide relief from creditor pressures for debtors with cash flow difficulties, even where they are clearly solvent under a balance sheet test.").

[11] *State Farm Fire & Casualty Co. v. United States ex rel. Rigsby*, 580 U.S. 26, 34 (2016) ("This Court adheres to the general principle that Congress' use of 'explicit language' in one provision "cautions against inferring" the same limitation in another provision.") (citing to *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 384 (2013)).

[12] *See* 11 U.S.C. § 109(c)(3) (only imposing requirement of insolvency with respect to a debtor under Chapter 9).

[13] *Toibb v. Radloff*, 501 US 157, 161 (1991) ("The Code contains no ongoing business requirement for reorganization under Chapter 11, and we are loath to infer the exclusion of certain classes of debtors from the protections of Chapter 11, because Congress took care in § 109 to specify who qualifies-and who does not qualify-as a debtor under the various chapters of the Code.").

could be completely eviscerated. Yet the panel still saw no "financial distress" and rejected the bankruptcy court's factual findings with respect to such question. Without further guidance, the panel's ruling leaves lower courts to make an amorphous "I know it when I see it"[14] determination. To avoid further confusion, the rehearing petition should be granted so this Court can clarify that the "good faith" determination is guided by whether a bankruptcy filing preserves value that would otherwise be lost under other non-bankruptcy processes. This standard is consistent with the Bankruptcy Code and existing Third Circuit precedent and would easily be satisfied under the conditions of this case.[15]

Finally, the panel's "financial distress" test creates perverse incentives. Mass tort defendants and their affiliated entities that have negotiated a meaningful funding agreement and are attempting to properly address victim claims at the ideal moment to preserve value would be precluded from accessing bankruptcy—the optimal venue for resolution of many mass tort disputes;[16] conversely, parties that have avoided resolution planning and present a more compromised financial position

---

[14] *See Jacobellis v. State of Ohio*, 84 S. Ct. 1676, 1683 (1964).
[15] *See Integrated Telecom*, 384 F.3d at 122.
[16] *See, e.g.,* Anthony J. Casey & Joshua C. Macey, *In Defense of Chapter 11 for Mass Torts*, __ U. CHI. L. REV. ___ (forthcoming 2023), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4349533; Samir D. Parikh, *Bankruptcy is the Optimal Venue for Mass Tort Cases*, Law360 (Feb. 28, 2022), available at https://www.law360.com/articles/1468363/bankruptcy-is-optimal-venue-for-mass-tort-cases; Parikh, *supra* n. 6.

enjoy full access to the bankruptcy process. Such a rule would incentivize mass tort debtors to arrange for less financial support for victims. The net effect for mass tort victims would be decidedly negative. There is nothing in the Bankruptcy Code that dictates such a perverse result. Nor is there any reason that judges should create such an inequitable rule in the name of "good faith."

## CONCLUSION

For the reasons explored above, this Court should grant the petition.

Dated:  February 21, 2023

    Respectfully submitted,

    */s/ Peter Friedman*_____
PETER FRIEDMAN
O'MELVENY & MYERS LLP
1625 EYE STREET, NW
WASHINGTON, DC 20006
(202) 383-5300

DANIEL S. SHAMAH
O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
(212) 326-2000

LAURA L. SMITH
EMMA L. PERSSON
O'MELVENY & MYERS LLP
2501 North Harwood St., Suite 1700
Dallas, Texas 75201
(972) 360-1900

*Counsel for Amici Curiae*

# APPENDIX

SAMIR PARIKH
PROFESSOR OF LAW, LEWIS & CLARK LAW SCHOOL
10101 S. Terwilliger Blvd.
Portland, Oregon 97219
(503) 768-6979

ANTHONY CASEY
DONALD M. EPHRAIM PROFESSOR OF LAW AND ECONOMICS, THE UNIVERSITY OF CHICAGO LAW SCHOOL
1111 E. 60th Street
Chicago, Illinois 60637
(773) 702-9578

JOSHUA MACEY
ASSISTANT PROFESSOR OF LAW, THE UNIVERSITY OF CHICAGO LAW SCHOOL
1111 E. 60th Street
Chicago, Illinois 60637
(773) 702-9494

EDWARD MORRISON
CHARLES EVANS GERBER PROFESSOR OF LAW, COLUMBIA LAW SCHOOL
Jerome Greene Hall
435 West 116th Street
New York, NY 10027
(212) 854-5978

## CERTIFICATION OF ADMISSION TO BAR

I, Peter Friedman, certify as follows:

    1.    I am member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

    2.    Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

                                          **O'MELVENY & MYERS LLP**
                                          Attorneys for Amici Curiae

                                          By: */s/ Peter Friedman*
                                               Peter Friedman

Dated: February 21, 2023

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitations of Fed. R. App. P. 29(b)(4) because this brief contains 1,837 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14-point font.

3. This brief complies with the electronic filing requirements of Local Rule 31.1(c) because the text of this electronic brief is identical to the text of the paper copies, and the Vipre Virus Protection, version 3.1 has been run on the file containing the electronic version of this brief and no viruses have been detected.

*/s/ Peter Friedman*
Peter Friedman

## CERTIFICATE OF SERVICE

I certify that on this 21st day of February, 2023, the foregoing was served on all parties or their counsel of record through the CM/ECF system.

>                               */s/ Peter Friedman*
>                               Peter Friedman
>
>                               *Counsel for Amici Curiae*