No.22-2003, 22-004, 22005,22-2006, 22-2007, 22-2008, 22-2009, 22-22010, 22-2011
(consolidated).

# United States Court of Appeals
For the
# Third Circuit

----------------------

IN RE: LTL MANAGEMENT, LLC,

*DEBTOR*

_____

OFFICIAL COMMITTEE OF TALC CLAIMANTS,*

*APPELLANT*

_____

*(Amended per Court's Order dated 06/10/2022)

Direct Appeal from the United States Bankruptcy Court for the District of New Jersey in Chapter 11 No. 21-30589 and Adv. Pro. No. 21-03032

## *AMICI CURIAE* BRIEF OF THE HONORABLE EUGENE WEDOFF (RET.) AND PROFESSORS DAVID EPSTEIN AND CHRYSTIN ONDERSMA IN OPPOSITION TO THE DEBTOR'S PETITION FOR REHEARING AND REHEARING EN BANC

DAVID R. KUNEY
*Counsel of Record*
9200 CAMBRIDGE MANOR COURT
POTOMAC, MARYLAND 20854
301-299-4336
Davidkuney@dkuney.com
*Counsel for Amici Curiae*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………...………………………3

INTEREST OF THE AMICI……………...…………………….5

INTRODUCTORY STATEMENT………...………………..……...6

LEGAL ARGUMENT……………….......……………...………..8

I. LTL'S PETITION FOR REHEARING FAILS TO ESTABLISH THAT ITS BANKRUPTCY FILING SATISFIED THE STANDARD OF "GOOD FAITH." ...................................................................................................9

   A. LTL cannot establish good faith and serious financial distress based on the financial distress of a non-debtor party. .....................................9

   B. LTL is not entitled to rehearing based on its argument that the Panel adopted a new or unworkable standard for financial distress. ............12

II. THE USE OF THE TEXAS TWO-STEP STATUTE ON THE EVE OF A BANKRUPTCY FILING HAS GENERATED SUBSTANTIAL JUDICIAL AND ACADEMIC CRITICISM THAT FURTHER SUPPORTS DISMISSAL FOR LACK OF GOOD FAITH........................15

CONCLUSION………………………………………………17

CERTIFICATE OF BAR MEMBERSHIP………………………………………...……18

CERTIFICATE OF COMPLIANCE……………………………………….…..18

## TABLE OF AUTHORITIES

**Cases**

*Butner v. United States*, 440 U.S. 48 (1979)…....………………………….…..10

*DBMP v. Those Parties Listed on Appendix to Complaint and John and Jane Does 1-1000* (In re DBMP LLC), No. 20-30080, 20-03004, 2021 WL 3552350 (Bankr. W.D.N.C. Aug. 10, 2021)……………………………………………….....15

*In re Aldrich Pump*, No. 20-30608 (JCW), 2021 WL 3729335, (Bankr. W.D.N.C. Aug. 23, 2021))…………………………………………………….…..15

*In re Bestwall, LLC.*, 605 B.R. 43 (Bankr. W.D.N.C. 2019)……………….….15

*In re Century City, Inc.*, 8 B.R. 25 (Bankr. D.N.J. 1980)……………………...10

*In re Integrated Telecom Express, Inc.*,384 F.3d 108 (3d Cir. 2004)………………………………………………………………………….6,11

*In re LTL Management, LLC v. Those Parties Listed on Appendix A to Complaint and John and Jane Does 1-1000*, Case No. 22-2011, Opinion of the Court, ECF No. 134…………………………………………………………………*passim*

*In re LTL Mgmt., LLC,* 637 B.R. 396 (Bankr. D.N.J. 2022)……………..…..7

*In re Owens Corning*, 419 F.3d 195 (3d Cir. 2005)……………………………10

*In re SGL Carbon Corp.*, 200 F.3d 154 (3d Cir. 1999)……………………….6,11

P*rovident Mut. Life Ins. Co. v. Univ. Evangelical Lutheran Church*, 90 F.2d 992 (9th Cir.1937)….………………………………………………………………11

**Statutes**

Act of July 1, 1898, ch. 541, 30 Stat. 544……………………………………………………….…………...11

.

