**Nos. 22-2003, 22-2004, 22-2005, 22-2006, 22-2007,
22-2008, 22-2009, 22-2010, and 22-2011**

# United States Court of Appeals for the Third Circuit

IN RE: LTL MANAGEMENT, LLC,

*Debtor*

OFFICIAL COMMITTEE OF TALC CLAIMANTS,

*Appellant*

On Direct Appeal from the United States Bankruptcy Court
for the District of New Jersey, Chapter 11 No. 21-30589, Adv. Pro. No. 21-3032

**JOINT RESPONSE OF APPELLANTS ARNOLD & ITKIN LLP;
AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC; AND AD HOC
COMMITTEE OF MESOTHELIOMA CLAIMANTS TO PETITION
FOR REHEARING AND REHEARING EN BANC**

Laura Davis Jones
Isaac M. Pachulski
Karen B. Dine
Jeffrey M. Dine
Colin R. Robinson
Peter J. Keane
PACHULSKI STANG ZIEHL & JONES LLP
919 N. Market Street, 17th Floor
Wilmington, DE 19801
Telephone: (302) 652-4100
ljones@pszjlaw.com

David C. Frederick
Gregory G. Rapawy
Ariela M. Migdal
Matthew N. Drecun
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900
dfrederick@kellogghansen.com

*Counsel for Appellant Arnold & Itkin LLP
(additional counsel listed on inside cover)*

March 6, 2023

*Of Counsel*:

Paul Winterhalter
OFFIT KURMAN, P.A.
99 Wood Avenue South, Suite 302
Iselin, New Jersey 08830
Telephone: (267) 338-1370
pwinterhalter@offitkurman.com

Michael L. Tuchin
Robert J. Pfister
Samuel M. Kidder
Nir Maoz
KTBS LAW LLP
1801 Century Park East, 26th Floor
Los Angeles, California 90067
Telephone: (310) 407-4000
mtuchin@ktbslaw.com

*Counsel for Appellant Aylstock, Witkin, Kreis & Overholtz, PLLC*

Jennifer D. Bennett
GUPTA WESSLER PLLC
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 573-0336
jennifer@guptawessler.com

Deepak Gupta
Jonathan E. Taylor
Gregory A. Beck
GUPTA WESSLER PLLC
2001 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 888-1741
deepak@guptawessler.com

*Counsel for Jan Deborah Michelson-Boyle,*
*Katherine Tollefson, Evan Plotkin, and Giovanni Sosa*
*(Ad Hoc Committee of Mesothelioma Claimants)*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................... ii

PRELIMINARY STATEMENT ............................................................... 1

ARGUMENT ............................................................................................ 4

I.   The Panel's Decision Is Correct And Consistent With Precedent ................. 4

    A.   LTL Fails To Show Any Conflict With Supreme Court Precedent ...... 6

    B.   LTL Fails To Show Any Conflict With Circuit Precedent .................. 9

    C.   No Circuit Conflict Justifies En Banc Rehearing ............................... 10

II.  LTL's Mischaracterization Of The Standard Of Review Does Not Merit Rehearing ................................................................................ 12

III. The Panel's Decision Is Consistent With 11 U.S.C. § 524(g) ...................... 15

CONCLUSION ......................................................................................... 17

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF BAR MEMBERSHIP

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bank of America National Trust and Savings Association v. 203 North LaSalle Street Partnership*, 526 U.S. 434 (1999)..................................7, 8, 17

*Butner v. United States*, 440 U.S. 48 (1979)..............................................................7

*Capitol Food Corp. of Fields Corner*, *In re*, 490 F.3d 21 (1st Cir. 2007) ..............10

*Carolin Corp. v. Miller*, 886 F.2d 693 (4th Cir. 1989)............................................12

*Cedar Shore Resort, Inc.*, *In re*, 235 F.3d 375 (8th Cir. 2000).................................5

*Combustion Eng'g, Inc.*, *In re*, 391 F.3d 190 (3d Cir. 2004) ...........................15, 16

*Comm'r of Internal Revenue v. BrokerTec Holdings, Inc.*, 967 F.3d 317 (3d Cir. 2020) ..............................................................13

*Cook*, *In re*, 104 F.2d 981 (7th Cir. 1939) ..................................................................5

*Federal-Mogul Global Inc.*, *In re*, 684 F.3d 355 (3d Cir. 2012).......................16, 17

*Ingham v. Johnson & Johnson*, 608 S.W.3d 663 (Mo. Ct. App. 2020), *cert. denied*, 141 S. Ct. 2716 (2021)..........................................................2, 13