11 U.S.C. § 1112(b)……………………………………………..…5

Tex. Bus. Orgs. Code. §§ 10.001 *et seq*……………………………………………5

**OTHER AUTHORITIES**

Adam J. Levitin, *The Implications of LTL's Per-Debtor Analysis*, HARVARD LAW SCHOOL BANKRUPTCY ROUNDTABLE (Feb. 14, 2023), http://blogs.harvard.edu/bankruptcyroundtable/files/2023/02/Adam-Levitin-LTL-Commentary.pdf........................................................................................10

Br. for Debtor-Appellee, ECF No. 90. ……………………………………7

Decl. of John K. Kim In Support of First Day Pleadings, ECF No. 5, 637 B.R. 396 (Bankr D.N.J. 2022) (Case No. 21-30589-MBK)……………………….6,9

Jamie Smyth, The Financial Times (Feb. 14, 2022): https://www.justinian.com/personal-injury-blog/what-is-the-texas-two-step/...17

Memorandum of Law of Amicus Curiae by Erwin Chemerinsky in Support of Motion of the Official Committee of Talc Claimants to Dismiss Debtor's Chapter 11 Case, Case No. 21-30589, ECF No. 1323-4, January 13, 2022………...…..16

Ralph Brubaker, *Assessing the Legitimacy of the "Texas Two-Step" Mass-Tort Bankruptcy*, 42 Bankr. La Ltr. (August 2022)……………………………….8,11, 13,14, 15

Twitter, Nov. 4, 2022. Bloomberg Intelligence: FICC Focus: Prof. Jacoby on Mass Torts and Bankruptcy, Available at https://podcasts.apple.com/us/podcast/ficc-focus/id1589459799?i=1000585061443........................................................16

Written testimony of Hon. Judith Fitzgerald (ret.) available at  https://www.whitehouse.senate.gov/imo/media/doc/Fitzgerald%20Testimony.pdf.................................................................................................16

## Interest of the *Amici*[1]

The *amici* are the Honorable Eugene Wedoff (ret.), Professor Chrystin Ondersma, and Professor David Epstein. Judge Wedoff was formerly the Chief Judge for the Bankruptcy Court for the Northern District of Illinois and the President of the American Bankruptcy Institute. Professor Ondersma is the Professor of Law and Judge Morris Stern scholar at Rutgers Law School. Professor David Epstein holds the George E. Allen Chair at the University of Richmond School of Law.

We urge this Court to deny the Petition for rehearing. The decision by the Panel was factually and legally correct. We also address why LTL's use of the Texas Divisive Merger Statute ("TBOC")[2] resulted in a fundamental distortion of the bankruptcy system and thus warranted dismissal of the bankruptcy case as a bad faith filing under Bankruptcy Code § 1112(b).

---

[1] Pursuant to F.R.A.P. 29(a)(4), no counsel for a party has written this brief in whole or in part and no person or entity, other than an amicus, its members, or its counsel, has made a monetary contribution to the preparation or submission of this brief.

[2] *See generally,* Tex. Bus. Orgs. Code. §§ 10.001 *et seq*.

.