*Integrated Telecom Express, Inc.*, *In re*, 384 F.3d 108 (3d Cir. 2004) .................................................. 1, 5, 8-10, 14, 16

*Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Prods. Litig.*, *In re*, 509 F. Supp. 3d 116 (D.N.J. 2020).................................2

*Little Creek Dev. Co.*, *In re*, 779 F.2d 1068 (5th Cir. 1986) ................................. 4-5

*Marsch*, *In re*, 36 F.3d 825 (9th Cir. 1994) .........................................................5, 11

*Owens Corning, In re*, 419 F.3d 195 (3d Cir. 2005) ..................................7

*Pepper v. Litton*, 308 U.S. 295 (1939)....................................................7

*Premier Automotive Services, Inc., In re*, 492 F.3d 274 (4th Cir. 2007)................11

*SGL Carbon Corp., In re*, 200 F.3d 154 (3d Cir. 1999) ...................... 1, 5, 9-11, 14

*U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Villages at Lakeridge, LLC*, 138 S. Ct. 960 (2018) ..........................................14

*Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98 (3d Cir. 1981).........12

*Voest-Alpine Trading USA Corp. v. Vantage Steel Corp.*, 919 F.2d 206 (3d Cir. 1990) ..............................................................7

*15375 Mem'l Corp., In re v. BEPCO, L.P.*, 589 F.3d 605 (3d Cir. 2009) ..............................................10, 12, 14

## STATUTES AND RULES

11 U.S.C. § 524(g) ..............................................................................4, 15, 16

11 U.S.C. § 524(g)(2)...............................................................................15

11 U.S.C. § 524(g)(4)(A)(ii) .....................................................................15

Chapter 11, 11 U.S.C. § 1101 *et seq.*.................................... 1, 3, 4, 8, 9, 11, 12, 17

    11 U.S.C. § 1112(b)...........................................................................4

Fed. R. App. P. 35(a) .................................................................................2

3d Cir. I.O.P. 9.3 .......................................................................................2

## OTHER AUTHORITIES

H.R. Rep. 103-835 (1994)..........................................................................15

U.S. J.P.M.L., *About the Panel*, https://www.jpml.uscourts.gov/about-panel........17

7 Collier on Bankruptcy § 1112.07 (16th ed. 2022).............................................4, 5

**PRELIMINARY STATEMENT**

The panel correctly applied settled precedent in ordering the dismissal of LTL Management LLC's Chapter 11 petition for lack of good faith. "[G]ood faith necessarily requires some degree of financial distress on the part of a debtor." *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 121 (3d Cir. 2004). "Courts, therefore, have consistently dismissed Chapter 11 petitions filed by financially healthy companies with no need to reorganize under the protection of Chapter 11." *In re SGL Carbon Corp.*, 200 F.3d 154, 166 (3d Cir. 1999). Those dismissals protect the bankruptcy system and creditors from abuse by companies facing significant litigation who see bankruptcy as "an inviting safe harbor." *Id.* at 169. The financial-distress requirement thereby ensures that Chapter 11 hews to its appropriate, congressionally authorized use: "to validly reorganize financially troubled businesses." *Id.*

LTL is "essentially a shell company," created by financially healthy Johnson & Johnson ("J&J") to carry all talc liabilities of J&J companies into bankruptcy. Op.24-28, 54. Holding a Funding Agreement with J&J worth $61.5 billion and "likely to grow," LTL proclaimed its ability to meet all liabilities "in the ordinary course" and disclaimed "any imminent or even likely need" to invoke "anything close to" that maximum amount. Op.28, 48, 53 (quoting JA3747, JA4313). When a debtor all but concedes it lacks financial distress, this Court's precedent dictates

1

dismissal.  The panel's application of settled law to case-specific facts does not warrant rehearing.  *See* Fed. R. App. P. 35(a); 3d Cir. I.O.P. 9.3.

The panel's opinion summarizes the historical background to LTL's bad-faith bankruptcy.  *See* Op.20-33.  J&J sold talc-based Johnson's Baby Powder for more than a century, eventually through its subsidiary, Johnson & Johnson Consumer, Inc. ("JJCI" or "Old JJCI").  Op.20-21.  Plaintiffs began alleging that J&J and JJCI's talc products caused their ovarian cancer or mesothelioma, winning milestone verdicts in 2013 and 2016.  Op.21.