## Introductory Statement

This case raises a question fundamental to any bankruptcy petition—whether LTL Management, LLC ("LTL") filed its bankruptcy case in good faith. The answer is no. The Panel properly found that a lack of financial distress constitutes bad faith and "cause" for dismissal under § 1112(b).[3] The Panel correctly applied *In re SGL Carbon Corp.*, 200 F.3d 154 (3d Cir. 1999) (adopting the "good faith" requirement and finding that a lack of financial distress violates the requirement for good faith). "[A]bsent financial distress there is no reason for Chapter 11 and no valid bankruptcy purpose." (Op. 36.) "Courts, therefore, have consistently dismissed Chapter 11 petitions filed by financially healthy companies with no need to reorganize under the protection of Chapter 11." *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 122 (3d Cir. 2004). Judge Ambro found there was "no need" for Chapter 11 as LTL had sufficient funding to pay its talc claims.[4]

---

[3] *In re LTL Management, LLC v. Those Parties Listed on Appendix A to Complaint and John and Jane Does 1-1000*, No. 22-2011, Opinion of the Court, ECF No. 134 ("Op.").

[4] Op. at 36, 51 (discussing the Funding Agreement found at Decl. of John K. Kim In Support of First Day Pleadings, 34-35, ECF No. 5. *In re LTL Mgmt., LLC*, 637 B.R. 396 (Bankr. D.N.J. 2022) (Case No. 21-30589-MBK)).

LTL did not dispute that financial distress is the correct legal standard.[5] During oral argument it stated, "we agree with the U.S. Trustee that the relevant question is actually whether LTL as the petitioner is facing financial crisis. . . ."[6]

Nor did LTL dispute the core factual basis upon which Judge Ambro relied for finding a lack of financial distress. At oral argument, LTL stated that with the Funding Agreement it "*absolutely*" was fully capable of "satisfying talc claims," and that the Funding Agreement is "enough to pay one hundred percent of all valid [talc] claims."[7]

Judge Ambro held that LTL "at the time of its filing, was highly solvent with access to cash to meet comfortably its liabilities as they came due for the foreseeable future." (Op. 51.) Judge Ambro relied upon the Funding Agreement which stated LTL would hold "assets having a value at least equal to its obligations as they become due in the ordinary course of business, including any [t]alc related liabilities." (Op. 51.) Judge Ambro concluded, "[w]e take J&J and LTL at their word and agree." (Op. 52.)

---

[5] Br. for Debtor-Appellee, 33-34, ECF No. 90.

[6] Trans. Oral Arg. at 76.

[7] Trans. Oral Arg. at 79 (emphasis added).

.

Your *amici's* interest also arises because of their concern that this case evidences an abusive invocation of bankruptcy jurisdiction and impairs the integrity of the bankruptcy system. It is for good reason that one of the nation's leading bankruptcy scholars stated that the use of the Texas Two-step "is not the bankruptcy system that Congress enacted," and that its use in this case was "the apotheosis of that which the Third Circuit warned against."[8]

## **LEGAL ARGUMENT**

I.  LTL'S PETITION FOR REHEARING FAILS TO ESTABLISH THAT ITS BANKRUPTCY FILING SATISFIED THE STANDARD OF "GOOD FAITH."

    A. LTL cannot establish good faith and serious financial distress based on the financial distress of a non-debtor party.

The opening paragraph of LTL's Petition reveals both its core argument and core defect. The Petition urges this Court to disregard the actual debtor, and to look instead to the financial distress of JJCI—a non-debtor party. LTL argues that the "tidal wave of talc claims" created financial distress *for JJCI* and that such financial distress "*entitled JJCI*" to utilize Chapter 11. (Pet. 1, emphasis added.) Thus, the Petition is premised largely on the argument that the Panel

---

[8] Ralph Brubaker, *Assessing the Legitimacy of the "Texas Two-Step" Mass-Tort Bankruptcy*, 42 Bankr. L. Letter at 5, 16 (Aug. 2022).

failed to consider the financial condition of a non-debtor, JJCI, and failed to consider whether the merger was a "single integrated transaction."[9]

The Panel did not fail to consider the issue of a "single integrated transaction."[10] Instead, the Panel recognized that regardless of whether JJCI's pre-bankruptcy restructuring and creation of LTL constituted a single integrated transaction, the result was the same: the creation of a new and separate entity, with a distinct legal status.[11] Thus, JJCI and LTL are distinct and separate legal entities under state law.