In 2018, a jury found that J&J and JJCI had "engaged in outrageous conduct" for decades, knowingly concealing asbestos in their talc products and rejecting safe alternatives.  *See Ingham v. Johnson & Johnson*, 608 S.W.3d 663, 715-17 (Mo. Ct. App. 2020), *cert. denied*, 141 S. Ct. 2716 (2021).  Concurrently, a court presiding over multi-district litigation denied J&J's attempt to exclude experts who found asbestos at high rates in its talc.  *See In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Prods. Litig.*, 509 F. Supp. 3d 116, 147 (D.N.J. 2020).  Facing increasing evidence of asbestos and links between talc exposure and both ovarian cancer and mesothelioma, J&J and JJCI pulled their talc products from U.S. markets.  Op.21-22, JA1586.

Despite these setbacks, J&J and JJCI remained financially healthy, with litigation costs well within their means.  All talc litigation, including settlements

and judgments, cost $4.5 billion in the five years before bankruptcy, while J&J's market capitalization exceeded $400 billion.  Op.48-49, 52.  J&J had settled 6,800 pending cases and dismissed 1,550 more.  Op.22.  And it put "reasonably estimable" two-year costs of talc litigation at just $2.4 billion.  Op.52.  Even as J&J publicly bemoaned jury verdicts against it, J&J continued to increase dividends— giving away more than $13 billion to shareholders in both 2020 and 2021.  Op.49.

No financial urgency required J&J to shunt all talc liabilities into bankruptcy via LTL while keeping its real consumer-products business out of bankruptcy in a New JJCI shorn of liability.  Op.49.  That was a "business decision," as the bankruptcy court put it.  JA49.  Nor did any financial emergency imperil J&J's fulfillment of its funding commitments to LTL.  Op.49.  A company that voluntarily pays more than a billion dollars a month in dividends is a company that can honor its funding commitments.  The panel's ruling that LTL lacked the present financial distress required for good faith, Op.55, is the natural result.

LTL's rehearing petition missteps from the start.  LTL claims that the situation "entitled *JJCI . . .* to avail itself of Chapter 11."  Pet.1 (emphasis added).  This appeal does not present that issue.  Neither Old JJCI (which no longer exists) nor New JJCI is the debtor here.  LTL's claim (at 2) that it did "too much to help claimants" is bunk.  Claimants were better off outside bankruptcy, where "J&J functionally made talc payments from its accounts" and LTL could use the

3

Funding Agreement to pay plaintiffs promptly.  Op.24, 48.  LTL's bankruptcy

delayed all payments to claimants until after plan confirmation and appeal—

assuming a plan could ever be confirmed—while blocking their suits against J&J

and JJCI.  JA4234.  LTL's petition thus depends on false premises.

LTL's claims of precedential conflict fare no better.  The panel faithfully

followed circuit and Supreme Court precedent; LTL cites no contrary authority.

*Infra* Part I.A-B.  LTL cannot demonstrate conflict among circuits, which agree—

the Fourth Circuit included—that a Chapter 11 debtor must be in financial distress.

*Infra* Part I.C.  LTL's plea for clear-error review ignores precedent authorizing

plenary review of the bankruptcy court's ultimate good-faith determination.  *Infra*

Part II.  Finally, LTL invokes 11 U.S.C. § 524(g), which offers extraordinary relief

to overwhelmed debtors properly in bankruptcy.  Because LTL is not the latter, it

does not qualify for the former.  *Infra* Part III.  Rehearing should be denied.

## ARGUMENT

## I.    The Panel's Decision Is Correct And Consistent With Precedent

The panel's ruling that LTL's bankruptcy should be dismissed for lack of

good faith under 11 U.S.C. § 1112(b) is correct and consistent with longstanding

precedent.  "[T]he requirement of good faith has been held to be an implicit

condition to the filing and maintenance of a bankruptcy case for over a century."  7

Collier on Bankruptcy § 1112.07 (16th ed. 2022); *In re Little Creek Dev. Co.*, 779

F.2d 1068, 1071 (5th Cir. 1986) ("Every bankruptcy statute since 1898" has
incorporated a good-faith standard).