In deferring to state law theories of corporate separateness the Panel upheld the principle "that state-law property interests should generally be given the same effect inside and outside bankruptcy."[12] "[P]roperty interests are created and defined by state law," thus "there is no reason why such interests should be analyzed differently simply because an interested party is involved in a

---

[9] The phrase, "single integrated transaction" appears in neither the Kim Declaration nor the Funding Agreement, which instead refers to a "series of steps" leading to the formation of LTL. *See* Kim Decl. at 6.

[10] *See* Op. at 44-45.

[11] *Id*.

[12] *Id*.

10

bankruptcy proceeding."[13] The general expectation of "state law and of the Bankruptcy Code … is that courts respect entity separateness," and to do anything less would be to undermine the authority of state law.[14] Thus, under the Bankruptcy Code "debtor firms are single-entity firms, and each debtor entity has to file its own petition and be independently eligible for bankruptcy."[15]

The Panel's recognition of corporate separateness required it to "respect the separateness of legal entities *and their respective assets and liabilities.*" (Op. 45, emphasis added.) Thus, the Panel correctly limited its analysis of financial distress to only the debtor entity. The argument by LTL that the Panel should disregard this notion of separateness and look to the liabilities of JJCI as determinative of LTL's "distress" is contrary to the jurisprudence in this Circuit.[16]

---

[13] *Butner v. United States*, 440 U.S. 48, 55 (1979).

[14] *In re Owens Corning*, 419 F.3d 195, 211 (3d Cir. 2005).

[15] Adam J. Levitin, *The Implications of LTL's Per-Debtor Analysis*, HARVARD LAW SCHOOL BANKRUPTCY ROUNDTABLE (Feb. 14, 2023). http://blogs.harvard.edu/bankruptcyroundtable/files/2023/02/Adam-Levitin-LTL-Commentary.pdf.

[16] *See* Op. 45 (citing *In re Owens Corning*, 419 F.3d 195, 211) ("the general expectation of state law and of the Bankruptcy Code, and thus of commercial markets, is that courts respect entity separateness absent compelling circumstances. . .")

.

B. LTL is not entitled to rehearing based on its argument that the Panel adopted a new or unworkable standard for financial distress.

LTL argues that the Panel created a "novel and unworkable standard for financial distress" that is not rooted in existing precedent. (Pet. 2.) LTL argues that the Panel "seemingly imposed a new requirement of 'imminent' financial collapse that amounts to the kind of insolvency requirement this Court has rejected." (Pet. 2.)

Yet, the very opposite is true. A showing of good faith has always required *bona fide* financial distress and controlling precedent in this Circuit has insisted that such distress be "genuine financial distress." *Integrated Telecom*, 384 F.3d at 120.

A showing of financial distress has been a crucial component of the good faith doctrine under both the 1898 Bankruptcy Act[17] and the 1978 Bankruptcy Code.[18] The requirement of financial distress is essential to thwarting attempts to circumvent Congress' intent for the bankruptcy process.[19] *See In re Century*

---

[17] Act of July 1, 1898, ch. 541, 30 Stat. 544; *Provident Mut. Life Ins. Co. v. Univ. Evangelical Lutheran Church*, 90 F.2d 992, 995 (9th Cir. 1937) (setting financial condition at the center of its good faith analysis).

[18] Brubaker, at 7 (stating "financial distress is, therefore, necessary for a good faith filing but not sufficient").

[19] *SGL Carbon*, 200 F.3d at 161.

*City, Inc.*, 8 B.R. 25, 31-32 (Bankr. D.N.J. 1980) (concluding it would be abuse of process to retain jurisdiction over a debtor who was not in financial distress because it would be "unable to provide the intended relief").

The Panel did not require a showing of insolvency. ("We recognize … the Code conspicuously does not contain any particular insolvency requirement.") (Op. 37.) The Panel emphasized it was *not* adopting any new or "rigid" test for financial distress. ("And we need not set out any specific test to apply rigidly when evaluating financial distress. Nor does the Code direct us to apply one.") (Op. 37.)