The debtor's financial distress is central to the good-faith inquiry. *See Little
Creek*, 779 F.2d at 1072 (good faith "depends largely" on debtor's "financial
condition" and "local financial realities"); Collier § 1112.07 ("The courts have
strongly considered the liquidity of the debtor in determining . . . good faith.");
*e.g.*, *In re Cedar Shore Resort, Inc.*, 235 F.3d 375, 380 (8th Cir. 2000) (no good
faith where debtor was "not in dire financial straits"); *In re Marsch*, 36 F.3d 825,
829 (9th Cir. 1994) (same, where debtor "had the financial means to pay" its
obligations, which posed no "danger of disrupting business interests"); *cf. In re
Cook*, 104 F.2d 981, 985 (7th Cir. 1939) (same, where debtors entered bankruptcy
not to save "a corporation in financial distress," but "to escape . . . [a] day of
reckoning" in another court).

This Court is in accord, dismissing the case in *SGL Carbon* because the
debtor "face[d] no immediate financial difficulty." 200 F.3d at 163. It did the
same in *Integrated Telecom* because "good faith *necessarily requires* some degree
of financial distress on the part of a debtor" and the lower courts "erred as a matter
of law" in finding it. 384 F.3d at 121 (emphasis added), 129.

The panel's decision thus stands on firm ground. LTL's $61.5-billion
payment right against its "highly creditworthy" parents dwarfs its aggregate

litigation costs, past and anticipated; it has disclaimed any need to invoke its full

funding commitment.  Op.48-49, 52-53.  The panel correctly concluded that LTL

"did not have any likely need in the present or the near-term, or even in the long-

term, to exhaust its funding rights."  Op.52.

The bankruptcy court's financial-distress determination rested on "back-of-

the-envelope forecasts of hypothetical worst-case scenarios," which

"contradict[ed] the record" by ignoring the realities of settlement and dismissal and

"by assuming most, if not all, [cases] would go to and succeed at trial."  Op.50-51.

The panel appropriately rejected such "conjectures," expressing "doubt as to

whether they were factual findings at all."  *Id.*  "[N]o other inferences or support in

the record" corroborated the bankruptcy court's view that LTL's talc-related

liabilities "'far exceed[ed]'" its capacity to satisfy them.  Op.51 (quoting JA23).

## A.    LTL Fails To Show Any Conflict With Supreme Court Precedent

LTL's attempt to show a conflict with Supreme Court precedent cites (at 8)

just two Supreme Court decisions for general bankruptcy principles.  Neither

involved good faith or financial distress; neither supports LTL's assertion (at 7)

that the panel should have focused on the financial condition of Old JJCI, a

differently situated non-debtor that no longer exists.

The panel's focus on the financial condition of the debtor, LTL, adhered to

Supreme Court precedent by respecting the property arrangements LTL's parents

configured under state law.  Op.45-46 (following *Butner v. United States*, 440 U.S. 48, 55 (1979)); *cf. In re Owens Corning*, 419 F.3d 195, 211 (3d Cir. 2005) (in bankruptcy, "courts respect entity separateness absent compelling circumstances"). The stated purpose of the restructuring that preceded LTL's bankruptcy was to avoid "subjecting JJCI and its many stakeholders" to bankruptcy.  Pet.4.  The panel did not err by recognizing that.

Nor does the panel's decision conflict with the cases LTL cites.  LTL quotes *Pepper v. Litton*, 308 U.S. 295 (1939), on bankruptcy courts' "equitable powers" (at 8), but *Pepper*'s reasoning and result support the panel's decision.  *Pepper*'s skepticism of "astute" legal maneuvering by the debtor's controlling shareholder— which involved various "one-man corporations"—led it to find a "violation of rules of fair play and good conscience."  308 U.S. at 296-98, 310-12.  Here, the panel "evaluate[d] the full set of state-law transactions involving LTL," Op.46, and concluded correctly that the resulting entity could not show good faith by invoking the financial condition of an entity those transactions had eliminated, Op.47-48.[1]

The statement in *Bank of America National Trust and Savings Association v. 203 North LaSalle Street Partnership*, 526 U.S. 434 (1999), quoted by LTL (at

---

[1] *Voest-Alpine Trading USA Corp. v. Vantage Steel Corp.*, 919 F.2d 206, 212 (3d Cir. 1990), has no bearing on this case.  *Voest-Alpine* was not about good faith or financial distress, and in any case, the panel considered the full set of transactions involving LTL.  *See* Op.46-48.

8)—that "maximizing property available to satisfy creditors" is a fundamental policy of Chapter 11—likewise supports the panel. A debtor's lack of financial distress means its Chapter 11 petition "[cannot]—and [does] not—preserve any value for [its] creditors that would have been lost outside of bankruptcy." *Integrated Telecom*, 384 F.3d at 129. Outside bankruptcy, LTL has the same funding commitment from J&J, the ability to pay talc claimants immediately, and no present risk that value will be lost to claimants without bankruptcy. Op.47-49. LTL's bankruptcy therefore did not further the policy identified in *Bank of America*.