LTL itself insisted repeatedly that its distress was not "imminent," stating that there was not "*any imminent or even likely need of [it] to invoke the Funding Agreement to its maximum amount or anything close to it.*"[20] At oral argument, LTL stated that with the Funding Agreement it "*absolutely*" was fully capable of "satisfying talc claims," and that the Funding Agreement is "enough to pay one hundred percent of all valid [talc] claims."[21]

---

[20] Op. at 51 (emphasis in original) (citing App. 3747 where LTL stated, "Neither this Court nor any party is suggesting, in connection with the Dismissal Order, any imminent or even likely need of Debtor to invoke the Funding Agreement to its maximum amount or anything close to it."

[21] Trans. Oral Arg. at 79 (emphasis added).

13

.

Likewise, J&J's financial statements, which stated that their potential loss for tort claims over the following 24 months was $2.4 billion, did not indicate any "imminent financial distress."[22]

Professor Brubaker writes that it was the bankruptcy court in *LTL* that adopted an erroneous legal test of financial distress. Rather than requiring serious financial threat as required by *SGL Carbon*, the bankruptcy court erroneously "minimizes[d] the requisite level of financial distress, by claiming that the "Bankruptcy Code does not 'require any particular degree of financial distress as a condition precedent to a petition seeking relief." [23]

The Panel's decision was solidly grounded on facts conceded by LTL and established legal precedent. It proposed no new rule nor announced an unworkable legal test. The Panel correctly perceived the abuse in allowing a debtor—claiming to be in financial distress while holding rights to an "ATM" funding device that was "absolutely" sufficient to pay 100% of its claims—to ask the Court to disregard state law on corporate separateness and to find the required level of financial distress.

---

[22] Op. at 23.

[23] Brubaker at 7, citing *LTL,* 637 B.R. at 420.

14

II.     THE USE OF THE TEXAS TWO-STEP STATUTE ON THE EVE OF A BANKRUPTCY FILING HAS GENERATED SUBSTANTIAL JUDICIAL AND ACADEMIC CRITICISM THAT FURTHER SUPPORTS DISMISSAL FOR LACK OF GOOD FAITH.

The Petition for rehearing should be denied because the ruling of the Panel was factually and legally correct. This Court need consider nothing further.

However, the use of the TBOC on the eve of a bankruptcy filing has raised serious concerns among both courts and scholars. Its intrinsic structure separates assets from liabilities, and then seeks to use a "phantom debtor" to "resolve" the liabilities of the actual tortfeasor. It does so without subjecting the real party in interest to the jurisdiction of the bankruptcy court, which in turn leads to a fundamental distortion of the operation of Chapter 11.[24]

Professor Brubaker who has studied the use of the TBOC extensively, writes that as of August 2022, there were only three cases other than LTL that sought to combine using § 524(g) with the TBOC and a funding agreement for payment of tort claims.[25] In two of the three cases, the bankruptcy courts expressed grave concern over the abusive nature of the TBOC.

---

[24] *See* Brubaker at 8-17.

[25] *See* Brubaker at 1-2 (citing *In re Bestwall, LLC.*, 605 B.R. 43 (Bankr. W.D.N.C. 2019); *In re DPMP LLC*, 2021 WL 3552350 (Bankr. W.D.N.C. 2021) and *In re Aldrich Pump*, No. 20-30608 (JCW), 2021 WL 3729335, (Bankr. W.D.N.C. Aug. 23, 2021)).