LTL implies (at 7-8) that J&J would not have committed the same substantial funding if it could not shift all talc liabilities into the bankruptcy system while keeping JJCI's assets out. That point makes even clearer LTL's lack of good faith. The panel correctly focused on what LTL and its parents did, not what they might have done. In actuality, J&J—itself a defendant and judgment debtor in talc litigation—"made talc payments from its accounts" for all talc litigation costs. Op.24. Hypothetically, had JJCI entered bankruptcy without its parent's abundant financing, that might have made the case for financial distress stronger—but would have made the case for staying talc claims against J&J weaker. By J&J and JJCI's own design, that is not the situation here.

8

### B.    LTL Fails To Show Any Conflict With Circuit Precedent

LTL's claim (at 10) that the panel created an intra-circuit conflict "by requiring 'imminent' or 'immediate' financial distress" mischaracterizes the panel's opinion and precedent.  "Immediate" comes from *SGL Carbon*, which noted the debtor "face[d] no *immediate* financial difficulty."  200 F.3d at 163 (emphasis added); *see id.* at 164 ("The mere possibility of a future need to file, without more, does not establish . . . 'good faith.'").[2]  And *Integrated Telecom* held that "good faith *necessarily requires* some degree of financial distress," finding it absent because the debtor "was highly solvent and cash rich at the time of the bankruptcy filing."  384 F.3d at 121, 124 (emphasis added).

The panel followed both cases in distinguishing insolvency, which is not required, from financial distress, which is.  *See* Op.38 ("To say . . . that a debtor must be in financial distress is not to say it must necessarily be insolvent."); *Integrated Telecom*, 384 F.3d at 122 ("Saying that there is no insolvency requirement, however, does not mean that all solvent firms should have unfettered access to Chapter 11."); *SGL Carbon*, 200 F.3d at 163-64 ("a debtor need not be insolvent," but "financially healthy companies" face dismissal).

---

[2] The panel's only use of "imminent" comes from LTL's own disclaimer of "any imminent or even likely need" to invoke the full Funding Agreement.  Op.53 (quoting JA3747).

LTL's reliance (at 11) on prior mass-tort bankruptcies provides no answer to the panel's persuasive distinction of those cases.  *See* Op.43-43.  Those defendants exhibited the "serious financial and/or managerial difficulties at the time of filing," *SGL Carbon*, 200 F.3d at 164, that LTL cannot.  Op.43-44 (distinguishing financial challenges of Johns-Manville, A.H. Robins Company, and Dow Corning).  LTL offers no response.

LTL's complaints (at 11-12) about a supposedly new standard lack merit. The panel "focus[ed] on the special circumstances here," Op.54 n.17, because, as LTL concedes (at 8), good faith encompasses "the totality of facts and circumstances," Op.36 (quoting *In re 15375 Mem'l Corp. v. BEPCO, L.P.*, 589 F.3d 605, 618 (3d Cir. 2009)).  The panel's decision permits future debtors flexibility in showing financial distress.  Op.39-40.  Together with *SGL Carbon* and *Integrated Telecom*, it furnishes clear guidance to prospective debtors by illustrating financially healthy entities that lacked good faith.  Undoing the panel's decision would cast doubt on *SGL Carbon* and *Integrated Telecom* too, sowing confusion in this Circuit's precedent.

## C.     No Circuit Conflict Justifies En Banc Rehearing

The Circuits agree that present financial distress plays a "central role" in the good-faith inquiry.  *See* Op.42-43 n.14 (collecting cases); *see also In re Capitol Food Corp. of Fields Corner*, 490 F.3d 21, 25 (1st Cir. 2007) (debtor filed in good

faith because, although solvent, it faced "imminent financial distress"); *Marsch*, 36 F.3d at 829 (dismissing debtor with "financial means to pay" liabilities that posed no "danger of disrupting business interests").