15

Professor Brubaker writes that a Texas Two-Step banrkuptcy is a bald-faced "litigation tactic" and that its use systematically prejudices mass-tort claimants."[26] Further, "The Texas Two-Step bankruptcy, therefore, is yet another permutation of parties and courts creating ad hoc, a la carte bankruptcies that allow those in control of the process to seriously compromise fundamental rights and protections of the 'odd ones out.'"[27]

Former Bankruptcy Judge Judith Fitzgerald testified before the Senate Committee on the Judiciary that the use of the TBOC was gaming the system: "As a bankruptcy judge with over 25 years' experience with mass tort cases … I am aware of the perceived unfairness of this type of action which is seen as gaming the system when a divisive merger is followed by a bankruptcy of only BadCo."[28]

Another prominent law professor questions why the bankruptcy court in this case should have considered arguments against the use of the MDL to resolve the tort claims: "It's somewhat astonishing to go into a bankruptcy court

---

[26] Brubaker, at 8.

[27] Brubaker, at 6.

[28] Written testimony of Hon. Judith Fitzgerald (ret.) available at https://www.whitehouse.senate.gov/imo/media/doc/Fitzgerald%20Testimony.pdf.

16

and say, 'I need to be here because I don't like juries, I don't like the way the appellate system is working and I'm not happy with the way this multi-district litigation has gone somewhere else.'"[29] One constitutional scholar challenges the constitutional validity of the TBOC.[30]

The legislative author of the TBOC states that had he known how the TBOC would be used in the mass-tort context, the state would have "never, never" adopted it.[31]

This broad spectrum of academic concern is telling and reveals a level of concern with the distortion of fundamental bankruptcy law that this case demonstrates. While this Court need not resolve these broader issues, the context

---

[29] Twitter, Nov. 4, 2022. Bloomberg Intelligence: FICC Focus: Prof. Jacoby on Mass Torts and Bankruptcy, available at https://podcasts.apple.com/us/podcast/ficc-focus/id1589459799?i=1000585061443.

[30] Memorandum of Law of Amicus Curiae by Erwin Chemerinsky in Support of Motion of the Official Committee of Talc Claimants to Dismiss Debtor's Chapter 11 Case, Case No. 21-30589, ECF No. 1323-4, January 13, 2022.

[31] Jamie Smyth, The Financial Times (Feb. 14, 2022): "Had we known in 1989 that provisions could be dubiously interpreted for entities to avoid known liabilities such as those causing severe and permanent injuries and deaths, it would never have passed with the 'Texas two-step' provision. Never, never, never," said Steven Wolens, a former Texan lawmaker who wrote the bill." https://www.justinian.com/personal-injury-blog/what-is-the-texas-two-step/

17

of the Panel's ruling on good faith, and its lack thereof, touches and concerns the broader issues that form the background of this case.

**Conclusion:**

The decision by the Panel was correct, and the Petition for rehearing should be denied.

Respectfully submitted,

/s/ *David R. Kuney*

David R. Kuney
9200 Cambridge Manor Court
Potomac, Maryland 20854
301-299-4336
Davidkuney@dkuney.com

Counsel for *amici curiae*

.

## CERTIFICATE OF BAR MEMBERSHIP

Pursuant to Third Circuit Local Rule 28.3(d), I certify that I am a member of the Bar of this Court.

March 6, 2023                                            /s/ *David R. Kuney*
                                                          David R. Kuney

## CERIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 29(a)(5) because this brief contains 2,596 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word for MAC version 16.70 in Times New Roman 14-point type.

Pursuant to Local Rule 31.1(c) this brief complies with the electronic filing requirements because the Sophos Virus Protection software, edition 10.4.7 runs concurrently on all documents prepared on my iMac and no viruses have been detected during the preparation of this amicus brief.

March 6, 2023                                            /s/ *David R. Kuney*
                                                          David R. Kuney

.

## CERTIFICATE OF FILING AND SERVICE

I certify that today, March 6, 2023 I electronically filed the foregoing brief with the Clerk of the Court for the U.S. Court of Appeals for the Third Circuit using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate EM/ECF system.

March 6, 2023 /s/ *David R. Kuney*
David R. Kuney