No conflict exists between the panel's decision and the Fourth Circuit. LTL cites (at 9) *In re Premier Automotive Services, Inc.*, 492 F.3d 274 (4th Cir. 2007), while omitting *Premier*'s statement that the debtor's lack of "'financial difficulties' . . . *alone* may justify dismissal of [its] Chapter 11 petition." *Id.* at 280 (emphasis added). Indeed, *Premier* followed *SGL Carbon*'s explanation that "courts 'have consistently dismissed Chapter 11 petitions filed by financially healthy companies with no need to reorganize under the protection of Chapter 11.'" *Id.* (quoting *SGL Carbon*, 200 F.3d at 166). Because lack of financial distress "alone" can justify dismissal in the Fourth Circuit, that court would reach the same result as this one.[3]

Nor would LTL necessarily satisfy the "objective futility" element it urges this Court to adopt. The Fourth Circuit has yet to rule on any "two-step" scheme like LTL's, as LTL tacitly concedes (at 9-10) by citing only lower-court authority. To avoid "objective futility," a debtor must exhibit "significant potential ultimately

---

[3] Contrary to LTL's claim (at 9), the panel did not indicate whether LTL would satisfy the Fourth Circuit standard, which was neither briefed nor necessary to resolve. *See* Op.30 n.8.

to emerge from Chapter 11 proceedings . . . ready to carry on with viable business operations." *Carolin Corp. v. Miller*, 886 F.2d 693, 701-02 (4th Cir. 1989).  LTL has no business operations to carry on, because J&J kept the real consumer-products business out of bankruptcy.  LTL thus is like the debtor *Carolin* dismissed on good-faith grounds: "more akin to a shell corporation than a viable enterprise," not needing bankruptcy "to rehabilitate a distressed but viable business."  *Id.* at 703-04.

## II.    LTL's Mischaracterization Of The Standard Of Review Does Not Merit Rehearing

The panel faithfully applied precedent requiring abuse-of-discretion review in good-faith cases.  *See* Op.34-35 (citing *BEPCO*, 589 F.3d at 616).  It also followed precedent distinguishing findings of "basic" and "inferred" fact, which receive clear-error review, from "ultimate" conclusions like negligence that combine a "legal concept with a factual component" and receive appropriate review on each.  Op.34 (quoting *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 102-03 (3d Cir. 1981)).

The basic facts here were not disputed.  The panel "[did] not second-guess" the bankruptcy court's findings on J&J's pre-bankruptcy litigation costs, settlements, or the maximum value of the Funding Agreement.  *See* Op.22-24, 47.

The panel's focus was the ultimate fact of whether "LTL was in financial distress when it filed its Chapter 11 petition."  Op.47.  The bankruptcy court's

determination that LTL was in distress rested on "legal error": disregarding "the Funding Agreement's benefit to LTL" and making "the financial means of Old [JJCI], and not LTL, the lodestar of [its] financial-distress analysis." Op.50. The clear-error standard LTL emphasizes (at 12-13) "does not inhibit an appellate court's power to correct errors of law." *Comm'r of Internal Revenue v. BrokerTec Holdings, Inc.*, 967 F.3d 317, 321 (3d Cir. 2020) (citation omitted).

Moreover, the panel correctly applied clear-error review in determining that the bankruptcy court's "projections of future liability" were not "inferences permissibly drawn and entitled to deference." Op.47, 51. The bankruptcy court's "conjectures"—for example, that J&J would incur up to $190 billion in legal fees from going to trial in all 38,000 pending talc cases—reflected such "casualness" that the panel expressed "doubt as to whether they were factual findings at all." Op.22, 50-51. The bankruptcy court extrapolated from the *Ingham* judgment that J&J itself called "unique" and "not representative." Op.51. And its projections "contradict[ed] the record" by ignoring that J&J resolved far more cases by settlement or dismissal than trial. Op.50-51 (6,800 and 1,550 versus 49).[4]

---

[4] LTL cites the $190-billion figure in apparent seriousness, *see* Pet.4, 14, after downplaying it to the panel, *see* Appellee's Br. 45 (bankruptcy court merely suggested "a range for trial costs"). That figure resulted from the unmoored assumptions that no case would settle, so all 38,000 pending cases would go to trial and cost the highest projected amount to try ($5 million). A&I Br. 44-45.

The panel's analysis mirrored this Court's good-faith precedents, which closely studied the record before rejecting findings of good faith. *See BEPCO*, 589 F.3d at 618-26 (affirming district court's reversal of bankruptcy court); *Integrated Telecom*, 384 F.3d at 118-30 (reversing both lower courts); *SGL Carbon*, 200 F.3d at 162-70 (reversing district court).

LTL fails (at 12-13) to identify any departure from precedent. LTL disregards this Court's careful factual review in good-faith cases and its precedent distinguishing ultimate from basic facts. LTL's Supreme Court authority (at 12) also supports the panel's decision. *See U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Villages at Lakeridge, LLC*, 138 S. Ct. 960 (2018). *U.S. Bank* recognized that some "[m]ixed questions" of law and fact "require courts to expound on the law, particularly by amplifying or elaborating on a broad legal standard." *Id.* at 967. "[W]hen applying the law involves developing auxiliary legal principles of use in other cases—appellate courts should typically review a decision *de novo*." *Id.* Financial distress was that kind of issue here. The panel explained the financial-distress standard in depth, Op.36-47, before correcting the bankruptcy court's misdirected analysis of the record.

LTL's other arguments lack merit. Its references to "predictive judgments" (at 13) highlight the legal error in the bankruptcy court's focus on speculative future possibilities and inattention to LTL's present financial condition. And

14

LTL's re-litigating of case-specific facts is unpersuasive. For instance, it claims (at 14) that the panel erred in holding that LTL's resources exceeded any reasonable liability projections, but LTL conceded at oral argument that the Funding Agreement means LTL "absolutely" can satisfy all talc liabilities. Tr. 79:5-9. Regardless, that fact-bound dispute does not warrant *en banc* review.

## III.    The Panel's Decision Is Consistent With 11 U.S.C. § 524(g)

This Court has characterized 11 U.S.C. § 524(g) as "a special form of supplemental injunctive relief for an insolvent debtor facing the unique problems and complexities associated with asbestos liability." *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 234 (3d Cir. 2004). Section 524(g) provides particularly powerful tools for debtors facing "overwhelming liability." H.R. Rep. 103-835, at 41 (1994). A debtor not in financial distress does not warrant that special relief.

The debtor's financial distress matters because § 524(g) puts extraordinary burdens on claimants. It authorizes enjoining all present and future claims against related third parties, not just the debtor, and channeling them to a claims trust, depriving future claimants of their choice of forum and third-party sources of recovery. 11 U.S.C. § 524(g)(2), (g)(4)(A)(ii). It binds even unknown future claimants whose claims have not accrued and who cannot receive notice or a vote on the plan. *Id.* § 524(g). Estimating the aggregate value of claims also can undershoot, risking an underfunded trust even as claimants' recourse against non-

debtors is barred.  *See* Op.40-41.  Those burdens are unjustifiable if the debtor

lacks financial distress.

LTL is not a good-faith user of § 524(g).  Its stated desire to use § 524(g)

"cannot establish good faith as a matter of law," because "every bankruptcy

petition seeks some advantage offered in the Code."  *Integrated Telecom*, 384 F.3d

at 127-28.  The Code's protections are "a consequential benefit of an otherwise

good faith filing," "not *per se* a valid justification" for filing.  *Id.* at 128 (quotation

omitted).  In addition, LTL's abundant financing means it will not be overwhelmed

by talc liabilities.  Unlike LTL, prior § 524(g) debtors were in genuine distress.

The debtor in *Combustion Engineering* was on "the brink of insolvency."  391 F.3d

at 201.  The debtor *In re Federal-Mogul Global Inc.*, 684 F.3d 355 (3d Cir. 2012),

faced 500,000 claimants at filing, *id.* at 363, far more than LTL.

Contrary to its claim (at 15) that § 524(g) "authorized what LTL seeks to

do," LTL's structure flouts the design of § 524(g), which contemplates the

reorganized debtor funding a claims trust with its future earnings and a majority of

its equity to provide "an 'evergreen' source of funding to pay future claims."

*Combustion Eng'g*, 391 F.3d at 234.  LTL's restructuring scheme kept the real

consumer-products business and its earnings stream out of bankruptcy, depriving

talc claimants of that funding source and reserving the benefit of its future growth

for J&J's shareholders.  *See* A&I Br. 51-52.

16

***

The panel properly rejected LTL's invitation to revolutionize the role of bankruptcy in aggregate litigation.  Asbestos bankruptcies like those LTL invokes (at 15-16) are relatively rare.  *See Federal-Mogul*, 684 F.3d at 360 (approximately 60 asbestos trusts created by 2011).  By contrast, the Judicial Panel on Multidistrict Litigation has created more than 1,800 consolidated dockets in its history.  U.S. J.P.M.L., *About the Panel*, https://www.jpml.uscourts.gov/about-panel.  Ninety percent of pending MDL cases involve product-liability mass torts.  JA1939.  If an enterprise as financially healthy as J&J can shunt all tort liabilities into bankruptcy based on conjecture about their scale, any MDL defendant could try the same.

The panel's financial-distress ruling ensures that Chapter 11 maintains its traditional function "of preserving going concerns and maximizing property available to satisfy creditors."  *Bank of Am.*, 526 U.S. at 453.  The panel avoided prejudging future cases and kept Chapter 11 available to companies that genuinely need it.  *See* Op.54-55.  That prudent decision was correct.

## CONCLUSION

The petition for rehearing should be denied.

Dated: March 6, 2023                 Respectfully submitted,

                                     /s/ David C. Frederick

Laura Davis Jones                    David C. Frederick
Isaac M. Pachulski                   Gregory G. Rapawy
Karen B. Dine                        Ariela M. Migdal
Jeffrey M. Dine                      Matthew N. Drecun
Colin R. Robinson                    KELLOGG, HANSEN, TODD,
Peter J. Keane                         FIGEL & FREDERICK, P.L.L.C.
PACHULSKI STANG ZIEHL & JONES LLP    1615 M Street, N.W., Suite 400
919 N. Market Street, 17th Floor     Washington, D.C. 20036
Wilmington, DE 19801                 Telephone: (202) 326-7900
Telephone: (302) 652-4100            dfrederick@kellogghansen.com
ljones@pszjlaw.com                   grapawy@kellogghansen.com
ipachulski@pszjlaw.com               amigdal@kellogghansen.com
kdine@pszjlaw.com                    mdrecun@kellogghansen.com
jdine@pszjlaw.com
crobinson@pszjlaw.com
pkeane@pszjlaw.com

*Counsel for Appellant Arnold & Itkin LLP*


*Of Counsel*:                        Michael L. Tuchin
                                     Robert J. Pfister
Paul Winterhalter                    Samuel M. Kidder
OFFIT KURMAN, P.A.                   Nir Maoz
99 Wood Avenue South, Suite 302      KTBS LAW LLP
Iselin, New Jersey 08830             1801 Century Park East, 26th Floor
Telephone: (267) 338-1370            Los Angeles, California 90067
pwinterhalter@offitkurman.com        Telephone: (310) 407-4000
                                     mtuchin@ktbslaw.com
                                     rpfister@ktbslaw.com
                                     skidder@ktbslaw.com
                                     nmaoz@ktbslaw.com

*Counsel for Appellant Aylstock, Witkin, Kreis & Overholtz, PLLC*


*(additional counsel listed on next page)*

18

Jennifer D. Bennett
GUPTA WESSLER PLLC
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 573-0336

jennifer@guptawessler.com

Deepak Gupta
Jonathan E. Taylor
Gregory A. Beck
GUPTA WESSLER PLLC
2001 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 888-1741
deepak@guptawessler.com

*Counsel for Jan Deborah Michelson-Boyle,*
*Katherine Tollefson, Evan Plotkin, and Giovanni Sosa*
*(Ad Hoc Committee of Mesothelioma Claimants)*

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limit of Fed. R. App.

35(b)(2) and this Court's February 23, 2023 Order in the above-captioned Action

because, excluding the parts of the document exempted by Fed. R. App. P. 32(f),

this document contains 3,874 words.

2.      This document complies with the typeface requirements of Fed. R.

App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6)

because this document has been prepared in a proportionally spaced typeface using

Microsoft Word 2016 in 14-point Times New Roman font.  As permitted by Fed.

R. App. P. 32(g), the undersigned has relied upon the word count feature of this

word processing system in preparing this certificate.

3.      In addition, pursuant to 3rd Cir. L.A.R.  31.1(c) (2011), the

undersigned hereby certifies that the text of the electronic brief filed with the Court

is identical to the paper copies, that a virus detection program (CylancePROTECT)

has been run on the electronic file, and that no virus was detected.


Dated: March 6, 2023                    */s/ David C. Frederick*
                                        David C. Frederick

## CERTIFICATE OF FILING AND SERVICE

The undersigned hereby certifies that on March 6, 2023, I caused an electronic copy of the Joint Response of Appellants to Petition for Rehearing and Rehearing En Banc to be electronically filed with the United States Court of Appeals for the Third Circuit using the CM/ECF system, which will automatically send notification of such filing to counsel of record.


Dated: March 6, 2023                          */s/ David C. Frederick*
                                              David C. Frederick

## CERTIFICATE OF BAR MEMBERSHIP

Pursuant to 3rd Cir. L.A.R. 28.3(d) and 46.1 (2011), I, David C. Frederick,

hereby certify that I am a member in good standing of the bar of the United States

Court of Appeals for the Third Circuit.


Dated: March 6, 2023                  */s/ David C. Frederick*
                                      David C. Frederick